## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| IN RE: URETHANE ANTITRUST LITIGATION | No. 04-MD-1616-JWL |
| This Document Relates To: The Polyether Polyol Cases |  |
| SEEGOTT HOLDINGS, INC., *et al.* | No. 05-2265-JWL |
| v. |  |
| BAYER AG, *et al.*, |  |

## CONSOLIDATED AMENDED COMPLAINT

Plaintiffs Seegott Holdings, Inc., RBX Industries, Inc., and Industrial Polymers, Inc. (collectively "Plaintiffs"), individually and on behalf of a class of all those similarly situated, bring this action for treble damages under the antitrust laws of the United States against Defendants, and demand a trial by jury.  This Consolidated Amended Complaint is filed pursuant to the June 16, 2005 Transfer Order issued by the Judicial Panel on Multidistrict Litigation and this Court's Scheduling Order No. 1, dated August 31, 2005, and the Plaintiffs specifically reserve their rights to have their cases tried in the districts where the cases were originally filed, pursuant to *Lexecon Inc. v. Milberg, Weiss, Bershad, Hynes & Lerach,* 523 U.S. 26 (1998).

### NATURE OF THE CASE

1.     Plaintiffs allege a conspiracy among Defendants and certain unnamed co-conspirators to fix, raise, maintain or stabilize prices and to allocate customers and markets for Polyether Polyol Products (as defined in this Complaint) sold in the United States.

2.      Plaintiffs bring this action on behalf of all individuals and entities that purchased Polyether Polyol Products in the United States directly from Defendants, as well as their predecessors, subsidiaries, and affiliates, from at least as early as January 1, 1999 through the present (the "Class Period").   At all relevant times, Defendants and their co-conspirators manufactured and sold Polyether Polyol Products.  During the Class Period, Defendants and their co-conspirators agreed, combined, and conspired with each other to fix, raise, maintain or stabilize prices and to allocate customers and markets for Polyether Polyol Products sold in the United States.  As a result of Defendants' unlawful conduct, Plaintiffs and the Class (as defined in this Complaint) paid artificially inflated prices for these products, and therefore have suffered injury to their business and property.

## JURISDICTION AND VENUE

3.      This action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26 to recover treble damages, and the costs of this suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiffs and the members of the Class by reason of the violations, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1.

4.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

5.      Venue is proper in this District for pretrial purposes pursuant to the JPML transfer order dated June 16, 2005.  Venue is proper in the District of New Jersey where two of the three consolidated cases were filed originally pursuant to Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22, and 26 and 28 U.S.C. § 1391 (b), (c) and (d) because during the Class Period the Defendants resided, transacted business, were found, or had agents in that District, and because a substantial portion of the affected interstate trade and commerce described herein is

and has been carried out in that District.  Venue is also proper in this District for purposes of the

Industrial Polymers case pursuant to Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. §§ 15,

22, and 26 and 28 U.S.C. § 1391 (b), (c) and (d) because during the Class Period the Defendants

resided, transacted business, were found, or had agents in this District, and because a substantial

portion of the affected interstate trade and commerce described herein is and has been carried out

in this District.

## DEFINITIONS

6.     Polyether Polyol Products, as used in this Complaint, mean polyether polyols,

methyl diphenyl diisocyanate ("MDI") and toluene diiocyanate ("TDI").

7.     Polyether polyols are intermediate chemicals used in the manufacture of rigid and

flexible foams, among other applications.  Polyether polyols are combined with isocyanates

(usually either MDI or TDI) to produce polyurethane polymers. Polyether polyols constitute

approximately 90 percent of the world's polyol use.

8.     MDI  is a type of isocyanate used in combination with polyether polyols as a raw

material for the production of rigid insulation foams and structural foams, among other

applications.

9.     TDI is another type of isocyanate used in combination with polyether polyols as a

raw material for the production of flexible foams for furniture, mattresses, packaging foam, and

automobile seating, among other applications.

## PLAINTIFFS

10.     Plaintiff Seegott Holdings, Inc. is an Ohio corporation with its principal place of

business in Streetsboro, Ohio.  Seegott purchased Polyether Polyol Products in the United States

directly from one or more of the Defendants during the Class Period.

11.     Plaintiff RBX Industries, Inc. is a Virginia corporation with its principal place of business in Roanoke, Virginia.  RBX purchased Polyether Polyol Products in the United States directly from one or more of the Defendants during the Class Period.

