## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re: URETHANE ANTITRUST LITIGATION | MDL No. 1616 |
| | Civil No. 2:04-md-01616-JWL-DJW |
| This document relates to the Polyether Polyol Cases | |

## DEFENDANTS' JOINT MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS
## THE POLYETHER COMPLAINT
## PURSUANT TO RULE 12(b)(6)

SUBMITTED ON BEHALF OF

**BASF AG**
**BASF CORPORATION**
**BAYER AG**
**BAYER CORPORATION**
**BAYER MATERIALSCIENCE LLC**
**THE DOW CHEMICAL COMPANY**
**HUNTSMAN CORPORATION**
**HUNTSMAN LLC**
**LYONDELL CHEMICAL COMPANY**

*Counsel appear on signature page*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................... 1

THE NEW POLYETHER COMPLAINT ............................................................................. 3

ARGUMENT ......................................................................................................................... 5

    A.    Legal Standard for Evaluating the Consolidated Amended Complaint ................. 5

    B.    The Consolidated Amended Complaint Fails to State a Claim Against the
        Defendants. ........................................................................................................... 8

        1.    Plaintiffs' Conclusory Allegations Do Not Plead the Elements of a
            Conspiracy. ............................................................................................... 8

        2.    Plaintiffs Do Not State a Claim for Antitrust Conspiracy Based on
            a Theory of Conscious Parallelism. ....................................................... 13

    C.    Plaintiffs' Fraudulent Concealment Allegations are Insufficient and
        Cannot Toll the Statute of Limitations................................................................ 16

CONCLUSION..................................................................................................................... 18

## TABLE OF AUTHORITIES

### CASES

*In re Aluminum Phosphide Antitrust Litigation*, 905 F. Supp. 1457 (D. Kan. 1995) ........17

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984) ...............................7

*Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357 (10th
   Cir. 1989) ..........................................................................................................................5

*Clulow v. Oklahoma*, 700 F.2d 1291 (10th Cir. 1983) ......................................................16

*Colorado ex rel Woodward v. Western Paving Construction Co.*, 630 F. Supp.
   206 (D. Colo. 1986), *aff'd*, 841 F.2d 1025 (10th Cir. 1989) .........................................16

*Conley v. Gibson*, 355 U.S. 41 (1957) ...............................................................................10

*DM Research, Inc. v. College of America Pathologists*, 170 F.3d 53 (1st Cir.
   1999) ................................................................................................................................12

*Elliot Industrial Ltd. Partnership v. BP America Prod. Co.*, 407 F.3d 1091 (10th
   Cir. 2005) ...........................................................................................................................6

*Fisher v. Balzer*, Civ. No. 88-1716-T, 1991 WL. 86158 (D. Kan. Apr. 30, 1991) .............3

*Hickman v. Taylor*, 329 U.S. 495 (1947) ...........................................................................12

*King & King Enterprises v. Champlin Petroleum Co.*, 657 F.2d 1147 (10th Cir.
   1981) ................................................................................................................................16

*Medical Supply Chain, Investment v. U.S. Bancorp, N.A., No. Civ. A 02-2539-
   CM*, 2003 WL. 21479192 (D. Kan. June 16, 2003), *aff'd*, 112 Fed. Appx. 730
   (10th Cir. 2004) ..................................................................................................................6

*In re Milk Products Antitrust Litigation*, 84 F. Supp. 2d 1016 (D. Minn. 1997) ...............17

*Mitchell v. King*, 537 F.2d 385 (10th Cir. 1976) .................................................................6

*Mountain View Pharmacy v. Abbott Laboratories*, 630 F.2d 1383 (10th Cir. 1980) ..........3

*Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369 (10th Cir. 1979) .............6

*In re Plywood Antitrust Litigation*, 655 F.2d 627 (5th Cir. 1981), *cert. dismissed*,
   462 U.S. 1125 (1983) .........................................................................................................9

*Rutledge v. Boston Woven House & Rubber Co.*, 576 F.2d 248 (9th Cir. 1978)...............16

*S. Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259 (10th Cir. 1998) ...............7

*TV Commc'ns Network, Inc. v. Turner Network Television*, 964 F.2d 1022 (10th Cir. 1992) .................................................................................................................................9

*Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.*, 346 U.S. 537 (1954).........................................................................................................................13

*Twombley v. Bell Atlantic Corp.*, 425 F.3d 99 (2d Cir. 2005).............................................8

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940).........................................5

*In re Universal Serv. Fund Tele. Billing Practices Litigation*, 300 F. Supp. 2d 1107 (D. Kan. 2003) ...............................................................................................13

## STATUTES

15 U.S.C. § 1  ....................................................................................................................5

15 U.S.C. § 15(b)..............................................................................................................16

Fed. R. Civ. P. 8(a) ............................................................................................................6

Fed. R. Civ. P. 8(a)(2).......................................................................................................3

## PRELIMINARY STATEMENT

The Polyether Plaintiffs have filed a Consolidated Amended Complaint ("Complaint" Doc. 131) seeking to launch a nationwide class action on the basis solely of rote, conclusory assertions of antitrust violations. They assert that a nationwide conspiracy existed without alleging any facts or conduct that would demonstrate collusion among the defendants. They assert price fixing without alleging any facts that would demonstrate that prices went up at all, much less that they did so as the result of illegal acts of the defendants. And they assert customer and market allocation without alleging a single fact that would, if proven, show that customers or markets were divided. Given this paucity of allegations, the Complaint is subject to dismissal for failure to state a claim under Rule 12(b)(6).

