# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| _____ ) | |
| IN RE: URETHANE ANTITRUST ) | No. 04-MD-1616-JWL |
| LITIGATION ) | |
| _____ ) | |
| ) | |
| This Document Relates To: ) | |
| The Polyether Polyol Cases ) | |
| _____ ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION
TO DISMISS THE POLYETHER COMPLAINT
PURSUANT TO RULE 12(b)(6)**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 4

    A.    The Governing Standards Applicable to Defendants' Motion to Dismiss ............ 4

    B.    The Complaint Readily Satisfies the Notice Pleading Requirements of Rule 8 ................................................................................................................ 7

    C.    The Complaint Must Be Evaluated As A Whole; Defendants May Not Dismantle The Conspiracy Allegations .............................................................. 15

    D.    The Cases Relied Upon By Defendants Are Inapposite or Outdated ................. 17

    E.    Defendants' Conscious Parallelism Arguments Are Nothing More Than a Red Herring ..................................................................................................... 19

    F.    The Complaint Sufficiently Alleges Fraudulent Concealment Under Rule 9(b) ................................................................................................................... 21

        1.    The Complaint Adequately Alleges Wrongful Concealment ................. 22

        2.    The Complaint Adequately Alleges Successful Concealment ................ 23

        3.    The Complaint Adequately Alleges Due Diligence ................................ 24

III.   CONCLUSION ................................................................................................. 26

## TABLE OF AUTHORITIES

### CASES

*Alco Standard Corp. v. Schmid Brothers, Inc.*,
    647 F. Supp. 4 (S.D.N.Y. 1986)......................................................................13

*Aldrich v. McCulloch Properties, Inc.*
    627 F.2d 1036 (10th Cir. 1980) ...................................................................23

*Alston v. Parker*,
    363 F.3d 229 (3d Cir. 2004)..........................................................................6

*In re Aluminum Phosphide Antitrust Litig.*,
    905 F. Supp. 1457 (D. Kan. 1995)........................................................22, 23,
                               26

*American Tobacco Co. v. United States*,
    328 U.S. 781 (1946)....................................................................................17

*In re Automotive Refinishing Paint Antitrust Litig.*,
    MDL No. 1426, slip op. (E.D. Pa. May 16, 2002)...........................................3

*Brader v. Allegheny Gen. Hosp.*,
    64 F.3d 869 (3d Cir. 1995)............................................................................7

*Car Carriers, Inc. v. Ford Motor Co.*,
    745 F.2d 1101 (7th Cir. 1984) ...................................................................19

*In re Carbon Black Antitrust Litig.*,
    No. Civ. A. 03-10191-DPW, 2005 WL 102966 (D. Mass. Jan. 18, 2005).................17, 21

*In re Catfish Antitrust Litig.*,
    826 F. Supp. 1019 (N.D. Miss. 1993)....................................................23, 25

*Cayman Exploration Corp. v. United Gas Pipe Line Co.*,
    873 F.2d 1357 (10th Cir. 1989) ............................................................3, 12,
                               18

*Champagne Metals v. Ken-Mac Metals, Inc.*,
    No. CIV-02-528-C, 2002 U.S. Dist. LEXIS 27722 (W.D. Okla. Oct. 1, 2002)...........2, 12

*In re Commercial Explosives Litig.*,
    Civ. No. 2:96-MD-1093S, 1996 WL 795270 (D. Utah Dec. 20, 1996) ................... *passim*

*In re Commercial Explosives Litig.*,
    945 F. Supp. 1489 (D. Utah 1996)..........................................................................22, 23, 25

*Confre Cellars, Inc. v. Robinson,*
    No. Civ. A. 01-N-1060, 2002 WL 32376945 (D. Colo. Mar. 6, 2002) ........................3, 18

*Conley v. Gibson*,
    355 U.S. 41 (1957)....................................................................................................5

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
    370 U.S. 690 (1962)..................................................................................................17

*Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*,
    854 F.2d 802 (6th Cir. 1988) ....................................................................................19

*Digital Dist., Inc. v. Cema Dist.*,
    No. 96-55264, 1997 WL 377100 (9th Cir. Jul. 3, 1997) ............................................9

*DM Research, Inc. v. College of Am. Pathologists*,
    170 F.3d 53 (1st Cir. 1999)......................................................................................20

*In re Electrical Carbon Prods. Antitrust Litig.*,
    333 F. Supp. 2d 303 (D.N.J. 2004) ..........................................................................15

*Elliott Indus. Ltd. P'ship v. BP America Prod. Co.*,
    407 F.3d 1091 (10th Cir. 2005) ................................................................................19

*Expoconsul Int'l, Inc. v. A/E System, Inc.*,
    711 F. Supp. 730 (S.D.N.Y. 1989)..........................................................................14

*In re Fine Paper Antitrust Litig.*,
    685 F.2d 810 (3d Cir. 1982)......................................................................................17

*Fisher v. Balzer*,
    Civ. A. No. 88-1716-T, 1991 WL 86158 (D. Kan. Apr. 30, 1991) ...................................19

*In re Flat Glass Antitrust Litig.*,
    385 F.3d 350 (3d Cir. 2004).......................................................................................10

*Full Draw Productions v. Easton Sports*,
    182 F.3d 745 (10th Cir. 1999) ...................................................................................8

*General Refractories Co. v. Stone Container Corp.*,
    Nos. 98-C-3543, 98-C-4612, 98-C-4659, 1999 WL 14498 (N.D. Ill. Jan. 5, 1999) .....3, 18

*In re High Fructose Corn Syrup Antitrust Litig.*,
   295 F.3d 651 (7th Cir. 2002) ......................................................9

*Hospital Bldg. Co. v. Trustees of Rex Hosp.*,
   425 U.S. 738 (1976)....................................................................6

*In re Hydrogen Peroxide Antitrust Litig.*,
   MDL No. 1682, slip op. (E.D. Pa. Nov. 22, 2005) ....................2, 8
                                                                                        9, 16

*Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.*,
   253 F. Supp. 2d 262 (D. Conn. 2003) ......................................2, 15

*In re Infant Formula Antitrust Litig.*,
   No. MDL 878, 1992 WL 503465 (N.D. Fla. Jan. 13, 1992)..............27

*In re Issuer Plaintiff IPO Antitrust Litig.*,
   No. 00 Civ. 7804(LMM), 2004 WL 487222 (S.D.N.Y. Mar. 12, 2004) ..........25

*King & King Enters. v. Champlin Petroleum Co.*,
   657 F.2d 1147 (10th Cir. 1981) ...............................................22, 24,
                                                                                        26

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997).....................................................................26

*Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit*,
   507 U.S. 163 (1993)...................................................................2, 3,
                                                                                        6, 8

*In re Magnetic Audiotape Antitrust Litig.*,
   No. 99 Civ. 1580 (LMM), 2002 WL 975678 (S.D.N.Y. May 9, 2002)..........15

*MCM Partners, Inc. v. Andrews-Bartlett & Associates*,
   62 F.3d 967 (7th Cir. 1995) ..........................................................7

*Medical Supply Chain, Inc. v. US Bancorp, NA*,
   No. Civ. A. 02-2539-CM, 2003 WL 21479192 (D. Kan. June 16, 2003),
   *aff'd*, 112 Fed. Appx. 730 (10th Cir. 2004)....................................20

*Maughan v. SW Servicing, Inc.*,
   758 F.2d 1381 (10th Cir. 1985) ...................................................26

*In re Mercedes-Benz Antitrust Litig.*,
   157 F. Supp. 2d 355 (D.N.J. 2001) .............................................15, 23

*In re Monosodium Glutamate Antitrust Litig.*,
    No. Civ. 00-MDL-1328(PAM), 2003 WL 23022001 (D. Minn. Dec. 23, 2003) ........24, 25

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984)..............................................................................................14

*Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas*,
    891 F.2d 1473 (10th Cir. 1989) ........................................................................8, 11,
    13

*Mountain View Pharmacy v. Abbott Labs.*,
    630 F.2d 1383 (10th Cir. 1980) ........................................................................12, 14,
    18, 19

*North Jackson Pharmacy, Inc. v. Express Scripts, Inc.*,
    345 F. Supp. 2d 1279 (N.D. Ala. 2004)................................................................21

*Northrop v. Lease Financing Corp.*,
    Civ. A. No. 87-2366, 1987 WL 33042 (E.D. Pa. Dec. 17, 1987) ......................25

