# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION<br><br>This document relates to the Polyether Polyol Cases | MDL No. 1616<br><br>Civil No. 2:04-md-01616-JWL-DJW |

## DEFENDANTS' JOINT REPLY
## IN SUPPORT OF MOTION TO DISMISS
## THE POLYETHER COMPLAINT
## PURSUANT TO RULE 12(b)(6)

SUBMITTED ON BEHALF OF

**BASF AG**
**BASF CORPORATION**
**THE DOW CHEMICAL COMPANY**
**HUNTSMAN CORPORATION**
**HUNTSMAN LLC**
**LYONDELL CHEMICAL COMPANY**

*Counsel appear on signature page*

KC-1354824-1

# TABLE OF CONTENTS

**Page**

Preliminary Statement...................................................................................................... 1

Argument ........................................................................................................................... 3

A.  Defendants Correctly Rely on Governing Tenth Circuit Precedent to
Evaluate Plaintiffs' Complaint.............................................................................. 3

B.  Plaintiffs Rely on Cases That Are Readily Distinguishable from this
Complaint................................................................................................................ 5

 1.  *Commercial Explosives*............................................................... 6

 2.  *Champagne Metals*, *Monument Builders*, and *Perington*........................... 8

C.  Plaintiffs' Coy Hide-the-Ball Technique Cannot Be Reconciled with Their
Duty to Provide Notice of the Claims They Assert ............................................. 10

D.  Plaintiffs Have Disavowed Any Claim Based on a Theory of Conscious
Parallelism............................................................................................................. 13

E.  Plaintiffs' Complaint Fails to Meet the Standard for a Claim of Fraudulent
Concealment ......................................................................................................... 14

Conclusion ....................................................................................................................... 15

KC-1354824-1

**Page**

## TABLE OF AUTHORITIES

**CASES**

*Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357 (10th Cir. 1989)............3

*Champagne Metals v. Ken-Mac Metals, Inc.*, No. CIV-02-528-C,
2002 U.S. Dist. LEXIS 27722 (W.D. Okla. Oct. 1, 2002).........................................................8, 12

*Colorado ex rel. Woodward v. Western Paving Constr. Co.*,
630 F. Supp. 206 (D. Colo. 1986).......................................................................................14

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).........................................10

*Elliot Indus. Ltd. P'ship v. BP Am. Prods. Co.*, 407 F.3d 1091 (10th Cir. 2005)...........................2

*Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213 (4th Cir. 1994) ........................12

*Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (1978).................................................................4

*Gooley v. Mobil Oil Corp.*, 851 F.2d 513 (1st Cir. 1988)...........................................................3

*In re Aluminum Phosphide Antitrust Litig.*, 905 F. Supp. 1457 (D. Kan. 1995) ...........................15

*Ice Cream Liquidation, Inc. v. Land O' Lakes*, 253 F. Supp. 2d 262 (D. Conn. 2003)..................5

*In re Commercial Explosives Litig.*, 945 F. Supp. 1489 (D. Utah 1996).....................................7, 8

*In re Commercial Explosives Litig.*, Civ. No. 2:96-MD-1093S,
1996 WL 795270 (D. Utah Dec. 20, 1996)...............................................................................6

*In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 1016 (D. Minn. 1997)...........................................14

*In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107 (D. Kan. 2003) ....3

*Jojola v. Chavez*, 55 F.3d 488 (10th Cir. 1995)........................................................................13

*Leatherman v. Tarrant County Narcotics Intelligence Coord. Unit*, 507 U.S. 163 (1993).........3, 4

*Med. Supply Chain v. U.S. Bancorp, N.A.*, No. Civ. A. 02-2539-CM,
2003 WL 21479191 (D. Kan. June 16, 2003).....................................................................*passim*

*Mobley v. McCormick*, 40 F.3d 337 (10th Cir. 1994).................................................................13

*Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas,*
891 F.2d 1473 (10th Cir. 1989) ...................................................................................9

*Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383 (10th Cir. 1980) ....................... *passim*

*Nat'l Constructors Ass'n v. Nat'l Elec. Contractors Ass'n,* 498 F. Supp. 510 (D. Md. 1980)......12

*Perington Wholesale, Inc. v. Burger King Corp.,* 631 F.2d 1369 (10th Cir. 1979)........................9

*Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506 (2002).................................................................3, 4

*TV Commc'ns Network, Inc. v. Turner Network Television, Inc.,*                               964
F.2d 1022 (10th Cir. 1992) ...........................................................................................5

*Twombley v. Bell Atl. Corp.*, 425 F.3d 99 (2d Cir. 2005) ...........................................................3

## STATUTES AND REGULATIONS

Fed. R. Civ. P. 8(a)(2).......................................................................................................2

