IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: URETHANE ANTITRUST
LITIGATION

No. 04-MD-1616-JWL

This Order Relates to
the Polyether Polyol Cases

## MEMORANDUM AND ORDER

This multidistrict litigation consists of numerous putative class action lawsuits in which plaintiffs claim that defendants engaged in unlawful price fixing conspiracies with respect to urethane chemical products in violation of the Sherman Act, 15 U.S.C. § 1. The court has consolidated two separate sets of cases—the Polyester Polyol Cases and the Polyether Polyol Cases. This Memorandum and Order relates to the Polyether Polyol Cases, in which the polyether polyol plaintiffs (hereinafter, plaintiffs) are allegedly direct purchasers of certain polyether polyol products that the polyether polyol defendants (hereinafter, defendants) allegedly sell and manufacture. This matter is presently before the court on defendants' joint motion to dismiss (Doc. 158)[1] plaintiffs' consolidated amended complaint. On January 9, 2006, the court heard oral argument on this motion and took the matter under advisement.

---

[1] Doc. 158 is actually defendants' joint memorandum in support of the motion to dismiss. The motion to dismiss itself was never actually filed, but the court granted defendants leave to file the motion out of time (Doc. 161) and therefore the motion itself (Doc. 159, Ex. A) is hereby deemed filed. Nonetheless, because the motion itself was not in fact filed, the court's case management system does not reference it as a pending motion. Instead, the court's case management system reflects that the memorandum is the pending motion. For that reason, the court is using the case management system's reference to Doc. 158.

After thoroughly considering the parties' arguments, the court is now prepared to rule. For the reasons explained below, this motion will be granted in part and denied in part. Specifically, it is denied with respect to plaintiffs' antitrust claim but, with respect to plaintiffs' allegations of fraudulent concealment to avoid the statute of limitations, it is granted without prejudice to plaintiffs filing a first amended consolidated complaint no later than **February 3, 2006**.

## FACTUAL BACKGROUND[2]

Plaintiffs' consolidated amended complaint alleges that defendants engaged in a price fixing conspiracy with respect to polyether polyols, methyl diphenyl diisocyanate (MDI), and toluene diisocyanate (TDI) (collectively, the Polyether Polyol Products) from January 1, 1999, to the present. Plaintiffs Seegott Holdings, Inc., RBX Industries, Inc., and Industrial Polymers, Inc. purchased Polyether Polyol Products directly from one or more of the defendants. Defendants Bayer AG, Bayer Corporation, Bayer MaterialScience LLC (collectively, Bayer), BASF AG, BASF Corporation (collectively, BASF), The Dow Chemical Company (Dow), Huntsman Corporation, Huntsman LLC (collectively, Huntsman), and Lyondell Chemical Company (Lyondell) allegedly manufactured and sold Polyether Polyol Products.

---

[2] Consistent with the well established standard for evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court accepts as true all well pleaded factual allegations in plaintiffs' complaint.

Plaintiffs' complaint alleges that characteristics of the markets for Polyether Polyol Products facilitate anticompetitive collusion among the defendants and promote successful effects of that collusion. Each of the three products is an undifferentiated commodity product. Due to both a limited number of common manufacturers and a close correspondence in ownership of production of the products, the markets for these products are highly concentrated, with defendants controlling one hundred percent of the TDI and MDI markets and more than seventy-five percent of the polyether polyols market. Additionally, high barriers to entry to these markets are created by environmental laws and regulations as well as the capital-intensive nature of the business. Defendants are able to exercise power over the market because of their high collective market shares. Because approximately ninety-four percent of all polyols used for flexible polyurethane foam are comprised of polyether polyols, users will not switch because of a non-transitory, small but significant increase in the price of polyether polyols, thereby setting favorable conditions for successfully implementing defendants' price fixing agreement.

Plaintiffs allege that pricing for Polyether Polyol Products was interrelated during the alleged conspiracy. On numerous occasions, various defendants announced and/or implemented similar price increases around the same time. For example,

a. On January 1, 2001, Bayer and BASF raised TDI prices by 12¢ per pound and polyether polyol prices by 10¢ per pound. On that same date, BASF, Dow and Huntsman raised MDI prices by 8¢ per pound. Bayer followed with an identical MDI price increase on January 15.

b. Bayer, BASF and Dow raised TDI and polyether polyol prices by 15¢ per pound and 10¢ per pound, respectively, effective March 1, 2002.

    c.    On April 1, 2002, Lyondell and Huntsman raised TDI prices by 15¢ per pound. On that same day, Dow and BASF raised MDI prices by 6¢ per pound. Bayer and Huntsman followed with identical MDI price increases on April 15 and May 1, respectively.

    d.    Bayer, BASF, Dow, Lyondell and Huntsman all raised TDI prices by 8¢ per pound, effective September 1, 2002. At the same time, Bayer, BASF and Dow raised polyether polyol prices by 6¢ per pound.

    e.    On April 1, 2003, Bayer, BASF and Huntsman raised TDI prices by 10¢ per pound, MDI prices by 8¢ per pound, and polyether polyol prices by 6¢ per pound. On the same day, Dow raised TDI prices by 10¢ per pound and MDI prices by 7¢ per pound.

