IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE<br>URETHANE ANTITRUST LITIGATION | MDL No. 1616 |
| This document relates to:<br>The Polyether Polyol Cases | Civil No. 2:04-md-01616-JWL-DJW |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made and entered into this 31st day of January, 2006 (the "Execution Date"), by and among defendants Bayer AG, Bayer Corporation, and Bayer MaterialScience LLC (f/k/a Bayer Polymers LLC) ("Bayer," as defined in Paragraph 1 below) and plaintiffs Seegott Holdings Inc., RBX Industries, Inc., and Industrial Polymers, Inc. (collectively "Plaintiffs"), who have filed suit as representatives of a putative class of similarly situated direct purchasers, as more specifically defined below. Plaintiffs enter this Settlement Agreement both individually and on behalf of a class of all direct purchasers of polyether polyols, monomeric or polymeric diphenylmethane diisocyanate, and/or toluene diisocyanate, whether sold separately or in a combined form with or without other chemicals added thereto (collectively, the "Products," as defined in Paragraph 15 below, and including but not limited to certain products sold under the general trade names identified on Attachment A hereto) during the period from January 1, 1999 to December 31, 2004 (the "Class").

WHEREAS, Plaintiffs are prosecuting the above-captioned actions (the "Class Actions") on their own behalf and on behalf of the Class against Bayer and other Defendants;

WHEREAS, Plaintiffs allege, among other things, that Bayer participated in an unlawful conspiracy to fix prices and allocate markets for the Products in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*;

WHEREAS, Bayer denies Plaintiffs' allegations, has not conceded or admitted any liability, and would assert affirmative defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Class Actions and have concluded that a settlement with Bayer according to the terms set forth below is in the best interest of Plaintiffs and the Class;

WHEREAS, Bayer has concluded, despite its belief that it has good defenses to the claims asserted, that it will enter into this Settlement Agreement in order to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation;

WHEREAS, Plaintiffs have agreed to accept the amount of the settlement, in part, because of the value of the cooperation Bayer has agreed to provide to the Plaintiffs and the Class; and

WHEREAS, arm's-length settlement negotiations have taken place between counsel for Plaintiffs and Bayer, and this Settlement Agreement, which embodies all of the terms and conditions of the settlement between Bayer and Plaintiffs, both individually and on behalf of the Class, has been reached as a result of the parties' negotiations, subject to approval of the Court.

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Class Actions be settled, compromised, and dismissed on the merits with prejudice as to Bayer only, without costs as to Plaintiffs, the Class, or Bayer, subject to the approval of the Court, on the following terms and conditions.

Definitions

The following terms, as used in this Settlement Agreement, have the following meanings:

1. "Bayer" means Bayer AG, Bayer Corporation, Bayer MaterialScience AG, and Bayer MaterialScience LLC (f/k/a Bayer Polymers LLC), and their respective past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

2. "Claims Administrator" shall mean Complete Claim Solutions, Inc.

3. "Class" means all persons and entities in the United States and its territories who directly purchased the Products from Defendants at any time from January 1, 1999 through December 31, 2004. Excluded from the Class are Defendants, their respective parents, employees, subsidiaries and affiliates, and all government entities.

4. "Class Actions" shall mean the above-captioned action and all cases consolidated therein.

5. "Class Counsel" shall refer to the law firms of Cohen, Milstein, Hausfeld & Toll, PLLC and Fine, Kaplan and Black, R.P.C.

6. "Class Member" means each member of the Class who does not timely elect to be excluded from the Class.

7. "Class Period" means the period from and including January 1, 1999 up to and including December 31, 2004.

8. "Class Representatives" or "Plaintiffs" means Seegott Holdings Inc., RBX Industries, Inc., and Industrial Polymers, Inc.

3

9. "Defendants" means Bayer AG, Bayer Corporation, Bayer MaterialScience LLC (f/k/a Bayer Polymers LLC), BASF AG, BASF Corporation, The Dow Chemical Company, Huntsman Corporation, Huntsman LLC, and Lyondell Chemical Company.

10. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

11. "Escrow Account" shall mean SunTrust account number 9443001321 (reference number 7911021), established pursuant to the terms and conditions set forth in the Escrow Agreement attached as Attachment B hereto.

12. "Escrow Agent" shall mean SunTrust Bank as set forth in the Escrow Agreement attached as Attachment B hereto.

