# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **IN RE: URETHANE ANTITRUST**<br>**LITIGATION** | **No.  04-MD-1616-JWL** |

**This Order Relates to**
**the Polyether Polyol Cases**

_____

## MEMORANDUM AND ORDER

This multidistrict litigation consists of numerous putative class action lawsuits in which plaintiffs claim that defendants engaged in unlawful price fixing conspiracies with respect to urethane chemical products in violation of the Sherman Act, 15 U.S.C. § 1.   The court has consolidated two separate sets of cases—the Polyester Polyol Cases and the Polyether Polyol Cases.   This Memorandum and Order relates to the Polyether Polyol Cases, in which the Polyether Polyol Plaintiffs (hereinafter, plaintiffs) are allegedly direct purchasers of certain polyester polyol urethane products that the Polyether Polyol Defendants (hereinafter, defendants) allegedly sell and manufacture.   This matter is presently before the court on plaintiffs' motion for leave to amend (doc. #206) and the non-settling defendants' motion to dismiss time-barred claims (doc. #239).   On March 27, 2006, the court heard oral argument on these motions and took the matters under advisement.   After thoroughly considering the parties' arguments, the court is now prepared to rule.   For the reasons explained below, plaintiffs' motion to amend will be granted and defendants' motion to dismiss will be denied.

## BACKGROUND

Plaintiffs' complaint alleges that defendants engaged in a price-fixing conspiracy with respect to certain polyether polyol products from January 1, 1999, to the present. Plaintiffs Seegott Holdings, Inc. and Industrial Polymers, Inc. purchased these products directly from one or more of the defendants. Defendants Bayer AG, Bayer Corporation, Bayer MaterialScience LLC (collectively, Bayer), BASF AG, BASF Corporation (collectively, BASF), The Dow Chemical Company (Dow), Huntsman Corporation, Huntsman LLC (collectively, Huntsman), and Lyondell Chemical Company (Lyondell) allegedly manufactured and sold these products.

Plaintiffs have now filed a Motion for Leave to Amend Consolidated Complaint (doc. #206). Therein, plaintiffs seek leave to make four substantive revisions to their complaint: (1) removing RBX Industries, Inc. as a named plaintiff; (2) substituting the correct Huntsman entity for the Huntsman entities that were previously named as defendants; (3) inserting a specific end date for the proposed class period; and (4) changing the relevant product definition. Defendants BASF, Dow, Huntsman, and Lyondell filed a memorandum in response to plaintiffs' motion to amend. They state that they do not oppose the first three amendments described above; therefore, those aspects of plaintiffs' motion are granted as unopposed. They do, however, oppose plaintiffs' proposed amendment with respect to the definition of the term "Polyether Polyol Products," which are the products that are the subject of the alleged price-fixing conspiracy in this consolidated set of cases. Plaintiffs and Bayer entered into a settlement agreement dated January 31, 2006, and plaintiffs' proposed amendment of the

2

product definition was precipitated by that settlement.  Plaintiffs' proposed amendment tracks the product definition contained in the Bayer settlement agreement.

The non-settling defendants also ask the court to dismiss plaintiffs' allegations of fraudulent concealment to toll the statute of limitations.  This aspect of plaintiffs' complaint is in a different procedural posture than the issue concerning the relevant product definition. By way of background, the court entered a Memorandum and Order on January 18, 2006, which, among other things, granted in part defendants' motion to dismiss with respect to plaintiffs' fraudulent concealment allegations on the grounds that plaintiffs had failed to plead fraudulent concealment with particularity as required by Fed. R. Civ. P. 9(b).  *See In re Urethane Antitrust Litig.*, 409 F. Supp. 2d 1275, 1284-85 (D. Kan. 2006).  The court granted this aspect of defendants' motion, however, without prejudice to plaintiffs filing a first amended consolidated complaint which set forth the circumstances constituting the alleged fraud with greater particularity.  In the first amended consolidated complaint which is attached to plaintiffs' motion for leave to amend, plaintiffs have sought to accomplish this.  Because of the court's prior ruling on this issue, the court has already granted plaintiffs leave to amend their complaint in this respect.  Consequently, rather than defendants filing a response opposing this aspect of plaintiff's motion to amend, they have filed a motion to dismiss this aspect of plaintiffs' complaint.  Defendants contend that plaintiffs' fraudulent concealment allegations should be dismissed because they still fail to plead the circumstances constituting the alleged fraudulent concealment with the requisite degree of particularity.

