## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| )<br>IN RE: URETHANE ANTITRUST )<br>LITIGATION )<br> )<br>This Document Relates To: )<br>The Polyether Polyol Cases )<br> ) | No. 04-MD-1616-JWL |
| )<br>SEEGOTT HOLDINGS, INC., *et al.* )<br> )<br>v. )<br> )<br>BAYER AG, *et al.*, )<br> ) | No. 05-2265-JWL |

### FIRST AMENDED CONSOLIDATED COMPLAINT

Plaintiffs Seegott Holdings, Inc. and Industrial Polymers, Inc. (collectively "Plaintiffs"), individually and on behalf of a class of all those similarly situated, bring this action for treble damages under the antitrust laws of the United States against Defendants, and demand a trial by jury. This First Amended Consolidated Complaint is filed pursuant to the June 16, 2005 Transfer Order issued by the Judicial Panel on Multidistrict Litigation and this Court's Scheduling Order No. 1, dated August 31, 2005, and this Court's opinion dated April 14, 2006 granting Plaintiffs leave to amend. Plaintiff Seegott Holdings, Inc. specifically reserves its right to have its case tried in the District of New Jersey where it was originally filed, pursuant to *Lexecon Inc. v. Milberg, Weiss, Bershad, Hynes & Lerach,* 523 U.S. 26 (1998).

### NATURE OF THE CASE

1.      Plaintiffs allege a conspiracy among Defendants and certain unnamed co-conspirators to fix, raise, maintain or stabilize prices and to allocate customers and markets for Polyether Polyol Products (as defined in this Complaint) sold in the United States.

2.      Plaintiffs bring this action on behalf of all individuals and entities that purchased Polyether Polyol Products in the United States and its territories directly from Defendants from January 1, 1999 through December 31, 2004 (the "Class Period").   At all relevant times, Defendants manufactured and sold Polyether Polyol Products.   During the Class Period, Defendants and their co-conspirators agreed, combined, and conspired with each other to fix, raise, maintain or stabilize prices and to allocate customers and markets for Polyether Polyol Products sold in the United States.  As a result of Defendants' unlawful conduct, Plaintiffs and the Class (as defined in this Complaint) paid artificially inflated prices for these products, and therefore have suffered injury to their business and property.

## JURISDICTION AND VENUE

3.      This action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26 to recover treble damages, and the costs of this suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiffs and the members of the Class by reason of the violations, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1.

4.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

5.      Venue is proper in this District for pretrial purposes pursuant to the JPML transfer order dated June 16, 2005.   Venue is proper in the District of New Jersey where Seegott Holdings, Inc. filed originally pursuant to Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22, and 26 and 28 U.S.C. § 1391 (b), (c) and (d) because during the Class Period the Defendants resided, transacted business, were found, or had agents in that District, and because a substantial portion of the affected interstate trade and commerce described herein is and has been carried out in that District.   Venue is also proper in this District for purposes of the Industrial

Polymers case pursuant to Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22, and 26 and 28 U.S.C. § 1391 (b), (c) and (d) because during the Class Period the Defendants resided, transacted business, were found, or had agents in this District, and because a substantial portion of the affected interstate trade and commerce described herein is and has been carried out in this District.

## DEFINITIONS

6.      Polyether Polyol Products, as used in this Complaint, mean polyether polyols, monomeric or polymeric diphenylmethane diisocyanate ("MDI"), toluene diisocyanate ("TDI"), and polyether polyol systems except any such systems that also contain polyester polyols.

7.      Polyether polyols are intermediate chemicals used in the manufacture of rigid and flexible foams, among other applications.  Polyether polyols are combined with isocyanates (usually either MDI or TDI) to produce polyurethane polymers. Polyether polyols constitute approximately 90 percent of the world's polyol use.

8.      MDI is a type of isocyanate used in combination with polyether polyols as a raw material for the production of rigid insulation foams and structural foams, among other applications.

9.      TDI is another type of isocyanate used in combination with polyether polyols as a raw material for the production of flexible foams for furniture, mattresses, packaging foam, and automobile seating, among other applications.

10.      A polyether polyol system is a package comprised of an "A" side (predominantly a polyether polyol) and a "B" side (an isocyanate, such as MDI or TDI) that, when mixed together by the purchaser, react to form a polyurethane polymer.

