**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| _____ ) | |
| **IN RE** ) | **MDL No. 1616** |
| **URETHANE ANTITRUST** ) | |
| **LITIGATION** ) | **Civil No. 2:04-md-1616-JWL-DJW** |
| _____) | |
| ) | |
| **This Document Relates To:** ) | |
| **The Polyester Polyol Cases** ) | |
| _____) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**
**WITH BAYER, CERTIFICATION OF A SETTLEMENT CLASS,**
**AND AUTHORIZATION OF DISSEMINATION OF NOTICE**

SSHW 0397/56231

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

STATEMENT OF FACTS ..........................................................................................3

    A.    Background Of The Litigation................................................................3

    B.    The Basic Terms Of The Settlement Agreement ....................................5

        1.    Settlement Amount ....................................................................5

        2.    The Parties and the Settlement Products....................................6

        3.    Cooperation................................................................................6

        4.    Assistance with Notice...............................................................7

        5.    Releases......................................................................................7

ARGUMENT................................................................................................................8

I.    STANDARDS GOVERNING SETTLEMENT APPROVAL...........................8

II.    THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE TO THE CLASS ...10

    A.    The Settlement Falls Within the Range of Possible Approval .............10

    B.    The Settlement Is Fair and Reasonable................................................12

        1.    The Proposed Settlement Is The Result Of Arm's-Length Negotiations By Experienced Counsel..........................................................12

        2.    Questions of Law and Fact Pose Risks in the Litigation ..........................13

        3.    The Value of The Settlement Outweighs the Possibility of Future Relief.......................................................................................13

        4.    Plaintiffs' Counsel Recommend Settlement .............................14

III.    THE COURT SHOULD CERTIFY A SETTLEMENT CLASS. ....................................15

    A.    Certification Of A Settlement Class Is Appropriate .............................15

    B.    The Requirements For Class Certification Under Rule 23(a) Are Satisfied..........17

        1.    The Class Is So Numerous That Joinder Is Impracticable.........................19

2.      Common Questions Of Law And Fact Exist ..............................................20

3.      The Claims Of The Representative Parties Are Typical Of The Claims
        Of The Class .............................................................................................21

4.      The Representative Parties Will Fairly And Adequately Protect The
        Interests Of The Class...............................................................................22

5.      The Requirements Of Rule 23(b)(3) Are Satisfied ...................................23

IV.     THE COURT SHOULD APPROVE THE PROPOSED FORMS OF NOTICE ..............24

V.      THE COURT SHOULD ENTER THE PROPOSED ORDER PRELIMINARILY
        APPROVING THE SETTLEMENT .................................................................................25

CONCLUSION.........................................................................................................................26

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*In re A.H. Robins Co.*,
   880 F.2d 709 (4th Cir. 1989) ............................................................................16, 17

*In re Aluminum Phosphide Antitrust Litig.*,
   160 F.R.D. 609 (D. Kan. 1995)..........................................................................17, 23

*Alvarado Partners, L.P. v. Mehta*,
   723 F. Supp. 540 (D. Colo. 1989)........................................................................9, 14

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................................................................16, 23

*In re Anthracite Coal Antitrust Litig.*,
   79 F.R.D. 707 (M.D. Pa. 1978) ..............................................................................13

*In re Armored Car Antitrust Litig.*,
   472 F. Supp. 1357 (N.D. Ga. 1979) ......................................................................10

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000).......................................................................16

*Ballard v. Blue Shield of Southern W.Va., Inc.*,
   543 F.2d 1075 (4th Cir. 1976) ................................................................................20

*In re Beef Industry Antitrust Litig.*,
   607 F.2d 167 (5th Cir. 1979) ..................................................................................17

*Bogosian v. Gulf Oil Corp.*,
   561 F.2d 434 (3d Cir. 1977).....................................................................................17

*Brown v. Pro Football, Inc.*,
   146 F.R.D. 1 (D.D.C. 1992)......................................................................................17

*In re Carbon Black Antitrust Litig.*,
   No. 03-10191-DPW, MDL No. 1543, 2005 WL 102966 (D. Mass. Jan. 18, 2005)...............22

*In re Carbon Dioxide Antitrust Litig.*,
   149 F.R.D. 229 (M.D. Fla. 1993)............................................................................24

*In re Catfish Antitrust Litig.*,
   826 F. Supp. 1019 (N.D. Miss. 1993) .............................................................22, 24

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).....................................................................................13

iii

*Coleman v. Cannon Oil Co.*,
   141 F.R.D. 516 (M.D. Ala. 1991) ............................................................................................24

*Commander Properties Corp. v. Beech Aircraft Corp.*,
   164 F.R.D. 529 (D. Kan. 1995)................................................................................................19

*In re Commercial Tissue Prods.*,
   183 F.R.D. 589 (N.D. Fla. 1998) ............................................................................................24

*In re Community Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005)....................................................................................................21

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) ................................................................................................8, 9

*In re Corrugated Container Antitrust Litig.*,
   MDL No. 310, 1981 WL 2093 (S.D. Tex. June 22, 1981) .....................................................11

*Cypress v. Newport News General and Nonsectarian Hosp. Ass'n.*,
   375 F.2d 648 (4th Cir. 1967) ..................................................................................................19

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) .....................................................................................................16

*DeJulius v. New England Health Care Employees Pension Fund*,
   429 F.3d 935 (10th Cir. 2001) ................................................................................................25

*DeLoach v. Philip Morris Cos.*,
   206 F.R.D. 551 (M.D.N.C. 2002) ...........................................................................................16

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................................................................25

*Epstein v. Wittig*,
   No. 03-4081, 2005 WL 3276390 (D. Kan. Dec. 2, 2005) ......................................................12

*Fanning v. AcroMed Corp. (In re Orthopedic Bone Screw Products Liab. Litig.)*,
   176 F.R.D. 158 (E.D. Pa. 1997)..............................................................................................15

*In re Fine Paper Antitrust Litig.*,
   82 F.R.D. 143 (E.D. Pa. 1979).................................................................................................20

*Fisher Bros. v. Phelps Dodge Industries, Inc.*,
   604 F. Supp. 446 (E.D. Pa. 1985) ...........................................................................................15

*In re Glassine & Greaseproof Paper Antitrust Litig.*,
   88 F.R.D. 302 (E.D. Pa. 1980).................................................................................................23

*Gottstein v. National Ass'n for Self Employed*,
    No. 98-2339-CM, 2000 WL 1732338 (D. Kan. Nov. 2, 2000) ..............................................16

*Hanlon v. Chrysler Corp*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................................17, 25

*Hawaii v. Standard Oil Co.*,
    405 U.S. 251 (1972)............................................................................................................16

*Heartland Communications, Inc. v. Sprint Corp.*,
    161 F.R.D. 111 (D. Kan. 1995)..........................................................................................21

