### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

IN RE
URETHANE ANTITRUST LITIGATION

This document relates to:
    The Polyester Polyol Cases

MDL No. 1616

Civil No. 2:04-md-01616-JWL-DJW

### SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made and entered into this 25th day of April, 2006 (the "Execution Date"), by and among defendants Bayer AG, Bayer Corporation, and Bayer MaterialScience LLC (f/k/a Bayer Polymers LLC) ("Bayer," as defined in Paragraph 1 below) and plaintiffs Skypark Manufacturing LLC (f/k/a Burtin Urethane Corporation), Maine Industrial Tires Limited, Urethane Product Industries, Inc., Industrial Rubber Products, LLC, and Kryptane Systems, LLC (collectively "Plaintiffs"), who have filed suit as representatives of a putative class of similarly situated direct purchasers (defined in Paragraph 3 below).  Plaintiffs enter this Settlement Agreement both individually and on behalf of a class of all direct purchasers of polyester polyols in whatever form they were sold (including polyurethane systems containing polyester polyols but not polyether polyols) ("Polyester Polyol Products," as defined in Paragraph 16 below, and including but not limited to certain products sold under the trade names identified on Attachment A hereto) during the period from January 1, 1998 through December 31, 2004 (the "Class").

WHEREAS, Plaintiffs are prosecuting the above-captioned actions (the "Class Actions") on their own behalf and on behalf of the Class against Bayer and other Defendants;

WHEREAS, Plaintiffs allege, among other things, that Bayer participated in an unlawful conspiracy to fix prices and allocate markets for Polyester Polyol Products in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*;

WHEREAS, Bayer denies Plaintiffs' allegations, has not conceded or admitted any liability, and has asserted affirmative defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Class Actions and have concluded that a settlement with Bayer according to the terms set forth below is in the best interest of Plaintiffs and the Class;

WHEREAS, Bayer has concluded, despite its belief that it has good defenses to the claims asserted, that it will enter into this Settlement Agreement in order to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the releases, orders and judgment contemplated by this Settlement Agreement, and to put to rest with finality all claims that have or could have been asserted against Bayer relating to the pricing, selling, discounting, marketing, manufacturing and/or distributing of Polyester Polyol Products in the United States or for delivery in the United States; and

WHEREAS, arm's-length settlement negotiations have taken place between counsel for Plaintiffs and Bayer, and this Settlement Agreement, which embodies all of the terms and conditions of the settlement between Bayer and Plaintiffs, both individually and on behalf of the Class, has been reached as a result of the parties' negotiations, subject to approval of the Court;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Class Actions be settled, compromised, and dismissed on the merits with

prejudice as to Bayer only, without costs as to Plaintiffs, the Class, or Bayer, subject to the approval of the Court, on the following terms and conditions:

Definitions

The following terms, as used in this Settlement Agreement, have the following meanings:

1.      "Bayer" means Bayer AG, Bayer Corporation, Bayer MaterialScience AG, and Bayer MaterialScience LLC (f/k/a Bayer Polymers LLC), and their respective past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

2.      "Claims Administrator" means Complete Claim Solutions, Inc.

3.      "Class" means all persons and entities in the United States who directly purchased Polyester Polyol Products from Defendants at any time from January 1, 1998 through December 31, 2004.  Excluded from the Class are Defendants, their respective parents, employees, subsidiaries and affiliates, and all government entities.

4.      "Class Counsel" means the law firms of Much Shelist Freed Denenberg Ament & Rubenstein, P.C.; Lockridge Grindal Nauen PLLP; Ross, Dixon & Bell, LLP; and Glancy Binkow & Goldberg LLP.

5.      "Class Period" means the period from and including January 1, 1998 up to and including December 31, 2004.

6.      "Defendants" means Bayer AG, Bayer Corporation, Bayer MaterialScience LLC (f/k/a Bayer Polymers LLC), Crompton Corporation (n/k/a Chemtura Corporation), Rhein Chemie Corporation, Rhein Chemie Rheinau GmbH, and Uniroyal Chemical Company, Inc.

7.　　　"Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

8.　　　"Effective Date" means the date on which all of the events identified in Paragraph 30 of this Settlement Agreement have occurred, and means the date on which this Settlement Agreement has become final.

9.　　　"Escrow Account" means J.P. Morgan Trust Company, National Association, a national banking association, account number 021-000-021 and the Notice and Administration Fund (defined in Paragraph 37), established pursuant to the terms and conditions set forth in the Escrow Agreement attached as Attachment B hereto.

