**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

IN RE: URETHANE
ANTITRUST LITIGATION

                                 No. 04-md-1616-JWL-DJW

This Order Relates to:
Polyether Polyol Cases

_____

**MEMORANDUM AND ORDER**

      Pending before the Court is the Joint Motion to Compel Responses to Their First Set of Discovery Requests (doc. 341) filed by various Defendants. For the reasons stated below, the Motion will be granted in part and denied in part.

**Background**

      In this antitrust suit, Plaintiffs allege a conspiracy among Defendants to fix, raise, maintain or stabilize prices and to allocate customers and markets for polyether polyol products. Plaintiffs purport to bring this action on behalf of themselves and all persons or entities who purchased polyether polyol products in the United States from January 1, 1999 to present.

      On November 15, 2005, the Court entered a scheduling order for the polyether polyol cases.[1] Consistent with this Court's treatment of the *polyester* polyol cases, the scheduling order presumes a bifurcated discovery process that permits discovery on issues related to class certification in an initial phase and subsequently permits discovery on the underlying alleged conspiracy in the second phase. The polyether polyol cases currently are in the precertification discovery phase and the deadline before which Plaintiffs must file a Motion for Class Certification recently was extended.[2]

_____

      [1]Scheduling Order No. 2, Polyether Polyol Cases (doc. 160).

      [2]The schedule for class certification discovery, filings and hearings in the *Polyether* Polyol cases was revised on May 4, 2006 (doc. 330) and again on June 15, 2006 (doc. 384).

**Discovery Requests and Responses at Issue**

The pending Motion to Compel seeks documents and information requested within the following three pleadings:

1.  Defendants'[3] First Request for Production of Documents Related to Class Certification Directed to All Plaintiffs;

2.  Huntsman Defendants' First Set of Interrogatories Related to Class Certification Directed to All Plaintiffs; and

3.  Bayer Defendants' First Set of Interrogatories Related to Class Certification Directed to All Plaintiffs.

As a preliminary matter, the Court notes that the Bayer Defendants, who recently have settled with Plaintiffs, are not a party to the pending Motion to Compel.  Notwithstanding this fact, the Motion to Compel seeks information requested by the Bayer Defendants in their First Set of Interrogatories to Plaintiffs.  Although the parties have not raised this rather unique issue in their pleadings, the Court finds the non-Bayer Defendants do not have standing to request the stated relief.

Federal Rule of Civil Procedure 37(a)(2)(A) provides that "any other party" may move to compel the automatic disclosures required of all litigants by Rule 26(a). Only "the discovering party," however, may bring a motion to compel a response to specific interrogatories, requests for production, and the like.[4]  In applying this rule, the Court finds the non-Bayer Defendants do not have had standing to move to compel answers to the Bayer Defendants' interrogatories.[5]  Thus, the Court will deny the Motion to Compel with respect to the Bayer Defendants' discovery requests.

---

[3]"Defendants" include not only BASF, Dow Chemical, all Huntsman Defendants and Lyondell Chemical, but all Bayer Defendants as well.

[4]Fed. R. Civ. P. 37(a)(2)(B).

[5]*Payne v. Exxon Corp.*, 121 F.3d 503, 510 (9th Cir. 1997) (codefendant did not have standing to move to compel answers to defendant's discovery requests).

In light of this determination, the following discovery requests by Defendants, as summarized by the Court, remain disputed:

**Defendants' First Request 5**: Corporate policies, practices and procedures for making decisions regarding the purchase or sale of any polyether polyol products.

**Defendants' First Request 12**: Documents concerning the price, volume, grade or form of polyether polyol products purchased by you, including documents identifying the purpose for which you used polyether polyol products.

**Defendants' First Request 13**: Documents concerning the purposes for which you use or used polyether polyol products and documents that show how polyether polyol products are used in the production of your products, including the amount of polyether polyol used in your products.

**Defendants' First Request 14**: Documents concerning communications you had with manufacturers or distributors of end-products in which polyether polyol products are used.

**Defendants' First Request 16**: Documents concerning changes in supply, demand, pricing and discounting for polyether polyol products.

**Defendants' First Request 19/Huntsman Defendants' First Interrogatory 2**: Description of, and/or documents showing, the nature of your business, including gross volume in dollars of your sales or products that incorporate polyether polyol products and the customers to whom you sell such products.

