# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**IN RE: URETHANE ANTITRUST**
**LITIGATION**                                    No. 04-MD-1616-JWL

**This Order Relates to**
**the Polyester Polyol Cases**

_____

## MEMORANDUM AND ORDER

This multidistrict litigation consists of numerous putative class action lawsuits arising from an alleged antitrust price fixing conspiracy among urethane chemical producers. Within this proceeding the court has consolidated two separate sets of cases—the Polyester Polyol cases and the Polyether Polyol cases. This matter is currently before the court on the Polyester Polyol Plaintiffs' Second Motion for Leave to Amend Consolidated Class Action Complaint (doc. #497). By way of this motion, plaintiffs seek to amend their complaint to expand the proposed class period, to modify the relevant product definition, and to remove as named plaintiffs those entities that have withdrawn as class representatives. For the reasons explained below, the motion is granted in part and denied in part as follows: it is denied as to plaintiffs' request to expand the class period; it is granted as to the uncontested amendments insofar as plaintiffs seek to modify the product definition to be consistent with the court's class certification order; it is denied as to the contested amendments relating to the relevant product definition; and it is granted as unopposed as to the removal of certain named plaintiffs.

## BACKGROUND

On August 23, 2004, the Judicial Panel on Multidistrict Litigation (JPML) entered an order transferring numerous urethane antitrust cases to this court. The court held the initial scheduling conference in this MDL proceeding on October 15, 2004. At that time, the court appointed lead and liaison counsel for the parties. In accordance with the first scheduling order in this case, plaintiffs filed the complaint which currently governs this case, which is their Consolidated Class Action Complaint (doc. #39), on November 19, 2004.

In early 2005, the parties commenced discovery related to class certification issues. On September 23, 2005, plaintiffs filed a motion seeking leave to amend their complaint to redefine the relevant product definition, to add defendants, to expand the class period, and to assert further factual detail regarding the alleged price-fixing conspiracy. On November 10, 2005, the court entered an order denying this motion. *See generally In re Urethane Antitrust Litig.*, 232 F.R.D. 681 (D. Kan. 2005). The denial was premised largely on the fact that the primary amendment sought, which was changing the relevant product definition, would have allowed the claims in this case to encroach on the claims in the Polyether Polyol cases. *Id.* at 684-86. The court denied the remaining aspects of the motion (to add defendants, to expand the class period, and to assert additional factual allegations) on the grounds that it appeared those proposed amendments were intertwined with plaintiffs' proposed expanded relevant product definition. *Id.* at 686-87. The court stated as follows:

> the extent to which plaintiffs may still wish to amend their complaint to
> expand the class period and make additional factual allegations is not clear to
> the court. Accordingly, the court will deny these aspects of plaintiffs' motion

> to amend, but it will do so without prejudice to plaintiffs filing another motion
> to amend their complaint to raise these issues if they still wish to do so after
> reviewing the court's ruling regarding the other aspects of plaintiffs' proposed
> amended complaint.

*Id.*  Plaintiffs did not at that time file a follow-up motion for leave to amend with respect to the aspects of their proposed amendment which the court had understood to be intertwined with their then-proposed modified product definition.

In the year that followed, plaintiffs settled their claims against the Bayer defendants and the court certified a class as to plaintiffs' claims against the remaining defendants, Uniroyal Chemical Company, Inc. and Chemtura Corporation f/k/a Crompton Corporation (collectively, Chemtura).  Specifically, plaintiffs filed their motion for class certification on December 2, 2005; on June 13, 2006, the court issued an order preliminarily approving the Bayer settlement; after a protracted briefing schedule on the motion for class certification which spanned more than six months, the court held the class certification hearing on July 24, 2006; on August 16, 2006, the court entered an order certifying a class with respect to plaintiffs' claims against Chemtura; and, on October 16, 2006, the court entered an order approving plaintiffs' settlement with the Bayer defendants.  On October 5, 2006, the court entered Scheduling Order No. 6, commencing merits discovery.  After the Tenth Circuit denied Chemtura's motion for leave to take an interlocutory appeal, the court entered an order directing that class notice be disseminated in February of 2007.

On February 6, 2007, plaintiffs filed the current motion to amend their complaint.  In this motion, they seek to amend their complaint in essentially three different ways.  First, the

3

only substantive modification intended is extending the class period back by two and one-half years to start on July 1, 1995, rather than January 1, 1998.  Second, they seek to modify the product definition in accordance with the court's order certifying a class in this case.  Third, they seek to remove as named plaintiffs those entities that have withdrawn as class representatives.

