IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: URETHANES ANTITRUST LITIGATION | MDL 1616<br>Civil No. 04-md-01616-JWL<br>Chief Judge Lungstrum |
| THIS DOCUMENT RELATES TO: | |
| POLYESTER POLYOL CASES | |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of this 2nd day of August 2007 (the "Execution Date"), by and among Chemtura Corporation (f/k/a Crompton Corporation) and Uniroyal Chemical Company, Inc. (collectively "Chemtura," as defined below), and Class Plaintiffs Skypark Manufacturing LLC (f/k/a Burtin Urethane Corporation), Maine Industrial Tires Limited, and Urethane Products Industries, Inc. (collectively "Class Plaintiffs," as defined below), both individually and on behalf of the Class Members (as defined below).

WHEREAS, Class Plaintiffs are prosecuting the above-captioned action (the "Action," as defined below) on their own behalf and on behalf of the Class (as defined below) against Chemtura and other Defendants;

WHEREAS, Class Plaintiffs allege, among other things, that Chemtura participated in an unlawful conspiracy to fix prices and allocate markets for Polyester Polyol Products (as defined below) in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*;

WHEREAS, Chemtura denies Class Plaintiffs' allegations, has not conceded or admitted any civil liability, and has asserted affirmative defenses to Class Plaintiffs' claims;

WHEREAS, Class Plaintiffs have conducted an investigation into the facts and the law

1

regarding the Action and have concluded that a settlement with Chemtura, according to the terms set forth below, is in the best interest of Class Plaintiffs and the Class;

WHEREAS, Chemtura has concluded, despite its belief that it has meritorious defenses to the claims asserted, that it will enter into this Agreement in order to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation to obtain the releases, orders and judgment contemplated by this Agreement and to terminate with finality all claims that the Class has or could have asserted against Chemtura relating to the pricing, selling, discounting, marketing, manufacturing and/or distributing of Polyester Polyol Products in the United States or for delivery in the United States; and

WHEREAS, arm's-length settlement negotiations have taken place between Class Counsel (as defined below) and Chemtura, and this Agreement embodies all of the terms and conditions of the settlement between Chemtura and Class Plaintiffs, both individually and on behalf of the Class, and has been reached as a result of the parties' negotiations, subject to approval of the District Court:

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that this Action shall be settled, compromised and dismissed on the merits with prejudice as to Chemtura, without costs to Class Plaintiffs, the Class, or Chemtura, subject to the approval of the District Court, on the following terms and conditions:

A.      **Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.      "Action" means the direct purchaser antitrust class actions consolidated under the caption *In re Urethanes Antitrust Litigation* (Polyester Polyols Cases), MDL 1616 (JWL) (Kansas).

2.      "Chemtura" means Chemtura Corporation, Uniroyal Chemical Company, and their

2

respective past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

3.     "Claims Administrator" means Complete Claim Solutions, Inc.

4.     "Class" means all direct purchasers of aliphatic polyester polyols, aliphatic polyester polymers and prepolymers, and aliphatic polyester-based polyurethane systems in the United States from any of the Defendants or any present or former parent, subsidiary or affiliate thereof, at any time during the period from January 1, 1998 to the present.  Excluded from the Class are all those who timely and validly excluded themselves from the Class; all governmental entities; and Defendants and their respective present and former employees, officers, directors, parents, predecessors, subsidiaries and affiliates.

5.     "Class Counsel" means the law firms of Glancy Binkow & Goldberg LLP; Freed Kanner London & Millen LLC; Lockridge Grindal Nauen P.L.L.P.; and Ross Dixon & Bell, LLP.

6.     "Class Member" or "Class Members" means, individually or collectively, all members of the Class who have not timely and validly requested exclusion from the Class.

7.     "Class Notice" means the notice mailed to individual Class Members, substantially in the form attached hereto as Exhibit 1, advising Class Members, *inter alia*, about the Agreement and fairness hearing.

8.     "Class Period" means the period from January 1, 1998 to the present.

9.     "Class Plaintiffs" means Skypark Manufacturing LLC (f/k/a Burtin Urethane Corporation), Maine Industrial Tires Limited, and Urethane Products Industries, Inc., and each of their respective subsidiaries, predecessors and affiliates.

