# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

---

**IN RE URETHANE ANTITRUST
LITIGATION**

**MDL No. 1616**
Civil Action No. 04-md-01616-JWL
Judge John W. Lungstrum

---

**THIS DOCUMENT RELATES TO:**

***Carpenter Co. et al. v. BASF SE et al.,***
Civil Action No. 08-2617-JWL

***Woodbridge Foam Corporation, et al. v. BASF SE et al.,***
Civil Action No. 09-2026-JWL

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS ALL CLAIMS

*Submitted by*

BASF CORPORATION
BASF SE
THE DOW CHEMICAL COMPANY
HUNTSMAN INTERNATIONAL LLC

*Counsel Appear on Signature Page*

July 9, 2009

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.     THE COMPLAINTS DO NOT ALLEGE A PLAUSIBLE CLAIM FOR RELIEF
AS TO ANY E.U. CAUSE OF ACTION............................................................... 2

II.    THE COMPLAINTS FAIL TO ALLEGE A PLAUSIBLE CLAIM FOR RELIEF
FOR ANY DOMESTIC CLAIM ARISING PRIOR TO 2002 ......................................... 3

     A.     The Complaints Do Not Allege a Plausible Claim to Relief for Any
Sherman Act Cause of Action Accruing Before 2002........................................... 3

     B.     The State Law Claims Similarly Fail for Any Action Accruing Prior to
2002...................................................................................................................... 8

III.   PLAINTIFFS FAIL TO PLEAD FACTS TO SUPPORT ANY PRE-1999 CLAIM........ 8

     A.     The Pre-1999 Allegations Do Not Support an Antitrust Claim............................ 9

     B.     The Pre-1999 Claims Are Not Saved by the Fraudulent Concealment
Allegations of the Complaints ............................................................................ 10

IV.   THE COURT SHOULD DECLINE JURISDICTION OVER THE STATE LAW
CLAIMS, OR ALTERNATIVELY, SHOULD DISMISS THEM AS TIME-
BARRED AND LEGALLY INSUFFICIENT ................................................................. 12

     A.     This Court Should Decline to Exercise Supplemental Jurisdiction in Light
of the Novel Remedies Plaintiffs Seek ............................................................... 13

     B.     The Statutes of Limitations for Plaintiffs' Tennessee and Indiana Claims
Were Not Tolled During the Pendency of the Federal Class Action................... 14

         1.     Tennessee Has Rejected Cross-Jurisdictional Class Action Tolling. ...... 15

         2.     Indiana Courts Would Reject Cross-Jurisdictional Tolling, as Have
the Vast Majority of States That Have Considered the Doctrine............. 17

     C.     The State Law Claims Should Not Proceed Because Plaintiffs Fail to
Allege an Agreement in Indiana or Substantial Effects in Tennessee and
Wisconsin.......................................................................................................... 19

         1.     Indiana Law Requires That the Alleged Anticompetitive
Agreement Be Made in Indiana ............................................................ 20

         2.     Plaintiffs Have Not Alleged Substantial In-State Effects in
Tennessee and Wisconsin ...................................................................... 21

     D.     Plaintiffs Are Not Entitled to Their Purported Remedy of "Full
Consideration" Under the Antitrust Statutes of Indiana, Tennessee and
Wisconsin Because Rescission of Out-Of-State Contracts Would Violate
Due Process........................................................................................................ 24

**TABLE OF CONTENTS**
**(continued)**

Page

V.    THE CLAIMS BROUGHT BY OR ON BEHALF OF PARENTS AND
      AFFILIATES SHOULD BE DISMISSED FOR LACK OF STANDING ..................... 25

CONCLUSION........................................................................................................................ 27

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alvord-Polk, Inc. v. F. Schumacher & Co.*,
    37 F.3d 996 (3d Cir. 1994)................................................................................4

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974).................................................................................16, 18

*Barela v. Showa Denko, K.K.*,
    1996 WL 316544 (D.N.M. 1996) ..................................................................18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................ passim

*Bell v. Showa Denko K.K.*,
    899 S.W.2d 749 (Tex. App. 1995)..................................................................18

*Bozeman v. Lucent Techs., Inc.*,
    No. 2:05 CV 45 A, 2005 WL 2145911 (M.D. Ala. Aug. 31, 2005) .................18

*Bryson v. Gonzales*,
    534 F.3d 1282 (10th Cir. 2008) ...................................................................2, 3

*Cahill v. Am. Family Mut. Ins. Co.*,
    No. 07-cv-01910, 2009 WL 973565 (D. Colo. Apr. 9, 2009) ..........................19

*California v. ARC Am. Corp.*,
    490 U.S. 93 (1989)........................................................................................20

*California v. Infineon Techs.*,
    531 F. Supp. 2d 1124 (N.D. Cal. 2007) .........................................................23

*Chardon v. Soto*,
    462 U.S. 650 (1983)................................................................................15, 16

*Chin v. Chrysler LLC*,
    538 F.3d 272 (3d Cir. 2008).........................................................................15

*City of Chicago v. Int'l Coll. of Surgeons*,
    522 U.S. 156 (1997).....................................................................................13

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) .........................................................16, 17, 18

*Coca-Cola Co. v. Harmar Bottling Co.*,
    218 S.W.3d 671 (Tex. 2006).........................................................................23

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983)......................................................................................................19

*Easterly v. Metropolitan Life Ins. Co.*,
    Nos. 2006-CA-001580-MR, 2006-CA-001687-MR, 2009 WL 350595 (Ky. App. Feb.
    13, 2009) ......................................................................................................................18

*Emergency One, Inc. v. Waterous Co.*,
    23 F. Supp. 2d 959 (E.D. Wis. 1998)..........................................................................23

*Empagran, S.A. v. F. Hoffmann II*,
    417 F.3d 1267 (D.C. Cir. 2005) ...................................................................................24

*Erie Railroad Co. v. Tompkins*,
    304 U.S. 64 (1938)..................................................................................................15, 16

*F. Hoffmann-LaRoche, Ltd. v. Empagran, S.A.*,
    542 U.S. 155 (2004)................................................................................................22, 23

*Freeman Indus., LLC v. Eastman Chem. Co.*,
    172 S.W.3d 512 (Tenn. 2005)...........................................................................8, 21, 23

*Full Draw Prods v. Easton Sports, Inc.*,
    182 F.3d 745 (10th Cir. 1999) .......................................................................................4

*Haggerty v. Bethel*,
    No. 25653-3-II, 2001 WL 310369 (Wash. App. Div. 2 Mar. 30, 2001).....................18

*Hartford Fire Ins. Co. v. California*,
    509 U.S. 764 (1993)......................................................................................................22

*Healy v. Beer Inst.*,
    491 U.S. 324 (1989)......................................................................................................24

*Home Ins. Co. v. Dick*,
    281 U.S. 397 (1930)......................................................................................................24

*In re Agent Orange Product Liability Litigation*,
    818 F.2d 210 (2d Cir. 1987).........................................................................................18

*In re Commercial Explosives Litigation*,
    Nos. 2:96-MD-1093S, 2:96-CV-709S, 1996 WL 795270 (D. Utah Dec. 20, 1996) .................7

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*,
    546 F.3d 981 (9th Cir. 2008) .......................................................................................24

*In re Hydrogen Peroxide Antitrust Litigation*,
    240 F.R.D. 163 (E.D. Pa. 2007).....................................................................................7

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Independent Service Organizations Antitrust Litigation,*
No. MDL-1021, 1997 WL 161940 (D. Kan. Mar. 12, 1997) .................................................19

*In re Late Fee & Over-Limit Fee Litigation,*
528 F. Supp. 2d 953 (N.D. Cal. 2007) .....................................................................................8

*In re LTL Shipping Services Antitrust Litigation,*
No. 1:08-MD-01895-WSD, 2009 WL 323219 (N.D. Ga. Jan. 28, 2009)................................7

*In re Urethane Antitrust Litigation,*
235 F.R.D. 507 (D. Kan. 2006)................................................................................................10

*In re Vioxx Prods. Liab. Litigation,*
522 F. Supp. 2d 799 (E.D. La. 2007)...........................................................................13, 14, 18

*In re Vitamins Antitrust Litigation,*
183 Fed. Appx. 1 (D.C. Cir. 2006) ..........................................................................................18

*Iqbal v. Ashcroft,*
129 S. Ct. 1937 (2009).........................................................................................................2, 7

*Johnson v. Ry. Express Agency, Inc.,*
421 U.S. 454 (1975)................................................................................................................19

*Jones v. United Space Alliance, L.L.C.,*
494 F.3d 1306 (11th Cir. 2007) ..............................................................................................15

*King & King Enterprises. v. Champlin Petroleum Co.,*
657 F.2d 1147 (10th Cir. 1981) ................................................................................................5

*Klehr v. A.O. Smith Corp.,*
521 U.S. 179 (1997)..................................................................................................................5

*Koch v. Koch Indus.,*
203 F.3d 1202 (10th Cir. 2000) ..............................................................................................10

