IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: URETHANE ANTITRUST LITIGATION ) ) ) This Order Relates to the Polyether Polyol Cases ) ) _____ ) | Case No. 04-MD-1616-JWL |

## ORDER

This multidistrict litigation consists of numerous putative class action lawsuits in which plaintiffs claim that defendants engaged in unlawful price fixing and market allocation conspiracies with respect to urethane chemical products in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.  Currently before the court is defendants' motion (**doc. 746**) to compel plaintiffs to answer Interrogatory Nos. 1–5, 7, and 10 of defendants' first set of merits interrogatories.  Also before the court is defendants' motion (**doc. 765**) to compel plaintiffs to produce documents responsive to Request No. 58 of defendants' first set of merits requests for production of documents.  After carefully considering the parties' arguments, the undersigned U.S. Magistrate Judge, James P. O'Hara, is now ready to rule.  For the reasons set forth below, defendants' motion to compel answers to interrogatories is granted in part and denied in part, and defendants' motion to compel the production of documents is taken under advisement.

## I.    Motion to Compel Answers to Interrogatories

In defendants' motion to compel answers to merits interrogatories, defendants

O:\ORDERS\04-1616-JWL-746, 765.wpd

complained that plaintiffs refused to answer Interrogatory Nos. 1–5, 7, and 10 on the ground that the interrogatories were "premature."  In plaintiffs' response to the motion, plaintiffs withdrew their objections to Interrogatory Nos. 1–5 and 10 in light of an opinion in *In re Motor Fuel Temperature Sales Practices Litigation,*[1] in which the undersigned considered and overruled a similar objection.  Defendants' motion as to Interrogatory Nos. 1–5 and 10, therefore, is denied as moot.

The remaining interrogatory at issue is Interrogatory No. 7.  Interrogatory No. 7 asks plaintiffs to "[i]dentify the date and amount of each price increase announcement that you claim was the result of the conspiracy alleged in the Complaint for TDI, MDI, Polyether Polyols and Systems."

Plaintiffs answered:

> Plaintiffs incorporate each of their General Objections as if fully set forth.  More specifically, Plaintiffs object to this interrogatory to the extent it seeks attorney work product or opinion work product.
>
> Plaintiffs further object to this Interrogatory to the extent that it seeks information that will be the subject of expert testimony, which information will be disclosed in accordance with the Federal Rules of Civil Procedure and the schedule set by the Court.
>
> Plaintiffs further object to this interrogatory as unduly burdensome insofar as it is a premature contention interrogatory not appropriate for the earliest stages of merits discovery. A complete response to this interrogatory depends on merits discovery of Defendants, which Plaintiffs have yet to obtain. Plaintiffs reserve the right to supplement their Response to this interrogatory after merits and expert discovery have concluded.

---

[1] Case No. 07-1840, doc. 620.

In response to defendants' motion to compel, plaintiffs abandon all of their objections except the objection that the interrogatory is premature because it seeks an answer that requires detailed expert analysis. Plaintiffs argue that they only will be able to answer this interrogatory after their economist has examined defendants' contemporaneous sales and cost data to determine which price-increase announcements were collusive.

Defendants assert that plaintiffs' argument is belied by the Amended Complaint (doc. 307). In paragraph 54 of the Amended Complaint, plaintiffs set forth a number of specific dates and amounts of price-increase announcements allegedly made by defendants, as well as the allegedly false and pretextual reasons for those increases. Defendants state that Interrogatory No. 7 simply seeks to discover any additional price-increase announcements known to plaintiffs upon which plaintiffs base their contentions. Defendants note that paragraph 55 of the Amended Complaint suggests that plaintiffs' conspiracy claims are based on additional price-increase announcements not discussed in paragraph 54.[2] Defendants contend that the purpose of Interrogatory No. 7 is to obtain *facts* (i.e., the date and amount of each announcement that plaintiffs claim was fixed) and state that they are not interested, at least not at this stage of the litigation, in the interpretation that plaintiffs' economists may give to the facts.

