IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: URETHANE ANTITRUST )
LITIGATION )
) Case No. 04-MD-1616-JWL
This Order Relates to the Polyether Polyol Cases )
)
_____ )

## **ORDER**

This multidistrict litigation consists of numerous class action lawsuits in which plaintiffs claim that defendants engaged in unlawful price fixing and market allocation conspiracies with respect to urethane chemical products in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Currently before the court is plaintiffs' motion (**doc. 855**) to compel defendants[1] to produce documents responsive to plaintiffs' discovery requests even if those documents only relate to foreign commerce. After carefully considering the parties' arguments, the undersigned U.S. Magistrate Judge, James P. O'Hara, is now ready to rule. For the reasons set forth below, plaintiffs' motion to compel is granted.

### **I. Background**

Plaintiffs' Consolidated Amended Complaint (doc. 131) claims violations of Section 1 of the Sherman Act and seeks class-wide damages for purchases of Polyether Polyol products in the United States and its territories. Plaintiffs allege that defendants engaged in a conspiracy to fix, raise, maintain, or stabilize the prices of Polyether Polyol

---

[1]Plaintiffs state that they do not move against defendants Lyondell and BASF SE.

products.  On September 23, 2008, plaintiffs served their first set of merits document requests on defendants.  Defendants filed timely objections and responses, and the parties then began the meet-and-confer process to identify, narrow, and resolve discovery disputes.

The parties agreed on particular custodians, located around the globe, whose files would be searched for responsive documents.  The parties could not agree, however, whether responsive documents would be produced if they contained information purporting to relate only to foreign commerce (rather than information relating to U.S. commerce or global commerce that might include U.S. commerce).  While plaintiffs acknowledge that their conspiracy claims are only based on alleged anticompetitive conduct that had an effect on U.S. commerce, they contend that documents relating to foreign sales or commerce are nonetheless relevant to their claims.  Defendants, on the other hand, take the position that documents that reflect matters clearly outside of U.S. or global commerce are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' motion to compel asks the court to resolve this dispute and overrule defendants' relevancy objections.[2]

In addition to raising relevancy objections, defendants objected to certain document requests on the ground that they are overly broad on their face.  Plaintiffs' motion to compel

---

[2] Defendants assert relevancy objections to Request Nos. 7–11 and 16 of Plaintiffs' First Request for Production of Documents to All Defendants in Merits Discovery.

also asks the court to overrule defendants' objections for overbreadth.[3]

## II. Relevancy Objections

Plaintiffs' document requests seek, among other things, the following categories of documents from the files of the agreed-upon custodians: (1) their calendars, travel records, expense reports, telephone records, trade association materials, and identifying information;[4] (2) documents relating to meetings or communications with any of the other defendants or settled defendant Bayer concerning the production, distribution, marketing, or sale of Polyether Polyol products.[5]

In response to plaintiffs' discovery requests, defendants state that they will produce documents that reflect U.S. commerce or global commerce that might include U.S. commerce, but object to producing documents that "clearly relate purely to foreign sales or commerce."[6] Plaintiffs argue that under defendants' proposed standard, evidence relevant to plaintiffs' conspiracy claims would not be produced. For example, a communication that "on its face relates solely to Asian urethanes sales, but reflects a Huntsman executive's opinion that BASF and Bayer 'still keep competition between them on a friendly basis,'"[7]

---

[3] Defendants assert overbreadth objections to Request Nos. 9–11 and 16 of Plaintiffs' First Request for Production of Documents to All Defendants in Merits Discovery.

[4] Request Nos. 7 & 8.

[5] Request Nos. 9–11 & 16.

[6] Doc. 868 at 2.

[7] Doc. 891 at 2, quoting letters of 2/11/1999 from John Delaney of Huntsman to David Fischer, Bob Wood, and Donald Marquette of Dow.

would not be produced.  Likewise, a calendar entry of a BASF executive showing a scheduled meeting with competitors regarding a potential joint venture in Africa would not be produced, even if the meeting occurred shortly before BASF and its competitors each announced a U.S. price increase for Polyether Polyol products.

Under Fed. R. Civ. P. 26(b)(1), discovery may be obtained "regarding any non-privileged matter that is relevant to any party's claim or defense."  Relevancy is broadly construed for pretrial discovery purposes.  Thus, at least as a general proposition, "[a] request for discovery should be allowed 'unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party."[8]

> When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[9]

The question of relevancy naturally "is to be more loosely construed at the discovery stage than at the trial."[10]  "A party does not have to prove a prima facie case to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence."[11]

---

[8]*Sheldon v. Vermonty*, 204 F.R.D. 679, 689–90 (D. Kan. 2001) (citations omitted).

[9]*Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 670 (D. Kan. 2003) (citations omitted).

[10]8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2008, at 99 (2d ed. 1994).

[11]*Mackey v. IBM*, 167 F.R.D. 186, 193 (D. Kan. 1996).

Moreover, in antitrust cases involving allegations of conspiracy, this liberal policy favoring discovery is particularly appropriate because "broad discovery may be needed to uncover evidence of invidious design, pattern, or intent."[12] "Broad discovery is permitted because direct evidence of an anticompetitive conspiracy is often difficult to obtain, and the existence of a conspiracy frequently can be established only through circumstantial evidence, such as business documents and other records."[13]

Permitting discovery of alleged conspirators' foreign activities in cases asserting antitrust violations in the United States is well supported by caselaw. For example, in *In re Automotive Refinishing Paint Antitrust Litigation*, the court held that plaintiffs were entitled to discover evidence relating to defendants' manufacture and sale of automotive refinishing paint in foreign countries to support plaintiffs' domestic conspiracy claims.[14] The court found, "Evidence of cooperation between Defendants in foreign price-fixing . . . would

---

[12]*B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, No. 01-2410, 2003 WL 21939019, at *3 (D. Kan. July 22, 2003) (quoting *United States v. Dentsply Int'l., Inc.,* No. 99-5, 2000 WL 654286, at *5 (D. Del. May 10, 2000))*; see also In re Aspartame Antitrust Litig.,* No. 2:06-CV-1732-LDD, 2008 WL 2275531, at *1 (E.D. Pa. May 13, 2008) ("This broad scope of discovery 'has been held to be particularly appropriate in antitrust cases.'" (citation omitted)); *In re MicrocrystalIine Cellulose Antitrust Litig.,* 221 F.R.D. 428, 429–30 (E.D. Pa. 2004) ("[A] broad scope of discovery is particularly appropriate in antitrust litigation because, for example, relevant business documents pertaining to the antitrust conspiracy may not exist and covert behavior may have to be proven through less direct means."); *Callahan v. AEV, Inc.*, 947 F. Supp. 175, 179 (W.D. Pa. 1996) ("Discovery in an antitrust case is necessarily broad because allegations involve improper business conduct. . . . Such conduct is generally covert and must be gleaned from records, conduct, and business relationships.").

[13]*In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL-1426, 2004 U.S. Dist. Lexis 29160, at *8 (E.D. Pa. Oct. 29, 2004).

[14]Id. at *16.

certainly be relevant to establish the existence of an illegal combination or conspiracy in restraint of trade, which is a required element of a § 1 Sherman Act claim."[15] The court went on to find, "Evidence of foreign price-fixing among Defendants would also be material to prove that they had the opportunity and ability to engage in domestic price-fixing for automotive refinishing paint."[16]

Similarly, in *In re Vitamins Antitrust Litigation*, the court permitted the discovery of foreign transactional data and information concerning bid prices and contracts, among other things.[17] The court rejected a geographical limit, substantively identical to the one proposed by defendants in this case, which would have restricted discovery to documents or information concerning the United States, the world as a whole, or any region of which the United States is a part. The court ruled that, although "plaintiffs' claims are limited to those injuries with a sufficient United States nexus," the foreign-commerce information was relevant "to show the breadth of the conspiracy, the role that each defendants' executive played in implementing, expanding, enforcing and concealing the conspiracy, and how the conspiracy was maintained for the length of time alleged."[18] Moreover, the court found, documents referencing only foreign transactions could nonetheless "lead to the discovery of other admissible information by allowing plaintiffs to discover 'the identity and location of

---

[15]*Id.* at *12.

[16]*Id.*

[17]No. 99-197TFH, 2001 WL 1049433, at *11 (D. D.C. June 20, 2001).

[18]*Id.*

persons having knowledge of any discoverable matter,' which is explicitly authorized by Revised Fed. R. Civ. P. 26(b)(1)."[19]

This liberal discovery approach to documents discussing purely foreign activities has been followed by a number of other courts that have addressed the issue in the domestic antitrust context.[20] Indeed, defendants have cited no authority to the contrary.

In light of the particularly broad scope that relevance is given in antitrust cases and considering the reasoning of the opinions discussed above, the court finds that the discovery requested by plaintiffs, without geographic limits, is relevant to their claims. Under the test for relevancy, it is not clear to the court that documents referencing foreign commerce "can have no possible bearing'"[21] on plaintiffs' claims that defendants participated in a conspiracy to allocate the market and fix prices for Polyether Polyol products in the United States. To establish a claim under § 1 of the Sherman Act, plaintiffs must show a conspiracy among

---

[19]*Id.*

[20]*See, e.g., In re Aspartame Antitrust Litig.*, 2008 WL 2275531, at *2 (holding that "information and documents that relate, to among other things, the non-U.S. manufacture, sale and distribution of aspartame may prove relevant to establishing the existence of a global conspiracy to allocate the market for aspartame, the ability of market participants to engage in domestic price fixing and the mechanisms employed by market participants in price fixing); *In re Plastics Additives Antitrust Litig.*, No. 03-2038, 2004 WL 2743591, at *14 (E.D. Pa. 2004) (finding documents produced to a foreign investigative body relevant because "these documents may lead to evidence that illuminates defendants' motive and opportunity for the alleged conspiracy within the United States, the breadth of the conspiracy, and the manner by which defendants fraudulently concealed the conspiracy from plaintiffs"); *Dentsply*, 2000 WL 654286, at *5–6 (permitting discovery of foreign market data as relevant to Sherman Act claims arising from injury in the United States market).

[21]*Sheldon*, 204 F.R.D. at 689–90.

two or more independent actors.[22] This requires plaintiffs to demonstrate that defendants "had a conscious commitment to a common scheme designed to achieve an unlawful objective."[23] The documents that plaintiffs seek in this motion may help them prove defendants' joint commitment to fix prices in the United States (i.e., the existence of the conspiracy), the ability of defendants to engage in domestic price fixing, and the mechanisms employed by defendants in price fixing. For example, a document showing a foreign meeting between representatives of two defendants held shortly before defendants each announced a U.S. price increase of Polyether Polyol products could be used by plaintiffs as circumstantial evidence of the conspiracy, even if the face of the document indicates that the subject of the meeting was a discussion of urethane sales to markets in Africa. In like manner, the foreign documents sought might also help plaintiffs establish who was involved in the alleged conspiracy and the dates of that involvement, or the identity and location of persons having knowledge of discoverable information.

In resisting production, defendants rely largely on the Supreme Court's decision in *F. Hoffman-La Roche Ltd. v. Empagran S.A.*,[24] which interpreted the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA") and held that a plaintiff could not bring a claim under the Sherman Antitrust Act solely on the basis of an independent foreign injury. While the

---

[22] *Medical Supply Chain, Inc. v. Neoforma, Inc.*, 419 F. Supp. 2d 1316, 1327 (D. Kan. 2006).

[23] *Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1257 (10th Cir. 2006) (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)).

[24] 542 U.S. 155 (2004).

court recognizes the limits placed by the FTAIA on the types of claims that can be brought under the Sherman Act, nothing in the FTAIA or *Empagran* precludes discovery of documents or information related to foreign commerce that are relevant to antitrust claims alleging a domestic injury.[25]  Indeed, all of the cases discussed above which permitted discovery of foreign documents were authored after the enactment of the FTAIA and most were authored after the issuance of *Empagran*.[26]  Defendants do not cite a single case that relies on *Empagran* to impose the type of discovery limits that defendants seek in this case.

Finally, the court notes that defendants make two passing references to the "burden" that they will suffer if they are forced to produce "irrelevant documents involving non-U.S.

---

[25]*Empagran*, quoting the FTAIA, noted that foreign trade and commerce could be the basis of an antitrust action in the United States where "such conduct has a direct, substantial, and reasonably foreseeable effect" on U.S. commerce. *Id.* at 161. *See also In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05-1717, 2007 WL 137152, at *11–12 (D. Del. Jan. 12, 2007) (reviewing legislative history of the FTAIA and finding that "the FTAIA does not prohibit the discovery of information that is otherwise discoverable"); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 576 n.44 (M.D. Pa. 2009) (noting that the FTAIA does not foreclose inquiry into a defendant's foreign conduct that is relevant to domestic claims).

[26]*In re Aspartame Antitrust Litig.*, 2008 WL 2275531, at *2 ("Though the Supreme Court's decision in *Empagran* clearly places limits on the types antitrust claims that can be brought under the Sherman Act, this decision does not preclude all foreign discovery in connection with establishing domestic antitrust violations."); *In re Automotive Refinishing Paint*, 2004 U.S. Dist. Lexis 29160, at *15 (noting *Empagran* and ordering discovery of information concerning foreign manufacturing, sales, and distribution); *In re Vitamins Antitrust Litig.*, 2001 WL 1049433, at *11 (noting that plaintiffs' claims were limited to those injuries with a United States nexus, but ruling that "there is a crucial difference between what is relevant for purposes of discovery and what actions will be admissible to prove damages at trial").

commerce."[27] Plaintiffs counter that "allowing Defendants' proposed standard of review will require substantial additional work by Defendants and, significantly, additional time, because it would require them to sort through the documents they already have collected to withhold those allegedly relating exclusively to non-U.S. commerce." Plaintiffs' argument has appeal, but, in any event, defendants have not attempted to satisfy the requirements necessary to establish undue burden. A party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.[28] Defendants have provided only conclusory allegations and have not offered any detailed explanation, affidavit, or other evidence demonstrating that they will suffer undue burden and expense by complying with the discovery.

The court finds plaintiffs' requested discovery relevant. Defendants' relevancy objections and, to the extent asserted, undue burden objections to Request Nos. 7–11 and 16 of Plaintiffs' First Request for Production of Documents to All Defendants in Merits Discovery are overruled.

### III. Overbreadth Objections

Defendants next contend that Request Nos. 9–11 and 16 of Plaintiffs' First Request

---

[27] Doc. 868 at 16; *see also id.* at 14–15.

[28] *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004) (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 653 (D. Kan. 2004); *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003) (objecting party cannot sustain burden with boilerplate claims that requested discovery is burdensome); and *McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 646 (D. Kan. 2003) (overruling objection of undue burden based in part on lack of affidavit or other proof)).

for Production of Documents to All Defendants in Merits Discovery are facially over broad because they use the omnibus terms "concerning," "relating to," "relate to," and "refer to."

> [A] request may be overly broad on its face if it is couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within its scope. A request seeking documents 'pertaining to' or 'concerning' a broad range of items requires the respondent either to guess or move through mental gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request. When, however, the omnibus phrase modifies a sufficiently specific type of information, document, or event, rather than large or general categories of information or documents, the request will not be deemed objectionable on its face.[29]

Initially, the court notes that defendants appear to assert their overbreadth argument as a supplement to their relevancy objections. Defendants state that the "vague" language of the requests "exacerbat[es] the relevancy problems in Plaintiffs' document requests."[30] As discussed above, the court has found that the document requests at issue are wholly relevant; this tends to undercut defendants' overbreadth argument to the extent that it is related to the relevancy argument.

In any event, the court has examined plaintiffs' document requests and finds that the "omnibus phrases" used therein modify sufficiently specific types of information and documents. For example, Request No. 9 seeks all documents that refer or relate to communications between defendants concerning seventeen specific topics on Polyether

---

[29]*Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 658 (D. Kan. 2006) (citing *Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005)) (internal quotations omitted).

[30]Doc. 868 at 4; *see also id.* at 8.

Polyol products. And Request No. 11 seeks all documents relating to any communication concerning the allocation of customers of Polyether Polyol products. Indeed, although defendants set forth the legal standards that govern when discovery requests are overbroad, defendants do not state that in this case they are unable to distinguish what documents are and are not responsive. Perhaps this is why defendants have offered to produce all documents responsive to Request Nos. 9–11 and 16 that reflect U.S. commerce (or global commerce that might include U.S. commerce)[31] without asserting that doing so would require them to "move through mental gymnastics" to determine documents that fall under the scope of the requests.

The court overrules defendants' overbreadth objections to Request Nos. 9–11 and 16 of Plaintiffs' First Request for Production of Documents to All Defendants in Merits Discovery.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1. Plaintiffs' motion to compel (**doc. 855**) is granted.

2. Defendants' shall fully respond to plaintiffs' Request Nos. 7–11 and 16 of Plaintiffs' First Request for Production of Documents to All Defendants in Merits Discovery by September 11, 2009.

Dated this 11th day of August, 2009, at Kansas City, Kansas.

---

[31]Doc. 868 at 2.

                                        s/James P. O'Hara
                                        James P. O'Hara
                                        U.S. Magistrate Judge