IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: URETHANE ANTITRUST | ) | |
| LITIGATION | ) | |
| | ) | Case No. 04-MD-1616-JWL |
| This Order Relates to: | ) | |
| Polyether Polyol Cases | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This multidistrict litigation consists of both class action and direct action lawsuits in

which plaintiffs claim that defendants engaged in unlawful price fixing and market-

allocation conspiracies with respect to polyether polyol products ("PPPs") in violation of the

Sherman Antitrust Act, 15 U.S.C. § 1. Currently before the court is the motion of plaintiffs

in the direct action lawsuits[1] for a protective order barring defendants from pursuing

discovery related to ongoing criminal investigations into a possible conspiracy among foam

manufacturers (i.e., among plaintiffs) **(doc. 1596)**. Also before the court is the motion of the

United States to intervene and to stay discovery related to the same investigations **(doc.

1616)**.[2] For the reasons stated below, plaintiffs' motion for a protective order is denied and

---

[1]The direct action plaintiffs are fifty-six potential class members who have opted out of the class certified in the main action and who have filed two separate lawsuits. In this memorandum and order, the term "plaintiffs" refers to direct action plaintiffs. In the limited instances in which the court discusses plaintiffs in the class action, the court will use the term "class action plaintiffs."

[2]The United States seeks intervention solely for the purpose of moving for the discovery stay.

the United States's motion is granted as to intervention and taken under advisement as to the requested stay. Plaintiffs are given leave to serve relevancy objections to defendants' discovery requests, and defendants are given leave to file a motion to compel on the basis that the discovery sought is relevant to a claim or defense in this litigation.

## I. Background

This antitrust litigation involves allegations by plaintiffs, direct purchasers of PPPs, that defendants, chemical companies that create PPPs, conspired to fix the prices at which PPPs were sold, and to allocate customers and markets for PPPs in the United States and throughout the world. Plaintiffs contend that defendants attempted to conceal such anticompetitive behavior by giving false and pretextual reasons for their parallel price increases of PPPs.[3] Many plaintiffs who purchased PPPs from defendants used the PPPs to manufacture foam, which they in turn supplied to manufacturers of goods such as furniture, mattresses, packaging, automobile seats, and appliances.

In November 2004 and thereafter, a series of class action lawsuits was initiated against manufacturers of PPPs on behalf of classes of purchasers of PPPs in the United States. The Judicial Panel on Multidistrict Litigation consolidated those actions for pretrial purposes in this district. On July 29, 2008, U.S. District Judge John W. Lungstrum certified a class of PPPs purchasers. Thereafter, plaintiffs timely opted out of the class action and filed two separate suits against defendants, which the Judicial Panel on Multidistrict

---

[3]Parallel price increases are price increases of competitors that occur at or near the same point in time.

Litigation transferred to this district in December 2008 and January 2009.[4] Judge Lungstrum

coordinated discovery for all the actions,[5] and discovery is now in the end-stages, scheduled

to end December 20, 2010.[6]

On July 28, 2010, it was publicly reported for the first time that the United States

Department of Justice is conducting a grand jury investigation into a possible price-fixing

conspiracy by manufacturers of foam products, including some direct action and class action

plaintiffs.[7] The Canadian Competition Bureau is conducting a parallel investigation into

possible violations of Canadian antitrust laws. Related to those investigations, the United

States and Canada have subpoenaed documents and seized evidence from foam

manufacturers. On August 4, 2010, defendants served interrogatories and document requests

on plaintiffs that sought information relating to the ongoing criminal investigations.[8] Five

---

[4]*See Carpenter Co., et al. v. BASF SE, et al.*, No. 08-2617-JWL; *Woodbridge Foam Corp., et al. v. BASF SE, et al.*, No. 09-2026-JWL.

[5]Doc. 1037.

[6]Scheduling Order No. 6, doc. 1659.

[7]It is public knowledge that five direct action plaintiffs (including the lead direct action plaintiffs) and five class action plaintiffs are being investigated. However, the full extent of the government's investigation is unknown; Fed. R. Crim. P. 6(e) prohibits the government from publicly disclosing which specific plaintiffs are implicated.

[8]For example, Document Request No. 1 sought:

All documents provided to the Federal Bureau of Investigation, the Department of Justice, the Federal Trade Commission or any other governmental agency in the United States or Canada voluntarily, in response to a search warrant (including but not limited to search warrants reportedly served in July 2010), subpoena or otherwise, related to any investigation into

days later, defendants noticed the depositions of twenty-six individuals allegedly implicated

in the foam conspiracy, as well as five Rule 30(b)(6) depositions that set forth topics related

to the investigations.[9]

---

> violations of any federal, state or Canadian antitrust or competition law by
> manufacturers of polyurethane foam or other products made with Polyether
> Polyol Products.

Doc. 1599, Exh. B.

> Interrogatory No. 1 stated:

> Identify each Plaintiff, and each officer, director, employee or agent thereof,
> that has produced documents, either voluntarily or pursuant to a search
> warrant (including but not limited to search warrants reportedly served in July
> 2010), subpoena or otherwise, to the Federal Bureau of Investigation, the
> Department of Justice, the Federal Trade Commission or any other
> governmental agency in the United States or Canada, related to any
> investigation into violations of any federal, state or Canadian antitrust or
> competition law by manufacturers of polyurethane foam or other products
> made with Polyether Polyol Products.

Doc. 1599, Exh. C.

> [9]For example, Dow Chemical Company's Rule 30(b)(6) Deposition Notice to
Carpenter Company and E.R. Carpenter, L.P. includes as a topic:

> Any and all Communications that any of Your officers, directors, employees
> or agents have had regarding any effort to self-report to seek acceptance into
> the Antitrust Division's Corporate Leniency Program with any officer or agent
> of the Federal Bureau of Investigation, the Department of Justice, the Federal
> Trade Commission or any other governmental agency in the United States or
> Canada, related to any investigation into violations of any federal, state or
> Canadian antitrust or competition law by manufacturers of polyurethane foam
> or other products made with Polyether Polyol Products.

Doc. 1599, Exh. D.

Plaintiffs seek a protective order to wholly preclude discovery into the alleged anticompetitive conduct among foam manufacturers that is the subject of the investigations. Plaintiffs assert that such discovery is irrelevant to this litigation and is prejudicial to plaintiffs. The United States, on the other hand, seeks a more limited order—one that would not preclude discovery related to the criminal investigations, but would stay such discovery until at least the date on which those investigations are completed.[10] The United States asserts that the discovery sought is irrelevant to the instant litigation and that a stay is necessary to protect the integrity of the ongoing criminal investigations, to prevent disclosure of confidential grand jury matters, and to prevent inappropriate discovery by likely criminal defendants. The court will address the motions in turn.

## II. Plaintiffs' Motion for Protective Order

As noted above, plaintiffs move for a protective order prohibiting defendants from conducting discovery into whether plaintiffs engaged in a conspiracy to fix prices for foam products. According to plaintiffs, such discovery is not relevant to the issues in this action and any marginal benefit defendants might gain from the discovery is outweighed by the harm that would result to plaintiffs and the United States.

### A. Legal Standards

In civil actions, liberal discovery is typically permitted under the theory that the

---

[10]It is unclear from the United States's motion whether the government seeks a stay through the completion of the anticipated criminal proceedings or only through the completion of the grand jury's investigation.

"search for the truth" should be "nearly unencumbered."[11]  To this end, Fed. R. Civ. P.

26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter

that is relevant to any party's claim or defense." "Relevant information need not be

admissible at the trial if the discovery appears reasonably calculated to lead to the discovery

of admissible evidence."[12]  At least as a general proposition, information is deemed relevant

and discoverable "unless it is clear that [it] can have no possible bearing on the claim or

defense of a party."[13]

Rule 26(b)(1) must not be read in a vacuum, however.  The United States Supreme

Court has recognized that "[b]ecause of the liberality of pretrial discovery permitted by Rule

26(b)(1), it is necessary for the trial court to have the authority to issue protective orders

conferred by Rule 26(c)."[14]  Fed. R. Civ. P. 26(c)(1) provides that "[t]he court may, for good

cause, issue an order to protect a party or person from annoyance, embarrassment,

---

[11]*Cotracom Commodity Trading Co. v. Seaboard Corp.*, No. 97-2391, 2000 WL
796142, at *2 (D. Kan. June 14, 2000); *see also Herbert v. Lando*, 441 U.S. 153, 177 (1979)
("The Court has more than once declared that the deposition-discovery rules are to be
accorded a broad and liberal treatment to effect their purpose of adequately informing the
litigants in civil trials.").

[12]Fed. R. Civ. P. 26(b)(1); *see also Mackey v. IBM*, 167 F.R.D. 186, 193 (D. Kan.
1996) ("A party does not have to prove a prima facie case to justify a request which appears
reasonably calculated to lead to the discovery of admissible evidence.").

[13]*Sheldon v. Vermonty*, 204 F.R.D. 679, 689–90 (D. Kan. 2001) (internal quotations
and citations omitted).

[14]*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (discussing the Washington
rules of civil procedure, which the Court noted were virtually identical to their federal
counterparts).

oppression, or undue burden or expense." Rule 26(c) thus provides a means of judicial oversight whereby discovery, although relevant, may be prescribed or limited to prevent abuse.[15] "This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties."[16] However, "Rule 26(c) does not give the court leave to enter a protective order 'to protect a party from having to provide discovery on topics merely because those topics are overly broad or irrelevant, or because the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence.'"[17]

The issuance of protective orders lies within the wide discretion of the district court, and the Supreme Court has directed that "judges should not hesitate to exercise appropriate control over the discovery process."[18] Trial judges are in "the best position to weigh fairly

---

[15] *See id.* at 34–35; *see also Herbert v. Lando*, 441 U.S. 153, 176–77 (1979) ("There have been repeated expressions of concern about undue and uncontrolled discovery, and voices from this Court have joined the chorus. But until and unless there are major changes in the present Rules of Civil Procedure, reliance must be had on what in fact and in law are ample powers of the district judge to prevent abuse.") (footnote omitted).

[16] *Seattle Times*, 467 U.S. at 34–35.

[17] *Belisle v. BNSF Ry. Co.*, No. 08-2087, 2009 WL 1559759, at *1 (D. Kan. June 1, 2009) (quoting *P.S. v. Farm, Inc.*, No. 07-2210, 2009 WL 483236, at *3 (D. Kan. Feb. 24, 2009)); *see also Kan. Waste Water, Inc. v. Alliant Techsystems, Inc.*, No. 02-2605, 2005 WL 327144, at *2 (D. Kan. Feb. 3, 2005) ("This Court has held that a party may obtain a protective order only if it demonstrates that the basis for the protective order falls within one of the categories enumerated in Rule 26(c).").

[18] *Lando*, 441 U.S. at 177; *see also Seattle Times*, 467 U.S. at 36 ("The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.").

the competing needs and interests of parties affected by discovery."[19]  The party seeking the protective order bears the burden of showing good cause for the order.[20]  "To establish good cause, [the] party must submit 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'"[21]

Finally, the court is mindful that the discovery rules are also "subject to the injunction of Rule 1 that they 'be construed to secure the just, speedy, and inexpensive determination of every action.'"[22]

## B.    Analysis

Relevancy and Admissibility.  Plaintiffs' primary argument in support of their motion for a protective order is that the information sought by defendants relating to an alleged foam conspiracy and surrounding government investigations "is irrelevant and inadmissible under settled authority."[23]  In particular, plaintiffs cite authority for the proposition that a defendant in an antitrust action cannot avoid liability by pointing to unlawful conduct of the plaintiff (e.g., a downstream conspiracy).  Plaintiffs also assert that the alleged conspiracy by the

---

[19]*Seattle Times*, 467 U.S. at 36.

[20]*Day v. Sebelius*, 227 F.R.D. 668, 677 (D. Kan. 2005).

[21]*Id.* (quoting *Bryan v. Eichenwald*, 191 F.R.D. 650, 651 (D. Kan. 2000)).

[22]*Lando*, 441 U.S. at 176 (quoting Fed. R. Civ. P. 1).

[23]Doc. 1597 at 2.  Ironically, in their reply brief, plaintiffs emphatically state that defendants' discussion about "whether the information they seek is relevant and discoverable under Rule 26(b)(1), completely misses the point" because plaintiffs seek a protective order under Rule 26(c), not Rule 26(b)(1).  Doc. 1681 at 3.

foam manufacturers is not relevant to damages because "'passing on' an overcharge is . . . not a defense in an antitrust case."[24]

Defendants respond that plaintiffs' pricing and sales practices for foam products is relevant to liability, damages, statute of limitations, and class issues. They cite the court's January 20, 2010 order (doc. 1288) holding that such downstream data is relevant to a determination of how defendants set their prices and to the issue of whether defendants gave false and pretextual reasons for their price increases of PPPs.[25] Defendants contend that if plaintiffs themselves engaged in conduct that plaintiffs have said is circumstantial evidence of conspiracy (such as unscripted meetings and telephone calls with competitors), then plaintiffs' liability claims are undermined. Defendants also state that if plaintiffs' assertion that they were duped into accepting price increases is disproved by the discovery now sought, then the class period should not have been extended beyond November 2000. Defendants further state that if some, but not all, of the class plaintiffs were engaged in a foam conspiracy, then the class may need to be decertified because common issues would no longer predominate over individual issues. Finally, defendants contend that information about a foam conspiracy is relevant to a damages model in which experts predict what defendants' pricing would have been "but for" defendants' conspiracy.

The court need not, at least at this point, decide whether the discovery requests are

---

[24]Doc. 1597 at 10.

[25]The court noted that it had not been presented with the question of "whether downstream data is discoverable as relevant to the issues of fact of injury or damages." Doc. 1288 at 16.

relevant. As noted above, the court may only enter a protective order on one of the bases enumerated in Rule 26(c). "Rule 26(c) does not provide for any type of order to protect a party from having to provide discovery on topics merely because those topics are . . . irrelevant . . . ."[26] "While a party may object to providing discovery on the basis . . . that the request is not calculated to lead to the discovery of admissible evidence, the Court may only rule on the validity of such an objection in the context of a motion to compel."[27] Accordingly, the court declines to enter a protective order to the extent that it is based on plaintiffs' claims that the discovery sought is irrelevant or inadmissible at trial. In Section IV below, the court sets forth a plan for bringing the issue of relevancy before the court in the proper procedural posture.

Undue Burden and Expense. Next, plaintiffs seek a protective order on the ground that allowing defendants to pursue their recent discovery requests related to the alleged foam conspiracy "would be extremely burdensome and time consuming to produce."[28] Undue burden and expense are grounds enumerated in Rule 26(c) authorizing the court to enter a protective order. Thus, the court will closely examine this argument.

Plaintiffs state that responding to the document requests would require plaintiffs "to expend substantial resources and delay resolution of this case."[29] According to plaintiffs,

---

[26]*Kan. Waste Water*, 2005 WL 327144, at *2.

[27]*Aikens v. Deluxe Fin. Services*, 217 F.R.D. 533, 535 (D. Kan. 2003).

[28]Doc. 1597 at 15.

[29]Doc. 1597 at 14.

responding would require extensive negotiation on search terms and custodians, the collection of paper files and electronically stored information, review of the documents, and finally, the creation of a privilege log and redaction of privileged information. With respect to the newly noticed depositions, plaintiffs note that they would be forced to expend considerable time preparing for and attending the depositions, and that the discovery period would have to be further extended to accommodate these additional depositions.

Unfortunately for plaintiffs, their asserted potential burdens and expenses must be largely discounted. As noted above, plaintiffs bear the burden of establishing good cause for the entry of a protective order, and they must do so by submitting "'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'"[30] "[A]n affidavit or other evidentiary proof is the best way for a party to demonstrate undue burden under Rule 26(c)," but, "at a minimum," the party must "provide a detailed explanation as to the nature and extent of the claimed burden or expense."[31]

The court finds that plaintiffs' undue burden and expense argument is largely conclusory and unsupported. Plaintiffs do not explain or even discuss the monetary expense of responding to the discovery. Nor do they submit support for their broad assertion that they would be forced to expend considerable time preparing for and attending the recently

---

[30]*Day*, 227 F.R.D. at 677 (quoting *Bryan*, 191 F.R.D. at 651).

[31]*Kan. Waste Water*, 2005 WL 327144, at *3 (internal quotation marks and citations omitted).

noticed depositions.[32]  Plaintiffs have submitted (with their reply brief)[33] a declaration that

discusses the amount of time that it would take plaintiffs to respond to the recent document

requests, but far from showing that responding would be unduly burdensome, it actually

shows that plaintiffs could respond much more quickly and with less effort compared to the

time and effort expended responding to defendants' original document requests.  The

declaration is that of Nancy Merreot, a support specialist at Dickstein Shapiro LLP, who

oversees and manages plaintiffs' review and production of documents.[34] Ms. Merreot states

that, in connection with earlier discovery, she has already worked with each plaintiff's "IT

staff to determine each Plaintiff's data mapping, hardware, software, and document

lifecycles."[35]  She then estimates periods of time for various steps in the document

production process that are significantly less than the time originally expended.  For

example, Ms. Merreot states that negotiating relevant search terms to respond to defendants'

original discovery requests took more than two months, but she estimates that negotiations

with defendants regarding search terms for the instant document requests would last

---

[32]Indeed, under the scheduling orders entered in this action, each side is entitled to take ninety-five depositions.  *See* doc. 1024. Even with the new depositions noticed by defendants, defendants will not exceed this quota.

[33]The court notes that "attaching new exhibits to a reply brief is, itself, a 'troubling' practice," but the court will exercise its discretion and consider the declaration.  *Niles v. Am. Airlines, Inc.*, 563 F. Supp. 2d 1208, 1213 (D. Kan. 2008) (citing *United States v. Soussi*, 316 F.3d 1095, 1108 n.9 (10th Cir. 2002)).

[34]Exh. M to Doc. 1681.

[35]*Id.* at 2.

approximately two weeks. While compiling a privilege log related to the original discovery requests lasted approximately four months, Ms. Merreot estimates that it would take only three to four weeks to prepare a privilege log related to the instant discovery. When all is said and done, she estimates the entire process of responding to the foam conspiracy requests will take approximately thirty to thirty-eight weeks, as compared to the twenty-one months that was previously required to complete discovery.[36] Thus, the conclusion that can be drawn from plaintiffs' only submitted evidence for their undue burden argument is that, while responding to the instant discovery requests will, as one would expect, take time, it will not take an inordinate amount of time. Plaintiffs have not explained how the burden that accompanies any timely discovery request, like the one now at issue, would be unduly hard in this instance. Plaintiffs do not discuss any difficulties that they might encounter in responding to this discovery. Because plaintiffs have failed to demonstrate good cause for a protective order based on undue burden or expense, the court denies this aspect of plaintiffs' motion.

Risk of Criminal Repercussions. Plaintiffs' third ground for seeking a protective order is that responding to the discovery requests would place them at risk for possible criminal sanctions and impede their criminal defense efforts. Plaintiffs state that having to respond to the discovery would divert resources that would otherwise be used preparing their defense. Without any evidentiary support, plaintiffs predict that cost and complexity

---

[36]*Id.* at 5.

involved in trying this action "would at least double."[37]  Plaintiffs also express concern that the discovery might infringe on their employees' Fifth Amendment rights against self incrimination.  Finally, plaintiffs argue that responding to the discovery might disadvantage them in any criminal action because criminal discovery is generally more limited than civil discovery.[38]

Assuming that this argument addresses one of the enumerated Rule 26(c) grounds for a protective order, plaintiffs again fail to present evidence or a detailed explanation to show good cause for protection on this basis.  Although plaintiffs make the conclusory argument that having to respond to the expounded discovery would divert resources they would otherwise use in their criminal defense, they have presented no evidence suggesting the cost of responding to the discovery, nor what efforts they expect to put forward in preparing a criminal defense.  Likewise, plaintiffs express concern for the Fifth Amendment rights of their employees without presenting an affidavit of any person noticed for a deposition suggesting that he or she believes the Fifth Amendment would be implicated in the deposition or that he or she intends to invoke a Fifth Amendment right in the future.  Because plaintiffs' statements about the potential criminal repercussions lack specificity and support, the court declines to enter a protective order on this basis.

<u>Annoyance and Embarrassment</u>.  Finally, plaintiffs contend in their reply brief that

---

[37]Doc. 1681 at 25.

[38]Relatedly, plaintiffs adopt the government's argument in its motion to stay discovery that the discovery sought would undermine the secrecy of grand jury investigations.

a Rule 26(c) protective order is necessary to protect plaintiffs, their employees, and witnesses from "annoyance, embarrassment . . . ridicule, and harm."[39] Plaintiffs assert that, in seeking information about the ongoing government investigations, defendants are seeking to "malign the character of certain witnesses as a distraction from their own wrongdoing."[40] Plaintiffs' argument appears to be that individuals who cooperated with the grand jury investigation would be harmed or ridiculed if their identity and the information they provided became known to the other parties (both defendants and other plaintiffs) in this action.[41]

Although annoyance and embarrassment are grounds enumerated in Rule 26(c) for the entry of a protective order, plaintiffs did not seek protection on these grounds until their reply brief. "Courts in this district generally refuse to consider issues raised for the first time in a reply brief."[42] Even if the court were to consider this argument on its merits, the argument would fail for lack of support and specificity. Quite simply, plaintiffs provide no

---

[39]Doc. 1681 at 21–22.

[40]Doc. 1681 at 21.

[41]Plaintiffs further suggest that if the discovery is allowed and later admitted into evidence at trial, the jury might decide the case on an improper basis, i.e., on something other than defendants' motives and actions. Plaintiffs also assert, but do not develop the argument, that evidence of plaintiffs' crimes or wrongs would be excluded at trial under Fed. R. Evid. 404, making the discovery sought not relevant under Fed. R. Civ. P. 26(b). Because these arguments do not raise proper bases for the entry of a protective order, the court rejects them out of hand.

[42]*Liebau v. Columbia Cas. Co.*, 176 F. Supp. 2d 1236, 1244 (D. Kan. 2001) (collecting cases).

detailed explanation about how or why individuals who cooperated with the grand jury investigation would be annoyed or embarrassed if their identity and the information they provided became known to other parties in this action.

## C.    Conclusion

Because plaintiffs have failed to demonstrate the need for protection under any of the grounds enumerated in Rule 26(c), their motion for a protective order (doc. 1596) is denied. Defendants' motion for leave to file a surreply to the motion for a protective order (doc. 1698) is denied as moot.

## III.  The United States's Motion to Intervene and Stay Discovery

The United States seeks to intervene and to stay defendants' recent discovery related to "the criminal investigations into possible collusion among foam manufacturers being conducted by the United States Department of Justice and the Canadian Competition Bureau."[43] The United States asserts that the discovery sought threatens the integrity of the ongoing criminal investigations, invites disclosure of confidential grand jury matters, and could lead to inappropriate discovery by likely criminal defendants (i.e., by co-plaintiffs in this action who might be co-defendants in a criminal case). The United States seeks to intervene as of right under Fed. R. Civ. P. 24(a) in order to protect these interests. If intervention is permitted, the United States moves to stay the discovery at issue, at least until the government's investigation is completed. As discussed below, the United States's motion to intervene is granted and motion to stay is taken under advisement.

---

[43]Doc. 1616 at 1.

## A.     Motion to Intervene

The United States moves to intervene in this action as a matter of right under Rule

24(a)(2), which provides:

> Upon timely motion, the court must permit anyone to intervene who . . .
> claims an interest relating to the property or transaction which is the subject
> of the action, and is so situated that disposing of the action may as a practical
> matter impair or impede the movant's ability to protect its interest, unless
> existing parties adequately represent that interest.

The factors of Rule 24(a)(2) "are intended to capture the circumstances in which the

practical effect on the prospective intervenor justifies its participation in the litigation. Those

factors are not rigid, technical requirements.'"[44]  The factors should be considered together,

rather than discretely, and the court should balance equitable considerations in determining

whether to permit intervention.[45]  The court may limit the scope of intervention, granting

intervention only for the limited purpose of protecting the movant's interest that might be

injured by the litigation.[46]

Defendants addressed the United States's motion to intervene only in a footnote.  The

court notes that such a half-hearted approach to an issue may not be sufficient to preserve

the issue for the court's consideration.[47]  Even assuming that defendants' opposition to

---

[44]*San Juan Cnty. v. United States*, 503 F.3d 1163, 1195 (10th Cir. 2007) (en banc).

[45]*Id.* at 1195; *see also id.* at 1199 ("[Rule 24(a)(2)] requires courts to exercise
judgment based on the specific circumstances of the case.")

[46]*Id.* at 1189.

[47]*See id.* at 1207 (questioning whether an issue raised only in a footnote was
"sufficient to require us to address the issue").

intervention was not waived and the motion deemed unopposed, the court would grant intervention.

Defendants assert that the United States has not demonstrated a significantly protectable interest and has not shown why plaintiffs do not adequately protect its interest.[48] The court disagrees. First, the court finds that the United States has demonstrated interests relating to the information sought by defendants about the investigation into plaintiffs' downstream sales. Courts have historically permitted the government to intervene in civil actions when the government seeks to do so for the limited purpose of moving to stay discovery pending a related ongoing criminal investigation.[49] "The Government has a distinct and 'discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter.'"[50]

_____

[48]Although defendants do not dispute the timeliness of the United States's motion, the court notes that the motion is timely, as it was filed shortly after the government learned of defendants' attempts to acquire discovery into this matter and defendants do not contend that they are prejudiced by the timing of the motion to intervene. *See Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) ("The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.") (internal quotations omitted).

[49]*See SEC v. Mutuals.Com, Inc.*, No. Civ.A.3:03-CV-2912-D, 2004 WL 1629929, at *1 (N.D. Tex. July 20, 2004); *Bureerong v. Uvawas*, 167 F.R.D. 83, 86 (C.D. Cal. 1996); *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992).

[50]*Bureerong*, 167 F.R.D. at 86 (quoting *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988)); *see also Mutuals.Com,* 2004 WL 1629929, at *2 ("Because the events underlying the criminal and civil charges overlap, this broader discovery may impair the intended balance between the parties in the criminal case."); *compare also* Fed. R. Civ. P. 26–37 *with* Fed. R. Crim. P. 15–17.

The government also has an interest in protecting the integrity of its criminal investigation, as well as an interest in protecting the secrecy that accompanies grand jury proceedings.[51]

Second, as to whether the United States has shown that its interests cannot be adequately protected by the plaintiffs, the court notes that the Tenth Circuit has defined this burden as minimal:

> Although an applicant for intervention as of right bears the burden of showing inadequate representation, that burden is the minimal one of showing that representation may be inadequate. . . . The possibility that the interests of the applicant and the parties may diverge need not be great in order to satisfy this minimal burden.[52]

The United States has met this minimal burden. It is true that some of the interests of the United States overlap with the interests of plaintiffs; for example, both have asserted an interest in protecting the Fifth Amendment rights of plaintiffs' employees. But the United States also seeks to protect broader public interests that the private plaintiffs may not adequately defend. As noted above, the United States seeks to protect the public's interest in law enforcement by protecting the secrecy of its investigation. The United States also seeks to protect the integrity of a future criminal prosecution by ensuring that potential criminal defendants (i.e., plaintiffs) do not have access to wider discovery than that permitted under the criminal procedure rules.

The court finds that under the balance of the Rule 24(a)(2) factors, the United States's

---

[51]*See Pflum v. United States,* 212 F.R.D. 580, 582 (D. Kan. 2003) (attributing "significant weight" to protecting the confidential nature of an ongoing grand jury investigation).

[52]*Utah Ass'n of Counties*, 255 F.3d at 1254 (internal quotations and citations omitted).

limited intervention in this action is justified. The United States's motion to intervene is therefore granted for the purpose of allowing the United States to seek a stay of defendants' recent discovery requests.

## B. Motion to Stay

Now that the court has determined that the United States may properly seek a stay of discovery into the possible conspiracy among foam manufacturers, the court is tasked with deciding the merits of such a stay. A merits determination requires the court to consider the rights and interests implicated by the discovery contemplated.[53] This determination is intertwined with the question of whether the discovery sought is relevant and necessary to defendants' claims and defenses in this action. As noted above, the court will address the question of relevancy in the context of a properly submitted motion to compel, which the court expects defendants will file. Thus, the court finds it prudent to wait and take up the United States's motion for a stay *after* the court has made a relevancy determination under the procedural plan set forth below.[54]

Accordingly, the motion to stay is hereby taken under advisement. The implicated discovery is temporarily stayed until such time as the court issues a final ruling on the

---

[53]*See Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009).

[54]To the extent that defendants' motion for leave to file a surreply (doc. 1698) implicates the motion to stay, it is denied. The court does not find that the United States raised new evidence or argument in its reply brief. Moreover, defendants' proposed surreply largely focuses on the question of relevancy, which defendants will have an opportunity to address in their briefs accompanying a motion to compel.

motion.

## IV. Plan for Resolving the Dispute Over Relevancy

As discussed above, although the parties devote much of their briefs to the question of whether the recent discovery propounded by defendants is relevant, the court may not address relevancy upon a motion for a protective order. Rather, the proper procedure for getting this issue before the court is for plaintiffs to object to the discovery on the ground that it is not calculated to lead to the discovery of admissible evidence, followed by the filing of a motion to compel by defendants.[55]

As a practical matter, the parties probably already have said most if not all of what they have to say on the issue of relevance. But the legal standards (including the burden of proof) governing a motion to compel and a motion for a protective order are markedly different. Therefore, the parties need to structure their arguments under the correct standard. In any event, in the interest of moving this matter to a reasonably quick resolution, the court will set a relatively quick turn-around time for the parties to accomplish the steps necessary

---

[55]Although the court considered resolving this issue under its broad powers to control the discovery process, the court ultimately determined that the most efficient and clean way to proceed is to permit the filing of a motion to compel accompanied by orderly briefing. To be frank, the briefing on the instant motion for a protective order is a mess. For example, because defendants first articulated their bases for their relevancy assertions in their response brief, plaintiffs raised many new arguments (and presented new evidence) to refute the same in their reply brief. Similarly, because the question of the discovery's relevance to class certification was not raised until defendants' response brief, the class plaintiffs' opening brief was a reply brief addressing the issue. Understandably, then, defendants filed a motion for leave to file a surreply addressing the new arguments and evidence accompanying the reply briefs. Plaintiffs have informed the court that they intend to file a brief opposing the motion for leave to file a surreply. Moreover, the parties disagree about whether the relevant legal standards are those governing Rule 26(b)(1) or Rule 26(c).

to have this issue resolved by the court.  In the event that plaintiffs have not already done so, the court grants them until **October 29, 2010,** to serve only *specific* relevancy objections to defendants' discovery related to the alleged conspiracy by foam suppliers; plaintiffs are not granted leave at this late date to serve any other objections.  After the parties fully comply with the "meet and confer" process called for by D. Kan. 37.2 (i.e., taking into account the court's comments in the instant order), defendants shall then have until **November 8, 2010,** to file any motion to compel related to the objections.  Briefing on the motion to compel shall be expedited, i.e., plaintiffs shall file their response by **November 15, 2010** and defendants shall file any reply by **November 22, 2010**.  To avoid re-plowing the same legal ground covered in the instant order, the parties' principal briefs shall be limited to ten double-spaced pages, and any reply brief by defendants shall be limited to five double-spaced pages.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1.  Plaintiffs' motion for a protective order (doc. 1596) is denied.

2.  The United States's motion to intervene and to stay discovery (doc. 1616) is granted as to intervention and taken under advisement as to the requested stay.

3.  The discovery implicated in the United States's motion is temporarily stayed until such time as the court issues a final ruling on the motion.

4.  Plaintiffs are granted leave to serve specific relevancy objections to defendants' discovery related to the alleged conspiracy by foam suppliers.  Plaintiffs shall serve their

objections by **October 29, 2010**.

5.  Defendants may file a motion to compel related to plaintiffs' discovery objections by **November 8, 2010**.  Plaintiffs shall file their responsive brief by **November 15, 2010**.  Defendants shall file any reply brief by **November 22, 2010**.  As earlier indicated, the parties' principal briefs shall be limited to ten double-spaced pages, and any reply brief by defendants shall be limited to five double-spaced pages.

6.  Defendants' motion for leave to file a surreply (doc. 1698) is denied.

Dated October 21, 2010, at Kansas City, Kansas.


   s/James P. O'Hara      
James P. O'Hara
U.S. Magistrate Judge