IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: URETHANE ANTITRUST )
LITIGATION )
) Case No. 04-MD-1616-JWL
This Order Relates to: )
The Polyether Polyol Cases )
)
_____)

# ORDER

This multidistrict litigation consists of class-action and direct-action lawsuits in which plaintiffs claim defendants engaged in unlawful price fixing and market-allocation conspiracies with respect to polyether polyol products in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Currently before the undersigned U.S. Magistrate Judge, James P. O'Hara, is plaintiffs' motion to compel defendant The Dow Chemical Company ("Dow") to provide discovery related to the subject matter of former-Dow-employee Stephanie Barbour's reports to Dow management that certain Dow personnel engaged in price-fixing discussions with Dow competitors (**doc. 1807**). Plaintiffs contend that any attorney-client privilege or work-product protection that might otherwise apply to such discovery was waived by Dow at Barbour's deposition. For the reasons set forth below, plaintiffs' motion to compel is granted in part and denied in part.

**I.     Background**

Barbour was an executive for Dow from 1998 until her termination in 2004. She had responsibility for a large portion of Dow's polyurethane business, serving as a global

business director. She reported to David Fischer, a Dow vice president, and often worked with Marco Levi, another global business director who also reported to Fischer.

On September 14–15, 2010, Barbour was deposed in this litigation. She testified that she was aware of specific anticompetitive pricing discussions that certain of her colleagues had with Dow competitors and that she reported these discussions as they arose to Dow's in-house counsel, Lynn Schefsky. Barbour further testified that in 2004, shortly after she learned that Dow was terminating her employment, she informed Phil Cook, a Dow executive vice president, that she believed her termination was the result of retaliation by Fischer, in part for her reports to Schefsky. Cook informed attorney Tom McCormick, Dow's compliance and ethics officer, about Barbour's allegations, and McCormick undertook an internal investigation into the matter. As part of the investigation, McCormick conducted a meeting with Barbour and Larry Washington, Dow's vice president of human resources. Barbour testified that she kept notes about the anticompetitive conduct of her colleagues, but that she later destroyed the paper copies and did not know whether the electronic copies remained on her computer at Dow.

During the deposition, when plaintiffs' counsel asked Barbour about her conversations with Schefsky, Dow's counsel initially invoked the attorney-client privilege and instructed Barbour not to answer. After a break, however, Dow's counsel withdrew the instruction not to answer as to "factual discussions or factual information that she discussed with Lynn Schefsky," and only instructed Barbour "not to reveal legal advice, if any, that Schefsky gave

her."[1] Thereafter, Barbour testified about the reports she made to Schefsky. Following Barbour's deposition, Dow completely withdrew any assertion of privilege as to Barbour and Schefsky's conversations. After the instant motion was filed, plaintiffs participated in a deposition of Schefsky, at which they inquired about his conversations with Barbour. Dow asserted no objection, and Schefsky answered each of plaintiffs' questions.[2]

With respect to Barbour's meeting with McCormick and Washington, plaintiffs' counsel asked Barbour during her deposition what she and McCormick discussed about the notes she kept regarding her colleagues' anticompetitive conduct. Dow's counsel asserted the attorney-client privilege and instructed Barbour not to answer. Dow's counsel further instructed Barbour not to answer, on privilege grounds, questions about whether she told Washington about the notes during the meeting. When Dow's counsel examined Barbour, however, he asked her whether McCormick or Washington asked for a copy of her notes, to which Barbour answered, "Not that I remember."[3] Later, on re-examination by plaintiffs' counsel, Barbour was asked whether McCormick or Washington asked to see her notes during the meeting and whether either gave her any instructions regarding what to do with the notes. Dow's counsel objected to both questions on the ground of attorney-client privilege, and Barbour did not answer.

---

[1] Transcript of Deposition of Stephanie Barbour ("Barbour Dep."), filed as exh. A to doc. 1822 at 53.

[2] Dow states that it will not object if plaintiffs wish to examine Barbour further with respect to her conversations with Schefsky.

[3] Barbour Dep., exh. A to doc. 1822 at 405.

## II. Discussion

Plaintiffs argue that Dow waived the attorney-client privilege and work-product protection as to certain subjects by permitting Barbour to partially disclose legal advice during her deposition. Plaintiffs ask the court to compel Dow to produce all documents and allow all testimony concerning the subject matter of Barbour's reports and notes of anticompetitive activities (including any reference to these reports or notes in the notes of McCormick) and the subsequent internal investigation conducted by McCormick.[4] Dow, while asserting no objection to producing discovery related to Barbour's reports to Schefsky, argues that any communication or documents generated by the McCormick investigation are protected by the attorney-client privilege and work-product doctrine, and were not waived by Barbour's testimony.

### A. Legal Standards

Because this litigation arises out of a federal statutory scheme, federal law governs the application of the attorney-client privilege.[5] Under federal common law, the essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection

---

[4]Dow has listed some documents pertaining to the internal investigation on its privilege log. *See* exh. D to doc. 1820.

[5]Fed. R. Evid. 501; *New Jersey v. Sprint Corp.,* 258 F.R.D. 421, 425 (D. Kan. 2009).

is waived.[6] The party asserting the privilege bears the burden of establishing that the elements are met.[7]

Plaintiffs argue that the eighth element, absence of waiver, has not been established here. The burden of showing that the privilege has not been waived remains with Dow, the party claiming the privilege.[8] "Because confidentiality is key to the privilege, '[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.'"[9] For testimony to constitute a waiver of the attorney-client privilege, it must disclose the substance of privileged communications.[10] "Underlying facts are not protected by the privilege."[11] Revealing the general topic of discussion between an attorney and client does not waive the privilege, unless the revelation also reveals the substance of a protected communication.[12]

Like the attorney-client privilege, federal law governs the applicability of the work-

---

[6]*New Jersey v. Sprint Corp.*, 258 F.R.D. at 425.

[7]*Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 618 (D. Kan. 2001).

[8]*New Jersey v. Sprint Corp.,* 258 F.R.D. at 426; *Lewis*, 203 F.R.D. at 621.

[9]*In re Quest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) (quoting *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir.1990)).

[10]*Williams v. Sprint/United Mgmt. Co.*, No, 03-2200, 2006 WL 1867478, at *10 (D. Kan. July 1, 2006).

[11]*Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981)).

[12]*Id.* (citing *Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 499 (D. Kan. 1997)).

product doctrine in this case.[13] The work-product doctrine, first recognized in *Hickman v. Taylor*[14] and subsequently incorporated into Fed. R. Civ. P. 26(b)(3), "is an intensely practical doctrine, grounded in the realities of the litigation in our adversary system."[15] The purpose of the doctrine is to promote the adversary system "by ensuring that an adversary cannot obtain materials that its opponent has prepared in anticipation of litigation."[16]

Plaintiffs do not dispute that documents generated from the McCormick investigation constitute attorney work product. Instead, plaintiffs argue that any work-product protection was waived. "The protection provided by the work-product doctrine is not absolute, and it may be waived."[17] In contrast to the attorney-client privilege, "the party asserting waiver of work product immunity, rather than the party asserting the work product protection, [has] the burden to establish waiver."[18]

In this case, plaintiffs assert waiver of attorney-client privilege and work-product

---

[13]*See Western Res., Inc. v. Union Pacific R.R. Co.*, No. 00-2043, 2002 WL 181494, at *4 n.4 (D. Kan. Jan. 31, 2002) (citing *Burton v. R.J. Reynolds Tobacco Co.*, 167 F.R.D. 134, 139 (D. Kan. 1996)).

[14]329 U.S. 495, 499–500 (1947).

[15]*In re Quest*, 450 F.3d at 1186.

[16]*McCoo v. Denny's, Inc.*, No. 98-2458, 2000 WL 307315, at *2 (D. Kan. March 21, 2000).

[17]*In re Quest*, 450 F.3d at 1186 (citing *United States v. Nobles*, 422 U.S. 225, 239 (1975)).

[18]*Western Res.*, 2002 WL 181494, at *4; *see also ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135, 2007 WL 4239453, at *3 (D. Kan. Nov. 30, 2007).

protection not only as to the actual information disclosed by Dow during discovery, but also to undisclosed information on the same subject matters. Federal Rule of Evidence 502, which took effect in 2008,[19] now governs subject-matter waiver of the attorney-client privilege and work-product protection.[20] Under Rule 502(a), waiver generally applies only to the information disclosed and not to the broader subject matter of the information.[21] Subject-matter waiver is limited to situations in which intentionally disclosed communication or information "ought in fairness . . . be considered together" with undisclosed communication or information concerning the same subject matter.[22] The Explanatory Note

---

[19]Congress enacted Rule 502 on September 19, 2008, and provided that "[t]he amendments made by this Act shall apply in all proceedings commenced after the date of enactment of this Act and, insofar as is just and practicable, in all proceedings pending on such date of enactment." Pub.L. No. 110-322 § 1(c). Although this action was pending on the date Rule 502 was enacted, both parties presume its application and the court finds no reason why it should not apply here; applying it is both just and practicable.

[20]*See Silverstein v. Fed. Bureau of Prisons*, No. 07-cv-02471, 2009 WL 4949959, at *9 (D. Colo. Dec. 14, 2009); *First Am. CoreLogic, Inc. v. Fiserv, Inc.*, No. 2:10-CV-132, 2010 WL 4975566, at *5 (E.D. Tex. Dec. 2, 2010); *Chick-fil-A v. ExxonMobil Corp.*, No. 08-62422-CIV, 2009 WL 3763032, at *4 (S.D. Fla. Nov. 10, 2009). The court notes that neither the Tenth Circuit Court of Appeals, nor any court in the District of Kansas, has yet had occasion to consider new Rule 502(a) in a written opinion.

The court further notes that some courts that have considered Rule 502 in the context of work-product waiver have opined that Fed. R. Civ. P. 26(b)(3)(B) continues to provide heightened protection for opinion work product and must be read in conjunction with Rule 502. *See, e.g., Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 504–05 (Fed. Cl. 2009). The parties here do not distinguish between opinion work product and fact work product, and do not mention Fed. R. Civ. P. 26(b)(3)(B). Where opinion work product may be affected by the court's ruling on subject-matter waiver, this situation is addressed further.

[21]*See* Rule 502 Advisory Committee Note.

[22]Fed. R. Evid. 502(a).

to the Rule further expounds that "a voluntary disclosure . . . generally results in a waiver only of the communication or information disclosed; a subject matter waiver . . . is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence."[23]

**B.    Analysis**

As noted above, plaintiffs do not dispute that the testimony and documents over which Dow asserts a privilege constitute confidential attorney communications or attorney work product. Rather, plaintiffs assert that by allowing Barbour to testify regarding (1) the reports Barbour made to Schefsky about her colleagues' price-fixing discussions and (2) whether McCormick or Washington asked for a copy of her notes on the subject, Dow has waived any applicable privilege on the subject matters of Barbour's reports to Schefsky, notes, and the subsequent internal Dow investigation.[24] Dow counters that Barbour's testimony was insufficient to create a subject-matter waiver.

### 1.    Testimony and Documents Concerning Barbour's Reports to Schefsky

As an initial matter, since the filing of the instant motion, Dow has withdrawn its privilege assertions with respect to Barbour's discussions with Dow in-house attorney

---

[23] *See also Silverstein*, 2009 WL 4949959, at *12 ("As the Explanatory Note to Rule 502(a) states, the Rule creates a general presumption that a waiver is limited only to the materials actually disclosed and limits a subject matter waiver to 'unusual' situations . . . .").

[24] Doc. 1822 at 15–18.

Schefsky in which Barbour claims to have reported her colleagues' anticompetitive conduct. Thus, testimony and documents (to the extent any exist)[25] concerning Barbour's reports to Schefsky are ordered disclosed. Dow states that it has allowed Schefsky to fully testify with regard to the substance of these discussions.[26] Dow further states that it will not object, should plaintiffs wish to further depose Barbour on this topic. Thus, plaintiffs may, if they wish, continue the deposition of Barbour on the limited subject matter of her conversations with Schefsky by **March 4, 2011**. The costs of this continued deposition shall be assessed against Dow.

It is unclear whether Dow continues to assert privilege over information, if any, about Barbour's reports to Schefsky that was uncovered in the course of McCormick's investigation. Plaintiffs assert that at Schefsky's deposition, Dow elicited testimony from Schefsky which "created the impression that Barbour falsely testified that she raised concerns about Fischer and Levi's anticompetitive conduct."[27] Plaintiffs argue that Dow has waived any privilege on the subject matter of whether Barbour reported her colleagues' anticompetitive conduct to Schefsky and that "[t]estimony by McCormick and production of [his] investigative notes and memoranda . . . may corroborate the testimony of Barbour

---

[25]Dow represents that "no documents reflecting any conversation of the kind Ms. Barbour claimed occurred with [Schefsky] exist or are being withheld under a privilege claim." Doc. 1870 at 5 n.1.

[26]*Id.* at 8.

[27]Doc. 1901 at 6.

(which Dow has attempted to impeach through Schefsky) that she reported anticompetitive conduct internally at Dow."[28] The court agrees that, to the extent Dow continues to assert a privilege over information on the subject of whether Barbour made such reports to Schefsky, that privilege has been waived.

As set forth above, Fed. R. Evid. 502(a) provides for subject-matter waiver of the attorney-client privilege and work-product protection in limited situations where intentionally disclosed communication or information and undisclosed communication or information concerning the same subject matter "ought in fairness . . . be considered together."[29] This is necessary "in order to prevent a selective and misleading presentation of evidence."[30] The court finds that fairness dictates the disclosure of any information in Dow's possession regarding whether Barbour discussed with Schefsky the alleged anticompetitive conduct by Levi and Fischer. If information known by McCormick or discovered in his investigation relates to this subject, its revelation is necessary for an accurate presentation of the facts. To otherwise permit Dow to disclose some information or communication on this subject but to hide, for tactical reasons, other information or communication on the subject would be unfair. Accordingly, the court orders Dow to permit the testimony of McCormick on the subject of whether Barbour reported her colleagues' anticompetitive conduct to Schefsky and to

---

[28]Doc. 1901 at 9.

[29]Fed. R. Evid. 502(a).

[30]Explanatory Note to Rule 502.

produce any documents discussing the same by **March 4, 2011**.[31]

### 2. Testimony and Documents Concerning Barbour's Notes About Alleged Anticompetitive Conduct by her Colleagues

Plaintiffs move to compel disclosure of testimony and documents regarding the notes Barbour kept on the alleged anticompetitive conduct of Dow employees. As related above, at Barbour's deposition, counsel for Dow advised her not to answer plaintiffs' questions regarding what she and McCormick discussed about the notes. But then Dow's counsel went on to ask Barbour whether McCormick or Washington asked for a copy of the notes, and Barbour answered the question. Plaintiffs assert that this voluntary disclosure of information waived any attorney-client privilege or work-product protection that would otherwise apply to the subject matter of the notes. Dow counters that Barbour's testimony "related solely to actions she and Messrs. McCormick and Washington took or did not take," and therefore could not have waived any privilege because it did not describe the substance of any attorney-client communication.[32]

While Dow is correct that the attorney-client privilege only extends to communications and not to underlying facts,[33] the court finds that Barbour's testimony

---

[31]To the extent Dow asserts that any such documents constitute opinion work product, Dow may request, no later than February 7, 2011, that protective measures be taken pursuant to Fed. R. Civ. P. 26(b)(3)(B). *See supra* note 20. Any such motion (inclusive of a memorandum in support) shall be limited to five pages. Plaintiffs may file a response, limited to five pages, by February 9, 2011. Dow may file a reply, limited to two pages, by February 11, 2011.

[32]Doc. 1870 at 13.

[33]*See Upjohn*, 449 U.S. at 395–96.

extended beyond an explanation of what actions she took regarding her notes (i.e., facts) to a discussion of what McCormick or Washington instructed her to do with the notes (i.e., communications). Specifically, counsel for Dow inquired, "I'm asking you this question: Did they ask you to give them a copy of the notes?"; to which Barbour answered, "Not that I remember."[34] Thus, this communication was initially privileged; and the privilege was waived when it was disclosed.

The court finds that, under Fed. R. Evid. 502(a), the disclosure of this communication waived the attorney-client privilege as to the subject of what McCormick instructed Barbour to do with her notes. It would clearly be unfair to permit Dow to intentionally disclose a sliver of selective information on this topic but then to block disclosure of closely related information sought by plaintiffs' counsel. This is the type of "unusual situation" in which Rule 502(a) requires consideration of disclosed and undisclosed communication together in order to avoid a misleading and incomplete presentation of information. Barbour should have been permitted to answer questions by plaintiffs' counsel regarding whether McCormick or Washington asked her to show them the notes and whether they instructed her to destroy the notes (or take another action with respect to the notes). Thus, plaintiffs may, if they wish, continue the deposition of Barbour on the limited subject matter of what McCormick instructed her to do with her notes. The costs of this continued deposition shall be assessed against Dow. Plaintiffs may also depose McCormick and Washington on this subject, with no assertions of privilege by Dow. Any deposition in this regard shall be

---

[34]Barbour Dep., exh. A to doc. 1822 at 405.

completed by **March 4, 2011**.

The court does not find, however, that Dow's limited disclosure regarding McCormick's and Washington's communications with Barbour about whether she should share her notes waived all privilege applicable to the larger subject of the notes generally. For example, plaintiffs have made no argument under Rule 502 that fairness requires disclosure of the substance of the notes. Nothing in the record indicates that Dow selectively disclosed information regarding the substance of the notes to gain an unfair tactical advantage. Moreover, there is no indication that disclosure of all information on the subject of the notes generally is necessary to prevent a one-sided presentation of evidence. Accordingly, to the extent plaintiffs' motion moves to compel discovery of the broader subject of Barbour's notes, it is denied.

### 3. Testimony and Documents Concerning McCormick's Internal Investigation

Finally, plaintiffs seek to compel documents and testimony regarding "the subject matter of . . . the subsequent internal investigation" conducted by McCormick.[35] Specifically, plaintiffs ask the court to order (1) the production of "the notes and memorandum resulting from the investigation (including items 593–612 on Dow's supplemental privilege log)," and (2) the testimony of both McCormick and Washington regarding the investigation and the substance of their conversation with Barbour.[36] The

---

[35]Doc. 1807 at 1.

[36]Doc. 1901 at 4.

question before the court is whether by permitting testimony regarding Barbour's conversations with Schefsky and regarding what, if anything, McCormick and Washington told Barbour to do with her notes, Dow waived its privileges with respect to the entire subject matter of McCormick's investigation. Because the court has found no authority that would support such a broad finding, the court answers this question in the negative.

Applying the subject-matter waiver standards of Fed. R. Evid. 502(a), the court does not find that fairness requires the disclosure of the entire McCormick investigation. In contrast to the limited topics of whether Barbour made reports to Schefsky and the life-cycle of Barbour's notes, nothing indicates that Dow is attempting to gain a tactical advantage by putting at issue the broader subject of the investigation. Dow represents that it "does not seek to use the McCormick investigation in any fashion in this litigation."[37] By limiting the waiver to the topics revealed by Barbour at her deposition, "the Court will not be abetting a misleading presentation of evidence."[38]

Accordingly, the court finds that waiver of the attorney-client privilege and work-product protection extends only to the subjects of whether Barbour reported her colleagues' anticompetitive conduct to Schefsky and to what McCormick and Washington instructed Barbour to do with her notes.[39]

---

[37] Doc. 1870 at 16.

[38] *Adams v. United States*, No. 03-0049, 2009 WL 1117392, at * 2 (D. Idaho, April 23, 2009).

[39] Plaintiffs' citations to selective waiver cases, i.e., cases in which a party argues that its disclosure of protected information to the government waives the protection only

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1. Plaintiffs' motion to compel arising from the deposition of Stephanie Barbour is granted in part and denied in part, as set forth above.

2. All discovery compelled by this order shall be completed by March 4, 2011.

Dated January 31, 2011, at Kansas City, Kansas.

    s/James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

selectively (to the government and not to any other person), are inapposite to the instant situation. Neither party argues that Dow waived a privilege based on disclosure to a governmental agency.