IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: URETHANE ANTITRUST LITIGATION, | ) ) ) | MDL No. 1616 |
| _____ | ) ) | Case No. 04-1616-JWL |
| This Document Relates to the following Polyether Polyol Cases: | ) ) ) ) | |
| *Carpenter Co., et al. v. BASF SE, et al.*, | ) ) | Case No. 08-2617-JWL |
| and | ) ) ) | |
| *Woodbridge Foam Corporation, et al. v. BASF SE, et al*. | ) ) ) ) | Case No. 09-2026-JWL |
| _____ | ) | |

## **MEMORANDUM AND ORDER**

This Memorandum and Order relates to two direct actions by plaintiffs who have opted out of the class certified in the main action in this multi-district antitrust case, as noted in the caption above. Those actions presently come before the Court on plaintiffs' motion (Doc. # 1930) for review of discovery orders by the Magistrate Judge dated October 21, 2010, and December 17, 2010. For the reasons set forth below, the motion for review is **denied**.[1]

---

[1]Because the parties' briefs sufficiently set forth the pertinent issues, the Court in its discretion denies plaintiffs' request for oral argument on the motion for review.

**I.     Background**

This multi-district litigation includes class actions in which the plaintiffs claim that defendants engaged in unlawful price-fixing conspiracies with respect to urethane chemical products, in violation of the Sherman Act, 15 U.S.C. § 1. The Court has consolidated two sets of cases relating to different types of urethane products: the Polyester Polyol cases, which have settled; and the Polyether Polyol cases, to which this order relates. In the present actions (*Carpenter* and *Woodbridge*), two sets of plaintiffs, comprising a total of 56 potential class members who have opted out of the class action, have filed their own direct actions against defendants.

Many class-action and direct-action plaintiffs who purchased urethane products from defendants used those products to manufacture foam, which they in turn supplied to manufacturers of various goods. In July 2010, it became public knowledge that the United States Department of Justice was conducting a grand jury investigation into a possible price-fixing conspiracy by foam manufacturers ("foamers"), including at least five direct action plaintiffs (including the lead direct action plaintiffs) and five class-action plaintiffs. The Canadian government is conducting a parallel investigation into possible violations of Canadian antitrust law. Those governments subpoenaed documents from and executed search warrants on various foamers, and one FBI warrant affidavit was inadvertently disclosed to the public. In August 2010, defendants served interrogatories and document requests on the direct-action plaintiffs, seeking information relating to those investigations, and they noticed the depositions of 26 individuals

allegedly implicated in the foam conspiracy, as well as five Rule 30(b)(6) depositions on topics including the investigations.

Plaintiffs moved for a protective order (Doc. # 1596) to preclude discovery into the alleged anticompetitive conduct by foamers that is the subject of the investigations. The United States then moved to intervene in the action and to stay that discovery (Doc. # 1616). On October 21, 2010, the Magistrate Judge issued a Memorandum and Order (Doc. # 1703), by which it denied the motion for protective order, granted the Government's motion to intervene, and took the motion to stay under advisement. The Magistrate Judge declined to consider plaintiffs' relevance arguments, instead asking the parties to put that issue before the Court by means of a motion to compel filed by defendants. After defendants filed such a motion (Doc. # 1743), the Magistrate Judge issued a second Memorandum and Order on December 17, 2010 (Doc. # 1877). The Magistrate Judge denied the motion with respect to any request for discovery relating directly to the investigations, but he granted the motion to compel with respect to discovery relating to plaintiffs' underlying conduct. The Magistrate Judge also denied the Government's motion to stay as moot, in light of the fact that plaintiffs would not be required to produce any information directly relating to the investigations. Plaintiffs now seek review of those two orders by the Magistrate Judge.[2]

---

[2]The Magistrate Judge extended the time for plaintiffs' motion for review from the first Memorandum and Order until after the motion to compel had been resolved by the second Memorandum and Order. The Magistrate Judge also granted plaintiffs'
(continued...)

3

## II. <u>Standard of Review</u>

Fed. R. Civ. P. 72(a) governs objections to a non-dispositive order by a magistrate judge. Under that rule, the district court does not conduct a *de novo* review, but instead employs a more deferential standard under which the movant must show that the order "is clearly erroneous or is contrary to law." *Id.*; *accord First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000); 28 U.S.C. § 636(b)(1)(A). The clearly erroneous standard "requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988). "Because a magistrate is afforded broad discretion in the resolution of non-dispositive discovery disputes, the court will overrule the magistrate's determination only if this discretion is abused." *A/R Roofing, L.L.C. v. Certainteed Corp.*, 2006 WL 3479015, at *3 (D. Kan. Nov. 30, 2006) (citing *Comeau v. Rupp*, 762 F. Supp. 1434, 1450 (D. Kan. 1991)); *see also* 12 Chas. A. Wright, et al., *Federal Practice and Procedure: Civil 2d* § 3069, at 350 (1997) (discovery disputes might be better characterized as suitable for an abuse-of-discretion analysis under Rule 72(a)), *cited in Microsoft v. MBC Enterprises*, 120 F. App'x 234, 243 (10th Cir. 2004).

---

[2](...continued)
motion for a stay of the discovery pending the resolution of the present motion for review.

**III.    Analysis**

    *A.    Order # 1703 – Motion for Protective Order – Burden*

Plaintiffs sought a protective order pursuant to Fed. R. Civ. P. 26(c), which allows a court, for good cause, to prohibit discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Plaintiffs concede that, to establish good cause for a protective order, they were required to make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *See Gulf Oil v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (quoting *In re Halkin*, 598 F.2d 176, 193 (D.C. Cir. 1979)). In Order # 1703, the Magistrate Judge rejected three separate grounds raised by plaintiffs in support of their motion for a protective order, and plaintiffs renew those arguments here.

    1.    First, plaintiffs argue that the Magistrate Judge erred in refusing to grant the protective order to prevent plaintiffs' employees from having to decide whether to invoke the Fifth Amendment's protection against self-incrimination in depositions likely to involve questions concerning possible criminal conduct under antitrust laws. The Magistrate Judge concluded that plaintiffs' statements concerning such harm lacked sufficient specificity and support to establish good cause for a protective order.

The Court rejects this argument by plaintiffs. Plaintiffs have not cited any authority suggesting that a prohibition against discovery is required in all circumstances in which a deponent may have to consider his rights under the Fifth Amendment; nor have plaintiffs suggested any manner in which the Magistrate Judge mis-applied the law

5

with respect to this argument. Moreover, the Court concludes that the Magistrate Judge did not abuse his discretion or commit clear error in finding that plaintiffs did not adequately support this argument. As the Magistrate Judge noted, plaintiffs did not provide any evidence from the deponents that the Fifth Amendment could in fact be implicated in the depositions. Plaintiffs argue that no such evidence should be required here because the FBI affidavit itself reveals a risk that deponents could be asked incriminating questions. In their briefs to the Magistrate Judge, however, plaintiffs only conclusorily stated that deponents could assert Fifth Amendment rights, without offering any details about possible questions or alternatives or the likelihood that deponents would actually invoke those rights.

The cases cited by plaintiffs are easily distinguished. For instance, *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5ths Cir. 1979), did not involve a request for a protective order, but instead involved the possible dismissal of the plaintiff's claims because he had already asserted the Fifth Amendment privilege against self-incrimination. *See id.* at 1086. In *Hobley v. Chicago Police Commander Burge*, 225 F.R.D. 221 (N.D. Ill. 2004), the issue was whether depositions containing invocations of the Fifth Amendment could be disseminated; the issue was not, as it is here, whether the discovery may be taken in the first place. *See id.* at 225. Similarly, in *U.S. v. Approximately 1,170 Carats of Rough Diamonds*, 2007 WL 2071863 (E.D.N.Y. July 17, 2007), the court did not consider whether certain discovery could be taken; rather, the case involved whether testimony could be used in a separate action.

6

*See id.* Finally, in *In re Katrina Canal*, 2007 WL 1959003 (E.D. La. June 28, 2007), the court granted a protective order postponing (not precluding) a deposition involving privileged matters, based on a real risk of self-incrimination and an affidavit by the deponent stating that he would in fact invoke the Fifth Amendment. *See id.* As noted above, plaintiffs presented no such evidence or specificity in the present case.

The Court concludes that plaintiffs failed to show, in a specific and detailed way, that issues arising under the Fifth Amendment constituted an undue burden for plaintiffs and their employees. Individual employees are free to invoke the Fifth Amendment in their deposition as appropriate, and plaintiffs have not shown that those employees face a horrible or unfair choice in making that decision. Plaintiffs brought this action, and in litigating their claims, they have put defendants' employees to the same choice that they bemoan now. As noted in *Wehling*, on which plaintiffs rely, a plaintiff may not use the Fifth Amendment as a sword in asserting claims without having to produce information sought by the defendant. *See Wehling*, 608 F.2d at 1087. The Tenth Circuit has recently noted that a party "has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *See Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009). Accordingly, the Court overrules this objection by plaintiffs to the Magistrate Judge's order.

2.  Plaintiffs next argue that the Magistrate Judge "erred in finding that exposing grand jury witnesses to harm did not constitute good cause." Specifically, plaintiffs argue that "disclosing the grand jury's secrets risks exposing unindicted

7

witnesses to coercion and retaliation—or annoyance, embarrassment and oppression, in the language of Rule 26(c)—from their competitors and business associates (other Plaintiffs and the Defendants in this case)." Plaintiffs did not raise this issue in their initial brief in support of their motion for a protective order, however, but instead raised it for the first time in their reply brief, and the Magistrate Judge refused to grant relief on this basis for that reason. In their briefs to this Court, plaintiffs have not addressed their untimely assertion of this argument; thus, plaintiffs have not shown how the Magistrate Judge erred in so ruling, and the Court concludes that the Magistrate Judge did not so err.

The Magistrate Judge also stated that, "even if the court were to consider this argument on its merits, the argument would fail for lack of support and specificity." The Court agrees with the Magistrate Judge that "plaintiffs provide[d] no detailed explanation about how or why individuals who cooperated with the grand jury investigation would be annoyed or embarrassed if their identity and the information they provided became known to other parties in this action." Indeed, even in their briefs to this Court, plaintiffs have not explained in detail any such risk of retaliation or oppression. Furthermore, as defendants note, the parties are already bound by a protective order limiting the disclosure of information obtained in discovery. Therefore, the Court overrules this objection by plaintiffs to the Magistrate Judge's order.

3.   Finally, plaintiffs argue that the Magistrate Judge erred in rejecting their argument that the proposed discovery would impose an undue burden in terms of time

8

and cost. Again, plaintiffs have not shown that the Magistrate Judge mis-applied the law with respect to this issue; nor have plaintiffs shown that the Magistrate Judge abused his discretion or clearly erred in his ruling that plaintiffs had not adequately supported this argument for a protective order.

First, the Magistrate Judge correctly pointed out that plaintiffs had failed to support this argument with any estimate or discussion of the monetary expense of responding to this discovery. (Nor did plaintiffs provide any such estimate in their briefs to this Court.) Thus, the Magistrate Judge properly refused to grant a protective order on the basis of the expense of providing the discovery.

Plaintiffs also complained that substantial time would be required to prepare and produce so many witnesses for depositions. Again, the Magistrate Judge's finding that plaintiffs had failed to provide any support for their assertion was not clearly erroneous, as plaintiffs in fact failed to provide any detail regarding any such burden. As defendants point out, many of the noticed depositions would take place even if defendants could not inquire into the subjects at issue. Moreover, as the Magistrate Judge noted, even with the 31 additional depositions, defendants still have not reached the scheduling order's limit of 95 depositions per side.

Finally, plaintiffs complained about the burden involved in producing so many additional documents. With their reply brief to the Magistrate Judge, plaintiffs submitted an affidavit containing the estimate that the additional document production would take 30 to 38 weeks. Defendants dispute that the production would take that long. Even if

9

plaintiffs were correct in their estimate, however, the Magistrate Judge did not clearly err in finding that such a period did not represent an inordinate amount of time for the discovery. Measured from August 2010, when the discovery requests were propounded, such a period of seven to nine months would have extended discovery beyond the December 2010 deadline by only a few months. The additional delay since that time may be attributed to plaintiffs' motions seeking to avoid having to provide that discovery.[3] Moreover, both sides agree that some of the necessary steps outlined in plaintiffs' affidavit—for instance, identifying search terms and custodians—have already been completed, as ordered by the Magistrate Judge, in anticipation of this ruling. As defendants note, plaintiffs will be required to produce this information in discovery in antitrust cases pending against the foamer plaintiffs. Furthermore, as the Magistrate Judge stated in his order and as demonstrated by plaintiffs' affidavit, the estimated time for production is less than the time needed for plaintiffs' initial document productions in this case.

Accordingly, the Court upholds the Magistrate Judge's conclusion that plaintiffs failed to show that responding to this discovery would impose an undue burden. The Court notes in this regard that plaintiffs brought this action, and therefore they cannot be surprised that they must provide all relevant information sought by defendants. This

---

[3] The Court does not mean to suggest that plaintiffs were not entitled to pursue these procedural avenues for relief. The fact remains, however, that plaintiffs themselves are responsible for much of the delay about which they complain, by filing motions that ultimately proved to lack merit.

case has already exceeded six years in duration; the additional time needed for this discovery will not unduly prejudice plaintiffs.

## B. *Order # 1877 – Motion to Compel – Relevance*

Fed. R. Civ. P. 26(b)(1) provides that parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense," and that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The Magistrate Judge found that the information sought by defendants concerning plaintiffs' communications and activities was relevant to issues relating to defendants' antitrust liability and to plaintiff's claim of fraudulent concealment. Applying the governing liberal discovery standard, the Court concludes that the Magistrate Judge did not abuse his discretion or clearly err in making that finding; thus the Court overrules plaintiffs' objections to his orders.

Plaintiffs begin by arguing that the kind of "downstream discovery" sought by defendants is disfavored in light of certain antitrust caselaw. In particular, plaintiffs note that it is not a defense to antitrust liability to show that a plaintiff has unclean hands or acted *in pari delicto*. Similarly, a defendant cannot argue, as a defense to an antitrust claim, that the plaintiff had no injury if it had "passed on" the overcharge to its customers. Thus, plaintiffs point to a general policy against examination of an antitrust plaintiff's own conduct. Defendants have conceded that they may not seek downstream discovery for those prohibited purposes. As noted by the Magistrate Judge, however,

11

defendants seek this discovery to show that they did not engage in anticompetitive conduct in the first place. Thus, defendants argue, and the Magistrate Judge found, that the discovery was indeed relevant and properly discoverable.

Plaintiffs have not provided any authority suggesting that downstream discovery may never be obtained for any purpose; to the contrary, plaintiffs concede that there is no *per se* prohibition against this type of discovery. Instead, they are forced to argue that, in light of the improper purposes noted above, such discovery should be disfavored, and that the information is not relevant in this particular case. The Magistrate Judge identified at least three different issues to which this discovery is relevant in this case.

First, as found by the Magistrate Judge, evidence that plaintiffs solicited or welcomed standardized price increases by defendants would be relevant to rebut plaintiffs' argument that defendants' parallel price increases indicate the presence of a price-fixing conspiracy, as defendants would be able to argue that any successful increases resulted from plaintiffs' actions and not from a conspiracy.[4] Evidence that plaintiffs were willing to accept such increases by defendants would be similarly relevant, as defendants would then be better able to argue that the parallel increases "stuck"—without any defendant breaking ranks and lowing prices in response to push-back from plaintiffs—not because of a conspiracy, but because plaintiffs' own

---

[4]Plaintiffs suggest that defendants improperly broadened the scope of this relevance argument from mere solicitation. In their motion to compel, however, defendants argued that evidence of plaintiffs' acceptance of price increases would be relevant.

12

conspiracy made them willing to accept the higher prices without complaint. Thus, the evidence is relevant to whether defendants engaged in a conspiracy in the first place. Although plaintiffs dismiss these arguments as unfounded speculation, the FBI affidavit provides evidence that the foamers used defendants' price increases as a pretext for their own increases.

The Magistrate Judge also cited one e-mail containing evidence that a customer solicited a price increase. Plaintiffs argue that the e-mail does not support this argument because the product in question there is not one used by the foamers. Nevertheless, the e-mail does show that the idea that a purchaser might actually solicit an increase is not completely unfounded, particular in light of the FBI affidavit's evidence of a conspiracy among the foamers. Moreover, defendants also seek evidence that, even if plaintiffs did not go so far as to solicit increases, they welcomed and were willing to accept increases, which would be relevant for the reasons stated above. The Court does not agree that the possibility of finding such evidence is somehow foreclosed by the testimony of the defendants' corporate representatives, who did not specifically note such conduct by plaintiffs in listing reasons for defendants' price increases. The Court also rejects plaintiffs' argument that defendants should have in their own files any such evidence regarding solicitation or acceptance of increases by plaintiffs, as defendants would be entitled to have their own evidence corroborated by evidence from plaintiffs. Moreover, defendants would not necessarily have their own evidence of plaintiffs' willingness to accept increases.

The Court also agrees with the Magistrate Judge that plaintiffs' own parallel price increases, communications with competitors, and attendance at trade association meetings would be relevant to rebut plaintiffs' position that such conduct by defendants provides some circumstantial evidence of a conspiracy. Plaintiffs argue that there is no need for such rebuttal evidence, as the law already requires that plaintiffs provide additional evidence to show a conspiracy. Regardless of plaintiffs' own evidentiary burden, the evidence sought by defendants is relevant. Plaintiffs concede that they intend to use such evidence regarding defendants' activities as evidence supporting the existence of a conspiracy; thus, defendants would be entitled to rebut that evidence by showing that because plaintiffs engaged in the same conduct, that evidence does not necessarily indicate or support the existence of a conspiracy among defendants. As defendants note, if plaintiffs' own conduct was innocent, then that supports defendants' argument that their own conduct was innocent; if plaintiffs' conduct was conspiratorial, then that supports defendants' argument that price increases resulted not from a conspiracy, but from plaintiffs' own desire for and willingness to accept those increases. Either way, the evidence is relevant.

Plaintiffs also argue that, under the reasoning of the Magistrate Judge, every antitrust case would involve time-consuming discovery about the plaintiff's own conduct. The Court need not speculate about the limits of discovery in other antitrust cases, however; the present case contains evidence of a conspiracy among plaintiffs, and the requested discovery is therefore relevant.

14

Finally, the Court agrees with the Magistrate Judge that the downstream discovery requested in this case is relevant to plaintiff's fraudulent concealment claim, by which they seek to extend the statute of limitations. Any evidence that plaintiffs carefully monitored defendants' costs and prices, for instance for the purpose of using defendants' increases as a pretext for implementing their own increases, would be relevant to the issue of whether plaintiffs knew or reasonably should have known that defendants' stated reasons for price increases were pretextual.[5]

Accordingly, the Court concludes that the Magistrate Judge did not clearly err or abuse his discretion in finding the requested downstream discovery to be relevant to the claims and defenses in this action, and thus compelling plaintiffs to provide that discovery.[6]

### C. *Weighing Relevance Against Burden*

---

[5]Plaintiffs cite to the Court's prior class certification order in this case, in which the Court concluded that "the common issue of concealment will predominate because the key inquiry will focus on the defendants' conduct—that is, what the defendants did—rather than on the plaintiffs' conduct." *See In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 452 (D. Kan. 2006) (Lungstrum, J.). In finding that individual issues did not predominate, however, the Court did not conclude that there were *no* individual issues regarding fraudulent concealment. Moreover, the present direct actions do not involve a class, and thus any individualized defenses would be relevant, including those involving whether any particular plaintiffs in fact were lulled into accepting defendants' stated reasons for their price increases.

[6]Defendants also argue that the discovery is relevant to damages and class certification issues. The Magistrate Judge did not address those arguments, and in light of its ruling, the Court declines to address those arguments in the first instance.

15

Plaintiffs also argue that the Magistrate Judge erred in not explicitly weighing their burden in responding to the discovery requests against the relevance of those requests and the benefit to defendants from obtaining the discovery. First, plaintiffs argue that the Magistrate Judge should have considered the issue of relevance in ruling on their motion for a protective order, instead of making relevance a wholly separate inquiry to be litigated through a motion to compel. The Court need not decide in this case, however, whether a protective order under Rule 26(c) may be based on a lack of relevance. By his subsequent order, the Magistrate Judge did consider the issue of relevance, and because he found the discovery to be relevant, plaintiffs cannot have suffered any harm from the Magistrate Judge's failure to address relevance in the protective order ruling.[7]

Plaintiffs further argue that, in ruling on the motion to compel, the Magistrate Judge was required, even after finding relevance, to consider whether "the burden or expense of the proposed discovery outweighs its likely benefit," pursuant to Rule 26(b)(2)(C)(iii). It does not appear that plaintiffs ever cited this provision in its arguments to the Magistrate Judge. Nor did plaintiffs raise this issue of the need for a

---

[7]In arguing that relevance should have been considered in the context of the motion for protective order, plaintiffs point to the statement in *Johnson ex rel. Johnson v. Olathe District Schools*, 212 F.R.D. 582 (D. Kan. 2003), that "[o]nce a party establishes relevance and necessity, the district court must balance the need for the information against the claim of injury resulting from disclosure." *See id.* at 284. That test does not help plaintiffs here, however, as the Magistrate Judge did consider and find relevance, and plaintiffs were unable to show any injury from the disclosure.

balancing after the Magistrate Judge denied the motion for protective order and ordered further briefing on the relevance issue. At any rate, the Court concludes that the Magistrate Judge did not err in failing to make explicit findings regarding a balancing of the relevance and burden of the discovery under Rule 26(b)(2). The Tenth Circuit has held that a court need not make explicit findings concerning such a balancing under that rule. *See In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1193-94 (10th Cir. 2009). Moreover, the Magistrate Judge determined that plaintiffs had not demonstrated any undue burden from the discovery requests; thus, there was no burden that could have outweighed the benefit to defendants from seeking relevant discovery. Finally, even if an explicit weighing were required, this Court would and does conclude that the burden and expense of the proposed discovery does not outweigh the likely benefit to defendants of that discovery.

Finally, plaintiffs argue that, at the conclusion of his first order, the Magistrate Judge should not have limited plaintiffs' objections to the discovery to the issue of relevance. The Court rejects this argument. Plaintiffs did not raise this issue with the Magistrate Judge when it arose, the Magistrate Judge had already dispensed with plaintiffs' objections based on burden or oppression, and plaintiffs have not identified for this Court any particular objections that they would have asserted that were not addressed by the Magistrate Judge's orders.

### D. *Coordination of Discovery with Pending Cases*

In their reply brief, plaintiffs suggest for the first time that, if their motion for

17

review is denied, this discovery should be accomplished in coordination with the discovery schedule in the pending multi-district litigation against some of these plaintiffs. In response to that suggestion, class plaintiffs have filed their own pleading by which they argue that such coordination should be rejected or their own case against defendants should be severed. These issues are more properly addressed by the Magistrate Judge in the first instance, and the Court therefore declines to address them at this time.

Accordingly, the Court denies plaintiffs' motion for review of the Magistrate Judge's orders in its entirety.[8] The Magistrate Judge will address issues relating to the timing of the requested discovery and the schedule for these cases going forward.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs' motion for review of discovery orders by the Magistrate Judge (Doc. # 1930) is **denied**.

IT IS SO ORDERED.

Dated this 5th day of April, 2011, in Kansas City, Kansas.

---

[8] Plaintiffs question whether defendants are entitled to this discovery from all of the direct action plaintiffs or only from foam manufacturing plaintiffs, although they state that they will seek such clarification first from the Magistrate Judge. Thus, the issue is not presently before this Court.

18

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge