IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| IN RE: URETHANE ANTITRUST LITIGATION | ) ) ) ) |
|  | MDL 1616 |
|  | Civil No. 04-md-1616-JWL-JPO |
| This Document Relates To: The Polyether Polyol Cases | ) ) ) ) |

## CLASS PLAINTIFFS' MOTION TO COMPLETE THE DISTRIBUTION OF THE BAYER SETTLEMENT FUND

1. Class Plaintiffs, by their undersigned counsel, hereby respectfully move this Court for an order:

    a. approving the final distribution of the Bayer Settlement Fund to Authorized Claimants according to the formula described below and in the Declaration of Charlene Young in Support of Class Plaintiffs' Motion to Complete the Distribution of the Bayer Settlement Fund dated August 1, 2011 ("Young Decl.) being filed simultaneously with this Motion;

    b. allowing and disallowing late claims as set forth in this Motion;

    c. reserving $23,707 in the Bayer Settlement Fund Escrow Account for payment of the costs and expenses of completing the distribution of the Bayer Settlement Fund, and authorizing payment to Rust of its reasonable fees and expenses in that amount; and

    d. directing that if any checks from this second distribution of the Bayer Settlement Fund are not negotiated within a reasonable time after they are issued, the checks be cancelled and, following final approval by the Court of the proposed Huntsman

settlement, the resulting monies be transferred to the Hunstman Settlement Fund established for the benefit of the Litigation Class certified by this Court.

## I. INITIAL DISTRIBUTION OF BAYER SETTLEMENT FUND

2. By Order dated December 14, 2010 (Dkt. 1865) ("Initial Distribution Order"), the Court approved Class Plaintiffs' motion to make an initial distribution of the Bayer Settlement Fund to Class Members who submitted valid claims ("Authorized Claimants") to Claims Administrator Rust Consulting, Inc. ("Rust").

3. The Initial Distribution Order approved Class Counsels' request that ten percent of the Bayer Settlement Fund be retained in the Bayer Settlement Fund Escrow Account ("Bayer Escrow Account") to pay for preparation of tax returns, pay any taxes due, and address any unforeseen claims issues that might arise, and that $51,437 be reserved in the Bayer Escrow Account to cover Rust's anticipated fees and expenses in connection with settlement administration and distribution of settlement proceeds. Initial Distribution Order ¶¶ 8, 9.

4. The Initial Distribution Order required that the Bayer Escrow Account balance, minus the $3,701,827.50 (ten percent) holdback and $51,437 for claims administration, be transferred into a Bayer Distribution Fund checking account ("Bayer Distribution Account") to be disbursed to claimants on a *pro rata* basis, based on the Authorized Claimants' purchases of Eligible Products during the Class Period ("Allowed Purchases") as a proportion of the funds to be distributed. Initial Distribution Order, ¶ 9.

5. The Bayer Distribution Account was established as required and funded on January 13, 2011. Rust made the initial distribution to claimants on January 21, 2011. Young Decl. ¶¶ 3, 4.

6. In accordance with the Initial Distribution Order, the settlement checks mailed in January bore the legend "VOID AFTER 90 DAYS." Young Decl. ¶ 5. The actual date by which checks had to be negotiated was 30 days later, or May 21, 2011, because the Initial Distribution Order also provided that "no check shall be negotiated in the Bayer Distribution Fund more than 120 days after the date of the check." Initial Distribution Order ¶ 11.

7. Rust endeavored to ensure that claimants negotiated their settlement checks. Among other things, Rust sought addresses for checks that were returned by the United States Postal Service as undeliverable, re-issued checks to claimants who requested re-issues, and contacted claimants who did not negotiate settlement checks of $50.00 or more by May 21, 2011 and for whom Rust obtained current contact information. Young Decl. ¶¶ 6 - 10.

8. As of July 26, 2011, the Distribution Account balance was $239,072.26. Of this, $17,645.64 represents a reissued check that is still valid and outstanding, and $203,620.59 results from one Class Member's delay in authorizing the reissuance of certain checks to a successor entity; despite repeated requests from Rust and Class Counsel, the Class Member did not authorize the reissuance until July 26. Young Decl. ¶ 11. The remaining balance in the Distribution Account is due to thirty-five claimants not negotiating their original and/or reissued checks before the checks expired. Young Decl. ¶ 12. A listing of the claims and uncashed check amounts is attached as Exhibit 1 to the Young Declaration.

## II. MOTION TO COMPLETE DISTRIBUTION OF BAYER ESCROW ACCOUNT

9. The Initial Distribution Order required Class Counsel, when appropriate and prudent to do so but in no event later than August 15, 2011, to "file a motion seeking leave to distribute to Authorized Claimants, *pro rata* to their allocated distribution of the Bayer Settlement Fund as determined by Rust: (i) any monies remaining in the Bayer Distribution

[Account] as a result of un-cashed checks, and (ii) the unused residue of the escrowed monies in the Bayer [Escrow Account]." Initial Distribution Order ¶ 12. Accordingly, Class Counsel now seek leave to distribute the unused residue of the Bayer Escrow Account and the monies that are currently in the Bayer Distribution Account due to uncashed checks.

10. Rust recommends that this second distribution be made only to those claimants who negotiated the checks they received from the first distribution and only to those claimants whose second distributions would be $10.00 or more. Young Decl. ¶¶ 14, 33. Class Counsel concur with Rust's recommendation: sending checks only to those claimants who negotiated their checks from the first distribution and who would receive at least $10.00 in this distribution reduces the likelihood of multiple small checks remaining uncashed, and facilitates the closing of the Distribution Account.

11. The Estimated Schedule for Second Distribution attached as Exhibit 4 to the Young Declaration assumes that checks will be sent only to claimants who negotiated their checks from the first distribution. *See* Young Decl. ¶ 32. If the Court grants this motion in full, the actual distribution to each claimaint who receives a distribution will be slightly higher than shown on the schedule because interest earned on the Bayer Settlement Escrow Account and the funds associated with *de minimis* payments will be allocated to claimants whose distribution amounts are at least $10.00. Young Decl. ¶ 41.

12. The proposed final distribution of the Bayer Escrow Account is based on calculations utilizing Class Members' purchase data and utilizes the same method applied in the initial distribution. To ensure the confidentiality of such information, claimants' names are redacted in the Estimated Schedule for Second Distribution, the Young Declaration, and this Motion.

### A. Claims Administration Fees And Expenses

13. The Initial Distribution Order authorized the Escrow Agent to pay Rust's reasonable future invoices from the Bayer Escrow Account upon a written request from Class Counsel to do so. Initial Distribution Order ¶ 7. When the Initial Distribution Motion was filed, Rust anticipated incurring fees and expenses of $51,437.00 for disbursing the funds to claimants and concluding the administration of the settlement. Declaration of Robin M. Niemiec Re: Claims Administration And Calculation In Support of Class Plaintiffs' Motion For An Order Authorizing Distribution Of The Bayer Settlement Fund, ¶ 34 and Exhibit G (submitted with Initial Distribution Order, Dkt. 1761-1).

14. The Court ordered that $51,437.00 be retained in the Bayer Escrow Account for payment of Rust's future invoices. Initial Distribution Order ¶ 6.

15. Rust's actual fees and expenses invoiced for its services through February 28, 2011 were substantially higher than the amount Rust had estimated would be required to complete the Bayer Settlement distribution. Young Decl. ¶ 16. This was due to additional work that Rust had not anticipated when Rust originally estimated its future fees and expenses. *Id.* After discussions with Class Counsel, Rust wrote off a significant amount of fees and expenses and invoiced exactly $51,437.00 for its services through February 28, 2011. *Id.* Those fees and expenses have been paid from the Bayer Escrow Account. *Id.*

16. Rust reasonably anticipates that its fees and expenses from March 1, 2011 through completion of the second distribution will be $23,707.00. Young Decl. ¶ 17. This estimate includes stopping payment on all stale checks from both distributions, reconciling account balances, calculating the amounts to be paid to each claimant in the second distribution, preparing the declaration in support of this motion, making the second distribution, coordinating

check reissues and check forwarding, updating and maintaining the settlement hotline and website, preparing tax or informational returns, and finalizing and closing accounts after the second distribution is complete. *Id.* A copy of Rust's Revised Estimate to complete the second distribution, dated April 12, 2011, is attached as Exhibit 2 to the Young Declaration.

17. Class Counsel believe the additional requested amount of $23,707.00 is reasonable and necessary to the administration of the Bayer Settlement. Therefore, Class Counsel request leave to reserve $23,707.00 to pay Rust to complete the second distribution and conclude administration of the Bayer Settlement. Class Counsel further request authorization to pay Rust its fees and expenses incurred, in an amount not to exceed $23,707.00.

**B.     Taxes And Tax Returns**

18. Rust has been estimating the potential tax liabilities of the Bayer Escrow Account on a quarterly basis and filing necessary returns and informational forms. Young Decl. ¶ 19. The Bayer Escrow Account's expenditures exceeded income in 2010 and so no tax was due or paid, and Rust anticipates the same result for 2011. *Id.*

19. Rust anticipates closing the Bayer Distribution Account in 2011 after all checks have been negotiated or have expired, and does not anticipate that the Bayer Distribution Account will owe any taxes. Young Decl. ¶ 20.

20. Neither Rust (Young Decl. ¶ 21) nor Class Counsel recommends withholding any additional monies for future tax return preparation or tax payments.

**C.     Unanticipated Claims Issues**

21. Rust has addressed a number of inquiries from Class Members about misdirected checks, name and address changes, checks that expired and had to be re-issued, and so forth. Young Decl. ¶¶ 6 – 13. These were normal administrative inquiries encountered in most

settlements and did not involve new claims or increase the dollar value of the Authorized Claims to be paid from the Distribution Account; they do not affect the ten percent of the Settlement Fund held back to address unanticipated claims issues. Young Decl. ¶ 22.

22. Neither Rust nor Class Counsel received any challenges from Class Members as to the amount of their settlement payments. Young Decl. ¶ 23.

### D. Late Claims

23. On July 11, 2011, after receiving a notice concerning the proposed settlements with defendants Huntsman International, LLC ("Huntsman") and Lyondell Chemical Company, a Class Member identified as "Company A" contacted Class Counsel about submitting late claims in the Bayer Settlement. Company A accepted defendants' data as to Eligible Purchases. If Company A's claims were allowed in full, Company A would receive a total Bayer Settlement distribution of approximately $248,000. Young Decl. ¶ 27.

24. Class Counsel request that Company A be permitted to file late claims and recover under the Bayer Settlement. The estimated schedule of distribution attached to the Young Declaration assumes that Company A's late claims are allowed. Young Decl. ¶ 28.

25. Class Counsel received several other inquiries about submitting late claims. In each case, Class Counsel researched the potential claim with Rust and spoke or corresponded with the potential claimant. One potential late claimant acknowledged that it was an indirect purchaser and so not eligible for the Bayer Settlement. Other inquirers did not submit documentation to establish their eligibility to participate in the settlement.

26. Class Counsel exchanged a number of communications, over several months, with two gentlemen seeking to submit late claims on behalf of -- and receive any payment due to -- one or both of two entities with which the men had been affiliated. By letter mailed and e-

mailed on July 1, 2011, Class Counsel informed both men that Class Counsel would not ask the Court to allow the late claim or claims unless the men provided adequate documentation to substantiate their claims by July 15, 2011. A redacted copy of the July 1, 2011 letter is attached as Exhibit 3 to the Young Declaration. Neither Rust (Young Decl. ¶ 24) nor Class Counsel has received a response.

27. Of the companies that inquired about submitting late claims, only Company A actually filed (belated) proofs of claim. Young Decl. ¶ 25. Therefore, Class Counsel recommend that Company A and only Company A be allowed to file late claims, and further recommend that no monies be reserved in the Bayer Escrow Account or Bayer Distribution Account for any other late claims.

28. Class Counsel are mailing a copy of this motion to both gentlemen described in paragraph 26 above, to Company A described in paragraph 23 above, and to several entities or persons who inquired about submitting late claims but did not actually submit them.

### III. FUNDS AVAILABLE FOR DISTRIBUTION

29. The balance of the Bayer Escrow Account as of July 26, 2011 is $ 3,702,510.58. Young Decl. ¶ 29. Class Counsel request that $23,707.00 be reserved in the account for claims administration and that the remaining funds be transferred to the Bayer Distribution Account and distributed to Authorized Claimants on a *pro rata* basis.

30. The balance of the Bayer Distribution Account as of July 26, 2011 is $239,072.26, all of which is due to checks that have not been negotiated. Young Decl. ¶ 30. Reissued checks totaling $221,266.23 are not yet stale. Young Decl. ¶ 11. The other 35 uncashed and now-stale checks range in value from $0.68 to $10,407.84 and have a total value of $17,806.03. Young Decl. ¶ 12. Rust has contacted the claimants with uncashed checks over

$1,000 and alerted them that if they did not negotiate their settlement payments by the end of the month, the payments likely would be forfeited. Young Decl. ¶ 13.

31.   Rust recommends (Young Decl. ¶ 14), and Class Counsel concurs, that all checks that are not negotiated by August 30, 2011 be voided and the funds represented by such voided checks be added to the Bayer Settlement Fund and redistributed to Authorized Claimants on a *pro rata* basis.

32.   Rust also recommends establishment of a $10.00 threshold for distributions to claimants because businesses often do not negotiate settlement checks that are under $10.00, and it is not cost-efficient or effective to mail hundreds of checks for very small amounts of money (some of which will cost more to mail than the face amount of the check). Instead, Rust recommends that the monetary value of those very small checks be included in the funds available for this second distribution. Young Decl. ¶ 33. Class Counsel agree with these recommendations.

## IV.   CALCULATION OF SECOND DISTRIBUTION AMOUNTS

33.   Attached at Exhibit 4 to the Young Declaration is an Estimated Schedule for Second Distribution. It was calculated as follows.

34.   The initial distribution in January 2011 was based on Allowed Purchases totaling $10,870,975,853.25. Young Decl. ¶ 35.

35.   To calculate the estimated Second Distribution, Rust added the total amount of Allowed Purchases by Company A (see paragraph 23 above), to the Allowed Purchases from the initial distribution, yielding a Final Total Allowed Purchases amount of $10,944,687,708.25. Young Decl. ¶ 35.

36. Rust calculated each Authorized Claimant's *pro rata* share of the Authorized Purchases as a fraction in which the numerator is the sum of the Claimant's Authorized Purchases in dollars and the denominator is the Final Total Allowed Purchases in dollars:

> Claimant's Allowed Purchases divided by Final Total Allowed Purchases = Claimant's total *pro rata* share of Allowed Purchases.

Young Decl. ¶ 36.

37. Rust determined the total amount of money available for this second distribution as follows:

| | | |
|---|---:|---:|
| Bayer Distribution Account as of 7/26/11: | $ 239,072.26 | |
| Less: unexpired reissued checks: | (221,266.23) | |
| Less: expected reissues of expired checks: | (16,752.11) | |
| Equals: | | $ 1,053.92 |
| Plus | | |
| Bayer Escrow Account as of 7/26/11: | $ 3,702,510.58 | |
| Less: Claims Administrator's future fees and expenses: | (23,707.00) | |
| Less: Company A's first distribution if allowed: | (225,566.11) | |
| Equals amount to transfer to Distribution Account: | | 3,453,237.47 |
| Equals total available for second distribution: | | $3,454,291.39 |

Young Decl. ¶ 37.

38. Rust added the total amount that was disbursed in the first distribution ($33,265,585.93 plus $225,566.11 for Company A, if approved) to the estimated total amount available for the second distribution ($3,454,291.39) to obtain the estimated Total Bayer Settlement Distribution Amount: $36,945,443.43. Young Decl. ¶ 38.

39. Rust then calculated the total compensation under the Bayer Settlement for Company A and each Authorized Claimant who negotiated or is expected to negotiate its settlement check from the initial distribution by multiplying those claimants' *pro rata* shares of Authorized Purchases by the Total Bayer Settlement Distribution Amount:

> Claimant's *pro rata* share of Authorized Purchases times Total Bayer Settlement Distribution Amount = Total Distribution to Claimant.

10

Young Decl. ¶ 39.

40.     Finally, Rust calculated the amount to be paid in this second distribution to Company A and each Authorized Claimant who negotiated or is expected to negotiate its check from the initial distribution by subtracting the amount paid to that claimant in the initial distribution from the Total Distribution to Claimant. Those dollar amounts appear on the Estimated Schedule for Second Distribution attached as Exhibit 4 to the Young Declaration. Young Decl. ¶ 40.

41.     The actual amounts disbursed to claimants will depend on the interest earned by the Bayer Settlement Escrow Account, how many of the as yet uncashed checks from the first distribution ultimately are negotiated, and whether or not the Court grants this motion in full, including the request to allow Company A's claims and to make distributions only to those claimants who negotiated their initial distributions and would receive at least $10.00 in this distribution. Young Decl. ¶ 41.

## V.    DISPOSITION OF ANY UNCASHED CHECKS FROM SECOND DISTRIBUTION

42.     As with the first distribution, the checks to be issued for this second distribution will bear the legend "VOID AFTER 90 DAYS." If any checks of $50.00 or more remain uncashed after approximately 90 days, Rust will follow up with the associated claimants to ask them to negotiate the checks or arrange to reissue the checks. Young Decl. ¶ 42.

43.     Rust and Class Counsel recommend that Rust be authorized to void and stop payment on any checks that are not negotiated within 120 days of issuance, or, in the case of reissued checks, within 45 days of reissuance. Young Decl. ¶ 43.

44. Rust and Class Counsel further recommend that if any funds remain in the Bayer Distribution Account due to uncashed checks after this second distribution, and if the Court grants final approval to Plaintiffs' proposed settlement with Huntsman, then any such remaining funds should be transferred to the Huntsman Settlement Fund for later distribution to the Litigation Class. Young Decl. ¶ 45.

45. It is highly unlikely that the amount remaining in the Bayer Distribution Fund from uncashed checks will be large enough to allow for an efficient third distribution to the Bayer Settlement Class. Young Decl. ¶ 44. Class Counsel do not believe a *cy pres* distribution to third parties is appropriate in these circumstances, where the funds can be distributed to a nearly identical class at a later time. Although the Litigation Class is not precisely co-extensive with the Bayer Settlement Class,[1] there is undoubtedly a great deal of overlap. Accordingly, Class Counsel believe it would be fair and appropriate to distribute any leftover funds to the Litigation Class as part of any future settlement distributions.

---

[1] Unlike the Bayer Settlement Class, the Litigation Class product definition excludes prepolymers and is limited to propylene-oxide based polyether polyols. Moreover, certain class members opted out of the Bayer Settlement Class but remained in the Litigation Class, and vice versa.

## VI. CONCLUSION

46. For the foregoing reasons, Class Counsel respectfully request that the Court enter the proposed Order authorizing completion of the distribution of the Bayer Settlement Fund.

DATED: August 2, 2011

Respectfully submitted,

s/Robert W. Coykendall
Robert W. Coykendall, #10137
Robert N. Walter, #08620
Morris, Laing, Evans, Brock &
   Kennedy, Chartered
Old Town Square
300 North Mead – Suite 200
Wichita, KS 67202
Tel: (316) 262-2671
Fax: (316) 262-5991

**Plaintiffs' Liaison Counsel**

Donald L. Perelman
Gerard A. Dever
Paul Costa
**FINE, KAPLAN AND BLACK, R.P.C.**
1835 Market Street, 28th Floor
Philadelphia, PA 19103
Tel: (215) 567-6565
Fax: (215) 568-5872

Richard A. Koffman
Christopher J. Cormier
Sharon K. Robertson
**COHEN MILSTEIN SELLERS**
   **& TOLL PLLC**
1100 New York Avenue, N.W., Suite 500
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

**Plaintiffs' Co-Lead Counsel**

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on this 2nd day of August, 2011, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel who have registered for receipt of documents filed in this matter. I also certify that I mailed a true copy of the foregoing document by first mail to the following non-CM/ECF participants:

Mark V. Chester
Johnson & Colmar
2201 Waukegan Rd., Suite 260
Bannockburn, IL 60015

Jason S. Hartley
Timothy Irving
Troutman Sanders LLP
550 West B Street, Suite 400
San Diego, CA 92101-3599

Judith A. Shimm
Zelle, Hofmann, Voelbel, Mason & Gette, LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104

John W. Mackey
Justin T. Toth
Ray, Quinney & Nebeker
36 S. State Street, Suite 1400
Salt Lake City, UT 84111

Michael F. Tubach
O'Melveny & Myers, LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823

William J. Pinilis
Pinilis Halpern, LLP
160 Morris Street
Morristown, NJ 07960

Daniel R. Karon
Goldman Scarlato & Karon, P.C.
700 W. St. Clair Ave., Suite 204
Cleveland OH 44113

Andrew B. Sacks
Sacks & Weston, LLC
114 York Rd.
Jenkintown, PA 19046-3233

Steven A. Kanner
William H. London
Freed Kanner London & Millen LLC
2201 Waukegan Rd., Suite 130
Bannockburn, IL 60015

Donna Siegel Moffa
Trujillo Rodriquez & Richards, LLP
258 Kings Highway East
Haddonfield, NJ 08033

Krishna Narine
Schiffrin & Barroway LLC
280 King of Prussia Road
Radnor, PA 19087

Simon Bahne Paris
David J. Cohen
Patrick Howard
SALTZ MONGELUZZI BARRETT &
BENDESKY, P.C.
1650 Market Street
One Liberty Place, 52nd Floor
Philadelphia, PA 19103

                                              s/Robert W. Coykendall
                                              Robert W. Coykendall, #10137