# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| IN RE: URETHANE ANTITRUST LITIGATION | ) ) ) ) | MDL No. 1616 No. 04-MD-1616-JWL |
| This Document Relates To: Polyether Polyol Cases | ) ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF CLASS PLAINTIFFS' PETITION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

# TABLE OF CONTENTS

Page

Table of Authorities ........................................................................................................ iii

I.     THE COURT SHOULD AWARD A FEE EQUAL TO ONE-THIRD
OF THE HUNTSMAN AND BASF SETTLEMENT FUNDS ................................... 2

     A.     The Time And Labor Devoted By Plaintiffs' Counsel .................................... 4

          1.     Class Counsel's Pre-filing Investigation................................................. 4

          2.     The JPML Proceedings And Transfer To This Court ............................ 5

          3.     Defendants' Motion To Dismiss ........................................................... 5

          4.     The Settlement With Bayer And Amendment Of The Complaint......... 6

          5.     Class Certification Proceedings ........................................................... 6

          6.     Merits Discovery.................................................................................. 8

          7.     Document Review and Synthesis.......................................................... 8

          8.     Depositions ......................................................................................... 9

          9.     Hague Evidence Convention Proceedings ........................................... 10

          10.     Merits Experts...................................................................................... 10

          11.     Trial Preparation ................................................................................. 11

          12.     Distribution of the Bayer Settlement Fund ......................................... 11

          13.     Settlement Negotiations with Huntsman and BASF............................ 11

     B.     The Requested Fee Is Reasonable When Considered
In Context Of A Lodestar Cross-Check..................................................... 12

     C.     The Amount Involved And The Result Obtained ........................................ 14

     D.     The Undesirability Of The Case, The Difficulty Of The Litigation,
And The Skill And Experience Of Class Counsel ...................................... 15

     E.     The Customary Fee In A Contingent Case,
And Whether The Fee Is Fixed Or Contingent........................................... 18

F.      Awards In Similar Cases...................................................................................21

G.      Conclusion ........................................................................................................22

II.   THE COURT SHOULD AWARD REIMBURSEMENT OF CLASS
      COUNSEL'S LITIGATION EXPENSES ...............................................................23

III.   CONCLUSION....................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Allapattah Servs., Inc. v. Exxon Corp.,*
   454 F. Supp. 2d 1185 (S.D. Fla. 2006) ................................................................20

*Behrens v. Wometco Enters., Inc.,*
   118 F.R.D. 534 (S.D. Fla. 1988) ........................................................................20

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980) ..............................................................................................2

*Brown v. Phillips Petroleum Co.,*
   838 F.2d 451 (10th Cir. 1988) ................................................4, 12, 14, 17, 21

*Brown v. Pro Football, Inc.,*
   839 F. Supp. 905 (D.D.C. 1993) ........................................................................23

*Cimarron Pipeline Const., Inc. v. Nat'l Council On Comp. Ins.,*
   No. 89-822, 1993 WL 355466 (W.D. Okla. June 8, 1993)................................21

*Flournoy v. Honeywell Int'l, Inc.,* No. Civ. A. 205-184,
   2007 WL 1087279 (S.D. Ga. Apr. 6, 2007)................................................19, 24

*Gottlieb v. Barry,*
   43 F.3d 474 (10th Cir. 1994) ..........................................................................2, 3

*Gudenkauf v. Stauffer Commc'ns, Inc.,*
   158 F.3d 1074 (10th Cir. 1998) ..........................................................................4

*Harman v. Lyphomed, Inc.,*
   945 F.2d 969 (7th Cir. 1991) ............................................................................15

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983)............................................................................................14

*In re AmerisSoft Corp. Sec. Litig.,*
   210 F.R.D. 109 (D.N.J. 2002) ..........................................................................21

*In re Automotive Refinishing Paint Antitrust Litig.,*
   MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ...........................14

*In re Automotive Refinishing Paint Antitrust Litig.,*
   MDL No. 1426, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008) ..................................22

*In re Copley Pharm., Inc.*,
    1 F. Supp. 2d 1407 (D. Wyo. 1998) ...........................................................................15, 18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .........................................................................................23

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992) ...............................................................................16

*In re Linerboard Antitrust Litig.*, MDL No. 1261,
    2004 WL 1221350 (E.D. Pa. June 2, 2004) ...........................................................16, 17, 23

*In re Lucent Tech., Inc., Sec. Litig.*,
    327 F. Supp. 2d 426 (D.N.J. 2004) ...........................................................................16

*In re Miniscribe Corp.*,
    309 F.3d 1234 (10th Cir. 2002) ...................................................................................3

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952,
    2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ................................................................14

*In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ...............................................................................13, 22

*In re Ravisent Tech., Inc. Sec. Litig.*, No. Civ. A. 00-cv-1014,
    2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ...................................................................21

*In re Ready-Mixed Concrete Antitrust Litig.*, 1:05-CV-00979,
    2010 WL 3282591 (S.D. Ind. Aug. 17, 2010) .................................................................19

*In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ 03-0085,
    2005 WL 3008808 (D.N.J. Nov. 9, 2005) .................................................................19, 21

*In re Sprint Corp. ERISA Litig.*,
    443 F. Supp. 2d 1249 (D. Kan. 2006) ...........................................................................3

*In re United Telecommc'ns Sec. Litig.*, No. 90-2251-0,
    1994 WL 326007 (D. Kan. June 1, 1994) .....................................................................21

*In re Universal Service Fund Tel. Billing Practices Litig.*,
    No. 02-MD-1468-JWL, 2011 WL 1808038 (D. Kan. May 12, 2011).....................20, 21, 22

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .....................................................................................22

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ...................................................................3, 4, 18

*Klein v. PDG Remediation, Inc.*, No. 95 Civ. 4954,
  1999 WL 38179 (S.D.N.Y. Jan. 28, 1999) ........................................................22

*Knight v. Red Door Salons, Inc.*, 08-01520 SC,
  2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ........................................................20

*Lazy Oil Co. v. Witco Corp.*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997).............................................................12, 24

*Lewis v. Wal-Mart Stores, Inc.*, No. 02-CV-0944,
  2006 WL 3505851 (N.D. Okla. Dec. 4, 2006)...................................................21

*Lucas v. Kmart Corp.*, No. C.A. No. 99cv01923,
  2006 WL 2729260 (D. Colo. July 27, 2006) ......................................................20

*Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*,
  09-CV-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) ..........19

*McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-933,
  2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ................................................14

*Millsap v. McDonnell Douglas Corp.*, No. 94-633,
  2003 WL 21277124 (N.D. Okla. May 28, 2003)................................................18

*Montague v. Dixie Nat. Life Ins. Co.*, CIV.A. 3:09-00687,
  2011 WL 3626541 (D.S.C. Aug. 17, 2011) .......................................................19

*Moore v. United States*, 63 Fed. Cl. 781 (2005) ....................................................22

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
  234 F.R.D. 627 (W.D. Ky. 2006) .....................................................................21

*Perez v. Asurion Corp.*, No. 06-20734-Civ,
  2007 WL 2591180 (S.D. Fla. Aug. 8, 2007)......................................................20

*Pinto v. Princess Cruise Lines, Ltd.*,
  513 F. Supp. 2d 1334 (S.D. Fla. 2007) .............................................................17

*Rosenbaum v. MacAllister*,
  64 F.3d 1439 (10th Cir. 1995) ..........................................................................3

*Schwartz v. TXU Corp.*, No. 3:02-cv-2243-K,
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)...............................................17, 19

v

*Skelton v. Gen. Motors Corp.*,
  860 F.2d 250 (7th Cir. 1988) .......................................................................20

*Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05cv00187,
  2007 WL 119157 (M.D.N.C. Jan. 10, 2007) ................................................17

*Stalcup v. Schlage Lock Co.*,
  505 F. Supp. 2d 704 (D. Colo. 2007)...........................................................13

*Stanley v. U.S. Steel Co.*, 04-74654,
  2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) .............................................20

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
  No. Civ. A. 03-4578, 2005 WL 1213926 (E.D. Pa. May 19, 2005) ....................16

*Uselton v. Commercial Lovelace Motor Freight*,
  9 F.3d 849 (10th Cir. 1993) ...........................................................................4

*Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL,
  2007 WL 2694029 (D. Kan. Sept. 11, 2007)................................................21

**Other Authorities**

3 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 14.03  (3d ed. 1992) ..........13

4 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 14:6 (4th ed. 2007) ............21

Manual for Complex Litigation, Fourth (2004) ......................................................................3

Report of the Third Circuit Task Force:  Court Awarded Attorney Fees,
  108 F.R.D. 237 (1985).............................................................................................3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| IN RE: URETHANE ANTITRUST LITIGATION | ) ) ) | MDL No. 1616 No. 04-MD-1616-JWL |
| This Document Relates To: Polyether Polyol Cases | ) ) ) ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF CLASS PLAINTIFFS' PETITION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

Class Plaintiffs and Class Counsel submit this Memorandum in support of their *Petition For Award Of Attorneys' Fees And Reimbursement of Expenses*. Class Counsel respectfully submit that a fair and reasonable award of attorneys' fees is one-third of the Huntsman and BASF Settlement Funds, which together total $84 million. Those settlements are being paid in installments over a period of approximately two years, thus Class Counsel propose that their fee award be paid in installments as well.

Class Counsel have achieved an outstanding result for their clients in this litigation so far and they deserve fair compensation for their efforts. Thanks to the hard work of Class Counsel, the Class has obtained very substantial settlements from these two defendants, and Class Counsel now may devote all of their energies to vigorously prosecuting this matter against the last remaining defendant, The Dow Chemical Company ("Dow").

Notably, Class Counsel achieved the settlement solely on the basis of their own investigation, without the benefit of any pre-existing government investigation, criminal guilty pleas or convictions. Having litigated this complex matter for seven years – initially with a substantial risk of no recovery – and having obtained several large settlements for the Class,

counsel have earned their requested fee.  One-third of the recovery is well within the range of awards approved by this Court, others in this Circuit, and across the country.  The fee requested also is reasonable based on a lodestar cross-check, both when measured since the inception of the case, or measured since the Bayer fee was awarded in 2009.  *See* Part I, *infra*.

Class Counsel also seek reimbursement of $5,014,329.08 in costs and expenses incurred from January 1, 2009 through June 30, 2011.[1]  All of these costs and expenses were reasonable in amount and were directly related to efforts to achieve the best possible result for the Class.  Attorneys who create a common fund for the benefit of a class are entitled to reimbursement from the fund of their reasonable litigation expenses.  As with the fee award, Class Counsel propose that their expenses be reimbursed over time in installments.  *See* Part II, *infra*.

Accordingly, Class Plaintiffs and Class Counsel respectfully request that the Court enter an Order granting their petition, awarding the requested fees and expenses and, in accordance with precedent in litigation of this sort, authorizing Class Counsel to distribute the attorneys' fees in a manner that, in the opinion of Class Counsel, fairly compensates each firm in view of its contribution to the prosecution of Class Plaintiffs' claims.

## I.    THE COURT SHOULD AWARD A FEE EQUAL TO ONE-THIRD OF THE HUNTSMAN AND BASF SETTLEMENT FUNDS

It is well settled that a fee award is appropriate where a common fund for the benefit of class members is created through the efforts of counsel.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994).  The Settlement Agreements with Huntsman and BASF expressly authorize payment of attorneys' fees from the respective Settlement Funds.  Huntsman Settlement Agreement ¶ 33 (Ex. A); BASF Settlement

---

[1]    The Court previously awarded reimbursement of Class Counsel's expenses incurred from the inception of the litigation through December 31, 2008.  *See* Dkt. No. 995 ¶ 3.

Agreement ¶ 32 (Ex. B).  As demonstrated below, a fee equal to one-third of the Huntsman and

BASF Settlement Funds is appropriate in this case.

In this Circuit, the percentage-of-the-fund is the "preferred method" for awarding

attorneys' fees in a common-fund case.  *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249,

1269 (D. Kan. 2006) (citation omitted).[2]  This practice is consistent with the trend nationwide,

where the "vast majority" of federal circuit courts of appeal now direct or permit district courts

to use the percentage-of-recovery method in common-fund cases.  MANUAL FOR COMPLEX

LITIGATION, FOURTH § 14.121 (2004).  The percentage-of-the-fund approach also has the

endorsement of commentators, including the Third Circuit Task Force that studied and evaluated

court-awarded attorney fees.  *See Report of the Third Circuit Task Force:  Court Awarded

Attorney Fees*, 108 F.R.D. 237, 255-56 (1985).

To determine what percentage fee is appropriate, courts in the Tenth Circuit consider the

twelve factors originally articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714,

717-19 (5th Cir. 1974):

> (1) the time and labor involved; (2) the novelty and difficulty of
> the questions; (3) the skill requisite to perform the legal service
> properly; (4) the preclusion of other employment by the attorney
> due to acceptance of the case; (5) the customary fee; (6) any
> prearranged fee -- this is helpful but not determinative; (7) time
> limitations imposed by the client or the circumstances; (8) the
> amount involved and the results obtained; (9) the experience,
> reputation, and ability of the attorneys; (10) the undesirability of
> the case; (11) the nature and length of the professional relationship
> with the client; and (12) awards in similar cases.

---

[2]  *See also Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *Gottlieb*, 43
F.3d at 482-83.  The other approach, the lodestar approach, is "the dominant method for
assessing fees in fee-shifting disputes in federal court."  *In re Miniscribe Corp.*, 309 F.3d 1234,
1243 (10th Cir. 2002).

*Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-55 (10th Cir. 1988). Because of differences among cases, the weight given to each factor varies, and "rarely are all of the *Johnson* factors applicable" to the analysis. *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849, 854 (10th Cir. 1993); *see also Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998) ("We have never held that a district court abuses its discretion by failing to specifically address each *Johnson* factor."); *Brown*, 838 F.2d at 456 (citation omitted).

Examination of the relevant *Johnson* factors demonstrates that an award of one-third of the Settlement Funds is appropriate in this case. Plaintiffs' counsel have devoted significant time and resources to litigating this complex matter efficiently and effectively. The Class has benefited substantially from these efforts, the results of which include more than $139 million in cash recovered to date, valuable cooperation from Bayer, substantial assistance from Huntsman and BASF in preparing for trial, and a certified class action with very strong liability claims against the last remaining Defendant, Dow.

## A. The Time And Labor Devoted By Plaintiffs' Counsel

Class Counsel's fee request is reasonable in light of the substantial time and effort expended investigating and litigating this complex case.[3]

### 1. Class Counsel's Pre-filing Investigation

Class Counsel built this case from the ground up. Unlike antitrust class actions such as the *Polyester Polyols* cases, where a criminal investigation exposed actionable wrongdoing and laid the groundwork for subsequent civil cases, here Class Counsel developed this litigation on

---

[3]     Set forth below in Parts A.1 to A.13 is a summary of Plaintiffs' counsel's work from the inception of the litigation through June 30, 2011. Plaintiffs believe it is appropriate to view the settlements achieved in the context of all of the work performed throughout the litigation, not simply since the last fee petition was filed. In Part B, Class Plaintiffs also provide the same overall context for the Court's lodestar cross-check.

their own and uncovered a nationwide price-fixing and market-allocation conspiracy *before* the Department of Justice launched its own investigation.[4]

Class Counsel interviewed witnesses and purchasers of Polyether Polyol Products, examined relevant documents, hired experts to assist with their study of the industry, and conducted extensive legal research to evaluate the case. Based on this investigation and after devoting hundreds of hours of attorney and paralegal time, Class Counsel determined there was a strong basis to allege an unlawful conspiracy among the major manufacturers of Polyether Polyol Products. The initial *Seegott* complaint was filed in the United States District Court for the District of New Jersey on November 23, 2004. *See* Joint Decl. ¶¶ 4-6.

### 2.   The JPML Proceedings and Transfer to This Court

Defendants moved the Judicial Panel On Multidistrict Litigation to transfer the *Seegott* matter and other *Polyether Polyol* cases to this Court for consolidation or coordination with the pending *Polyester Polyol* cases. Class Counsel opposed these motions. *See* Joint Decl. ¶ 8. Following the JPML's June 16, 2005 Transfer Order (Dkt. No. No. 83), Class Counsel prepared briefs and persuaded this Court that this case should be coordinated, not consolidated, with the *Polyester Polyols* cases, because they involved two distinct sets of products and two distinct conspiracies. *See* Joint Decl. ¶ 9; Dkt. Nos. 128, 132, 133, 136 and 157.

### 3.   Defendants' Motion to Dismiss

On November 10, 2005, the Defendants moved to dismiss the Polyether plaintiffs' consolidated amended complaint (Dkt. No. 158), arguing the allegations failed to state a claim. Plaintiffs filed a comprehensive response brief (Dkt. No. 180) and defended their complaint at

---

[4]      *See* Ex. C ¶ 4, Joint Declaration Of Donald L. Perelman And Richard A. Koffman In Supp. Of Class Pls.' Pet. For Award Of Attorneys' Fees And Reimbursement Of Litigation Expenses ("Joint Decl.").

oral argument on January 9, 2006.  The Court denied the motion as to Plaintiffs' antitrust claims, but granted the motion with respect to the fraudulent concealment allegations, with leave to amend.  *See* Joint Decl. ¶¶ 10-11; Dkt. No. 198.

### 4.   The Settlement with Bayer and Amendment of the Complaint

Over a period of many months in 2005 and 2006, Plaintiffs and Bayer engaged in protracted and arduous settlement negotiations, both in person and via telephone, ultimately leading to the $55.3 million settlement agreement.  *See* Joint Decl. ¶ 12.  Soon thereafter, Plaintiffs prepared and submitted their motion for preliminary approval.  Over the next several months, they took the necessary steps to obtain final approval of the settlement.  Not a single Class member objected, and the settlement was approved.  *See* Joint Decl. ¶ 13; Dkt. No. 425.

The valuable cooperation obtained from Bayer as a result of the settlement included information that the conspiracy impacted not only the basic chemicals (MDI, TDI and polyether polyols), but also systems containing the basic chemicals.  *See* Joint Decl. ¶ 14.  Accordingly, on February 3, 2006, Plaintiffs moved to amend their complaint to include purchases of Polyether Polyol systems.  *See* Dkt. Nos. 206 & 207.  Defendants vigorously opposed including systems in the complaint and also moved to dismiss on statute of limitations grounds.  *See* Dkt. Nos. 238 to 240.  Plaintiffs filed two separate response briefs (Dkt. No. 270 & 271) and argued their position during a March 27, 2006 hearing.  *See* Dkt. No. 288.  On April 14, 2006, the Court granted Plaintiffs' motion to amend and denied Defendants' motion to dismiss.  *See* Joint Decl. ¶ 16; Dkt. No. 295.

### 5.   Class Certification Proceedings

With discovery bifurcated, Class Plaintiffs pursued extensive class certification discovery, serving document requests and interrogatories, participating in six depositions of

witnesses for Plaintiffs and Defendants, and negotiating and briefing discovery issues.  Pursuant

to its cooperation agreement, Bayer produced approximately 444,000 pages of documents, all of

which were reviewed by Plaintiffs' counsel.  The non-settling Defendants produced

approximately 300,000 additional pages of documents, which likewise were reviewed and

analyzed.  Defendants issued their own discovery, and Plaintiffs' counsel worked with their

clients to produce documents and respond to Defendants' interrogatories.  *See* Joint Decl. ¶ 17.

Class Counsel also negotiated with Defendants to obtain usable transaction data and worked with

their expert consultants and Defendants' "IT" personnel to better understand the data and make it

usable for the benefit of the Class.  *See* Joint Decl. ¶ 18.

In addition to obtaining the necessary data from Defendants and other sources, Plaintiffs'

counsel worked side-by-side with their expert economist for class certification, Dr. John Beyer,

during preparation of his reports, and defended him at his three-day deposition.  In addition,

Plaintiffs' counsel and their experts reviewed Defendants' expert's submissions with respect to

class certification and deposed Defendants' expert economist, Dr. Rapp, for two days.  *See* Joint

Decl. ¶ 19; Dkt. No. 708.

In support of the motion for class certification, Class Counsel researched and drafted

three persuasive briefs supported by dozens of exhibits and citations to the record.  Responding

to Defendants' vigorous opposition papers required a considerable investment of time, including

extensive legal research, drafting three separate reply briefs, lengthy discussions with Plaintiffs'

economic experts, and preparation for oral argument.  These efforts proved successful when the

Court granted Plaintiffs' motion for class certification on July 29, 2008.  *See* Joint Decl. ¶ 20.

Thereafter, Plaintiffs successfully opposed Defendants' Rule 23(f) Petition for review of the Court's class certification order, and oversaw notice to the class regarding the certification decision. *See* Joint Decl. ¶¶ 21-22.

### 6.  Merits Discovery

As merits discovery commenced in the fall of 2008, Class Counsel negotiated a discovery schedule, researched and retained a sophisticated e-discovery vendor, and prepared and served merits interrogatories and requests for production of documents. Beginning in October 2008, Class Counsel participated in dozens of meet-and-confer conference calls with defense counsel, both on a group and bilateral basis, addressing a litany of issues relating to merits discovery. These negotiations led to many agreements reached without Court intervention; at the same time, many disputes arose, requiring counsel to conduct legal research, draft discovery motions seeking production of documents, and respond to Defendants' motions to compel. *See* Joint Decl. ¶¶ 23-25.

### 7. Document Review and Synthesis

In February 2009, Defendants began producing voluminous amounts of documents to Class Plaintiffs in electronic form. Rolling productions continued throughout 2009 and well into 2010. In all, Defendants produced almost 14 million pages of documents to Plaintiffs. Plaintiffs' counsel loaded these documents onto an electronic database. Joint Decl. ¶ 26.

Class Counsel developed a document review protocol to efficiently review and synthesize these documents, paying particular attention to "key" executives with top-level responsibilities for pricing and production of Polyether Polyol Products and other participants in the conspiracy. Class Counsel took advantage of the electronic capabilities of their document platform to supplement the review efforts by searching for key terms likely to appear in relevant documents.

Class Counsel also hired an American lawyer fluent in German to review documents produced from European custodians.  Finally, Class Counsel assigned a few experienced attorneys to conduct targeted searches designed to gather information about certain important people, facilities, trade association meetings, price increase announcements, and other specific issues. Joint Decl. ¶ 27.

In the course of analyzing the document production, Plaintiffs' counsel drafted chronologies and summary memos organizing the documents so that they could see how various pieces of the conspiracy fit together.  For example, Plaintiffs' counsel closely studied phone records, expense reports and other documents showing meetings with competitors and thereby developed significant evidence tying Defendants' pricing activities to their communications with competitors.  Plaintiffs' counsel also searched for and collected documents corroborating and expanding on the information provided by the Bayer witnesses, who provided substantial information about the conspiracy.  This extensive document work uncovered significant circumstantial evidence of the conspiracy and laid the groundwork for the deposition program. Joint Decl. ¶¶ 28-29.

### 8.    Depositions

From September 2009 through January 2011, Plaintiffs noticed and took 57 depositions, largely of Defendants' current and former employees.  The depositions required the preparation of detailed outlines and extensive work to locate, organize and analyze potential exhibits.  Direct Action Plaintiffs noticed 3 depositions, and Defendants noticed another 39 depositions.  Thus, there were a total of 99 merits depositions in this case that Plaintiffs' counsel prepared for and attended.  The depositions took place in 17 different states and in 3 foreign countries.  Joint Decl. ¶ 30.

9. **Hague Evidence Convention Proceedings**

In late 2009, Class Plaintiffs petitioned the Court for issuance of letters of request for judicial assistance directed to appropriate judicial authorities in Germany under the Hague Evidence Convention. The letters sought to obtain deposition testimony in Germany from three current and former Bayer witnesses who would not voluntarily provide testimony, as other Bayer witnesses had done. Defendants opposed the petition, which required substantial briefing. Class Plaintiffs prepared extensive written examinations for each of the three foreign deponents and cross-examinations in response to Defendants' written examinations. The Court granted Class Plaintiffs' petition and issued the requested letters (*see* Dkt. Nos. 1355-1357), and Class Plaintiffs pursued the requested deposition testimony in the German courts.

This process required that Class Plaintiffs retain a service to translate certain documents and pleadings into German, an expert consultant familiar with Hague Evidence Convention procedures as they apply in Germany, and local German counsel to communicate with the German courts. In August 2010, just a few weeks before the first established hearing date and after extensive negotiations with counsel for the three deponents, the parties reached a stipulation providing that the witnesses would provide written responses to deposition questions pursuant to the Federal Rules of Civil Procedure. *See* Dkt. Nos. 1510 (Order suspending letters of request) & 1511 (stipulation regarding the depositions of Messrs. Buhse, Spinner and McCullough). Joint Decl. ¶ 31.

10. **Merits Experts**

Plaintiffs' counsel worked extensively with Plaintiffs' expert consultants, InfoTech, Inc., with respect to the facts of the case; organizing and "cleaning up" the voluminous transaction data; organizing and collecting documents relevant to their analysis; and the experts' findings,

analyses and reports.  Counsel also worked closely with Plaintiffs' expert econometrician, Dr. James McClave, and expert economist, Prof. John Solow, during the preparation of their reports and defended each expert during two days of deposition.  Joint Dec. ¶ 32.

**11.    Trial Preparation**

Plaintiffs' counsel began preparing for trial of this matter years before the trial date.  For example, in March 2010, Plaintiffs' counsel commenced lengthy negotiations with the non-settling defendants seeking to obtain a stipulation that certain documents are authentic and qualify as business records under the Federal Rules of Evidence.  That process has involved negotiations over the language in the proposed stipulation; several exchanges among the parties of proposed lists of documents to be governed by the stipulation; review and analysis of the hundreds of listed documents; and subsequent conference calls and written communications among the parties concerning areas of agreement and disagreement.  Joint Decl. ¶ 33.

**12.    Distribution of the Bayer Settlement Fund**

At the same time that Plaintiffs' counsel were vigorously pursuing the merits of this case, counsel worked to distribute the settlement proceeds from the Bayer settlement to the Settlement Class.  This work included overseeing the claims process administered by the Claims Administrator, Rust Consulting; communicating with Settlement Class members about their claims; and presenting oral and written presentations to the Court seeking approval to distribute the Bayer settlement funds to the Settlement Class.  This work culminated with the issuance of payments to Class members in January 2011.  Joint Decl. ¶ 35.

**13.    Settlement Negotiations with Huntsman and BASF**

Over a period of several months in 2010 and 2011, Class Counsel and counsel for Huntsman engaged in settlement negotiations, both in person and via telephone.  These

- 11 -

negotiations culminated in the $33 million settlement agreement, dated May 27, 2011, attached hereto as Ex. A. This monetary settlement payment represents approximately 1.4% of Huntsman's relevant sales during the Class Period. Thereafter, Class Counsel committed significant time and effort to establishing an escrow account for the settlement funds, and obtaining Court approval of the settlement, including briefing and developing a notice program for the class. Joint Decl. ¶ 36.

Similarly, over a period of several months in 2010 and 2011, Class Counsel and counsel for BASF engaged in settlement negotiations, both in person and via telephone. These negotiations culminated in the $51 million settlement agreement, dated September 21, 2011, attached hereto as Ex. B. This monetary settlement payment represents approximately 2.5% of BASF's relevant sales during the Class Period. Joint Decl. ¶ 37.

### B. The Requested Fee Is Reasonable When Considered In Context Of A Lodestar Cross-Check

Since the case began in 2004, Plaintiffs' counsel have devoted thousands of hours to pursuing this complex litigation through many twists and turns, all the while seeking to prosecute this matter as efficiently and effectively as possible.[5] *See* Joint Decl. ¶ 40. At historical hourly rates, the lodestar for work performed by Plaintiffs' counsel from January 1, 2009 through June 30, 2011 is approximately $29.56 million. *Id.* ¶ 39.[6] Using lodestar as a cross-check, the

---

[5]   Plaintiffs' counsel have prosecuted this case for approximately seven years. *See* Joint Decl. ¶¶ 4-38. Due to the substantial demands of this case, Class Counsel have forgone other substantial litigation opportunities. *See* Joint Decl. ¶ 42. This factor weighs in favor of awarding the requested fees. *See Brown*, 838 F.2d at 455 (granting an attorneys' fee application after noting that counsel had performed a substantial amount of work on behalf of the class and "thus precluded or reduced their opportunity for other employment"); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 323 (W.D. Pa. 1997).

[6]   Class Counsel are prepared to submit more detailed records accounting for Plaintiffs' counsels' time and efforts in this litigation. Given that the litigation is continuing against Dow,

requested fee of one-third of the $84 million in total settlement funds, or $28 million, would constitute a multiplier of around 0.95, which is modest compared to multipliers regularly found to be reasonable in common fund cases. *See In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied") (quoting 3 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 14.03, at 14-5 (3d ed. 1992)).

Viewing the requested fee in the aggregate and accounting for the earlier fee award of $19.6 million from the Bayer settlement fund,[7] Class Counsel's instant request would result in an aggregate fee of approximately $47.6 million ($19.6 million plus $28 million sought here), after expending approximately $42.2 million in lodestar from inception of the litigation through June 30, 2011.[8] The aggregate lodestar multiplier would be around 1.13. This, too, is reasonable.

In sum, Plaintiffs' counsel's substantial efforts have led to excellent results for the Class in the Huntsman, BASF and Bayer settlements, certification of the litigation class, and development of a strong liability case against the last remaining Defendant, Dow (on this last point, *see infra* at Part I.D). This factor strongly supports the requested fee. *See Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704, 706 (D. Colo. 2007) (this factor supports the fee award

---

Class Plaintiffs would prefer that any such submission be made *in camera*, subject to an appropriate confidentiality order, to avoid providing Dow insight into Plaintiffs' litigation strategy. Accordingly, today Class Plaintiffs also filed their Motion To Permit *In Camera* Submission Of Fee And Expense Declarations. *See* Joint Decl. ¶ 46.

[7]        *See* Dkt. No. 995 ¶ 2 (awarding a fee equal to 33 1/3% of the approximately $58.9 million in the Bayer settlement fund).

[8]        The aggregate lodestar of $42.2 million was calculated by adding the $12.62 million incurred from inception of the litigation through December 31, 2008 and the $29.56 million incurred from January 1, 2009 through June 30, 2011. *See* Joint Decl. ¶¶ 39 & n.1.

where "the litigation of this case required a large investment of sophisticated expertise, time, labor and other resources by lead counsel").

### C.    The Amount Involved And The Result Obtained

The result achieved is a major factor to consider in making a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "critical factor is the degree of success obtained"). In cases where, as here, "the recovery [is] highly contingent and ... the efforts of counsel were instrumental in realizing recovery on behalf of the class," the results obtained may be given greater weight. *Brown*, 838 F.2d at 456.[9]  Class Counsel believe that these two settlements totaling $84 million – on top of the earlier Bayer settlement of $55.3 million – constitute an excellent result for the Class.

Second, the settlements ensure that the last remaining Defendant, Dow, will remain jointly and severally liable for the full amount of damage caused by the alleged conspiracy.

Third, the combined monetary recovery of $84 million from Huntsman and BASF is a substantial sum.  The $33 million Huntsman settlement represents approximately 1.4% of Huntsman's sales of Polyether Polyol Products during the Class Period, and the $51 million BASF settlement represents approximately 2.5% of BASF's relevant sales.  Joint Decl. ¶¶ 36-37. These percentages are well within the range of settlements reached in numerous other price-fixing class actions.  *See, e.g., In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *9 (E.D. Mich. Feb. 22, 2011) (approving $13.5 million settlement "represent[ing] approximately 2.5% of the total commerce of" the settling defendant); *In re Automotive*

---

[9]     *See McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-933, 2008 WL 4816510, at *18 n.9 (W.D. Okla. Oct. 27, 2008) ("class counsel's willingness to prosecute this matter on a contingent basis . . . ordinarily shifts the analytical focus away from hours spent on the case to the ultimate result class counsel has obtained").

*Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (approving $48 million settlement representing approximately two percent of sales).

Finally, unlike in many class actions, Class members may receive payments from the Settlement Fund without having to locate their own records and submit them in support of their claim. Rather, Class members may rely on the extensive work done by Plaintiffs' counsel and their experts in organizing and "cleaning up" the extensive transaction data collected from the defendants. This is an important benefit to the class, and means that nearly every Class member may receive a settlement distribution without having to do anything but return the claim form and cash a check.

Despite the complexity, duration, and expense of ongoing litigation and the risk of establishing liability and damages, Class Counsel have obtained excellent recoveries for the Class from Huntsman and BASF. Because the settlements represent "an enormous victory for [Plaintiffs] because the outcome of [a] trial [is] far from certain," *In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407, 1414 (D. Wyo. 1998), this factor strongly weighs in favor of Class Counsel's fee application.

### D. The Undesirability Of The Case, The Difficulty Of The Litigation, And The Skill And Experience Of Class Counsel

When Class Counsel undertook to represent the class in this matter, this case presented significant risk in the form of legal and factual difficulties and procedural and substantive obstacles.[10] *See* Joint Decl. ¶ 5. Given these complexities and uncertainties, and the skill and experience required of counsel to succeed, this factor strongly supports the requested fee.

---

[10]     *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991) (when considering attorney fee applications, courts should consider the size of the risk assumed by counsel at the outset by taking the case, not *ex post* in light of the settlement achieved).

First, unlike many class actions – including the *Polyester Polyols* cases – this case did not

arise from, nor was it assisted by, any public disclosure of wrongdoing by any of the defendants.

Guilty pleas or disclosure of a government investigation often serve as the catalyst for a related

class action and assist in its prosecution, whether by pressuring the defendant to acknowledge its

wrongdoing or by establishing an essential element of liability.  Here, Class Counsel developed

this case entirely on their own.

The absence of such helpful circumstances at the outset of the case emphasizes the degree

of risk presented.  Numerous courts have acknowledged the heightened risk presented by cases

such as this, and have recognized that Class Counsel's acceptance of the risk supports an award

of a substantial fee.  *See, e.g.*, *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No.

Civ. A. 03-4578, 2005 WL 1213926, at *12 (E.D. Pa. May 19, 2005) ("[T]his action was riskier

than many other antitrust class actions because there was no prior government investigation, or

prior finding of civil or criminal liability based on antitrust violations, in this case."); *In re Gulf

Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992) ("[T]his is not a case

where plaintiffs' counsel can be cast as jackals to the government's lion, arriving on the scene

after some enforcement or administrative agency has made the kill.  They did all the work on

their own.").

Indeed, courts have cited this risk factor when justifying a fee that amounts to a much

more generous lodestar multiplier than Class Counsel seek here.  *See, e.g.*, *In re Lucent Tech.,

Inc., Sec. Litig.*, 327 F. Supp. 2d 426, 443-44 (D.N.J. 2004) (plaintiffs "did not piggyback on any

prior action brought by a government agency"; awarding a fee equal to a 2.13 multiplier); *In re

Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at *11 & *16 n.9 (E.D. Pa. June

2, 2004) (noting that "[Class Counsel] did not benefit from the fruits of a prior government investigation"; awarding a fee equal to a 3.67 multiplier).

Second, this case is complex and involves unique challenges. As many courts have recognized, "[a]n antitrust class action is arguably the most complex action to prosecute. . . . The legal and factual issues involved are always numerous and uncertain in outcome." *Linerboard*, 2004 WL 1221350, at *10 (citations omitted). This case is no exception. As outlined in Part I.A, *supra*, Plaintiffs' counsel have overcome many hurdles to get to this point, and more remain. As the lengthy proceedings and the docket itself make clear, this litigation has been difficult and complex. *See Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007) ("The voluminous papers of the case themselves testify that this was no simple piece of litigation.").

Third, effectively managing this case has required competent, experienced attorneys of considerable skill. The defendants are large, sophisticated adversaries represented by talented attorneys with extraordinary resources. Their attorneys contested nearly every step of this litigation, including multiple motions to dismiss; more than twenty discovery motions; and extensive class certification proceedings, including an appeal to the Tenth Circuit. Joint Decl. ¶ 34. To meet this challenge and achieve a favorable settlement required skill and diligence by Class Counsel.[11]

---

[11]     *See Brown*, 838 F.2d at 455 (finding "the quality of opposing counsel" supported fee application); *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05cv00187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) ("Additional skill is required when the opponent is a sophisticated corporation with sophisticated counsel."); *Schwartz v. TXU Corp.*, No. 3:02-cv-2243-K, 2005 WL 3148350, at *29-30 (N.D. Tex. Nov. 8, 2005) ("The standing of opposing counsel should be weighed in determining the fee, because such standing reflects the challenge faced by plaintiffs' attorneys. The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation.") (internal citation omitted).

As their resumes indicate, Class Counsel are known by reputation as being among the most qualified class-action litigators in the country.[12]  Their skill and dedication to this matter led to the Huntsman and BASF settlements.  Class Counsel put together a compelling case against Huntsman and an even stronger case against BASF and Dow.  In the course of merits discovery, Class Counsel developed powerful evidence of direct pricing discussions between the defendant competitors and convincing circumstantial evidence tying Defendants' pricing activities to their communications with competitors.  *See* Ex. F, Class Pls.' Third Supp. Joint Obj. and Resp. to Defs.' First Set of Merits Interrogs. to Pls. at 4-26 (filed under seal).

Class Counsel believe that the strong case they built played a large role in achieving the settlements with Huntsman and BASF, which represent outstanding results for the Class.  *See Copley Pharm.,* 1 F. Supp. 2d at 1414 ("While it is beyond dispute that class counsel are among the nation's most experienced, reputable, and skilled plaintiff's attorneys, class counsel's skill is further demonstrated by the result achieved.").  That bottom-line result weighs in favor of the fees requested here.

### E.   The Customary Fee In A Contingent Case, And Whether The Fee Is Fixed Or Contingent

These factors deal primarily with the expectation of Class Counsel at the outset of the case when measuring the risk involved and deciding whether to accept it.  They seek to reward the attorney for accepting the risk and achieving successful results.[13]  "Courts have consistently

---

[12]     *See* Ex. D (Fine Kaplan and Black R.P.C. firm resume); Ex. E (Cohen Milstein Sellers & Toll PLLC firm resume).

[13]     *See Johnson,* 488 F.2d at 718; *Millsap v. McDonnell Douglas Corp.,* No. 94-633, 2003 WL 21277124, at *12 (N.D. Okla. May 28, 2003) (approving "an award that compensates attorneys for the risk taken" because such an award "provides firms with the incentive to undertake the substantial commitment required in complex, class-action litigation on behalf of plaintiffs who could not otherwise finance litigation of their claims").

recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees." *Schwartz*, 2005 WL 3148350, at *31.

Class Counsel accepted this case on a completely contingent basis. If the case failed, they would get nothing. Moreover, since January 1, 2009, Plaintiffs' counsel have invested significant additional time and money in this case. *See* Joint Decl. ¶¶ 7, 43. Until the Huntsman and BASF settlements, counsel's substantial investment in this case was at risk.

It is widely recognized that "[t]he customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class." *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.,* 09-CV-01543, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) (citations omitted). Notably, Class Counsel's fee request is no more than (or for some cases, less than) what is typically agreed to by clients and attorneys.[14]

As described above, Class Counsel took substantial risk in pursuing this litigation. Given the considerable risk presented, with no guarantee that any fees or expenses would be recovered, Class Counsel should be reasonably compensated for their efforts in securing excellent results. As the Seventh Circuit has explained:

---

[14]    *See Montague v. Dixie Nat. Life Ins. Co.*, CIV.A. 3:09-00687, 2011 WL 3626541, at *2 & *3 (D.S.C. Aug. 17, 2011) ("An award of fees in the range of 33% of the fund for work performed in the creation of a settlement fund has been held to be reasonable by many federal courts.... In non-class contingency fee litigation, a 30% to 40% contingency fee is typical."); *In re Ready-Mixed Concrete Antitrust Litig.,* 1:05-CV-00979, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) ("The market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time is a contingent fee in the amount of one-third (1/3) of the common fund recovered.") (internal quotations, citation omitted); *Flournoy v. Honeywell Int'l, Inc.*, No. Civ. A. 205-184, 2007 WL 1087279, at *2 (S.D. Ga. Apr. 6, 2007) ("[t]he most common contingent fee is one third of the recovery. Forty percent fee contracts are common for complex and difficult litigation. . . ."); *In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005) ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation.").

> [W]hen attorneys' receipt of payment is contingent on the success
> of the litigation, reasonable compensation may demand more than
> the hourly rate multiplied by the hours worked, for that is exactly
> what the attorneys would have earned from clients who agreed to
> pay for services regardless of success.  Thus, to account for the
> contingent nature of the compensation, a court should assess the
> riskiness of litigation.

*Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988).  Courts within the Tenth

Circuit and elsewhere have viewed these risks as weighing strongly in favor of granting the

requested fee.  *See In re Universal Service Fund Tel. Billing Practices Litig.*, No. 02-MD-1468-

JWL, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011) (awarding one third of the judgment

fund where "any fee recovery by counsel was contingent on success in the litigation"); *Stanley v.*

*U.S. Steel Co.,* 04-74654, 2009 WL 4646647, at *3 (E.D. Mich. Dec. 8, 2009) ("A contingency

fee arrangement often justifies an increase in the award of attorneys' fees.... Class counsel

worked for over four years without payment, risking recovery of nothing in the event they were

to generate no benefit for the class.") (internal citations, quotations omitted); *Lucas v. Kmart*

*Corp.*, No. C.A. No. 99cv01923, 2006 WL 2729260, at *6 (D. Colo. July 27, 2006) ("Given the

risk of non-recovery, this factor weighs heavily in favor of the requested fee.") (citation

omitted).[15]

---

[15]      *See also Knight v. Red Door Salons, Inc.,* 08-01520, 2009 WL 248367, at *6 (N.D. Cal.
Feb. 2, 2009) ("This substantial outlay [of time and expenses], when there was a risk that none of
it would be recovered, further supports the award of the requested fees."); *Perez v. Asurion*
*Corp.,* No. 06-20734-Civ, 2007 WL 2591180, at *4 (S.D. Fla. Aug. 8, 2007) ("Class Counsel
prosecuted this class action on a purely contingent basis, thereby assuming the risk of non-
payment for a considerable amount of work over an extended period of time.  Thus, the
contingency risk in this case was substantial."); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.
Supp. 2d 1185, 1215 (S.D. Fla. 2006) (finding this factor weighs "heavily in favor of" granting
the requested fee); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988)
(recognizing that if a "'bonus' methodology did not exist, very few lawyers could take on the
representation of a class client given the investment of substantial time, effort, and money,
especially in light of the risks of recovering nothing").

F.      **Awards In Similar Cases**

Compared to other fee awards, one-third of the Settlement Fund is typical, and it is reasonable and justified by the circumstances of this case.

Many surveys have been conducted over the years attempting to calculate an average fee award in class actions, and they show that Class Counsel's fee request is reasonable. As the authors of the leading class-action litigation treatise report, "[e]mpirical studies show that . . . fee awards in class actions average around one-third of the recovery." *See* 4 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 14:06 (4th ed. 2007). In this case, the Court earlier concluded that one-third of the Bayer settlement was an appropriate award. *See* Dkt. No. 995 ¶ 2. Numerous other cases from within this district and the Tenth Circuit[16] and a host of cases from around the country have reached the same result.[17]

---

[16]     *Brown*, 838 F.2d at 455 n.2 (noting a typical fee range of 23.7% to 37.3% of the common fund); *In re Universal Service Fund*, 2011 WL 1808038, at *2 ("an award of one-third of the fund falls within the range of awards deemed reasonable by courts") (citation omitted); *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2007 WL 2694029, at *6 (D. Kan. Sept. 11, 2007) (awarding fees equal to 35% of $57 million common fund) (Lungstrum, J.); *Lewis v. Wal-Mart Stores, Inc.*, No. 02-CV-0944, 2006 WL 3505851, at *1 (N.D. Okla. Dec. 4, 2006) (awarding one-third of the settlement fund and noting that a "one-third [fee] is relatively standard in lawsuits that settle before trial"); *In re United Telecomm'ns Sec. Litig.*, No. 90-2251-0, 1994 WL 326007, at *3 (D. Kan. June 1, 1994) (awarding 33.3% of settlement fund as attorneys' fees); *Cimarron Pipeline Const., Inc. v. Nat'l Council On Comp. Ins.*, No. 89-822, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.").

[17]     *See New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006) ("[A] one-third fee from a common fund case has been found to be typical by several courts.") (citations omitted); *In re Ravisent Tech., Inc. Sec. Litig.*, No. Civ. A. 00-cv-1014, 2005 WL 906361, at *11 (E.D. Pa. Apr. 18, 2005) ("[C]ourts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses."); *Remeron*, 2005 WL 3008808, at *15 ("A one third fee from a common fund has been found to be typical by several courts within this Circuit which have undertaken surveys of awards within the Third Circuit and others.") (citation omitted); *In re AmerisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002) ("Scores of cases exist where fees were awarded in the one-third to one-half

### G.    Conclusion

The fee requested here – one-third of the recovery from Huntsman and BASF – is well within the range of other awards in similar cases and, based on analysis of the *Johnson* factors, is more than justified given what Class Counsel have achieved.

Huntsman and BASF are making their settlement payments in installments, with Huntsman making future payments of $11 million in June 2012 and June 2013, and BASF making future payments of $17 million in October 2012 and October 2013. *See* Ex. A ¶ 27; Ex. B ¶ 26. If approved by the Court, Class Counsel will satisfy the fee award by receiving one third of the first installments already deposited in the Escrow Accounts, and subsequently will receive one third of each future installment payment.[18]

---

of the settlement fund.") (citations omitted); *Klein v. PDG Remediation, Inc.*, No. 95 Civ. 4954, 1999 WL 38179, at *4 (S.D.N.Y. Jan. 28, 1999) ("33% of the settlement fund . . . is within the range of reasonable attorney fees awarded in the Second Circuit"); *Moore v. United States*, 63 Fed. Cl. 781, 787 (2005) ("one-third is a typical recovery").

[18]    Class Counsel also request that the Court authorize them to distribute the fees in a manner that, in the opinion of Class Counsel, fairly compensates each firm in view of its contribution to the prosecution of Plaintiffs' claims. "Courts generally approve joint fee applications which request a single aggregate fee award with allocations to specific firms to be determined by Co-Lead Counsel, who are most familiar with the work done by each firm and each firm's overall contribution to the litigation." *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, at *7 (E.D. Pa. Jan. 3, 2008). Indeed, this Court followed that practice when it awarded attorneys' fees and costs from the Bayer settlement fund. *See* Dkt. No. 995 ¶ 4; *see also In re Universal Service Fund*, 2011 WL 1808038, at *3 ("Co-Lead Counsel for plaintiffs shall determine the uses and distribution of the fee award in their good faith best judgment.").

Here, Class Counsel have directed this case from its inception and are best able to assess the weight and merit of each Plaintiffs' counsel's contribution. *See* Joint Decl. ¶ 41. Allowing Class Counsel to allocate fees conserves the time and resources of this Court. *See Auto. Refinishing Paint*, 2008 WL 63269, at *7. Accordingly, consistent with established precedent, the Court should order that Class Counsel are responsible for allocating and distributing counsel fees to be paid to all Plaintiffs' counsel. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 n.15 (3d Cir. 2004) (declining to "deviate from the accepted practice of allowing counsel to apportion fees amongst themselves") (citing *In re Prudential Ins. Co. Am. Sales*

## II.   THE COURT SHOULD AWARD REIMBURSEMENT OF CLASS COUNSEL'S LITIGATION EXPENSES

Class Counsel respectfully request that the Court also award counsel's reasonable costs and expenses incurred from January 1, 2009 through June 30, 2011.  It is well settled under the common fund doctrine that lawyers "whose efforts create, discover, increase, or preserve a fund to which others also have a claim, [are] entitled to recover from the fund the costs of his litigation...."  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995) (citation omitted).

The Settlement Agreements with Huntsman and BASF expressly authorize payment to counsel of "all expenses" from the Settlement Funds, and Class Members were provided notice that Plaintiffs' counsel's expenses would be paid from the Settlement Funds.[19]

From January 1, 2009 through June 30, 2011, Plaintiffs' counsel have incurred reasonable costs and expenses totaling $5,014,329.08.  *See* Joint Decl. ¶ 43.  These expenses include items that typically are billed to fee-paying clients, such as costs for experts, document repository rent, document management, travel, photocopying, overnight mail, deposition services and transcripts, long-distance telephone, and electronic research, among others.  *Id.* ¶ 45.  All of these reasonable costs and expenses were directly related to Class Counsel's efforts to litigate this matter and to achieve the best possible result for the Class.[20]

---

*Practice Litig. Agent Actions*, 148 F.3d at 329 n.96 ("The court need not undertake the difficult task of assessing counsels' relative contributions")); *Linerboard*, 2004 WL 1221350, at *17 ("Since the procedure was first utilized in *In re Magic Marker Securities Litigation*, . . . submission of a combined fee application with actual allocation to be made by lead counsel has generally been adopted by the courts.") (citations omitted).

[19]   *See* Huntsman Settlement Agreement ¶ 33 (Ex. A); BASF Settlement Agreement ¶ 32 (Ex. B); Ex. G at Part VI (notice of BASF settlement).

[20]   *See Brown v. Pro Football, Inc.*, 839 F. Supp. 905, 916 (D.D.C. 1993) ("Plaintiffs' out-of-pocket costs for telephone, telecopier, air and local couriers, postage, photocopying, Westlaw

Plaintiffs' counsel have advanced the funds necessary to pay these costs, and have maintained careful records. A summary of Plaintiffs' counsel's litigation expenses are set forth in the Joint Declaration.[21] *See* Joint Decl. ¶¶ 43-45. Other courts have found such evidence provides an adequate basis to award reimbursement of costs, *see Flournoy*, 2007 WL 1087279, at *3, as did this Court when it awarded reimbursement of similar expenses from the Bayer settlement fund. *See* Dkt. No. 995 ¶ 3.

Accordingly, the Court should award reimbursement of counsel's reasonable expenses of $5,014,329.08 incurred from January 1, 2009 through June 30, 2011.[22]

## III. CONCLUSION

For the foregoing reasons, Class Plaintiffs respectfully request that the Court grant their petition, award the requested attorneys' fees and expenses, and authorize Class Counsel to distribute the attorneys' fees in a manner that, in the opinion of Class Counsel, fairly compensates each firm in view of its contribution to the prosecution of Class Plaintiffs' claims.

---

research, secretarial overtime, and counsels' travel expenses are routinely billed to fee-paying clients, and thus are all compensable as part of a reasonable attorney's fee") (citations omitted), *rev'd on other grounds*, 50 F.3d 1041 (D.C. Cir. 1995); *see also Lazy Oil*, 95 F. Supp. 2d at 344 (awarding costs for "copying expenses, travel and lodging expenses, telephone and telecopy expenses and other litigation expenses").

[21]      Subject to an appropriate Order, and if requested by the Court, Class Counsel will submit for *in camera* inspection more detailed records accounting for the expenses incurred from January 1, 2009 through June 30, 2011. *See* Joint Decl. ¶ 46; Motion To Permit *In Camera* Submission Of Fee And Expense Declarations (filed concurrently with this Memorandum).

[22]      The proposed Order submitted herewith proposes that any award of expenses be paid from the Huntsman and BASF Settlement Funds in proportion to the relative size of those settlements, with approximately 61% of the award being paid from the BASF settlement fund and approximately 39% of the award being paid from the Huntsman settlement fund. As with attorneys' fees, Class Counsel propose that the award be paid in equal installments over time.

Dated:  November 2, 2011

Respectfully submitted,

 /s/  *Robert W. Coykendall*
Robert W. Coykendall, #10137
Roger N. Walter, #08620
Morris, Laing, Evans, Brock & Kennedy, Chartered
Old Town Square
300 North Mead - Suite 200
Wichita, KS  67202
Tel:  (316) 262-2671
Fax:  (316) 262-5991

**Plaintiffs' Liaison Counsel**

Allen D. Black
Roberta D. Liebenberg
Donald L. Perelman
Gerard A. Dever
Paul Costa
Fine, Kaplan and Black, R.P.C.
1835 Market Street, 28th Floor
Philadelphia, PA  19103
Tel:  (215) 567-6565
Fax:  (215) 568-5872

Richard A. Koffman
Christopher J. Cormier
Sharon K. Robertson
Cohen Milstein Sellers & Toll, PLLC
1100 New York Avenue, NW, Suite 500
Washington, DC  20005
Tel:  (202) 408-4600
Fax:  (202) 408-4699

**Plaintiffs' Co-Lead Counsel**

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on this 2nd day of November, 2011, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel who have registered for receipt of documents filed in this matter. I also certify that I mailed a true copy of the foregoing document by first class mail to the following non-CM/ECF participants:

Mark V. Chester
Johnson & Colmar
2201 Waukegan Rd., Suite 260
Bannockburn, IL 60015

Michael F. Tubach
O'Melveny & Myers, LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823

Daniel R. Karon
Goldman Scarlato & Karon, P.C.
700 W. St. Clair Ave., Suite 204
Cleveland OH 44113

Donna Siegel Moffa
Trujillo Rodriquez & Richards, LLP
258 Kings Highway East
Haddonfield, NJ 08033

Simon Bahne Paris
David J. Cohen
Patrick Howard
Saltz Mongeluzzi Barrett & Bendesky, P.C.
1650 Market Street
One Liberty Place, 52nd Floor
Philadelphia, PA 19103

Judith A. Shimm
Zelle, Hofmann, Voelbel, Mason & Gette, LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104

William J. Pinilis
Pinilis Halpern, LLP
160 Morris Street
Morristown, NJ 07960

Andrew B. Sacks
Sacks & Weston, LLC
114 York Rd.
Jenkintown, PA 19046-3233

Krishna Narine
Schiffrin & Barroway LLC
280 King of Prussia Road
Radnor, PA 19087

s/Robert W. Coykendall
Robert W. Coykendall, #10137