IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: URETHANE | ) | MDL No. 1616 |
| ANTITRUST LITIGATION, | ) | |
| _____ | ) | Case No. 04-1616-JWL |
| | ) | |
| This Document Relates to the following | ) | |
| Polyether Polyol Cases: | ) | |
| | ) | |
| *Carpenter Co., et al. v. BASF SE, et al.*, | ) | Case No. 08-2617-JWL |
| | ) | |
| and | ) | |
| | ) | |
| *Woodbridge Foam Corporation, et al. v. BASF SE, et al*. | ) | Case No. 09-2026-JWL |
| | ) | |
| | ) | |
| _____ | ) | |

## <u>MEMORANDUM AND ORDER</u>

This Memorandum and Order relates to two direct actions by plaintiffs that have opted out of the class certified in the main action in this multi-district antitrust case, as noted in the caption above. Like the class, these plaintiffs allege that remaining defendant Dow Chemical Company ("Dow") conspired with other manufacturers to fix prices for certain urethane chemical products in violation of the Sherman Act, 15 U.S.C. § 1. These cases presently come before the Court on motions by Dow for summary judgment (Doc. ## 2400, 2402). For the reasons set forth below, the Court **denies** the motions for summary judgment.

I.     **Background**

In this litigation, the Court has consolidated two sets of cases relating to different types of urethane products: the Polyester Polyol cases, which have settled; and the Polyether Polyol cases, to which this order relates.

In the Polyether Polyol class actions, certain plaintiffs originally brought suit against Dow and various entities affiliated with Dow's competitors, namely Bayer, BASF, Huntsman, and Lyondell.  The Court subsequently certified a class of plaintiffs who purchased certain urethane products (generally known as MDI, TDI, other polyether polyols, and systems based on those products) in the United States from those defendants at any time from January 1, 1999, to December 31, 2004.  The class plaintiffs have settled their claims against Bayer, BASF, Huntsman, and Lyondell, leaving Dow as the only remaining defendant in the class action.  The class plaintiffs now allege a price-fixing conspiracy encompassing the years from 1999 to 2003 (a shorter period than the period used to define the class).  By Memorandum and Order issued on December 18, 2012 (Doc. # 2637), the Court denied Dow's motion for summary judgment on the claims asserted by the class.  *See In re Urethane Antitrust Litig.*, 2012 WL 6610878 (D. Kan. Dec. 18, 2012).

In the instant cases—two separate actions that were consolidated with the class action for pretrial purposes—various direct action plaintiffs that have opted out of the class assert similar price-fixing claims against Dow (having also settled with the other

2

original defendants).  These direct action plaintiffs now allege a price-fixing conspiracy involving Dow and the other original defendants (referred to collectively as "defendants" or the alleged conspirators) encompassing the years 1994 to 2003—a longer period than the conspiracy period asserted by the class.  Dow now seeks summary judgment on all claims asserted against it by these direct action plaintiffs (hereafter also referred to as "plaintiffs").

## II.   **Applicable Law**

These cases originated in—and would return for trial to—the District of New Jersey, which court ordinarily follows the law of the Third Circuit.  The parties have relied on Tenth Circuit law in these cases, although they have not addressed the propriety of applying that law.  Although the Tenth Circuit has not addressed this specific question in the context of multi-district litigation, other circuits have held in this context that the transferee court's circuit governs questions of federal law.  *See Campos v. Ticketmaster Corp.*, 140 F.3d 1166, 1171 n.4 (8th Cir. 1998) (with respect to issues of federal law, cases consolidated for pretrial purposes in multi-district litigation are governed by the law of the circuit in which the transferee court sits); *Menowitz v. Brown*, 991 F.2d 36, 40-41 (2d Cir. 1993) (same); *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1173-76 (D.C. Cir. 1987) (same).  Consistent with the weight of authority and the parties' practice in this case, the Court will apply Tenth Circuit law in these cases, as it

did in ruling on Dow's motion for summary judgment on the class claims.

### III.     Issues Common to the Class Action Summary Judgment Order

In one of its motions (Doc. # 2402), Dow moved for summary judgment on all claims asserted by both the class and the direct action plaintiffs, based on arguments applying to claims by either set of plaintiffs.  In its previous order, the Court denied this motion in its entirety to the extent directed at the class.  Specifically, the Court ruled that the evidence was sufficient to create an issue of fact for trial concerning the following issues:  the existence of a conspiracy involving Dow, for all of the products alleged, for the period of 1999 to 2003; whether the alleged conspirators engaged in affirmative acts of concealment sufficient to toll the statute of limitations; and the fraudulent concealment doctrine's requirement of due diligence.

The Court reaffirms those rulings and applies the same standards, reasoning. and conclusions from that order (which is incorporated by reference) to the direct action plaintiffs' claims.  Accordingly, this motion is denied to the extent that it relates to these plaintiffs' claims.

### IV.     Existence of a Conspiracy in the Pre-Class Period (1994 to 1998)

By its other motion (Doc. # 2400), Dow raises issues specific to the claims asserted by the direct action plaintiffs.  For instance, Dow argues that the evidence is not

4

sufficient to support a claim that it participated in a conspiracy existing in the pre-class period, and on that basis it seeks summary judgment on plaintiffs' claims based on the period from 1994 to 1998. As noted above, the Court has already concluded that there is sufficient evidence that a price-fixing conspiracy involving Dow did exist. The Court now concludes that there is also a question of fact for the jury concerning whether that conspiracy extended back to 1994, and it therefore rejects this basis for summary judgment on claims based on the pre-class period.

In its previous summary judgment order, after concluding that there was sufficient evidence of a conspiracy, the Court rejected Dow's argument that the conspiracy period should not include the year 1999. In doing so, the Court noted that the question whether the conspiracy extended back to 1999 did not require a wholly-distinct analysis of evidence of conspiracy in that year alone:

> The Court agrees that this evidence of these 1999 events, by itself, would likely not be sufficient to support the existence of a conspiracy. The Court has already concluded, however, that the entirety of the evidence is sufficient to create a question of fact concerning the existence of a price-fixing conspiracy. There is also at least some specific evidence that this conspiracy existed as early as 1999, as cited by plaintiffs. Assuming the existence of a conspiracy, its duration is a question of fact for the jury.

*In re Urethane Antitrust Litig.*, 2012 WL 6610878, at *9. The Court further noted that "the evidence of a conspiracy existing in 2000 at least allows for the reasonable inference that the conspiracy was ongoing at that point." *Id.*

Similarly, in this case, the evidence of a conspiracy existing from 1999 to 2003

5

(which evidence has been found sufficient to survive summary judgment) at least allows for the reasonable inference that the conspiracy was ongoing in 1999 and thus extended back some period before that year.  For instance, Stephanie Barbour, a Dow employee, testified that in 1998 or 1999 her boss, Charles Churet, insisted on a price increase even though such an increase was not supported by supply and demand factors; that when she questioned that decision, other Dow employees, including Marco Levi, pointed out that Mr. Churet had been at a particular industry meeting the week before, and that Ms. Barbour would learn what that meant; and that she later came to understand that that meeting provided opportunities for Mr. Churet to have discussions with competitors akin to the pricing agreements that Mr. Levi later discussed in her presence.[1]  This testimony, viewed in the light most favorable to plaintiffs, indicates that in 1998 or 1999 some Dow employees understood that pricing discussions regularly occurred at this particular meeting, which evidence suggests that the conspiracy was ongoing at that time.  As another example of the ongoing nature of the conspiracy, Larry Stern, Bayer's head of polyurethanes beginning in April 2000, testified that his predecessor had told him that as a result of previous antitrust issues at Bayer, sensitive conversations with competitors should be held outside the office because the office could be bugged.

The Court does agree with Dow that there must be some evidentiary basis to

---

[1]At this time, for purposes of this motion, the Court overrules Dow's objections that this testimony is beyond the scope of the direct examination of Ms. Barbour, is based on hearsay, and is based on speculation.

extend the conspiracy period back five years to 1994.  The most compelling piece of evidence to that effect is a memorandum by plaintiffs' expert, Matthew Raiff (who testified about the memo in his deposition), that contains a summary of information provided by an attorney for Bayer who conducted an internal investigation at Bayer concerning alleged price-fixing activities.  That memo states, and Dr. Raiff testified, that the attorney represented that Bayer employees had admitted to pricing discussions with their competitors, including Dow, during the period from 1994 to 1998.

Despite the compelling nature of this memorandum, Dow did not address this piece of evidence in its reply brief.  Dow addressed Dr. Raiff's memorandum only in its response to plaintiffs' statement of facts, in which Dow objected generally that the "sole source" of facts derived from the memo was "inadmissible hearsay."  Dow did not even address the specific hearsay exceptions cited by plaintiffs in discussing this memo in their brief—the exception for statements against interest, *see* Fed. R. Evid. 804(b)(3), and the residual hearsay exception, *see* Fed. R. Evid. 807.  Nor did Dow respond to plaintiffs' argument that the memorandum is trustworthy in light of Dow's opportunity to discuss the memo at Dr. Raiff's deposition and Dow's refusal to take advantage of the opportunity, granted by the Court, to depose the Bayer attorney.  The Court makes no pronouncement concerning the eventual admissibility of this exhibit at trial.  For purposes of this motion, however, Dow's general objection without specific argument or explanation is overruled, and the Court will consider the memorandum.  Plaintiffs

have identified at least two exceptions that, on their face, could apply to allow for the admission of the memorandum, and Dow has not suggested any reason why those exceptions should not apply or why the particular statements should not be deemed sufficiently trustworthy.  While plaintiffs are required at summary judgment to produce admissible evidence in support of their claims, it is incumbent on Dow, in light of plaintiffs' specific arguments for the admission of certain evidence, to provide a specific basis for refuting those arguments.  While the question of the admissibility of this evidence may arise again at trial, the Court deems it most appropriate at this stage to consider such evidence in determining whether plaintiffs' claims survive to trial.

The existence of a conspiracy extending back to 1994 is also supported by the type of evidence previously cited by the Court in finding sufficient the evidence that a conspiracy existed.  *In re Urethane Antitrust Litig.*, 2012 WL 6610878, at *6-8.  For example, there is evidence that during the pre-class period the alleged conspirators announced identical price increases simultaneously or within a very short time period; high-ranking executives at the companies socialized and communicated with each other, including at or near the times of lockstep price increases, including at trade association meetings that provided ample opportunities for pricing discussions; the structure of the market was conducive to price-fixing and, along with economic conditions in the early 1990s, provided a motive to enter into an illegal agreement; the alleged conspirators acted in a manner contrary to their own interests absent a conspiracy, particularly by

placing adherence to price above attempting to gain market share and by pushing for price increases that were unwarranted by existing conditions; and, as shown by expert analysis, prices were supra-competitive.  Plaintiffs also note that several alleged conspirators have invoked the Fifth Amendment and thus refused to answer questions concerning their conduct in the pre-class time period.[2]

Accordingly, the Court denies Dow's motion for summary judgment on this basis.

### V.   Fraudulent Concealment in the Pre-Class Period (1994 to 1998)

Dow also seeks summary judgment on claims based on the pre-class period from 1994 to 1998 on the basis that such claims are barred by the applicable four-year statute of limitations.  Specifically, Dow argues that the evidence is not sufficient to support a claim of fraudulent concealment for that period.  In arguing that they have submitted evidence of affirmative acts of concealment encompassing the entirety of the alleged conspiracy period, including the pre-class period, plaintiffs rely on pricing announcements from the alleged conspirators; industry articles containing statements by the conspirators concerning price increases; and various acts to maintain secrecy.

Dow's primary argument is that the factual statements contained in the price

---

[2]Dow has moved to exclude the expert evidence and the Fifth Amendment invocations, and those motions remain pending.  Even if such evidence were excluded, however, the Court would conclude that the remaining evidence is sufficient to create a question of fact concerning the duration of the alleged conspiracy.

announcements concerning market conditions were true, and that those announcements therefore cannot be considered false or fraudulent acts. In its previous summary judgment order, the Court ruled that the class plaintiffs may pursue their theory that these announcements were false and pretextual for the reason that they attributed the price increases to other factors without mentioning as a cause the existence of a price-fixing conspiracy. The Court now applies the same ruling to the fraudulent concealment claim asserted by the direct action plaintiffs. That claim therefore survives for trial, including with respect to the pre-class period, during which the alleged conspirators issued pricing announcements.[3]

## VI.     Claims by Plaintiff Lubrizol

By its second motion, Dow also seeks summary judgment specifically with respect to the claims asserted by one of the direct action plaintiffs, Lubrizol, who purchased MDI from other alleged conspirators. Dow argues that because Lubrizol's purchases for the entirety of the alleged conspiracy period were governed by contracts that prohibited or limited price increases, Lubrizol cannot have suffered any damages from conspiratorial price increases.

---

[3]Because the announcements alone allow this claim to survive for trial, the Court need not address the other acts of secrecy alleged by plaintiffs or Dow's argument that the quotations from industry articles constitute inadmissible hearsay. The Court also need not address plaintiffs' argument that certain announcements and articles contained other misrepresentations concerning market conditions.

The Court rejects this argument. The fact that Lubrizol's contracts either prohibited or capped price increases does not necessarily mean, as a matter of law, that Lubrizol's prices cannot have been affected by the alleged price-fixing conspiracy. As plaintiffs correctly note, Lubrizol's contract prices might have been set at supra-competitive levels as a result of a price-fixing agreement among the alleged conspirators. The fact that those contracts may have given Lubrizol a pricing advantage over the rest of the industry—a fact stressed by Dow—could affect the *amount* of damages suffered by Lubrizol, but would not preclude the existence of some injury. Accordingly, the Court denies Dow's motion for summary judgment on Lubrizol's claims.

### VII.    Claims by Plaintiff Vitafoam Canada

Dow also seeks summary judgment specifically on the claims asserted by plaintiff Vitafoam Products Canada Limited ("Vitafoam Canada"). Dow argues that Vitafoam Canada's claims should be dismissed because that company's former and present employees invoked the Fifth Amendment and refused to answer questions in their depositions.

The Court rejects this argument that Vitafoam Canada's claims should be dismissed as a sanction. As plaintiffs point out, not only did witnesses from related Vitafoam entities testify about Vitafoam Canada's purchasing, Vitafoam Canada itself

11

testified and answered questions by way of a Rule 30(b)(6) deposition.[4]  Dow has not

shown or argued that Vitafoam Canada will be unable to prove its claim or that Dow and

the other defendants were unable to discover information concerning Vitafoam Canada's

purchasing (Dow did not file any motion to compel concerning that subject).  Thus, the

harsh sanction of the dismissal of Vitafoam Canada's claims in not warranted, and the

Court denies Dow's motion in this regard.


IT IS THEREFORE ORDERED BY THE COURT THAT defendant Dow

Chemical Company's motions for summary judgment (Doc. ## 2400, 2402) are **denied**.


IT IS SO ORDERED.


Dated this 4th day of January, 2013, in Kansas City, Kansas.


   s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

[4]The cases cited by Dow are easily distinguishable on this basis, as each of those cases involved the refusal of the individual or corporate plaintiff itself to answer questions. *See Hiley v. United States*, 807 F.2d 623, 628-29 (7th Cir. 1986); *Dimensions Med. Ctr., Ltd. v. Principal Fin. Group, Ltd.*, 1996 WL 494229, at *6-8 (N.D. Ill. Aug. 21, 1996); *Kisting v. Westchester Fire Ins. Co.*, 290 F. Supp. 141, 149 (W.D. Wis. 1968), *aff'd*, 416 F.2d 967 (7th Cir. 1969).  Dow has not cited any authority for the dismissal of a corporation's claim based on individual invocations of the Fifth Amendment when the corporation itself and other witnesses provided pertinent testimony.