12.     Plaintiff Industrial Polymers, Inc. is a Texas corporation with its principal place of business in Houston, Texas.  Industrial Polymers purchased Polyether Polyol Products in the United States directly from one or more of the Defendants during the Class Period.

**DEFENDANTS**

13.     Defendant Bayer AG  is a German corporation with its principal place of business in Leverkusen, Germany.  Bayer AG has extensive operations in the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates.  During the Class Period, Bayer AG manufactured and sold Polyether Polyol Products to purchasers in the United States and elsewhere, directly or through its predecessors, affiliates and/or subsidiaries.

14.     Defendant Bayer Corporation ("Bayer Corp.") is an Indiana corporation with its principal place of business in Pittsburgh, Pennsylvania.  It is a wholly-owned subsidiary of Bayer AG.  During the Class Period, Bayer Corp. manufactured and sold Polyether Polyol Products to purchasers in the United States and elsewhere.  Bayer AG controls Bayer Corp. both generally and with respect to the conduct of Bayer Corp. in furtherance of the unlawful acts alleged in this complaint.

15.     Defendant Bayer MaterialScience LLC ("Bayer MaterialScience"), formerly known as Bayer Polymers LLC, is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania.  It is a wholly-owned subsidiary of Bayer AG.  During the Class Period, Bayer MaterialScience manufactured and sold Polyether Polyol Products to purchasers in

the United States and elsewhere. Bayer AG, Bayer Corp. and Bayer MaterialScience LLC are collectively referred to as "Bayer".

16.     Defendant BASF AG  is a German corporation with its principal place of business in Ludwigshafen, Germany.  BASF AG has extensive operations in the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates.  During the Class Period, BASF AG manufactured and sold Polyether Polyol Products to purchasers in the United States and elsewhere, directly or through predecessors, affiliates and/or subsidiaries.

17.     Defendant BASF Corporation ("BASF Corp.") is a Delaware corporation with its principal place of business in Florham Park, New Jersey.  During the Class Period, BASF Corp. manufactured and sold Polyether Polyol Products to purchasers in the United States and elsewhere.  BASF Corp. is the North American affiliate of BASF AG.  BASF AG controls BASF Corp. both generally and with respect to the conduct of BASF Corp. in furtherance of the unlawful acts alleged in this Complaint.  BASF AG and BASF Corp are collectively referred to as "BASF".

18.     Defendant The Dow Chemical Company ("Dow") is a Delaware corporation with its principal place of business in Midland, Michigan.   During the Class Period, Dow manufactured and sold Polyether Polyol Products to purchasers in the United States and elsewhere.

19.     Defendant Huntsman Corporation ("Huntsman Corp.") is a Delaware corporation with its principal place of business in Salt Lake City, Utah.  During the Class Period, Huntsman Corp. (including its predecessors) manufactured and sold Polyether Polyol Products to purchasers in the United States and elsewhere.

20.     Defendant Huntsman LLC is a Utah limited liability company with its principal place of business in Salt Lake City, Utah.   During the Class Period, Huntsman LLC manufactured and sold Polyether Polyol Products to purchasers in the United States and elsewhere.   Huntsman LLC is a wholly-owned subsidiary of Huntsman Corp. and Huntsman Corp. controls Huntsman LLC both generally and with respect to the conduct of Huntsman Corp. in furtherance of the unlawful acts alleged in this Complaint.   Huntsman Corp. and Huntsman LLC are collectively referred to as "Huntsman".

21.     Defendant Lyondell Chemical Company ("Lyondell") is a Delaware corporation with its principal place of business in Houston, Texas.   During the Class Period, Lyondell manufactured and sold Polyether Polyol Products to purchasers in the United States and elsewhere.   In 2000, Bayer AG acquired Lyondell's polyether polyols business.

## CO-CONSPIRATORS

22.     Various other persons, firms and corporations, not named as Defendants herein, have participated as co-conspirators with Defendants and have performed acts and made statements in furtherance of the conspiracy.

23.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

## CLASS ACTION ALLEGATIONS

24.     Plaintiffs bring this action on behalf of themselves and as a class action under the provisions of Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following Class:

> All persons (excluding Defendants, their present and former parents, subsidiaries, affiliates and co-conspirators and government entities) who purchased Polyether Polyol Products in the United States or from a facility in the United States directly from any of the Defendants or their subsidiaries or affiliates, at any time from at least as early as January 1, 1999 until the Present.

25.     Plaintiffs do not know the exact number of class members because such information is in the exclusive control of Defendants or their co-conspirators.  But due to the nature of the trade and commerce involved, Plaintiffs believe that there are hundreds of Class members as above described, the exact number and their identities being known by Defendants and their co-conspirators.

26.     The Class is so numerous and geographically dispersed that joinder of all members is impracticable.

27.     There are questions of law and fact common to the Class, including:

  a.      Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize prices of Polyether Polyol Products sold in the United States;

  b.      Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to allocate customers and the markets for Polyether Polyol Products sold in the United States;

  c.      The identity of the participants of the alleged conspiracy;

d.      The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

e.      Whether the alleged conspiracy violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

f.      Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of the Plaintiffs and the other members of the Class;

g.      The effect of the alleged conspiracy on the prices of Polyether Polyol Products sold in the United States during the Class Period;

h.      Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from the Plaintiffs and the other members of the Class; and

i.      The appropriate class-wide measure of damages.

28.     Plaintiffs are members of the Class, Plaintiffs' claims are typical of the claims of the Class members, and Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are direct purchasers of Polyether Polyol Products, and their interests are coincident with, and not antagonistic to, those of the other members of the Class.

29.     Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

30.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

31.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

32.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The Class is readily definable and is one for which records should exist.  Prosecution as a class action will eliminate the possibility of repetitious litigation.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.  This class action presents no difficulties in management that would preclude maintenance as a class action.

## TRADE AND INTERSTATE COMMERCE

33.     The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of and substantially affected interstate commerce.

34.     During the Class Period, Defendants and their co-conspirators, manufactured, sold and shipped substantial quantities of Polyether Polyol Products, in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the states in which the Defendants produced these products.  In addition, the primary raw materials used to manufacture Polyether Polyol Products were purchased and shipped in a continuous and uninterrupted flow of interstate commerce.

35.     The conspiracy in which the Defendants and their co-conspirators participated had a direct, substantial, and reasonably foreseeable effect on United States commerce.

## THE POLYETHER POLYOL, MDI AND TDI MARKETS

36.     Due to their different physical properties and applications, polyether polyols and polyester polyols constitute separate and distinct markets.

37.     Important characteristics of the MDI, TDI and polyether polyols markets are such that facilitate anticompetitive collusion among the defendants and promote successful effects of that collusion, that is the inflation of prices above competitive levels.

38.     Polyether polyols, MDI and TDI are each an undifferentiated commodity product.

39.     Due to both a limited number of common manufacturers and a close correspondence in ownership of production of Polyether Polyol Products, the markets for these products are highly concentrated, with defendants controlling one hundred percent of the TDI and MDI markets and more than 75 percent of the polyether polyols market.  In addition, there are high barriers to entry to these markets due to environmental laws and regulations and the capital intensive nature of the business.  Because of their high collective market shares, defendants collectively are able to exercise market power, including the ability to raise prices and erect barriers to entry to the markets.

40.     Approximately 94% of all polyols used for flexible polyurethane foam are comprised of polyether polyols.  This means that users of polyether polyols will not switch because of a non-transitory, small but significant increase in the price of polyether polyols, thereby setting favorable conditions for a successful implementation of the price-fixing agreement among defendants.

41.     Pricing for all three Polyether Polyol Products during the Class Period was interrelated.  During the class period, on numerous occasions, price increases in the same or

similar amounts for Polyether Polyol Products were announced by defendants and/or became effective on the same day or within a short period of time.  For example:

      a.    On January 1, 2001, Bayer and BASF raised TDI prices by 12¢ per pound and polyether polyol prices by 10¢ per pound.  On that same date, BASF, Dow and Huntsman raised MDI prices by 8¢ per pound.  Bayer followed with an identical MDI price increase on January 15.

      b.    Bayer, BASF and Dow raised TDI and polyether polyol prices by 15¢ per pound and 10¢ per pound, respectively, effective March 1, 2002.

      c.    On April 1, 2002, Lyondell and Huntsman raised TDI prices by 15¢ per pound.  On that same day, Dow and BASF raised MDI prices by 6¢ per pound.  Bayer and Huntsman followed with identical  MDI price increases on April 15 and May 1, respectively.

      d.    Bayer, BASF, Dow, Lyondell and Huntsman all raised TDI prices by 8¢ per pound, effective September 1, 2002.  At the same time, Bayer, BASF and Dow raised polyether polyol prices by 6¢ per pound.

      e.    On April 1, 2003, Bayer, BASF and Huntsman raised TDI prices by 10¢ per pound, MDI prices by 8¢ per pound, and polyether polyol prices by 6¢ per pound.  On the same day, Dow raised TDI prices by 10¢ per pound and MDI prices by 7¢ per pound.

42.    Changes in the price of raw materials for these products, which are the principal cost of manufacturing these products, do not explain the announced increases in the prices for these products.

43.     Changes in demand for the major end-use of these products, polyurethane foam, do not explain the announced increases in prices for these products.

## VIOLATIONS ALLEGED

44.     Beginning at least as early as January 1, 1999 until the present, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of Polyether Polyol Products in the United States in unreasonable restraint of interstate trade and commerce, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

45.     The contract, combination or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, stabilize or maintain at artificially high levels the prices they charged and to allocate customers and markets for Polyether Polyol Products in the United States.

46.     In formulating and effectuating this conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including:

        a.      participating in meetings and conversations among themselves during which they agreed to charge prices at certain levels, and otherwise to fix, increase, maintain or stabilize prices of Polyether Polyol Products in the United States and to allocate customers of Polyether Polyol Products;

        b.      issuing price announcements consistent with, and selling Polyether Polyol Products at, the agreed upon prices;

        c.      allocating customers and markets for Polyether Polyol Products in the United States in furtherance of their agreements; and

12

      d.     participating in meetings and conversations among themselves to implement, adhere and police the agreements they reached.

47.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, raise or stabilize prices and to allocate customers and markets of Polyether Polyol Products.

**EFFECTS**

48.    The Defendants' unlawful contract, combination or conspiracy has had at least the following effects:

      a.     Prices charged by Defendants and their co-conspirators to Plaintiffs and the members of the Class for Polyether Polyol Products were fixed, raised, stabilized and maintained at artificially high and non-competitive levels in the United States;

      b.     Customers of Polyether Polyol Products were allocated among the defendants and their co-conspirators;

      c.     Plaintiffs and the other members of the Class had to pay more for Polyether Polyol Products than they would have paid in a competitive marketplace, unfettered by Defendants' and their co-conspirators' collusive and unlawful activities;

      d.     Price competition in the sale of Polyether Polyol Products was restrained, suppressed and eliminated in the United States; and

      e.     As a direct and proximate result of the illegal combination, contract or conspiracy, Plaintiffs and the members of the Class have been injured and

13

financially damaged in their businesses and property, in amounts to be determined.

## FRAUDULENT CONCEALMENT

49.     Throughout the Class Period, Defendants and their co-conspirators affirmatively and fraudulently concealed their unlawful conduct.

50.     Plaintiffs and the Class members did not discover, nor could have discovered through reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws until shortly before this litigation was commenced because Defendants and their co-conspirators used and continue to use deceptive and secret methods to avoid detection and to affirmatively conceal their violations.   Nor could Plaintiffs or the Class members have discovered the violations earlier than that time because Defendants and their co-conspirators conducted their conspiracy secretly, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection.

51.     Defendants and their co-conspirators engaged in a successful price-fixing conspiracy concerning Polyether Polyol Products, which they affirmatively concealed, at least in the following respects:

      a.     By meeting secretly to discuss prices, and customers and markets, of Polyether Polyol Products sold in the U.S. and elsewhere;

      b.     By agreeing among themselves at meetings and in communications not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme; and

c.      By giving false and pretextual reasons for the prices of Polyether Polyol Products sold by them during the Class Period and by describing such pricing falsely as being the result of competitive factors rather than collusion.

52.     As a result of Defendants' and their co-conspirators' fraudulent concealment, all applicable statutes of limitations affecting the Plaintiffs' and the Class' claims have been tolled.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray as follows:

A.      That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.      That the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators, be adjudged to have been a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.      That judgment be entered for Plaintiffs and members of the Class against Defendants for three times the amount of damages sustained by Plaintiffs and the members of the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees;

D.      That Plaintiffs and the Class be awarded pre-judgment and post-judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law; and

E.      That Plaintiffs and members of the Class have such other, further or different relief as the case may require and the Court may deem just and proper under the circumstances.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

Dated:   September 23, 2005

Respectfully submitted,

  /s/ Robert W. Coykendall
Robert W. Coykendall, #10137
Roger N. Walter, #08620
Tim J. Moore, #14104
Morris, Laing, Evans, Brock & Kennedy, Chartered
Old Town Square
300 North Mead - Suite 200
Wichita, KS  67202
Tel:  (316) 262-2671
Fax:  (316) 262-5991

**Plaintiffs' Liaison Counsel**

Allen D. Black
Roberta D. Liebenberg
Donald L. Perelman
Gerard A. Dever
Fine, Kaplan and Black, R.P.C.
1835 Market Street, 28th Floor
Philadelphia, PA  19103
Tel: (215) 567-6565
Fax: (215) 568-5872

Michael D. Hausfeld
Richard A. Koffman
Justine J. Kaiser
Christopher J. Cormier
Cohen, Milstein, Hausfeld & Toll P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Tel:  (202) 408-4600
Fax:  (202) 408-4699

**Plaintiffs' Co-Lead Counsel**

Dianne M. Nast
Roda Nast, P.C.
801 Estelle Drive
Lancaster, PA  17601
Tel: (717) 892-3000
Fax: (717) 892-1200

Robert N. Kaplan
Richard J. Kilsheimer
Matthew P. McCahill
Kaplan Fox & Kilsheimer, LLP
805 Third Avenue, 22nd Floor
New York, NY 10022
Tel:  (212) 687-1980
Fax:  (212) 687-7714

Thomas A. Muzilla
McCray, Muzilla, Smith & Meyers Co., L.P.A.
260 Burns Road, Suite 150
Elyria, OH  44035
Tel.: (440) 366-9930
Fax:  (440) 366-1910

Joseph Goldberg
Dana K. Grubesic
Freedman Boyd Daniels Hollander
  & Goldberg, PA
20 First Plaza, Suite 700
Albuquerque, NM  87102
Tel.: (505) 842-9960
Fax:  (505) 842-1925

Howard I. Langer
Langer & Grogan
1600 Market Street
Philadelphia, PA  19103
Tel.: (215) 419-6544
Fax:  (215) 419-6546

Anthony J. Bolognese
Bolognese & Associates, LLC
1617 JFK Boulevard, Suite 650
Philadelphia, PA  19103
Tel: (215) 814-6750
Fax: (215) 814-6764

Natalie Finkelman Bennett
Shepherd, Finkelman, Miller & Shah, LLC
35 E. State Street
Media, PA  19063
Tel: (610) 891-9880
Fax: (610) 891-9883

Jeffrey Gittleman
Barrack, Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Tel: (215) 963-0600
Fax: (215) 963-0838

J. Bruce McKissock
Geraldine D. Zidow
McKissock & Hoffman, P.C.
1818 Market Street - 13th Floor
Philadelphia, PA  19103
Tel.: (215) 246-2100
Fax:  (215) 246-2144

Howard J. Sedran
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA  19106
Tel.: (215) 592-1500
Fax:  (215) 592-4663

Joseph Kohn
Kohn, Swift & Graf, P.C.
One South Broad Street
Suite 2100
Philadelphia, PA  19107
Tel: (215) 238-1700
Fax: (215) 238-1968

Daniel Gustafson
Gustafson Gluek PLLC
725 Northstar East
608 Second Ave. South
Minneapolis, MN  55402
Tel: (612) 333-8844
Fax: (612) 339-6622

H. Laddie Montague, Jr.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA  19103
Tel.: (215) 419-6544
Fax:  (215) 419-6546

Warren Rubin
Law Offices of Bernard M. Gross
Suite 450, John Wanamaker Building
Juniper and Market Streets
Philadelphia, PA  19107
Tel: (215) 561-3600
Fax: (215) 561-3000

John J. McGrath
McKissock & Hoffman, P.C.
25 Chestnut Street - Suite 108
Haddonfield, NJ  08033
Tel.:  (856) 429-7200
Fax:  (856) 429-0099

Randall L. Payne
Christopher W. Earnest
Sullins, Johnston, Rorbach & Magers
3200 Southwest Freeway
2200 Phoenix Tower
Houston, TX  77027
Tel:  (713) 521-0021
Fax:  (713) 521-3242

Jack Meyerson
Meyerson & O'Neill
1700 Market Street
Suite 3025
Philadelphia, PA  19103
Tel: (215) 972-1376
Fax: (215) 972-0277

Ira Richards
Lisa J. Rodriguez
Trujillo Rodriguez & Richards, LLP
226 W. Rittenhouse Square
Philadelphia, PA  19103
Tel: (215) 731-9004
Fax: (215) 731-9044

Michael L. Roberts
Roberts Law Firm, P.A.
P.O. Box 241790
20 Rahling Circle
Little Rock, AR  72223-1790
Tel:  (501) 821-5775
Fax:  (501) 821-4474

Christopher G. Hayes
Law Offices of Christopher G. Hayes
115 East Chestnut Street
West Chester, PA  19380
Tel:  (610) 431-9505
Fax:  (610) 431-1269

**Additional Plaintiffs' Counsel**