It is no surprise that the Polyether Plaintiffs' Complaint lacks factual allegations to support its conclusory charges. The complaints that started this MDL proceeding – the poly*ester* complaints – followed directly on the announcement by one chemicals manufacturer (Crompton) that it had sought amnesty from the Department of Justice upon disclosing antitrust misconduct. That investigation involved one particular type of polyester polyol, aliphatic polyester polyols made with adipic acid, which was later identified in a Department of Justice press release dated September 30, 2004, announcing a plea by Bayer Corporation. The polyether-only defendants had no involvement in that conduct or in the related polyester polyol government investigation, and that investigation is not implicated by the Consolidated Amended Complaint. For reasons known only to Crompton, however, its public description of its amnesty application referred to the product involved in broad, non-specific terms – "urethane chemicals" – rather than as one specific product involving a two-company conspiracy. Crompton's disclosure triggered a flood of civil antitrust actions alleging price fixing among "urethanes"

producers. Once those complaints were transferred to this Court, the firms appointed by the

Court as lead counsel for the plaintiffs, recognizing that they could not piggyback on the

Government's narrow poly*ester* polyol investigation to allege collusion with respect to *inter alia*

poly*ethers*, filed a new polyester polyol complaint and dropped the polyether-only defendants.

Evidently discontent at being left out of the action, certain of the counsel who had

filed "urethanes" complaints but had not been selected for the lead role in the MDL then

commenced the poly*ether* complaints, which they filed and fought to keep in New Jersey. Those

polyether complaints had no government investigation on which to rest, and they contained no

allegations of facts or conduct that would constitute an antitrust violation. The entirety of the

substantive allegations of the *Seegott* complaint in New Jersey, for example, was that

> Defendants and their Co-Conspirators did those things that they combined and
> conspired to do, including
>
> (a) agreeing to charge prices at certain levels, and otherwise to fix, increase,
> maintain or stabilize prices of Polyether Polyols, MDI and TDI in the
> United States; and
>
> (b) selling Polyether Polyols, MDI and TDI at the agreed upon prices.[1]

Ten months later, after the Judicial Panel on Multidistrict Litigation's ("JPML") transfer of the

polyether complaints to MDL 1616, the Polyether Plaintiffs now have filed a Consolidated

Amended Complaint that again contains only a brief recitation of bare legal conclusions, and

does no more than their original complaints to provide allegations of fact that, if proven, would

form the foundation for a finding of antitrust liability.

Under the well-established law in the Tenth Circuit, such skeletal complaints do

not meet the standards of Rule 8 and must be dismissed. Rule 8(a) requires not only "a short and

---

[1] Complaint ¶ 39, *Seegott Holdings Inc. v. Bayer et al*, Case 2:04-cv-05850-JAP-MCA, filed November 23, 2004.

plain statement of the claim," but also that the claim statement "show[] that the pleader is

entitled to relief" on the basis of the facts alleged. Fed. R. Civ. P. 8(a)(2). "[A] bare bones

statement of conspiracy or injury under the antitrust laws without any supporting facts permits

dismissal." *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1388 (10th Cir. 1980).

"Although the liberal pleading rules of the federal rules of civil procedure have dispensed with

technical pleading requirements, defendants are nonetheless entitled to 'fair notice of what the

plaintiff's claim is and the grounds upon which it rests.'" *Fisher v. Balzer*, Civ. No. 88-1716-T,

1991 WL 86158, at *7 (D. Kan. Apr. 30, 1991) (quoting *Mountain View*, 630 F.2d at 1386).

Thus, "a complaint in a complex, multi-party suit may require more information than a simple,

single party case." *Mountain View*, 630 F.2d at 1386.

This is such a suit. The defendants in the polyether case,[2] accordingly, request

that the Court dismiss the Consolidated Amended Complaint pursuant to Rule 12(b)(6) for

failure to state a claim upon which relief can be granted.

## THE NEW POLYETHER COMPLAINT

The Consolidated Amended Complaint purports to state an antitrust claim

affecting the markets for "Polyether Polyols Products," which it defines to include polyether

polyols and the two diisocyanates commonly used as reactive agents with polyether polyols,

MDI and TDI. Compl. ¶ 6. Plaintiffs assert that, since January 1999, "Defendants and their co-

conspirators" have executed a conspiracy to "fix, raise, stabilize or maintain at artificially high

---

[2] Defendants joining in this motion are BASF AG, BASF Corporation, Bayer AG, Bayer Corporation,
Bayer MaterialScience LLC, The Dow Chemical Company, Huntsman Corporation, Huntsman LLC and
Lyondell Chemical Company (collectively "Defendants"). BASF AG joins this motion instead of filing a
separate motion pursuant to Rule 12(b)(2), challenging personal jurisdiction, in light of plaintiff Industrial
Polymers, Inc.'s agreement to voluntarily dismiss its claims against BASF AG.

3

levels the prices they charged and to allocate customers and markets for Polyether Polyol Products in the United States." *Id.* ¶¶ 44-45.

The sole description of the purported conspiracy is contained in paragraph 46 of the Complaint, which asserts that "Defendants and their co-conspirators did those things that they combined and conspired to do," including "participating in meetings and conversations among themselves during which they agreed" to fix prices, "issuing price announcements" consistent with selling at the agreed prices, "allocating customers and markets," and "participating in meetings and conversations" to implement the agreement. *Id.* ¶ 46(a)-(d). Despite the contention that the purported conspiracy has continued for nearly seven years, the Complaint contains not a single allegation of any specific meeting or conversation in which the supposed conspiracy was developed or furthered. It identifies no dates, even approximate, for such unspecified meetings or conversations – whether at the beginning, middle, or end of the supposed conspiracy. It identifies no locations where the supposed conspiratorial meetings are alleged to have occurred. It identifies no participants in the supposed meetings or conversations. Indeed, there is no allegation that any specific defendant met, communicated, or took any specific step in concert with any other specific defendant. There is no allegation that connects any of the defendants, much less each of them acting in concert, to any purported meeting or conversation.[3]

---

[3] The Complaint contains one paragraph, in the section describing the markets for the products at issue, that asserts that prices for all three products (polyether polyols and the two diisocyanates) are "interrelated," and that increases in prices for polyether polyols, for MDI, and for TDI tend to be announced at the same time. Compl. ¶ 41 (referring to certain price increase announcements in 2001-03). Notably, the Complaint contains no allegation that would link the announcements described to any purported meeting or conversation among defendants. Nor does it allege that the announcements were effective. Plaintiffs certainly know that announced price increases in this industry often fail to hold, and it is conspicuous that their Complaint alleges "announced increases" (*e.g.*, *id.* ¶¶ 42, 43) rather than *actual* increases.

4

This paucity of substance is telling in light of the responses that lead counsel for the Polyether Plaintiffs offered in response to the Court's question, at the August 29 status conference, about "[w]hat gave rise to this set of [polyether] lawsuits?" Transcript of Proceedings, Aug. 29, 2005 ("Tr."), at 11. Counsel replied that an extended investigation had been underway "since fall of 2003," during which "numerous witnesses" had been interviewed, "numerous purchasers" had been consulted, and experts in polymer science and in economics had been engaged to develop supporting evidence. Tr. at 11-12; *id.* at 46 ("[w]e have spent 18 months investigating this case"). Yet the operative conspiracy allegations of the Complaint are confined to a single cursory paragraph.

## ARGUMENT

A.      **Legal Standard for Evaluating the Consolidated Amended Complaint**

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. In order to state a claim of horizontal price-fixing under Section 1, a plaintiff must allege four elements:

> (1) the existence of an agreement, combination or conspiracy, (2) among
> actual competitors (*i.e.*, at the same level of distribution), (3) with the
> purpose or effect of "raising, depressing, fixing, pegging, or stabilizing the
> price of a commodity" (4) in interstate or foreign commerce.

*Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989) (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 216-19 (1940)). Under Tenth Circuit law, a conspiracy is not established – and an antitrust complaint should be dismissed – if it relies on allegations of "conscious parallel business behavior," absent an assertion that the consciously parallel action engaged in by the defendants "was contrary to their economic self-

interest so as not to amount to good faith business judgment." *Cayman Exploration*, 873 F.2d at

1361 (quoting *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 559 (5th Cir. 1980)).

   The Federal Rules require a complaint to contain "a short and plain statement of

the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)  Both parts of Rule

8(a) must be satisfied:  while ornate pleading requirements are dispensed with by requiring only

a "short and plain statement" of the claim, that statement must nonetheless demonstrate that the

plaintiff is entitled to the relief the complaint seeks.  As this Court recently emphasized in a

decision affirmed by the Tenth Circuit:

> "Although the modern pleading requirements are quite liberal, a plaintiff
> must do more than cite relevant antitrust language to state a claim for
> relief." *TV Communications Network, Inc*, 964 F2d [1022] at 1024 (10th
> Cir. 1992) (*citing Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d
> 1383, 1387 (10th Cir. 1980).  A plaintiff must allege sufficient facts to
> support a cause of action under the antitrust laws.  *Id.; see also Perington
> Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369 (10th Cir. 1979)
> (holding that to survive a motion to dismiss, a complaint stating violations
> of the Sherman Act "must allege facts sufficient, if they are proved, to
> allow the court to conclude that claimant has a legal right to relief").
> ***Conclusory allegations that the defendant violated those laws are
> insufficient. Id.***

*Med. Supply Chain, Inv. v. U.S. Bancorp, N.A.*, No. Civ. A 02-2539-CM 2003 WL 21479192, at

*3 (D. Kan. June 16, 2003) (Murguia, J.) (emphasis added), *aff'd*, 112 Fed. Appx. 730 (10th Cir.

2004).  In deciding a Rule 12(b)(6) motion, the Court accepts "all well pleaded facts in the

complaint" but need not accept mere "conclusory allegations." *Elliot Indus. Ltd. P'ship v. BP

America Prod. Co.*, 407 F.3d 1091, 1123 (10th Cir. 2005) (quoting *Mitchell v. King*, 537 F.2d

385, 386 (10th Cir. 1976)); *see also S. Disposal, Inc. v. Texas Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998) ("we need not accept Appellant's conclusory allegations as true").[4]

      Moreover, the Tenth Circuit recognizes that careful scrutiny of complaints in complex antitrust class actions is both justified and necessary to effectuate Rule 8's requirement that the complaint's statement of claim must demonstrate an entitlement to the relief sought. *Cayman Exploration* approvingly noted that "courts have recognized that '[t]he heavy costs of modern federal litigation, especially antitrust litigation, and the mounting caseload pressures on the federal courts, counsel against launching the parties into pretrial discovery if there is no reasonable prospect that the plaintiff can make out a cause of action from the events narrated in the complaint.'" *Cayman Exploration*, 873 F.2d at 1359 n.2 (quoting *Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 654 (7th Cir. 1984)).[5]  Therefore, "courts may require some minimal and reasonable particularity in pleading before they allow an antitrust action to proceed." *Cayman Exploration*, 873 F.2d at 1359 n.2 (*citing Assoc. Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 528 n.17 (1983)) ("Certainly in a case of this magnitude, a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."); *Mountain View*, 630 F.2d at 1388 ("a bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal").

---

[4] *See also Fisher*, 1991 WL 86158, at *7 (quoting *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802, 805 (6th Cir. 1988)) ("The essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on a defendant's 12(b)(6) motion.")

[5] *See also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106-07 (7th Cir. 1984) ("When the requisite elements are lacking, the costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint.").

A court that follows this Tenth Circuit approach is not employing a heightened pleading standard for antitrust cases.[6]  The Tenth Circuit made this clear in *Mountain View Pharmacy*, an antitrust action against multiple drug manufacturers:

> The pleading standard set by Rule 8(a)(2) does not change from case to case.  In New Home Appliance we noted that the "liberal rules of pleading are as applicable to (antitrust) cases as any other case."  250 F.2d at 883.  However, while the pleading standard does not vary, what constitutes sufficient notice to enable a defendant to formulate a responsive pleading does change from case to case.  To provide adequate notice, a complaint in a complex, multi-party suit may require more information than a simple, single party case.

630 F.2d at 1386-87.  The court must apply *all* of Rule 8 to *each* defendant.  Where a plaintiff seeks to obtain relief against multiple defendants across an entire industry on the basis of allegations that price movements in that industry were the result of an ongoing program of collusion, the Court rightfully can expect and require more than cursory and conclusory assertions as to the alleged conduct that would support a price fixing claim.

## B. The Consolidated Amended Complaint Fails to State a Claim Against the Defendants.

### 1. Plaintiffs' Conclusory Allegations Do Not Plead the Elements of a Conspiracy.

To state a Sherman Act § 1 claim, Plaintiffs' Consolidated Amended Complaint must allege facts sufficient to show that the defendants conspired.  The Complaint, however, contains nothing more than the "bare bones statement of conspiracy" that is insufficient in this Circuit to sustain an antitrust claim.  *Mountain View*, 630 F.2d at 1388.

The operative section of the Complaint begins by simply parroting the statutory standard and elements that make up a Section 1 claim.  Paragraph 44 alleges that defendants

---

[6]  *Cf. Twombley v. Bell Atl. Corp.*, 425 F.3d 99 (2d Cir. 2005).

engaged in a "contract, combination or conspiracy." Paragraph 45 recites the base elements of a Section 1 claim – including the existence of an "agreement" by defendants to "fix, raise, stabilize or maintain" prices – as recognized by the Tenth Circuit. *See Cayman Exploration*, 873 F.2d at 1361. Merely pleading the statutory elements, of course, does not meet Rule 8's requirement that facts be alleged to show that those elements can be satisfied under plaintiffs' theory of the case. *TV Commc'ns Network, Inc. v. Turner Network Television*, 964 F.2d 1022, 1024 (10th Cir. 1992).[7]

      Plaintiffs' original complaints went no further, and thus clearly would have been dismissible for failure to state a claim that a conspiracy existed. *See Seegott* original complaint; note 2 *supra*. For purposes of the new Polyether Complaint, plaintiffs have added one boilerplate paragraph asserting that "Defendants" participated in "meetings and conversations" to fix prices and allocate customers, issued "price announcements," and participated in "meetings and conversations" to "implement, adhere and police" the alleged agreement. Compl. ¶ 46. These rote phrases amount to no more than the "conclusory allegations" that are uniformly deemed inadequate in this Circuit to meet the Rule 8 requirements. *See Elliot Indus.*, 407 F.3d at 1123; *Med. Supply Chain*, 2003 WL 21479192, at *3; *Fisher*, 1991 WL 86158, at *7. The issue in reviewing a Rule 12(b)(6) motion is whether "plaintiff can make out a cause of action from the events narrated in the complaint," *Cayman Exploration*, 873 F.2d at 1359 n.2. Where a complaint narrates *no* events and relies solely on generic assertions that an alleged conspiracy included "meetings and conversations" – with nothing to identify *which* defendants are alleged to

---

[7] "Despite the liberality of modern rules of pleading, a complaint must still contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory" in order to survive a Rule 12(b)(6) motion. *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. 1981), *cert. dismissed*, 462 U.S. 1125 (1983).

9

have participated in meetings, *which* meetings occurred, in *which* time period (even which year) those meetings were held, or *what* action resulted from the meetings – it does not succeed in "showing that the pleader is entitled to relief" under Rule 8. Nor does it "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47 (1957), the fundamental objective that any complaint must achieve even under liberal pleading standards.

Plaintiffs' inability to particularize their conclusory allegations after so "many months" of investigation is telling in light of the Declaration of Allen D. Black (Feb. 26, 2005), initially submitted to the JPML in support of the then-pending transfer and consolidation motions, and subsequently presented by Plaintiffs to this Court during the August 29th hearing. Mr. Black avers that as long ago as last February, his firm had "devoted nearly 600 hours of lawyer and paralegal assistant time to the investigation of this matter ...." *Id.* ¶ 6. This purported investigation "interviewed witnesses ... interviewed purchasers of the products at issue and ... examined their documents to determine transactional prices they have paid for those products ... " *Id.* ¶ 3. And further: "We have engaged and worked with an expert economist who has analyzed both publicly available information and transactional price information and documents we obtained from purchasers." *Id.* ¶ 6. The Consolidated Amended Complaint reflects none of this. Instead, the general conclusory statements Plaintiffs have chosen to rely on fail to provide the necessary fair notice, let alone state a claim, as required by the Federal Rules.

It is no answer to assert, as Plaintiffs may, that they cannot be expected to unearth all the details of an alleged conspiracy without discovery and need only plead at the highest level of generality. First, that is not the Rule 8 law in the Tenth Circuit: a party that wishes to commence complex, multi-party litigation must provide allegations that put each defendant on

10

notice of how that defendant violated the law. *Mountain View*, 630 F.2d at 1386-87. Plaintiffs

have chosen to seek an antitrust recovery against all of the producers of polyether polyols and

diisocyanates through blunderbuss allegations that all producers entered into and maintained an

industry-wide conspiracy for multiple years to inflate prices. Having made that choice, Plaintiffs

do not have the option to assert that the purported conspiracy was too big, or too long-lasting, or

too effective to absolve them of the obligation to provide *some* concrete factual account of how,

when, and by what means the conspiracy was accomplished. Tenth Circuit law requires them to

support their complex multi-party, multi-product claim with commensurate allegations that meet

the Rule 8 threshold.[8]

That Plaintiffs have not done so is not a result of laziness or lack of acumen. It is

a result of the fact that Plaintiffs' very experienced antitrust counsel simply have not found a

factual basis, despite more than 18 months of purported digging, for accusing the polyether

producers of a price fixing conspiracy. The fact that two producers of a different product

(aliphatic poly*ester* polyols made with adipic acid) have admitted to a two-company agreement

---

[8] The Rule 8 requirements are specific as to each named defendant. The Consolidated Amended Complaint alleges that three separate chemical products (polyether polyols, MDI and TDI) are the subject of the alleged multi-party conspiracy, yet alleges no facts that would support a plausible inference of participation in the purported conspiracy by an individual defendant that produces only one of these products for general sales. *Cf. TV Commc'ns Network*, 964 F.2d at 1026-27 (affirming dismissal under Rule 12(b)(6) where plaintiffs' allegations failed to specify a "rational motive" to support "an inference of specific intent to conspire to achieve the stated goal of the conspiracy."). If, in fact, Plaintiffs are alleging each defendant joined a conspiracy relating to three distinct chemical products, they do not allege facts from which the Court and the trier of fact can infer that their conspiracy theory makes economic sense. For example, Plaintiffs surely know that not all of the defendants manufacture each of the three products at issue, yet the Consolidated Amended Complaint lumps polyether polyols, MDI, and TDI into a single multi-product definition of "Polyether Polyols Products" (Compl. ¶¶ 6, 21) – obscuring rather than elucidating the differences between the products and each defendant's relationship to them. Nor does the Complaint allege any facts from which the Court or the trier of fact could infer that any defendant has any reason to take on the risks and costs of a multiple-product conspiracy. Each defendant is entitled to fair notice of the facts and theory of this purported multiple-product conspiracy and the Consolidated Amended Complaint fails to provide that.

11

obviously provides no assistance to the Polyether Plaintiffs in meeting their pleading burden with respect to a poly*ether* conspiracy. If after laboring to fashion a polyether case for many months Plaintiffs have nothing more than the conclusory assertion that unspecified "Defendants" conducted unspecified "meetings," it is clear that Plaintiffs are just speculating, in the hope that they will stumble onto a genuine case if they can get into discovery. "But the discovery process is not available where, at the complaint stage, a plaintiff has nothing more than unlikely speculations. While this may mean that a civil plaintiff must do more detective work in advance, the reason is to protect society from the costs of highly unpromising litigation." *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999).

Though "the time-honored cry of 'fishing expedition'" is no bar to expansive discovery into "the facts underlying [the] opponent's case,"[9] instances arise in which a plaintiff is fishing not for evidence that might support its claim, but for the claim itself. This is one. Rule 8, however, guards against plaintiffs throwing out a trawling net to sweep in an industry's entire conduct over a several-year period, on the basis of nothing more than rank speculation that unspecified industry participants may have met at some unstated point to conspire over industry prices. That is what the Polyether Plaintiffs' Complaint seeks to do here, and it should be dismissed for that reason.

---

[9] *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). It bears emphasis that the Supreme Court's rejection of the "fishing expedition" mantra in *Hickman* arose in the context of deposition discovery bearing on properly stated claims, not of a complaint that fails to go beyond alleging the basic elements of the legal claim involved. *See DM Research*, 170 F.3d at 55 ("Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.").

## 2.   Plaintiffs Do Not State a Claim for Antitrust Conspiracy Based on a Theory of Conscious Parallelism.

Though their Consolidated Amended Complaint does not attempt to support the conspiracy allegation through an assertion of parallel pricing, Plaintiffs can be counted on to defend the Complaint as reflecting claims that the polyether producers engaged in conscious parallelism that supports the inference that their prices were coordinated and fixed during the class period, rather than the result of competition. That angle too is foreclosed by Tenth Circuit law.

The Supreme Court and the Tenth Circuit have long recognized that companies may lawfully engage in parallel business behavior, so long as they do so without coordination. As a matter of law, such parallel business behavior, without more, does not suffice to establish a conspiracy under antitrust laws. *Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 541 (1954); *Cayman Exploration Corp.*, 873 F.2d at 1361. Rather, "[t]he antitrust plaintiff who relies on a theory of 'conscious parallelism' must establish that 'defendants engaged in consciously parallel action ... which was contrary to their economic self-interest so as not to amount to good faith business judgment.'" *Cayman Exploration*, 873 F.2d at 1361 (internal quotation omitted). As this Court observed in the *Universal Service Fund* MDL litigation, "implicit in the Tenth Circuit's reasoning in *Cayman Exploration* is that in order to survive a Rule 12(b)(6) motion a plaintiff alleging price-fixing must *plead* parallel conduct and additional evidence (*i.e.*, a plus factor) sufficient to give rise to an inference that the conspirators' conduct was interdependent." *In re Universal Serv. Fund Tele. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1147 (D. Kan. 2003) (Lungstrum, J.) (emphasis in original). Courts in this Circuit accordingly dismiss claims where, as here, a complaint fails to allege facts that would

13

support an inference that parallel actions taken by the defendants were contrary to the
defendant's economic interests absent an agreement. *Cayman Exploration*, 873 F.2d at 1361.

        Plaintiffs' Consolidated Amended Complaint contains no allegations that would
satisfy the parallel behavior requirement in this Court. There is no allegation of parallel conduct
that was contrary to each defendant's legitimate economic interests. Plaintiffs certainly must
concede that announcing price increases, and then attempting to implement them with customers,
is a fundamental fact of business life for any producer of any chemicals product, including
polyether polyols, and is wholly consistent with the producer's independent economic interests.
The Complaint's allegations related to the timing of price announcements on polyether polyols,
MDI, and TDI (Compl. ¶ 41) therefore do nothing to support an inference of collusive action
underlying price increase announcements.[10]

        The *Cayman Exploration* rule remains the law on parallel behavior allegations in
the Tenth Circuit, and with good reason. In a wide range of industries, businesses observe and
respond to their competitors' pricing announcements and to customers' reports of price increase
communications they receive from the competition. Observing and responding to price
announcements in the market is not only lawful, it is a fundamental business necessity without
which markets could not function. So long as competitors do not agree among themselves as to
price increase announcements or their responses to them, they are free to respond as business
conditions dictate – to match the announced increase, to undercut it, or to wait and see. Nothing
in the Polyether Complaint suggests that the polyether polyols market has operated outside the

---

[10] *Compare Universal Serv. Fund*, 300 F. Supp. 2d at 1147-48 (sufficient parallel business behavior
alleged by detailed allegations that each defendant implemented new, identical, and not-previously-
utilized surcharges and contract terms at the same time).

14

normal pattern of price announcements, independent business responses, and vigorous competition.

For an antitrust complaint to survive on the basis of these routine allegations, with no indication of collusive conduct or unexpected market practices, would mean that *any* competitive industry can be dragged into extended and disruptive antitrust litigation with attendant burdensome discovery simply where a customer asserts – without any concrete basis – that price increases *might have* resulted from collusive meetings and communications, rather than from the operation of ordinary market forces. For example, professional services firms such as accounting firms or law firms customarily announce billing rate increases early in the year, while steel companies might all raise their prices contemporaneously in response to an increase in the cost of pig iron. A complaint alleging that these announced increases were the product of suspected "meetings and conversations" among the firms cannot be sufficient, absent some specific basis for alleging collusion, to compel the launch of a full-bore antitrust lawsuit. Yet that is the type of result that would become common if Rule 8 is misread to permit plaintiffs to plead antitrust conspiracies without requiring more than gross speculation that price increases arose from improper collusion rather than from the market competition that, far more often than not, explains price movements in the national economy.

Accordingly, to the extent Plaintiffs rely on a theory of conscious parallelism to sustain their Complaint beyond the pleading threshold, Tenth Circuit law directs that the Complaint must be dismissed.

C.    **Plaintiffs' Fraudulent Concealment Allegations are Insufficient and Cannot Toll the Statute of Limitations.**

The Consolidated Amended Complaint purports to assert antitrust claims for a period beginning January 1, 1999. Compl. ¶ 2.[11] To the extent it seeks to assert claims for the period January 1999-November 2000, the Complaint must be dismissed as beyond the four-year federal antitrust limitations period.

Claims under the Sherman Act must be brought within four years. *See* 15 U.S.C. § 15(b); *Colorado ex rel Woodward v. Western Paving Constr. Co.*, 630 F. Supp. 206, 210 (D. Colo. 1986), *aff'd*, 841 F.2d 1025 (10th Cir. 1989) (equally divided *en banc* court). The initial polyether complaint was not filed until November 23, 2004, resulting in a statutory bar against Section 1 claims that accrued prior to November 24, 2000. The Polyether Plaintiffs' Consolidated Amended Complaint attempts to circumvent the limitations period by adding a claim of fraudulent concealment, premised on the allegation that Defendants affirmatively concealed the alleged conspiracy in a manner Plaintiffs could not discover. Compl. ¶¶ 49-52.

To sustain a fraudulent concealment claim, Plaintiffs are "required to 'allege facts showing affirmative conduct upon the part of the defendant which would … lead a reasonable person to believe that he did not have a claim for relief.'" *Clulow v. Oklahoma*, 700 F.2d 1291, 1301 (10th Cir. 1983) (quoting *Rutledge v. Boston Woven House & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978)). The standard is "stringent," requiring the party alleging fraudulent concealment to demonstrate three elements: (1) affirmative acts of concealment by the defendant; (2) successful concealment from the plaintiff; and (3) plaintiff's due diligence until discovery of the facts. *Western Paving*, 630 F. Supp. at 210; *King & King Enters. v. Champlin*

---

[11] The class period in the original polyether complaint in New Jersey (*Seegott*) asserted a class period beginning in November 2000. *Seegott* Complaint, *supra* n.2, ¶ 37.

16

*Petroleum Co.*, 657 F.2d 1147, 1154 (10th Cir. 1981). This is in keeping with the requirement of Rule 9(b) of the Federal Rules that allegations of fraud must be pled with particularity. *See In re Aluminum Phosphide Antitrust Litig.*, 905 F. Supp. 1457, 1469 (D. Kan. 1995).

Judged under this standard, Plaintiffs fail to satisfy their burdens either to plead the necessary affirmative actions of concealment by the Defendants or to demonstrate their exercise of due diligence. The Consolidated Amended Complaint's "Fraudulent Concealment" section repeats the earlier general assertion that Defendants met "secretly" to discuss prices and customers (Compl. ¶ 51(a)), but fails to identify any specific meeting, time period, or participant. It alleges unspecified agreements and communications among Defendants not to discuss the purported conspiracy (Compl. ¶ 51(b)), but provides not a single particular. "Vaguely alleging that 'something' occurred at 'sometime' fails to satisfy the [affirmative concealment] requirement." *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1022 (D. Minn. 1997) (granting motion to dismiss of fraudulent concealment claims in antitrust action); *In re Aluminum Phosphide Antitrust Litig.*, 905 F. Supp. at 1469 (dismissing at summary judgment stage fraudulent concealment claim because of plaintiffs' failure to cite affirmative actions by defendants regarding alleged meetings).

Similarly, the Consolidated Amended Complaint does not adequately plead successful concealment from the plaintiff. Plaintiffs allege in conclusory fashion that they did not know of and could not have discovered the alleged anticompetitive conduct because the Defendants concealed it. Compl. ¶ 50. As support, Plaintiffs rely, of course, on the fact that the alleged concealment occurred at the unidentified meetings. *Id.* ¶ 51. Plaintiffs thus rely on "circular" logic that is wholly dependent on their inadequate concealment allegations. *In re Milk*

*Prods. Antitrust Litig.*, 84 F. Supp. 2d at 1022. Plaintiffs' failure to allege affirmative acts by Defendants regarding concealment necessarily defeats their concealment argument.

Finally, the allegation that Plaintiffs were sufficiently diligent is contradicted by the words of Plaintiffs' own counsel. Plaintiffs allege that the "deceptive" measures of Defendants prevented Plaintiffs from discerning the alleged conspiracy "through reasonable diligence." Compl. ¶ 51. Yet Plaintiffs' counsel has represented that they began investigation into this alleged conspiracy in 2003. Tr. at 11. This investigation allegedly resulted in "evidence" of misconduct. *Id.* Yet Plaintiffs raised no allegation concerning the alleged polyether conspiracy until the first polyether complaint was filed in late November 2004. Plaintiffs remained silent on their discoveries concerning polyether polyols even as the series of "urethanes" complaints appeared in March-April 2004, following Crompton's DOJ amnesty disclosure. Surely "[t]his fact alone would seem to excite attention and thus put Plaintiffs on inquiry notice." *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d at 1024.

The "fraudulent concealment" allegations of the Complaint accordingly fail to satisfy the particularity requirements of Rule 9(b), as well as the three-element standard recognized in this Circuit for such claims.

## CONCLUSION

For the foregoing reasons, Defendants in the Polyether action respectfully request that this Court dismiss the Consolidated Amended Complaint.

Dated:  November 10, 2005                    Respectfully Submitted,

| | |
|---|---|
| *David F. Oliver (m 7R7* <br> David F. Oliver (KS Bar #70731) <br> BERKOWITZ OLIVER WILLIAMS <br> SHAW & EISENBRANDT LLP <br> Two Emanuel Cleaver II Boulevard, Suite 500 <br> Kansas City, Missouri 64112 <br> Telephone (816) 561-7007 <br> Facsimile (816) 561-1888 <br><br> Andrew S. Marovitz <br> Terri A. Mazur <br> Jason B. Fliegel <br> MAYER BROWN ROWE & MAW LLP <br> 71 S. Wacker Drive <br> Chicago, IL 60606 <br> Telephone (312) 782-0600 <br> Facsimile (312) 701-7711 <br> *Counsel for BASF AG and BASF Corporation* | *Joseph G Matye by 7R7* <br> Joseph G. Matye (KS Bar #16376) <br> James R. Eiszner <br> SHOOK, HARDY & BACON, LLP <br> 2555 Grand Boulevard <br> Kansas City, Missouri 64108-2613 <br> Telephone (816) 474-6550 <br> Fax (816) 421-5547 <br><br> William V. O'Reilly <br> J. Andrew Read <br> Mark Glassman <br> JONES DAY <br> 51 Louisiana Avenue, NW <br> Washington, DC  20001 <br> Telephone (202) 879-3939 <br> Fax (202) 626-1700 <br> *Counsel for Bayer AG, Bayer Corporation, and BayerMaterialScience LLC* |
| *Floyd R Finch* <br> Floyd R. Finch, Jr. (KS Bar #16993) <br> Shelley A. Runion (KS Bar #14941) <br> BLACKWELL SANDERS PEPER <br>     MARTIN LLP <br> 4801 Main Street <br> Suite 1000 <br> Kansas City, Missouri 64112 <br> Telephone (816) 983-8000 <br> Facsimile (816) 983-8080 <br><br> Hamilton Loeb <br> Jeremy P. Evans <br> PAUL HASTINGS JANOFSKY & <br>     WALKER LLP <br> 875 15th Street, N.W. <br> Washington, D.C. 20005 <br> Telephone (202) 551-1700 <br> Facsimile (202) 551-1705 <br> *Counsel for The Dow Chemical Company* | *Brian R. Markley by 7R7* <br> Brian R. Markley (KS Bar #17485) <br> STINSON MORRISON HECKER LLP <br> 1201 Walnut, Suite 2200 <br> Kansas City, Missouri 64106 <br> Direct Dial: (816) 691-3215 <br> Facsimile: (888) 290-2657 <br><br> James S. Jardine <br> Justin T. Toth <br> John W. Mackay <br> RAY, QUINNEY & NEBEKER PC <br> 36 South State Street, Suite 1400 <br> Salt Lake City, UT 84111 <br> Telephone: (801) 532-1500 <br> Facsimile: (801) 532-7543 <br> *Counsel for Huntsman Corporation and Huntsman LLC* |

19

_Charles W. German_  By TRF
Charles W. German  KS Fed. 70040
Phillip G. Greenfield  KS Fed. 70044
Matthew Hamner  KS Fed. 20908
ROUSE HENDRICKS GERMAN MAY PC
One Petticoat Lane Building
1010 Walnut, Suite 400
Kansas City, Missouri 64106
Telephone (816) 471-7700
Fax (816) 471-2221

Robert W. Fleishman
Jennifer Quinn-Barabanov
Erica Mueller
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., N.W.
Washington, D.C.  20036-1795
Telephone (202) 429-3000
Fax (202) 429-3902
*Counsel for Lyondell Chemical Company*

LEGAL_US_E # 70197380.5

## CERTIFICATE OF SERVICE

I here by certify that on November 10, 2005, I caused a true and correct copy of the foregoing document to be electronically filed by the Clerk of the Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

W. Joseph Bruckner (wjbruckner@locklaw.com)
Lockridge Grindal Nauden, PLLP
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401-2179

Roy Morrow Bell (rbell@rdblaw.com)
Ross, Dixon & Bell, LLP
550 West B Street, Suite 400
San Diego, CA 92101-3599

Steven A. Kanner (skanner@muchshelist.com)
Much Shelist Freed Denenberg
  Ament & Rubenstein P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL 60606-1615

Susan G. Kupfer (skupfer@glancylaw.com)
Glancy Binkow & Goldberg LLP
455 Market St., Suite 1810
San Francisco, CA 84105

Plaintiffs' Co-Lead Counsel (Polyester Plaintiffs)

George A. Hanson (hanson@sshwlaw.com)
Norman E. Siegel (siegel@sshwlaw.com
Stueve Siegel Hanson Woody LLP
330 West 47th Street, Suite 250
Kansas City, MO 64112

Plaintiffs' Liaison Counsel (Polyester Plaintiffs)

Ian Simmons (isimmons@comm.com)
Benjamin Bradshaw
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, DC 20006-4001

W. Joseph Hatley (jhatley@lathropgage.com)
Lathrop & Gage L.C.
10851 Mastin Blvd.
Building 82, Suite 1000
Overland Park, KS 66210-2007

Counsel for Defendants Crompton Corporation and Uniroyal Chemical Company, Inc. (Polyester Defendants)

Tim J. Moore (tmoore@morrislaing.com)
Robert W. Coykenall (rcoykenall@morrislaing.com)
Roger N. Walter (rwalter@morrislaing.com)
Morris, Laing, Evans, Brock & Kennedy, Chartered
Old Town Square
300 North Mead – Suite 200
Wichita, KS 67202

Plaintiffs' Liaison Counsel (Polyether Plaintiffs)

Allen D. Black (ablack@finekaplan.com)
Roberta D. Liebenberg (rliebenberg@finekaplan.com)
Donald L. Perelman (dperelman@finekaplan.com)
Gerard A. Dever (gdever@finekaplan.com)
Fine, Kaplan and Black, R.P.C.
1835 Market Street, 28th Floor
Philadelphia, PA  19103

Michael D. Hausfeld (mhausfeld@cmht.com)
Richard A. Koffman (rkoffman@cmht.com)
Justine J. Kaiser (jkaiser@cmht.com)
Christopher J. Cormier (ccormier@cmht.com)
Cohen, Milstein, Hausfeld & Toll P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005

Plaintiffs' Co-Lead Counsel (Polyether Plaintiffs)

Floyd R. Finch
Attorney