*Perington Wholesale, Inc. v. Burger King Corp.*,
    631 F.2d 1369 (10th Cir. 1979) ........................................................................8, 13,
    14

*Poller v. Columbia Broad. Sys.*,
    368 U.S. 464 (1962)................................................................................................6

*Poole v. County of Otero*,
    271 F.3d 955 (10th Cir. 2001) ..............................................................................5

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    356 F. Supp. 2d 484 (M.D. Pa. 2005) ...............................................................2, 8,
    13, 21

*Rolite, Inc. v. Wheelabrator Env't Sys., Inc.*,
    958 F. Supp. 992 (E.D. Pa. 1997) .......................................................................14

*Roman v. Cessna Aircraft Co.*,
    55 F.3d 542 (10th Cir. 1995) ...............................................................................5

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974).............................................................................................5

*Smith Provision Co. v. Viskase Co., Inc.*,
    No. 01-C-1028, 2003 WL 21697391 (N.D. Ill. July 17, 2003) ..........................2

*Swanson v. Bixler*,
        750 F.2d 810 (10th Cir. 1984) ........................................................5

*Swierkiewicz v. Sorema, N.A.*,
        534 U.S. 506 (2002) ........................................................ *passim*

*TV Commc'n Network, Inc. v. Turner Network Television, Inc.*,
        964 F.2d 1022 (10th Cir. 1992) ........................................................19

*In re Tableware Antitrust Litig.*,
        363 F. Supp. 2d 1203 (N.D. Cal. 2005) ........................................................21

*Tonkovich v. Kansas Bd. of Regents*,
        159 F.3d 504 (10th Cir. 1998) ........................................................5

*In re Tower Air, Inc.*,
        416 F.3d 229 (3d Cir. 2005) ........................................................16

*Twombly v. Bell Atlantic Corp.*,
        425 F.3d 99 (2d Cir. 2005) ........................................................1, 5,
                                                                                        8, 10

*United Nat'l Records, Inc. v. MCA, Inc.*,
        609 F. Supp. 33 (N.D. Ill. 1984) ........................................................24

*In re Universal Serv. Fund Tele. Billing Practices Litig.*,
        300 F. Supp. 2d 1107 (D. Kan. 2003) ........................................................5, 21

*In re Vitamins Antitrust Litig.*,
        320 F. Supp. 2d 1 (D.D.C. 2004) ........................................................15

*In re Vitamins Antitrust Litig.*,
        No. Misc. 99-197 (FTH), 2000 WL 1475705 (D.D.C. May 9, 2000) ........................15, 23,
                                                                                                    27

*In re Wyoming Tight Sands Antitrust Cases*,
        No. 85-2349, 1990 WL 136788 (D. Kan. Aug. 2, 1990) ........................................26

## STATUTES

Fed. R. Civ. P. 8(a) ........................................................3, 6

Fed. R. Civ. P. 9(b) ........................................................5, 21,
                                                                                22

Fed. R. Civ. P. 12(b)(6) ........................................................5

**MISCELLANEOUS**

*Minutes of the Advisory Committee on Federal Rules of Civil Procedure,*
*October 21, 1993*, 1993 WL 761148 ....................................................................................6

## I.   INTRODUCTION

Defendants' Joint Motion to Dismiss is predicated on the mistaken notion that plaintiffs alleging a price-fixing conspiracy are obligated under Federal Rule of Civil Procedure 8(a) to allege specifically in the Complaint, even prior to the commencement of merits discovery, the details of meetings and conversations in which the conspiracy was developed and furthered, including dates, locations and participants of each such conversation and meeting.  (Defs.' Mem. at 4.)  However, this argument, which has been made repeatedly by defendants in other price-fixing cases, has been consistently rejected by the courts.[1]

The Supreme Court has squarely rejected such a heightened pleading standard and emphasized that courts cannot impose pleading standards stricter than the liberal notice requirements of Rule 8(a).  *See Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit*, 507 U.S. 163, 168 (1993); *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512-15 (2002).  Remarkably, Defendants not only ignore the controlling Supreme Court decision in

---

[1]   *See, e.g., Twombly v. Bell Atlantic Corp.*, 425 F.3d 99, 108 (2d Cir. 2005) (reversing dismissal of antitrust complaint and stressing that neither complexity nor burdens created by antitrust litigation warrants imposition of a more rigorous pleading standard than the notice requirements of Rule 8(a)); *In re Hydrogen Peroxide Antitrust Litig.*, MDL No. 1682, slip op. at 11 (E.D. Pa. Nov. 22, 2005) (Attached as Exhibit A) (denying motion to dismiss and rejecting defendants' arguments that the complaint lacked specificity); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 356 F. Supp. 2d 484, 491 (M.D. Pa. 2005) ("allegations of meetings and communications are not required"); *Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.*, 253 F. Supp. 2d 262, 278 (D. Conn. 2003) (rejecting argument that "bare bones" conspiracy allegations required dismissal); *Smith Provision Co. v. Viskase Co., Inc.*, No. 01-C-1028, 2003 WL 21697391, at *1 (N.D. Ill. July 17, 2003) ("All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that it may file an answer."); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, slip op. at 2-3 (E.D. Pa. May 16, 2002) (Attached as Exhibit B) (rejecting the argument that an antitrust complaint must allege "who made the statements, where, when or to whom."); *Champagne Metals v. Ken-Mac Metals, Inc.*, No. CIV-02-528-C, 2002 U.S. Dist. LEXIS 27722 (W.D. Okla. Oct. 1, 2002) (denying a motion to dismiss a Section 1 antitrust conspiracy claim because of a claimed lack of specificity); *In re Commercial Explosives Litig.*, Civ. No. 2:96-MD-1093S, 1996 WL 795270, at *1-2 (D. Utah Dec. 20, 1996) (specificity at pleading stage not required); and cases cited at pp. 9-15, *infra*.

*Leatherman*, they also ignore the many decisions rejecting identical motions to dismiss because of a purported lack of specificity.  *See* note 1, *supra*.  Rather than acknowledge that overwhelming body of precedent, defendants rely on Tenth Circuit authority that predates *Leatherman* and whose continuing precedential value has been questioned.[2]

Defendants' arguments not only mischaracterize the law, they also grossly mischaracterize Plaintiffs' Consolidated Amended Complaint ("Complaint").  Far from merely containing "cursory and conclusory assertions" (Defs.' Mem. at 8), the Complaint provides Defendants with the requisite "fair notice" of the antitrust conspiracy claim made against them.  *See* Fed. R. Civ. P. 8(a).  Specifically, the Complaint identifies the defendants who engaged in a continuing conspiracy to fix the prices and allocate customers and markets for polyether polyols, MDI, and TDI in the United States, beginning at least as early as January 1, 1999 and lasting until the filing of the Complaint, in violation of Section 1 of the Sherman Act.  (Compl. ¶¶ 44, 6-9, 13-21.)  It further alleges that the conspiracy consisted of an agreement among the Defendants and their co-conspirators to artificially fix, raise, maintain or stabilize prices and allocate customers and markets for the three products.  (*Id.* ¶ 45.)  It also states that in forming and effectuating the conspiracy, Defendants and their co-conspirators:  (1) participated in meetings and conversations where they agreed to fix prices and allocate customers; (2) issued price announcements consistent with, and sold the products at, the agreed-upon levels; (3) allocated

---

[2]    *See Confre Cellars, Inc. v. Robinson*, No. Civ. A. 01-N-1060, 2002 WL 32376945, at *12 (D. Colo. Mar. 6, 2002) ("[t]o the extent *Cayman* [*Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357 (10th Cir. 1989)] . . . impose[s] a heightened standard of pleading for antitrust cases, [this] decision[ ] may have been circumscribed by the Supreme Court's holding[s] in *Leatherman* . . . and *Swierkiewcz* . . ."); *General Refractories Co. v. Stone Container Corp.*, Nos. 98-C-3543, 98-C-4612, 98-C-4659, 1999 WL 14498, at *3 (N.D. Ill. Jan. 5, 1999) (denying motion to dismiss antitrust price fixing complaint, court stated that defendant's reliance on *Cayman Exploration* was "misplaced," because that case "predate[d] *Leatherman*" and plaintiff in *Cayman* did not identify any conspirators other than the named defendant).

customers and markets for the products; and (4) participated in meetings and conversations where they implemented, adhered to and policed the agreements they reached.  (*Id.* ¶ 46.)  Also, pursuant to this unlawful conspiracy, defendants implemented identical or virtually identical price increases for all three products at or about the same time.  (*Id.* ¶¶ 41, 46.)  Significantly, the Complaint alleges that neither changes in the prices of raw materials, the principal cost of manufacturing these products, nor changes in demand for the major end-use of these products (polyurethane foam) explain the announced price increases that occurred during the Class Period. (*Id.* ¶¶ 42-43.)

In addition, the Complaint describes characteristics of the polyether polyols, MDI, and TDI markets that facilitated the price-fixing conspiracy.  (*Id.* ¶ 37.)  In particular, the Complaint alleges that each product is a fungible commodity product.  (*Id.* ¶ 38.)  It alleges that the markets for these products are highly concentrated, with Defendants controlling 100 percent of the TDI and MDI markets and more than 75 percent of the polyether polyols market.  (*Id*. ¶ 39.)  It also alleges that high entry barriers exist for these markets due to environmental laws and the industry's capital-intensive nature.  (*Id*.)

Moreover, Plaintiffs have adequately pled the facts to support the allegations of fraudulent concealment so as to toll the four-year statute of limitations.  The Complaint alleges that Defendants gave false and pretextual reasons to customers for collusive price increases, and that Defendants agreed at meetings and in communications not to publicly discuss or otherwise reveal the conspiracy to outsiders.  (*Id*. ¶ 51.)  Thus, as a result of Defendants' fraudulent concealment, Plaintiffs could not have discovered Defendants' conspiracy earlier than they did, even with the exercise of due diligence.  (*Id*. ¶ 50.)

Consistent with *Leatherman* and the numerous decisions rejecting identical motions to dismiss in *per se* horizontal price-fixing cases, Defendants' Motion to Dismiss should be denied.

## II.    ARGUMENT

### A.    <u>The Governing Standards Applicable to Defendants' Motion to Dismiss</u>

It is well settled that a court may not dismiss a cause of action for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears beyond a doubt that plaintiff can prove no set of facts in support of its theory of recovery that would entitle it to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir. 2001).   In ruling on such a motion, the court must accept as true all facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 509 (10th Cir. 1998); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *In re Universal Serv. Fund Tele. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1141 (D. Kan. 2003) (Lungstrum, C.J.).

The purpose of a Rule 12(b)(6) motion is to decide the sufficiency of the complaint, *not* the merits of the case. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).   "The issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511 (2002); *Universal Serv. Fund*, 300 F. Supp. 2d at 1141.

In antitrust actions in particular, defendants must meet a high threshold to prevail on a Rule 12(b)(6) motion. *Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 545 (10th Cir. 1995). *See also Twombly v. Bell Atlantic. Corp.*, 425 F.3d 99, 108 (2d Cir. 2005) ("[A]ntitrust cases are less suitable candidates for dismissal at the pleading stage than some other kinds of litigation because evidence of the claimed illegality is likely to be in the exclusive control of the defendants."). Indeed, as the Supreme Court has held:

> in the antitrust context, where the proof is largely in the hands of
> the alleged conspirators, dismissals prior to giving the plaintiff
> ample opportunity for discovery should be granted very sparingly.

*Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976); *see Poller v. Columbia Broad. Sys.*, 368 U.S. 464, 473 (1962) ("[S]ummary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot.").

Federal Rule of Civil Procedure 8(a) establishes a "liberal system of 'notice pleading'" that "do[es] not require a claimant to set out in detail the facts upon which he bases his claim." *Leatherman*, 507 U.S. at 168.  All that is required is "a short and plain statement of the claim . . . [giving] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

In *Leatherman*, the Supreme Court held that federal courts cannot require more from a complaint than notice pleading.  The Court reasoned that any extension of particularized pleading requirements beyond the fraud situations expressly set forth in Rule 9(b) must be effectuated by rule revision, not by judicial construction.  Thus, courts cannot require stricter pleading than Rule 8(a) requires.  507 U.S. at 168-69; *Swierkiewicz*, 534 U.S. at 512-15; *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004).  Indeed, in the same year that *Leatherman* was decided, the Advisory Committee specifically <u>rejected</u> the idea of adding antitrust to the categories of cases required to be pleaded with particularly under Rule 9(b).  *See Minutes of the Advisory Committee on Federal Rules of Civil Procedure*, October 21, 1993, 1993 WL 761148 at **6-7.

Following *Leatherman* and the Advisory Committee, courts have consistently held that the Federal Rules impose <u>no</u> heightened pleading requirements for antitrust claims.  "We believe

that such impatience with the notice pleading embodied in the Federal Rules is foreclosed by the

Supreme Court's decision in *Leatherman . . .*"  *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869,

876 (3d Cir. 1995).  As the Seventh Circuit held in *MCM Partners, Inc. v. Andrews-Bartlett &*

*Assocs.*, 62 F.3d 967, 976 (7th Cir. 1995):

> [J]udicial attempts to apply a heightened pleading standard in
> antitrust cases had been 'scotched' by the Supreme Court's
> decision in *Leatherman* . . . and . . . after *Leatherman*, <u>an antitrust
> plaintiff need not include the particulars of his claim to survive a
> motion to dismiss.</u>

*Id.* (quotation omitted; emphasis added).

Defendants' lament that antitrust litigation entails "burdensome discovery" and "heavy

costs" (Defs.' Mem. at 7, 15) echoes the refrain that is made invariably by defendants in moving

to dismiss price-fixing complaints.  However, courts have recognized that such burdens do <u>not</u>

justify the imposition of a more stringent pleading requirement in antitrust cases than in other

types of cases.  For example, just recently, the Second Circuit stressed:

> We have consistently rejected the argument – put forward by
> successive generations of lawyers representing clients defending
> against civil antitrust claims – that antitrust complaints merit a
> more rigorous pleading standard, whether because of their typical
> complexity and sometimes amorphous nature, or because of the
> related extraordinary burdens that litigation beyond the pleading
> stage may place on defendants and the courts.
>
> * * *
>
> At the pleading stage, we are concerned only with whether the
> defendants have 'fair notice' of the claim, and the conspiracy that is
> alleged as part of the claim, against them – that is, enough to 'enable [the
> defendants] to [, inter alia,] answer and prepare for trial' – not with
> whether the conspiracy can be established at trial. . . .
>
> [W]hile an antitrust defense will often prove 'diffuse, prolonged, and
> costly,' the remedy to that problem is not to be found in abandoning the
> rules of notice pleading and raising the bar on plaintiffs. . . .

*Twombly*, 425 F.3d at 108, 116.  Other courts have likewise rejected defendants' arguments that

the costly and burdensome nature of defending an antitrust complaint justifies imposition of a

more stringent pleading requirement.  *See*, *e.g.*, *Hydrogen Peroxide*, slip op. at 11 ("Antitrust

cases, which require heavy discovery and sophisticated defense counsel, are costly to defend.

But the toll such a policy [a heightened pleading requirement] would exact would be to

discourage legitimate claims as well as the frivolous."); *Pressure Sensitive Labelstock*, 356 F.

Supp. 2d at 490 ("*Leatherman* and *Swierkiewicz* make clear that courts are not to establish a

heightened pleading requirement simply because certain kinds of claims are likely to result in

substantial litigation costs . . . .").

### B.    <u>The Complaint Readily Satisfies the Notice Pleading Requirements of Rule 8</u>

Rule 8(a) requires only that a complaint give defendants fair notice of the basis of the

claim against them so that they may respond to the complaint, and apprise the court of sufficient

allegations to allow it to conclude, if the allegations are proved, that the plaintiff has a legal right

to relief.  *Full Draw Productions v. Easton Sports,* 182 F.3d 745, 750 (10th Cir. 1999);

*Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas*, 891

F.2d 1473, 1480 (10th Cir. 1989); *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d

1369, 1372-73 (10th Cir. 1979).  *See Swierkiewicz*, 534 U.S. at 512; *Leatherman*, 507 U.S. at

168.

The Complaint plainly gives Defendants all of the notice that is required under Rule 8(a).

The Complaint alleges that each named Defendant conspired to fix the prices of and allocate

customers and markets for polyether polyols, MDI, and TDI during the specified time period, in

violation of Section 1 of the Sherman Act.  (Compl. ¶ 44.)  It further alleges that the conspiracy

consisted of an agreement among Defendants and their co-conspirators to artificially fix, raise,

maintain or stabilize prices of and to allocate customers and markets for the three products.  (*Id.*

¶ 45.)  The Complaint also states that in forming and effectuating this conspiracy, Defendants

and their co-conspirators:  (1) participated in meetings and conversations where they agreed to

fix prices and allocate customers; (2) issued price announcements consistent with, and sold the

products at, the agreed-upon levels; (3) allocated customers and markets for the products; and,

(4) participated in meetings and conversations where they implemented, adhered to and policed

the agreements they reached.  (*Id.* ¶ 46.)  The Complaint further alleges that, pursuant to this

unlawful conspiracy, defendants implemented identical or virtually identical price increases for

all three products at or about the same time.  (*Id.* ¶¶ 41, 46.)

Moreover, while unnecessary to defeat Defendants' motion, the Complaint also alleges

various factors that further support Plaintiffs' conspiracy allegations, namely, that the relevant

markets are highly concentrated, that there are high entry barriers to those markets, and that

neither changes in the prices of raw materials nor changes in demand for the major end-use of

these products explain the announced price increases that occurred during the Class Period.  (*See*

Compl. ¶¶ 37-39, 42-43.)  These additional market factors support the inference that a conspiracy

could be effectuated easily, and thus further militate against dismissal.  *See In re High Fructose*

*Corn Syrup Antitrust Litig.*, 295 F. 3d 651, 657-58 (7th Cir. 2002) (identifying high market

concentration as a feature supporting the inference that price-fixing was feasible and attractive);

*Digital Distribution, Inc. v. Cema Distribution*, No. 96-55264, 1997 WL 377100, at *1 (9th Cir.

Jul. 3, 1997) (noting that plaintiff "also alleged more general circumstances supporting an

inference of price fixing," including an oligopolistic market structure, parallel pricing, and rising

prices when production costs were falling); *Hydrogen Peroxide*, slip op. at 13-14 (noting that

plaintiffs alleged industry's consolidated structure and examples of coordinated price increases).

*See also In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 361 (3d Cir. 2004) (noting that the

"industry is in many respects a text book example of an industry susceptible to efforts to maintain supracompetitive prices."). The Complaint goes above and beyond what is required to withstand dismissal.

Defendants argue that the Complaint should be dismissed because it does not provide more specific information about the details of the alleged conspiracy, including dates and locations of conspiratorial communications or meetings, the identities of specific employees that participated in the conspiracy, which specific Defendants attended each conspiratorial meeting, and precise price increase information. (*See* Defs.' Mem. at 4.) In essence, Defendants are arguing that Plaintiffs' counsel are obligated to lay out in the Complaint all of the attorney work product developed during their pre-Complaint investigation. (*Id.* at pp. 5, 10). However, defendants have failed to cite to even a single case that supports the notion that Plaintiffs are required to disclose to Defendants in the Complaint the fruits of their own attorneys' investigation.

Defendants' failure to cite any authority supporting this argument is hardly surprising. In addition to the many cases cited above which have rejected motions to dismiss virtually identical to the one filed here, there are several decisions by courts within this Circuit that likewise have allowed antitrust complaints to stand in the face of defendants' arguments that they lacked sufficient specificity. For example, in *In re Commercial Explosives Litigation*, Civ. No. 2:96-MD-1093S, 1996 WL 795270 (D. Utah Dec. 20, 1996), the court denied a motion to dismiss a horizontal price-fixing, customer allocation, and bid rigging complaint similar to this Complaint. There, the complaint alleged that:

> 27. *Beginning no later than the Fall of 1988, and continuing until at least mid-1992, . . . Defendants* and their co-conspirators *formed* a *conspiracy* to artificially raise, maintain, stabilize or fix prices on the sale of certain commercial explosives. . . .

> 28.  *The* combination and *conspiracy consisted of a continuing
> agreement*, understanding, and concert of action among the
> Defendants and their co-conspirators to artificially raise, maintain,
> stabilize or *fix prices, allocate customers, and rig bids on certain
> commercial explosives* offered for sale.
> 29.  For the purpose of forming and carrying out the charged
> combination and conspiracy, *the Defendants* and their co-
> conspirators *did the following things*, among others:
> (a)  discussed and *agreed upon increases* in certain *prices* on
> certain commercial explosives;
> (b)  discussed and *agreed upon allocating* certain *customers*
> among themselves;
> (c)  discussed and *agreed upon bids or price quotes* to certain
> customers for certain commercial explosives; . . . and
> (e)  carried out their agreement.

*Id.* at *1-2 (emphasis in original).  In denying the motion to dismiss, the court emphasized that

"[t]he Tenth Circuit has declined to dismiss antitrust claims which provide no greater detail."  *Id.*

at *2.

The court in *Explosives* went on to note the universally accepted and well-justified

reasons why courts do not require any more detail in antitrust conspiracy complaints.  "Because

'conspiracy may be proven by circumstantial evidence,' requiring detailed facts at the pleading

stage is 'contrary to the substantive law of antitrust conspiracy.'"  *Id.* (quoting *Monument

Builders*, 891 F.2d at 1481).  "Moreover, many of the facts to support a claim of conspiracy may

be unknown to plaintiffs until they have had an opportunity to conduct some discovery."  *Id.*

The court concluded that the complaint satisfied Rule 8(a)'s liberal notice pleading requirement

because:

> it fairly informs [defendant] that it is accused of engaging in a
> conspiracy to fix the price of commercial explosives, from
> approximately late 1988 to mid-1992, and that it did so by agreeing
> with the other defendants to raise prices, allocate customers, rig
> bids, and impose fabricated surcharges or imposts.

*Id.*  The complaint thus sufficiently notified the defendants of the basis of the claim against them and apprised the court of sufficient allegations to allow it to conclude, if proven, that the plaintiffs had a right to relief.

Similarly, in *Champagne Metals v. Ken-Mac Metals, Inc.*, No. CIV-02-528-C, 2002 U.S. Dist. LEXIS 27722 (W.D. Okla. Oct. 1, 2002), the court denied a motion to dismiss a Section 1 antitrust conspiracy claim because of a claimed lack of specificity.  *Id.* at **12-13.  In that case, defendants relied heavily on *Cayman Exploration* and *Mountain View Pharmacy*, and "argue[d] vigorously that the Complaint is facially inadequate because it does not provide any details regarding the time and place of the formation and operation of the conspiracy or of the circumstances surrounding each Defendant's joinder and participation in the conspiracy."  *Id.* at *12.  The Court denied the motion to dismiss, and in words equally applicable here it reasoned as follows:

> Defendants' argument misconstrues the proper inquiry on a motion to dismiss.  Federal Rule of Civil Procedure 8(a)(2) only requires a plaintiff to provide "a short and plain statement" showing it is entitled to relief.  It is undisputed that there is no heightened pleading requirement for antitrust cases. . . .
>
> Although Plaintiffs' allegations are not highly specific or detailed, the Complaint contains enough facts from which to infer that a conspiracy existed and to put Defendants on notice of the claims against them. Plaintiff identified Defendants as co-conspirators, alleged that they acted in concert, and described specific anticompetitive practices undertaken in furtherance of the conspiracy.

*Id.* at **12-13 (citations omitted).  The court stressed that "[f]requently, information regarding the particulars of the conspiracy's formation and functioning is exclusively within possession of

11

antitrust defendants," and defendants' "desire for additional details" must be balanced against "Plaintiff's legitimate need for discovery."[3]  *Id.* at *14, n. 3.

Similarly, in *Monument Builders of Greater Kansas City, Inc. v. American Cemetery Association of Kansas*, 891 F.2d 1473 (10th Cir. 1989), the Tenth Circuit reversed the trial court's order granting a motion to dismiss a complaint alleging a horizontal tying conspiracy, which simply named the defendants, identified the tied and tying products, and set forth the practices that allegedly effectuated the tying.  *Id.* at 1476, 1481.  The Court found that "the conduct complained of . . . [was] adequately specified, and the allegation of conspiracy related to that conduct."  *Id.* at 1481.  The Court rejected defendants' arguments that the conspiracy's allegations were too "conclusory in that the complaint fail[ed] to specify facts constituting direct evidence of an agreement connecting individual defendants, either directly or inferentially, to the implementation of the conspiracy."  *Id.*   The "assertion that further specific facts are needed to make this complaint sufficient to state a claim is contrary to the substantive law of antitrust conspiracy as well as modern federal pleading standards."  *Id.*   Consequently, the Court held that the complaint adequately notified the defendants of the charges that they faced, which, if proven, would entitle the plaintiffs to relief.  *Id.* at 1484.

Likewise, in *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369 (10th Cir. 1979), the Tenth Circuit reversed the district court's decision to dismiss a complaint that merely

---

[3]  *Accord Pressure Sensitive Labelstock*, 356 F. Supp. 2d at 493 ("Details as to 'when and how' [defendants] engaged in parallel conduct and the precise contours of any agreement or understanding 'would likely be known only by the alleged co-conspirators, and hence should *not* be required in the complaint.") (emphasis in original) (quotation omitted); *Commercial Explosives*, 1996 WL 795270, at *2 ("Moreover, many of the facts to support a claim of conspiracy may be unknown to plaintiffs until they have an opportunity to conduct some discovery."); *Alco Standard Corp. v. Schmid Bros., Inc.*, 647 F. Supp. 4, 6 (S.D.N.Y. 1986) ("It is not necessary to plead either the evidence or the facts upon which antitrust conspiracy claims are based . . . .").

alleged "Plaintiff is informed and believes, and upon information and belief alleges that defendants conspired to cancel" an exclusive supply agreement, which, if proved, would violate Section 1 of the Sherman Act. *Id.* at 1371-75. One defendant argued that the allegation of its participation in the conspiracy was conclusory, and thus insufficient to state a claim for relief. *Id.* at 1372. The court disagreed, noting that the conduct complained of, termination of a distributorship, was adequately specified, and the conspiracy allegation related to that conduct. *Id.* Thus, the court had "no doubt that [the] complaint adequately set forth a claim and gave the [defendants] notice of its basis." *Id.* at 1373.

Courts have consistently rejected Defendants' contention that a plaintiff needs to allege specific conspiratorial statements or meetings between defendants to sustain a complaint, as "[t]he pleadings clearly imply that such statements or discussions took place." *Rolite, Inc. v. Wheelabrator Envtl. Sys., Inc.*, 958 F. Supp. 992, 1008 (E.D. Pa. 1997). Defendants' contention that the Complaint must identify which specific employees participated in the conspiracy is also without merit. *See Expoconsul Int'l, Inc. v. A/E Sys., Inc.*, 711 F. Supp. 730, 735 (S.D.N.Y. 1989) ("Evidence of the specific identity of exhibitors, attendees, speakers and suppliers who allegedly have acted in concert with the defendant is largely in defendant's hands. Plaintiff should be allowed to conduct full discovery in order possibly to further substantiate such claims.").[4] The same reasoning also demonstrates why Defendants' contentions regarding the necessity of specific pricing evidence at this early stage are meritless.

---

[4]   Evidence of such meetings and communications may not even be necessary to prove *at trial* that a conspiracy occurred. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 762-64 (1984) (noting that plaintiffs may prove conspiracy from inferences drawn from conspirators' conduct); *Monument Builders*, 891 F.2d at 1481 ("conspiracy may be proven by circumstantial evidence"); *Commercial Explosives*, 1996 WL 795270, at *2 (same). If such evidence is not required at trial, it obviously cannot be required at the pleading stage.

By the same logic, the argument that the Complaint must plead evidence specifying each defendant's precise role in the conspiracy also must fail. This familiar argument has been rejected time and time again. *See, e.g., In re Electrical Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 311 (D.N.J. 2004) ("Plaintiffs are not required to establish that each was part of the conspiracy at this motion to dismiss stage; they are simply required to state a claim for relief as to each specific defendant."); *Ice Cream Liquidation*, 253 F. Supp. 2d at 278 (Plaintiffs are not "required to specify individual acts of each defendant in an antitrust conspiracy allegation."); *In re Mercedes-Benz Antitrust Litig.*, 157 F. Supp. 2d 355, 375 (D.N.J. 2001) (rejecting the defendants' argument that the complaint was insufficient because it did not specify which of the defendants participated in the conspiracy; "[t]he short answer is that plaintiffs have alleged that all of the named defendants were participants in the conspiracy").[5] Here, the Complaint alleges that all of the Defendants participated in the conspiracy by expressly naming them as defendants. Nothing more is required.[6]

_____

[5]  *See also In re Magnetic Audiotape Antitrust Litig.*, No. 99 Civ. 1580 (LMM), 2002 WL 975678, at *4 (S. D. N. Y. May 9, 2002) ("[R]eviewing the claim against [the moving defendants] in the Amended Complaint as a whole as the Court is required to do, and not, as defendants would like, on the one specific allegation mentioning those defendants, the Court concludes that plaintiffs have sufficiently alleged that [the moving defendants] were participants in the price-fixing conspiracy."); *In re Vitamins Antitrust Litig.*, No. Misc. 99-197 (FTH), 2000 WL 1475705, at *11 (D.D.C. May 9, 2000) ("An overt act need not be pleaded against each defendant, because a single overt act by just one of the conspirators is enough to sustain a conspiracy claim even on the merits.").

[6]  Defendants also half-heartedly argue in a footnote that the Complaint fails to state a claim for a conspiracy to fix the prices of all three products because certain Defendants allegedly did not produce all of these products during the class period. (Defs.' Mem. at 11 n. 8.) This assertion, in addition to being made prematurely, is simply wrong. In the context of a multi-product conspiracy, a defendant can be held to have joined the conspiracy if it knew that products besides the ones it sold also were involved, its own benefits depended on the success of this larger conspiracy, and it intended to join the larger conspiracy. *See In re Vitamins Antitrust Litig.*, 320 F. Supp. 2d 1, 15 & n.27, 22-23 (D.D.C. 2004) (denying defendant's motion for

Just as in *Commercial Explosives*, *Champagne Metals, Monument Builders*, *Perington*, and the host of recent cases cited above, the Complaint adequately sets forth a claim for relief and sufficiently notifies Defendants of the basis of the claims against them.  The horizontal price-fixing and customer and market allocation allegations constitute *per se* violations of Section 1 of the Sherman Act and, if proven, will entitle Plaintiffs to relief.  Defendants cannot seriously maintain that they do not know the conduct with which they are being charged.  Indeed, their own description of the claims in their supporting memorandum reveals that they do.  *See In re Tower Air, Inc.*, 416 F.3d 229, 237-38 (3d Cir. 2005) ("To say that a plaintiff's claim appears factually weak is not to say that he states no claim.  That truism is particularly obvious where, as here, a defendant's motion to dismiss articulates the plaintiff's claims that supposedly lack factual support."); *Hydrogen Peroxide*, slip op. at 14 (noting, in holding that the complaint put the defendants on notice, that "eleven defendants readily described the very claims that supposedly lack factual support").

Accordingly, Defendants' arguments should be rejected and their Motion to Dismiss should be denied.

**C.     The Complaint Must Be Evaluated As A Whole; Defendants May Not Dismantle The Conspiracy Allegations**

Besides demanding more specificity than is required by Rule 8(a) and the applicable caselaw, Defendants use another oft-rejected strategy:  dismembering the conspiracy allegations and arguing that they are insufficient because some of the individual acts alleged, such as parallel pricing, may (taken alone) be legal.  (Defs.' Mem. at 8, 14.)

---

summary judgment on claims alleging a multi-product conspiracy where defendant argued that it produced only one of the numerous products allegedly part of the conspiracy).

This approach flies in the face of long-standing precedent.  Antitrust conspiracy allegations must not be compartmentalized and considered in isolation "as if they were separate lawsuits, thereby overlooking the conspiracy claim itself." *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 822 (3d Cir. 1982).  As the Supreme Court held long ago,

> Plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.  The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.

*Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962).  In the same breath, the Court also stated that "acts which are in and of themselves legal lose that character when they become constituent elements of an unlawful scheme." *Id.* at 707; *see American Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946) ("It is not the form of the combination or the particular means used but the result to be achieved that the statute condemns.  It is not of importance whether the means used to accomplish the unlawful objective are in themselves lawful or unlawful.  Acts done to give effect to the conspiracy may be in themselves wholly innocent acts.  Yet, if they are part of the sum of acts which are relied upon to effectuate the conspiracy which the statute forbids, they come within its prohibition."); *In re Carbon Black Antitrust Litig.*, No. Civ. A. 03-10191-DPW, 2005 WL 102966, at *8 n.7 (D. Mass. Jan. 18, 2005) ("[D]efendants' contention that the facts could also easily describe lawful activity is not dispositive at this stage of the proceedings.").

Instead of heeding this mandate, Defendants nevertheless dismantle the Complaint's conspiracy allegations.  This strategy allows them to make the assertion, not in the context of this case, that companies may legally follow each other and issue similar price increases.  They may not, however, allocate customers, agree to fix prices, or issue price increases in accordance with

the unlawful agreements reached.  That is what this Complaint alleges.  (Compl. ¶ 46.)  The

Complaint, read as a whole, sufficiently alleges the existence of an unlawful conspiracy.

### D.    The Cases Relied Upon By Defendants Are Inapposite or Outdated

In stark contrast to the many cases cited above which are directly on point and have

refused to dismiss horizontal price-fixing complaints based on a claimed lack of specificity,

Defendants have predicated their Motion on cases that are outdated and of dubious continuing

vitality in light of *Leatherman*.  In particular, the Defendants place heavy reliance on the

decisions in *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357 (10th Cir.

1989) and *Mountain View Pharmacy v. Abbott Laboratories*, 630 F.2d 1383 (10th Cir. 1980)

(Defs.' Mem. at 5, 6, 7, 8, 9, 11, 13, 14.)  Both of these cases were decided prior to *Leatherman*.

Accordingly, several more recent decisions have questioned their continuing precedential value.[7]

*See Confre Cellars*, 2002 WL 32376945, at *12 ("[t]o the extent *Cayman* . . . impose[s] a

heightened standard of pleading for antitrust cases, [this] decision[ ] may have been

circumscribed by the Supreme Court's holding[s] in *Leatherman* . . . and *Swierkiewcz* . . .");

*General Refractories*, 1999 WL 14498, at *3 (denying motion to dismiss antitrust price fixing

complaint, court stated that defendant's reliance on *Cayman Exploration* was "misplaced,"

because that case "predate[d] *Leatherman*" and plaintiff in *Cayman* did not identify any

conspirators other than the named defendant).

The cases relied on by Defendants are not only outdated, they are also readily

distinguishable on their facts.  In *Cayman*, Plaintiffs did not allege an explicit agreement (and so

---

[7]  Defendants' argument that they are not asking this Court to "employ[ ] a heightened
pleading standard for antitrust cases" (Defs.' Mem. at 8) is disingenuous.  In reality, the level of
specificity they claim is required here is precisely the heightened pleading standard rejected by
the courts post-*Leatherman*.  *See, e.g., Twombly*, 425 F.3d at 108.

had to rely *solely* on a theory of conscious parallelism) but, in doing so, failed to allege that the defendants acted against their economic self-interest.  *See* 873 F.2d at 1361.  There is no such issue here because Plaintiffs allege an explicit agreement, and do not rely on a theory of conscious parallelism.  Moreover, "Cayman did not identify the alleged conspirators, when or how they functioned, or the nature and extent of United's [the sole defendant] participation in the alleged conspiracy.  *Id*.  As noted above, that is not the case here.  The Complaint alleges explicitly the nature of the conspiracy, its functionings, and the collective role of *all* Defendants in the conspiracy.  (Compl. ¶¶ 13-21, 45-46.)

In *Mountain View Pharmacy,* the complaint's allegations of tying failed to identify "the offending defendants, the injured parties, the tied products, or the tying products," and its price-fixing allegations failed to specify which defendants fixed prices and on which products.  630 F.2d at 137-88.[8]  By contrast, the Complaint here alleges specifically what products were the subject of the conspiracy, identifies each Defendant as a member of the conspiracy, and identifies all direct purchasers as the injured parties.

The handful of post-*Leatherman* cases string-cited by Defendants do not indicate a change in pleading standards, nor are they on point.  In *Elliott Industries Limited Partnership v. BP America Production Co.*, 407 F.3d 1091 (10th Cir. 2005), a dispute over royalty payments,

---

[8]  Defendants' other pre-*Leatherman* cases are also readily distinguishable.  For example, in *TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022 (10th Cir. 1992), the complaint alleged monopolization without alleging a relevant market, and vertical price-fixing without alleging an agreement on pricing.  *Id.* at 1025-28.  Likewise, in *Fisher v. Balzer*, Civ. A. No. 88-1716-T, 1991 WL 86158 (D. Kan. Apr. 30, 1991), the complaint, which "fail[ed] to do even [as] much" as the one in *Mountain View*, "provided no indication" of how the contested conduct, a sale of assets, "might be viewed as an anticompetitive practice."  *Id.* at *8.  Finally, in *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802 (6th Cir. 1988), and *Car Carriers, Inc. v. Ford  Motor Co.*, 745 F.2d 1101 (7th Cir. 1984), the dealer termination complaints failed to allege any anticompetitive effect at the interbrand level, which they had to do to allege antitrust injury.  *Bucyrus-Erie*, 854 F.2d at 810; *Car Carriers*, 745 F.2d at 1109.

the plaintiff was not even a purchaser of the product that was the subject of the price fixing

conspiracy and, thus, the Court found that it had no standing and had not suffered antitrust

injury.  *Id*. at 1125.  In *Medical Supply Chain, Inc. v. US Bancorp, NA*, No. Civ. A. 02-2539-CM,

2003 WL 21479192 (D. Kan. June 16, 2003), *aff'd*, 112 Fed. Appx. 730 (10th Cir. 2004), the

complaint failed to allege that there were participants in the conspiracy outside of a single

corporate entity and did not even allege that the participants had reached any agreement.  *Id*.,

2003 WL 21479192, at *3.  In *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53

(1st Cir. 1999), the defendants were two non-profit corporations.  *Id.* at 56-57.  The plaintiff

alleged that they conspired to promulgate a standard for purified water used in clinical

laboratories that would hurt sales of plaintiff's water products.  *Id.*  The complaint was dismissed

because the plaintiff failed to allege how the non-profit corporations stood to benefit from the

alleged conspiracy, or why they would enter into it.  *Id.*  That is, the *DM Research* plaintiff failed

to allege a motive.  The First Circuit explicitly distinguished cases such as this one – in which

Defendants are for-profit manufacturers – where their motive to conspire is obvious:  "the

agreement can increase their profits."  *Id.* at 56.  In this case, Plaintiffs allege a motive through

allegations that Defendants – all of which are for-profit manufacturers – stood to gain, and did

gain, from their conspiracy to fix prices by charging and reaping supracompetitive prices for

polyether polyols, TDI and MDI.  (Compl. ¶¶ 2, 48.)

### E.   Defendants' Conscious Parallelism Arguments Are Nothing More Than a Red Herring

Defendants devote three pages of their brief to an argument that Plaintiffs have failed to

state a claim for antitrust conspiracy based on a theory of conscious parallelism.  (Defs.' Mem. at

13-15.)  This argument is perplexing indeed, as the Defendants acknowledge that the

"Consolidated Amended Complaint does not attempt to support the conspiracy allegation

through an assertion of parallel pricing." (Defs.' Mem. at 13.) Therefore, it is readily apparent

that the Defendants have created and knocked down a straw man entirely of their own creation.

Accordingly, this Court's decision in *In re Universal Service Fund Telephone Billing*

*Practices Litigation*, 300 F. Supp. 2d 1107, 1146-47 (D. Kan. 2003) does not apply here.

Moreover, Defendants' reliance on *Universal Service Fund* is misplaced for the additional reason

that in *Universal Service Fund*, this Court denied the motion to dismiss the antitrust claim,

finding that the Complaint sufficiently alleged parallel business behavior.[9]

---

[9]   It is noteworthy that in the recent Second Circuit decision in *Twombly*, the Court of Appeals held that an antitrust complaint based on parallel conduct need not plead a plus factor to withstand dismissal:

> [P]lus factors are not *required* to be pleaded to permit an antitrust claim based on parallel conduct to survive dismissal. [T]here is no reason we can perceive to require the plaintiffs to include allegations of 'plus factors' in their complaint, since they may not be required to establish 'plus factors' at trial – if, for example, they can prove conspiracy directly.

425 F.3d at 114 (emphasis in original). *See also In re Tableware Antitrust Litig.*, 363 F. Supp. 2d 1203, 1206 (N.D. Cal. 2005); *Carbon Black*, 2005 WL 102966, at *7 n.7; *Pressure Sensitive Labelstock*, 356 F. Supp. 2d at 492; *North Jackson Pharmacy, Inc. v. Express Scripts, Inc.*, 345 F. Supp. 2d 1279, 1286 (N.D. Ala. 2004).

But even if the Court were to somehow read that the Complaint relies on a conscious parallelism theory and that it must allege a plus factor, the Complaint still withstands dismissal because it alleges *numerous* plus factors. *See Universal Serv. Fund*, 300 F. Supp. 2d at 1147 (ruling that a complaint relying on a conscious parallelism theory survives a Rule 12(b)(6) motion by pleading parallel conduct and *a* plus factor). The Complaint alleges that the polyether polyols, MDI and TDI markets are particularly susceptible to price fixing because they are highly concentrated. *Compare* Compl. ¶¶ 37, 39 (alleging that the highly concentrated nature of these markets is a factor that facilitates collusion), *with Universal Serv. Fund*, 300 F. Supp. 2d at 1148 ("The complaint also alleges that the long distance telephone market is particularly susceptible to price fixing because the market is controlled by a few dominant companies."). The Complaint also sufficiently pleads that the alleged conduct would have been contrary to each Defendant's self-interest if a conspiracy did not exist. In the economic environment alleged in the Complaint and in the absence of a conspiracy, a rational competitor would decrease prices, not increase them and risk losing market share. The fact that all competitors increased prices together thus supports the inference that they did so collusively. *Compare* Compl. ¶¶ 37-39, 41-43, *with Universal Serv. Fund*, 300 F. Supp. 2d at 1148 ("Further, the complaint alleges that

**F.     The Complaint Sufficiently Alleges Fraudulent Concealment Under Rule 9(b)**

Apparently recognizing that their arguments for dismissal of the Complaint are doomed to failure, Defendants also make a fall-back argument that the claims that accrued prior to November 2000 are time-barred.  (Defs.' Mem. at 16-18.)  However, that argument is equally unavailing.

In the Tenth Circuit, a plaintiff must show three elements for a statute of limitations to be tolled on the ground of fraudulent concealment:  (1) the use of fraudulent means by the party who raises the bar of the statute; (2) successful concealment from the injured party; and (3) that the party claiming fraudulent concealment did not know or by the exercise of due diligence could not have known that he might have a cause of action.  *King & King Enters. v. Champlin Petroleum Co.*, 657 F.2d 1147, 1154 (10th Cir. 1981); *In re Aluminum Phosphide Antitrust Litig.*, 905 F. Supp. 1457, 1470 (D. Kan. 1995).  As shown below, the Complaint adequately pleads each element.

Defendants, however, argue that the Complaint must plead specific facts supporting each element for equitable tolling to apply.  (Defs.' Mem. at 16-18.)  For example, Defendants claim that the Complaint "fails to identify any specific meeting, time period, or participant" regarding fraudulent concealment, and that the Complaint does not identify any specific communications among Defendants not to publicly disclose the conspiracy's existence.  *Id*. at 17.

They are as wrong here as they were when they argued that a heightened pleading standard should apply to the Complaint as a whole.  "Rule 9(b) does not require the pleading of facts to support each of the three elements."  *In re Commercial Explosives Litig.*, 945 F. Supp.

---

these carriers' actions would have been contrary to their own self interest if they had acted alone because they would have lost market share and profits[.]").

1489, 1493 (D. Utah 1996); *see Commercial Explosives*, 1996 WL 795270, at *3 ("[Defendant]

argues that the plaintiffs 'must plead the *facts and circumstances* surrounding the claimed

concealment. . . .  Thus Plaintiffs must state the time, place or content of any fraudulent acts.'

The court disagrees.' . . .  '[N]either Rule 8 nor Rule 9(b) requires fact pleading.'") (emphasis in

original) (citation omitted).[10]   Rather, "[u]nder Tenth Circuit precedent, a plaintiff's 'allegations

asserting affirmative conduct to conceal [the defendants' unlawful acts] are sufficient to invoke

the doctrine of equitable tolling' at the pleading stage of the proceedings."  *Commercial*

*Explosives*, 945 F. Supp. at 1493 (quoting *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036,

1042 (10th Cir. 1980)).  Judged by this correct standard, the Complaint properly alleges each

fraudulent concealment element.

### 1.    The Complaint Adequately Alleges Wrongful Concealment

Plaintiffs adequately pled wrongful concealment by alleging both that Defendants gave

false and pretextual reasons to customers for collusive price increases and that Defendants

agreed at meetings and in communications not to publicly discuss or otherwise reveal the

conspiracy to outsiders.  (Compl. ¶ 51.)  Allegations of concealment just like these have been

found to be sufficient.

For example, in *Aluminum Phosphide*, 905 F. Supp. at 1470, the court found that

misrepresenting the reason for price increases that allegedly resulted from collusion constitutes

wrongful concealment.  Similarly, in *Commercial Explosives*, the court held that the plaintiffs

sufficiently alleged wrongful concealment by alleging conduct including "fabricating taxes and

---

[10]   Courts across the country agree.  *See Mercedes-Benz*, 157 F. Supp. 2d at 368 ("Rule 9 does not require plaintiffs to plead facts that, by the nature of the alleged fraud, are within defendants' control."); *Vitamins*, 2000 WL 1475705, at *2 (noting Rule 9(b) must be harmonized with Rule 8); *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1029 (N.D. Miss. 1993) ("Rule 9(b) does not negate the simplicity and flexibility contemplated by Rule 8, and it would be error to focus on Rule 9(b)'s particularity requirement in a vacuum.").

other surcharges to mislead purchasers about the reasons for higher prices." *Commercial Explosives*, 945 F. Supp. at 1493.  In *In re Monosodium Glutamate Antitrust Litigation*, No. Civ. 00-MDL-1328(PAM), 2003 WL 23022001 (D. Minn. Dec. 23, 2003), the court held that providing customers with false or misleading explanations for pricing constituted an affirmative act of concealment.  *Id.* at *1.  Similarly, in *United National Records, Inc. v. MCA, Inc.*, 609 F. Supp. 33, 36 (N.D. Ill. 1984), the court held that several statements that offered alternative, non-collusive explanations for the allegedly collusive pricing met this element.  Here, the Complaint alleges that Defendants likewise gave false and pretextual reasons for the prices of polyether polyols, MDI and TDI (Comp. ¶ 51.)  Such allegations adequately plead wrongful concealment.

An agreement not to publicly discuss or disclose a conspiracy's existence also constitutes wrongful concealment.  "Attempting to keep information about a conspiracy from others is more than mere silence or passive conduct and is sufficient for fraudulent concealment." *Commercial Explosives*, 1996 WL 795270, at *3; *see King & King Enters.*, 657 F.2d at 1156 ("The evidence showed that the defendant actively sought to conceal its price fixing activities, and the defendant's conduct, by reason of its fraudulent nature, was inherently self concealing.").  An agreement among Defendants to keep information about the conspiracy private is active conduct separate and apart from the conspiracy designed to conceal its existence.  Accordingly, this allegation is clearly sufficient.

### 2.    The Complaint Adequately Alleges Successful Concealment

The Complaint alleges that Defendants successfully concealed the conspiracy's existence. Specifically, it states that "Plaintiffs and the Class members did not discover, nor could have discovered through reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws until shortly before this litigation was commenced because Defendants and their co-conspirators used and continue to use deceptive and secret methods to

avoid detection and to affirmatively conceal their violations." (Compl. ¶ 50.) This is plainly

sufficient. Indeed, in *Commercial Explosives*, the complaint did not even state that the

defendants' successfully concealed the conspiracy. *See Commercial Explosives*, 945 F. Supp. at

1493. Yet, the Court held that the complaint was sufficient because it "impl[ied]" that the

defendants were successful in concealing their conduct. *Id.*

### 3. The Complaint Adequately Alleges Due Diligence

Finally, the Complaint sufficiently alleges due diligence by stating that Plaintiffs could

not have uncovered Defendants' conspiracy earlier than they did, even with the exercise of due

diligence. (Compl. ¶ 50.) Such allegations have been upheld time and time again by courts

throughout the country. *See In re Issuer Plaintiff IPO Antitrust Litig.*, No. 00 Civ. 7804(LMM),

2004 WL 487222, at *5 (S.D.N.Y. Mar. 12, 2004); *Commercial Explosives*, 945 F. Supp. at

1493-94; *Monosodium Glutamate*, 2003 WL 23022001, at *2; *Catfish*, 826 F. Supp. at 1032.

With a self-concealing conspiracy, no more can be expected of Plaintiffs than what is alleged

here. Indeed, "[w]here plaintiff is the victim of a self-concealing fraud, due diligence will often

be articulable only in conclusory fashion. This is so because the existence of specific affirmative

investigatory measures will often be lacking where plaintiff has been deceived as to the existence

of the wrong." *Northrop v. Lease Financing Corp.*, Civ. A. No. 87-2366, 1987 WL 33042, at *5

(E.D. Pa. Dec. 17, 1987). This is such a case.

Defendants disingenuously argue that Plaintiffs have not met this element merely because

they did not file a complaint as soon as they began investigating the alleged conspiracy and as

soon as the *Polyester* Polyol complaints were filed. (*See* Defs.' Mem. at 18.)

The first argument holds no weight. Plaintiffs took the time to conduct a thorough factual

investigation to ensure that they had a sufficient basis to file the initial *Seegott* complaint. If

Plaintiffs filed the initial complaint immediately after commencing their investigation, then

Defendants surely would have cried foul, complaining that Plaintiffs had not conducted a sufficient investigation prior to filing.  Defendants cannot have it both ways.

The second argument fares no better.  The Polyester cases are as different from these cases now as they were when they were first filed.  Plaintiffs always have contended – and Defendants have agreed – that the two sets of cases involve different products, different defendants, and different markets.  Why the filing of one set of cases "would seem to excite the attention" (Defs.' Mem. at 18) of Plaintiffs enough to file a complaint alleging an entirely different conspiracy (and before they believed that they had a sufficient basis to do so) is beyond comprehension, particularly since Crompton, the corporation that first announced the government investigation into polyester polyols, does not manufacture any of the three products at issue here.

Accordingly, Plaintiffs satisfy all of the requirements for pleading fraudulent concealment at this stage of the litigation.  The law is clear:  "where there is a dispute as to the existence of fraudulent concealment, the question is one for the jury."  *King & King Enters.*, 657 F.2d at 1156; *see In re Wyoming Tight Sands Antitrust Cases*, No. 85-2349, 1990 WL 136788, at *2 (D. Kan. Aug. 2, 1990) (holding same); *see also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 196 (1997) (holding that due diligence is a "fact-based question"); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985) ("[T]he issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact for the jury."); *Aluminum Phosphide*, 905 F. Supp. at 1469 (noting that "the three elements of fraudulent concealment are factual questions and that ordinarily defendant has an extremely difficult burden to show that fraudulent concealment allegations are barred as a matter of law").

Not surprisingly, numerous courts have denied similar attempts by defendants precisely because they try to resolve questions of fact prematurely at the pleading stage. *See Vitamins*, 2000 WL 1475705, at *8 (agreeing with "many courts which have held that the issues of fraudulent concealment and due diligence are questions of fact that should not be decided on a motion to dismiss"); *In re Infant Formula Antitrust Litig.*, No. MDL 878, 1992 WL 503465, at *2 (N.D. Fla. Jan. 13, 1992) ("While it is true that the allegations of fraudulent concealment . . . are absent many specifics, it is similarly true that such details cannot be ascertained until discovery is undertaken.  At the heart of plaintiffs' claims . . . is an allegation that any price-fixing was kept secret.  This secrecy forms the basis of the claim, and cannot be used as a way to defeat the claim.").  Defendants' improper attempt similarly should be denied.

## III.    CONCLUSION

For the foregoing reasons, Defendants' Joint Motion to Dismiss should be denied.

Dated:   December 9, 2005                          Respectfully submitted,


/s/Tim J. Moore___
Robert W. Coykendall, #10137
Roger N. Walter, #08620
Tim J. Moore, #14104
Morris, Laing, Evans, Brock & Kennedy, Chartered
Old Town Square
300 North Mead - Suite 200
Wichita, KS  67202
Tel:  (316) 262-2671
Fax:  (316) 262-5991

**Plaintiffs' Liaison Counsel**

26

Allen D. Black
Roberta D. Liebenberg
Donald L. Perelman
Gerard A. Dever
Fine, Kaplan and Black, R.P.C.
1835 Market Street, 28th Floor
Philadelphia, PA  19103
Tel:  (215) 567-6565
Fax:  (215) 568-5872

Michael D. Hausfeld
Richard A. Koffman
Justine J. Kaiser
Christopher J. Cormier
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Tel:  (202) 408-4600
Fax:  (202) 408-4699

**Plaintiffs' Co-Lead Counsel**

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on this 9th day of December, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel who have registered for receipt of documents filed in this matter.  I also certify that I mailed a true copy of the foregoing document and the notice of electronic filing by first-class mail to the following non- CM/ECF participants:

| | |
|---|---|
| Michael J. Beck<br>Clerk of the Panel<br>One Columbus Circle NE<br>Thurgood Marshall Federal Judiciary<br>Bldg., Room G-255 – North Lobby<br>Washington, DC 20002-8004 | William Cagney<br>Windels, Marx, Lane & Mittendorf, LLP<br>120 Albany Street Plaza<br>New Brunswick, NJ 08901 |
| Mark V. Chester<br>Joan M. Meyers<br>Johnson & Colmar<br>300 S. Wacker Drive, Suite 1000<br>Chicago, IL 60606 | Marc H. Edelson<br>Hoffman & Edelson<br>45 West Court Street<br>Doylestown, PA 18901 |
| Jason S. Hartley<br>Ross, Dixon & Bell, LLP<br>550 West B Street, Suite 400<br>San Diego, CA 92101-3599 | Michael D. Hausfeld<br>Cohen, Milstein, Hausfeld & Toll<br>West Tower, Suite 500<br>1100 New York Ave., N.W.<br>Washington, DC 20005-3934 |
| Timothy P. Irving<br>Ross, Dixon & Bell, LLP<br>550 West B Street, Suite 400<br>San Diego, CA 92101-3599 | Justine J. Kaiser<br>Cohen, Milstein, Hausfeld & Toll, PLLC<br>1100 New York Ave., NW<br>West Tower, Suite 500<br>Washington, DC 20005-3934 |
| Daniel R. Karon<br>Weinstein, Kitchenoff, Scarlato, Karon &<br>Goldman<br>55 Public Square, Suite 1500<br>Cleveland, OH 44113 | Diana K. Kim<br>Gold, Bennett, Cera & Sidener, LLP<br>595 Market Street, Suite 2300<br>San Francisco, CA 94105-2835 |

27

| | |
|---|---|
| William H. London<br>Much, Shelist, Freed, Denenburg &<br>Ament<br>200 N. LaSalle Street, Suite 2100<br>Chicago, IL 60601-1095 | John W. Mackey<br>Ray, Quinney & Nebeker<br>36 S. State Street, Suite 1400<br>Salt Lake City, UT 84111 |
| Joan M. Meyers<br>Johnson & Colmar<br>300 S. Wacker Drive, Suite 1000<br>Chicago, IL 60606 | Donna Siegel Moffa<br>Trujillo Rodriquez & Richards, LLP<br>8 Kings Highway West<br>Haddonfield, NJ 08033 |
| Krishna Narine<br>Schiffrin & Barroway LLC<br>280 King of Prussia Road<br>Radnor, PA 19087 | Michael G. Nast<br>RodaNast, P.C.<br>801 Estelle Drive<br>Lancaster, PA 17601 |
| William J. Pinilis<br>Pinilis Halpern, LLP<br>237 South Street<br>Morristown, NJ 07960 | Ira H. Raphaelson<br>O'Melveny & Meyers, LLP<br>1625 Eye Street, NW<br>Washington, DC 20006 |
| Andrew B. Sacks<br>Sacks & Weston, LLC<br>510 Walnut Street, Suite 400<br>Philadelphia, PA 19106 | Judith A. Shimm<br>Zelle, Hofmann, Voelbel, Mason & Gette,<br>LLP<br>44 Montgomery Street, Suite 3400 |
| Justin T. Togh<br>Ray, Quinney & Nebeker<br>36 South State Street, Suite 1400<br>Salt Lake City, UT 84111 | Michael F. Tubach<br>O'Melveny & Myers, LLP<br>Embarcadero Center West<br>275 Battery Street<br>San Francisco, CA 94111-3305 |
| Stewart M. Weltman<br>Cohen, Milstein, Hausfeld & Toll<br>West Tower, Suite 500<br>1100 New York Ave., N.W.<br>Washington, DC 20005-3934 | Anne White<br>White & Goldstein, LLC<br>One Pitcairn Place<br>165 Township Line Road<br>Jenkintown, PA 19046 |

/s/Tim J. Moore_____
Tim J. Moore