15 U.S.C. § 1.....................................................................................................................4

## PRELIMINARY STATEMENT

Plaintiffs' effort to rescue their Consolidated Amended Complaint ("Complaint" or "Compl.") boils down to the contention that they are not required to plead *anything* beyond the conclusory assertions in Paragraph 46 of the Complaint. In support of this contention they refer to several cases – nearly all in other circuits – that sustain complaints under Rule 8(a) on the basis of pleadings that contained significantly more detailed and specific factual allegations than their Complaint here contains. The cases they rely upon reflect simple single-party, single-event claims that do not resemble the complex, multi-defendant, multi-product, multi-year antitrust claim asserted here. Plaintiffs rely on descriptions of these cases that omit the pertinent portions of the complaint allegations and the factual background on which those courts' rulings turned.

And, most tellingly, Plaintiffs assert that they hold substantial evidence supporting their conspiracy allegations, purportedly developed over an extended "pre-Complaint investigation" which they repeatedly have advertised to this Court, but which they have elected not to include in the Complaint. Their rationale for withholding this purported treasure trove of information is that they are under no obligation "to lay out in the Complaint all of the attorney work product developed in their pre-Complaint investigation," and that the "fruits of [Plaintiffs'] own attorneys' investigation" need not be disclosed in the Complaint. Plaintiffs' Opposition ("Pl. Opp'n") at 9. Plaintiffs thus tell the Court, bluntly, that either (a) Plaintiffs have substantiation of their conspiracy allegations but have chosen to leave the Court and the Defendants with nothing in the Complaint beyond the bare, conclusory phrases of Paragraph 46, or (b) Plaintiffs have no substantiation, despite two years of purportedly assiduous investigation

and consultation with experts, but hope the Court will grant them a pass into discovery so they can fish for information that would support a claim.

Such an approach flouts the rules of pleading. Rule 8(a) requires a plaintiff to plead facts "showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In the Tenth Circuit, "a bare bones statement of conspiracy or injury under the antitrust laws without any supporting facts permits dismissal." *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1388 (10th Cir. 1980). "Conclusory allegations that the defendant violated [the antitrust] laws are insufficient." *Med. Supply Chain, Inc. v. U.S. Bancorp, N.A.*, No. Civ. A 02-2539-CM, 2003 WL 21479191, at *3 (D. Kan. June 16, 2003), *aff'd*, 112 Fed. Appx. 730 (10th Cir. 2004). *See also Elliot Indus. Ltd. P'ship v. BP Am. Prods. Co.*, 407 F.3d 1091, 1123 (10th Cir. 2005). Plaintiffs seek to commence a nationwide, multi-party, multi-product, seven-year antitrust claim that would cost the parties huge sums through trial, yet have chosen to stand on the brief and conclusory allegations of the Complaint. If they have information in-hand that buttresses these allegations – and Defendants are convinced they do not – then those facts belong in the Complaint to provide proper notice to Defendants and to the Court of the basis for the claims.

Defendants do not contend, as Plaintiffs argue, that a higher pleading requirement applies to antitrust complaints. Rather, in accordance with Rule 8(a), this Circuit rightly holds that "a complaint in a complex, multi-party suit may require more information than a simple, single party case," *Mountain View,* 630 F.2d at 1386. Plaintiffs have openly admitted that they either do not have – or will not reveal – information that would meet this standard. The Complaint therefore must be dismissed.

**ARGUMENT**

**A.    Defendants Correctly Rely on Governing Tenth Circuit Precedent to Evaluate Plaintiffs' Complaint.**

Plaintiffs' Opposition challenges the continuing viability of the Tenth Circuit cases *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989), and *Mountain View*, 630 F.2d 1383. Pl. Opp'n at 2, 17-19. Plaintiffs contend that the holdings in these cases are in doubt following the Supreme Court's later decisions in *Leatherman v. Tarrant County Narcotics Intelligence Coord. Unit*, 507 U.S. 163 (1993), and *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). Plaintiffs' contention is unfounded.

First, *Cayman* and *Mountain View* remain controlling precedent in this Circuit, as recognized in Tenth Circuit opinions decided after *Leatherman* and *Swierkiewicz*. *See Med. Supply Chain*, 2003 WL 21479192, at *3; *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1146-47 (D. Kan. 2003) (Lungstrum, J.).

Moreover, *Leatherman* and *Swierkiewicz* both stand for the unremarkable and undisputed proposition that Rule 8's "simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz*, 534 U.S. at 513. The reasoning in *Cayman Exploration* and *Mountain View* is in accord with this principle. *See, e.g., Mountain View*, 630 F.2d at 1388 ("We recognize that factual pleading is required only insofar as is necessary to place a defendant on notice as to the type of claim alleged and the grounds upon which it rests, thereby enabling a defendant to prepare a responsive pleading."). Even under a liberal notice pleading regime, however, Plaintiffs must still satisfy this standard and plead sufficient facts in support of their claim to demonstrate an entitlement to relief. *See, e.g., Twombly v. Bell Atl. Corp.*, 425 F.3d 99 (2d Cir. 2005) ("'[M]inimal requirements are not tantamount to nonexistent requirements'") (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988)).

3

The facts necessary to put a defendant or defendants on notice as to the claim for which relief is sought will not be identical in all cases. What suffices in a simple employment discrimination case involving a single plaintiff and single defendant such as *Swierkiewicz*, 534 U.S. at 509, or in a case challenging the practices of a local narcotics unit in executing two search warrants such as *Leatherman*, 507 U.S. at 164-65, may easily be insufficient in a complex multi-party, multi-product, multi-year purported antitrust conspiracy. *Mountain View* recognizes this uncontroversial principle: "To provide adequate notice, a complaint in a complex, multi-party suit may require more information than a simple, single party case." 630 F.2d at 1388. Justice Thomas' opinion for the Court in *Swierkiewicz* confirms this point: "[t]he precise requirements of prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" 534 U.S. at 512 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).[1]

*Leatherman* and *Swierkiewicz* rejected the theory presented by municipalities and employers that pleading standards vary "according to the complexity of the underlying substantive law," *Leatherman*, 507 U.S. at 167, and that civil rights and employment discrimination cases carry a heightened pleading standard. Defendants, however, make no "heightened pleading standard" argument nor do they contend that the substantive law asserted in this complaint (Sherman Act § 1) triggers an elevated pleading standard. Instead Defendants argue that Tenth Circuit precedent does not require anything beyond normal Rule 8 analysis to

---

[1] Thus, Justice Thomas' *Swierkiewicz* opinion refers to FRCP Form 9, which permits a simple negligence case to be pled with nothing more than "On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway." 534 U.S. at 513 n.4. Plaintiffs here appear to contend that Rule 8 requires nothing more to sustain their action. *Mountain View* establishes that the Court can and should treat a complex multi-party, multi-year antitrust action to scrutiny appropriate for that type of claim.

4

dismiss a complaint that rests solely on cursory allegations.  Tenth Circuit law, plainly and simply, requires a complaint to "do more than cite relevant antitrust language." *Med. Supply Chain*, 2003 WL 21479192, at *3 (quoting *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1024 (10th Cir. 1992)).  The complaint "must allege facts sufficient, if they are proved, to allow the court to conclude that claimant has a legal right to relief."  *Id.*  Plaintiffs who wish to launch a multi-year, multi-product, multi-party suit of this type must meet that Tenth Circuit standard, and nothing in *Leatherman* or *Swierkiewicz* changes that.

Plaintiffs insert a lengthy opening footnote string-citing several cases for the proposition, as summarized by Plaintiffs' description of *Ice Cream Liquidation*, that courts "reject[] [the] argument that 'bare bones' conspiracy allegations require[] dismissal."  Pl. Opp'n at 1 n.1 (citing *Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.*, 253 F. Supp. 2d 262, 278 (D. Conn. 2003)).  Not only are those cases each distinguishable on their facts but, more importantly, they do not state the Tenth Circuit law.  Indeed, the Tenth Circuit rule is contrary to what Plaintiffs contend:  "a bare bones statement of conspiracy or injury under the antitrust laws without any supporting facts permits dismissal."  *Mountain View*, 630 F.2d at 1388.

**B.**     **Plaintiffs Rely on Cases that Are Readily Distinguishable from this Complaint.**

Plaintiffs' Opposition contends that Defendants overlook decisions "rejecting identical motions."  Pl. Opp'n at 2.  Most of the decisions Plaintiffs cite, however, come from outside the Tenth Circuit.  Several employ an approach that is not consistent with the Tenth Circuit law.  All of them arose on the basis of complaints that were by no measure "identical" to

the cursory allegations contained in the original *Seegott* complaint and in the minimally-modified

Consolidated Amended Complaint.

Plaintiffs' Opposition relies most heavily on two unpublished trial court opinions

that permitted complaints to survive Rule 8 review.  Pl. Opp. at 9-15.  Both are substantially

different and easily distinguishable from this case.

### 1.   *Commercial Explosives*

Plaintiffs begin by quoting misleadingly from an unpublished opinion in *In re*

*Commercial Explosives Litig.*, Civ. No. 2:96-MD-1093S, 1996 WL 795270 (D. Utah Dec. 20,

1996).  Pl. Opp'n at 9-10.  Plaintiffs' Opposition repeats three paragraphs of the complaint

quoted by Judge Sam, but omits the salient portion of the quoted material – the allegation in the

*Commercial Explosives* complaint that the defendants there "(d) discussed and *agreed upon the*

*establishment of uniform, industry-wide fees alternatively referred to as insurance surcharges,*

*hazardous operations surcharges, regulatory imposts, and other names ...."  In re Commercial*

*Explosives Litig.*, 1996 WL 795270, at **1-2 (quoting ¶ 29(d) of complaint) (emphasis in

original).  Plaintiffs may wish this portion of the *Commercial Explosives* complaint were not

there, but dropping it from the case quotation at pages 9-10 of their brief merely reinforces how

different the Polyether Plaintiffs' complaint is from the one in *Commercial Explosives*, which

clearly gave the defendants notice of the methods by which the purported collusive conduct was

carried out.[2]  No comparable allegation is present in the Polyether Complaint.

Further, Plaintiffs' Opposition neglects to note that *Commercial Explosives*

involved an antitrust conspiracy in which multiple defendants had pled guilty to price fixing, as

---

[2]  A further distinction from the Polyether Complaint is the fact that only one of the six defendants in
*Commercial Explosives* supported the motion to dismiss decided in the unpublished opinion.  1996 WL
795270, at *1.

reported by Judge Sam in a published decision two months prior to the unpublished decision on which Plaintiffs rely. *See In re Commercial Explosives Litig.*, 945 F. Supp. 1489 (D. Utah 1996). In the earlier decision, the Utah District Court noted that the Consolidated Amended Complaint – a different complaint from the one addressed in the later unpublished opinion – "does identify specific conduct by which the seven defendants carried out their conspiracy to fix prices," and that "[t]he complaint identifies meetings at which prices were discussed, bids that were rigged, and pricing documents that were exchanged." 945 F. Supp. at 1491-92. That consolidated complaint further contained several paragraphs discussing the Department of Justice criminal investigation and the guilty pleas of five of the defendants. *Id.* at 1493-94 & n.3. Little wonder that Judge Sam, ruling two months later on a separate motion to dismiss filed by only one of the defendants in the case – a defendant that had pled guilty to criminal price fixing charges[3] – applied the Tenth Circuit pleading standard in the unpublished *Commercial Explosives* decision to sustain the complaint.

Here, as the Court knows – and as Plaintiffs' counsel readily conceded[4] – there is *no* Justice Department investigation on polyethers, and there is no assertion in the Polyether complaint that any such investigation exists.[5] Plaintiffs' counsel in this case – several of whom

---

[3] A Justice Department press release showed that the moving party, defendant Austin Powder, pled guilty and paid a $7 million fine a mere three months prior to the court's opinion. Press Release, U.S. Dept. of Justice, Ohio Explosive Co. and Executive Plead Guilty to Price Fixing in Explosive Industry, Pay More Than $7 Million, *available at* http://www.usdoj.gov/atr/public/press_releases/1996/0907.htm.

[4] "Unlike the Polyester Actions, there is no government investigation and there are no guilty pleas concerning the products at issue in the Seegott Actions." Seegott Plaintiffs' Request that the Seegott Actions be Coordinated Rather than Consolidated with the Polyester Actions (Aug. 22, 2005) at 5.

[5] The poly*ester* complaint in this MDL proceeding, by contrast, does rely on a Justice Department investigation and on guilty pleas or amnesty applications by the two polyester defendants. It was Crompton's public announcement of its amnesty application – couched in vague language referring to "urethanes" – that triggered the initial wave of complaints, from which the poly*ether* defendants were subsequently dismissed prior to the filing of the *Seegott* polyether action at issue in this motion.

also served as lead counsel in the *Commercial Explosives* MDL proceedings[6] – surely know of

the differences between this case and that one. Yet they present a seriously incomplete picture of

the basis for the ruling in *Commercial Explosives*, in an effort to sidestep *Mountain View* and the

Tenth Circuit precedents that establish that their Polyether Complaint is insufficient to survive

Rule 8 scrutiny.

> ### 2.    *Champagne Metals, Monument Builders,* and *Perington*

Plaintiffs' Opposition next relies on several antitrust cases that do not involve

price-fixing claims. In *Champagne Metals v. Ken-Mac Metals, Inc.*, No. CIV-02-528-C, 2002

U.S. Dist. LEXIS 27722 (W.D. Okla. Oct. 1, 2002), the court denied a motion to dismiss in a

case where plaintiff alleged collusive conduct preventing it from being designated a distributor

for aluminum mills. The court noted that the complaint "details several anticompetitive practices

by Defendants," including allegations that:

> (1) Defendants expressed disapproval to certain aluminum mills
> selling to or adding Plaintiff as a distributor; (2) Defendants
> threatened to take business away from the mills if the mills sold to
> Plaintiff or designated Plaintiff as a distributor; and (3) Defendants
> expressed disapproval and threatened the two mills that sold to
> Plaintiffs. Compl. ¶ 21.

*Id.* at *10. The court concluded that the complaint's allegations "adequately detailed

Defendants' anticompetitive practices because the conduct complained of is reasonably specific

and related to the conspiracy claim." *Id.* at *11.

Plaintiffs' Polyether Complaint here contains no comparable specific factual

allegations regarding anticompetitive action by Defendants during the alleged seven-year

conspiracy: it asserts nothing more than conclusory allegations that Defendants participated in

---

[6] *See* 945 F. Supp. at 1490 (listing plaintiffs' counsel, including the Cohen Milstein and Freedman Boyd firms).

unspecified "meetings and conversations" to fix prices and allocate customers, issued "price announcements," and participated in "meetings and conversations" to implement the purported agreement. Compl. ¶ 46. Thus, the allegations in *Champagne Metals*, though "not highly specific or detailed," *id.* at *12, had considerably more specificity and detail than Plaintiffs included in the Polyether Complaint. The Tenth Circuit law recognizes a distinction between the pleading of *factual* events and conduct sufficient to state a claim, as contrasted with *conclusory* allegations that simply parrot the statutory standards; complaints solely pleading the latter must be dismissed, and *Champagne Metals* does not assert otherwise.

Plaintiffs turn next to *Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1481-82 (10th Cir. 1989), in which the Tenth Circuit permitted dealers of grave markers to assert tying claims against cemeteries that allegedly conspired to force bereaved families to buy gravestones from the cemetery. The court noted that the complaint "provides a lengthy list of allegedly anti-competitive practices" employed by the defendant cemeteries, *id.* at 1481, ranging from bans or surcharges on independently-purchased markers, special alloy composition requirements for bronze markers, refusals to quote plot prices separately from gravestone prices, and a variety of similar restrictions. *Id.* at 1476 & n.1. No comparable allegations are contained in the Polyether Complaint.

Plaintiffs finally turn to *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369 (10th Cir. 1979), a case in which a restaurant supplier sued Burger King and a wholly-owned Burger King subsidiary (Davmor) for terminating a distribution contract. Allegations that termination of a specific contract violated the antitrust law were sufficiently specific to withstand

9

a Rule 8 challenge at the pleading stage.[7] In a case like *Perington*, such allegations may be adequate. As *Mountain View* makes clear, however, multi-party, multi-year, complex cases require more detailed allegations. The Polyether Complaint purports to bring such a case, and nothing in *Perington* supports the contention that it is adequate under Rule 8.

### C. **Plaintiffs' Coy Hide-the-Ball Technique Cannot Be Reconciled with Their Duty to Provide Notice of the Claims They Assert.**

The Polyether Plaintiffs repeatedly have contended that they been investigating their polyether claims assiduously for many months with teams of expert plaintiffs' counsel. They so asserted in February 2005, in a submission that advised the Judicial Panel on Multidistrict Litigation that it should not send the Polyether cases to Kansas (and should leave them in New Jersey) because the Polyether Plaintiffs had been investigating the polyether products for "many months before Crompton announced in March 2004" that it had gone into the Justice Department's amnesty program.[8] They did so again at the August 29, 2005 scheduling conference before this Court, presenting the Black Declaration again and reasserting that they had been investigating "since fall of 2003," and interviewing "numerous witnesses," "numerous purchasers," and experts in the polymer science and business. Tr. of Proceedings, Aug. 29, 2005 ("Tr.") at 11-12.

---

[7] How Burger King and its wholly-owned subsidiary could have conspired under antitrust law was apparently not raised in the case. *Compare Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771-72 (1984) (no antitrust conspiracy where parent conspires with affiliated entity).

[8] Declaration of Allen D. Black (Fine, Kaplan & Black, counsel for Seegott), Feb. 26, 2005, at ¶ 2 ("Black Declaration").

Now, two years into this purported extended investigation, Plaintiffs seek to rest their conspiracy claims on the cursory allegations of Paragraph 46 of their Complaint.[9] They claim that their investigation unearthed "evidence of pricing collusion" (Black Decl. ¶ 3; see also Tr. at 11); that they closely examined polyether purchasers' documents "to determine transactional prices they have paid" for polyethers (Black Decl. ¶ 3); and that their economist "has analyzed both publicly available information and transactional price information and documents we obtained from purchasers" (id. ¶ 6). Yet when Defendants' Motion to Dismiss points out that the Complaint contains no factual allegations that support their claim, Plaintiffs respond that they are under no obligation "to lay out all of the attorney work product developed in their pre-Complaint investigation." Pl. Opp'n at 9.

Their bluff is transparent. They have no evidence or analysis to support the contention that Defendants fixed prices over the seven-year period alleged in the Complaint – not even sufficient evidence or information to permit them to plead that *any* price was fixed for *any* polyether product in *any* month along the seven-year way. If they had, it would be in the Complaint, and they would have alluded to it in the Opposition. But they do not have it. They have no government investigation on which they can piggyback. They have nothing.

Instead, Plaintiffs seek to hide behind the shibboleth that they are not required to plead "specific information about the details of the alleged conspiracy." Pl. Opp'n at 9. They should not be permitted, however, to squeeze by on the basis of a generalized and conclusory

---

[9]  Plaintiffs' reference to the timing of price announcements of products included in the Complaint offers no factual allegations in furtherance of their purported conspiracy claim. *See* Compl. ¶ 41. And of course, mere reference to a common market practice standing alone does not support an antitrust claim. *See* Defendants' Memorandum in Support of Motion to Dismiss at 13-15. Accordingly, Plaintiffs' Complaint must rest on a theory of direct conspiracy, the sole allegations of which with regard to the purported conspiratorial conduct are confined to Paragraph 46.

allegation, rather than to provide specifics they purport to hold as "attorney work product" from their "two-year investigation" in order to demonstrate their entitlement to proceed.[10]

The Court is not powerless to prevent Plaintiffs from proceeding in the face of such conduct. The Federal Rules supply all the authority needed to repel this tactic. The sixteen words of Rule 8(a)(2) require not only "a short and plain statement of the claim," but also that the statement "show[] that the pleader is entitled to relief." The final eight words of Rule 8(a)(2) are of equal importance as the first eight. They mandate that the Court examine the complaint to determine whether the plaintiff has proffered sufficient allegations to demonstrate his entitlement to the relief sought. Even the cases Plaintiffs rely upon confirm this fundamental rule. *See Champagne Metals*, 2002 U.S. Dist. LEXIS 27722, at *14 n.3 ("The Court agrees with Defendants to the extent that an antitrust plaintiff generally should provide some details as to time, place, and effect of the alleged conspiracy whenever possible."); *see also Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 221 (4th Cir. 1994) ("to adequately allege an antitrust conspiracy, the pleader must 'provide, whenever possible, some details of the time, place and alleged effect of the conspiracy; it is not enough merely to state that a conspiracy has taken place'") (quoting *Nat'l Constructors Ass'n v. Natl' Elec. Contractors Ass'n*, 498 F. Supp. 510, 528 (D. Md. 1980)).

Moreover, a plaintiff who elects to withhold information that would properly satisfy the Court that his claims meet Rule 8's requirements runs afoul of the core of the Federal Rules – Rule 1, which instructs that each rule must be "construed and administered to secure the

---

[10]  Plaintiffs' stance also completely undercuts their reliance on cases where courts have expressed reluctance to dismiss antitrust complaints at the outset of the case noting that evidence of any purported conspiracy is more likely to rest within the control of the defendants. *See* Pl. Opp'n at 4-5. The reasoning underlying these cases is wholly inapplicable where Plaintiffs claim to have the necessary "evidence" to support their claim in their possession.

12

just, speedy, and inexpensive determination of every action." Construing Rule 8(a) to require Plaintiffs here to make their claims openly, rather than hide behind purported "attorney work product of their pre-Complaint investigation," would serve all three objectives of Rule 1 – a just result, a speedy determination, and the avoidance of unwarranted expense in disposing of the claims on which Plaintiffs have chosen to stand.

At the pleading stage, Plaintiffs' Complaint must be evaluated on the basis of the allegations contained within its four corners. *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (affirming dismissal of plaintiff's claims); *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). Plaintiffs chose to stand on the vague and conclusory pleadings of paragraph 46 of the Complaint, and to offer no factual allegations to buttress those conclusory assertions. Having opted for that posture, their Complaint can and must be dismissed. Where Plaintiffs claim to have a wealth of supporting evidence but elect to rest on a conclusory sentence in the complaint, the Court has no reason to reward such hide-the-ball tactics – particularly where multiple complaints have been transferred to the Court for streamlined, effective, and efficient case management under the MDL process.

### D.   Plaintiffs Have Disavowed Any Claim Based on a Theory of Conscious Parallelism.

Plaintiffs' Opposition expressly disavows any claim based on a theory of conscious parallelism. Pl. Opp'n at 19-20. The Court need go no further on that issue.

Plaintiffs appear unable to rest on their disavowal, however. Their Opposition attaches a footnote defending the Complaint if the Court should "somehow read" it as asserting a theory of conscious parallelism, on grounds that the Complaint alleges sufficient "plus factors"

13

as required in this Circuit. Pl. Opp'n at 20 n.9. Plaintiffs' footnote needs no answer, inasmuch as the Court is unlikely to read their Complaint as asserting a theory that Plaintiffs foreswear.

**E.    Plaintiffs' Complaint Fails to Meet the Standard for a Claim of Fraudulent Concealment.**

Plaintiffs seek to circumvent the statute of limitations problem for pre-November 2000 conduct by asserting the position – notwithstanding the unarguable requirement of Rule 9(b) that fraud be pled with particularity – that conclusory allegations suffice to plead the three elements recognized in this Circuit for a claim of fraudulent concealment. The Tenth Circuit standard for fraudulent concealment allegations, however, is "stringent." *Colorado ex rel. Woodward v. Western Paving Constr. Co.*, 630 F. Supp. 206, 210 (D. Colo. 1986), *aff'd*, 841 F.2d 1025 (10th Cir. 1989). The Complaint's fraudulent concealment allegations (Compl. ¶¶ 49-52) do not meet this standard.

As with Plaintiffs' efforts to resist the Tenth Circuit law on Rule 8(a), Plaintiffs resist the impact of Rule 9(b) on their fraudulent concealment allegations by relying heavily on *Commercial Explosives*. Pl. Opp'n at 21-22. That case, as noted above, was preceded by price fixing indictments and guilty pleas from several of the defendants. It is unsurprising that the court there found sufficient allegations to permit the fraudulent concealment claim to be fully litigated. The Polyether Complaint, by contrast, is more like the allegations in the *Milk Products Antitrust Litigation*, in which the court dismissed the fraudulent concealment claim with the observation that "[v]aguely alleging that 'something' occurred at 'sometime' fails to satisfy the requirement" of specific allegations of affirmative acts of concealment. *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 1016, 1022 (D. Minn. 1997).

14

Further, Plaintiffs inaccurately characterize this Court's ruling in *In re Aluminum Phosphide Antitrust Litig.*, 905 F. Supp. 1457 (D. Kan. 1995). That case did not "f[ind] that misrepresenting the reason for price increases that allegedly resulted from collusion constitutes wrongful concealment," as Plaintiffs contend. Pl. Opp'n at 22. The *Aluminum Phosphide* court noted that "Plaintiffs' allegation that Defendants misrepresented the reasons for and staggered price increases in 1990 comes closer to the type of conduct that may constitute an affirmative act," 905 F. Supp. at 1470, but it concluded that this allegation did *not* satisfy the fraudulent concealment standard. *Id.* (denying fraudulent concealment claim on summary judgment). Here, the Complaint makes no affirmative factual allegation with respect to concealment other than that Defendants allegedly met "secretly" to discuss prices and meetings. Compl. ¶ 51(a).

Plaintiffs also profess that they have always known that the initial "urethanes" complaints did not implicate their separate polyether "investigation." Pl. Opp'n at 25. Plaintiffs would have the Court believe that it was coincidental that they filed the *Seegott* complaint on November 23, 2004, four days after the amended Polyester complaint was filed in this Court, and that they did not have reason prior to that – their extensive "investigation" notwithstanding – to have known that the statute was running on their polyether claims. That defies credulity.

## CONCLUSION

For the reasons set forth here and in Defendants' opening memorandum, the Polyether Defendants respectfully request that this Court dismiss the Consolidated Amended Complaint.

Dated:  December 30, 2005                    Respectfully Submitted,

*David F. Oliver by JRF*

David F. Oliver (KS Bar #70731)
BERKOWITZ OLIVER WILLIAMS
    SHAW & EISENBRANDT LLP
Two Emanuel Cleaver II Boulevard, Suite 500
Kansas City, Missouri 64112
Telephone (816) 561-7007
Facsimile (816) 561-1888

Andrew S. Marovitz
Terri A. Mazur
Jason B. Fliegel
MAYER BROWN ROWE & MAW LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone (312) 782-0600
Facsimile (312) 701-7711
*Counsel for BASF AG and BASF Corporation*

*Charles W. German by JRF.*

Charles W. German  KS Fed. 70040
Phillip G. Greenfield  KS Fed. 70044
Matthew Hamner  KS Fed.  20908
ROUSE HENDRICKS GERMAN MAY PC
One Petticoat Lane Building
1010 Walnut, Suite 400
Kansas City, Missouri 64106
Telephone (816) 471-7700
Fax (816) 471-2221

Robert W. Fleishman
Jennifer Quinn-Barabanov
Erica Mueller
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., N.W.
Washington, D.C.  20036-1795
Telephone (202) 429-3000
Fax (202) 429-3902
*Counsel for Lyondell Chemical Company*

*Floyd R. Finch*

Floyd R. Finch, Jr. (KS Bar #16993)
Shelley A. Runion (KS Bar #14941)
BLACKWELL SANDERS PEPER
        MARTIN LLP
4801 Main Street
Suite 1000
Kansas City, Missouri 64112
Telephone (816) 983-8000
Facsimile (816) 983-8080

Hamilton Loeb
Jeremy P. Evans
PAUL HASTINGS JANOFSKY &
        WALKER LLP
875 15th Street, N.W.
Washington, D.C. 20005
Telephone (202) 551-1700
Facsimile (202) 551-1705
*Counsel for The Dow Chemical Company*

*Brian R. Markley by JRF*

Brian R. Markley (KS Bar #17485)
STINSON MORRISON HECKER LLP
1201 Walnut, Suite 2200
Kansas City, Missouri 64106
Direct Dial: (816) 691-3215
Facsimile: (888) 290-2657

James S. Jardine
Justin T. Toth
John W. Mackay
RAY, QUINNEY & NEBEKER PC
36 South State Street, Suite 1400
Salt Lake City, UT 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
*Counsel for Huntsman Corporation and
Huntsman LLC*

LEGAL_US_E # 70327385.3

16

## CERTIFICATE OF SERVICE

I here by certify that on December 30, 2005, I caused a true and correct copy of the foregoing document to be electronically filed by the Clerk of the Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

W. Joseph Bruckner (wjbruckner@locklaw.com)
Lockridge Grindal Nauden, PLLP
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401-2179

Roy Morrow Bell (rbell@rdblaw.com)
Ross, Dixon & Bell, LLP
550 West B Street, Suite 400
San Diego, CA 92101-3599

Steven A. Kanner (skanner@muchshelist.com)
Much Shelist Freed Denenberg
  Ament & Rubenstein P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL 60606-1615

Susan G. Kupfer (skupfer@glancylaw.com)
Glancy Binkow & Goldberg LLP
455 Market St., Suite 1810
San Francisco, CA 84105

Plaintiffs' Co-Lead Counsel (Polyester Plaintiffs)

George A. Hanson (hanson@sshwlaw.com)
Norman E. Siegel (seigel@sshwlaw.com
Stueve Siegel Hanson Woody LLP
330 West 47th Street, Suite 250
Kansas City, MO 64112

Plaintiffs' Liaison Counsel (Polyester Plaintiffs)

Ian Simmons (isimmons@omm.com)
Benjamin Bradshaw (bbradshaw@omm.com)
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, DC 20006-4001

W. Joseph Hatley (jhatley@lathropgage.com)
Lathrop & Gage L.C.
10851 Mastin Blvd.
Building 82, Suite 1000
Overland Park, KS 66210-2007

Counsel for Defendants Crompton Corporation and Uniroyal Chemical Company, Inc. (Polyester Defendants)

Tim J. Moore (tmoore@morrislaing.com)
Robert W. Coykendall (rcoykendall@morrislaing.com)
Roger N. Walter (rwalter@morrislaing.com)
Morris, Laing, Evans, Brock & Kennedy, Chartered
Old Town Square
300 North Mead – Suite 200
Wichita, KS 67202

Plaintiffs' Liaison Counsel (Polyether Plaintiffs)

Allen D. Black (ablack@finekaplan.com)
Roberta D. Liebenberg (rliebenberg@finekaplan.com)
Donald L. Perelman (dpeelman@finekaplan.com)
Gerard A. Dever (gdever@finekaplan.com)
Fine, Kaplan and Black, R.P.C.
1835 Market Street, 28th Floor
Philadelphia, PA 19103

Michael D. Hausfeld (mhausfeld@cmht.com)
Richard A. Koffman (rkoffman@cmht.com)
Justine J. Kaiser (jkaiser@cmht.com)
Christopher J. Cormier (ccormier@cmht.com)
Cohen, Milstein, Hausfeld & Toll P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005

Plaintiffs' Co-Lead Counsel (Polyether Plaintiffs)

and

Joseph G. Matye (jmatye@shb.com)
James R. Eiszner (jeiszner@shb.com)
Shook, Hardy & Bacon, LLP
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone (816) 474-6550
Fax (816) 421-5547

J. Andrew Read (jaread@jonesday.com)
Mark Glassman (mlglassman@jonesday.com)
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Telephone (202) 879-3939
Fax (202) 626-1700

Counsel for Bayer AG, Bayer Corporation, and Bayer MaterialScience LLC

_____
Attorney