Consol. Am. Compl. (Doc. 131) ¶ 41, at 11. Plaintiffs allege that these announced price increases cannot be explained by changes in the price of raw materials or by changes in demand.

According to plaintiffs, beginning at least as early as January 1, 1999, until the present, defendants conspired to fix, raise, stabilize, or maintain at artificially high levels the prices they charged and to allocate customers and markets for Polyether Polyol Products in the United States. In order to effect this conspiracy, they participated in meetings and conversations during which they agreed to fix prices and allocate customers; they issued price announcements consistent with and sold the products at the agreed-upon prices; they allocated customers and markets for the products in furtherance of their agreements; and they participated in meetings and conversations among themselves to implement, adhere, and police the agreements they reached.

Lastly, plaintiffs allege that defendants affirmatively and fraudulently concealed their conduct so as to toll the applicable statute of limitations. In support of this allegation,

4

plaintiffs allege that they did not discover and could not have discovered through reasonable diligence that defendants violated the antitrust laws because defendants used deceptive and secret methods to avoid detection and to affirmatively conceal their violations.  According to plaintiffs, defendants conducted their conspiracy secretly, concealed the nature of their unlawful conduct, and fraudulently concealed their activities through various other means and methods designed to avoid detection.  Plaintiffs allege that defendants affirmatively concealed the price fixing conspiracy by meeting secretly to discuss prices, customers, and markets for Polyether Polyol Products; by agreeing among themselves at meetings and in communications not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their scheme; and by giving false and pretextual reasons for the prices of the products they sold and by falsely describing the pricing as being the result of competitive factors rather than collusion.

Defendants now ask the court to dismiss plaintiffs' complaint in its entirety.  They contend that plaintiffs' "bare bones statement of conspiracy . . . without any supporting facts" warrants dismissal.  Alternatively, they argue that even if plaintiffs' complaint states a claim for an antitrust price fixing conspiracy, it nonetheless fails to plead fraudulent concealment to toll the statute of limitations with the requisite degree of particularity.

## STANDARD FOR A MOTION TO DISMISS

The court will dismiss a cause of action for failure to state a claim only when "'it appears beyond a doubt that the plaintiff can prove no set of facts in support of [its] claims

which would entitle [it] to relief,'" *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Beedle*, 422 F.3d at 1063. The issue in resolving such a motion is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quotation omitted); *accord Beedle*, 422 F.3d at 1063.

## ANALYSIS

For the reasons explained below, the court finds that plaintiffs' allegations of a price fixing conspiracy are sufficient to satisfy the liberal notice pleading standards of the Federal Rules of Civil Procedure. Plaintiffs have not, however, pleaded fraudulent concealment with the requisite degree of particularity. Consequently, the court will grant that aspect of defendants' motion without prejudice to plaintiffs filing an amended complaint which alleges fraudulent concealment with particularity.

**A.    Antitrust Price Fixing Claim**

Section 1 of the Sherman Act declares illegal "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade of commerce among the several States, or with foreign nations." 15 U.S.C. § 1. "To state a claim of horizontal price fixing,

6

plaintiff must allege: (1) the existence of an agreement, combination or conspiracy, (2) among actual competitors (*i.e.*, at the same level of distribution), (3) with the purpose or effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity (4) in interstate or foreign commerce." *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989) (internal quotation omitted); *accord Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1123 n.29 (10th Cir. 2005).

In this case, defendants' argument in support of dismissal is not that plaintiffs' allegations fail to satisfy any one or more of these elements, but rather that plaintiffs' complaint recites only bare legal conclusions without any supporting facts, thus requiring dismissal under *Mountain View Pharmacy v. Abbott Laboratories*, 630 F.2d 1383 (10th Cir. 1980), in which the Tenth Circuit stated that "a bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal." *Id.* at 1388 (quotation omitted). Defendants' reliance on the Tenth Circuit's holding in *Mountain View*, however, is misplaced because the inadequate allegations in that case truly were "bare bones" allegations. "The original complaint used statutory language to describe the alleged antitrust violations without including any factual allegations whatsoever." *Id.* at 1385. Plaintiffs moved to amend the complaint, "but aside from the allegations relating to one specific drug and one manufacturer, no facts had been added to support the alleged statutory violations." *Id.* The issues on appeal were the sufficiency of the allegations in the plaintiffs' original complaint and the futility of the proposed amendment. The Tenth Circuit held that the original complaint was properly subject to dismissal because the complaint did little more than recite the relevant

7

antitrust law—it "failed to allege any specific act by any defendant concerning any drug upon which injury to the plaintiff was predicated." *Id.* at 1387. For the most part, the proposed amended complaint added little. *Id.* It did not identify the offending defendants, the injured parties, the tied products, or the tying products. *Id.* The Sherman Act claim consisted of "[a] blanket statement that twenty-eight defendants have conspired to fix prices on drug sales to thirteen plaintiffs." *Id.* at 1388. Significantly, however, the Tenth Circuit held that plaintiffs should have been allowed to amend their complaint with respect to certain allegations which gave some of the defendants sufficient notice of the claims against them. *Id.* These included claims that (1) one of the defendants conspired with three defendant drug wholesalers to fix the price of insulin, and (2) that another one of the defendants gave unlawful price discounts to hospitals on Tylenol II. *Id.*

The allegations in this case are far afield from merely parroting the statutory language and instead are more akin to the allegations with respect to insulin and Tylenol II which the Tenth Circuit in *Mountain View* held were adequate to state a claim. The most obvious difference is that here plaintiffs' allegations set forth the relevant products, which are polyether polyols, MDI, and TDI. Plaintiffs also allege that the defendants all manufacture these products.[3] Additionally, in this case plaintiffs have set forth the factual basis for the claim by alleging that the product markets were of such a nature that they were conducive to price fixing, that defendants' pricing for all three products was unexplainably interrelated

---

[3] The court will discuss plaintiffs' allegations with respect to Lyondell in more detail below.

8

during the relevant time period, and that defendants participated in meetings and conversations in which they agreed to set prices and allocate customers for these products. Because the allegations in this case are distinguishable from those that the Tenth Circuit held inadequate in *Mountain View*, then, the court is unpersuaded by defendants' heavy reliance on *Mountain View*.

Defendants also rely on two other statements made by the Tenth Circuit in arguing that this court must apply "*all* of Rule 8 to *each* defendant." (Emphasis in original.) First, defendants note that in *Cayman Exploration Corp.* the Tenth Circuit stated that "courts may require some minimal and reasonable particularity in pleading before they allow an antitrust action to proceed" because of the heavy burdens associated with antitrust litigation. 873 F.2d at 1359 n.2. And, second, in *Mountain View* the Tenth Circuit stated that "[t]o provide adequate notice, a complaint in a complex, multi-party suit may require more information than a simple, single party case." 630 F.2d at 1386-87. In response to these arguments, plaintiffs correctly point out that *Mountain View* and *Cayman Exploration Corp.* both pre-dated *Leatherman v. Terrant County Narcotics Intelligence Coordination Unit*, 507 U.S. 163 (1993), and *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), in which the Supreme Court reversed lower courts' applications of heightened pleading standards under circumstances other than those in which Rule 9(b) imposes a particularity requirement. Although defendants have attempted to disavow the notion that they are suggesting that the court should apply a heightened pleading standard, that appears to be precisely what they are suggesting. The court will not delve into the potentially thorny issue of whether these two statements from the Tenth

Circuit in *Cayman Exploration Corp.* and *Mountain View* remain good law in light of *Leatherman* and *Swierkiewicz* primarily because the Tenth Circuit has not delved further into the contours of what it may have meant by those statements.  Suffice it to say that what is clear to the court is that heightened pleading standards do not apply to antitrust claims, particularly in light of the Supreme Court's reasoning in *Leatherman* and *Swierkiewicz*.  *See Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 108-09 (2d Cir. 2005) (holding the district court erroneously dismissed an antitrust claim; noting that antitrust claims are not subject to a pleading standard more rigorous than the liberal notice pleading standard of Rule 8); *Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1234-35 (11th Cir. 2005) (same, noting that the view that heightened pleading requirements apply to antitrust claims has been rejected in favor of applying Rule 8(a)'s notice pleading standard); *MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967, 976 (7th Cir. 1995) (noting that judicial attempts to apply a heightened pleading standard in antitrust cases had been "scotched" by the Supreme Court's decision in *Leatherman*).  The court, then, will evaluate plaintiffs' antitrust claim under the law that is generally applicable to analyzing the sufficiency of allegations under the notice pleading regime of the Federal Rules of Civil Procedure.

The Federal Rules require that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "The statement must give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Green Country Food Market, Inc. v. Bottling Group, LLC*, 371 F.3d 1275, 1279 (10th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord United*

*Steelworkers of Am. v. Oregon Steel Mills, Inc.*, 322 F.3d 1222, 1228 (10th Cir. 2003). "The Supreme Court has emphasized that the requirements at the pleading stage are *de minimus*." *United Steelworkers of Am.*, 322 F.3d at 1228. The court accepts as true all well pleaded factual allegations and views those allegations in the light most favorable to the non-moving party—here, plaintiffs. *Elliott Indus. Ltd. P'ship*, 407 F.3d at 1223. The court may dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz*, 534 U.S. at 514 (quotation omitted).

In this case, plaintiffs' allegations are sufficient to withstand defendants' motion to dismiss inasmuch as they give defendants fair notice of the basis for plaintiffs' antitrust claim against them. It alleges that the defendants agreed to fix prices of polyether polyols, MDI, and TDI. It alleges that the characteristics of the markets for these products facilitate anticompetitive collusion. It alleges interrelated price increases and announcements for these products among defendants. It alleges that defendants accomplished this by participating in meetings and conversations in which they agreed to charge prices at certain levels, by issuing price announcements consistent with the agreed-upon prices, by allocating customers and markets in furtherance of the agreement, and by participating in meetings and conversations to implement, adhere, and police the agreements they had reached. And, it alleges that these activities were within the flow of and substantially affected interstate commerce inasmuch as defendants shipped these products to customers located in other states, the primary raw materials were purchased and shipped in a flow of interstate commerce, and the conspiracy had an effect on commerce in the United States. Accepting these allegations as true, as the court

11

must at this procedural juncture, the court cannot say that it appears beyond a doubt that plaintiffs can prove no set of facts which would entitle them to relief. Thus, the court will not dismiss plaintiffs' antitrust claim for failure to state a claim upon which relief can be granted.

At oral argument, counsel for Lyondell argued that Lyondell has never produced all of the alleged products that are the subject of the conspiracy—specifically, it has never produced MDI. The court will not dismiss plaintiffs' claim against Lyondell based on this argument for two reasons. First and foremost, plaintiffs complaint alleges that during the relevant time period Lyondell "manufactured and sold Polyether Polyol Products to purchasers in the United States and elsewhere." Of course, in evaluating the sufficiency of plaintiffs' allegations the court must accept those allegations as true and view those allegations in the light most favorable to plaintiffs. Thus, the court must accept as true the fact that Lyondell manufactured and sold polyether polyols, MDI, and/or TDI. If Lyondell wants to dispute plaintiffs' factual allegations, the procedural mechanism for doing so is a motion for summary judgment, not a motion to dismiss. *Cf. Swierkiewicz*, 534 U.S. at 514 (claims lacking merit may be dealt with through summary judgment). Plaintiffs' complaint gives Lyondell fair notice of the basis for plaintiffs' claim against it, which is all that is required at the pleading stage. Second, Lyondell has not yet presented any meaningful argument on this issue. Instead, defendants touch on this argument only briefly in a footnote in their memorandum in which they contend that "not all of the defendants manufacture each of the three products at issue." They have presented no

12

legal argument on this issue. Thus, even if Lyondell's arguments were factually correct, the court would not dismiss Lyondell without more developed legal argument on this issue.[4]

### B.     Fraudulent Concealment Allegations

Plaintiffs' federal antitrust claim is subject to a four-year statute of limitations. *See* 15 U.S.C. § 15b. The initial complaint in the Polyether Polyol Cases was filed on November 23, 2004. Four years prior would have been November 23, 2000. Plaintiffs' complaint seeks to reach back nearly two additional years to January 1, 1999, by alleging that defendants' fraudulent concealment of the price fixing conspiracy tolled the statute of limitations. The fraudulent concealment tolling doctrine is "read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). To toll the statute of limitations based on fraudulent concealment, plaintiffs must show: (1) the use of fraudulent means by the defendants; (2) successful concealment from plaintiffs; and (3) that plaintiffs did not know or

---

[4] The court will not address defendants' conscious parallelism argument because plaintiffs have clarified that they are not attempting to support their conspiracy allegation through an assertion of parallel pricing. Nonetheless, given plaintiffs' allegations of defendants' interrelated pricing, the court can envision that this issue may arise again during the course of this litigation. To that end, the court wishes to clarify that it is not inclined to adhere to that aspect of this court's holding in *In re Universal Service Fund Telephone Billing Practices Litigation*, 300 F. Supp. 2d 1107 (D. Kan. 2003), that a plaintiff relying on a theory of conscious parallelism must also allege a plus factor. In that case, the court was not confronted with some of the well reasoned arguments advanced by the plaintiffs in this case. Additionally, in the *Universal Service Fund* case this court relied on the district court's reasoning in *Twombly v. Bell Atlantic Corp.*, 313 F. Supp. 2d 174 (S.D.N.Y. 2003), which was subsequently reversed by the Second Circuit in light of the liberal notice pleading standards of the Federal Rules of Civil Procedure. *See Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 114-17 (2d Cir. 2005). The court does note, however, that in the *Universal Service Fund* case the plaintiffs' allegations were sufficient to satisfy the "plus factor" element in any event.

by the exercise of due diligence could not have known that they might have a cause of action. *Ballen v. Prudential Bache Sec., Inc.*, 23 F.3d 335, 337 (10th Cir. 1994).

The thrust of defendants' argument with respect to this aspect of plaintiffs' complaint is that plaintiffs have failed to plead fraudulent concealment with particularity as required by Fed. R. Civ. P. 9(b). Indeed, the Tenth Circuit has held that a claim of fraudulent concealment to toll the statute of limitations is subject to dismissal if a plaintiff fails to plead the first element—i.e., fraudulent means—with particularity as required by Rule 9(b). *Ballen*, 23 F.3d at 337. Rule 9(b) requires that "[i]n all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). This requirement must be read in conjunction with Rule 8's requirement that pleadings be simple, concise, and direct. *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). Rule 9(b)'s purpose is to give the defendant fair notice of the plaintiff's claims and the factual grounds upon which they are based. *Id.* (quoting *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992)). Thus, a complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quotation omitted); *accord Schwartz*, 124 F.3d at 1252. "In other words, the plaintiff must set out the 'who, what, where, and when' of the alleged fraud." *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001).

In this case, the allegations in plaintiffs' complaint fall far short of this standard. Plaintiffs allege that defendants met secretly to discuss prices, customers, and markets of the

Polyether Polyol Products. Plaintiffs do not, however, allege who met or when or where those meetings took place. Plaintiffs also allege that defendants agreed among themselves at meetings and in conversations not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme. Again, plaintiffs do not allege who agreed to this arrangement or when or where those meetings or conversations occurred. Lastly, plaintiffs allege that defendants gave false and pretextual reasons for their Polyether Polyol Products prices and falsely described their pricing as being the result of competitive factors rather than collusion. Once again, these allegations do not allege who made those representations or when or where they gave those false and pretextual reasons for the Polyether Polyol Product pricing. In sum, plaintiffs have failed to plead the circumstances constituting fraud with the degree of particularity required by Rule 9(b). *Cf. Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.5 (10th Cir. 1980) (setting forth allegations of affirmative conduct to conceal the alleged fraud which were sufficient to invoke the doctrine of equitable tolling at the motion to dismiss stage). Accordingly, plaintiffs' allegations seeking to toll the statute of limitations on the grounds of fraudulent concealment are insufficient and defendants' motion to dismiss is granted with respect to that aspect of plaintiffs' complaint.

Lastly, at oral argument plaintiffs requested leave to amend their complaint to allege the circumstances constituting fraud with greater particularity if the court were to grant this aspect of defendants' motion. Assuming plaintiffs can allege the who, what, where, and when of the alleged fraud, such an amendment would not be futile. Thus, the court hereby grants

plaintiffs leave to file a first amended consolidated complaint on or before **February 3, 2006**, which alleges fraudulent concealment with the degree of particularity required by Rule 9(b).[5] *See* Fed. R. Civ. P. 15(a) (directing that leave to amend "shall be freely given when justice so requires").

**IT IS THEREFORE ORDERED BY THE COURT** that the Polyether Polyol Defendants' motion to dismiss (Doc. 158) is granted in part and denied in part as set forth above. Plaintiffs are granted leave to file a first amended consolidated complaint on or before **February 3, 2006**.

**IT IS SO ORDERED** this 18th day of January, 2006.

                                      s/ John W. Lungstrum
                                      John W. Lungstrum
                                      United States District Judge

---

[5] Of course, defendants are free to challenge these amended allegations by a renewed motion to dismiss should they deem it appropriate to do so.