13. "Escrow Agreement" shall mean the agreement attached as Attachment B hereto.

14. "Non-Settling Defendant" means any Defendant other than Bayer.

15. "Products" means polyether polyols, monomeric or polymeric diphenylmethane diisocyanate, and/or toluene diisocyanate, whether sold separately or in a combined form with or without other chemicals added thereto. The "Products" shall include but not be limited to certain products sold under the general trade names identified on Attachment A hereto.

16. "Purchases" means the purchases of Products directly from Bayer during the Class Period.

17. "Released Claims" means those claims released pursuant to Paragraph 27 of this Settlement Agreement.

18. "Releasees" shall refer jointly and severally, individually and collectively to Bayer, Rhein Chemie Corporation, and Rhein Chemie Rheinau GmbH, and their respective past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

19. "Releasors" shall refer jointly and severally, individually and collectively to Plaintiffs, the Class Members, and their respective past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

20. "Settlement Amount" means the amount set forth in Paragraph 28 below.

21. "Settlement Fund" shall mean the Settlement Amount and any interest earned on that amount.

Class Certification

22. Plaintiffs shall seek, and Bayer shall not object to, certification of the Class as defined above for the purposes of this Settlement Agreement only, and appointment of Class Counsel as lead counsel for the Class.

Approval of this Settlement Agreement and Dismissal of Claims

23. Plaintiffs and Bayer shall use their best efforts to effectuate this Settlement Agreement, and shall cooperate to promptly seek and obtain the Court's preliminary and final approval of this Settlement Agreement (including providing class notice under Federal Rules of

Civil Procedure 23 (c) and (e)) and to secure the prompt, complete, and final dismissal with prejudice of the Class Actions as to Bayer only.

24. Within twenty (20) business days after the Execution Date, Plaintiffs shall submit to the Court and Bayer shall not object to a motion requesting entry of an Order preliminarily approving the settlement and authorizing dissemination of notice to the Class (the "Motion"), as well as a stay of all proceedings against Bayer except those proceedings provided for or required by this Settlement Agreement. The Motion shall include: (a) the definition of the Class to be certified by the Court pursuant to this Settlement Agreement; and (b) the proposed form of, method for, and timetable for dissemination of notice to the Class. Unless otherwise directed by the Court, individual notice of the settlement shall be mailed and/or e-mailed to persons and entities identified as direct purchasers of the Products in the United States from Defendants during the Class Period. Bayer shall supply to Class Counsel in electronic mailing format, or such form as may be reasonably requested by Class Counsel, the names and addresses of direct purchasers of the Products as Bayer has in its files.

25. Plaintiffs shall seek and Bayer shall not object to entry of a final judgment order:

   a. approving finally this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

   b. directing that, as to Bayer, the Class Actions be dismissed with prejudice and, except as provided for in this Settlement Agreement, without costs;

   c. reserving exclusive jurisdiction over the settlement and this Settlement Agreement, including the administration and consummation of this settlement; and

   d. finding under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Bayer shall be final and entered forthwith.

26. This Settlement Agreement shall become final only upon: (a) the entry by the Court of a final order approving the Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure together with entry of a final judgment dismissing the Class Actions and all claims therein against Bayer on the merits with prejudice as to all Class Members (the "Final Judgment"), and (b) the expiration of the time for appeal or to seek permission to appeal from the Court's approval of the Settlement Agreement and entry of the Final Judgment or, if an appeal from an approval and Final Judgment is taken, the affirmance of such Final Judgment in its entirety, without modification, by the court of last resort to which an appeal of such Final Judgment may be taken (the "Effective Date"). It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

Release and Discharge

27. Upon the occurrence of the Effective Date and in consideration of payment of the Settlement Amount specified in Paragraph 28 of this Settlement Agreement, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, and causes of action, whether class, individual, or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties, and attorneys' fees that Releasors, or anyone of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have against the Releasees, whether known or unknown, relating in any way to any conduct by the Releasees prior to the Effective Date concerning the pricing, selling, discounting, marketing, manufacturing and/or distributing of the Products in the United States and its territories or for delivery in the United States and its territories (the "Released Claims"). The Released Claims include but are

not limited to claims related to or arising out of the facts, occurrences, transactions, or other matters alleged in the Class Actions during the Class Period. However, nothing herein shall be construed to release any claims relative to any product defect, breach of contract, or similar claim between the parties relating to the Products. Moreover, nothing herein shall preclude the Releasors from participating in or benefiting from any relief or other recovery as part of a settlement or judgment on behalf of a class of indirect purchasers of the Products (such reservation by the Releasors of any right to participate in any relief or other recovery as part of a settlement or judgment on behalf of a class of indirect purchasers of the Products shall under no circumstances be construed to constrain the Releasees from asserting any defense or opposing the certification of any putative class of indirect purchasers of the Products). The Releasors shall not, after the Effective Date of this Settlement Agreement, seek to recover against any of the Releasees for any of the Released Claims.

Payment

28. Subject to the provisions hereof, and in full, complete, and final settlement of the Class Actions as provided herein, Bayer agrees to pay the Plaintiffs, on behalf of the Class Members, the Settlement Amount of $55,300,000.00. Within ten (10) business days after the Execution Date, Bayer shall pay into the Escrow Account the Settlement Amount, which amount shall be available immediately thereafter for reimbursement of such costs, fees, and expenses associated with the provision of notice to the members of the Class pursuant to Paragraph 32 hereof as may be approved by the Court.

Determination of Opt Outs

29. Within twenty (20) business days after the Court-ordered deadline by which members of the Class may exclude themselves from the Class, Class Counsel shall serve on

counsel for Bayer a list of all persons or entities ("Opt Out Plaintiffs") who timely filed notices of exclusion. Within twenty (20) business days of receiving the list of Opt Out Plaintiffs from Class Counsel, Bayer shall serve on Class Counsel its calculations of the total Purchases of Opt Out Plaintiffs (the "Opt Out Amount"), together with reasonably sufficient supporting records.

30. Bayer shall, in its sole discretion, have the option to rescind this Settlement Agreement in its entirety if the Opt Out Amount equals or exceeds thirty percent (30%) of the Class' Purchases. If and when Bayer exercises this option, any and all amounts then constituting the Settlement Fund shall be returned forthwith to Bayer, except for such disbursements made or incurred in accordance with Paragraph 32 of this Settlement Agreement. Notice of such rescission shall be provided in writing no later than twenty (20) business days after Bayer's receipt of the list of Opt Out Plaintiffs from Class Counsel, and Bayer's obligations pursuant to this Settlement Agreement shall cease, including Bayer's obligations to make payments and to cooperate pursuant to Paragraph 41 of this Settlement Agreement, as of the date such notice is sent.

The Settlement Fund

31. Each Class Member shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all claims released by the Releasors pursuant to Paragraph 27 herein. Except as provided by order of the Court, no Class Member shall have any interest in the Settlement Fund or any portion thereof.

32. Before the Effective Date, disbursements for expenses associated with providing notice of the settlement to the Class, expenses associated with administering the settlement, and any payments and expenses incurred in connection with taxation matters relating to the settlement and this Settlement Agreement may be made from the Settlement Fund, and such

amounts shall not be refundable to Bayer in the event the Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective. Court approval shall not be required for disbursements or distributions in amounts not to exceed $1,000,000 in the aggregate for the purposes set forth in this Paragraph.

33. This Settlement Fund shall be invested in United States Government Treasury obligations or United States Treasury Money Market funds, provided, however, that such portions of the Settlement Fund as may reasonably be needed to pay current expenses associated with providing notice to the Class and administering the Settlement Fund may be deposited in a federally insured bank account. All interest earned by the Settlement Fund shall become and remain part of the Settlement Fund.

34. Bayer shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, use, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such investment, distribution, or administration, except as otherwise provided in this Settlement Agreement.

35. After the Effective Date, the Settlement Fund shall be distributed in accordance with a plan that Class Counsel shall submit at the appropriate time for approval by the Court.

36. Plaintiffs and Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees; past, current, or future litigation expenses (including, but not limited to, experts' and consultants' fees and expenses); the costs of giving notice of this settlement to the Class; and any incentive awards to the Class Representatives, subject to application to and approval of the Court.

37. Bayer agrees to take no position with respect to any application to the Court by Class Counsel for an award of attorneys' fees, and reimbursement of costs and expenses incurred

in the prosecution of these Class Actions, or for any application to the Court for approval of incentive awards to the Class Representatives.

38.   After making the payment described in Paragraph 28 of this Settlement Agreement, Bayer shall have no responsibility whatsoever for the allocation or distribution of the Settlement Amount and shall not be responsible or otherwise liable for any disputes relating to the amount, allocation, or distribution of any fees, costs, or awards. Further, after making the payment described in Paragraph 28 of this Settlement Agreement, Bayer shall not be liable for any additional payments to the Class Members or Class Counsel pursuant to this Settlement Agreement.

39.   Bayer agrees not to object, subject to any Order of the Court, to the payment to Class Counsel of approved attorneys' fees, costs, and expenses within ten (10) business days after entry of the Final Judgment (as defined in Paragraph 26 herein) and any order awarding attorneys' fees, costs, and expenses. Disbursement of such fees, costs, and expenses shall not be delayed by reason of any appeal of the Final Judgment; provided, however, if the Court's award of fees, costs, and expenses is vacated, reversed, or reduced on or as a result of an appeal, Class Counsel shall within ten (10) business days after receiving written notice from the Court or from Bayer of such vacatur, reversal, or reduction, make a refund to the Escrow Account in the amount of such vacatur, reversal, or reduction with interest, and further provided that if Plaintiffs and/or Bayer elect to rescind the Settlement Agreement as described in Paragraph 40 below, Class Counsel shall within ten (10) business days after giving notice to or receiving notice from Bayer of such rescission, make a refund to the Escrow Account in the amount of any such fees, costs, and expenses with interest. The interest rate applicable to any refund made to the Escrow Account pursuant to this Paragraph shall be same interest rate earned by the STI U.S. Treasury

Money Market Fund during the period between the payment of approved attorneys' fees, costs, and expenses and any such refund.

Rescission if the Settlement Agreement is Not Finally Approved

40. If the Court declines to approve this Settlement Agreement or any part hereof, or if such approval is materially modified or set aside on appeal, or if the Court does not enter the Final Judgment, or if the Court enters the Final Judgment and order and appellate review is sought and, on such review, such Final Judgment is not affirmed, then Bayer and the Plaintiffs shall each, in their respective sole discretion, have the option to rescind this Settlement Agreement in its entirety, and any and all amounts constituting the Settlement Fund (including, but not limited to, any fees, costs, and/or expenses advanced to Class Counsel pursuant to Paragraph 39 above) shall be returned forthwith to Bayer, except for any disbursements made or incurred in accordance with Paragraph 32 of this Settlement Agreement. The Escrow Agent shall disburse the Settlement Fund to Bayer in accordance with this Paragraph within fifteen (15) business days after receipt of either (i) written notice signed by counsel for Bayer and Class Counsel stating that this Settlement Agreement has been canceled or terminated, or (ii) any order of the Court so directing. If the Settlement Agreement is rescinded, canceled, or terminated pursuant to this Paragraph, any obligations pursuant to this Settlement Agreement (other than disbursement of the Settlement Fund to Bayer as set forth above) shall cease immediately. A modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund or any plan of allocation or distribution of the Settlement Fund shall not be deemed a modification of all or part of the terms of this Settlement Agreement or the Final Judgment.

Cooperation Agreement

41. Bayer's cooperation, as set forth below, shall be limited to the production of information, testimony, and/or Documents that are not protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, or any other applicable privilege or doctrine. Moreover, nothing herein is intended (a) to prohibit any current or former officer, director, employee, or agent of Bayer from asserting, where appropriate, any Fifth Amendment privilege against self-incrimination or any attorney-client privilege held by him in his individual capacity; (b) to require Bayer to waive or breach any attorney-client privilege that it has now or may in the future have with respect to information, testimony, or Documents; (c) to require the disclosure of information, testimony, and/or Documents reflecting the impressions or thought processes of Bayer's attorneys or other work product protected from disclosure by the attorney work product doctrine or any other applicable privilege; or (d) to require the production or disclosure of any information, testimony, or Documents created by or for government authorities in connection with any investigation(s) relating to the Products.

      a. Following the expiration of Bayer's rescission rights pursuant to Paragraph 30 of this Settlement Agreement, Bayer shall, to the extent not previously produced, promptly produce the following categories of non-privileged Documents in its possession, custody, or control: (1) transaction data in electronic format for all of Bayer's sales of the Products during the Class Period; (2) all price announcements for the Products during the Class Period; and (3) all Documents relating to or reflecting actual or potential communications between two or more Defendants regarding the prices at which or the customers to whom the Products would be or had been sold in the United States during the Class Period.

      b. If no litigation class has yet been certified as of the Effective Date (as defined in Paragraph 26 above), Bayer shall provide Plaintiffs with cooperation in connection with Plaintiffs' efforts to obtain certification of a litigation class against the Non-Settling Defendants, including providing affidavits from Bayer personnel with knowledge relevant to class certification issues.

      c. At the time Plaintiffs seek preliminary approval of the settlement, Bayer shall, for purposes of this Settlement Agreement only, consent or stipulate to certification of the Class defined in Paragraph 3 of the Settlement Agreement.

      d. Following the Effective Date (as defined in Paragraph 26 above), Bayer shall promptly provide full cooperation to Class Counsel with respect to discovery and gathering evidentiary materials relating to Plaintiffs' claims in the Class Actions, as set forth herein:

           (1) Bayer shall make every reasonable effort to (i) make available for conferences with Plaintiffs' counsel and/or experts in the United States, upon reasonable notice and at Bayer's expense, current and former directors, officers, and employees of Bayer, including any predecessor entities, who are believed to have knowledge regarding Plaintiffs' claims as alleged in the Class Actions; (ii) provide information to Plaintiffs regarding Plaintiffs' claims as alleged in the

Class Actions in personal interviews; (iii) take necessary steps to provide authentication of non-privileged Documents (as defined in Paragraph 41(a) above) Plaintiffs intend to use at trial; (iv) produce to Plaintiffs, upon reasonable and specific requests, non-privileged Documents relevant to the Plaintiffs' claims as alleged in the Class Actions; and (v) prepare declarations and/or affidavits and/or provide testimony, upon reasonable notice and at Bayer's expense, by current and former directors, officers, and employees of Bayer at deposition and/or at trial. As to former directors, officers, and employees, Bayer shall make every reasonable effort to have such individuals appear after the Effective Date for interviews, depositions, and trial testimony under the same conditions as for the current directors, officers, and employees of Bayer. Any persons made available under this Paragraph shall be made available at a mutually agreeable time and place.

(2) Bayer also agrees to produce at trial and/or deposition, or through affidavits or declarations, representatives qualified to establish for admission into evidence any of Bayer's non-privileged Documents produced or to be produced in the litigation, and evidence of Bayer's sales of the Products to the Class during the Class Period and any other non-privileged Documents of Bayer, and, to the extent possible, any Documents produced by any of Bayer's alleged co-conspirators.

(3) Bayer also agrees that its counsel will meet as often as is reasonable and necessary with Class Counsel after the Effective Date to identify non-privileged Documents and people relating to the antitrust violations alleged in the Class Actions, and the potential culpability of the Non-Settling Defendants and unnamed co-conspirators.

e. Bayer shall have the right to designate any information, testimony, or Documents produced pursuant to this Paragraph as "Confidential" or "Highly Confidential" in accordance with the protective order entered in the above-captioned litigation (the "Protective Order," a copy of which is attached as Attachment C hereto). Any such designations shall survive the termination or rescission of this Settlement Agreement, and shall continue to enjoy the fullest protections offered by the Protective Order.

f. All information and materials provided by Bayer to Class Counsel regarding the Products shall be used only in connection with these Class Actions and shall not be used directly or indirectly for any other purpose. No information provided to Class Counsel pursuant to this Settlement Agreement may be disclosed to or shared with any other person or party (other than co-counsel or experts retained in the course of the Class Actions), including absent Class Members, Opt Out Plaintiffs and counsel for Opt Out Plaintiffs or absent Class Members, except as part of non-privileged Documents or testimony filed with the Court or produced at a hearing or trial of the Class Actions. Class Counsel agrees that even if filed with the Court or produced at a hearing or trial, Documents or testimony designated as "Confidential" or "Highly Confidential" in accordance with the Protective Order shall retain the protection of that order until the Court directs otherwise.

42. Bayer's obligations to cooperate shall not be affected by the Release set forth in Paragraph 27 of this Settlement Agreement. Bayer's obligations to cooperate shall cease as of the date that final judgment has been rendered in the Class Actions against all Defendants.

Taxes

43. Class Counsel shall be solely responsible for directing the Claims Administrator to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund. Further, Class Counsel shall be solely responsible for directing the Escrow Agent to take out of the Settlement Fund, as and when legally required, any tax payments, including interest and penalties due on income earned by the Settlement Fund. Bayer shall have no responsibility to make any filings relating to the Settlement Fund and shall have no responsibility to pay tax on any income earned by the Settlement Fund or to pay any taxes on the Settlement Fund unless the settlement is not consummated and the Settlement Fund is returned to Bayer. Other than as specifically set forth herein, Bayer shall have no responsibility for the payment of taxes or tax expenses. If for any reason, for any period of time, Bayer is required to pay taxes on income earned by the Escrow Account, the Escrow Agent shall, upon written instructions from Bayer with notice to Class Counsel, timely pay to Bayer sufficient funds to enable it to pay all taxes (state, federal, or other) on income earned by the Escrow Account.

44. For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Claims Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including

without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

45.	The parties to this Settlement Agreement and their counsel shall treat, and shall cause the Claims Administrator to treat, the Escrow Account as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The parties, their counsel, the Claims Administrator, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account in such manner. In addition, the Claims Administrator and, as required, the parties shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Claims Administrator timely and properly to prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

Miscellaneous

46.	This Settlement Agreement does not settle or compromise any claim other than the Released Claims against the Releasees. All rights of any Class Member against any person or entity other than the Releasees for sales made by Bayer are specifically reserved by Plaintiffs and the Class Members. Sales of the Products by Bayer in the United States shall remain in the Class Actions against the Non-Settling Defendants and/or any future defendants other than the Releasees as a basis for damage claims, and shall be part of any joint and several liability claims

in the Class Actions against the Non-Settling Defendants and/or any future defendants or any persons or entities other than the Releasees.

47. Plaintiffs waive California Civil Code Section 1542 and similar provisions in other states. Plaintiffs certify that they are aware of and have read and reviewed the following provisions of California Civil Code Section 1542 ("Section 1542"): "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." The provisions of the release set forth above shall apply according to their terms, regardless of provisions of Section 1542 or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction. Plaintiffs hereby expressly waive and relinquish any and all rights and benefits existing under (i) Section 1542 or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction and (ii) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above.

48. This Settlement Agreement constitutes the entire agreement among Plaintiffs and Bayer pertaining to the settlement of the Class Actions against Bayer only and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and Bayer in connection therewith. This Settlement Agreement may be modified or amended only by a writing executed by Class Counsel and Bayer and approved by the Court.

49. All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of New York without regard to its choice of law or conflict of law principles.

50. The United States District Court for the District of Kansas retains exclusive jurisdiction over all matters relating to the implementation and enforcement of the Settlement Agreement.

51. This Settlement Agreement may be executed in counterparts by Plaintiffs and Bayer, and a facsimile signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

52. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement, subject to Court approval.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the date first herein written above.

By: *(signature)* Michael D. Hausfeld /RAK

Michael D. Hausfeld
**Cohen, Milstein, Hausfeld & Toll, P.L.L.C.**
1100 New York Avenue, NW
Suite 500 West
Washington, D.C. 20005
(202) 408-4600

By: *(signature)*

Phillip A. Proger
**Jones Day**
51 Louisiana Avenue, NW
Washington, DC 20001-1113
(202) 879-3939

**Counsel for Bayer AG, Bayer Corporation, and Bayer MaterialScience LLC (f/k/a Bayer Polymers LLC)**

By: *(signature)* Allen D. Black /RAK

Allen D. Black
**Fine, Kaplan, and Black, R.P.C.**
1835 Market Street
28th Floor
Philadelphia, PA 19103
(215)567-6565

**Counsel for Plaintiffs and Class Counsel**

## ATTACHMENT A

The "Products" that are subject to this Settlement Agreement are polyether polyols, monomeric or polymeric diphenylmethane diisocyanate, and/or toluene diisocyanate, whether sold separately or in a combined form with or without other chemicals added thereto. The "Products" include, but are not limited to, certain products sold under the following general trade names:

Acclaim®

Actaclear®

Arcol®

Atlantis®

Baydur®

Bayfill®

Bayfit®

Bayflex®

Baynat®

Baytec®

Baytherm®

Baytuft®

Hyperlite®

Mondur®

Multranol®

Prism®

Softcel®

Ultracel®