3

## MOTION TO AMEND

Plaintiffs' complaint alleges a price-fixing conspiracy with respect to "Polyether Polyol Products." Plaintiffs' consolidated amended complaint currently defines this term to include polyether polyols, MDI, and TDI, which are the three main building block components of polyether polyol products in general. Plaintiffs now seek to amend their complaint to expand this product definition to include not only these three stand-alone products, but also all polyether polyol "systems" which are comprised of various blends of polyether polyols, TDI, MDI, and/or other ingredients.

**A.      Standard for a Motion to Amend**

The Federal Rules of Civil Procedure provide that a party may amend his or her pleading once as a matter of course or, after a responsive pleading has been filed, "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The decision whether to grant leave to amend is within the discretion of the district court. *Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001). The court may justifiably refuse leave to amend on the grounds of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

**B.      Discussion**

Defendants oppose the broadened product definition because it would vastly expand the scope and substance of this litigation. They contend that plaintiffs' proposed product

4

definition would violate the court's no-encroachment order by allowing the claims in the Polyether Polyol Cases to encroach on the claims in the Polyester Polyol Cases. They also argue that the proposed amendment is untimely and that they would be prejudiced by the proposed amendment. Additionally, they contend that the proposed amendment would be futile because adding polyether polyol "systems" would make this litigation unsuitable for a class action.

1.      *Encroachment*

In administering this multidistrict litigation proceeding, the court has ruled that the plaintiffs in each set of cases (the Polyester Polyol Cases and the Polyether Polyol Cases) should not expand or alter their allegations in a way that would encroach on the other group's claims except by leave of court. For a more thorough discussion of the history of this issue, see generally *In re Urethane Antitrust Litig.*, 232 F.R.D. 681 (D. Kan. 2005). The non-settling defendants urge the court to deny plaintiffs' proposed amendment with respect to the relevant product definition because, they contend, plaintiffs' proposed product definition would allow the claims in the Polyether Polyol Cases to encroach on the claims in the Polyester Polyol Cases in violation of the court's no-encroachment order.

The parties' debate over this issue has caused the relevant product definition to evolve during the course of their briefing and at the motion hearing. As stated previously, plaintiffs' consolidated amended complaint currently defines the term "Polyether Polyol Products" to include "polyether polyols, methyl diphenyl diisocyanate ('MDI') and toluene diiocyanate ('TDI')." (Consol. Am. Compl. (doc. #131) ¶ 131, at 3.) In plaintiffs' motion for leave to

amend, plaintiffs sought leave to modify this definition to include "polyether polyols, monomeric or polymeric diphenylmethane diisocyanate ('MDI') and/or toluene diisocyanate ('TDI'), whether sold separately or in a combined form with or without other chemicals added thereto." This proposed definition was intended to clarify two things: (1) that both types of MDI (monomeric and polymeric) are included; and (2) that polyether polyols, MDI, and TDI are included whether they are sold as stand-alone products ("separately") or as part of a polyether polyol system ("in a combined form with or without other chemicals added thereto"). When the non-settling defendants responded to plaintiffs' motion to amend, they pointed out that insofar as plaintiffs' proposed product definition encompasses polyether polyol systems, those products would encroach to some extent on the Polyester Polyol Cases because a small proportion of polyether polyol systems also contain polyester polyols.

In plaintiffs' reply memorandum, they proposed to modify their requested amendment of the product definition to include polyether polyols, MDI, TDI, "and polyether polyol systems." Plaintiffs explained that they understood the defendants' objection in this respect to be that their originally proposed language would encompass numerous end products made from polyether polyols and isocyanates, in addition to the chemicals themselves. Plaintiffs stated that they never intended to add end-use products to the complaint. Therefore, plaintiffs proposed to modify the product definition again—this time to add polyether polyol systems, but not end products, to the complaint. In defendants' surreply, they explained that the product definition proposed in plaintiffs' reply brief sought to avoid confronting the substantive encroachment problems by reclassifying them as mere "end use" issues. According to

6

defendants, plaintiffs' revised product definition would still encompass thousands of polyether polyol systems, some of which would also contain polyester polyols.

At the motion hearing, after consultation regarding this issue, plaintiffs' counsel withdrew plaintiffs' previously proposed product definitions and orally moved for the product definition to specifically exclude any polyether polyol systems which contain polyester polyols. Consequently, plaintiffs are currently seeking to amend the product definition in their complaint to include "polyether polyols, monomeric or polymeric diphenylmethane diisocyanate ('MDI'), toluene diisocyanate ('TDI'), and polyether polyol systems except any such systems that also contain polyester polyols." With this clarification, then, plaintiffs' proposed amended product definition does not include end products and it does not encroach on the claims asserted in the Polyester Polyol Cases. Consequently, defendants' encroachment argument is now moot.

### 2.    Undue Delay & Prejudice to Defendants

The court may deny plaintiffs leave to amend on the grounds of undue delay. *Wessel v. City of Albuquerque*, 299 F.3d 1186, 1197 (10th Cir. 2002). "Untimeliness in itself can be a sufficient reason to deny leave to amend, particularly when the movant provides no adequate explanation for the delay." *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1495 (10th Cir. 1995); *see also Frank*, 3 F.3d at 1365 ("It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay." (citations omitted)).  In this case, defendants contend that plaintiffs' proposed amendment is untimely because, although it was filed only

7

four months after plaintiffs filed their consolidated amended complaint, it was filed more than a year after they filed their original complaints in New Jersey, and almost two and one-half years after they began their investigation into the alleged price-fixing conspiracy that is the subject of this litigation.   Defendants argue that plaintiffs should have known the scope of the alleged price-fixing conspiracy long ago because of the extensive investigation that plaintiffs claim to have conducted before filing their lawsuits.

The court is unpersuaded that denying leave to amend on the grounds of undue delay is warranted here.   Plaintiffs have explained that the amendment is attributable to information they learned during settlement negotiations with Bayer.   During the motion hearing, plaintiffs' counsel explained that their pre-complaint investigation of the alleged price-fixing conspiracy only revealed "the tip of the iceberg."   (Mot. Hrg. Tr. at 24.)   Therefore, plaintiffs focused first on "the basic primary chemicals."   (*Id.* at 25.)   Then, during plaintiffs' settlement discussions with Bayer, it became clear that the pricing of polyether polyol systems was directly correlated to the pricing of the underlying chemicals and that systems should be included in the product definition.   The court is not persuaded, then, that plaintiffs necessarily should have known that their price-fixing claim should also encompass polyether polyol "systems" until fairly recently when plaintiffs and Bayer were engaged in settlement discussions.   Moreover, this MDL proceeding is still in its early stages.   Although the parties have begun discovery on class certification issues in the Polyether Polyol Cases, they have not yet commenced discovery on the merits.   Defendants have not even filed an answer yet.   Consequently, the court will not deny plaintiffs leave to amend on the grounds of undue delay.

Turning to the non-settling defendants' claim of prejudice, the court has no doubt that the expanded product definition will impose hardship on them.   The amendment will dramatically transform the nature and scope of this litigation by adding thousands of additional products.   Defendants will have to re-plow the same grounds for class certification discovery, this time at much greater length and expense given the much broader array of products at issue. Nonetheless, whether an amendment is prejudicial is determined not only by the nature of the amendment, but also by its timing.  *See Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (explaining that an amendment offered shortly before or during trial would be prejudicial whereas one offered before any discovery had occurred would not).   "One of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action."  *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (quotation omitted) (stating that a proposed amendment can be especially prejudicial where discovery is complete and the defendant has already moved for summary judgment).   In this case, class certification discovery has just begun, no depositions have been taken, and merits discovery has not yet begun.   At this early phase of the litigation, the court will not override the well-settled principle that leave to amend "shall be freely given," Fed. R. Civ. P. 15(a), solely because defendants will be subjected to more extensive discovery.   The parties will have ample time to conduct discovery on the broader array of products without delaying the final disposition of this proceeding.   Thus, the court is not persuaded that the hardship on defendants equates to undue prejudice at this early stage of

this litigation.   Accordingly, the court will not deny plaintiffs leave to amend on the grounds of undue prejudice to the defendants.

　　　　3.　　　Futility

　　　"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quotation omitted). Here, the non-settling defendants' futility argument is not that the amendment would render plaintiffs' complaint subject to dismissal, but rather that the expanded product definition would make this litigation unsuitable for a class action.   Defendants' argument is without merit. Leaving aside the potentially thorny issue of whether and under what circumstances the court could deny leave to amend for this reason (an issue which does not appear to have been addressed yet at the federal appellate level), defendants have not met their burden of establishing that the proposed amendment is futile because it <u>would</u> preclude class certification.   Instead, they contend that the proposed amendment "would vastly complicate this Court's Rule 23 analysis and likely would ultimately defeat any attempt to satisfy the class certification requirements."   (Defs.' Jt. Resp. Mem. (doc. #238), at 10-11 (emphasis added).) Their cursory and relatively undeveloped arguments on this point do not address the various criteria for class certification in sufficient detail to allow the court to find that the amendment is futile because it would preclude class certification.   Rather, defendants state that "the propriety of class certification is being addressed separately, and we do not ask the Court to prejudge that issue before the parties may present full arguments in support of their respective positions." (*Id.* at 11.)   But, if defendants want the court to deny plaintiffs leave to amend on

the grounds of the futility of the proposed amendment, then they must, at a bare minimum, meet their burden of establishing that the proposed class could not be certified given the expanded relevant product definition. They have failed to make such a showing, and therefore the court rejects their futility argument.

**C.     Conclusion**

In sum, the court finds no valid basis to deny plaintiffs leave to amend the product definition. The proposed product definition as discussed at the motion hearing does not encroach on the claims asserted in the Polyester Polyol Cases. Also, plaintiffs have explained that there was no excessive delay in requesting the amendment because they only recently learned the relevant information during their settlement discussions with Bayer. While the court understands that the amendment will impose a hardship on the defendants, it is early enough in this litigation that the amendment will not impose undue prejudice on defendants. And, defendants have not met their burden of persuading the court that the amendment is futile. Accordingly, plaintiffs' motion for leave to amend is granted with respect to the relevant product definition.

**MOTION TO DISMISS**

As explained previously, the court has already granted plaintiffs leave to amend their complaint to attempt to plead their fraudulent concealment allegations with a greater degree of particularity as required by Fed. R. Civ. P. 9(b). *See generally In re Urethane Antitrust*

11

*Litig.*, 409 F. Supp. 2d 1275, 1284-85 (D. Kan. 2006).   Plaintiffs have sought to accomplish this in their first amended consolidated complaint.

**A.     Facts**[1]

Plaintiffs allege that throughout the class period defendants affirmatively and fraudulently concealed their wrongful conduct.   Plaintiffs claim they did not discover the alleged price-fixing conspiracy nor could they have discovered it with reasonable diligence because defendants used deceptive and secret methods to avoid detection and to affirmatively conceal their violations.   Plaintiffs allege that defendants affirmatively concealed the price-fixing conspiracy

at least in the following respects:

a.     By meeting secretly to discuss prices, and customers and markets, of Polyether Polyol Products sold in the U.S. and elsewhere;

b.     By agreeing among themselves at meetings and in communications not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme; and

c.     By giving false and pretextual reasons for the prices of Polyether Polyol Products sold by them during the Class Period and by describing such pricing falsely as being the result of competitive factors rather than collusion.

(First Am. Consol. Compl. (doc. #206-3), ¶ 49, at 14.)   In this respect, plaintiffs' allegations are essentially the same as those that were at issue previously when the court dismissed the fraudulent concealment allegations in plaintiffs' consolidated amended complaint because they did not contain the requisite degree of particularity.

---

[1]   Consistent with the well established standard for evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court accepts as true all well pleaded factual allegations in plaintiffs' first amended consolidated complaint.

12

The more recent version of plaintiffs' complaint still does not set forth details concerning the allegations in subparagraphs (a) and (b) pertaining to the alleged secret meetings and agreements to conceal the purported conspiracy. Plaintiffs' first amended consolidated complaint does, however, contain more specific allegations concerning the defendants' price increase announcements in which they allegedly gave false and pretextual reasons for their price increases. Plaintiffs now allege that "Defendants consistently ascribed their price increases to ordinary market forces and considerations, such as increased raw material costs, decreased sales volume, and decreased margins." (*Id.* ¶ 52, at 14.) Plaintiffs set forth three subparagraphs spanning more than two pages in which they set forth the statements allegedly made by each of the defendants to explain announced price increases. Plaintiffs allege, for example, that with respect to the series of price increase announcements in July to September of 2002, BASF attributed its price increases to "global product balances" and "weakness in margins," Lyondell blamed "significant and sustained increase in raw materials costs," and Huntsman cited "recent raw material increases" when, in fact, those purported explanations were all false and pretextual. (*Id.* ¶ 53(a), at 15.) The allegations in the other two subparagraphs contain a similar level of detail. Plaintiffs allege that these false and misleading explanations lulled plaintiffs into believing that the price increases were the "normal result of competitive market forces rather than the product of collusive efforts." (*Id.* ¶ 54, at 17.)

The non-settling defendants ask the court to dismiss this aspect of plaintiffs' complaint because, they contend, plaintiffs still have failed to plead the circumstances constituting the

fraudulent concealment with sufficient particularity.   They ask the court to dismiss all claims in the First Amended Consolidated Complaint for the period prior to November 24, 2000, because those claims are barred by the applicable four-year statute of limitations, 15 U.S.C. § 15b.

**B.       Standard for Motion to Dismiss**

The court will dismiss a cause of action for failure to state a claim only when "'it appears beyond a doubt that the plaintiff can prove no set of facts in support of [its] claims which would entitle [it] to relief,'" *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).   The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff.   *Beedle*, 422 F.3d at 1063.   The issue in resolving such a motion is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."   *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quotation omitted); *accord Beedle*, 422 F.3d at 1063.

**B.       Discussion**

The Tenth Circuit has held that a claim of fraudulent concealment to toll the statute of limitations is subject to dismissal if a plaintiff fails to plead the first element—i.e., fraudulent means—with particularity as required by Rule 9(b).   *Ballen v. Prudential Bache Sec., Inc.*, 23 F.3d 335, 337 (10th Cir. 1994).   Rule 9(b) requires that "[i]n all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity."   Fed. R. Civ. P. 9(b).

14

This requirement must be read in conjunction with Rule 8's requirement that pleadings be simple, concise, and direct. *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). Rule 9(b)'s purpose is to give the defendant fair notice of the plaintiff's claims and the factual grounds upon which they are based. *Id.* (quoting *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992)). Thus, a complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quotation omitted); *accord Schwartz*, 124 F.3d at 1252. "In other words, the plaintiff must set out the 'who, what, where, and when' of the alleged fraud." *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001).

The allegations in plaintiffs' first amended consolidated complaint adequately set forth the who, what, where, and when of the defendants' allegedly false and pretextual reasons for price increases. They allege that specific defendants attributed price increases to specific factors. They also allege approximately when defendants made those representations. And, if that were not enough, plaintiffs have attached to their response brief the letters from defendants and one press release from Bayer in which defendants gave the allegedly false and pretextual reasons for the price increase announcements. These allegations give defendants fair notice of the factual basis of plaintiffs' fraudulent concealment theory.

On the other hand, however, plaintiffs' complaint still fails to provide any detail regarding the allegedly secret meetings among the defendants or any agreement(s) among them

not to disclose their alleged price-fixing conspiracy.    As the court explained previously, "[p]laintiffs do not . . . allege who met or when or where those meetings took place" or "who agreed to this arrangement or when or where those meetings or conversations occurred."   *In re Urethane Antitrust Litig.*, 409 F. Supp. 2d at 1285.   Consequently, plaintiffs cannot rely on those allegations to support their fraudulent concealment theory because those allegations are not pled with particularity.   *See* Fed. R. Civ. P. 9(b) ("In *all* averments of fraud . . . the circumstances constituting the fraud . . . shall be stated with particularity." (emphasis added)). The court rejects the suggestion made by defense counsel at the motion hearing that plaintiffs' fraudulent concealment allegations rest solely on an alleged conspiracy to fraudulently conceal the price-fixing conspiracy.    To the contrary, plaintiffs' complaint specifically alleges that defendants fraudulently concealed the price-fixing conspiracy in at least three respects, i.e., as set forth in subparagraphs (a), (b), and (c).   Certainly, the thrust of subparagraphs (a) and (b), which pertain to secret meetings and agreements to conceal the price-fixing conspiracy, could be read to allege a separate conspiracy to conceal the price-fixing conspiracy.   But, plaintiffs allege that subparagraph (c), which refers to the false and pretextual reasons for the price increases, is a third and separate way in which the defendants concealed the price-fixing conspiracy.   The allegations concerning the false and pretextual reasons for the price increases do not depend on nor are they integral to the allegations in subparagraphs (a) and (b).   And, the allegations in subparagraph (c) are properly pled with particularity.   Because this is the only aspect of plaintiffs' fraudulent concealment theory which is pled with particularity, however,

16

plaintiffs' tolling theory rests entirely on the allegations that defendants gave false and pretextual reasons for their price increases.

With this clarification regarding the nature of the allegations at issue, the court turns to defendants' more substantive argument, which is that plaintiffs' allegations do not support a fraudulent concealment theory because the allegedly false and pretextual reasons for the price increases did not amount to affirmative acts to conceal the existence of the alleged price-fixing conspiracy. It is well settled that the fraudulent concealment tolling doctrine is "read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). To toll the statute of limitations based on fraudulent concealment, plaintiffs must allege: (1) the use of fraudulent means by the defendants; (2) successful concealment from plaintiffs; and (3) that plaintiffs did not know or by the exercise of due diligence could not have known that they might have a cause of action. *Ballen*, 23 F.3d at 337. "In recent years, federal courts have developed different standards for determining whether antitrust plaintiffs have satisfied the first element of this test." *Supermarket of Marlington, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995).

> These are denominated the "self-concealing" standard, the "separate and apart" standard, and the intermediate, "affirmative acts" standard. Pursuant to the self-concealing standard, a plaintiff satisfies the first element merely by proving that a self-concealing antitrust violation has occurred. At the opposite end of the spectrum is the separate and apart standard in which a plaintiff is required to provide evidence, separate and apart from the acts of concealment involved in the defendants' antitrust violation, that the defendants affirmatively acted to conceal the plaintiff's claim. Finally, under the intermediate standard, a plaintiff must prove that the defendants affirmatively acted to conceal their antitrust violations, but the plaintiff's proof may include acts of concealment involved in the alleged antitrust violation itself.

*Id.* (citations omitted).

In this case, plaintiffs' allegations satisfy the intermediate standard. Plaintiffs allege that defendants affirmatively acted to conceal their antitrust violations by giving false and pretextual reasons for the price increase announcements. Because these allegations satisfy the intermediate standard, the court does not need to decide at this time whether the Tenth Circuit would adopt the lesser, self-concealing standard in the antitrust context. The more pivotal issue here is whether plaintiffs' allegations must satisfy the highest standard, which is that the defendants' affirmative acts of concealment must have been separate and apart from the acts of concealment involved in the antitrust violation itself. Plaintiffs' allegations do not satisfy this standard because the alleged affirmative acts of concealment occurred during the course of the alleged antitrust violation. Plaintiffs allege that defendants implemented the allegedly unlawful price fixing by (among other things) issuing price increase announcements. (First Am. Consol. Compl. (doc. #206-3), ¶ 39, at 10-11.) And, plaintiffs allege that those price increase announcements also contained the allegedly false and pretextual reasons for the price increases. Consequently, the affirmative acts of concealment allegedly occurred within the alleged antitrust violation itself, not separate and apart from that violation.

Ultimately, the court rejects the non-settling defendants' suggestion that plaintiff must satisfy the heightened separate-and-apart standard. Tenth Circuit precedent lends no support to this argument. Rather, authority from the Tenth Circuit indicates that any affirmative act of

concealment is adequate to state a claim.[2]   A plaintiff does not need to go above and beyond

that and also allege that the affirmative act of concealment was separate and apart from the

alleged antitrust violation.   For example, in *King & King Enterprises v. Champlin Petroleum

Co.*, 657 F.2d 1147 (10th Cir. 1981), the Tenth Circuit discussed the doctrine of fraudulent

concealment to toll the statute of limitations on federal antitrust claims.   In that case, the Tenth

Circuit noted that the Temporary Emergency Court of Appeals had stated that the statute of

limitations is tolled where the fraud "'is of such nature as to conceal itself.'"   *Id.* at 1154

(quoting *Ashland Oil Co. v. Union Oil Co.*, 567 F.2d 984, 988 (Temp. Emer. Ct. App. 1977)).

The Tenth Circuit also noted that the parties agreed that the district court had stated the

applicable law, which is that the plaintiff must meet his or her burden of showing "that some

affirmative act of fraudulent concealment frustrated discovery notwithstanding such diligence."

*Id.* at 1155.   The court held that the evidence established fraudulent concealment as a matter

of law because "the defendant actively sought to conceal its price fixing activities."   *Id.* at

---

[2]   Some of the cases that form this multidistrict litigation proceeding were originally filed in the District of New Jersey.   To the extent that the court may consider the law of the Third Circuit in this MDL proceeding, the court finds no material distinction between the Third and Tenth Circuits on this issue.   *See, e.g.*, *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 160 (3d Cir. 2002) ("[T]he doctrine of fraudulent concealment tolls the limitation period when a plaintiff's cause of action has been obscured by the defendant's conduct."); *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1178-79 (3d Cir. 1993) (federal antitrust case in which the Third Circuit cited a state law "affirmative act of concealment" standard); *see also, e.g.*, *In re Mercedes-Benz Anti-Trust Litig.*, 157 F. Supp. 2d 355, 369   (D.N.J. 2001) (noting that nothing in Third Circuit law suggests that affirmative acts of concealment performed as part of the conspiracy itself may not also supply the affirmative act required by the fraudulent concealment doctrine; noting that this approach is in accord with the substantial weight of authority).

1156.   Two other Tenth Circuit cases considering the fraudulent concealment tolling doctrine under federal law also seem to indicate that any affirmative acts of concealment are sufficient. *See Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994) (to toll the statute of limitations based on fraudulent concealment, a plaintiff must show that his or her ignorance was due to "affirmative acts or active deception" by the defendant to conceal the facts giving rise to the plaintiff's claim); *Baker v. Bd. of Regents*, 991 F.2d 628, 633 n.4 (10th Cir. 1993).   Like *King & King Enterprises*, those two cases contain no language to suggest that the affirmative acts must be external to the cause of action itself.   Therefore, the court rejects defendants' argument that the affirmative acts of fraudulent concealment must be distinct from and in addition to actions taken as part of the underlying conspiracy.[3]

Defendants also have cited cases which state that mere silence or denial of wrongdoing is not sufficient to support a fraudulent concealment tolling theory.   While defendants might be correct about this as a legal principle, plaintiffs do not allege that defendants were merely silent or that they merely denied any wrongdoing.   Rather, plaintiffs allege that defendants engaged in specific, identifiable, affirmative acts of concealment.   Defendants arguments on this point are therefore inapposite.

---

[3] The other case from this circuit cited by defendants on this issue is *Colorado v. Western Paving Construction Co.*, 630 F. Supp. 206 (1986).   On appeal, the Tenth Circuit issued a written opinion on this issue in *Colorado v. Western Paving Construction Co.*, 833 F.2d 867 (10th Cir. 1987).   But, that opinion was subsequently withdrawn and the Tenth Circuit affirmed the district court's decision in an unexplained decision by an equally divided court. *See Colorado v. Western Paving Constr. Co.*, 841 F.2d 1025 (10th Cir. 1988).   As such, the Tenth Circuit's opinion in that case is entitled to no precedential value.   *Rutledge v. United States*, 517 U.S. 292, 304 (1996); *Neil v. Biggers*, 409 U.S. 188, 192 (1972).

In sum, accepting as true all well-pleaded facts in plaintiffs' first amended consolidated complaint, the court cannot find that it appears beyond a doubt that plaintiffs can prove no set of facts under which they would be entitled to tolling of the statute of limitations based on a fraudulent concealment theory.  Accordingly, defendants' motion to dismiss is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that the Polyether Polyol Plaintiffs' motion for leave to amend (doc. #206) is granted.  Plaintiffs are directed to file and serve their First Amended Consolidated Complaint within ten days.  *See* D. Kan. Rule 15.1.

**IT IS FURTHER ORDERED** that the Polyether Polyol Defendants' motion to dismiss (doc. #239) is denied.

**IT IS SO ORDERED** this 14th day of April, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

21