## PLAINTIFFS

11.     Plaintiff Seegott Holdings, Inc. is an Ohio corporation with its principal place of business in Streetsboro, Ohio.  Seegott purchased Polyether Polyol Products in the United States directly from one or more of the Defendants during the Class Period.

12.     Plaintiff Industrial Polymers, Inc. is a Texas corporation with its principal place of business in Houston, Texas.  Industrial Polymers purchased Polyether Polyol Products in the United States directly from one or more of the Defendants during the Class Period.

## DEFENDANTS

13.     Defendant Bayer AG is a German corporation with its principal place of business in Leverkusen, Germany.  Bayer AG has extensive operations in the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates.  During the Class Period, Bayer AG manufactured and sold Polyether Polyol Products to purchasers in the United States and elsewhere, directly or through its predecessors, affiliates and/or subsidiaries.

14.     Defendant Bayer Corporation ("Bayer Corp.") is an Indiana corporation with its principal place of business in Pittsburgh, Pennsylvania.  It is a wholly-owned subsidiary of Bayer AG.  During the Class Period, Bayer Corp. manufactured and sold Polyether Polyol Products to purchasers in the United States and elsewhere.  Bayer AG controls Bayer Corp. both generally and with respect to the conduct of Bayer Corp. in furtherance of the unlawful acts alleged in this complaint.

15.     Defendant Bayer MaterialScience LLC ("Bayer MaterialScience"), formerly known as Bayer Polymers LLC, is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania.  It is a wholly-owned subsidiary of Bayer AG.  During the Class Period, Bayer MaterialScience manufactured and sold Polyether Polyol Products to purchasers in

4

the United States and elsewhere. Bayer AG, Bayer Corp. and Bayer MaterialScience LLC are collectively referred to as "Bayer".

16.    Defendant BASF AG is a German corporation with its principal place of business in Ludwigshafen, Germany.  BASF AG has extensive operations in the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates.  During the Class Period, BASF AG manufactured and sold Polyether Polyol Products to purchasers in the United States and elsewhere, directly or through predecessors, affiliates and/or subsidiaries.

17.    Defendant BASF Corporation ("BASF Corp.") is a Delaware corporation with its principal place of business in Florham Park, New Jersey.  During the Class Period, BASF Corp. manufactured and sold Polyether Polyol Products to purchasers in the United States and elsewhere.  BASF Corp. is the North American affiliate of BASF AG.  BASF AG controls BASF Corp. both generally and with respect to the conduct of BASF Corp. in furtherance of the unlawful acts alleged in this Complaint.  BASF AG and BASF Corp. are collectively referred to as "BASF".

18.    Defendant The Dow Chemical Company ("Dow") is a Delaware corporation with its principal place of business in Midland, Michigan.   During the Class Period, Dow manufactured and sold Polyether Polyol Products to purchasers in the United States and elsewhere.

19.    Defendant Huntsman International LLC ("Huntsman") is a Delaware corporation with its principal place of business in Salt Lake City, Utah.  During the Class Period, Huntsman manufactured and sold Polyether Polyol Products to purchasers in the United States and elsewhere.

20.     Defendant Lyondell Chemical Company ("Lyondell") is a Delaware corporation with its principal place of business in Houston, Texas.   During the Class Period, Lyondell manufactured and sold Polyether Polyol Products to purchasers in the United States and elsewhere.  In 2000, Bayer AG acquired Lyondell's polyether polyols business.

## CO-CONSPIRATORS

21.     Various other persons, firms and corporations, not named as Defendants herein, have participated as co-conspirators with Defendants and have performed acts and made statements in furtherance of the conspiracy.

22.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

## CLASS ACTION ALLEGATIONS

23.     Plaintiffs bring this action on behalf of themselves and as a class action under the provisions of Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following Class:

> All persons and entities who purchased polyether polyols, monomeric or polymeric diphenylmethane diisocyanate ("MDI"), toluene diisocyanate ("TDI"), or polyether polyol systems except any such systems that also contain polyester polyols directly from a defendant at any time from January 1, 1999 through December 31, 2004 in the United States and its territories or for delivery in the United States and its territories  (excluding all governmental entities, any defendants, their employees, and their respective parents, subsidiaries and affiliates).

24.     Plaintiffs do not know the exact number of class members because such information is in the exclusive control of Defendants.  But due to the nature of the trade and commerce involved, Plaintiffs believe that there are hundreds of Class members as above described, the exact number and their identities being known by Defendants.

25.     The Class is so numerous and geographically dispersed that joinder of all members is impracticable.

26.     There are questions of law and fact common to the Class, including:

a.      Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize prices of Polyether Polyol Products sold in the United States;

b.      Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to allocate customers and the markets for Polyether Polyol Products sold in the United States;

c.      The identity of the participants of the alleged conspiracy;

d.      The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

e.      Whether the alleged conspiracy violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

f.      Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of the Plaintiffs and the other members of the Class;

g.      The effect of the alleged conspiracy on the prices of Polyether Polyol Products sold in the United States during the Class Period;

h.      Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from the Plaintiffs and the other members of the Class; and

i.      The appropriate class-wide measure of damages.

27.     Plaintiffs are members of the Class, Plaintiffs' claims are typical of the claims of the Class members, and Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are direct purchasers of Polyether Polyol Products, and their interests are coincident with, and not antagonistic to, those of the other members of the Class.

28.     Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

29.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

30.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

31.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is readily definable and is one for which records should exist. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. This class action presents no difficulties in management that would preclude maintenance as a class action.

## TRADE AND INTERSTATE COMMERCE

32.    The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of and substantially affected interstate commerce.

33.    During the Class Period, Defendants and their co-conspirators, manufactured, sold and shipped substantial quantities of Polyether Polyol Products, in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the states in which the Defendants produced these products.  In addition, the primary raw materials used to manufacture Polyether Polyol Products were purchased and shipped in a continuous and uninterrupted flow of interstate commerce.

34.    The conspiracy in which the Defendants and their co-conspirators participated had a direct, substantial, and reasonably foreseeable effect on United States commerce.

## THE POLYETHER POLYOL, MDI AND TDI MARKETS

35.    Due to their different physical properties and applications, polyether polyols and polyester polyols constitute separate and distinct markets.

36.    Important characteristics of the MDI, TDI and polyether polyols markets are such that facilitate anticompetitive collusion among the defendants and promote successful effects of that collusion, that is the inflation of prices above competitive levels.

37.    Polyether polyols, MDI and TDI are each an undifferentiated commodity product.

38.    Due to both a limited number of common manufacturers and a close correspondence in ownership of production of Polyether Polyol Products, the markets for these products are highly concentrated, with defendants controlling one hundred percent of the TDI and MDI markets and more than 75 percent of the polyether polyols market.  In addition, there are high barriers to entry to these markets due to environmental laws and regulations and the

capital intensive nature of the business. Because of their high collective market shares, defendants collectively are able to exercise market power, including the ability to raise prices and erect barriers to entry to the markets.

39.     Approximately 94% of all polyols used for flexible polyurethane foam are comprised of polyether polyols. This means that users of polyether polyols will not switch because of a non-transitory, small but significant increase in the price of polyether polyols, thereby setting favorable conditions for a successful implementation of the price-fixing agreement among defendants.

40.     Pricing for all three Polyether Polyol Products during the Class Period was interrelated. During the class period, on numerous occasions, price increases in the same or similar amounts for Polyether Polyol Products were announced by defendants and/or became effective on the same day or within a short period of time. For example:

    a.    On January 1, 2001, Bayer and BASF raised TDI prices by $.12/lb. and polyether polyol prices by $.10/lb. On that same date, BASF, Dow and Huntsman raised MDI prices by $.08/lb. Bayer followed with an identical MDI price increase on January 15.

    b.    Bayer, BASF and Dow raised TDI and polyether polyol prices by $.15/lb and $.10/lb., respectively, effective March 1, 2002.

    c.    On April 1, 2002, Lyondell and Huntsman raised TDI prices by $.15/lb. On that same day, Dow and BASF raised MDI prices by $.06/lb. Bayer and Huntsman followed with identical MDI price increases on April 15 and May 1, respectively.

      d.     Bayer, BASF, Dow, Lyondell and Huntsman all raised TDI prices by $.08/lb., effective September 1, 2002. At the same time, Bayer, BASF and Dow raised polyether polyol prices by $.06/lb.

      e.     On April 1, 2003, Bayer, BASF and Huntsman raised TDI prices by $.10/lb., MDI prices by $.08/lb., and polyether polyol prices by $.06/lb. On the same day, Dow raised TDI prices by $.10/lb. and MDI prices by $.07/lb.

41.     Changes in the price of raw materials for these products, which are the principal cost of manufacturing these products, do not explain the announced increases in the prices for these products.

42.     Changes in demand for the major end-use of these products, polyurethane foam, do not explain the announced increases in prices for these products.

## VIOLATIONS ALLEGED

43.     From January 1, 1999 through December 31, 2004, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of Polyether Polyol Products in the United States in unreasonable restraint of interstate trade and commerce, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

44.     The contract, combination or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, stabilize or maintain at artificially high levels the prices they charged and to allocate customers and markets for Polyether Polyol Products in the United States.

45.     In formulating and effectuating this conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including:

a.  participating in meetings and conversations among themselves during which they agreed to charge prices at certain levels, and otherwise to fix, increase, maintain or stabilize prices of Polyether Polyol Products in the United States and to allocate customers and markets of Polyether Polyol Products;

b.  issuing price announcements consistent with, and selling Polyether Polyol Products at, the agreed upon prices;

c.  allocating customers and markets for Polyether Polyol Products in the United States in furtherance of their agreements; and

d.  participating in meetings and conversations among themselves to implement, adhere and police the agreements they reached.

46.  Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, raise or stabilize prices and to allocate customers and markets of Polyether Polyol Products.

## EFFECTS

47.  The Defendants' unlawful contract, combination or conspiracy has had at least the following effects:

a.  Prices charged by Defendants and their co-conspirators to Plaintiffs and the members of the Class for Polyether Polyol Products were fixed, raised, stabilized and maintained at artificially high and non-competitive levels in the United States;

b.  Customers and markets of Polyether Polyol Products were allocated among Defendants and their co-conspirators;

    c.    Plaintiffs and the other members of the Class had to pay more for Polyether Polyol Products than they would have paid in a competitive marketplace, unfettered by Defendants' and their co-conspirators' collusive and unlawful activities;

    d.    Price competition in the sale of Polyether Polyol Products was restrained, suppressed and eliminated in the United States; and

    e.    As a direct and proximate result of the illegal combination, contract or conspiracy, Plaintiffs and the members of the Class have been injured and financially damaged in their businesses and property, in amounts to be determined.

## FRAUDULENT CONCEALMENT

48.    Throughout the Class Period, Defendants and their co-conspirators affirmatively and fraudulently concealed their unlawful conduct.

49.    Plaintiffs and the Class members did not discover, nor could have discovered through reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws until shortly before this litigation was commenced because Defendants and their co-conspirators used and continue to use deceptive and secret methods to avoid detection and to affirmatively conceal their violations.  Nor could Plaintiffs or the Class members have discovered the violations earlier than that time because Defendants and their co-conspirators conducted their conspiracy secretly, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection.

50.     Defendants and their co-conspirators engaged in a successful price-fixing conspiracy concerning Polyether Polyol Products, which they affirmatively concealed, at least in the following respects:

a.      By meeting secretly to discuss prices, and customers and markets, of Polyether Polyol Products sold in the U.S. and elsewhere;

b.      By agreeing among themselves at meetings and in communications not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme; and

c.      By giving false and pretextual reasons for the prices of Polyether Polyol Products sold by them during the Class Period and by describing such pricing falsely as being the result of competitive factors rather than collusion.

51.     Price increases of Polyether Polyol Products before and during the Class Period were not unusual.  Plaintiffs were thus conditioned by experience in dealing with the Defendants of what they believed to be a competitive industry to expect price increases from time to time.

52.     During the limitations period, each of the Defendants issued price increase announcements that were distributed or published to Plaintiffs and Class members, containing false and pretextual reasons for price increases for Polyether Polyol Products.  These price increases in fact resulted from Defendants' price-fixing conspiracy, rather than from the factors cited by Defendants.

53.     Defendants consistently ascribed their price increases to ordinary market forces and considerations, such as increased raw material costs, decreased sales volume, and decreased margins.  Plaintiffs and Class members did not have and could not have had, until shortly before

commencement of this litigation, access to sufficient information to know that such explanations were false and pretextual.

54.     The price increase announcements for which Defendants gave false and pretextual reasons include at least the following:

a.     BASF, Bayer, Dow, Lyondell, and Huntsman all raised TDI prices $.08/lb. effective September 1, 2002.  BASF, Bayer, and Lyondell announced this price increase on August 1, 2002; Dow announced this increase on August 6, 2002; and Huntsman announced this increase on July 26, 2002.  BASF attributed this increase to "global product balances" and "weakness in margins."  Lyondell blamed "significant and sustained increase in raw materials costs."  Huntsman cited "recent raw material increases."  These purported explanations were all false and pretextual.  In fact, raw material prices were declining or stable during the period from 2000-2002, while TDI prices increased repeatedly, thereby generating increased margins for Defendants.

b.     BASF, Bayer, Dow, and Huntsman all raised polyether polyol prices $.10/lb. and TDI prices $.15/lb., effective March 1, 2002 for BASF, Bayer, and Dow, and effective April 1, 2002 for Huntsman.  Lyondell raised TDI prices $.15/lb., effective April 1, 2002.  BASF announced the TDI increase on February 7, 2002, and the polyether polyol increase on February 14, 2002; Bayer announced the TDI increase on February 4, 2002, the polyether polyol increase on February 15, 2002, and both increases retroactively on March 16, 2002; Dow announced both increases

on February 11, 2002; Huntsman announced the TDI increase on February 15, 2002 and the polyether polyol increase on February 28, 2002; and Lyondell announced the TDI increase on February 8, 2002.   BASF attributed these increases to "eroding" margins.   Bayer justified its increases by stating that its "NAFTA polyurethanes business has seen its margins erode to historical lows."   Dow attributed these increases to a "continued decline in pricing as well as market volume," which "have resulted in the erosion of margins and the loss of profitability."   Lyondell attributed its increase to "the significant and sustained decrease in TDI margins."   These purported explanations were all false and pretextual.   In fact, total volumes of these products in 2001 were not significantly lower than their historical levels.   Moreover, these products' raw material prices were stable or falling from 2001-2002, and these products' prices significantly increased during the same period, thus generated increased margins for Defendants.

c.   BASF, Dow, Bayer, and Huntsman all raised MDI prices $.06/lb., effective April 1, 2002 for BASF and Dow, effective April 15, 2002 for Bayer, and effective May 1, 2002 for Huntsman.   BASF announced the increase on March 21, 2002; Dow announced the increase on March 14, 2002; Bayer announced the increase on April 1, 2002; and Huntsman announced the increase on March 29, 2002.   Each of these Defendants attributed the price increase to decreasing margins.   BASF attributed the increase to "a continuing deterioration of margins."   Bayer stated that the

increase was necessary to help "regain acceptable margins to maintain investments in these polyurethanes raw materials." Dow noted that "[t]hroughout the past years, we have seen a continued decline in pricing," which "has resulted in the erosion of margins and the loss of profitability." Huntsman stated that "[t]his action is necessitated by unacceptable margins required to support continued investment in the business." These purported explanations were all false and pretextual. In fact, raw material prices for MDI were declining or stable during the period from 2001-2002, while MDI prices increased during 2002, thereby generating increased margins for Defendants. These purported explanations also are contradicted by Huntsman's own 2002 operating margin rates.

55.     These and other false or misleading explanations for price increases on Polyether Polyol Products lulled Plaintiffs into believing that increases were the normal result of competitive market forces rather than the product of collusive efforts. Defendants' statements about the reasons for the price increases were designed to, and did, put Plaintiffs off guard and cause them to accept the increases without undertaking further inquiry.

56.     Plaintiffs and Class members did not know, and could not have discovered through reasonable diligence, that Defendants' explanations for these increases in prices for Polyether Polyol Products were false and pretextual until shortly before this litigation was commenced.

57.     As a result of Defendants' fraudulent concealment, all applicable statutes of limitations affecting the Plaintiffs' and the Class' claims have been tolled.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray as follows:

A.      That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.      That the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators, be adjudged to have been a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.      That judgment be entered for Plaintiffs and members of the Class against Defendants for three times the amount of damages sustained by Plaintiffs and the members of the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees;

D.      That Plaintiffs and the Class be awarded pre-judgment and post-judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law; and

E.      That Plaintiffs and members of the Class have such other, further or different relief as the case may require and the Court may deem just and proper under the circumstances.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

Dated:  April 18, 2006                Respectfully submitted,


                                      /s/ Tim J. Moore
                                      Robert W. Coykendall, #10137
                                      Roger N. Walter, #08620
                                      Tim J. Moore, #14104
                                      Morris, Laing, Evans, Brock & Kennedy, Chartered
                                      Old Town Square
                                      300 North Mead - Suite 200
                                      Wichita, KS  67202
                                      Tel:  (316) 262-2671
                                      Fax: (316) 262-5991

                                      **Plaintiffs' Liaison Counsel**


Allen D. Black                        Michael D. Hausfeld
Roberta D. Liebenberg                 Richard A. Koffman
Donald L. Perelman                    Christopher J. Cormier
Gerard A. Dever                       Cohen, Milstein, Hausfeld & Toll P.L.L.C.
Fine, Kaplan and Black, R.P.C.        1100 New York Avenue, N.W.
1835 Market Street, 28th Floor        Suite 500, West Tower
Philadelphia, PA  19103              Washington, DC  20005
Tel:  (215) 567-6565                  Tel:  (202) 408-4600
Fax: (215) 568-5872                   Fax: (202) 408-4699

**Plaintiffs' Co-Lead Counsel**


Dianne M. Nast                        Robert N. Kaplan
Roda Nast, P.C.                       Richard J. Kilsheimer
801 Estelle Drive                     Kaplan Fox & Kilsheimer, LLP
Lancaster, PA  17601                 805 Third Avenue, 22nd Floor
Tel:  (717) 892-3000                  New York, NY 10022
Fax: (717) 892-1200                   Tel:  (212) 687-1980
                                      Fax: (212) 687-7714


Thomas A. Muzilla                     J. Bruce McKissock
McCray, Muzilla, Smith & Meyers Co., L.P.A.   Geraldine D. Zidow
260 Burns Road, Suite 150             McKissock & Hoffman, P.C.
Elyria, OH  44035                    1818 Market Street - 13th Floor
Tel.:  (440) 366-9930                 Philadelphia, PA  19103
Fax:  (440) 366-1910                  Tel.:  (215) 246-2100
                                      Fax:  (215) 246-2144

Joseph Goldberg
Dana K. Grubesic
Freedman Boyd Daniels Hollander
   & Goldberg, PA
20 First Plaza, Suite 700
Albuquerque, NM  87102
Tel.:  (505) 842-9960
Fax:  (505) 842-1925

Howard I. Langer
Langer & Grogan
1600 Market Street
Philadelphia, PA  19103
Tel.:  (215) 419-6544
Fax:  (215) 419-6546

Anthony J. Bolognese
Bolognese & Associates, LLC
1617 JFK Boulevard, Suite 650
Philadelphia, PA  19103
Tel:  (215)  814-6750
Fax:  (215)  814-6764

Natalie Finkelman Bennett
Shepherd, Finkelman, Miller & Shah, LLC
35 E. State Street
Media, PA  19063
Tel:  (610) 891-9880
Fax:  (610) 891-9883

Jeffrey Gittleman
Barrack, Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Tel:  (215) 963-0600
Fax:  (215) 963-0838

Randall L. Payne
Christopher W. Earnest
Sullins, Johnston, Rorbach & Magers
3200 Southwest Freeway
2200 Phoenix Tower
Houston, TX  77027
Tel:  (713) 521-0021
Fax:  (713) 521-3242

Howard J. Sedran
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA  19106
Tel.:  (215) 592-1500
Fax:   (215) 592-4663

Joseph Kohn
Kohn, Swift & Graf, P.C.
One South Broad Street
Suite 2100
Philadelphia, PA  19107
Tel:  (215) 238-1700
Fax:  (215) 238-1968

Daniel Gustafson
Gustafson Gluek PLLC
725 Northstar East-608 Second Ave. South
Minneapolis, MN  55402
Tel:  (612) 333-8844
Fax: (612) 339-6622

H. Laddie Montague, Jr.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA  19103
Tel.:  (215) 875-3010
Fax:   (215) 875-4671

Warren Rubin
Law Offices of Bernard M. Gross
Suite 450, John Wanamaker Building
Juniper and Market Streets
Philadelphia, PA  19107
Tel: (215) 561-3600
Fax: (215) 561-3000

Ira Richards
Lisa J. Rodriguez
Trujillo Rodriguez & Richards, LLP
226 W. Rittenhouse Square
Philadelphia, PA  19103
Tel: (215) 731-9004
Fax: (215) 731-9044

Jack Meyerson
Meyerson & O'Neill
1700 Market Street
Suite 3025
Philadelphia, PA  19103
Tel: (215) 972-1376
Fax: (215) 972-0277

Anthony D. Shapiro
Hagens Berman Sobol Shapiro
1301 5th Avenue #2900
Seattle, WA  98101
Tel: (206) 623-7292
Fax: (206) 623-0594

Michael L. Roberts
Roberts Law Firm, P.A.
P.O. Box 241790
20 Rahling Circle
Little Rock, AR  72223-1790
Tel:  (501) 821-5775
Fax:  (501) 821-4474

Christopher G. Hayes
Law Offices of Christopher G. Hayes
115 East Chestnut Street
West Chester, PA  19380
Tel:  (610) 431-9505
Fax:  (610) 431-1269

**Additional Plaintiffs' Counsel**

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on this 18th day of April, 2006, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel who have registered for receipt of documents filed in this matter. I also certify that I mailed a true copy of the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

Michael J. Beck
Clerk of the Panel, One Columbus Circle, N.E.
Thurgood Marshall Federal Judiciary Building
Room G-255 - North Lobby
Washington, DC 20002-8004

Mark V. Chester
Joan M. Meyers
Johnson & Colmar
300 S. Wacker Dr., Suite 1000
Chicago, IL 60606

Jason S. Hartley
Ross, Dixon & Bell, LLP – San Diego
550 West B Street, Suite 400
San Diego, CA 92101-3599

Timothy P. Irving
Ross, Dixon & Bell, LLP – San Diego
550 West B Street, Suite 400
San Diego, CA 92101-3599

Diana K. Kim
Gold, Bennett, Cera & Sidener, LLP
595 Market Street - Suite 2300
San Francisco CA 94105-2835

John W. Mackey
Ray, Quinney & Nebeker
36 S. State Street, Suite 1400
Salt Lake City, UT 84111

William Cagney
Windels, Marx, Lane & Mittendorf, LLP
120 Albany Street Plaza
New Brunswick NJ 08901

Marc H. Edelson
Hoffman & Edelson
45 West Court Street
Doylestown, PA 18901

Michael D. Hausfeld
Stewart M. Weltman
Cohen, Milstein, Hausfeld & Toll
West Tower, Suite 500
1100 New York Ave., N.W.
Washington, DC 20005-3934

Daniel R. Karon
Weinstein Kitchenoff Scarlato Karon Goldman
Suite 1500 - 55 Public Square
Cleveland OH 44113

William H. London
Much, Shelist, Freed, Denenburg Ament
  & Rubenstein, P.C.
191 N. Wacker Drive, Suite 1800
Chicago IL 60606-1615

Donna Siegel Moffa
Trujillo Rodriquez & Richards, LLP
8 Kings Highway West
Haddonfield, NJ 08033

Krishna Narine
Schiffrin & Barroway LLC
280 King of Prussia Road
Radnor, PA 19087

Ira H. Raphaelson
O'Melveny & Meyers, LLP
1625 Eye Street, NW
Washington, DC 20006

Judith A. Shimm
Zelle, Hofmann, Voelbel, Mason & Gette, LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104

Michael F. Tubach
O'Melveny & Myers, LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111-3305

William J. Pinilis
Pinilis Halpern, LLP
237 South Street
Morristown, NJ 07960

Andrew B. Sacks
Sacks & Weston, LLC
510 Walnut Street, Suite 400
Philadelphia, PA 19106

Justin T. Togh
Ray, Quinney & Nebeker
36 South State Street, Suite 1400
Salt Lake City, UT 84111

Anne White
White & Goldstein LLC
One Pitcairn Place
165 Township Line Road
Jenkintown, PA 19046

/s/Tim J. Moore
Tim J. Moore