*Holden v. Burlington Northern, Inc.*,
    665 F. Supp. 1398 (D. Minn. 1987) .....................................................................................9

*In re Home-Stake Prod. Co. Sec. Litig.*,
    76 F.R.D. 351 (N.D. Okla. 1977) ......................................................................................19

*Horn v. Associated Wholesale Grocers, Inc.*,
    555 F.2d 270 (10th Cir. 1977) ...........................................................................................19

*Illinois v. Harper & Row Publishers, Inc.*,
    301 F. Supp. 484 (N.D. Ill. 1969) ......................................................................................21

*Ingram v. Coca Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) .......................................................................................23

*Lake v. First Nationwide Bank*,
    156 F.R.D. 615 (E.D. Pa. 1994)...........................................................................................9

*Law v. Nat'l Collegiate Athletic Ass'n*,
    167 F.R.D. 178 (D. Kan. 1996)..........................................................................................17

*Lazy Oil Co. v. Witco*,
    95 F. Supp. 2d 290 (W.D. Pa. 1997) ..................................................................................13

*In re Lease Oil Antitrust Litig.*,
    186 F.R.D. 403 (S.D. Tex. 1999)...................................................................................24, 25

*In re Linerboard Antitrust Litig.*,
    203 F.R.D. 197 (E.D. Pa. 2001)..............................................................................11, 21, 24

*Lumco Indus., Inc. v. Jeld-Wen, Inc.*,
    171 F.R.D. 168 (E.D. Pa. 1997)..........................................................................................17

*Marcus v. Kan. Dep't of Revenue*,
    209 F. Supp. 2d 1179 (D. Kan. 2002)..................................................................................10

*Marcus v. Kansas Dep't of Revenue*,
 206 F.R.D. 509 (D. Kan. 2002)...................................................................................9

*In re Martial Arts Antitrust Litig.*,
 100 F.R.D. 367 (N.D. Ohio 1983) .............................................................................13

*In re Mid-Atlantic Toyota Antitrust Litig.*,
 564 F. Supp. 1379 (D. Md. 1983)........................................................................8, 25

*Milonas v. Williams*,
 691 F.2d 931 (10th Cir. 1982) ..................................................................................21

*In re Monosodium Glutamate Antitrust Litig.*,
 205 F.R.D. 229..........................................................................................................20

*In re Montgomery County Real Estate Antitrust Litig.*,
 83 F.R.D. 305 (D. Md. 1979).......................................................................................8

*In re Motorsport Merchandise Antitrust Litig.*,
 112 F. Supp. 2d 1329 (N.D. Ga. 2000) ............................................................... 13-14

*In re NASDAQ Market-Makers Antitrust Litig.*,
 176 F.R.D. 99 (S.D.N.Y. 1997) ...........................................................................8, 24

*Olenhouse v. Commodity Credit Corp.*,
 136 F.R.D. 672 (D. Kan. 1991) .................................................................................19

*In re PaineWebber Ltd. P'ships Litig.*,
 147 F.3d 132 (2d Cir. 1998) ........................................................................................9

*In re Playmobil Antitrust Litig.*,
 35 F. Supp. 2d 231 (E.D.N.Y. 1998) .........................................................................20

*In re Polypropylene Carpet Antitrust Litig.*,
 996 F. Supp. 18 (N.D. Ga. 1997)..............................................................................24

*In re Prudential Sec. Inc. Ltd. Pshps. Litig.*,
 163 F.R.D. 200 (S.D.N.Y. 1995) ..............................................................................17

*Reiter v. Sonotone Corp.*,
 442 U.S. 330 (1979)...................................................................................................17

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
 314 F.3d 1180 (10th Cir. 2002) .................................................................................14

*Stambaugh v. Kansas Dep't of Corrections*,
 151 F.R.D. 664 (D. Kan. 1993)..................................................................................19

*In re Sugar Industry Antitrust Litig.,*
   73 F.R.D. 322 (E.D. Pa. 1976) ............................................................10

*Texas Indus., Inc. v. Radcliff Materials, Inc.,*
   451 U.S. 630 (1981) ...........................................................................11

*In re Universal Serv. Fund Tel. Billing Practices Litig.,*
   219 F.R.D. 661 (D. Kan. 2004).................................................17, 19, 21

*In re Uranium Antitrust Litig.,*
   617 F.2d 1248 (7th Cir. 1980) ............................................................11

*In re Vitamins Antitrust Litig.,*
   No. 99-197 (TFH), MDL No. 1285, 2001 WL 856292 (D.D.C. July 25, 2001) ....................10

*In re Vitamins Antitrust Litig.,*
   209 F.R.D. 251 (D.D.C. 2002) ............................................................17

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982).................................................................17

*Weiss v. Mercedes-Benz of N. Am. Inc.,*
   899 F. Supp. 1297 (D. N.J. 1995) .........................................................14

*Wilkerson v. Martin Marietta Corp.,*
   171 F.R.D. 273 (D. Colo. 1997) ...........................................................14

*Zapata v. IBP, Inc.,*
   167 F.R.D. 147 (D. Kan. 1996)..............................................................22

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

15 U.S.C. § 1 ....................................................................................... 4-5

28 U.S.C. § 1407(a) ................................................................................4

Fed. R. Civ. P. 23 ....................................................................... *passim*

**OTHER AUTHORITIES**

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice &*
   *Procedure: Civil 3d* § 1763 (2005).........................................................20

Manual for Complex Litigation, Fourth (4th ed. 2004) .............................2, 8

5 *Moore's Federal Practice* (2005) .........................................................9

*4 Newberg on Class Actions* (4th ed. 2005).............................................8, 9

## INTRODUCTION

Plaintiffs Skypark Manufacturing LLC (f/k/a Burtin Urethane Corporation), Maine Industrial Tires Limited, Urethane Product Industries, Inc., Industrial Rubber Products, LLC, and Kryptane Systems, LLC ("Plaintiffs"), on behalf of themselves and a proposed settlement class of direct purchasers of polyester polyols in whatever form they were sold (including polyurethane systems containing polyester polyols but not polyether polyols) ("Settlement Class"), by and through their counsel, submit this Memorandum in support of their Motion seeking preliminary approval of a settlement with Bayer AG, Bayer Corporation, Bayer MaterialScience AG and Bayer MaterialScience LLC (f/k/a Bayer Polymers LLC) (collectively "Bayer"), certification of the Settlement Class, and authorization of the dissemination of Notice. A copy of the "Settlement Agreement" executed as of April 25, 2006, with attachments thereto, accompanies Plaintiffs' Motion .

The Settlement Agreement – the first settlement in the case – provides for the resolution of the Settlement Class's claims against Bayer in exchange for a payment to the Settlement Class of Eighteen Million Dollars ($18,000,000.00), which is approximately 8.5% of Bayer's total sales of all Polyester Polyol Products.  In addition to this significant financial recovery, the Settlement Agreement requires Bayer to cooperate extensively with Class Counsel in their continuing prosecution of this litigation against the remaining Defendants.  Bayer agrees, among other things, to:

- Produce transactional data for Bayer's sales of Polyester Products from January 1, 1996 through December 31, 2005;

- Provide full cooperation with respect to discovery and the gathering of evidentiary materials, including: to the extent possible, with reasonable efforts,

1

making available current and former directors, officers and employees with knowledge regarding Plaintiffs' claims; authenticating documents; producing relevant unprivileged documents; and preparing declarations or providing testimony;

- Produce at trial and/or depositions, or through declarations, representatives qualified to establish for admission into evidence unprivileged documents; and

- Work through its counsel to identify with Class Counsel unprivileged documents and individuals relating to the antitrust violations alleged and the potential culpability of the non-settling Defendants and unnamed conspirators.

The Settlement Agreement further provides that Bayer's sales will remain in the case, enabling Plaintiffs to use those sales to compute the treble damages claim against the non-settling Defendants. Consequently, Plaintiffs and the Settlement Class retain their ability to recover from the remaining Defendants the entire damages caused by the alleged conspiracy, even those attributable to Bayer, less only the amount paid by Bayer in settlement.

The proposed settlement with Bayer was entered into after significant pretrial litigation and investigation and after substantial arm's-length negotiations between Plaintiffs' counsel and Bayer's counsel.

Plaintiffs' counsel respectfully move the Court for an Order (the "Preliminary Approval Order"), in substantially the form submitted, finding that the proposed settlement with Bayer is sufficiently fair, reasonable and adequate to allow the Court to direct notice of settlement to the Settlement Class. *See Manual for Complex Litigation, Fourth* ("Manual") § 13.14 (4th ed. 2004). Plaintiffs' counsel further requests that the Court in the Preliminary Approval Order:

(i)     certify a Settlement Class;

2

     (ii)     establish a date for the final approval hearing for the proposed settlement once it is informed by Class Counsel that the Settlement Administrator has obtained the customer mailing lists from all Defendants so that notice can be sent to the Class;

     (iii)    approve forms of notice of settlement with Bayer ("Notice");

     (iv)    establish a deadline for filing objections to the proposed settlement; and

     (v)     establish a deadline for filing requests for exclusion from the Settlement Class.

The foregoing provisions of the Preliminary Approval Order include procedures necessary to obtain final approval of the proposed settlement as required by Rule 23(e) of the Federal Rules of Civil Procedure.

When considering whether to grant preliminary approval, the Court must determine whether the proposed settlement is sufficiently fair, reasonable and adequate such that notice of the proposed settlement should be disseminated to the Settlement Class.  Plaintiffs submit that the proposed settlement satisfies the required standards.  Accordingly, Plaintiffs respectfully request that the Court authorize the dissemination of Notice pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

### A.     Background Of The Litigation

Beginning in March 2004, several complaints, alleging violations of antitrust laws in connection with the sale of Urethanes and Urethane Chemicals, were filed in multiple jurisdictions.  On August 23, 2004, the Judicial Panel on Multidistrict Litigation entered an order transferring and assigning to this Court all Urethanes and Urethane Chemicals antitrust cases for coordinated or consolidated proceedings.

On October 22, 2004, the Court signed Scheduling Order No. 1, which, among other things, set the date for the filing of the consolidated amended complaint.[1]  Pursuant to that Order, Plaintiffs filed their Consolidated Class Action Complaint (the "Complaint") on November 19, 2004, naming as defendants Bayer; Uniroyal Chemical Company, Inc.; Crompton Corporation (now known as Chemtura Corporation); Rhein Chemie Rheinau GmbH; and Rhein Chemie Corporation (collectively, "Defendants").

Plaintiffs allege that Defendants and their co-conspirators engaged in anti-competitive activities, the purpose and effect of which were to artificially raise, fix, maintain or stabilize the prices of Urethanes and Urethane Chemicals and to allocate markets and customers for the sale of Urethanes and Urethane Chemicals in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  Plaintiffs contend that, as a result of the conspiracy, they and other direct purchasers of Urethanes and Urethane Chemicals paid more for Urethanes and Urethane Chemicals than they would have paid absent the conspiracy.

Plaintiffs seek certification of a Settlement Class consisting of:

> All persons and entities in the United States who directly purchased polyester polyols in whatever form they were sold (including polyurethane systems containing polyester polyols but not polyether polyols) from any of the Defendants, at any time from January 1, 1998 through December 31, 2004.  Excluded from the Settlement Class are all governmental entities, any Defendants, their employees, and their respective parents, subsidiaries and affiliates. Also excluded are those persons and entities who timely and validly request exclusion from the Settlement Class.

Before reaching the settlement, the parties vigorously litigated this lawsuit.  Plaintiffs' counsel reviewed hundreds of thousands of documents from defendants and other parties.

---

[1] In its Practice and Procedure Order Upon Transfer Pursuant to 28 U.S.C. § 1407(a), dated September 7, 2004, the Court previously consolidated the cases before it for pretrial purposes.  In its Practice and Procedure Order No. 2, dated October 22, 2004, the Court appointed Class

Plaintiffs successfully litigated a motion to compel discovery.  Plaintiffs filed a motion for class certification, and further discovery is ongoing.  Plaintiffs' counsel retained – and extensively worked with – economic and industry experts to analyze Bayer's transactional data and to conduct statistical and other analyses to help determine whether the proposed settlement was in the best interest of the Class.  Defendants have deposed the named Plaintiffs and Plaintiffs' expert.

The Settlement Agreement was arrived at after months of negotiations, during which the strengths and weaknesses of the respective parties' positions were thoroughly discussed, evaluated and negotiated.  In May 2005, Bayer pled guilty to criminal violations of the antitrust laws relating to price fixing of aliphatic polyester polyols made with adipic acid during the period 1998-2002 and paid a fine of $33 million.  Bayer disputes any liability for the conspiracy prior to or after that period and regarding any other products. Bayer also contests the amount of damages that Plaintiffs have suffered as a result of the alleged conspiracy.  Based on the parties' respective positions, the proposed settlement is a fair and reasonable result.

B.      **The Basic Terms Of The Settlement Agreement**

1.      **Settlement Amount**

The Settlement Agreement provides that Bayer will pay the Settlement Class $18 million in cash (the "Settlement Amount").  Within ten (10) business of the Settlement Agreement being executed, Bayer will deposit this amount into an escrow account, and the funds will be invested in United States Treasury obligations or United States Treasury Money Market funds. Settlement Agreement ¶¶ 33, 38.  Interest on the Settlement Amount will accrue for the benefit

---

Counsel to represent the interests of the plaintiffs and the potential class members.

of the Settlement Class. *Id*. at ¶ 38.[2]

### 2.    The Parties and the Settlement Products

The Settlement Agreement is binding on Bayer, the Plaintiffs, and the proposed Settlement Class.  As stated earlier, the Settlement Class consists of all direct purchasers of polyester polyols and polyurethane systems containing polyester polyols but not polyether polyols ("Polyester Polyol Products"[3]), from Defendants in the United States, at any time from January 1, 1998 through December 31, 2004 (the "Class Period").  Defendants, their respective parents, employees, subsidiaries and affiliates and governmental entities are specifically excluded from the class definition.  Settlement Agreement ¶ 3.  Also excluded are those persons and entities who file timely and valid requests for exclusion.

### 3.    Cooperation

The Settlement Agreement requires Bayer to cooperate extensively with Class Counsel in connection with the prosecution of their claims against the remaining Defendants in this Action. The specific terms of the cooperation agreement, which are set forth in ¶ 47 of the Settlement Agreement, require Bayer, among other things, to:

---

[2] Consistent with other antitrust class action settlements, the Settlement Agreement provides that Bayer has the right to rescind the Settlement Agreement if purchases of Polyester Products from Defendants during the Class Period made by Class Members who opt out of the Settlement Class equals or exceeds twenty-five percent (25%) of Defendants's total sales of Polyester Polyol Products to the Class.  Settlement Agreement ¶ 35.  Additionally, Bayer has the right to rescind if the Court does not grant final approval to the settlement or if final approval is materially modified or set aside on appeal.  *Id.* at ¶ 46.  If the Settlement Agreement is rescinded, the amounts then in the Settlement Fund shall be returned to Bayer, except for any disbursements made or incurred in connection with notice, taxes and the other administration of the settlement. *Id.* at ¶¶ 35, 46.

[3] "Polyester Polyol Products" means polyester polyols in whatever form they were sold (including polyurethane systems containing polyester polyols but not polyether polyols) by one or more of the Defendants during the Class Period.  Settlement Agreement ¶ 16.  "Polyester Polyol Products" shall include but not be limited to the products sold under the trade names

(a) produce documents, including transactional data in electronic format for all of Bayer's sales of Polyester Polyol Products from January 1, 1996 through December 31, 2005;

(b) make available in the United States at Bayer's expense current and former directors, officers, and employees with knowledge of relevant facts for interviews, depositions, declarations, affidavits, and testimony;

(c) assist in authenticating documents; and

(d) agree that its counsel will meet with counsel for Plaintiffs as often as reasonably necessary to identify non-privileged documents and people relating to the antitrust violations alleged in the Complaint and the potential culpability of the non-settling Defendants and unnamed co-conspirators.

*Id.* at ¶ 47.

### 4. Assistance with Notice

Bayer has agreed to provide assistance with the dissemination of Notice to the Settlement Class. Specifically, Bayer has agreed to supply Plaintiffs' Class Counsel a list of customers that purchased Polyester Polyol Products from Bayer during the Class Period. *Id.* at ¶ 27(b).

### 5. Releases

The Settlement Agreement contemplates mutual releases. Upon final approval of the Settlement Agreement by the Court, the Releasees shall be released from any and all claims, demands, actions, suits and causes of action relating in any way to any conduct by the Releasees prior to the Effective Date concerning the pricing, selling, discounting, marketing, manufacturing and/or distributing of Polyester Polyol Products in the United States or for delivery in the United States. *Id.* at ¶ 31. Importantly, however, the Settlement Agreement provides that Bayer's sales shall remain in the Class Actions against the non-settling Defendants as a basis for damage claims and shall be part of any joint and several liability claims for all damages caused by the conspiracy. *Id.* at ¶ 52. In addition, the Releasors will obtain releases from all claims, demands, actions, suits, and causes of action, that the Releasees may have against the Releasors, relating to

---

identified on Attachment A to the Settlement Agreement. *Id.*

the institution, prosecution, or assertion of the litigation or the released claims.  *Id.* at ¶ 32.

## ARGUMENT

I.     **STANDARDS GOVERNING SETTLEMENT APPROVAL.**

Court approval of a class action settlement is a two-step process.  First, counsel submits the proposed settlement to the Court, which makes a preliminary fairness evaluation.  Then, the Court schedules a fairness hearing, after notice to the Class, to determine whether the proposed settlement is fair, reasonable and adequate to the members of the Class.  *Manual,* § 21.632. After making this determination, the Court must then direct that notice of the certification, proposed settlement, and the date of the final fairness hearing be provided to Class members.  *Id. See also 4 Newberg on Class Actions* § 11.25 (4th ed. 2005); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

Authorization to disseminate notice is recognition by the Court that the settlement is in the range of possible approval.  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981); *see also In re Montgomery County Real Estate Antitrust Litig.*, 83 F.R.D. 305, 313 (D. Md. 1979).  As noted by the court in *In re Traffic Executive Ass'n – Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980), approving dissemination of notice is akin to "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."

Authorization to disseminate notice is not a "definitive proceeding on the fairness of the proposed settlement and . . . permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate."  *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. at 1384.  Such a determination will await the final hearing on the fairness, reasonableness

and adequacy of the proposed settlement. *Id. See also Holden v. Burlington Northern, Inc.*, 665 F. Supp. 1398, 1403 (D. Minn. 1987) (in authorizing notice the court refrained from "expressing any opinion concerning the ultimate merits of the proposed settlement").

Whether the settlement falls within the "range of possible approval" under Rule 23 rests upon whether there is a conceivable basis for presuming that the standard applied for final approval will be satisfied.  Accordingly, preliminary approval is subject to a more flexible standard than final approval. *Marcus v. Kansas Dep't of Revenue*, 206 F.R.D. 509, 513 (D. Kan. 2002).  The question at the preliminary approval stage is whether "the proposed settlement agreement is sufficiently reasonable, adequate, fair, and consistent with the requirements of Rule 23 of the Federal Rules of Civil Procedure, to warrant notice thereof to the class members and a fairness hearing thereon." *Id.*  On a motion for preliminary approval, the court neither decides the merits of the underlying case, *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 622 n.6 (E.D. Pa. 1994), nor crafts a settlement for the parties. *In re Corrugated Container*, 643 F.2d at 212.

Whether the proposed settlement falls within the preliminarily acceptable range is informed by the "strong judicial policy in favor of settlements of class actions." 5 *Moore's Federal Practice* § 23.161[1] (2005); *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting "strong judicial policy in favor of settlements, particularly in the class action context"); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 551 (D. Colo. 1989) (same).  Settlement of complex litigation generally "is encouraged by the courts and favored by public policy." 4 *Newberg on Class Actions* at § 11.41.

To effectuate this policy, courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." *Id.*  "When a settlement is reached by experienced counsel after

negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

The presumption of fairness carries particular weight in the context of preliminary approval. Because preliminary approval is provisional and is followed by more formal and comprehensive review and objection procedures, any doubts should be resolved in favor of preliminary approval. *See, e.g., In re Vitamins Antitrust Litig.*, No. 99-197 (TFH), MDL No. 1285, 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (explaining that preliminary approval is appropriate absent "obvious deficiencies" raising doubts about the fairness of the settlement) (quoting *Manual for Complex Litigation, Third* § 30.41 (West 1999)).

The proposed settlement before the Court is fair, well within the "range of possible approval" and, therefore, is sufficiently fair to warrant providing notice that informs Class members of the proposed settlement and establishes procedures for a final settlement hearing under Rule 23(e).

## II.    THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE TO THE CLASS.

### A.    The Settlement Falls Within the Range of Possible Approval.

Under the Settlement Agreement, Bayer has agreed to pay Plaintiffs, on behalf of the Settlement Class, $18 million – a significant recovery. The Settlement here, approximately 8.5% of all sales of Bayer's Polyester Polyol Products during the Class Period, is toward the higher end of the range of antitrust settlements approved by Courts nationwide. *See, e.g.*, *In re Folding Carton Antitrust Litig.,* MDL 250 (N.D. Ill.) (percentage of recovery approximately 4.2% of sales during a four-year period, government indictments); *In re Sugar Industry Antitrust Litig.,* 73 F.R.D. 322 (E.D. Pa. 1976) (percentage of recovery approx. 2.5% of sales during a four-year period); *In re Armored Car Antitrust Litig.,* 472 F. Supp. 1357, 1368 (N.D. Ga. 1979)

(percentage of recovery 3.08% of sales during a four-year period).  In fact, this Court just preliminarily approved a settlement with this very defendant (Bayer) in the related polyether polyol cases, where the settlement amount was only 1% of affected sales.  The settlement here is nearly 8.5 times that.

Not only does the Settlement Agreement provide for a substantial monetary recovery, it also specifically provides that the non-settling Defendants remain jointly and severally liable for the full damages caused by the alleged conspiracy, including all sales made by Bayer. Settlement Agreement ¶ 52.  *See Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981) ("joint and several liability simply ensures that the plaintiffs will be able to recover the full amount of damages from some, if not all, participants").  In this regard, the Settlement Agreement is similar to the settlement approved in *Corrugated Container*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from the remaining defendants, less the actual amount of the initial settlement.  *In re Corrugated Container Antitrust Litig.*, MDL No. 310, 1981 WL 2093, at *17 (S.D. Tex. June 22, 1981); *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980).  Here, too, the Settlement Class members will be able to recover their full damages, with no diminution other than deduction of the actual Bayer settlement amount.

Moreover, this settlement represents the first agreement Plaintiffs have reached with any of the Defendants.  Early settlements such as this create substantial value to the Class.  In addition to their direct, financial benefit, they strengthen Plaintiffs' hand in the ongoing litigation. *See, e.g., Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *Corrugated Container*, 1981 WL 2093, at *19.  Settlement with a single defendant in a price-fixing case tends to bring other co-defendants "to the point of serious negotiations."  *Id.*

Finally, the Settlement Agreement requires Bayer to provide extensive assistance and cooperation to Plaintiffs.  *See* Settlement Agreement ¶ 47.  Bayer's agreement to cooperate will provide a valuable benefit to the Class.

These significant benefits more than justify preliminary approval.  They militate in favor of this Court finding the settlement within the "range of possible approval" and authorizing notice to the Class.

### B.      The Settlement Is Fair and Reasonable.

The factors for determining whether a proposed settlement is fair and reasonable are: (1) whether the settlement was honestly negotiated; (2) whether the ultimate outcome of the litigation is in doubt because serious questions of law and fact exist; (3) whether the value of an immediate settlement outweighs the possibility of future relief after protracted litigation; and (4) whether in the judgment of the parties the settlement is fair and reasonable.  *Epstein v. Wittig*, No. 03-4081, 2005 WL 3276390, at *6 (D. Kan. Dec. 2, 2005) (citing *Jones v. Nuclear Pharmacy, Inc.*, 742 F.2d 322, 324 (10th Cir. 1984).  The proposed settlement satisfies this test.

### 1.      The Proposed Settlement Is The Result Of Arm's-Length Negotiations By Experienced Counsel

The proposed settlement was reached after extensive arm's-length negotiations by respected and experienced counsel.  This Court appointed interim Class Counsel for Plaintiffs in October 2004, after consideration of substantial materials presented to the Court and after an extensive hearing.  Bayer's counsel are highly experienced as well.  The parties' negotiations were protracted, hard-fought and conducted in the utmost good faith.  Nothing in the course of the negotiations of the settlement discloses collusion or any other grounds to doubt its fairness.  Both sides possessed sufficient information to reach a fair agreement.

### 2.      Questions of Law and Fact Pose Risks in the Litigation

Courts have long recognized the "complexity and uncertainty" of issues in antitrust cases. *See, e.g., In re Martial Arts Antitrust Litig.,* 100 F.R.D. 367, 372 (N.D. Ohio 1983) (recognizing "difficulties of proof and requirements of a costly trial on the merits" in antitrust actions). Here, although the risk of establishing liability would be mitigated in light of Bayer's guilty plea, plaintiffs still would be faced with proving damages.

### 3.      The Value of The Settlement Outweighs the Possibility of Future Relief

Plaintiffs could have attempted to recover a greater amount than the settlement amount by pursuing litigation. However, Plaintiffs through settlement will gain not only monetarily from avoiding the costs and risks of protracted litigation, but also from Bayer's promised cooperation with Plaintiffs in the continuing litigation against the remaining Defendants. Moreover, assuming that plaintiffs would have recovered a greater sum at trial, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 (2d Cir. 1974). Courts often approve settlement amounts representing small percentages of the plaintiffs' damages. *See, e.g., Lazy Oil Co. v. Witco,* 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (approving a settlement for 5.35% of damages for entire class period and 25.5% of damages falling outside limitations period); *In re Anthracite Coal Antitrust Litig.,* 79 F.R.D. 707, 714 (M.D. Pa. 1978) (approving settlement of 28% of estimated damages in four years).

If the litigation were to continue, it would unquestionably be complex, expensive and protracted. "An antitrust class action is arguably the most complex action to prosecute." *In re*

*Motorsport Merchandise Antitrust Litig.,* 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000).  The discovery process would continue to be lengthy, expensive and contentious.  Settlement will reduce the litigation expense of the parties, dispose of burdensome litigation, and promote judicial economy, another factor for consideration.  *See Weiss v. Mercedes-Benz of N. Am. Inc.,* 899 F. Supp. 1297 (D. N.J. 1995) (burden on crowded docket is factor for consideration).

### 4.    Plaintiffs' Counsel Recommend Settlement

The parties' view of the settlement as fair and reasonable is entitled to great weight. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).  *See also Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288-89 (D. Colo. 1997) ("[T]he recommendation of a settlement by experienced plaintiffs' counsel is entitled to great weight"). Courts properly take into account the considered judgment of experienced counsel when evaluating the fairness of proposed class action settlements.  "Courts have consistently refused to substitute their business judgment for that of counsel and the parties."  *Alvarado*, 723 F. Supp. at 548.

Plaintiffs' Class Counsel are experienced antitrust and class action attorneys and, at the time of the Settlement, were extremely knowledgeable about the factual and legal issues in the case.  Class Counsel have worked intensively to prosecute this case.  They have engaged in substantial discovery, filed a motion for class certification, and engaged economic and industry experts who have performed extensive analyses. Class Counsel reviewed extensive transactional information relating to sales and pricing of Bayer's Polyester Polyol Products, and hundreds of thousands of documents produced by Defendants and other parties.  Defendants have deposed the named Plaintiffs and Plaintiffs' expert.  Moreover, Plaintiffs' counsel were already "well informed of the strengths and weaknesses of their case" from their investigations prior to filing

the lawsuit.  *Fisher Bros. v. Phelps Dodge Industries, Inc.,* 604 F. Supp. 446, 450 (E.D. Pa.

1985).  Given these facts, the considered judgment of experienced counsel and their evaluation

of the settlement are entitled to great weight.

In short, the settlement is fair and reasonable and should be approved preliminarily.

**III.     THE COURT SHOULD CERTIFY A SETTLEMENT CLASS.**

The Court should certify a settlement class here because the facts warrant it, as detailed

above, and because the requirements for certification under Federal Rule of Civil Procedure 23

are met.  Indeed, the Court just certified a settlement class nearly identical to this one in the

related polyether polyol cases.

**A.     Certification Of A Settlement Class Is Appropriate.**

Rule 23 of the Federal Rules of Civil Procedure provides:

> (c)(1)(A) When a person sues or is sued as a representative of a
> class, the court must – at an early practicable time – determine by
> order whether to certify the action as a class action.  The court
> must approve any settlement, voluntary dismissal, or compromise
> of the claims, issues, or defenses.
>
> * * *
>
> (e)(1)(A)   The court must approve any settlement, voluntary
> dismissal, or compromise of the claims, issues, or defenses of a
> certified class.

Fed. R. Civ. P. 23(c)(1)(A), (e)(1)(A).

The Settlement Agreement contains a provision for certification of a class solely for

purposes of settlement.  "Federal Rule of Civil Procedure 23 allows class action certification for

settlement purposes, as well as litigation." *Fanning v. AcroMed Corp. (In re Orthopedic Bone

Screw Products Liab. Litig.)*, 176 F.R.D. 158, 172 (E.D. Pa. 1997).  The Supreme Court and

courts in this District have endorsed the utility of settlement classes, provided the proposed

settlement class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *In re A.H. Robins Co.*, 880 F.2d 709, 738-40 (4th Cir. 1989), *cert. denied*, *sub nom. Anderson v. Aetna Casualty*, 493 U.S. 959 (1989); *Gottstein v. National Ass'n for Self Employed*, No. 98-2339-CM, 2000 WL 1732338, at *1 (D. Kan. Nov. 2, 2000).

The Court can approve the settlement class after notice and a hearing if it meets the requirements of Rule 23(a) and (b)(3). *See generally Amchem, supra*. At this juncture, it is appropriate to certify a class for purposes of disseminating notice and scheduling a hearing to consider final approval of the settlement. *See generally In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 172 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ("The use of a settlement class allows the parties to concede, for purposes of settlement negotiations, the propriety of bringing suit as a class action and allows the Court to postpone formal certification of the class until after settlement negotiations have ended").

Further, in price-fixing cases such as this, courts have consistently held that class certification is necessary to effectuate the underlying purposes of the nation's antitrust laws.  As the Supreme Court has noted, the class action vehicle enhances the efficacy of private actions "by permitting citizens to combine their limited resources to achieve a more powerful litigation posture." *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 266 (1972). *See also DeLoach v. Philip Morris Cos.*, 206 F.R.D. 551, 566-568 (M.D.N.C. 2002), quoting *6 Newberg On Class Actions* § 18.39, 18-147 (4th ed. 2002) ("The antitrust laws rely heavily for their enforcement on citizen suits.  Without the class action device, such laws could be violated with impunity, as long as individual damages were comparatively small, even though the aggregate damage was great");

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086 (1978); *Brown v. Pro Football, Inc.*, 146 F.R.D. 1, 4 (D.D.C. 1992); *Lumco Indus., Inc. v. Jeld-Wen, Inc.*, 171 F.R.D. 168 (E.D. Pa. 1997).[4]

The desirability of class action certification for settlement purposes is heightened when, as here, plaintiffs seek redress for violations of the antitrust laws. Moreover, private enforcement of these laws is a necessary supplement to government action. *See Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979). Accordingly, the facts here and established policy relating to antitrust class actions in general clearly warrant certification of this action for settlement purposes.

**B.    The Requirements For Class Certification Under Rule 23(a) Are Satisfied.**

Courts in this District (and elsewhere) routinely certify horizontal price-fixing class actions. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661 (D. Kan. 2004); *Law v. Nat'l Collegiate Athletic Ass'n*, 167 F.R.D. 178 (D. Kan. 1996); *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609 (D. Kan. 1995); *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 258 (D.D.C. 2002) ("[I]t has long been recognized that class actions play an important role in the private enforcement of antitrust actions.").

Plaintiffs moving for class certification must first satisfy the requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy of representation:

> One or more members of a class may sue or be sued as representative parties on behalf of all, only if (1) the class is so numerous that joinder of all members is impracticable, (2) there

---

[4]   Courts routinely certify classes for settlement purposes only. *See, e.g., Hanlon v. Chrysler Corp*, 150 F.3d 1011 (9th Cir. 1998); *In re A.H. Robins Co.*, 880 F.2d 709; *Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982), *cert. denied sub nom. Lewy v. Weinberger*, 464 U.S. 818 (1983); *In re Beef Industry Antitrust Litig.*, 607 F.2d 167 (5th Cir. 1979), *cert. denied, sub nom. Iowa Beef Processors v. Meat Price Investigators Ass'n*, 452 U.S. 905 (1981); *In re Prudential Sec. Inc. Ltd. Pshps. Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995).

are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Additionally, Plaintiffs are moving for certification under Rule 23(b)(3), which requires that common questions predominate over individual questions and that a class action be a superior method for adjudication:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

* * *

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3).

Plaintiffs seek certification of the following Settlement Class:

All persons and entities in the United States who directly purchased polyester polyols in whatever form they were sold (including polyurethane systems containing polyester polyols but not polyether polyols) from any of the Defendants, at any time from January 1, 1998 through December 31, 2004.  Excluded from the Settlement Class are all governmental entities, any defendants, their employees, and their respective parents, subsidiaries and affiliates. Also excluded are those persons and entities who timely and validly request exclusion from the Settlement Class.

The proposed Settlement Class satisfies each of the elements required by Rule 23.[5]

### 1.   The Class Is So Numerous That Joinder Is Impracticable

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable. . . ."  Fed. R. Civ. P. 23(a)(1).  Impracticable does not mean impossible.  *Commander Properties Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529, 535 (D. Kan. 1995); *Stambaugh v. Kansas Dep't of Corrections*, 151 F.R.D. 664, 673 (D. Kan. 1993). Numerosity is not judged against some absolute number.  *Stambaugh*, 151 F.R.D. at 673 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("[T]he difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable.").

Plaintiffs estimate that there are hundreds, if not thousands, of geographically disbursed purchasers of Polyester Polyol Products from Bayer in the United States.  Classes of this size and fewer are routinely found to satisfy the numerosity requirement.  *See, e.g., Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 276 (10th Cir. 1977) (class of 46 plaintiffs large enough to warrant certification); *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 679 (D. Kan. 1991) (good faith estimate of at least 50 class members warrants certification); *Cypress v. Newport News General and Nonsectarian Hosp. Ass'n.*, 375 F.2d 648, 653 (4th Cir. 1967) (18 class members large enough to warrant certification).  Moreover, the geographical distribution of the putative class members increases the impracticability of joinder.  *See In re Home-Stake Prod. Co. Sec. Litig.*, 76 F.R.D. 351, 361 (N.D. Okla. 1977) (geographic diversity among potential claimants adds to impracticability of joinder).  The Defendants' customer lists, which highlight geographic spread of the putative class members, readily satisfy the numerosity requirement of Rule 23(a).  Accordingly, this requirement is met.

---

[5] For class certification purposes, courts accept the complaint's allegations as true.  *Universal*

### 2.      Common Questions Of Law And Fact Exist

As in almost any horizontal price-fixing case, the "commonality" requirement of Rule 23(a)(2) is plainly satisfied here.[6] Numerous courts have recognized that antitrust cases, by their very nature, deal with common legal and factual issues. *See, e.g., Ballard v. Blue Shield of Southern W.Va., Inc.*, 543 F.2d 1075, 1080 (4th Cir. 1976), *cert. denied,* 430 U.S. 922 (1977) ("Class actions are frequently maintained in antitrust cases because of the many questions of law and fact that are common to the members of the class").  In a long line of conspiracy antitrust cases commenced as class actions, it has consistently been held that, by their nature, common questions of law and fact exist with respect to the existence, scope and efficacy of the conspiracy. *See, e.g., In re Monosodium Glutamate Antitrust Litig.*, 205 F.R.D. 229, 232 (D. Minn. 2001 (commonality routinely found in antitrust price-fixing cases); *In re Playmobil Antitrust Litig.,* 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998) (explaining that courts generally find commonality in price-fixing cases); *In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143, 150 (E.D. Pa. 1979), *aff'd,* 685 F.2d 810 (3rd Cir. 1982); 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil 3d* § 1763 (2005) (same).

In this case, common questions exist with respect to each member of the proposed Settlement Class and include, *inter alia*:

- Whether Defendants engaged in a combination and conspiracy to fix, raise, maintain or stabilize prices of the Polyester Polyol Products sold in the United States;

- Whether Defendants engaged in a combination and conspiracy to allocate

---

*Serv. Fund*, 219 F.R.D. at 665.

[6]  Rule 23(a)(2) is distinguished from Rule 23(b)(3) in that it requires the existence of a common issue of law or fact but not necessarily the predominance of that issue. *Transamerican Refining*

customers, accounts or territories for the Polyester Polyol Products sold in the United States;

- Whether Defendants' conduct caused injury to the business and property of Plaintiffs and other members of the Class; and

- The appropriate measure of damages.

These issues present a "common core of questions," *Illinois v. Harper & Row Publishers, Inc.*, 301 F. Supp. 484, 488 (N.D. Ill. 1969), that focus on the central issue of the existence and effect of the alleged conspiracy.  Accordingly, this requirement is met.

### 3. The Claims Of The Representative Parties Are Typical Of The Claims Of The Class

Rule 23(a)(3) requires that "the claims . . . of the representative parties are typical of the claims . . . of the class. . . ."  Fed. R. Civ. P. 23(a)(3).  Typicality, however, does not require that the claims be identical.  *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982); *In re Community Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005).  Rather, the class representatives must simply have the "same interests and suffer the same injuries as the proposed class." *Heartland Communications, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 116 (D. Kan. 1995).  The typicality requirement is rarely at issue in price-fixing litigation.  *See Universal Serv. Fund*, 219 F.R.D. at 667 (citing *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 207 (E.D. Pa. 2001), *aff'd* 305 F.3d 145 (3d Cir. 2002)) (noting that typicality requirement is generally satisfied in antitrust cases because the named plaintiffs must prove a conspiracy, its effectuation, and damages, which is precisely what all class members must prove).

Plaintiffs and the members of the Settlement Class were all victims of the same alleged conspiracy to fix prices and allocate markets and customers.  *See In re Catfish Antitrust Litig.*,

---

*Corp. v. Dravo Corp.,* 130 F.R.D. 70, 73 (S.D. Tex. 1990).

826 F. Supp. 1019, 1035 (N.D. Miss. 1993) (where "it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members"); *In re Carbon Black Antitrust Litig.*, No. 03-10191-DPW, MDL No. 1543, 2005 WL 102966, at *12 (D. Mass. Jan. 18, 2005) (citing 1 *ABA Section of Antitrust Law, Antitrust Law Developments* 932 (5th ed. 2002)) (noting that typicality is normally satisfied in price-fixing conspiracy case "even though the plaintiff followed different purchasing procedures, purchased in different quantities or at different prices, or purchased a different mix of products than did the members of the class").

Plaintiffs, all direct purchasers of Polyester Polyol Products, seek to recover damages from Bayer that resulted from an alleged conspiracy to fix prices.  No plaintiff asserts any injury peculiar to itself.  This requirement is thus satisfied.

### 4.    The Representative Parties Will Fairly And Adequately Protect The Interests Of The Class

The fourth and final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4).  Courts have broken down the requirement into an evaluation of (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the representative's claims are sufficiently interrelated to and not antagonistic with the class's claims as to ensure fair and adequate representation.  *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 160 (D. Kan. 1996).

Here, the requirements of Rule 23(a)(4) are satisfied. Plaintiffs are represented by experienced counsel thoroughly familiar with class action and antitrust litigation.  *See Zapata,* 167 F.R.D. at 161 ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the action on behalf of the

class.").  In fact, this Court implicitly so held when it appointed interim Class Counsel for the Class as part of its Practice and Procedure Order No. 2, dated October 22, 2004.  Moreover, "there is no ground for supposing that plaintiffs will not adequately represent the class."  *In re Glassine & Greaseproof Paper Antitrust Litig.*, 88 F.R.D. 302, 306 (E.D. Pa. 1980).  The representative Plaintiffs, direct purchasers of Polyester Polyol Products during the Class Period, all purchased Polyester Polyol Products that were the subject of the alleged conspiracy, and suffered overcharges resulting from Bayer's conspiratorial conduct.  Accordingly, they are adequate to represent the Class.

### 5.        The Requirements Of Rule 23(b)(3) Are Satisfied

Once it is determined that the proposed class satisfies the requirements of Rule 23(a), a class should be certified under Rule 23(b)(3) if, in addition, "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods. . . ."  Fed. R. Civ. P. 23(b)(3).

Antitrust conspiracy actions such as this readily satisfy this requirement.  As the Supreme Court stated in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."  521 U.S. at 625.  Moreover, in connection with a settlement class, a court "need not inquire whether the case, if tried, would present intractable management problems."  *Id.* at 620; *see also Ingram v. Coca Cola Co.*, 200 F.R.D. 685, 697 (N.D. Ga. 2001) ("[u]nder *Amchem*, manageability concerns are eliminated in the settlement class context").

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy.  *See In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. at

614.   The decisions are legion that a class action is a superior method of adjudicating multiple claims in price-fixing cases; and courts around the country have consistently certified class actions in such cases.  *See, e.g., In re Carbon Dioxide Antitrust Litig.*, 149 F.R.D. 229 (M.D. Fla. 1993); *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019; *Coleman v. Cannon Oil Co.*, 141 F.R.D. 516 (M.D. Ala. 1991); *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197; *In re Commercial Tissue Prods.*, 183 F.R.D. 589 (N.D. Fla. 1998); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999); *In re Polypropylene Carpet Antitrust Litig.*, 996 F. Supp. 18 (N.D. Ga. 1997); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. at 493.   Accordingly, this requirement is met.

## IV.    THE COURT SHOULD APPROVE THE PROPOSED FORMS OF NOTICE.

Federal Rule of Civil Procedure 23(e) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Fed. R. Civ. P. 23(e)(1)(B).  Here, Plaintiffs propose providing individual notice via first class mail.  Notice, in the form attached as Exhibit A to the Preliminary Approval Order, will be mailed, postage prepaid, to all persons and entities that are identified as being direct purchasers of Polyester Polyol Products in the United States during the Class Period. A summary notice will also be published in *Chemical Week* in the form attached as Exhibit B to the Preliminary Approval Order.

Rule 23 requires that a notice state: the nature of the action; the definition of the proposed class; the class claims; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members.  Fed. R. Civ. P. 23(c)(2)(B).  Such a notice complies with due

process requirements.  *See DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935 939 (10th Cir. 1995).

The content of the proposed Notice, and the proposed method of its dissemination, fulfill the requirements of Federal Rule of Civil Procedure 23(e), as well as the requirements of Federal Rule of Civil Procedure 23(c)(2), and due process.  *See generally Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (due process is satisfied by mailed notice to all class members who reasonably can be identified); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. at 1384 (approving class notice plan); *Hanlon*, 150 F.3d at 1011; *In re Lease Oil Antitrust Litig.*, 186 F.R.D. at 429.  Accordingly, the Court should approve the forms of Notice.

## V. THE COURT SHOULD ENTER THE PROPOSED ORDER PRELIMINARILY APPROVING THE SETTLEMENT.

The settlement with Bayer is the result of arm's-length, good-faith negotiation, conducted after extensive factual investigation and legal and economic analysis.  Class Counsel, who are experienced in these matters, believe that the settlement is fair, reasonable and adequate and that settlement at this time is in the best interest of the Settlement Class.  Accordingly, Plaintiffs respectfully request the entry of an Order:

1.    Finding that the proposed settlement with Bayer is sufficiently fair, reasonable and adequate to allow dissemination of notice to the Settlement Class;

2.    Finding that the prerequisites for a class action have been satisfied and certifying the proposed class for settlement purposes;

3.    Approving the forms of notice attached as Exhibits A and B to the proposed order granting preliminary approval of the settlement (the "Preliminary Approval Order");

4.    Directing that Notice be disseminated;

5.    Establishing a deadline for filing requests for exclusion from the Settlement Class as set forth in the proposed Order;

6.    Establishing a deadline for filing objections to the proposed settlement;

25

7.      Establishing a date for a hearing on final approval of the proposed settlement once it is informed by Class Counsel that the Settlement Administrator has obtained the customer mailing lists from all Defendants so that notice can be sent to the Class; and

8.      Staying all proceedings against Bayer except those proceedings provided or otherwise required by the Settlement Agreement.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that Plaintiffs' Motion for Preliminary Approval of Proposed Settlement with Bayer be granted, and that the Court preliminarily approve the settlement; certify a settlement class; approve the proposed forms of notice; and stay further class proceedings as to Bayer.

Dated: April 28, 2006

STUEVE SIEGEL HANSON WOODY LLP

/s/ Norman E. Siegel
Norman E. Siegel - D. Kan. 70354
George A. Hanson - KS 16805
330 West 47th Street, Suite 250
Kansas City MO 64112
Tel:       (816) 714-7100
Fax:      (816) 714-7101

PLAINTIFFS' LIAISON COUNSEL

W. Joseph Bruckner
Yvonne M. Flaherty
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Ave. South, Suite 2200
Minneapolis, MN 55401
Tel:     (612) 339-6900
Fax:     (612) 339-0981

Steven A. Kanner
William H. London
Douglas A. Millen
Louis A. Kessler
MUCH SHELIST FREED DENNENBERG
 AMENT & RUBENSTEIN, P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL  60606-1615
Tel:     (312) 521-2000
Fax:     (312) 521-2100

Susan G. Kupfer                         Roy M. Bell
GLANCY, BINKOW & GOLDBERG LLP          Timothy P. Irving
445 Market Street, Suite 1810          Jason S. Hartley
San Francisco, CA  94105               ROSS, DIXON & BELL, LLP
Tel:    (415) 972-8160                 550 West B Street, Suite 400
Fax:    (415) 972-8166                 San Diego, CA  92101-3599
                                       Tel:    (619) 235-4040
                                       Fax:    (619) 231-8796

PLAINTIFFS' CO-LEAD COUNSEL


**CERTIFICATE OF SERVICE**

        Plaintiffs' Liaison Counsel hereby certifies the following documents were electronically filed with the Clerk of Court through ECF, and that ECF notification was sent to at least one attorney from each law firm that represents one or more of the defendants, and was mailed, via U.S. Mail, postage prepaid, this 28th day of April, 2006 upon at least one attorney at each law firm that represents one or more of the plaintiffs that is not registered for ECF notification.


        _/s/ Norman E. Siegel_____
        Plaintiffs' Liaison Counsel