10.　　　"Escrow Agent" means J.P. Morgan Trust Company, National Association, a national banking association, as set forth in the Escrow Agreement attached as Attachment B hereto.

11.　　　"Escrow Agreement" means the Escrow Agreement attached as Attachment B hereto.

12.　　　"Final Judgment" means a final order approving the Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure together with entry of the final judgment dismissing the Class Actions and all claims therein against Bayer on the merits with prejudice as to all Settlement Class Members.

13.　　　"Non-Settling Defendant" means any Defendant other than Bayer, Rhein Chemie Corporation, and Rhein Chemie Rheinau GmbH.

14.     "Opt-Out" means a person or entity who would have been a member of the Settlement Class except for his, her, or its timely and valid request for exclusion.

15.     "Plaintiffs" means Skypark Manufacturing LLC (f/k/a Burtin Urethane Corporation), Maine Industrial Tires Limited, Urethane Product Industries, Inc., Industrial Rubber Products, LLC, and Kryptane Systems, LLC.

16.     "Polyester Polyol Products" means polyester polyols in whatever form they were sold (including polyurethane systems containing polyester polyols but not polyether polyols) by one or more of the Defendants during the Class Period.  "Polyester Polyol Products" shall include but not be limited to the products sold under the trade names identified on Attachment A hereto.

17.     "Preliminary Approval Order" means an Order preliminarily approving the settlement, certifying a Settlement Class, authorizing dissemination of notice to the Class, and staying all proceedings against Bayer except those proceedings provided for or required by this Settlement Agreement.

18.     "Released Claims" means those claims released pursuant to Paragraph 31 of this Settlement Agreement.

19.     "Releasees" shall refer jointly and severally, individually and collectively to Bayer, Rhein Chemie Corporation, and Rhein Chemie Rheinau GmbH, and their respective past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

20.     "Releasors" shall refer jointly and severally, individually and collectively to Plaintiffs, the Settlement Class Members, and their respective past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

21.     "Settlement Amount" means $18,000,000.00.

22.     "Settlement Class" means all members of the Class who do not timely and validly elect to be excluded from the Settlement Class, certified for purposes of this Settlement Agreement only.

23.     "Settlement Class Member" means each member of the Class who does not timely and validly elect to be excluded from the Settlement Class, certified for purposes of this Settlement Agreement only.

24.     "Settlement Fund" means the Settlement Amount plus any interest earned on that amount.

Class Certification

25.     Plaintiffs shall seek, and Bayer shall not object to, certification of the Settlement Class as defined above for the purposes of this Settlement Agreement only, and appointment of Class Counsel as lead counsel for the Class.

Approval of this Settlement Agreement and Dismissal of Claims

26.     Plaintiffs and Bayer shall use their best efforts to effectuate this Settlement Agreement, and shall cooperate to promptly seek and obtain the Court's preliminary and final approval of this Settlement Agreement (including providing class notice under Federal Rules of

Civil Procedure 23 (c) and (e)) and to secure the prompt, complete, and final dismissal with prejudice of the Class Actions as to Bayer only.

27.    (a)    Within twenty (20) business days after the Execution Date, Plaintiffs shall submit to the Court and Bayer shall not object to a motion requesting entry of a Preliminary Approval Order, preliminarily approving the settlement, certifying a Settlement Class, authorizing dissemination of notice to the Class, and staying all proceedings against Bayer except those proceedings provided for or required by this Settlement Agreement.  The motion shall include:  (a) the definition of the Settlement Class to be certified by the Court pursuant to this Settlement Agreement; and (b) the proposed form of, method for, and timetable for dissemination of notice to the Class.

(b)    Upon preliminary approval by the Court of this Settlement Agreement, Class Counsel or their designee shall, in accordance with Fed. R. Civ. P. 23 and the Court's Preliminary Approval Order, provide each member of the Class who can be identified by reasonable means with notice by such means as the Court shall require.  In order to facilitate mailed notice, within five (5) days of preliminary approval of the Settlement Agreement, Bayer shall provide to Class Counsel or the Claims Administrator, to the extent it has not already been provided, a list of customers that purchased Polyester Polyol Products from Bayer during the Class Period.  The list shall contain addresses for each member of the Class to the extent reasonably available.  This information shall be subject to the Protective Order entered in the Class Actions (the "Protective Order," a copy of which is attached as Attachment C hereto).

(c)    Class Counsel shall take all necessary and appropriate steps to ensure that notice of the settlement hearings is provided in accordance with the orders of the Court.

(d)     Notice of the settlement hearings shall also be given by publication once in the national edition of *Chemical Week* and/or in such other publications as the Court may direct, as soon as reasonably practicable after preliminary approval by the Court of this Settlement Agreement.

28.     Bayer shall have no liability with respect to the giving of notice of the settlement to potential Settlement Class Members.

29.     Class Counsel or their designee shall submit motions for final approval of the Settlement Agreement to the Court after notice of the settlement hearings is given to the members of the Class.  Plaintiffs shall seek, and Bayer shall not object to, entry of a Final Judgment:

a.     approving finally this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

b.     directing that, as to Bayer, the Class Actions be dismissed with prejudice and, except as provided for in this Settlement Agreement, without costs;

c.     reserving exclusive jurisdiction over the settlement and this Settlement Agreement, including the administration and consummation of this settlement; and

d.     finding under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Bayer shall be final and entered forthwith.

30.     The Effective Date shall occur and this Settlement Agreement shall become final only upon:  (a) the entry by the Court of the Final Judgment, and (b) the expiration of the time

for appeal or to seek permission to appeal from the Court's approval of the Settlement

Agreement and entry of the Final Judgment or, if an appeal from an approval and Final Judgment

is taken, the affirmance of such Final Judgment in its entirety, without modification, by the court

of last resort to which an appeal of such Final Judgment may be taken.  It is agreed that neither

the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28

U.S.C. § 1651, shall be taken into account in determining the above-stated times.

Release and Discharge

     31.    Upon the occurrence of the Effective Date and in consideration of payment of the

Settlement Amount, the Releasees shall be completely released, acquitted, and forever

discharged from any and all claims, demands, actions, suits, and causes of action, whether class,

individual, or otherwise in nature, damages whenever incurred, liabilities of any nature

whatsoever, including costs, expenses, penalties, and attorneys' fees that Releasors, or anyone of

them, whether directly, representatively, derivatively, or in any other capacity, ever had, now

have, or hereafter can, shall, or may have against the Releasees, whether known or unknown,

relating in any way to any conduct by the Releasees prior to the Effective Date concerning the

pricing, selling, discounting, marketing, manufacturing and/or distributing of Polyester Polyol

Products in the United States or for delivery in the United States.  The Released Claims include

but are not limited to claims related to or arising out of the facts, occurrences, transactions, or

other matters alleged in the Class Actions during the Class Period.  However, nothing herein

shall be construed to release any claims relative to any product defect, breach of contract, or

similar claim between the parties relating to Polyester Polyol Products.  Moreover, nothing

herein shall preclude the Releasors from participating in or benefiting from any relief or other

recovery as part of a settlement or judgment on behalf of a class of indirect purchasers of

Polyester Polyol Products (such reservation by the Releasors of any right to participate in any

relief or other recovery as part of a settlement or judgment on behalf of a class of indirect purchasers of Polyester Polyol Products shall under no circumstances be construed to constrain the Releasees from asserting any defense or opposing the certification of any putative class of indirect purchasers of Polyester Polyol Products).  The Releasors shall not, after the Effective Date of this Settlement Agreement, seek to recover against any of the Releasees for any of the Released Claims.

32.    Upon the occurrence of the Effective Date, the Releasors shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, and causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties, and attorneys' fees that Releasees, or anyone of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have against the Releasors, whether known or unknown, relating in any way to the institution, prosecution, or assertion of the Class Actions or the Released Claims.

Payment

33.    Subject to the provisions hereof, and in full, complete, and final settlement of the Class Actions as provided herein, Bayer agrees to pay the Plaintiffs, on behalf of the Settlement Class Members, the Settlement Amount of Eighteen Million Dollars ($18,000,000.00).  Within ten (10) business days after the Execution Date, Bayer shall pay or cause to be paid into the Escrow Account the Settlement Amount.

Determination of Opt-Outs

34.    Within ten (10) business days after the Court-ordered deadline by which members of the Class may exclude themselves from the Settlement Class, Class Counsel shall serve on counsel for Bayer a list identifying all Opt-Outs.  Within ten (10) business days thereafter, Bayer and Class Counsel shall attempt to agree on the net dollar amount reflecting the Defendants' total

10

sales of Polyester Polyol Products to Opt-Outs and the Defendants' total sales of Polyester Polyol

Products to the Class.  In the event of a dispute about the net dollar amount, Bayer and Plaintiffs

agree that the electronic databases provided by Defendants to Class Counsel in the Class Actions

shall control.

35.     Bayer shall, in its sole discretion, have the option to rescind this Settlement

Agreement in its entirety if the Defendants' total sales of Polyester Polyol Products to Opt-Outs

equals or exceeds twenty-five percent (25%) of the Defendants' total sales of Polyester Polyol

Products to the Class.  If and when Bayer exercises this option, any and all amounts then

constituting the Settlement Fund and the Notice and Administration Fund (defined in Paragraph

37 below) shall be returned forthwith to Bayer, except for such disbursements made or incurred

in accordance with Paragraph 37 of this Settlement Agreement.  Notice of such rescission shall

be provided in writing no later than twenty (20) business days after Bayer's receipt of the list of

Opt-Outs from Class Counsel, or ten (10) business days after the Court grants additional

exclusions for any reason.  Bayer's obligations pursuant to this Settlement Agreement shall

cease, including Bayer's obligations to make payments and to cooperate pursuant to Paragraph

47 of this Settlement Agreement, as of the date such notice is sent.

The Settlement Fund

36.     Each Settlement Class Member shall look solely to the Settlement Fund for

settlement and satisfaction, as provided herein, of all claims released by the Releasors pursuant

to Paragraph 31 herein.  Except as provided by order of the Court, no Settlement Class Member

shall have any interest in the Settlement Fund or any portion thereof.

37.     Within ten (10) business days after the transfer of the Settlement Fund, or a

portion thereof, to the Escrow Account, the Escrow Agent may establish a "Notice and

Administration Fund," for disbursements by the Claims Administrator for expenses associated

11

with providing notice of the settlement to the Class, expenses associated with administering the settlement, and any payments and expenses incurred in connection with taxation matters relating to the settlement and this Settlement Agreement. Such amounts shall not be refundable to Bayer in the event the Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective. Court approval shall not be required for disbursements from or distributions to the Notice and Administration Fund in amounts not to exceed $300,000.00 in the aggregate for the purposes set forth in this Paragraph. On the Effective Date, and upon receipt from the Claims Administrator, any balance (including interest) then remaining in the Notice and Administration Fund, less expenses incurred but not paid, shall be transferred by the Escrow Agent to, and deposited in, the Settlement Fund.

38.    The Settlement Amount shall be invested in J.P. Morgan 100% United States Treasury Money Market Funds or United States Government Treasury obligations, provided, however, that the Notice and Administration Fund may be deposited in a federally insured bank account. All interest earned by the Settlement Amount shall become and remain part of the Settlement Fund.

39.    Except as otherwise provided in this Settlement Agreement, the approval of the Court shall be required prior to the distribution of any monies from the Escrow Account.

40.    Bayer shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, use, or administration of the Settlement Fund or the Notice and Administration Fund, including, but not limited to, the costs and expenses of such investment, distribution, or administration, except as otherwise provided in this Settlement Agreement. All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court until

such time as such funds shall be distributed pursuant to the Settlement Agreement and/or further order of the Court.

41.    The Settlement Fund shall be distributed after the Effective Date in accordance with a plan of distribution that Class Counsel shall have previously submitted and the Court shall have previously approved.

42.    Plaintiffs and Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation expenses (including, but not limited to, experts' and consultants' fees and expenses).

43.    Bayer agrees to take no position with respect to any application to the Court by Class Counsel for an award of attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of these Class Actions.

44.    After making the payment described in Paragraph 33 of this Settlement Agreement, Bayer shall have no responsibility whatsoever for the allocation or distribution of the Settlement Amount and shall not be responsible or otherwise liable for any disputes relating to the amount, allocation, or distribution of any fees, costs, or awards.  Further, after making the payment described in Paragraph 33 of this Settlement Agreement, Bayer shall not be liable for any additional payments to the Settlement Class Members or Class Counsel pursuant to this Settlement Agreement.

45.    Bayer agrees not to object, subject to any Order of the Court, to the payment to Class Counsel of approved attorneys' fees, costs, and expenses within ten (10) business days after entry of the Final Judgment and any order awarding attorneys' fees, costs, and expenses. Disbursement of such fees, costs, and expenses shall not be delayed by reason of any appeal of

the Final Judgment; provided, however, if the Court's award of fees, costs, and expenses is

vacated, reversed, or reduced on or as a result of an appeal, Class Counsel shall within ten (10)

business days after receiving written notice from the Court or from Bayer of such vacatur,

reversal, or reduction, make a refund to the Escrow Account in the amount of such vacatur,

reversal, or reduction with interest, and further provided that if Bayer elects to rescind the

Settlement Agreement as described in Paragraph 46 below, Class Counsel shall within ten (10)

business days after receiving notice from Bayer of such rescission, make a refund to the Escrow

Account in the amount of any such fees, costs, and expenses with interest.  The interest rate

applicable to any refund made to the Escrow Account pursuant to this Paragraph shall be the

same interest rate earned by J.P. Morgan 100% United States Treasury Money Market Funds

during the period between the payment of approved attorneys' fees, costs, and expenses and any

such refund.

Rescission if the Settlement Agreement is Not Finally Approved

46.     If the Court declines to approve this Settlement Agreement or any part hereof, or

if such approval is materially modified or set aside on appeal, or if the Court does not enter the

Final Judgment, or if the Court enters the Final Judgment and order and appellate review is

sought and, on such review, such Final Judgment is not affirmed, or if a litigation class is not

certified by the Court in the Class Actions, then Bayer shall, in its sole discretion, have the

option to rescind this Settlement Agreement in its entirety, and any and all amounts constituting

the Settlement Fund (including, but not limited to, any fees, costs, and/or expenses advanced to

Class Counsel pursuant to Paragraph 45 above) and the Notice and Administration Fund shall be

returned forthwith to Bayer, except for any disbursements made or incurred in accordance with

Paragraph 37 of this Settlement Agreement.  The Escrow Agent shall disburse the Settlement

Fund and the Notice and Administration Fund to Bayer in accordance with this Paragraph within

14

fifteen (15) business days after receipt of either (i) written notice signed by counsel for Bayer and Class Counsel stating that this Settlement Agreement has been rescinded, canceled or terminated, or (ii) any order of the Court so directing.  If the Settlement Agreement is rescinded, canceled, or terminated pursuant to this Paragraph, any obligations pursuant to this Settlement Agreement (other than disbursement of the Settlement Fund and the Notice and Administration Fund to Bayer as set forth above) shall cease immediately.  A modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund or any plan of allocation or distribution of the Settlement Fund shall not be deemed a modification of all or part of the terms of this Settlement Agreement or the Final Judgment.

Cooperation Agreement

47.    Bayer's cooperation, as set forth below, shall be limited to the production of information, testimony, and/or Documents that are not protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, or any other applicable privilege or doctrine.  Moreover, nothing herein is intended (a) to prohibit any current or former officer, director, employee, or agent of Bayer from asserting, where appropriate, any Fifth Amendment privilege against self-incrimination or any attorney-client privilege held by him in his individual capacity; (b) to require Bayer to waive or breach any attorney-client privilege that it has now or may in the future have with respect to information, testimony, or Documents; (c) to require the disclosure of information, testimony, and/or Documents reflecting the impressions or thought processes of Bayer's attorneys or other work product protected from disclosure by the attorney work product doctrine or any other applicable privilege; or (d) to require the production or disclosure of any information, testimony, or Documents created by or for government authorities in connection with any investigation(s) relating to Polyester Polyol Products.

a.      Following the expiration of Bayer's rescission rights pursuant to Paragraph 35 of this Settlement Agreement, Bayer shall, to the extent not previously produced, and to the extent such data is readily available, promptly produce transaction data in electronic format for all of Bayer's sales of Polyester Polyol Products in the United States from January 1, 1996 through December 31, 2005.

b.      Following the Effective Date, Bayer shall promptly provide full cooperation to Class Counsel with respect to discovery and gathering evidentiary materials relating to Plaintiffs' claims in the Class Actions, as set forth herein:

(1)      Bayer shall make reasonable efforts to (i) make available for conferences with Class Counsel and/or experts in the United States, upon reasonable notice, current and former directors, officers, and employees of Bayer, including any predecessor entities, who are believed to have knowledge regarding Plaintiffs' claims as alleged in the Class Actions; (ii) provide information to Plaintiffs regarding Plaintiffs' claims as alleged in the Class Actions in personal interviews; (iii) take necessary steps to provide authentication of non-privileged Documents Plaintiffs intend to use at trial; (iv) produce to Plaintiffs, upon reasonable and specific requests, non-privileged Documents relevant to Plaintiffs' claims as alleged in the Class Actions; and (v) prepare declarations and/or affidavits and/or provide testimony, upon reasonable notice and at Bayer's expense, by current and former directors, officers, and employees of Bayer at deposition and/or at trial.  As to former directors, officers, and employees, Bayer shall make every reasonable effort to have such individuals appear after the Effective Date for interviews, depositions, and trial testimony under the same

16

conditions as for the current directors, officers, and employees of Bayer.  Any persons made available under this Paragraph shall be made available at a mutually agreeable time and place.

(2)     Bayer also agrees to produce at trial and/or deposition, or through affidavits or declarations, representatives qualified to establish for admission into evidence any of Bayer's non-privileged Documents produced or to be produced in the litigation, and evidence of Bayer's sales of Polyester Polyol Products to the Class during the Class Period and any other non-privileged Documents of Bayer, and, to the extent possible, any Documents produced by any of Bayer's alleged co-conspirators.

(3)     Bayer also agrees that its counsel will meet as often as is reasonable and necessary with Class Counsel after the Effective Date to identify non-privileged Documents and people relating to the antitrust violations alleged in the Class Actions, and the potential culpability of the Non-Settling Defendants and unnamed co-conspirators.

c.     If final approval is not obtained, Plaintiffs shall, if requested by Bayer to do so, return to Bayer or destroy, and provide Bayer with a written certification by Class Counsel of such destruction, all Documents or other materials provided to Plaintiffs by Bayer in the Class Actions solely pursuant to this Paragraph.  Nothing contained in this Subparagraph shall be construed to require Plaintiffs or their counsel to return any of their work product.

d.     Bayer shall have the right to designate any information, testimony, or Documents produced pursuant to this Paragraph as "Confidential" or "Highly

Confidential" in accordance with the Protective Order.  Any such designations shall survive the termination or rescission of this Settlement Agreement, and shall continue to enjoy the fullest protections offered by the Protective Order.

       e.     All information and materials provided by Bayer to Class Counsel pursuant to this Paragraph 47 regarding Polyester Polyol Products shall be used only in connection with the Class Actions and shall not be used directly or indirectly for any other purpose.  No information provided to Class Counsel pursuant to this Settlement Agreement may be disclosed to or shared with any other person or party (other than co-counsel or experts retained in the course of the Class Actions), including absent Settlement Class Members, Opt-Outs and counsel for Opt-Outs or absent Settlement Class Members, except as part of non-privileged Documents or testimony filed with the Court or produced at a hearing or trial of the Class Actions.  Class Counsel agrees that even if filed with the Court or produced at a hearing or trial, Documents or testimony designated as "Confidential" or "Highly Confidential" in accordance with the Protective Order shall retain the protection of that order until the Court directs otherwise.

48.     Bayer's obligations to cooperate shall not be affected by the Release set forth in Paragraph 31 of this Settlement Agreement.  Bayer's obligations to cooperate shall cease as of the date that final judgment has been rendered in the Class Actions against all Defendants, and expiration of time to appeal therefrom.

Taxes

49.     Class Counsel shall be solely responsible for directing the Claims Administrator to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund.  Further, Class Counsel shall be solely responsible for directing the Escrow Agent to take out of the Settlement Fund, as applicable and when legally

required, any tax payments, including interest and penalties due, on income earned by the Settlement Fund. Escrow Agent shall have no responsibility for any tax reporting, preparation and/or filing or any tax return with respect to any income earned by the Escrow Account. Class Counsel shall be entitled to direct the Escrow Agent to pay customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out their responsibilities as set forth in this Paragraph, from the Escrow Account. Bayer shall have no responsibility to make any tax filings relating to the Settlement Fund and shall have no responsibility to pay tax on any income earned by the Settlement Fund or to pay any taxes on the Settlement Fund unless the settlement is not consummated and the Settlement Fund is returned to Bayer. Other than as specifically set forth herein, Bayer shall have no responsibility for the payment of taxes or tax expenses. If for any reason, for any period of time, Bayer is required to pay taxes on income earned by the Escrow Account, the Escrow Agent shall, upon written instructions from Bayer with notice to Class Counsel, timely pay to Bayer sufficient funds to enable it to pay all taxes (state, federal, or other) on income earned by the Escrow Account.

50.     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Claims Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

51.     The parties to this Settlement Agreement and their counsel shall treat, and shall cause the Claims Administrator to treat, the Escrow Account as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The parties, their counsel, the

Claims Administrator, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account in such manner.  In addition, the Claims Administrator and, as required, the parties shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Claims Administrator timely and properly to prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur.  All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

Miscellaneous

52.     This Settlement Agreement does not settle or compromise any claim other than the Released Claims against the Releasees and the claims released by the Releasees pursuant to Paragraph 32.  All rights of any Settlement Class Member against any person or entity other than the Releasees for sales made by Bayer are specifically reserved by Plaintiffs and the Settlement Class Members.  Sales of Polyester Polyol Products by Bayer in the United States shall remain in the Class Actions against the Non-Settling Defendants and/or any future defendants other than the Releasees as a basis for damage claims, and shall be part of any joint and several liability claims in the Class Actions against the Non-Settling Defendants and/or any future defendants or any persons or entities other than the Releasees.

53.     A Class member's election to participate in or opt out of the Settlement Class in the Class Actions shall not affect that Class member's right to opt out of or participate in any other settlement or litigation class(es) in any other class action.

54.     Plaintiffs waive California Civil Code Section 1542 and similar provisions in other states.  Plaintiffs certify that they are aware of and have read and reviewed the following provisions of California Civil Code Section 1542 ("Section 1542"):  "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."  The provisions of the release set forth above shall apply according to their terms, regardless of the provisions of Section 1542 or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction.  Plaintiffs hereby expressly waive and relinquish any and all rights and benefits existing under (i) Section 1542 or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction and (ii) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above.

55.     This Settlement Agreement constitutes the entire agreement among Plaintiffs and Bayer pertaining to the settlement of the Class Actions against Bayer only and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and Bayer in connection therewith. This Settlement Agreement may be modified or amended only by a writing executed by Class Counsel and Bayer, or their successors in interest, and approved by the Court.

56.     This Settlement Agreement shall be binding upon, and inure to the benefit of the Plaintiffs, the Settlement Class Members and the Releasees and each of their respective successors, and assigns.

57.     The execution by Bayer of this Settlement Agreement shall not be deemed to constitute an admission or concession of any fact, liability or wrongdoing of any nature on the part of Bayer or anyone acting on its behalf, or an admission that the Class Actions may or may

not be certified as a class action for any purpose other than the settlement contemplated by this Settlement Agreement.  Neither this Settlement Agreement, nor any of its provisions, nor evidence of any negotiations or proceedings in pursuance of the settlement set forth in this Settlement Agreement, shall be offered by the Plaintiffs or received against the interests of Bayer in the Class Actions or in any other action or proceeding, as an admission or concession of any fact, liability, jurisdiction or wrongdoing.

58.     All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of New York without regard to its choice of law or conflict of law principles.

59.     Neither Bayer nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Settlement Agreement, or any of its provisions, for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Settlement Agreement.

60.     Nothing expressed or implied in this Settlement Agreement is intended to or shall be construed to confer upon or give any person or entity other than Plaintiffs, Settlement Class Members, Bayer, Releasors, and Releasees any right or remedy under or by reason of this Settlement Agreement.

61.     The United States District Court for the District of Kansas retains exclusive jurisdiction over all matters relating to the implementation and enforcement of the Settlement Agreement.

62.     Where this Settlement Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document

shall be provided by facsimile or letter by overnight delivery at the address reflected on the signature pages.

63.    This Settlement Agreement may be executed in counterparts by Plaintiffs and Bayer, and a facsimile signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

64.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement, subject to Court approval.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized

representatives, have agreed to this Settlement Agreement as of the date first herein written

above.

By: _____

Steven A. Kanner
**Much Shelist Freed Denenberg Ament &**
**Rubenstein, P.C.**
191 North Wacker Drive, Suite 1800
Chicago, IL 60606-1615
(312) 521-2000

By: _____

Phillip A. Proger
**Jones Day**
51 Louisiana Avenue, NW
Washington, DC 20001-1113
(202) 879-3939

**Counsel for Bayer AG, Bayer Corporation,**
**and Bayer MaterialScience LLC (f/k/a**
**Bayer Polymers LLC)**

By: _____

W. Joseph Bruckner
**Lockridge Grindal Nauen PLLP**
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401
(612) 339-6900

By: _____

Roy M. Bell
Jason S. Hartley
**Ross, Dixon & Bell, LLP**
550 West B Street, Suite 400
San Diego, CA 92101
(619) 235-4040

By: _____

Susan G. Kupfer
**Glancy Binkow & Goldberg LLP**
455 Market Street, Suite 1810
San Francisco, CA 94105
(415) 972-8160

**Counsel for Plaintiffs and Class Counsel**

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the date first herein written above.

By: _____

Steven A. Kanner
**Much Shelist Freed Denenberg Ament &
Rubenstein, P.C.**
191 North Wacker Drive, Suite 1800
Chicago, IL 60606-1615
(312) 521-2000

By: _____

W. Joseph Bruckner
**Lockridge Grindal Nauen PLLP**
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401
(612) 339-6900

By: _____

Roy M. Bell
Jason S. Hartley
**Ross, Dixon & Bell, LLP**
550 West B Street, Suite 400
San Diego, CA 92101
(619) 235-4040

By: _____

Susan G. Kupfer
**Glancy Binkow & Goldberg LLP**
455 Market Street, Suite 1810
San Francisco, CA 94105
(415) 972-8160

**Counsel for Plaintiffs and Class Counsel**

By: _____

Phillip A. Proger
**Jones Day**
51 Louisiana Avenue, NW
Washington, DC 20001-1113
(202) 879-3939

**Counsel for Bayer AG, Bayer Corporation,
and Bayer MaterialScience LLC (f/k/a
Bayer Polymers LLC)**

24

IN WITNESS WHEREOF, the parties hereto, through their fully authorized

representatives, have agreed to this Settlement Agreement as of the date first herein written

above.

By: _____

Steven A. Kanner
**Much Shelist Freed Denenberg Ament &
Rubenstein, P.C.**
191 North Wacker Drive, Suite 1800
Chicago, IL 60606-1615
(312) 521-2000

By: _____

Phillip A. Proger
**Jones Day**
51 Louisiana Avenue, NW
Washington, DC 20001-1113
(202) 879-3939

**Counsel for Bayer AG, Bayer Corporation,
and Bayer MaterialScience LLC (f/k/a
Bayer Polymers LLC)**

By: _____

W. Joseph Bruckner
**Lockridge Grindal Nauen PLLP**
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401
(612) 339-6900

By: _____

Roy M. Bell
Jason S. Hartley
**Ross, Dixon & Bell, LLP**
550 West B Street, Suite 400
San Diego, CA 92101
(619) 235-4040

By: _____

Susan G. Kupfer
**Glancy Binkow & Goldberg LLP**
455 Market Street, Suite 1810
San Francisco, CA 94105
(415) 972-8160

**Counsel for Plaintiffs and Class Counsel**

24

IN WITNESS WHEREOF, the parties hereto, through their fully authorized

representatives, have agreed to this Settlement Agreement as of the date first herein written

above.

By: _____

Steven A. Kanner
**Much Shelist Freed Denenberg Ament &**
**Rubenstein, P.C.**
191 North Wacker Drive, Suite 1800
Chicago, IL 60606-1615
(312) 521-2000

By: _____

W. Joseph Bruckner
**Lockridge Grindal Nauen PLLP**
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401
(612) 339-6900

By: _____

Roy M. Bell
Jason S. Hartley
**Ross, Dixon & Bell, LLP**
550 West B Street, Suite 400
San Diego, CA 92101
(619) 235-4040

By: _~Susan~ _y_ _Kupfer_

Susan G. Kupfer
**Glancy Binkow & Goldberg LLP**
455 Market Street, Suite 1810
San Francisco, CA 94105
(415) 972-8160

**Counsel for Plaintiffs and Class Counsel**

By: _____

Phillip A. Proger
**Jones Day**
51 Louisiana Avenue, NW
Washington, DC 20001-1113
(202) 879-3939

**Counsel for Bayer AG, Bayer Corporation,**
**and Bayer MaterialScience LLC (f/k/a**
**Bayer Polymers LLC)**

24

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the date first herein written above.

By: _____

Steven A. Kanner
**Much Shelist Freed Denenberg Ament &**
**Rubenstein, P.C.**
191 North Wacker Drive, Suite 1800
Chicago, IL 60606-1615
(312) 521-2000

By: _____

W. Joseph Bruckner
**Lockridge Grindal Nauen PLLP**
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401
(612) 339-6900

By: _____

Roy M. Bell
Jason S. Hartley
**Ross, Dixon & Bell, LLP**
550 West B Street, Suite 400
San Diego, CA 92101
(619) 235-4040

By: _____

Susan G. Kupfer
**Glancy Binkow & Goldberg LLP**
455 Market Street, Suite 1810
San Francisco, CA 94105
(415) 972-8160

**Counsel for Plaintiffs and Class Counsel**

By: _Phillip A. Proger /jx_

Phillip A. Proger
**Jones Day**
51 Louisiana Avenue, NW
Washington, DC 20001-1113
(202) 879-3939

**Counsel for Bayer AG, Bayer Corporation,**
**and Bayer MaterialScience LLC (f/k/a**
**Bayer Polymers LLC)**

24