**Defendants' First Request 27**: Each document concerning your investigation into the allegations included in your Consolidated Amended Complaint.

**Defendants' First Request 28**: Each document concerning your effort to discovery the conspiracy alleged in your Consolidated Amended Complaint.

Given the specific objections to this discovery lodged by Plaintiffs, these requests can be divided into two categories for further discussion by the Court. With regard to Requests 5, 12-14, 16, 19 and Huntsmans' First Interrogatory 2 ("Category One"), Plaintiffs object to production on grounds that the requests are (1) vague and overbroad; (2) not relevant to class certification issues; and (3) improperly seek downstream information regarding the manufacture, sale and use of products

3

by Plaintiffs.  With regard to Requests 27 and 28 ("Category Two"), Plaintiffs object to production

on grounds that the requests are (1) vague and overbroad; (2) seek documents not related to class

certification issues; and (3) seek documents protected by the work-product doctrine and the attorney-

client privilege.  The Court will address each of these objections by category of request.

**Discussion**

**A.**   **Category One:  Document Requests 5, 12-14, 16, 19 and Huntsmans' Interrogatory 2**

   **1.**   **Vague and Overbroad**

Although Plaintiffs object to the document requests in Category One on grounds that the

requests are generally vague and overbroad, they fail to explain the basis for these objections in

either their initial responses or the briefing associated with this Motion.[6]  The party objecting to

discovery as vague or overbroad has the burden to show such vagueness or overbreadth.[7]  With

regard to ambiguity, a party responding to discovery requests "should exercise reason and common

sense to attribute ordinary definitions to terms and phrases utilized in [discovery requests]."[8]

Here, the Court finds Plaintiffs have failed to meet their burden to show how these requests

are vague or overbroad.  Accordingly, the Court will overrule Plaintiffs' objections on these grounds.

---

[6]Plaintiffs' argument that the discovery requests improperly seek downstream data could be construed by the Court to as grounds for an objection based on overbreadth, but the parties brief this issue – and the Court correspondingly addresses this issue – as a separate and distinct objection.

[7]*McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 694 (D. Kan. 2000) (citing *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 310 (D. Kan. 1996)).

[8]*Id.*

### 2. Relevancy to Class Certification

Fed. R. Civ. P. 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action," and that "[t]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Subsection (b)(2)(iii) of this Rule, however, dictates that discovery shall be limited by the Court "if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

At this stage of the case, the only question is whether any of the proposed discovery is relevant to a class certification issue. This is because the district court judge has established a bifurcated discovery process that permits – at least in this phase of the lawsuit – discovery on issues related to class certification only. Notably, discovery on class certification is not a matter of ascertaining whether Plaintiffs will prevail on the merits, but whether the moving party can establish that the discovery is pertinent to the following Fed. R. Civ. P. 23 class certification requirements: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately protect the interests of the class; (5) the predominance of common questions of fact and law; and (6) the superiority of resolution by class action as compared to other methods for adjudicating the controversy. Thus, the issue presented here is whether Requests 5, 12-14, 16, 19 and Interrogatory 2 seek information that is potentially relevant to one or more of these class certification issues.

Before addressing the individual requests, the Court takes note of two important considerations. First, this is not the time to determine whether a class will be certified. Second, and most importantly, this Court will not be the one ruling on class certification. Therefore, it is particularly inappropriate for this Court to limit discovery based on this Court's determination of the proper scope of a potential class. It is this Court's duty to permit the parties to give the district court all information that the district court might find relevant in making a class action determination.

### a.    Request 16

Request 16 seeks all documents concerning changes in supply, demand, pricing and discounting for polyether polyol products, including information relating to Plaintiffs' reformulation and sales of polyether polyol products and/or end-products containing polyether polyol products. Apparently recognizing the potential relevance of such information, Plaintiffs have been willing to produce information regarding changes in supply, demand, pricing and discounting for their own *purchases* of polyether polyol products.  Plaintiffs have refused, however, to produce responsive information relating to their reformulation and sales of polyether polyol products and/or end-products containing polyether polyol products.  Defendants contend all responsive documents are relevant to class certification issues.  The Court agrees.

The characteristics and complications of the relevant market may be material to determining whether a class should be certified.[9]  More specifically, documents concerning changes in supply,

---

[9]*See, e.g., In re Linerboard Antitrust Litig.,* 305 F.3d 145, 153 (3d Cir. 2002) (granting class certification after considering various "industry characteristics," including market power, structure, geographical overlap, and inelastic demand); *Sample v. Monsanto Co.*, 218 F.R.D. 644, 650-51 (E.D. Mo. 2003) (denying class certification where the relevant product market was highly individualized and the product was not offered at a uniform price); *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 154 (N.D. Cal. 1991) (denying class certification where, *inter alia*, there were significant differences in the product market for purchasers of different sizes and types).

demand, pricing and discounting for polyether polyol products may evidence "industry characteristics" and/or also may demonstrate whether there are significant differences in the product market for different purchasers, such that individual issues overwhelm any common issues and render class certification inappropriate.  Moreover, as participants in the polyether polyol products market, Plaintiffs likely possess documents concerning changes in market conditions that do not directly relate to either a particular purchase or sale by Plaintiffs.  The fact that there may be other information, outside Plaintiffs' possession, that also provides evidence of the nature of the polyether polyol products market does not relieve Plaintiffs of their obligation to fully respond to Defendants' relevant requests.[10]

Plaintiffs erroneously rely on the cases of *In re Vitamins Antitrust Litigation*[11] and *In re Automotive Refinishing Paint Antitrust Litigation* [12] to support their proposition that publicly available data relating to the market should be adequate for Defendants and render unnecessary the requested discovery.  First, neither case addressed whether the contested discovery was relevant to class certification issues.  *Vitamins* involved discovery for the defense against individual opt-out damage claims, and *Auto Paint* involved discovery principally related to the plaintiffs' damages after class certification had been resolved.[13]  In fact, the court in *Auto Paint* expressly distinguished its denial of a motion to compel discovery on the grounds that "[c]lass certification is not an issue

---

[10]*See Orleman v. Jumpking, Inc.*, Civ. A. No. 99-2522-CM, 2000 WL 1114849, at *5 (D. Kan. July 11, 2000) (where information responsive to a discovery request is in a party's possession, "it is obligated to produce the information" whether or not the requesting party has obtained or could obtain the information from an alternative source.).

[11]198 F.R.D. 296 (D.D.C. 2000) ("*Vitamins*").

[12]No. MDL 1426, 2006 WL 1479819 (E.D. Pa. May 26, 2006) ("*Auto Paint*").

[13]*See Vitamins*, 198 F.R.D. at 299; *Auto Paint*, 2006 WL 1479819, at *8.

here."[14]

Second, the *Vitamins* court did not find that the existence of publicly available data rendered the plaintiffs' individual information irrelevant. Indeed, the court concluded that information relating to the plaintiffs' use, manufacture, sale, marketing, distribution and supply of vitamins and vitamin-containing products was at least "marginally relevant," and denied the discovery only because it found the requests would impose an undue burden on the plaintiffs.[15]

Simply put, the Court finds that responsive documents concerning changes in supply, demand, pricing and discounting for polyether polyol products – whether related to Plaintiffs' particular purchases or sales, or to the market in general – evidence the nature of the polyether polyol products market. Development of basic issues such as this one may be necessary to establish or refute whether class members' claims share common questions of law and fact and whether named Plaintiffs' claims are typical of those of other class members. For these reasons, Plaintiffs' objection to Request No. 16 based on relevancy to class certification is overruled.

### b.    Requests 5 and 12-14

The discovery requests in this subsection seek information on the purpose for which Plaintiffs used the polyether polyol products (Requests 12-13); Plaintiffs' communications about polyether polyol products with manufacturers of end-products (Request 14); and Plaintiffs' policies, practices, and procedures regarding sales of polyether polyol products (Request 5). Defendants maintain that all of these requests relate to the general nature of polyether polyol products, whether Plaintiffs treated these products as fungible and substitutable, and whether there are substitutes for such

---

[14]*Auto Paint*, 2006 WL 1479819, at *8 n.11.

[15]*Vitamins*, 198 F.R.D. at 300-01.

products. Defendants further maintain that the issues of fungibility and substitutability of polyether polyol products are relevant to class certification issues.  The Court agrees.

For example, in the case of *In re Linerboard Antitrust Litigation*,[16] the court considered "the fungible nature of the products" and the "lack of a substitute" in determining the propriety of class certification.  In *Kenett Corp. v. Mass. Furniture and Piano Movers Ass'n., Inc.*,[17] the court denied class certification where the action did not appear to involve a uniform supra-competitive price for a fungible product.  Moreover, the fungibility and substitutability of polyether polyol products may affect whether Plaintiffs will be able to establish that the alleged conspiracy had a class-wide impact.[18]  Accordingly, the Court finds that the fungibility and substitutability of polyether polyol products – and thus Requests 5, 12-14, 19 and Huntsmans' Interrogatory 2 – are relevant to a determination on class certification.

c.      **Request 19 and Huntsmans' Interrogatory 2**

These discovery requests seek information and documents regarding Plaintiffs' sales volume and the customers to whom Plaintiffs sell.  Defendants assert these requests relate to Plaintiffs' buying power, elasticity of demand, and leverage, which is information relevant to class certification issues.  Again, the Court agrees.

---

[16]305 F.3d at 153.

[17]101 F.R.D. 313, 316 (D. Mass. 1984).

[18]*See, e.g., Windham v. Am. Brands, Inc.*, 565 F.2d 59, 62-65 (4th Cir. 1977) (affirming denial of class certification in an antitrust action where the relevant product [tobacco] came in a variety of grades and was non-fungible); *Alaska as Parens Patriae v. Suburban Propane Gas Corp.*, No. A93-291 CIV (JWS), 1995 WL 441987, at *8 (D. Alaska Jan. 12, 1995) (denying class certification where the relevant product had varying uses and some putative class members had available substitutes for some of the uses).

A class action may not be suitable where purchasers with different buying power and elasticity of demand have varying degrees of leverage over the defendants.[19] If, for example, the representative Plaintiffs' purchasing power in this case diverges from those in the putative class – as evidenced by their volume of sales of polyether polyol products or end-products using polyether polyol products – their claims may be atypical, their representation of class members with significantly different leverage may be inadequate, and/or individual issues concerning impact and damages may predominate.

In addition, Seegott Holdings' status as a distributor of polyether polyol products may set it apart from many of the other putative class members who purchased such products for their own manufacturing purposes.[20] Seegott Holdings' distinct status heightens the necessity for Defendants to determine whether the representative Plaintiffs have typical claims and adequately represent the class, and whether, with such a diverse putative class, common questions are likely to predominate.

Plaintiffs' attempt to distinguish *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*[21] fails. As Plaintiffs acknowledge, the court in *Valley Drug* found that discovery relating to plaintiffs' purchases was relevant to determining whether there was a conflict between the named plaintiffs and class members.[22] The court further found that where class representatives and putative class

---

[19]*See, e.g., Burkhalter Travel Agency*, 141 F.R.D. at 154 (denying class certification because, *inter alia*, "defendants price nuts in different ways and purchasers have varying degrees of leverage over defendants").

[20]*See Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1195 (11th Cir. 2003) (holding that the antitrust claims of disparate groups, distributors of vitamins and producers of end-products incorporating vitamins, could not be mixed together where the interests of the class representatives and some class members were "significantly different").

[21]*Id.*

[22]*Id.*

10

members have significantly different interests, class certification is not appropriate: "the claims of these disparate groups cannot be mixed together under Rule 23(a) where the economic reality of the situation leads some class members to have economic interests that are significantly different from – and potentially antagonistic to – the named representatives purporting to represent them."[23]

Plaintiffs' reliance on *Vitamins* is similarly misplaced. In *Vitamins*, defendants sought plaintiffs' pricing information in order to determine the prices that each opt-out plaintiff would have paid had no conspiracy existed for purposes of establishing damages; the court rejected this method of determining damages and, therefore, denied the discovery.[24] Unlike the defendants in *Vitamins*, Defendants here do not seek pricing information. Rather, they seek the volume of Plaintiffs' sales, the percentage of the end-product comprised of polyether polyol products and the availability of substitutes – all of which directly relate to the Plaintiffs' leverage over Defendants and, thus, to whether Plaintiffs' claims are typical and whether Plaintiffs will be adequate class representatives.

For these reasons, the Court finds that Defendants' Request 19 and Huntsmans' First Interrogatory 2 are relevant to a determination on class certification. The next question, then, is whether the benefit to Defendants of having this data available exceeds the burden to Plaintiffs of producing this information. Upon review of the pleadings filed in conjunction with this motion, the Court finds Plaintiffs have failed to support a claim of undue burden with respect to producing the information and documents requested. As the parties asserting undue burden, Plaintiffs have the burden to support their objection, by showing not only undue burden or expense, but that the burden

---

[23]*Id.*

[24]198 F.R.D. at 301.

or expense is unreasonable in light of the benefits to be secured from the discovery.[25]  This typically requires providing an affidavit or other evidentiary proof of the expense or time involved in responding to the discovery request.[26]  Plaintiffs have made only a conclusory allegation of burdensomeness, and have provided no detailed explanation, affidavit, or other evidence which demonstrates that providing this information would be burdensome, time-consuming, or expensive. The Court will therefore grant the Motion to Compel as to this interrogatory.

### 3.    Downstream Data

Plaintiffs contend that the information requested by Defendants is not discoverable because discovery of downstream data in an antitrust case such as this is prohibited.  The Court disagrees.

The appropriate starting place for a discussion about downstream data is the United States Supreme Court case of *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*[27]  In *Hanover Shoe*, the United States Supreme Court rejected what has been termed "the pass-on defense," holding that antitrust defendants may not avoid liability for overcharges on the grounds that direct purchasers were able to pass on any additional costs to their customers.[28]  Nine years later, in the case of *Illinois Brick Co. v. Illinois*, the United States Supreme Court revisited the pass-on theory and held that, just as antitrust defendants cannot reduce the direct purchaser's damages by establishing that the purchaser passed on their additional costs to their customers, neither can an indirect purchaser

---

[25]*Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 380 (D. Kan. 2005); *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 666 (D. Kan. 2004).

[26]*Cardenas*, 232 F.R.D. at 380; *Swackhammer*, 225 F.R.D. at 666.

[27]392 U.S. 481 (1968).

[28]*Id.* at 492-94.

establish standing by demonstrating that the direct purchaser passed on the additional costs.[29]

Significantly, however, neither *Hanover Shoe* nor *Illinois Brick* holds that downstream data is irrelevant or non-discoverable. The general rule gleaned from *Hanover Shoe* and its progeny is that downstream data cannot be used to support a pass-on defense; that is, the defense that the plaintiff has no damages when he passed the overcharge on down the production line.[30]

Nor can it be said that any of the courts interpreting *Hanover Shoe* hold downstream data irrelevant as a general rule. For example, in *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, downstream discovery was permitted as a means to determine whether class certification prerequisites were satisfied.[31] In *In re Vitamins Antitrust Litigation*[32] – a case cited by Plaintiffs in their brief in support of a wholesale prohibition on downstream discovery – the court explicitly stated that where a party does not seek to assert a pass-on defense, *Hanover Shoe* and its progeny do not render downstream data irrelevant.[33] Thus, the *Vitamins* court did not prohibit the discovery requests at issue because they sought purported downstream information. Rather, it analyzed whether the requested discovery was relevant to the issues of the case (finding that it was relevant), then considered whether the burden of production outweighed its benefits. The court ultimately denied the defendants' motion to compel because plaintiffs demonstrated that production would have

---

[29]431 U.S. at 728-29.

[30]*Id.*

[31]350 F.3d 1181, 11191 (11th Cir.2003).

[32]198 F.R.D. 296 (D.D.C. 2000) ("*Vitamins*").

[33]198 F.R.D. at 299.

imposed an undue burden on them.[34] Thus, *Vitamins* establishes that the central issue is determining whether the requested discovery is relevant to class certification, and how the degree of relevance compares to the degree of burden.

Moreover, although Plaintiffs quote *In re Pressure Sensitive Labelstock*[35] for the proposition that "courts generally disallow discovery of downstream sales data in cases such as this one," the Court finds Plaintiffs have cited the quote out of context. When read with the preceding sentence omitted by Plaintiffs, *Labelstock* instead describes a ban on discovery of downstream data in the "cases such as this one" where a pass-on defense has been asserted: "In general, a price fixing conspiracy claim may not be defended on the ground that the purchaser passed on the higher cost of the product to its customers. Consequently, courts generally disallow discovery of downstream sales data in cases such as this one."  The *Labelstock* court went on to state such discovery may be permissible when specific issues are raised regarding the named plaintiffs' adequacy as representative.[36]

Finally, Plaintiffs' reliance on *In re Automotive Refinishing Paint Antitrust Litigation*[37] and *In Re Plastic Additives Antitrust Litigation*[38] is also misplaced.  In *Auto Paint*, the court specifically held that Plaintiffs' activities are irrelevant *in proving or disproving the underlying charge*; the court

---

[34]*Id.* at 299-300.

[35]226 F.R.D. 492, 497 (M.D. Pa. 2005).

[36]*Id.* at 498 n.2.

[37]No. MDL 1426, 2006 WL 1479819 (E.D. Pa. May 26, 2006) ("*Auto Paint*").

[38]Civ. A. No. 03-2038, 2004 WL 2743591 (E.D. Pa. Nov. 29, 2004).

Case 2:04-md-01616-JWL-JPO   Document 423   Filed 08/25/06   Page 15 of 17


did not address whether Plaintiffs' activities would be material to class certification issues.[39] Similarly, the court in *Plastic Additives* did not impose a blanket prohibition on downstream discovery. In fact, the court denied the plaintiffs' motion to preclude the defendants from ever serving such discovery, ruling that it would not "*per se* preclude" defendants from seeking discovery of such downstream information later in the case.[40]

In sum, the Court finds the cases cited by Plaintiffs stand for the proposition that discovery of downstream data is not relevant to proving or disproving an underlying claim of antitrust violations. Notably, however, the question these cases address is a distinctly separate question from the issue of whether discovery of downstream data is appropriate in cases where the discovery sought is relevant to class certification issues.

Here, Defendants are not seeking discovery of data in order to assert a pass-on defense; rather, Defendants contend that this information is relevant to the determination of class certification. Defendants' requests relate to policies regarding sales and purchasing decisions, information regarding purchases and the purpose for which the product is used, communications with manufacturers or distributors of polyether polyol end-products, information regarding product market conditions, sales volume and identification of customers. Defendant maintains this discovery bears on whether Plaintiffs' claims are typical of those of the class they seek to represent, whether common issues predominate in this action, and whether Plaintiffs will be adequate representatives. The Court has made a finding, *supra*, that the requests at issue seek information and documents that directly bears on class certification issues – including the predominance of common questions and

---

[39] 2006 WL 1479819, at *7.

[40] 2004 WL 2743591, at *19.

the typicality of Plaintiffs' claims.  For these reasons, the Court overrules Plaintiffs' objections that the information requested by Defendants is not discoverable because discovery of downstream data in an antitrust case such as this is prohibited.

Again, this Court will not be the one ruling on class certification. Therefore, it is particularly inappropriate for this Court to limit discovery based on this Court's determination of the proper scope of a potential class. It is this Court's duty to permit the parties to give the district court all information that the district court might find relevant in making a class action determination.

**B.**     **Category Two:  Document Requests 27 and 28**

Defendants' Request 27 seeks documents concerning Plaintiffs' investigation into the allegations included in the Complaint. Defendants' Request 28 seeks documents concerning Plaintiff's effort to discover the alleged conspiracy.   Plaintiffs object to production of documents responsive to these requests on grounds that they are (1) vague and overbroad; (2) seek documents not related to class certification issues; and (3) seek documents protected by the work-product doctrine and the attorney-client privilege.

Upon consideration of the discovery requests at issue, as well as the requirements necessary to establish class certification, the Court finds Requests 27 and 28 are premature; in other words, that the requests relate to the merits of the litigation and not class certification issues, and thus they improperly attempt to circumvent the Court's bifurcation of discovery.   For these reasons, Defendants' Motion to Compel for these two discovery requests will be denied.

Accordingly, and for the reasons set forth above, it is hereby ordered that

Defendants' Motion to Compel (doc. 341) is granted in part and denied in part.  Defendants' Motion is granted to the extent that Plaintiffs shall be required to respond to Defendants' First Set

16

of Discovery Requests 5, 12-14, 16, 19 and Huntsmans' First Interrogatory 2.  Defendants' Motion is denied to the extent that Plaintiffs shall not be required to respond to Defendants First Set of Discovery Requests 27 and 28 or Bayer Defendants' First Set of Interrogatories 1-4.

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 25th day of August, 2006.


_____          s/ David J. Waxse_____
                                         David J. Waxse
                                         United States Magistrate Judge

cc:     All counsel and *pro se* parties

17