## DISCUSSION

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires."  The decision whether to grant leave to amend is within the discretion of the district court.  *Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001).  The court may justifiably refuse leave to amend on the grounds of undue delay, prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of the proposed amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Additionally, as explained below, plaintiffs' motion would require the extension of various scheduling order deadlines in this case.  To that extent, plaintiffs must show good cause for the court to extend the deadlines implicated by the proposed amendment.  *See* Fed. R. Civ. P. 16(b); *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (motion to amend filed after the scheduling order deadline is also governed by Rule 16(b)'s good cause standard); *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154-55 (1st Cir. 2004) (same); *Grochowski v. Phoenix Constr.*, 318 P.3d 80, 86 (2d Cir. 2003)

(same); *S&W Enters., L.L.C. v. SouthTrust Bank, N.A.*, 315 F.3d 533, 535 (5th Cir. 2003) (same); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (same).

The court will first address plaintiffs' request to expand the class period back to start on July 1, 1995. Chemtura urges the court to deny this aspect of plaintiff's proposed amendment essentially on grounds of undue delay and prejudice. The court may deny plaintiffs leave to amend on the grounds of undue delay. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006). Lateness itself does not justify denial of the amendment, but "[a] party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time." *Id.* (quotation omitted). The longer the delay the more likely the delay will impose burdens on the opponent and the court, thus providing a sufficient reason for the court to withhold permission to amend. *Id.* The court must focus primarily on the reasons for the delay. *Id.* Denial of leave to amend is appropriate where the plaintiff has no adequate explanation for the delay. *Id.*

Plaintiffs must also demonstrate good cause for the court to extend the scheduling order deadline for amending their complaint. The last such deadline was approximately two and one-half years ago on November 19, 2004. *See* Scheduling Order No. 1 (doc. #37), at 1. Additionally, although plaintiffs summarily contend that "[t]he proposed amendment to expand the Class Period does not affect class certification," the court could not disagree more. The court's analysis concerning whether common questions would predominate the issue of antitrust impact was based on expert opinions which, in turn, were based in part on

analyses of industry pricing during the relevant time period.  In order for the court to certify a class for the expanded class period, plaintiffs would similarly have to show that the standards for class certification are met based on industry behavior during the 1995-1997 time period.  Consequently, plaintiffs must also demonstrate good cause for the court to extend the scheduling order deadlines related to the class certification process.  *See* Scheduling Order No. 5 (doc. #129), at 1-2 (setting deadline of December 2, 2005, for plaintiffs' motion for class certification; March 13, 2006, for defendants' opposition; and June 2, 2006, for plaintiffs' reply).  The "good cause" standard focuses primarily on the diligence (or lack thereof) of the moving party.  *See O'Connell*, 357 F.3d at 154-55; *Grochowski*, 318 F.3d at 86; Fed. R. Civ. P. 16 advisory committee notes to the 1983 amendments (good cause standard means that the deadline "cannot reasonably be met despite the diligence of the party seeking the extension").

In this case, plaintiffs have not offered an adequate explanation for the delay by showing that they were diligent in seeking to expand the proposed class period.  In plaintiffs' motion to amend in 2005, they sought to amend their complaint in the same manner.  On November 10, 2005, the court denied that aspect of the motion without prejudice to plaintiffs filing another motion renewing that issue if they wished to do so after reviewing the court's ruling.  Notably, they chose not to renew their motion at that time.  Instead, they waited until after the court approved the Bayer settlement and certified the class as to plaintiffs' claims against Chemtura.  Their motion is predicated on "documentary evidence [which] confirms previously anecdotal evidence of coordinated price increases among the defendants

6

beginning in 1995." As Chemtura points out, however, in support of plaintiffs' motion they rely on the same documents they attached to their motion to amend in 2005. Plaintiffs contend that the delay is justified because they chose to "focus[] on the class certification process" and "also became engaged in and did not want to delay settlement negotiations with the Bayer Defendants." In plaintiffs' reply brief, they once again state that they "did not want to delay class certification or the ongoing settlement negotiations with the Bayer defendants." The court is highly unimpressed with this proffered justification in light of the fact that the court has appointed four law firms as co-lead counsel and another firm as liaison counsel for the plaintiffs, all of which collectively employ hundreds of attorneys. Thus, the belatedness of the renewed request to expand the class period is not attributable to a lack of ability or manpower. Instead, the court is confronted with a situation in which plaintiffs made a deliberate and calculated—that is, strategic—decision not to renew their request to amend their complaint for more than fifteen months.

The only new evidence plaintiffs rely on which was unavailable to them fifteen months ago is Chemtura's discovery responses. In plaintiffs' second set of interrogatories, plaintiffs asked Chemtura to "[i]dentify all meetings and communications regarding the sale or pricing of Urethanes or Urethane Chemicals attended by or participated in by you and at least one other current or former officer, director, employee or agent of another defendant or manufacturer or Urethane Products including" pricing, volumes, market share, customers, sales, eliminating producers, capacity utilization, joint ventures, capacity expansion plans, or "any other aspect of manufacture, production, sale or marketing of Urethane Products."

7

Plaintiffs point out that, in response to this interrogatory, Chemtura stated that it is aware that the following communications took place with competitors: between 1994 and 2000, on a few occasions Paul van der Pol (with Witco/Chemtura) discussed polyester polyol pricing generally with Mike McCann (with Ruco/Bayer); in April of 1995 Messrs. van der Pol and McCann discussed polyester polyols pricing, certain raw materials, and Inolex, a polyester polyols manufacturer; between 1996 through 2000, on a few occasions Messrs. van der Pol and McCann discussed pricing at Dow; on July 1, 1997, Messrs. van der Pol and McCann discussed polyester polyols pricing; and, on October 27, 1997, Mr. van der Pol met Dr. Koegelnik, head of Bayer's Elastomer Group, at a convention in Amsterdam.  Notably, however, plaintiffs did not direct the court's attention to this evidence until their reply brief, thus suggesting to the court that even plaintiffs do not believe that these interrogatory responses add much to plaintiffs' previous belief that a price-fixing conspiracy may have existed prior to 1998.  Thus, instead of demonstrating diligence on plaintiffs' part in requesting the current amendment, these interrogatory responses appear to be merely an afterthought by plaintiffs to attempt to justify their strategic decision.

Given the overall procedural stance of this set of consolidated cases in this MDL proceeding, the court is persuaded that Chemtura would be prejudiced if the court were to allow this belated amendment.  Granting the motion would require the court to reopen class discovery and revisit class certification issues, a process which lasted more than a year the first time around.  Class notices have already been sent, and therefore if the court were to certify a class for the expanded time period plaintiffs would have to once again send class

notices.  Aside from forcing Chemtura and the court to revisit the entire class certification process, expanding the class period would impose significant and unnecessary discovery burdens on Chemtura.  Merits discovery is already well underway.  Chemtura has virtually completed its document production, and expanding the class period would force Chemtura to duplicate many of its earlier discovery efforts to locate documents relevant to the expanded period.  This prejudice and inconvenience is entirely unwarranted where, as here, it is apparent to the court that plaintiffs' counsel made a strategic decision, undoubtedly eager to obtain class certification in the first instance and to finalize the Bayer settlement, not to delay success on those issues by pursuing the issue of a conspiracy during the 1995-1997 time frame or the related issue of the propriety of certification of a class for purchases made during that time period.

For these reasons, then, the court will deny plaintiff's motion with respect to the proposed expanded class period.  In doing so, the court wishes to emphasize that it is denying this motion based solely on plaintiffs' failure to offer an adequate explanation for a substantial (fifteen-month) delay for an amendment which would inconvenience Chemtura significantly and would substantially delay the resolution of this litigation.  *See, e.g.*, *Cureton v. Nat'l Coll. Athletic Ass'n*, 252 F.3d 267, 274 (3d Cir. 2001) (district court did not abuse its discretion in denying leave to amend where the addition of the new claim might require the court to revisit class certification, lead to further discovery requests, and significant new preparation); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir. 1999) (same,

where granting leave to amend would have required reopening class discovery and further delay).[1]

Plaintiffs also seek to modify the relevant product definition.  Chemtura initially objected to this proposed amendment.  In plaintiffs' reply brief, they state that they are not seeking to propose a new product definition; rather, they are only seeking to adopt the product definition as expressed in the court's class certification order.  Plaintiffs therefore submitted a revised proposed amended complaint.  In Chemtura's surreply, however, Chemtura contends that plaintiffs still have not removed other revised product language within the proposed amended complaint.  The court will grant plaintiffs' motion on this issue to the extent that it is uncontested.  To the extent that Chemtura continues to object to language contained in paragraphs 7, 46, and 48 of the revised proposed amended complaint, plaintiffs' motion to amend is denied on the grounds that plaintiffs have offered no justification for those amendments.

Lastly, plaintiffs seek to remove as named plaintiffs those entities that have withdrawn as class representatives since plaintiffs originally filed their Consolidated Class Action Complaint.  Chemtura states that it has no objection to this amendment.  Accordingly, this aspect of plaintiffs' motion is granted as unopposed.

---

[1] The court will not consider Chemtura's futility argument because the parties did not brief this issue under the applicable Rule 12(b)(6) standard.  *See Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." (quotation omitted)).

**IT IS THEREFORE ORDERED BY THE COURT** that the Polyester Polyol Plaintiffs' Second Motion for Leave to Amend Consolidated Class Action Complaint (doc. #497) is granted in part and denied in part as set forth above.  Specifically, it is denied as to plaintiffs' request to expand the class period; it is granted as to the uncontested amendments relating to the relevant product definition; it is denied as to the contested amendments relating to the relevant product definition; and it is granted as unopposed as to the removal of certain named plaintiffs.

**IT IS SO ORDERED** this 14th day of May, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

11