10.     "District Court" means the United States District Court for the District of Kansas.

11.      "Defendant" means any person or entity named as a defendant in this Action.

12.     "Effective Date" means the date on which Final Approval has been obtained in this Action.

13.     "Escrow Account" means J.P. Morgan Trust Company, National Association, a national banking association, account number _____, established by Class Counsel for receipt of the Settlement Amount pursuant to the Escrow Agreement attached as Exhibit 3 hereto.

14.     "Escrow Agent" means J.P. Morgan Trust Company, National Association, a national banking association.

15.     "Execution Date" means the date appearing in the first paragraph of the Preamble to this Agreement.

16.     "Final Approval" means (a) the entry by the District Court of a Final Judgment approving this Agreement without material modification pursuant to Rule 23(e) of the Federal Rules of Civil Procedure; and (b) the expiration of the time for appeal or to seek permission to appeal from the Final Judgment or, if an appeal from Final Judgment is taken, the affirmance of Final Judgment in its entirety, without material modification, by the court of last resort to which an appeal of such Final Judgment may be taken.  It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

17.     "Final Judgment" means entry of a final judgment by the District Court, substantially in the form attached hereto as Exhibit 5, dismissing the Action and all claims therein against Chemtura on the merits with prejudice as to all Class Members.

18.      "Notice and Administration Costs" means the fees and costs of the Claims Administrator and the fees and costs incurred to provide notice to Class Members and to administer this settlement,

4

including processing claim forms.

19.      "Notice and Administration Fund" means a fund established by the Escrow Agent for disbursements for Notice and Administration Costs.

20.      "Polyester Polyol Products" mean aliphatic polyester polyols, aliphatic polyester polymers and prepolymers, and aliphatic polyester-based polyurethane systems purchased in the United States from any of the Defendants, or any present or former parent, subsidiary or affiliate thereof, during the Class Period.

21.      "Preliminary Approval Motion" means a motion to the District Court, to be joined in or stipulated to by Chemtura for preliminary approval of this Agreement and authorization to disseminate notice of the settlement to the Class.

22.      "Preliminary Approval Order" means an Order by the District Court, substantially in the form attached hereto as Exhibit 4, preliminarily approving the settlement and authorizing dissemination of Class Notice and Publication Notice.

23.      "Publication Notice" means the notice published in a periodical approved by the Court, substantially in the form attached hereto as Exhibit 2, advising Class Members, *inter alia*, about the Agreement and fairness hearing.

24.      "Released Claims" means any and all claims, demands, actions, suits, and causes of action (whether class, individual or otherwise in nature) that Releasors, or any one of them, ever had, now have, or hereafter can, shall, or may have against Releasees, whether known or unknown, asserted or unasserted, on account of or arising out of, resulting from, or related in any respect to, the pricing, selling, discounting, marketing, manufacturing, offering, or distributing of Polyester Polyol Products in the United States prior to the Effective Date, and includes without limitation claims alleged, or which could have been alleged, in this Action arising under federal or state antitrust, unfair

5

competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq*.  "Released Claims," however, do not include claims based on: (a) product defect or breach of contract; (b) purchases of Polyester Polyol Products made outside the United States; or (c) indirect purchases of Polyester Polyol Products.

25.     "Releasees" means Chemtura (as defined herein) and, as used in this definition, its "affiliates" (defined as entities controlling, controlled by or under common control with a Releasee).

26.     "Releasors" means Class Plaintiffs and other Class Members, and their respective past and present parents, subsidiaries, affiliates, and agents.  As used in this definition, "affiliates" means entities controlling, controlled by or under common control with a Releasor.

27.     "Settlement Amount" means Fifteen Million US Dollars (USD $15,000,000.00).

28.     "Settlement Fund" means the Settlement Amount plus any interest earned thereon after payment thereof by Chemtura into the Escrow Account.

29.     "Taxes" means any sums due to be paid to governmental taxing authorities from the Settlement Fund, including taxes, estimated taxes, interest and penalties.

30.     "Tax Expenses" means any and all reasonable fees and costs due to be paid to tax preparers, tax consultants or others for determining the tax liability of the Settlement Fund and otherwise assisting Class Counsel in carrying out their responsibilities as set forth in this Agreement.

**B.     Consideration**

31.     Chemtura agrees to pay to Class Plaintiffs on behalf of the Class Members, the Settlement Amount of Fifteen Million Dollars (USD $15,000,000).

32.     Within ten (10) business days of the Execution Date, Chemtura will deposit or cause to be deposited the Settlement Amount into the Escrow Account.

**C.**   **Approval of this Agreement, Notice, and Dismissal of Claims**

33.   Class Plaintiffs, Chemtura, and their respective counsel agree to use their best efforts to effectuate this Agreement, and shall cooperate promptly to seek and obtain both preliminary and final approval of this Agreement (including the giving of class notice under Federal Rule of Civil Procedure 23(e)(1)(B)) and secure final dismissal with prejudice of this Action as to Chemtura.

34.   Within thirty (30) calendar days of the Execution Date, Class Counsel or their designee shall submit a Preliminary Approval Motion to the District Court in this Action.  The Motion papers shall include: (a) the definition of the Class; and (b) a proposed form of, method for, and date of dissemination of notice to the Class.  Except as otherwise provided in this Agreement, the text of the items referenced in clauses (a) and (b) of this Paragraph shall be agreed upon by Class Plaintiffs and Chemtura before submission of the Motion.

35.   Upon preliminary approval by the District Court of this Agreement, Class Counsel or their designee shall, in accordance with Federal Rule of Civil Procedure 23(e)(1)(B) and the Preliminary Approval Order, provide each Class Member who can be identified by reasonable means with notice by such means as the District Court shall require.  In order to facilitate mailed notice, Chemtura shall provide to Class Counsel, within ten (10) calendar days following the Execution Date, a machine-readable version of its customer mailing list containing addresses of Class Members to the extent reasonably available.  This information shall be subject to any generally applicable protective order already or hereafter entered in this Action.  Class Counsel shall take all necessary and appropriate steps to ensure that notice of the fairness hearing is provided in accordance with the Preliminary Approval Order.

36.   Class Counsel or their designee shall move the District Court for entry of Final Judgment after notice of the fairness hearing is given to the Class.  Class Counsel and Chemtura shall jointly

7

seek entry of a Final Judgment, substantially in the form attached hereto as Exhibit 5, that shall include the following provisions:

(a)     approving finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation according to its terms;

(b)     directing that, as to Chemtura, this Action be dismissed with prejudice and, except as otherwise provided in this Agreement, without costs;

(c)     reserving exclusive jurisdiction over this Agreement, including the administration and consummation of the settlement; and

(d)     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Chemtura shall be final and entered forthwith.

37.     Class Plaintiffs agree to include a statement in their motion for preliminary approval to the District Court that there is no need for an additional opt-out period pursuant to Federal Rule of Civil Procedure 23(e)(3).   Class Plaintiffs already have filed with the District Court a list of those potential class members who timely and validly excluded themselves from the Action (Doc. 525).

38.     In no event shall Chemtura have any liability with respect to the giving of notice of the settlement to the Class or administering any payments to any Class Member.

**D.      Release and Discharge**

39.     Upon occurrence of the Effective Date and in consideration of payment of the Settlement Amount, and for other valuable consideration, Releasees shall be completely released, acquitted, and forever discharged from any and all Released Claims.  Releasors shall not after the Effective Date seek to recover against any of Releasees for any of the Released Claims.

40.     Class Plaintiffs hereby certify, through their counsel, that they are aware of and have read and reviewed the following provision of California Civil Code Section 1542 ("Section 1542"): "A general release does not extend to claims which the creditor does not know or suspect to exist in his

8

favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." The provisions of the releases set forth in this Agreement shall apply according to their terms, regardless of the provisions of Section 1542 or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction. Class Plaintiffs hereby expressly waive and relinquish any and all rights and benefits existing under (i) Section 1542 or any equivalent, similar or comparable present or future law or principle of law of any jurisdiction, and (ii) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above.

41.     Upon occurrence of the Effective Date, Releasors shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, damages whenever incurred, and liabilities of any nature whatsoever, including costs, expenses, penalties, and attorneys' fees, that Releasees, or any one of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have against Releasors, whether known or unknown, relating in any way to the institution, prosecution, or assertion of the Action or the Released Claims.

**E.     The Settlement Fund**

42.     After the transfer of the Settlement Fund, or a portion thereof, into the Escrow Account, the Escrow Agent shall establish a Notice and Administration Fund.  District Court approval shall not be required for disbursements from or distributions to the Notice and Administration Fund in amounts not to exceed a total of $300,000 in the aggregate for the purposes of providing notice to the Class and settlement administration.

43.     Chemtura's payment into the Escrow Account shall, when made, be invested in J.P. Morgan 100% United States Treasury Money Market Funds or United States Government Treasury

obligations or any instruments secured by the full faith and credit of the United States and any interest earned thereon shall become part of the Settlement Fund.

44.     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the District Court, and shall remain subject to the jurisdiction of the District Court until such time as such funds are distributed pursuant to the Agreement and/or further order of the District Court.

45.     The Escrow Agent is authorized to execute such transactions on behalf of the Class as are consistent with the terms of the Agreement.   Except as otherwise expressly provided in this Agreement, the approval of the District Court shall be required prior to the distribution of any moneys from the Escrow Account.

46.     Each Class Member shall look solely to the Settlement Fund for settlement and satisfaction of all claims released by the Releasors pursuant to this Agreement.   Except as provided by an order of the District Court, no Class Member shall have any interest in the Settlement Fund or any portion thereof.

47.     Class Counsel shall have the authority to direct the Escrow Agent to pay reasonable Notice and Administration Costs from the Notice and Administration Fund, and Taxes and Tax Expenses when they become due and owing from the Escrow Account.   Chemtura shall not be entitled to recover such expenditures from Class Plaintiffs or Class Counsel, or to obtain a refund of other expenditures incurred in connection with the Notice and Administration Fund, if this Agreement is terminated or the Effective Date fails to occur.

48.     Chemtura agrees not to take any position with respect to any application to the Court by Class Counsel for an award of attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of the Action.   Chemtura further agrees not to object, subject to any Order of the District Court, to the payment to Class Counsel of approved attorneys' fees, costs and expenses

10

within ten (10) calendar days after entry of Final Judgment and any Order awarding attorneys' fees, costs, and expenses.  Disbursement of such fees, costs and expenses shall not be delayed by any reason of any appeal of the Final Judgment; provided, however, that if the District Court's award of fees, costs and expenses is vacated, reversed, or reduced as a result of an appeal, Class Counsel shall within ten (10) business days after receiving written notice from the appellate court or from Chemtura of such vacatur, reversal, or reduction, refund to the Escrow Account the amount of such vacatur, reversal, or reduction with interest; and further provided that if Chemtura elects to rescind the Agreement pursuant to Section F, Class Counsel shall within ten (10) business days after receiving notice from Chemtura of such rescission, refund to the Escrow Account the amount of such fees, costs and expenses with interest.  The interest rate applicable to any refund made to the Escrow Account pursuant to this Paragraph shall be the same interest rate earned on the Settlement Fund during the period between the payment of approved attorneys' fees, costs and expenses and any such refund.

49.     The procedure for and the allowance or disallowance by the District Court of any application by Class Counsel for attorneys' fees, costs and expenses, including the fees of experts and consultants, to be paid out of the Settlement Fund, are not part of the Settlement set forth in this Agreement, and any such application is to be considered by the District Court separately from the District Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in the Agreement.  Any order or proceeding relating to such application shall not operate to terminate or cancel the Agreement, or affect or delay the finality of any Order approving the Agreement and the Settlement.

50.     On the Effective Date, any balance including interest then remaining in the Notice and Administration Fund, less expenses incurred but not paid, shall be transferred by the Escrow Agent

to, and deposited and credited as part of, the Settlement Fund.

51.     The Settlement Fund shall be distributed after the Effective Date in accordance with a plan of distribution that Class Counsel shall have previously submitted to the District Court and the District Court shall have previously approved.

**F.     Rescission**

52.

(a)     If the District Court refuses to approve either the Agreement or the notice of the Agreement (in the form attached hereto as Exhibit 1) without material modification, or does not enter Final Judgment, or if Final Judgment is entered and appellate review is sought and, on such review, Final Judgment is materially modified or set aside on appeal, then Chemtura shall, in its sole discretion, have the option to rescind this Agreement in its entirety and any and all amounts then constituting the Settlement Fund shall be returned to Chemtura, as provided in this Agreement, less only such disbursements as have been properly made in accordance with this Agreement. Additionally, in the event the District Court requires a new opportunity for individual Class Members to request exclusion from the Class and individual Class Members who previously did not request exclusion choose to opt-out of this Agreement, Chemtura shall in its sole discretion, within 10 days of the closing of the opt-out period, have the right to rescind this Agreement in its entirety.

(b)     A modification or reversal on appeal of any amount of attorneys' fees or expenses awarded by the District Court or of any plan of allocation of settlement proceeds among Class Members shall not be deemed a modification of either this Agreement or a Final Judgment.

(c)     Chemtura and Class Plaintiffs expressly reserve all of their respective rights to the extent that this Agreement does not become effective or this Agreement is rescinded by Chemtura pursuant to Paragraph 52(a).

**G.**   **Taxes and Tax Expenses**

53.     Class Counsel shall be solely responsible for (a) directing the Claims Administrator to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund; and (b) directing the Escrow Agent to pay any Taxes due out of the Escrow Account, as and when legally required, including interest and penalties due on income earned on the funds in the Escrow Account.  Escrow Agent shall have no responsibility for any tax reporting, preparation and/or filing of any tax return with respect to any income earned by the Escrow Account.

54.     Class Counsel shall be entitled to direct the Escrow Agent to pay customary and reasonable Tax Expenses, including professional fees and expenses incurred in connection with carrying out their responsibilities from the Escrow Account when incurred.   Chemtura shall have no responsibility to make any tax filings relating to the Settlement Fund or to pay any Taxes on the Settlement Fund unless the settlement is not consummated and the Settlement Fund  is returned to Chemtura.

55.     The Escrow Account is intended by the parties hereto to be treated as a "Qualified Settlement Fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1.  For purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Claims Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account, including without limitation all tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1).

56.     The parties hereto, the Claims Administrator and the Escrow Agent shall cooperate with each other and shall not take any position in any filing or before any tax authority that is inconsistent with treatment of the Escrow Account as a Qualified Settlement Fund.  At the request of Chemtura, a

"relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Escrow Account to be treated as a Qualified Settlement Fund from the earliest date possible, and the Claims Administrator and, as required, the parties hereto, shall take all actions as may be necessary or appropriate to this end.  It shall be the responsibility of the Claims Administrator to prepare and deliver in timely and proper fashion the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur.

**H.**      **Miscellaneous**

57.      This Agreement does not settle or compromise any claim by Class Plaintiffs or any Class Member asserted in this Action against any Defendant or alleged co-conspirator other than Releasees.  All rights of Class Plaintiffs and any Class Member against alleged co-conspirators or any other person or entity other than Releasees are specifically reserved by Class Plaintiffs and the Class Members.  Chemtura's sales of Polyester Polyol Products shall remain in this Action as a basis for damage claims against alleged co-conspirators or any other person or entity other than Releasees and shall be part of any joint and several liability claims against alleged co-conspirators or any other person or entity other than Releasees .

58.      The District Court shall retain exclusive jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or its implementation that cannot be resolved by negotiation and agreement by Class Plaintiffs and Chemtura.

59.      Chemtura and Class Plaintiffs agree that the amount of the Settlement Fund and the other terms of the Agreement reflect a good-faith settlement of Class Plaintiffs' claims, reached voluntarily after consultation with experienced legal counsel.

60.      Any settling party and any Class Member may file this Agreement in any proceeding brought

14

to enforce any of its terms or provisions.

61.     The exhibits to this Agreement are material and integral parts thereof.

62.     This Agreement together with its exhibits constitutes the entire agreement among Class Plaintiffs, Class Members and Chemtura pertaining to the settlement of this Action against Chemtura only and supersedes any and all prior and contemporaneous undertakings of Class Plaintiffs, the Class Members and Chemtura in connection therewith.  This Agreement may be modified or amended only by a writing executed by Class Plaintiffs and Chemtura or their successors in interest, or on their behalf by their respective counsel, and approved by the District Court.

63.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Releasees.  Without limiting the generality of the foregoing: (a) each and every covenant and agreement made herein by Class Plaintiffs shall be binding upon all Class Members and Releasors; and (b) each and every covenant and agreement made herein by Chemtura shall be binding upon all Releasees.

64.     This Agreement may be executed in counterparts by Class Plaintiffs and Chemtura and/or their respective counsel, and a facsimile signature shall be deemed an original signature for purpose of executing this Agreement.

65.     Neither Chemtura nor Class Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

66.     Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Plaintiffs, Class Members, Chemtura, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

15

67.     Where this Agreement requires any party to provide notice or other communication or document to any other party, such notice, communication, or document shall be provided by facsimile or letter by overnight delivery at the address reflected on the signature pages.

68.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to District Court approval.

[Signatures Of Counsel
Appear On The Following Page]

16

Signature Page

Dated: August _2_, 2007

_____
Roy M. Bell
ROSS DIXON & BELL, LLP
550 West B Street, Suite 400
San Diego, CA 92101-3599
Tel: (619) 235-4040


Dated: August __, 2007

_____
W. Joseph Bruckner
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401
Washington, DC 20005
Tel: (612) 339-6900


Dated: August __, 2007

_____
Susan Kupfer
GLANCY BINKOW & GOLDBERG LLP
455 Market Street
Suite 1810
San Francisco, CA 94105
Tel: (415) 972-8160


Dated: August __, 2007

_____
Steven A. Kanner
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel: (224) 632-4500

*Class Counsel*

17

Signature Page

Dated: August \_\_\_, 2007                          _____

Roy M. Bell
ROSS  DIXON & BELL, LLP
550 West B Street, Suite 400
San Diego, CA 92101-3599
Tel: (619) 235-4040

Dated: August \_\_, 2007                          _____

W. Joseph Bruckner
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401
Washington, DC  20005
Tel: (612) 339-6900

Dated: August \_\_, 2007                          _____

Susan Kupfer
GLANCY BINKOW & GOLDBERG LLP
455 Market Street
Suite 1810
San Francisco, CA  94105
Tel: (415) 972-8160

Dated: August \_\_, 2007                          _____

Steven A. Kanner
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel: (224) 632-4500

*Class Counsel*

17

Signature Page

Dated: August ___, 2007

_____
Roy M. Bell
ROSS  DIXON & BELL, LLP
550 West B Street, Suite 400
San Diego, CA 92101-3599
Tel: (619) 235-4040

Dated: August ___, 2007

_____
W. Joseph Bruckner
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401
Washington, DC  20005
Tel: (612) 339-6900

Dated: August 2, 2007

_____
Susan Kupfer
GLANCY BINKOW & GOLDBERG LLP
455 Market Street
Suite 1810
San Francisco, CA  94105
Tel: (415) 972-8160

Dated: August ___, 2007

_____
Steven A. Kanner
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel: (224) 632-4500

*Class Counsel*

17

Signature Page

Dated: August ___, 2007

        _____
        Roy M. Bell
        ROSS  DIXON & BELL, LLP
        550 West B Street, Suite 400
        San Diego, CA 92101-3599
        Tel: (619) 235-4040

Dated: August __, 2007

        _____
        W. Joseph Bruckner
        LOCKRIDGE GRINDAL NAUEN P.L.L.P.
        Suite 2200
        100 Washington Avenue South
        Minneapolis, MN 55401
        Washington, DC  20005
        Tel: (612) 339-6900

Dated: August __, 2007

        _____
        Susan Kupfer
        GLANCY BINKOW & GOLDBERG LLP
        455 Market Street
        Suite 1810
        San Francisco, CA  94105
        Tel: (415) 972-8160

Dated: August 2, 2007

        Steven A. Kanner
        FREED KANNER LONDON & MILLEN LLC
        2201 Waukegan Road, Suite 130
        Bannockburn, IL 60015
        Tel: (224) 632-4500

        *Class Counsel*

17

Dated: August 2, 2007

Ian Simmons
O'MELVENY & MYERS, LLP
1625 I Street, NW
Washington, D.C. 20004
Tel: (202) 383-5300

*Counsel for Chemtura Corporation and Uniroyal
Chemical Company, Inc.*

18