*Love Terminal Partners, L.P. v. City of Dallas,*
527 F. Supp. 2d 538 (N.D. Tex. 2007) .....................................................................................8

*Maestas v. Sofamor Danek Group, Inc.,*
33 S.W.3d 805 (Tenn. 2000)............................................................................................15, 16

*Meyers v. Bayer AG,*
735 N.W.2d 448 (Wis. 2007)......................................................................................8, 21, 23

*Monsanto Co. v. Spray-Rite Serv. Corp.,*
465 U.S. 752 (1984)..................................................................................................................6

## TABLE OF AUTHORITIES
### (continued)

**Page**

*New York Life Ins. Co. v. Head*,
   234 U.S. 149 (1914).................................................................................................24

*Newby v. Enron Corp.*,
   542 F.3d 463 (5th Cir. 2008) ..........................................................................15, 18

*Newman v. Universal Pictures*,
   813 F.2d 1519 (9th Cir. 1987) ..................................................................................8

*Newport v. Dell*,
   No. CV-08-0096-TUC-CKJ(JCG), 2008 WL 4347311 (D. Az. Aug. 21, 2008)...........18

*Olstad v. Microsoft Corp.*,
   700 N.W.2d 139 (Wis. 2005)........................................................................21, 22, 23

*One Star v. Sisters of St. Francis*,
   752 N.W.2d 668 (S.D. 2008) ...................................................................................18

*Over v. Byram Foundry Co.*,
   77 N.E. 302 (Ind. App. 1906) ..................................................................................20

*Perry v. Hartz Mountain Corp.*,
   537 F. Supp. 1387 (S.D. Ind. 1982) ....................................................................8, 20

*Portwood v. Ford Motor Co.*,
   701 N.E.2d 1102 (Ill. 1998) ...........................................................................15, 18

*Ravitch v. Pricewaterhouse*,
   793 A.2d 939 (Pa. Super. 2002) ..............................................................................18

*Rick-Mik Enters. v. Equilon Enters., LLC*,
   532 F.3d 963 (9th Cir. 2008) ....................................................................................8

*Senger Bros. Nursery v. E.I. Dupont De Nemours & Co.*,
   184 F.R.D. 674 (M.D. Fla. 1999) ............................................................................18

*State Farm Mut. Ins. Co. v. Boellstorff*,
   540 F.3d 1223 (10th Cir. 2008) ......................................................................15, 16

*Staub v. Eastman Kodak Co.*,
   726 A.2d 955 (N.J. Super. 1999) .............................................................................18

*Thelen v. Massachusetts Mut. Life Ins. Co.*,
   111 F. Supp. 2d 688 (D. Md. 2000) .........................................................................18

*Tigg v. Pirelli Tire Corp.*,
   232 S.W.3d 28 (Tenn. 2007)........................................................................15, 16, 18

## TABLE OF AUTHORITIES
### (continued)

Page

*Todd v. F. Hoffman-La Roche, Ltd.*,
No. 98 C 4574, 2004 WL 5238952 (Kan. Dist. Ct. Aug. 20, 2004) ........................................18

*Tosti v. City of Los Angeles*,
754 F.2d 1485 (9th Cir. 1985) ..............................................................................................19

*United States v. Container Corp. of America*,
393 U.S. 333 (1969)...........................................................................................................5, 6

*Vaccariello v. Smith & Nephew Richards, Inc.*,
763 N.E.2d 160 (Ohio 2002)...................................................................................................18

*Wade v. Danek Medical, Inc.*,
182 F.3d 281 (4th Cir. 1999) ...........................................................................13, 15, 17, 18

*Williams v. Dow Chem. Co.*,
No. 01 Civ. 4307(PKC), 2004 WL 1348932 (S.D.N.Y. June 16, 2004) ................................18

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
401 U.S. 321 (1971)........................................................................................................4, 5, 7

**FEDERAL STATUTES**

15 U.S.C. § 1 ..........................................................................................................................3, 4

15 U.S.C. § 15 ............................................................................................................................4

28 U.S.C. § 1367 ......................................................................................................................13

42 U.S.C. § 1983 ......................................................................................................................16

**STATE STATUTES**

Ind. Code § 24-1-1-1 ......................................................................................................20, 21, 25

Ind. Code § 24-1-1-5 ................................................................................................................25

Tenn. Code § 47-25-101 ...........................................................................................................25

Tenn. Code § 47-25-106 ...........................................................................................................25

Wis. Stat. § 133.14 ...................................................................................................................25

**RULES**

Fed. R. Civ. P. 8(a)(2)................................................................................................................7

Fed. R. Civ. P. 23 ..........................................................................................................15, 16, 17

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

OTHER AUTHORITIES

1 *McLaughlin on Class Actions* § 3:14 (5th ed. 2008) ...........................................................15, 17

EC Treaty 81(1) ........................................................................................................................3

I ABA Antitrust Law Developments 629 (6th ed. 2007)...........................................................23

Philip E. Areeda & Herbert Hovenkamp, I.B. *Antitrust Law* ¶ 272i.1. (3d ed. 2006)..................22

## INTRODUCTION

The Opt-out Plaintiffs' response confirms the magnitude of their attempted expansion of this 4½ year-old case. The response seeks to justify (1) Plaintiffs' importation of European Union competition law into a Sherman Act proceeding, (2) Plaintiffs' challenge to purchases made more than *14 years* before the complaints were filed, and (3) Plaintiffs' reliance upon three state statutes carefully selected for the *in terrorem* effect of their untested "full consideration" remedy language. Fortunately for the administration of justice in this action, and as demonstrated below and in our earlier brief, none of these efforts complies with applicable law. Each should be rejected, and these claims should be dismissed.

As an initial matter, for the reasons described in Defendants' separate motion to dismiss, Plaintiffs' E.U. claims are not cognizable in this Court, and in any event fall far short of meeting *Twombly*'s stringent pleading standards. Plaintiffs' Sherman Act claims for the period before 2002 (when the first agreement is alleged to have taken place) – including the stale 1994-1998 claims that Plaintiffs hope to tack onto the class period – suffer from similar infirmities and fail to satisfy either Rule 8's pleading standard or Rule 9(b)'s requirement that fraudulent concealment be pled with particularity.

Plaintiffs' state law claims fare no better. Their adjudication would present a plethora of unnecessary complications that renders the exercise of supplemental jurisdiction over them completely inappropriate. Further, the state law claims do not survive the relevant statutes of limitations (for two of the three states) or the "substantial in-state effects" requirement of all three states. The Opt-outs' real end game – exploiting the prospect of "full consideration" refunds to each Plaintiff if the Court were to "void" polyether polyols sales under the selected state statutes – would plainly violate defendants' due process rights.

As outlined in detail below, the Opt-out Plaintiffs' Complaints are deficient on their face and should be dismissed in their entirety.

## ARGUMENT

## I.     THE COMPLAINTS DO NOT ALLEGE A PLAUSIBLE CLAIM FOR RELIEF AS TO ANY E.U. CAUSE OF ACTION.

Defendants moved to dismiss the E.U. competition law counts of each Complaint because (1) this Court lacks jurisdiction over those claims and (2) they do not support the exercise of supplemental jurisdiction.  *See* Memorandum in Support of Defendants' Motion for Dismissal of the European Union Claims of the Amended Opt-out Complaints, filed April 23, 2009 (Dkt. 916); Reply Memorandum in Support of Defendants' Motion for Dismissal of the European Union Claims of the Amended Opt-out Complaints (filed contemporaneously with this Reply).  The E.U. law counts also fail for a much more basic reason:  they do not meet the *Twombly* standard for stating a plausible basis for relief.

As the Supreme Court recently reiterated in *Iqbal v. Ashcroft*, 129 S. Ct. 1937 (2009) (decided since Defendants' 12(b)(6) motion was filed), "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 1950.  And "[a] formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).  As demonstrated in Defendants' opening brief (at 12), both Complaints are devoid of any such allegations related to the E.U. claims.

Plaintiffs relegate their entire response to Defendants' argument to a footnote, stating that "the conspiracy pled here is a single, global conspiracy."  Opp. 6 n.4.  But this

generalized statement, in addition to being facially deficient under *Twombly*, ignores the fact that

what few allegations of specific meetings and agreements appear in the Complaints are expressly

limited to U.S. pricing and customers and bear no relation to European commerce.  Def. Mem.

12.  It also ignores the fact that the handful of allegations regarding the E.U. that Plaintiffs

muster do not meet the requirements of Article 81 of the EC Treaty, which (like the Sherman

Act) expressly requires Plaintiffs to plead an agreement or concerted action as an element of an

antitrust claim.[1]  Defendants' challenge of the E.U. claims under *Twombly* stands uncontested,

and Plaintiffs' claims should be dismissed.

## II.    THE COMPLAINTS FAIL TO ALLEGE A PLAUSIBLE CLAIM FOR RELIEF FOR ANY DOMESTIC CLAIM ARISING PRIOR TO 2002.

### A.    The Complaints Do Not Allege a Plausible Claim to Relief for Any Sherman Act Cause of Action Accruing Before 2002.

Plaintiffs' Sherman Act claims arising from conduct occurring before 2002 should

also be dismissed.  Instead of confronting the fact that their actual allegations do not constitute a

cause of action under the Sherman Act, Plaintiffs complain that their Complaints should not be

"compartmentalized and must be "viewed as a whole."  Opp. 3, 6 n.4, 7, 9.  Plaintiffs' theory –

that a few post-2002 conspiracy allegations can prop up their failure to allege adequate pre-1999

agreements – is insufficient for two reasons.

*First*, Plaintiffs have not made the requisite "direct or inferential allegations

respecting all the material elements necessary to sustain a recovery under some viable legal

theory" (*Bryson*, 534 F.3d at 1286) for each of their pre-2002 causes of action.  The elements of

a private action under section 1 are (1) "'a contract, combination in the form of trust or

---

[1]  EC Treaty 81(1), *available at* http://ec.europa.eu/competition/antitrust/overview_en.html (last visited July 1, 2009) (prohibiting "all agreements between undertakings, decisions by associations of undertakings and concerted practices which may affect trade between Member States and which have as their object or effect the prevention, restriction or distortion of competition within the common market").

otherwise, or conspiracy, in restraint of trade or commerce among the several States,'" and (2)
antitrust injury therefrom to the plaintiff's business or property. *Full Draw Prods. v. Easton
Sports, Inc.*, 182 F.3d 745, 750 (10th Cir. 1999) (citing 15 U.S.C. §§ 1, 15). "The very essence
of a section 1 claim ... is the existence of an agreement," because "section 1 liability is predicated
upon some form of concerted action." *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996,
999 (3d Cir. 1994). *Twombly* itself is crystal-clear on this: a section 1 claim cannot survive if
the Plaintiffs do not allege "enough factual matter (taken as true) to suggest that an agreement
was made." *Twombly*, 550 U.S. at 556.

   For all of the causes of action accruing prior to 2002, the Complaints contain no
allegation of this required element: an actual agreement to fix prices. This is not the result of
Defendants' "compartmentalizing" Plaintiffs' Complaint, but rather Plaintiffs' failure to carry
their pleading burden. Rule 8 and *Twombly* require Plaintiffs to plausibly allege facts for *each
element* of a cause of action. The mere fact that Plaintiffs may have alleged an agreement
beginning in 2002 does not mean that those allegations can satisfy the pleading requirements for
different causes of action before 2002 and that date all the way back to 1994.

   *Second*, Plaintiffs' response fails to come to grips with the fact that *each* alleged
injury (*i.e.,* each sale at inflated prices) from the unlawful conspiracy gives rise to a separate
cause of action. Under 15 U.S.C. § 15, "a cause of action accrues and the statute begins to run
when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v.
Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971). "In the context of a continuing conspiracy
to violate the antitrust laws, … this has usually been understood to mean that each time a
plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the
damages caused by that act and that, as to those damages, the statute of limitations runs from the
commission of the act." *Id.* As the Supreme Court made clear, "if a plaintiff feels the adverse

impact of an antitrust conspiracy *on a particular date*, a cause of action immediately accrues to him to recover all damages incurred by that date and all provable damages that will flow in the future from the acts of the conspirators *on that date*." *Id*. at 339 (emphasis added).[2]

Plaintiffs allege that they were injured by the purchase of polyether polyols products at prices inflated by the conspiracy. Thus each injurious purchase gives rise to a separate cause of action for that plaintiff. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997).[3] Plaintiffs therefore must plead the existence of an agreement that covers each of these claims. Plaintiffs do not do so here.

Defendants do not suggest (Opp. 10) that Plaintiffs must plead a multiplicity of agreements during the course of a conspiracy. In a given case, it may be sufficient to allege that defendants concluded an agreement, and that subsequent sales at the inflated prices were overt acts in furtherance of that agreement. But a Sherman Act cause of action is not stated unless each injury was the product of a *prior* agreement. Plaintiffs' proposed position is both contrary to law and illogical. There is no basis upon which sales in 1994 can be deemed unlawful on the basis of an agreement in 2002; indeed, under Plaintiff's theory, they would be justified in asserting claims back to 1984, 1974, or beyond.

Defendants are also not arguing (as Plaintiffs insist, Opp. 10), that Plaintiffs must allege an "express agreement" to fix prices. Defendants have never questioned the rule of *United States v. Container Corp. of America*, 393 U.S. 333 (1969), or *King & King Enters. v. Champlin Petroleum Co.*, 657 F.2d 1147 (10th Cir. 1981), that price-fixing agreements can be implied from

---

[2] *Twombly* did not alter this rule. *Twombly* mandated dismissal where the complaint "failed *in toto* to render plaintiffs' entitlement to relief plausible," 550 U.S. at 569 n.14, and a complaint that fails to allege an agreement between defendants fails to establish the pleaders' entitlement to Sherman Act relief.

[3] The accrual of a separate cause of action with each injury, such as a purchase, is the reason a defendant may not recover for injuries occurring from the more than four years prior to suit, absent tolling of the statute of limitations. *Zenith*, 401 U.S. at 338.; *Klehr*, 521 U.S. at 189-90.

conduct.  But *Container Corp.* does not stand for the proposition that any allegation of price discussions among competitors supports an inference of a price-fixing agreement, as Plaintiffs contend.  The "concerted action" that the *Container Corp.* Court found "sufficient to establish the combination or conspiracy" required by section 1 of the Sherman Act consisted of "an exchange of prices to specific customers" by competitors, whereby the defendant would request "the most recent price charged or quoted" and "[e]ach defendant on receiving that request usually furnished the data with the expectation that it would be furnished reciprocal information when it wanted it."  *Container Corp.*, 393 U.S. at 335.  Such behavior demonstrated that the "essence of the agreement was to furnish price information whenever requested," and the allegation showed that exchange of information on specific customer prices was used to restrain competition.  *Id.*

Here, none of Plaintiffs' cursory allegations of price "discussion" remotely suggest an agreement – *i.e.*, a "unity of purpose or a common design and understanding or a meeting of minds" or "a conscious commitment to a common scheme," *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) – to exchange specific customer price information for the purpose of stabilizing prices.  Even if somehow those allegations could be deemed sufficient, that would not save claims dating all the way back to 1994; there is no allegation of a specific meeting even to *discuss* prices before 2000 (as Plaintiffs effectively concede).  *See* Def. Mem. 15 n.7; Opp. 5; Carpenter Compl. ¶ 99; Woodbridge Compl. ¶ 57.[4]

Finally, Plaintiffs' citation to a series of cases (some pre-*Twombly*) in which they claim district courts denied motions to dismiss Sherman Act claims for injuries that occurred

---

[4] It is worth underscoring, in this respect, that the Opt-out Plaintiffs here had full opportunity to gather and plead any facts that might support a pre-2002 agreement through their cooperation agreement with Bayer Corporation.  Despite what Bayer has been able to provide them, Plaintiffs could not allege an agreement occurring prior to 2002.

prior to any alleged agreement does not save their pre-2002 claims.  Opp. 8.[5]  None of those

courts considered the *Zenith* rule that each antitrust injury constitutes a separate cause of action.

Under Rule 8, a plaintiff must show that he is entitled to relief on each cause of action pled, and

no Sherman Act claim can be stated absent a plausible allegation of an agreement causing

antitrust injury on the date in question.  As the court in *In re Hydrogen Peroxide Antitrust*

*Litigation*, 240 F.R.D. 163 (E.D. Pa. 2007), ruled in rejecting those plaintiffs' "unsupported

allegation that defendants engaged in a conspiracy '[b]eginning at least as early as January 1,

1994,'" plaintiffs can only pursue a claim dating from the first price increase allegedly resulting

from an agreement.  *Id.* at 177.  Given that Plaintiffs have similarly failed to allege any

agreement prior to 2002, Plaintiffs cannot smuggle pre-2002 purchases into this case.  *See id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to

relief.'  Fed. Rule. Civ. Proc. 8(a)(2)."  *Iqbal*, 129 S. Ct. at 1950.  All Sherman Act claims

accruing prior to January 21, 2002, the date of the first plausible allegation of a price fixing

agreement, Def. Mem. 5, should be dismissed.[6]

---

[5] This Court has called into question the precedential value of one of the cases cited –  *In re Commercial Explosives Litigation*, Nos. 2:96-MD-1093S, 2:96-CV-709S, 1996 WL 795270 (D. Utah Dec. 20, 1996) – because of its unique facts.  *See* January 9, 2006 Transcript on Motion to Dismiss at 55-56 (Lungstrum: "I must confess, I do read *Commercial Explosives* with a certain eye toward the pragmatism of the district court in that context, I'll confess.").

[6] Plaintiffs fail in their attempt (Opp. 11-13) to distinguish the line of cases dismissing claims on *Twombly* grounds for failure to allege an agreement.  Thus:

- *In re LTL Shipping Services Antitrust Litigation*, No. 1:08-MD-01895-WSD, 2009 WL 323219 (N.D. Ga. Jan. 28, 2009), is directly analogous to the instant case.  The complaint vaguely alleged that defendants shared information "in both private and public settings regarding their fuel surcharge levels," agreed to fix fuel surcharges, and used a common index as a means to set prices.  *Id.* at *3-4.  The court dismissed that complaint for failure to state a claim.  *Id.* at *15.

- The complaint in *In re Late Fee & Over-Limit Fee Litigation*, 528 F. Supp. 2d 953 (N.D. Cal. 2007), like the Complaints here, alleged "several conclusory allegations that the defendants agreed to increase late fees, but provided no details as to when, where or by whom this alleged agreement was reached."  *Late Fee*, 528 F. Supp. at 962.  These "'stray statements' about agreements" which

**B.** **The State Law Claims Similarly Fail for Any Action Accruing Prior to 2002.**

The foregoing analysis applies squarely to the state law claims, which are based on the same allegations.  *Rick-Mik Enters. v. Equilon Enters., LLC*, 532 F.3d 963, 976 n.5 (9th Cir. 2008) (dismissing state law claims for failure to allege a conspiratorial agreement because "[t]he state law antitrust claims are derivative of the federal law claims").  Each requires proof of injury from an agreement, combination or conspiracy.[7]  If this Court were to exercise supplemental jurisdiction over the state law claims pled, it should dismiss all such claims accruing prior to January 21, 2002.

**III.** **PLAINTIFFS FAIL TO PLEAD FACTS TO SUPPORT ANY PRE-1999 CLAIM.**

More than four years into this litigation, the Opt-out Plaintiffs now seek to expand the relevant period by an additional five years to incorporate transactions that occurred as early as 1994.  But as demonstrated in Defendants' opening memorandum, the Complaints satisfy neither the *Twombly* standard nor the standard for fraudulent concealment tolling with respect to the 1994-1998 claims.  Def. Mem. 12-19.

---

(continued from previous page) are "unsupported by concrete allegations about the content and circumstances of any actual agreement" should be dismissed under *Twombly*.  *Id.*

- In *Love Terminal Partners, L.P. v. City of Dallas*, 527 F. Supp. 2d 538 (N.D. Tex. 2007), plaintiffs vaguely alleged (similar to the Complaints here) that defendants met on unspecified occasions during a two-year period and agreed to anticompetitive conduct in order to corner a market and raise prices.  *Id.* at 553.  The court dismissed them because "the pleadings mention[ed] no specific time, place, or person involved in the alleged conspiracy."  *Id.* at 554 (citing *Twombly*, 127 S. Ct. at 1970-71).

- In *Newman v. Universal Pictures*, 813 F.2d 1519 (9th Cir. 1987), plaintiffs tried to maintain a claim for damages resulting from performance of a contract executed before the date of an alleged anticompetitive agreement.  *Id.* at 1522.  Much the same as the *Newman* plaintiffs, Plaintiffs cannot hope to maintain their claims before 2002, the alleged start of the conspiracy, which starts at the time of agreement.  *See id.*

[7] *See* Ind. Code § 24-1-1-1; Tenn. Code § 47-25-101; Wis. Stat. § 133.03.

## A.      The Pre-1999 Allegations Do Not Support an Antitrust Claim.

Before the Court can consider whether Plaintiffs' allegations of fraudulent concealment save their claims from dismissal under the applicable statute of limitations (Opp. 21-23), it must first decide whether they have met their pleading obligations and alleged sufficient facts under *Twombly* concerning the pre-1999 period.  As demonstrated below, they have not.

On their face, the Complaints contain virtually *no* allegations of meetings or agreements in 1994-98, and *none* that would plausibly show an illegal antitrust agreement.  Def. Mem. 14-16.  Instead, the Complaints generically assert that the conspiratorial agreements began in 1994, and that the conspiracy involved "meeting, discussions, and/or communications" between Defendants.  Carpenter Compl. ¶ 95; Woodbridge Compl. ¶ 53.  But not *one* pre-1999 meeting, discussion, communication, or agreement is actually alleged.  *Id.*  While this absence of factual allegations would doom the complaint of a know-nothing plaintiff, it is all the more notable where, as here, the Opt-outs have (in addition to sophisticated counsel) the benefit of full access to Bayer – a manufacturer and a former defendant – whose settlement likely requires it to provide to the Opt-outs whatever information it has that might support their claims.[8]  Despite their "diligent pursuit" of Bayer's cooperation and their "acquisition" of information from Bayer, all Plaintiffs are able to offer is the half-hearted claim that the conspiracy extended "back to at least 1994."  Carpenter Compl. ¶ 112; Woodbridge Compl. ¶ 70.  That these Plaintiffs cannot

---

[8] The Opt-outs have not produced their settlement agreement with Bayer yet, but Bayer's settlement with the class plaintiffs contained an obligation to "provide full cooperation ... with respect to discovery and gathering evidentiary materials relating to Plaintiffs' claims in the Class Actions" including making Bayer employees available for conferences, producing documents, and meeting with Plaintiffs' counsel. Settlement Agreement between Bayer and Class Plaintiffs, at 13-14 (Dkt. 204).  The Opt-outs' repeated references to their pursuit of Bayer personnel and materials confirms that similar undertakings appear in the agreement with these plaintiffs.  Carpenter Compl. ¶ 112; Woodbridge Compl. ¶ 70.

provide a pleading that meets the Rule 8 standard, even after that Bayer cooperation, shows conclusively that they do not have a pre-1999 case that satisfies *Twombly* or that deserves to be litigated.

> **B.     The Pre-1999 Claims Are Not Saved by the Fraudulent Concealment Allegations of the Complaints.**

Even assuming the Opt-outs had sufficiently pled their pre-1999 claims, they have not met the stringent pleading requirements of Rule 9 with respect to their claim of fraudulent concealment.  Their pre-1999 claims necessarily fail.

The Opt-outs assert that they could not have known about pre-1999 conduct until they learned of *Seegott* and the other class complaints that were filed in November 2004.  Even were that true – and for large industry players like Carpenter and Woodbridge, the premise is questionable – that does not excuse them from meeting the standards for fraudulent concealment spelled out in Rule 9(b).  *In re Urethane Antitrust Litig..*, 235 F.R.D. 507, 517 (D. Kan. 2006). Under Tenth Circuit law, concealment allegations must be pled with particularity sufficient to "afford the defendant fair notice of plaintiff's claims and the *factual grounds* upon which [they] are based."  *Koch v. Koch Indus.*, 203 F.3d 1202, 1236-37 (10th Cir. 2000) (emphasis added); *see also* Def. Mem. 15.

Plaintiffs' own brief highlights their failure to meet this standard.  Indeed, the Court need only look at the concealment allegations Plaintiffs make with respect to the post-1999 period as compared to the sparse allegations they were able to marshal related to the pre-1999 period:  the former fill several pages of dense typescript (Opp. 16-21); the latter consist only of the two 1994 industry magazine stories reporting that price increases had been announced, and a set of notice letters from 1998 by which manufacturers separately and routinely notified

customers of price increase effective dates (Opp. at 21-22).[9]  Neither of these allegations, even taken at face value, provides fair notice of the "factual grounds" for the Opt-outs' assertions of concealment, much less fraud.  Two 1994 magazine articles reporting on potential price increases hardly can be characterized as the actions of any Defendant, much less as concealment of price increases or fraud.  One article allegedly reported "that U.S. prices *might* be increased industry wide in the first half of 1995, due to pent-up demand."  Carpenter Compl. ¶ 118.b (emphasis added).  Yet Plaintiffs offer nothing to suggest that this statement was false, despite the fact that, if false, it would be easily demonstrable that no pent-up demand was present at the time.  In the other article, the magazine quoted one Defendant as saying that operating rates were high and "the industry had gone 12 months without a raise."  But again, there is no concealment in such statements and, if they were false, Plaintiffs could have so determined and the Complaints could have alleged that operating rates were in fact low or that an MDI price increase took place in the preceding weeks.[10]

Exposing Plaintiffs' pleading deficiencies and lack of due diligence is not "embroil[ing] the Court in factual disputes that are beyond the scope of a Rule 12(b)(6) motion" (Opp. 22).  Rather it demonstrates that the Opt-outs have not even attempted to meet the Rule 9(b) standard for pleading fraudulent concealment.  Plaintiffs' stale, pre-1999 claims should be dismissed.

---

[9] The Opt-outs attempt to excuse the paucity of pre-1999 allegations by trotting out the rote assertion that "proof of concealment is typically in the hands of defendants and not available to plaintiffs at the pleading stage" (Opp. 15), but of course that "typical" circumstance is not present here, where the Opt-outs had full opportunity to plumb Bayer's records and personnel before filing their Complaints.  Carpenter Compl. ¶ 112; Woodbridge Compl. ¶ 70.

[10] The sole direct action of Defendants that the Complaints cite is a set of price increase announcements made for July 1998.  The Opt-outs similarly make no effort to show any fact tending to establish that the statements made in connection with these announcements – that one producer wanted to achieve higher prices "to make investments to support urethanes growth," that another wanted to offset deteriorating profits due to "increases in environmental and transportation costs," that another wanted to "regain investment profit levels" – were false or fraudulent.

**IV.  THE COURT SHOULD DECLINE JURISDICTION OVER THE STATE LAW CLAIMS, OR ALTERNATIVELY, SHOULD DISMISS THEM AS TIME-BARRED AND LEGALLY INSUFFICIENT.**

The Opt-out's brief coyly refers to "Plaintiffs" collectively throughout the section addressing the state law claims, without acknowledging that a mere nine of the 56 Plaintiffs identified in the Complaints now purport to assert state law claims under the laws of Indiana, Tennessee and Wisconsin.[11] *See* Def. Mem. 4.  As set forth in Defendants' opening memorandum (at 21-22), this expansive multidistrict action already presents a substantial number of complex issues of law and fact without this Court even considering whether to exercise supplemental jurisdiction over state law claims asserted by a small subset of Plaintiffs. Courts in the individual states unquestionably are better situated to adjudicate the novel state law remedies these claims present, particularly where at least one statute has not been interpreted by the courts of its own state for more than a century.

But even if this Court decided to exercise jurisdiction, the state law claims asserted by this small subset of Plaintiffs nonetheless would fail.  As an initial matter, the eight Plaintiffs asserting claims under the laws of Indiana and Tennessee failed to bring them within the respective two- and three-year limitations periods.  And although Plaintiffs contend that the filing of the federal polyether polyols case tolled these statutes of limitations, Tennessee has declined to, and Indiana would not, adopt class action tolling in the cross-jurisdictional context.[12] Moreover, the claims must be dismissed because the Complaints fail to plead the requisite

---

[11] One Plaintiff (Flexible Foam Products) is identified as having maintained facilities in two of the states (Indiana and Wisconsin).  One Plaintiff (Carpenter) is identified as maintaining facilities in Indiana.  Six Plaintiffs (Nu-Foam, Pathway Polymers, Hickory Springs, Huber, J.M. Huber, and Woodbridge Fabricating) are identified as maintaining facilities in Tennessee.  One Plaintiff (Woodbridge Corporation) is identified as maintaining facilities in Wisconsin.

[12] Only the two Wisconsin Plaintiffs' claims might be dismissed without prejudice.  The other Plaintiffs' claims must be dismissed with prejudice, if this Court exercises supplemental jurisdiction to consider them at all, because the Indiana and Tennessee law claims cannot be tolled.  And even the Wisconsin claims do not survive under the substantial effects standard.

intrastate substantial effects or conduct required under the law of each of the three states.

Finally, Plaintiffs' purported "full consideration" remedies violate due process because the state

statutes cannot constitutionally void global supply contracts concluded out of state.[13]

> A.    **This Court Should Decline to Exercise Supplemental Jurisdiction in Light of the Novel Remedies Plaintiffs Seek.**

Notwithstanding Plaintiffs' claims to the contrary (Opp. 24), this Court is not

obliged to exercise supplemental jurisdiction over the state law claims.  Whether other courts

have or have not exercised supplemental jurisdiction to adjudicate disputes involving state

antitrust statutes (*see* Opp. 24) provides little guidance here, where an exercise of supplemental

jurisdiction will not further convenience, fairness, judicial economy, or reduction of costs for the

parties.  28 U.S.C. §1367; *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).

Indeed, other courts handling complex MDL proceedings have declined to entertain claims like

these when they raise novel or complex issues of law; one with respect to the very states' laws at

issue here.  *See In re Vioxx Prods. Liab. Litig.*, No. MDL-1657, 2007 WL 3334339, *6 (E.D. La.

Nov. 8, 2007) (effectively denying supplemental jurisdiction by declining to adopt cross-

jurisdictional tolling in Indiana) (*citing Wade v. Danek Med., Inc.*, 182 F.3d 281, 286-88 (4th

Cir. 1999)); Def. Mem. 22 (citing cases declining supplemental jurisdiction).

The Opt-outs here (1) ask this Court to be the first to apply Indiana's antitrust

statute to extraterritorial conduct, recognizing a "direct effects" test, in contravention of prior

state precedent; (2) seek cross-jurisdictional tolling (as in *Vioxx*) for the claims of a state that has

never recognized it; and (3) seek an expansive construction of the "full consideration" remedy to

---

[13] Plaintiffs' assertion that Defendants have failed to make any argument in support of dismissal of the 1994-1998 Wisconsin state law claims (Opp. 25 n.10) is mistaken. Defendants moved to dismiss all state, federal and foreign law claims prior to 2002 for failure to plead a plausible claim of agreement, Def. Mem. 9-19, and all state law claims (including Wisconsin) in their entirety for failure to plead the state jurisdictional elements of those statutes.  Def. Mem. 26-34.

out-of-state purchase agreements that would raise substantial questions about the constitutionality of the pertinent state statutes.  *See* pp. 15-26 *infra*.  There is no need for this Court to embroil itself in these complex issues of state law, or to facilitate the Opt-outs' attempt to generate litigation leverage by pleading claims to unprecedented "full consideration" recovery, given the other burdens of handling these MDL cases.   This Court should dismiss these claims and allow the state courts to make their own determinations on these important questions.

> **B.**     **The Statutes of Limitations for Plaintiffs' Tennessee and Indiana Claims Were Not Tolled During the Pendency of the Federal Class Action.**

There is no dispute that the claims asserted under Indiana and Tennessee law are governed by two-year and three-year statutes of limitations respectively.  Thus, the eight Plaintiffs asserting the Indiana and Tennessee law claims were required to file by November 2006 and 2007 respectively, absent some other basis for tolling.  They did not do so.

In an attempt to excuse their tardiness, Plaintiffs seek to invoke cross-jurisdictional class action tolling, claiming that the statutes of limitation for their *state law* claims were tolled by the filing of the *federal* claims in the *Seegott* complaint prior to certification of the class in 2008.  Because Tennessee has rejected, and Indiana would not adopt, cross-jurisdictional class action tolling, these eight Plaintiffs' state law claims were not tolled and were brought outside the limitations periods.

1.      **Tennessee Has Rejected Cross-Jurisdictional Class Action Tolling.**[14]

Under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), whether exercising supplemental or diversity jurisdiction over state law claims, a federal district court applies state law on questions of substantive law. *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008); *Jones v. United Space Alliance, L.L.C.*, 494 F.3d 1306, 1309 (11th Cir. 2007). Thus, in applying a state statute of limitations, the court looks to the state law of tolling (including tolling of state law claims by federal class actions filed under Federal Rule of Civil Procedure 23). *State Farm Mut. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1230 n.11 (10th Cir. 2008)) (applying Colorado law); *see also Chardon v. Soto*, 462 U.S. 650, 656-57 (1983); 1 *McLaughlin on Class Actions* § 3:14 (5th ed. 2008) ("It bears emphasis that state law claims are subject to state law tolling doctrine regardless of whether the subsequent individual claim is asserted in federal or state court"). Here, Tennessee courts explicitly have rejected the cross-jurisdictional class action tolling advocated by Plaintiffs: Tennessee "simply has no interest, except perhaps out of comity, in furthering the efficiency and economy of the class action procedures of another jurisdiction, whether those of the federal courts or of another state." *Maestas v. Sofamor Danek Group, Inc.*, 33 S.W.3d 805, 808 (Tenn. 2000) (quoting *Wade v. Danek Med., Inc.*, 182 F.3d 281, 287 (4th Cir. 1999)); *see also Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 33 (Tenn. 2007).[15]

---

[14] "Cross-jurisdictional class action tolling" refers (1) to claims brought under the laws of a single sovereign that are claimed to be tolled by the filing of a class action of similar claims in a different sovereign's courts (*e.g.*, state law claims brought first in a class action in federal court and then subsequently sought to be tolled in that state's court) or (2) to claims arising under two different sovereign's laws but brought within a single sovereign's court system (*e.g.*, federal law claims brought first in a class action in federal court, which then are argued to toll state law claims subsequently brought in federal court). This case falls into the latter category.

[15] States often allow intrajurisdictional class action tolling and reject cross-jurisdictional class action tolling. *See, e.g.*, *Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1105 (Ill. 1998) (disallowing cross-jurisdictional class action tolling, but noting that class action tolling is permissible in Illinois); *Newby v. Enron Corp.*, 542 F.3d 463, 471-72 (5th Cir. 2008) (Texas courts would not allow cross-jurisdictional tolling by federal claims to state law claims, but have allowed intrajurisdictional tolling). *See also Tigg*, 232 S.W.3d at 34-35 (noting Tennessee courts have rejected cross-jurisdictional tolling but not deciding

-15-

Plaintiffs ask this Court to ignore this well-settled Tennessee law and instead apply the multifactor test of *In re Linerboard Antitrust Litigation*, 223 F.R.D. 335, 342 (E.D. Pa. 2004).  Opp. 28-30.  But state (not federal) law governs state statutes of limitations in this Circuit, *State Farm*, 540 F.3d at 1230 n.11, and *dicta* cited by Plaintiffs from *Linerboard* asserting a purported superior federal "interest" in state claims appended to federal class actions does not apply as "*American Pipe*[16] – which allows tolling within the federal court system in federal class actions – does not mandate cross-jurisdictional tolling as a matter of state procedure."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008).  Similarly, the suggestion that the *Maestas* rule should not apply on the basis of *Linerboard*'s logic (Opp. 29 n.16) is not well-taken.  The Tennessee high court has squarely reaffirmed *Maestas* well after *Linerboard* was decided.  *See Tigg*, 232 S.W.3d at 33 (restating *Maestas* rule against cross-jurisdictional tolling three years after *Linerboard*).[17]

The three-year statute of limitations period began to run, as Plaintiffs admit, no later than the filing of the *Seegott* actions in November 2004.  Having failed to assert their Tennessee claims prior to November 2007, Plaintiffs' claims are time-barred.

---

on intrajurisdictional tolling).

[16] *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).

[17] *Linerboard* would encourage the very forum shopping that the *Erie* rule is intended to prevent. Plaintiffs whose Tennessee claims would be time-barred in Tennessee courts would have the improper incentive to file state claims in federal court.  Moreover, the Supreme Court has rejected the argument that there is any paramount interest in federal class-action tolling even as to federal claims.  *See Chardon*, 462 U.S. at 656-57 (refusing to require class-action tolling as to claims under 42 U.S.C. § 1983, to which state limitations periods apply).  The radical proposition that Plaintiffs effectively propose – that Federal Rule of Civil Procedure 23 preempts state tolling rules in applying state statutes of limitations to state law claims – should not be countenanced.

### 2.	Indiana Courts Would Reject Cross-Jurisdictional Tolling, as Have the Vast Majority of States That Have Considered the Doctrine.

The two Plaintiffs' Indiana claims – which are governed by a two-year statute of limitations – are similarly time-barred.[18]  As they did with Tennessee law, however, Plaintiffs seek to circumvent the limitations provision by claiming that because Indiana has adopted a class action rule similar to Rule 23, their claims somehow survive.  Opp 29.  But recognition of the viability of claims brought on behalf of a class are not at issue; rather, the question is whether Indiana courts allow cross-jurisdictional tolling.  Although Indiana has not answered this question for itself, the majority of states that have addressed the issue have rejected cross-jurisdictional tolling.  This Court should do likewise.

As an initial matter, Indiana courts appear not to have decided the question of cross-jurisdictional tolling presented here.  That alone counsels in favor of dismissing Plaintiffs' claims from this federal action, as this Court should not supplant the Indiana legislature or the Indiana courts in fashioning a new tolling rule under Indiana law:  "[f]ederal courts ordinarily will not incorporate the tolling doctrine into state law unless and until it is recognized by the state."  1 *McLaughlin on Class Actions* § 3:14 (5th ed. 2008); *see Clemens*, 534 F.3d at 1025 ("the weight of authority and California's interest in managing its own judicial system counsel us not to import the doctrine of cross-jurisdictional tolling into California law"); *Wade*, 182 F.3d at 287-88 (4th Cir. 1999).  Moreover, the one federal court that attempted to determine Indiana law on this point *declined* to adopt cross-jurisdictional class action tolling for Indiana law claims.  *In re Vioxx Prods. Liab. Litig.*, 2007 WL 3334339, at *6 (citing *Wade*, 182 F.3d at 287).

---

[18] Plaintiffs' Wisconsin claims are governed by a six-year statute of limitations.  Because these claims accrued as of each alleged purchase at an inflated price, Plaintiffs' Wisconsin claims before October 2002 must be dismissed absent tolling.  *See supra* at 4-5; *Zenith*, 401 U.S. at 339.  The analysis in this section showing that tolling is unavailable for the Indiana claims applies equally to the Wisconsin claims.  Accordingly, Plaintiffs' Wisconsin claims before October 2002 should be dismissed.

Even if this Court were inclined to draft a new rule of Indiana law, it should reject cross-jurisdictional tolling as have the majority of states that have considered the issue.[19]  *See Tigg*, 232 S.W.3d at 34 (collecting cases).  The Opposition offers no grounds for concluding the Indiana courts would adopt the minority rule permitting such tolling.  *Clemens*, 534 F.3d at 1025 ("few states" have permitted it).  And there is no reason for this Court – assuming it elects to exercise supplemental jurisdiction over the Indiana law claim of the two affected Opt-out Plaintiffs – to find to the contrary.  Having failed to bring their Indiana state law claims prior to November 2006, Plaintiffs' claims must be dismissed.

Finally, the Opposition's reliance on *American Pipe*, 414 U.S. 538, is misplaced where, as here, the claims are brought under a different cause of action, whether or not the facts underlying the claims are "substantially similar."  *See* Opp. 26-28.  Other courts in this Circuit have held that a class action tolls only "those particular claims actually asserted in the class

---

[19] Courts that have considered cross-jurisdictional tolling and have declined to adopt it include *Easterly v. Metro. Life Ins. Co.*, Nos. 2006-CA-001580-MR, 2006-CA-001687-MR, 2009 WL 350595, at *5 (Ky. App. Feb. 13, 2009) (**Kentucky**); *Clemens*, 534 F.3d at 1025 (**California**); *Newby*, 542 F.3d at 472 and *Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 758 (Tex. App. 1995) (**Texas**); *One Star v. Sisters of St. Francis*, 752 N.W.2d 668, 681 & n.4 (S.D. 2008) (**South Dakota**)); *Newport v. Dell*, No. CV-08-0096-TUC-CKJ(JCG), 2008 WL 4347311, at *5 (D. Az. Aug. 21, 2008) (**Arizona**); *In re Vioxx Prods. Liab. Litig.*, 2007 WL 3334339, at *6 (**Indiana**); *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 811 (E.D. La. 2007) (**Puerto Rico**); *In re Vitamins Antitrust Litig.*, 183 Fed. Appx. 1, 1 (D.C. Cir. 2006) and *Senger Bros. Nursery v. E.I. Dupont De Nemours & Co.*, 184 F.R.D. 674 (M.D. Fla. 1999) (**Florida**); *Bozeman v. Lucent Techs., Inc.*, No. 2:05 CV 45 A, 2005 WL 2145911, at *3 (M.D. Ala. Aug. 31, 2005) (**Alabama**); *Todd v. F. Hoffman-La Roche, Ltd.*, No. 98 C 4574, 2004 WL 5238952, at 5-6 (D. Kan.. Aug. 20, 2004) (trial order) (**Kansas**); *Williams v. Dow Chem. Co.*, No. 01 Civ. 4307(PKC), 2004 WL 1348932, at *13 (S.D.N.Y. June 16, 2004) (citing *Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1105 (Ill. 1998)) (**Illinois**); *Ravitch v. Pricewaterhouse*, 793 A.2d 939, 941-43, 945 (Pa. Super. 2002) (**Pennsylvania**); *Thelen v. Mass. Mut. Life Ins. Co.*, 111 F. Supp. 2d 688, 694 (D. Md. 2000) (**Maryland**); *Wade v. Danek Med., Inc.*, 182 F.3d 281, 286-88 (4th Cir. 1999) (**Virginia**); *Barela v. Showa Denko, K.K.*, 1996 WL 316544, at *4 (D.N.M. 1996) (**New Mexico**); *In re Agent Orange Product Liability Litig.*, 818 F.2d 210, 213 (2d Cir. 1987) (**Hawaii**); *cf. Haggerty v. Bethel*, No. 25653-3-II, 2001 WL 310369, at *1 (Wash. App. Div. 2 Mar. 30, 2001) (no cross-jurisdictional tolling in **Washington** where *individual* plaintiff filed state law claim in federal court, which was dismissed on lack of diversity grounds, and refiled "substantially similar" complaint in state court).  Plaintiffs point to only two state cases recognizing cross-jurisdictional tolling.  Opp. 26 n.11 (citing *Vaccariello v. Smith & Nephew Richards, Inc.*, 763 N.E.2d 160, 163 (Ohio 2002) (**Ohio**); *Staub v. Eastman Kodak Co.*, 726 A.2d 955, 965-67 (N.J. Super. 1999) (**New Jersey**)).

action." *See, e.g.*, *Cahill v. Am. Family Mut. Ins. Co.*, No. 07-cv-01910, 2009 WL 973565, at *5 (D. Colo. Apr. 9, 2009).  The *Cahill* court denied tolling for claims of fraud and misrepresentation where a previous class action alleged claims for breach of contract and deceptive trade practices arising out of the same set of facts.  *Id.*  Plaintiffs (Opp. 27) attempt to distinguish this line of cases by suggesting that this Court's decision in *In re Independent Services Organizations Antitrust Litigation*, No. MDL-1021, 1997 WL 161940 (D. Kan. Mar. 12, 1997) at *5, broke new ground, but in that instance, the complaints for which tolling was sought were "virtually identical" because "[b]oth actions involve[d] the same legal theory" under section 2 of the Sherman Act and similar facts.  *Id.*; *see also Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 467 n.14 (1975) ("Only where there is complete identity of the causes of action" will tolling be assured).  This contrasts with the present case, where Plaintiffs seek tolling of causes of action different from those brought in the federal class action proceeding in this Court.[20]  Plaintiffs' state law claims should be dismissed.

**C.    The State Law Claims Should Not Proceed Because Plaintiffs Fail to Allege an Agreement in Indiana or Substantial Effects in Tennessee and Wisconsin.**

If Plaintiffs' state law claims are to survive, they must not only overcome the relevant statute of limitations (and as detailed above, they cannot), but their allegations must also conform to the requirements of the state antitrust provisions under which they seek relief.  Thus, the two Plaintiffs seeking Indiana recoveries must allege that the anticompetitive agreement was made in Indiana.  Similarly the eight Plaintiffs seeking Tennessee and Wisconsin recoveries must

---

[20] Plaintiffs cite to *Crown, Cork & Seal*, 462 U.S. 345, 355 (1983), and *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985), for the proposition that the class action federal law claims toll the state law claims here.  Opp. 27.  *Tosti* and *Crown* are inapplicable because they allowed tolling of federal law claims by federal law claims, *not* the tolling of state law claims by federal law claims (as Plaintiffs seek here).

allege a substantial effect on commerce in those states.[21]   Despite the considerable amount of their brief devoted to these issues (Opp. 31-38), Plaintiffs fail in both instances.

### 1. Indiana Law Requires That the Alleged Anticompetitive Agreement Be Made in Indiana.

It has been the law in Indiana for over ninety years that for Indiana Code § 24-1-1-1 to apply,[22] the alleged anticompetitive agreement must be made in Indiana.  *Over v. Byram Foundry Co.*, 77 N.E. 302, 304 (Ind. App. 1906).  Having alleged no Indiana-centric antitcompetitive agreement, it is not surprising that Plaintiffs characterize the *Byram* court's interpretation of § 24-1-1-1 as *dicta* (Opp. 31-32), but cite no case in the 100 years since the case was decided that narrows it or that questions its holding that the allegedly output-restricting contract "must be made within the state."  77 N.E. at 304.  Moreover, there is no distinction between the kind of contracts at issue here and in Byram; the statute outlaws "arrangements, contracts, agreements, trusts or combinations between persons who control the output of any article of merchandise" for one of four unlawful purposes.  Ind. Code § 24-1-1-1.

While Plaintiffs' characterization of *Byram* does not save their claims from dismissal, it does help illustrate the problem that would be multiplied many times over if the Court chooses to exercise supplemental jurisdiction over these state law claims:  the dearth of case law interpreting this century-old statute would require this Court to divine how the Indiana courts would rule on whether the 1906 *Byram* decision remains authoritative on the issue of

---

[21] One Plaintiff (Flexible Foam Products) seeks recovery under Indiana and Wisconsin law.

[22] Contrary to the Opt-outs' assertion (Opp. 31-33), this statute (unlike certain provisions of the Sherman Act) embodies the common law policy against contracts in restraint of trade, and is *not* directly inspired by the Sherman Act.  *Cf. Perry v. Hartz Mountain Corp.*, 537 F. Supp. 1387, 1390 (noting that *other* provisions of the Indiana act were inspired by the Sherman Act).  Even if § 24-1-1-1 were inspired by the Sherman Act, Indiana courts are free to interpret their own statutes independent of the Sherman Act.  *See California v. ARC Am. Corp.*, 490 U.S. 93 (1989) (states may allow indirect purchaser suits even if federal law does not allow such suits).

which contracts are within the 1897 statute's reach.[23]  Plaintiffs' response offers no good reason for this Court to enter that thicket.

>           2.      **Plaintiffs Have Not Alleged Substantial In-State Effects in Tennessee and Wisconsin.**

The Tennessee and Wisconsin statutes apply only where "(1) actionable conduct, such as the formation of a combination or a conspiracy, occurred within this state, even if its effects are felt primarily outside [of the state]; or (2) the conduct complained of *substantially affects* the people of [the state] and has impacts in this state, even if the illegal activity resulting in those impacts occurred predominantly or exclusively outside this state."  *Meyers v. Bayer AG*, 735 N.W.2d 448, 464 (Wis. 2007); *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 523 (Tenn. 2005).  Under this test, "a complaint must allege effects on [the state's commerce], and not merely nationwide effects."  *Id.* at 463-64; *Freeman*, 172 S.W.3d at 524; *Meyers*, 735 N.W.2d at 460 n.11 (requiring "significant injury to trade and economic competition occur[ing] in the state"); Def. Mem. 29.  Here, the eight Plaintiffs seeking redress under these statutes have failed to make any plausible allegation of such substantial effects on Tennessee and Wisconsin commerce, requiring dismissal of these claims.

Notwithstanding Plaintiffs' protestations to the contrary (Opp. 34 n.20, 34-38), both Wisconsin's and Tennessee's highest courts expressly rely on the Sherman Act in deriving their "substantial effects" standard.  *Freeman*, 172 S.W.3d at 523 ("Federal courts have applied *the* substantial effects standard to the Sherman Antitrust Act") (emphasis added) (citations omitted); *Olstad v. Microsoft Corp.*, 700 N.W.2d 139 (Wis. 2005) (noting that the state statute

---

[23] Notably the Indiana legislature reenacted the statute with no substantive changes in 1986, and it manifested no disapproval of the decision.  *See* Ind. Code § 24-1-1-1 (only changes in amendment in 1986 substituted "April 14, 1897" for "the passage of this act").

was patterned on the Sherman Act).  As such, this Court should look to federal law when interpreting the substantial effects test in these two states.  *See id.*; Def. Mem. 27-28.[24]

Applying that standard, the first flaw of the Complaints (and Plaintiffs' opposition brief) is that they fail to allege any cognizable "effect" on Tennessee or Wisconsin commerce. As the Supreme Court (and many other courts) have noted, the effect on domestic commerce of extraterritorial price-fixing is typically that "the conspiracy brought about higher domestic … prices."  *F. Hoffmann-LaRoche, Ltd.  v. Empagran, S.A.*, 542 U.S. 155, 160 (2004); Def. Mem. 29-30.  Yet the Complaints do not claim that Defendants' alleged price-fixing conduct in other states caused polyether polyol products to be sold at higher prices in Tennessee or Wisconsin, or that Plaintiffs purchased product in Tennessee or Wisconsin at those higher prices.  Instead, as Plaintiffs acknowledge, the Complaints allege only "shipments" of products *purchased elsewhere* into Tennessee or Wisconsin.  Opp. 37.[25]  Without relevant citation, Plaintiffs urge that it is enough if "goods … were … put into the stream of commerce in these states," Opp. 37, or if "goods arrive into the states through interstate commerce," Opp. 38.  But pleading (or arguing) stream-of-commerce is not enough; the law requires that "the alleged anticompetitive conduct affects Tennessee [or Wisconsin] trade or commerce to a substantial degree."  *Freeman*,

---

[24] Scholars debate whether the language of the FTAIA – requiring "direct, substantial, and reasonably foreseeable effects"– codified or amended the pre-existing "substantial effects" test of *Alcoa*, and the Supreme Court has not answered the question.  *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 797 n.23 (1993); Philip E. Areeda & Herbert Hovenkamp, I.B. *Antitrust Law* ¶ 272i.1. (3d ed. 2006).  This Court need not resolve that question to determine that Plaintiffs here have failed to state a claim. Plaintiffs have not alleged any "substantial effects" on in-state commerce under any standard, nor have they alleged injury arising from any substantial effect on in-state commerce.

[25] Plaintiffs use elliptical phrasing, stating that they "had a significant presence in these states and purchased Polyether Polyol Products at artificially inflated prices from Defendants," Opp. 37, but are careful not to say – and the Complaints do not allege – that they ever purchased product in Wisconsin or Tennessee.  Nor do they allege any injury to commerce in downstream products within the states.  Def. Mem. 30-31.

172 S.W.3d at 523; Areeda, ¶ 272, at 287 ("substantial effects" test requires showing of injury to domestic *competition*, not just domestic *competitors*).[26]

        The second major flaw in the Complaints and Opposition is that Plaintiffs do not allege any injury proximately caused by the alleged effects on Tennessee and Wisconsin commerce.  Plaintiffs ignore the fact that the reason that state antitrust statutes have been permitted to reach extraterritorial conduct is "to remedy *in-state* harm."  I ABA Antitrust Law Developments 629 (6th ed. 2007); *Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 682-83 (Tex. 2006); Def. Mem. 26-27.  Plaintiffs' untenable construction of the Tennessee and Wisconsin antitrust statutes – that they reach conspiratorial conduct occurring *out of state* to remedy injury occurring *out of state*, merely if the conspiracy had some effect on in-state commerce – is breathtaking in its scope and is completely unsupported by the law.  To find otherwise (and adopt Plaintiffs' reading of the statutes) would violate principles of prescriptive comity – which requires construction of antitrust statutes to minimize "unreasonable interference" with the prescriptive jurisdiction of other sovereigns, *Empagran*, 542 U.S. at 156; *Harmar*, 218 S.W.3d at 682-83 – and of constitutional avoidance (since a statute of this scope

---

[26] Plaintiffs fail in their attempt to distinguish various adverse cases on their facts.  Plaintiffs run from the analysis of *Emergency One, Inc. v. Waterous Co.*, 23 F. Supp. 2d 959 (E.D. Wis. 1998), Opp. 35 n.21, but the Wisconsin Supreme Court expressly relied on *Emergency One*, noting that the "adverse effects" standard under which that case was decided "is, in essence, the [substantial effects] test we adopted in *Olstad*." *Meyers*, 735 N.W.2d at 459 (citing *Emergency One*, 23 F. Supp. 2d at 969-70).  Moreover, Plaintiffs misstate the holding of *Emergency On*e when they claim that it merely held "that a plaintiff may simultaneously allege conspiratorial conduct under the federal and Wisconsin laws." Opp. 35 n.21.  In fact, the court concluded that a complaint "d[id] not allege significant and adverse effects on economic competition in Wisconsin" and therefore should be dismissed.  *Meyers*, 735 N.W.2d at 460 (quoting *Emergency One*, 23 F. Supp. 2d at 971).

    Similarly, Plaintiffs cannot glean support from *California v. Infineon Techs*, 531 F. Supp. 2d 1124, 1159-60 (N.D. Cal. 2007).  The district court there correctly dismissed Tennessee claims where the allegations were made "with no differentiation among particular states as to which Plaintiffs and consumers paid the artificially high prices, or even purchased [the] products.").  If *arguendo* the *Infineon* court permitted the separate Wisconsin claim to survive without similar allegations because it applied a state pleading standard, Opp. 35 n.22, the *Infineon* court erred.  *Twombly* governs pleading in federal court, and requires plausible and not conclusory allegations of the elements of state law claims as well as federal claims.  Def. Mem. 7.

would almost certainly be unconstitutional under the Commerce Clause, *Healy v. Beer Inst.*, 491 U.S. 324, 326 (1989)). The Sherman Act affords a remedy only where the plaintiff's injury is proximately caused by the domestic effects of extraterritorial conduct. *Empagran, II, S.A. v. F. Hoffmann*, 417 F.3d 1267, 1271 (D.C. Cir. 2005); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 985-86 (9th Cir. 2008). The same is true for the statutes of Tennessee and Wisconsin. *See generally* Def. Mem. 32-33.

Finally, it is important to note that while the relevant statutes and decisions interpreting state law are dispositive of Plaintiffs' Tennessee and Wisconsin claims, the fact that there is a dispute over the statutes' reach and applicability underscores the novelty, burden, and complexity this Court will encounter should it exercise supplemental jurisdiction as the nine Plaintiffs with state law claims now request. The Court should refuse Plaintiffs' invitation to make new state law and decline to exercise supplemental jurisdiction over these claims.

**D.      Plaintiffs Are Not Entitled to Their Purported Remedy of "Full Consideration" Under the Antitrust Statutes of Indiana, Tennessee and Wisconsin Because Rescission of Out-Of-State Contracts Would Violate Due Process.**

As detailed in Defendants' opening brief, Plaintiffs' choice of state statutes under which to sue was no accident. Def. Mem. at 19-21. Indiana, Tennessee, and Wisconsin were specifically picked because each state's statute purports to include "full consideration" remedies that, if applied as Plaintiffs advocate, would completely invalidate supply contracts governing transactions outside of those states and award Plaintiffs a windfall. Such a result, however, would plainly violate due process. *N.Y. Life Ins. Co. v. Head*, 234 U.S. 149, 161 (1914); *Home Ins. Co. v. Dick*, 281 U.S. 397, 407-08 (1930).

Plaintiffs cannot save their claims by arguing that they "are not seeking the rescission of contracts, but seek the application of the remedies of these state's antitrust statutes."

Opp. 40.  That is a distinction without a difference.  The plain language of the state statutes at issue indicates that Plaintiffs, if they succeed on these claims, will have a judgment that the purchase contracts through which the conspiracy was allegedly implemented are "against public policy, unlawful, and void," Ind. Code § 24-1-1-1; Tenn. Code § 47-25-101, or are "void" such that "no recovery thereon or benefit therefrom may be had by or for such person," Wis. Stat. § 133.14.  The remedy of full consideration (like any rescissionary remedy) is *predicated* on the voiding of these contracts.  Wis. Stat. § 133.14; Ind. Code § 24-1-1-5; Tenn. Code § 47-25-106.  But states lack authority to void contracts executed and performed out of state.  Def. Mem. 34-35.  Even if they were permitted under the Commerce Clause to pass antitrust statutes to remedy injuries for conduct that has substantial effects on domestic commerce, there is still a separate due process limit on the extraterritorial reach of a state's ability to invalidate out-of-state contracts.  *Id.*  Plaintiffs' state law claims should be dismissed.

## V.     THE CLAIMS BROUGHT BY OR ON BEHALF OF PARENTS AND AFFILIATES SHOULD BE DISMISSED FOR LACK OF STANDING.

Rather than respond to Defendants' argument that Plaintiffs lack standing to assert claims on behalf of unnamed entities that are not parties to this litigation, Def. Mem. 36, Plaintiffs attempt to dismiss it in a footnote stating that "Plaintiffs have not asserted claims on behalf of unnamed entities *unrelated* to Plaintiffs."  Opp. 1 n.1 (emphasis added).  That glib non-answer is exactly Defendants' point:  *related* "parents, subsidiaries, affiliates, predecessors-in-interest, and assigns" (Carpenter Compl. ¶ 64; Woodbridge Compl. ¶ 23) cannot remain unnamed and must assert their own claims.

While it is improbable that *all* of the subsidiaries, affiliates, predecessors-in-interest, and assigns of the 56 Plaintiffs have antitrust claims, at a minimum it is clear that years into this litigation and eight months after filing the Complaints, Plaintiffs have made no factual

or legal investigation to identify which (if any) related entity has a claim under federal, state, or European law.  Instead Plaintiffs enigmatically tell the Court that "[t]he entities so named are based on the best information available to Plaintiffs to date, given the Plaintiffs' complex corporate structures and corporate histories."  Opp. 1 n.1.  But a plaintiff cannot plead ignorance of its own affairs, simply because counsel may not have a factual or legal basis for claims asserted in federal court.  All the claims of Plaintiffs' affiliates that are not parties to this Complaint (including specifically the "subsidiaries, affiliates, predecessors-in-interest, and assigns" allegations of the Complaints) must be dismissed.

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening memorandum, Defendants' motion should be granted and Plaintiffs' claims dismissed.

Dated: July 9, 2009                                        Respectfully submitted,


   /s/ David F. Oliver                                      /s/ Floyd R. Finch
David F. Oliver (KS Bar # 70731)              Floyd R. Finch, Jr. (KS Bar #16993)
BERKOWITZ OLIVER WILLIAMS                     Shelley A. Runion (KS Bar # 14941)
SHAW & EISENBRANDT LLP                        HUSCH BLACKWELL SANDERS LLP
2600 Grand Boulevard, Suite 1200             4801 Main Street, Suite 1000
Kansas City, MO  64108                        Kansas City, MO  64112
Telephone:  (816) 561-7007                    Telephone:  (816) 983-8000
Facsimile:  (816) 561-1888                    Facsimile:  (816) 983-8080


Andrew S. Marovitz                            Hamilton Loeb
Jason Fliegel                                 Stephen B. Kinnaird
Michael S. Paik                               Jeremy P. Evans
MAYER BROWN LLP                               John P. Gebauer
71 South Wacker Drive                         PAUL HASTINGS JANOFSKY & WALKER LLP
Chicago, IL  60606                            875 15th Street, N.W.
Telephone:  (312) 782-0600                    Washington, D.C.  20005
Facsimile:  (312) 701-7711                    Telephone:  (202) 551-1700
                                              Facsimile:  (202) 551-1705

*Counsel for BASF SE and BASF Corporation*

                                              *Counsel for The Dow Chemical Company*

 /s/ Brian R. Markley
Brian R. Markley (KS Bar # 17485)
STINSON MORRISON HECKER LLP
1201 Walnut, Suite 2200
Kansas City, MO  64106
Direct Dial:  (816) 691-3215
Facsimile:  (888) 290-2657

Justin T. Toth
John W. Mackay
RAY QUINNEY & NEBEKER PC
36 South State Street, Suite 1400
Salt Lake City, UT  84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543

Harry M. Reasoner
David T. Harvin
Erica Krennerich
VINSON & ELKINS LLP
First City Tower
1001 Fannin Street, Suite 2500
Houston, TX  77002-6760
Telephone:  (713) 758-2368
Facsimile:  (713) 615-5269

*Counsel for Huntsman International LLC*

## CERTIFICATE OF SERVICE

On July 9, 2009, a copy of the foregoing **REPLY MEMORANDUM IN**

**SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS ALL CLAIMS**

was electronically filed with the Clerk of the Court through CM/ECF, which provides electronic

service on Plaintiffs' liaison counsel and each attorney registered for ECF notification.

/s/ Floyd R. Finch, Jr.
Counsel for The Dow Chemical Company

LEGAL_US_E # 84353577.1