The court overrules plaintiffs' objection to Interrogatory No. 7. "An interrogatory

---

[2] Doc. 307 at 17 ("These and other false or misleading explanations for price increases on Polyether Polyol Products lulled Plaintiffs into believing that increases were the normal result of competitive market forces rather than the product of collusive efforts.")

may reasonably ask for the material or principal facts which support a party's contentions in the case."[3]  The purpose of a contention interrogatory "is to narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondent's position."[4]  Although plaintiffs' expert *may* identify additional price-increase announcements that support plaintiffs' claims,[5] plaintiffs may not shirk their duty of answering Interrogatory No. 7 now "with whatever information they have."[6]  If more information responsive to this interrogatory becomes available, plaintiffs should supplement their answer in accordance with Fed. R. Civ. P. 26(e).  Accordingly, defendants' motion to compel is granted as to Interrogatory No. 7.  Plaintiffs shall fully respond to Interrogatory No. 7 by **July 24, 2009**.

---

[3] *Steil v. Humana Kan. City,  Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000) (citing *IBP, Inc. v. Mercantile Bank of Topeka,* 179 F.R.D. 316, 321 (D. Kan. 1998)).

[4] *Id.* (citing *Towner v. Med James, Inc.*, No. 94-2285, 1995 WL 477700, at *3 (D. Kan. Aug. 9, 1995)).

[5] The court is not convinced that production of the requested facts requires input by plaintiffs' expert.  As argued by defendants, this case has been pending for more than four years and during that time plaintiffs should have gathered the relevant facts.

[6] *Western Res., Inc. v. Union Pacific R.R.*, No. 00-2043, 2001 WL 1718130, at *3 (D. Kan. Nov. 26, 2001) (internal quotations and citations omitted); *see also Bohannon v. Honda Motor Co., Ltd.*, 127 F.R.D. 536, 538 (D. Kan. 1989) (requiring plaintiff to answer contention interrogatory despite plaintiffs' argument that he could not answer until his expert evaluated material that defendant would provide in discovery); *Cook v. Rockwell Intern. Corp.*, 161 F.R.D. 103, 105–06 (D. Colo. 1995) (rejecting plaintiffs' argument that discovery requests were premature because they required plaintiffs to consult with their expert before responding).

**II.      Motion to Compel the Production of Documents**

Defendants seek an order compelling plaintiffs to produce documents—or, more accurately, one document—responsive to Request No. 58 of defendants' first set of merits requests for production of documents.  Request No. 58 asked plaintiffs to "[p]roduce each document Plaintiffs (including their counsel) provide or provided to Bayer Corporation, Bayer AG and/or Bayer MaterialScience LLC (including their counsel) relating to the unlawful agreements alleged in your Complaint."  Plaintiffs objected to this request on the ground that it sought information that plaintiffs provided the Bayer defendants in settlement negotiations "and would require disclosure of Plaintiffs' work product or information protected by the settlement negotiations privilege."  Through the meet-and-confer process, plaintiffs identified a single document responsive to the request ("the Bayer document").  Plaintiffs stated that the document was created by plaintiffs' counsel for the specific purpose of furthering settlement negotiations with the Bayer defendants and contains information about facts and evidence that support plaintiffs' claims.  Plaintiffs continue to resist production of the document.  Plaintiffs assert that they have set forth all of the material facts known to plaintiffs in their responses to interrogatories, including all of the material facts contained in the Bayer document.  The only information that defendants can obtain from the Bayer document itself, therefore, is "the settlement strategy, thought process, and work product of Plaintiffs' counsel."[7]

---

[7] Doc. 779 at 2.

Federal Rule of Civil Procedure 26(b) governs the scope of discovery and broadly permits the discovery of all information that could potentially be relevant to a claim or defense of any party.[8]  There are exceptions to this liberal discovery rule, however, and material that is privileged or unreasonably cumulative of material already produced may be precluded from production.[9]  The court therefore considers whether plaintiffs are properly withholding the Bayer document on the ground that it is subject to a settlement privilege, on the ground that it is subject to a work-product privilege, or on the ground that it is unreasonably cumulative.

### A.  Is the Bayer Document Protected by a Settlement Privilege?

Plaintiffs' initial argument is that because the Bayer document was created specifically for settlement negotiations with the Bayer defendants it is protected by a settlement privilege.  "As the party asserting a privilege, [plaintiffs] ha[ve] the burden of establishing its existence."[10]  As plaintiffs acknowledge, the Tenth Circuit has not addressed whether a settlement privilege exists under federal common law.

Plaintiffs ask the court to follow the Sixth Circuit's opinion in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, which concluded that a "settlement privilege

---

[8] *See Williams v. Sprint/United Mgmt. Co.*, 245 F.R.D. 660, 673 (D. Kan. 2007). There is no dispute that the information in the Bayer Document is relevant.

[9] F.R.C.P. 26(b).

[10] *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-2192, 2008 WL 2548129, at *7 (D. Kan. June 23, 2008).

should exist" and upheld a district court's finding that the content of settlement talks are confidential.[11] The Sixth Circuit reached its holding after considering Federal Rule of Evidence 501[12] and Supreme Court cases stating that Rule 501 permits the recognition of a new privilege when an important public interest outweighs the need for probative evidence.[13] The Sixth Circuit found "a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations" because "[t]he ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system."[14] The court also noted the "inherent questionability of the truthfulness of any statements" made in settlement negotiations.[15]

Defendants, in contrast, ask the court to follow the opinion of U.S. Magistrate Judge Donald W. Bostwick in *Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.*[16] Judge Bostwick considered an argument for the recognition of a settlement privilege and concluded, "Absent direction from the Tenth Circuit, this court will not imply the

---

[11] 332 F.3d 976, 981 (6th Cir. 2003).

[12] Rule 501 states that privileges "shall be governed by the principles of common law as they may be interpreted by the courts of the United States in the light of reason and experience."

[13] *Goodyear*, 332 F.3d at 979–80 (discussing *Jaffee v. Redmond*, 518 U.S. 1 (1996) (recognizing a psychotherapist privilege) and *Trammel v. United States*, 445 U.S. 40 (1980) (recognizing a modified spousal privilege)).

[14] *Id.* at 980.

[15] *Id.* at 981.

[16] No. 05-2164, 2007 WL 1246216 (D. Kan. April 27, 2007).

existence of a federal settlement privilege under either Fed. R. Evid. 408 or under Fed. R. Evid. 501."[17]  Judge Bostwick noted that Fed. R. Evid. 408, which addresses the prohibited and permitted uses of compromise offers as evidence, "governs only *admissibility* of settlement negotiations and not the *discoverability* of such evidence."[18]

Defendants also point the court to the extensive reasoning against the recognition of a settlement privilege given by the District Court for the District of Columbia in *In re Subpoena Issued to Commodity Futures Trading Commission*.[19]  The *Commodity Futures* court discussed four factors that the Supreme Court has considered when assessing a proposed privilege under Rule 501: (1) whether there exists a broad consensus for the privilege in federal and state law, (2) whether Congress has considered the competing concerns but has not recognized the privilege, (3) whether the privilege is on the list of

---

[17] *Id.* at *4.

[18] *Id.* (emphasis in original) (citing *Matsushita Elec. Ind. Co., Ltd. v. Mediatek, Inc.*, No. C-05-3148, 2007 WL 963975 (N.D. Cal. March 30, 2007) and *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364 (N.D. Ill. 2001)).  The court notes that while Judge Bostwick relied, in part, on *White* in refusing to imply the existence of a settlement privilege, *White* only permitted the discovery of the actual settlement agreement; *White* did not compel discovery of documents exchanged during settlement negotiations.  In *Heartland*, both a settlement agreement and communications made during the negotiation were at issue.  Judge Bostwick explicitly did not distinguish between the two categories of documents in addressing the existence of a settlement privilege, *id.* at *2, but he did distinguish between the two in addressing the issue of relevancy, *id.* at *4–5.  In the case at hand, plaintiff has not raised relevancy as an objection, and the court focuses its analysis on whether a settlement privilege should be recognized as applied to the Bayer document exchanged during negotiations.

[19] 370 F. Supp. 2d 201, 207–12 (D. D.C. 2005).

privileges recommended by the Advisory Committee of the Judicial Conference in its proposed Federal Rules of Evidence, and (4) whether the proposed privilege will effectively advance the public good.[20]  Applying the factors, the court first noted that while the Sixth Circuit and a few other federal district courts have recognized a settlement privilege, "a substantial number of cases have rejected such a privilege."[21]  The court found that a consensus of support for the privilege could not be found in either federal or state law.[22] Second, like Judge Bostwick in *Heartland*, the *Commodity Futures* court noted that Congress enacted Fed. R. Evid. 408 to promote the non-judicial settlement of disputes but did not choose to place limits on the discoverability of settlement material.[23]  Third, the court noted that a settlement privilege was not listed among the nine privileges recommended in the proposed Federal Rules of Evidence drafted by the Advisory Committee of the Judicial Conference.  Finally, the *Commodity Futures* court took issue with the "rhetorical argument that a settlement privilege is necessary to preserve the strong public interest in the settlement

---

[20] *Id.* at 208 (citing *Jaffee*, 518 U.S. at 12; *Univ. of Pa. v. EEOC*, 493 U.S. 182, 194 (1990); *United States v. Gillock*, 445 U.S. 360, 365 (1980); and *In re Sealed Case*, 148 F.3d 1073, 1077 (D.C. Cir. 1998)).

[21] *Id.* at 209 (collecting cases on both sides of the issue).

[22] *Id.* at 210 (contrasting *Jaffee*, 518 U.S. at 12, in which "all 50 states and the District of Columbia have enacted into law some form" of the psychotherapist privilege).

[23] *Id.* at 211 ("In fact, the Rule on its face contemplates that settlement documents may be used for several purposes at trial, making it unlikely that Congress anticipated that discovery into such documents would be impermissible.").

of disputes."[24]  The court noted that a compelling argument has been made for the contrary position as well: "To suggest . . . that the prospect of revealing settlement terms to [nonsettling co-defendants] might impede out of court dispositions seems wrongheaded, given that the alternative to settlement would be a double whammy: the loss of the benefit of the bargain and the more public airing occasioned by a fullblown trial."[25]

The court finds that plaintiffs have not met their burden of establishing that a settlement privilege exists to shield the Bayer document from discovery.  Although the Tenth Circuit has not addressed this particular proposed privilege, it has recently addressed whether to create a new privilege for materials surrendered in a government investigation.  In *In re Quest Communications Int'l Inc*., the Tenth Circuit began its analysis by noting that "[m]ore often than not, the Supreme Court has declined to recognize new privileges."[26]  The court stated that an "exception to this trend is *Jaffee*," where the Supreme Court recognized a psychotherapist privilege after finding that it promoted an important public interest, was recognized in the law of every state, and was among the nine privileges originally proposed to be in the Federal Rules of Evidence.[27]  The Tenth Circuit concluded, "In this case, there

---

[24] *Id.* at 212.

[25] *Id.* (quoting *Bennett v. La Pere*, 112 F.R.D. 136, 140 (D. R.I. 1986)).

[26] 450 F.3d 1179, 1197 (10th Cir. 2006) (citing six Supreme Court cases refusing to adopt new privileges).

[27] *Id.* at 1197–98 (citing *Jaffee*, 518 U.S. at 9–15).

are no grounds to buck the trend of declining to create a new privilege."[28]

Plaintiffs have similarly failed to put forth persuasive grounds for the recognition of a settlement privilege.  The court is persuaded by the reasoning in *Commodity Futures* that the factors considered by the Supreme Court (and also acknowledged by the Tenth Circuit in *In re Quest*) when assessing a proposed privilege weigh against the recognition of a settlement privilege.  The court declines to follow the position taken by the Sixth Circuit in *Goodyear*.  The *Goodyear* opinion considered only the public-interest factor, without referencing the remaining factors.  Moreover, as noted in *Commodity Futures*, the public interest in favor of protecting exchanges in settlement negotiation from nonsettling co-defendants may not be as significant as the Sixth Circuit opines.  The court is also persuaded by the fact that the only case within the Tenth Circuit that has considered the issue—*Heartland*—has refused to recognize a settlement privilege.  In the end, plaintiffs have failed to demonstrate that a settlement privilege should be recognized as a "distinctly exceptional" exemption to the general policy of broad discovery.[29]  The Bayer document is therefore not precluded from discovery based on a settlement privilege.

### B.  Is the Bayer Document Protected by the Work-Product Doctrine?

Plaintiffs also argue that the Bayer document is protected by the work-product

---

[28] *Id.* at 1198.

[29] *Jaffee*, 518 U.S. at 9–10 ("When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional.").

doctrine because it reveals plaintiffs' counsel's settlement strategy and mental impressions of the key aspects of plaintiffs' case.[30]   According to plaintiffs, the document "contains Plaintiffs' counsel's distillation of selected facts from their investigative efforts, and their decision as to which particular facts should be disclosed to Bayer in order to induce it to settle."[31]

Defendants do not dispute that the Bayer document constitutes attorney work product. Instead, defendants argue that "any work product protection was purposefully waived when plaintiffs made the calculated decision to disclose the Bayer Document to their adversary."[32] The court agrees.

The work-product doctrine, first recognized in *Hickman v. Taylor*[33] and subsequently incorporated into Fed. R. Civ. P. 26(b)(3), "is an intensely practical doctrine, grounded in the realities of the litigation in our adversary system."[34]   The purpose of the doctrine is to promote the adversary system "by ensuring that an adversary cannot obtain materials that

---

[30] Defendants have presented no evidence that supports their contention that plaintiffs have abandoned this asserted objection.   Accordingly, the court will consider plaintiffs' assertion that the Bayer document is protected from discovery by the work-product doctrine.

[31] Doc. 779 at 9.

[32] Doc. 817 at 5.

[33] 329 U.S. 495, 499–500 (1947).

[34] *In re Quest*, 450 F.3d at 1186 (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)).

its opponent has prepared in anticipation of litigation."[35]  "The privilege derived from the

work-product doctrine is not absolute," however.[36]  "Like other qualified privileges, it may

be waived."[37]

Work-product protection is waived when privileged documents are voluntarily

disclosed to an adversary because "[d]isclosure to an adversary is clearly inconsistent with

the rule's goal of promoting the adversarial system."[38]  "Such a waiver occurs even when

disclosure is made during the course of settlement negotiations."[39]  "The mere fact that

opposing parties may have a common interest in settling claims does not neutralize the fact

---

[35] *McCoo v. Denny's, Inc.*, No. 98-2458, 2000 WL 307315, *2 (D. Kan. March 21, 2000).

[36] *Nobles*, 422 U.S. at 239.

[37] *Id.*

[38] *McCoo*, 2000 WL 307315 at *2; *see also United States v. Ary*, 518 F.3d 775, 783 (10th Cir. 2008) ("Courts will imply waiver when a party claiming the protection has voluntarily disclosed work product to a party not covered by the work-product doctrine."); *In re Quest*, 450 F.3d at 1186–97 (holding that a party waived work-product protection when it tuned over privileged documents to the Department of Justice and the Securities and Exchange Commission as part of the agencies' investigations into the party's business practices, and declining to recognize a selective waiver rule); *Khandji v. Keystone Resorts Mgmt., Inc.*, 140 F.R.D. 697, 699 (D. Colo. 1992) ("Because the work product doctrine is intended to protect the integrity of the adversary system, a voluntary disclosure of information to an adversary constitutes a waiver of the privilege.").

[39] *Khandji*, 140 F.R.D. at 700; *see also In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1988) ("Disclosure to an adversary waives the work product protection as to items actually disclosed, even where disclosure occurs in settlement." (internal quotation marks and citations omitted)); *Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.*, 91 F.R.D. 84, 90 (E.D.N.Y. 1981) ("Disclosure to an adversary waives the work product protection as to items actually disclosed, even where disclosure occurs in settlement.").

of disclosure, because that common interest always exists between opposing parties in any attempt at settlement."[40]   Moreover, when work-product protection is waived as to one adversary, it is waived as to all adversaries.[41]

To the extent that the Bayer document contains attorney work product, its immunity from discovery was waived when plaintiffs intentionally disclosed it to the Bayer defendants during settlement negotiations.  The court therefore finds that the Bayer document may not be withheld based on the work-product doctrine.

### C.  Should the Court Limit Discovery of the Bayer Document as Unreasonably Cumulative?

Plaintiffs' final argument against disclosure of the Bayer document is that all of the material facts set forth in the document have already been disclosed to defendants in plaintiffs' responses to defendants' interrogatories.  Plaintiffs' rely on Fed. R. Civ. P. 26(c)(1)(C) in urging the court to "exercise its broad discretion" and avoid revealing plaintiffs' counsel's settlement strategy and mental impressions.[42]

---

[40] *Khandji*, 140 F.R.D. at 700; *see also In re Chrysler Motors Corp.*, 860 F.2d at 846–47 ("The fact that [the negotiating parties] may have shared a common interest in settling claims . . . does not neutralize the act of disclosure because that common interest always exists between opposing parties in any attempt at settlement.").

[41] *McCoo*, 2000 WL 307315, at *2.

[42] Doc. 779 at 12.  Plaintiffs also cite one case from the District of Kansas, *In re The Dept. of Energy Stripper Well Exemption Litig.*, No. 78-1513, 1988 WL 877684 (D. Kan. Sept. 27, 1988), in support of their argument that discovery should be denied because there are other means available for obtaining the information in the Bayer document.  *Stripper Well* is inapplicable, however, because the documents at issue in that case were found to be protected by the (unwaived) work-product doctrine.

Defendants respond that plaintiffs have not preserved this argument (having not raised it previously), and, in any event, that defendants should not be limited by plaintiffs' view of what facts are material. Defendants also argue that "[p]roduction of the Bayer Document will likely lead to sources of discovery and avenues of inquiry not revealed in the more generic interrogatory answers."[43]

Plaintiffs' reliance on Fed. R. Civ. P. 26(c)(1)(C) is misplaced because Rule 26(c)(1)(C) discusses motions for protective orders and plaintiffs have filed no such motion in this case. However, Fed. R. Civ. P. 26(b)(2)(C) does provide a potential avenue for relief for plaintiffs. Rule 26(b)(2)(C) requires the court, even without a motion, to "limit the frequency or extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative." Plaintiffs suggest that production of the Bayer document would be duplicative because the facts contained therein have been fully set out in plaintiffs' interrogatory answers. Defendants, understandably, are skeptical of this assertion. The court therefore orders plaintiffs to submit the Bayer document to the court for *in camera* review. Plaintiffs' submission of the Bayer document shall be accompanied by a detailed chart showing where each fact set forth in the Bayer document can be found in plaintiffs' interrogatory responses. The Bayer document and the chart shall be submitted to the chambers of the undersigned by **July 24, 2009**.[44] The court retains under advisement

---

[43] Doc. 817 at 10.

[44] Plaintiffs may, of course, choose instead to produce the Bayer document to defendants by this deadline.

defendants' motion to compel production of the Bayer document until such time as the court has had an opportunity to review that document.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1. Defendants' motion to compel answers to interrogatories (doc. 746) is denied as moot as to Interrogatory Nos. 1–5 and 10, and is granted as to Interrogatory No. 7. Plaintiffs shall respond to Interrogatory No. 7 by **July 24, 2009**.

2. Defendants' motion to compel plaintiffs to produce documents responsive to Request No. 58 of defendants' first set of merits requests for production of documents (doc. 765) is retained under advisement. Plaintiffs shall submit the Bayer document for *in camera* review by **July 24, 2009**.

IT IS SO ORDERED.

Dated this 15th day of July, 2009, at Kansas City, Kansas.

  s/James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge