IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: ) | |
| URETHANE ANTITRUST LITIGATION ) | MDL No. 1616 |
| ) | Case No. 04-1616-JWL |
| This document relates to: ) | |
| The Polyether Polyol Cases ) | |
| _____) | |

## MEMORANDUM AND ORDER

In this multi-district antitrust litigation, these consolidated cases presently come before the Court on motions by defendant Dow Chemical Company ("Dow") to exclude at trial—at either the trial of the class action or the trial of the direct actions by plaintiffs that have opted out of the class—the invocations of the Fifth Amendment privilege and a similar privilege under German law by former Bayer employee Lee Noble (Doc. # 2384) and by six other former or current employees of Bayer (Doc. # 2386). For the reasons set forth below, the motions are **granted**, and any such evidence shall not be admitted at trial.

Dow seeks to exclude the invocations by Lee Noble, Hans Buhse, Werner Spinner, Dennis McCullough, Patrick Thomas, Hans Kogelnik, and Reinhold Lang. Mr. Thomas is a current employee of Bayer, with whom (along with other alleged conspirators) Dow allegedly entered into a price-fixing agreement. The other witnesses are former Bayer employees. Mr. Noble invoked the Fifth Amendment and refused to answer any substantive questions at his deposition. Messrs. Buhse, Spinner, and

McCullough invoked the Fifth Amendment and a German privilege against self-incrimination in refusing to answer substantive written questions that the parties submitted pursuant to an agreement to obtain the witnesses' depositions upon written questions pursuant to Fed. R. Civ. P. 31. With respect to Messrs. Thomas, Kogelnik, and Lang, the parties also submitted written questions, but a German court returned as unexecuted the requests for testimony, based on the intent of these witnesses to invoke the Fifth Amendment and the German privilege. The direct action plaintiffs seek to present evidence of all seven witnesses' invocations; the class plaintiffs seek to present evidence of the invocations by Messrs. Buhse, Spinner, McCullough, and Kogelnik. Plaintiffs argue that the jury should be permitted to draw a negative inference from the witnesses' invocation of these privileges.

The Supreme Court has held that although the Fifth Amendment's privilege against self-incrimination precludes drawing adverse inferences against defendants in criminal cases, it "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). In this case, however, plaintiffs do not seek the admission of an invocation by a party (Dow) or its current or former employees; rather, plaintiffs seek the admission of evidence that a non-party invoked the Fifth Amendment. The parties have looked to the analysis of this issue by the Second Circuit in *LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997), and the Court finds that opinion useful here.

2

In *LiButti*, the court reviewed the decisions of the federal appellate courts on this issue and compiled a non-exclusive list of factors that have guided the courts in ruling on the admissibility of a non-party's Fifth Amendment invocation in a civil case. *See id.* at 121-24. The Second Circuit's opinion is well-reasoned and persuasive with respect to the usefulness of these factors, and the court considers those factors in this case as follows.

The first factor is the nature of the relationship between the non-party witness who has invoked the Fifth Amendment and the party against whom the evidence is offered. *See id.* at 123. As the Second Circuit noted, the nature of this relationship is the most significant circumstance bearing on the question of admissibility. *See id.* The key in applying this factor is the degree of loyalty that may be expected between the non-party witness and the party, in light of their relationship. *See id.*

In this case, at the time they invoked the Fifth Amendment, these witnesses had no relationship to Dow, against whom this evidence is offered. Plaintiffs argue that the necessary relationship is supplied by their allegation that Dow was a co-conspirator of Bayer. Whether or not Dow and Bayer conspired as alleged, however, there is no reason to believe that these witnesses would feel any particular loyalty to Dow many years after the end of the alleged conspiracy and Bayer's own settlement with plaintiffs. Therefore, the relationship between these witnesses and Dow is tenuous at best, and this factor weighs against admission of this evidence.

Plaintiffs concede that Dow did not exercise any control over these witnesses at

3

the time they invoked these privileges. Thus, the second *LiButti* factor also weighs against admission of this evidence. *See id.*

The third factor is the compatibility of the interests of the non-party witness and the party in the outcome of the civil litigation. *See id.* Plaintiffs suggest that these witnesses would have an interest in the outcome of this litigation because a finding for Dow could exonerate them of any wrongdoing. There is no indication, however, that these witnesses have any actual interest in the outcome of the claims against Dow, particularly because, as noted above, all claims against Bayer have been settled. Morevoer, any governmental investigations were closed long ago. The court concludes that there is no showing that these witnesses have any practical interest in the outcome of this case, and therefore this factor weighs against admission of the evidence.

The fourth *LiBuitti* factor is the role of the non-party witness in the civil litigation. *See id.* at 123-24. As the Second Circuit reasoned, "[w]hether the non-party witness was a key figure in the litigation and played a controlling role in respect to any of its underlying aspects also logically merits consideration by the trial court." *See id.* Plaintiffs argue that these witnesses were key figures in the underlying conspiracy, in the sense that they were high-ranking executives at Bayer who allegedly held pricing discussions and entered into price-fixing agreements with Dow the other alleged conspirators. As Dow points out, however, other executives at Bayer did testify, and plaintiff had access to evidence from executives at Dow and the other companies. Thus, while these witnesses may have been important players in the alleged conspiracy, that

4

conspiracy allegedly included a great number of other important players as well, and the Court cannot say that these witnesses played the controlling roles. At best, then, the Court views this factor as neutral. Thus, at least three of the *LiButti* factors (including the most important factor) weigh against admission of the evidence of these witnesses' invocation of their Fifth Amendment privilege, and no factor weighs clearly in plaintiffs' favor.

The Court agrees with the Second Circuit that, in resolving this question of admissibility, "the overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *Id.* at 124. In this case, plaintiffs would like to have the jury draw the negative inference from these witnesses' invocation of the Fifth Amendment that in fact they did so in order to avoid admitting that the alleged conspiracy existed.

The Court concludes that, under all of the circumstances, such an adverse inference is not trustworthy in this case and would not advance the search for truth regarding whether a conspiracy existed. First and foremost, these witnesses could reasonably have based their decisions to invoke the privilege on any number of factors other than to avoid admitting to the conspiracy alleged here. Indeed, as Dow points out, the direct action plaintiffs have supplied one such possible motive in their brief, in which they suggested that the "practical effect of this joint representation [of all former Bayer employees by one law firm] was that none of the witnesses could testify lest they implicate each other and create a conflict for [the law firm]." Moreover, these witnesses

5

did not merely refuse to answer questions related to pricing discussions and agreements with Bayer's competitors; rather, they invoked the Fifth Amendment in response to virtually every question, including seemingly innocuous questions such as those seeking to confirm their employment by Bayer during the alleged conspiracy period. Accordingly, there is little basis for the inference that these witnesses would necessarily have testified against Dow's interests specifically with respect to issues relevant in this case.

The Court agrees with the reasoning of the Second Circuit in *Brink's Inc. v. City of New York*, 717 F.2d 700 (2d Cir. 1983)—one of the cases on which the *LiButti* court relied—concerning the lack of probative value from these kinds of invocations of the Fifth Amendment privilege. After reviewing a few of the questions to which the witness had responded with an invocation of the Fifth Amendment, the court stated:

> Obviously, the posing of fact-specific questions is designed to suggest to the jury that but for the privilege the answer in each case would have been "yes" [confirming incriminating behavior]. However, since the privilege may be invoked as to any answer which would furnish a link in the chain of evidence needed to prosecute the claimant, and to sustain the privilege, it need only be evidence from the implications of the question, in the setting in which it is asked, that a responsive answer or an explanation of why it cannot be answered might be dangerous, assertion of the privilege in response to specific questions such as these quoted above is permissible whether the answer is "yes" or "absolutely not." Nevertheless, the self-evident purpose of such questioning is to suggest that the answer would be "yes." Otherwise, the questions would never be asked. This practice inevitably invites jurors to give evidentiary weight to questions rather than answers. Moreover, it leaves the examiner free, once having determined that the privilege will be invoked, to pose those questions which are most damaging to the adversary, safe from any contradiction by the witness no matter what the actual facts.

*Id.* at 716 (internal quotations and citations and footnote omitted).

Similarly, in this case, the witnesses' invocation of the privilege does not create a substantial inference that their answers would have been damaging to Dow. The weakness of the inference sought is also demonstrated in this case by the fact that the witnesses also invoked the privilege in response to questions from Dow seeking to establish facts supporting its position. Finally, this lack of trustworthiness is further supported by the tenuous relationship between Dow and the witnesses and the fact that the witnesses likely felt no loyalty to Dow (or to the other companies with whom Bayer allegedly conspired). Thus, based on the totality of the circumstances, the Court concludes that the negative inference urged by plaintiffs is not a trustworthy one, and these witnesses' invocation of the Fifth Amendment has little, if any, probative value in this case.[1]

The Court further concludes that any minimal probative value of the witnesses' invocation of the Fifth Amendment is substantially outweighed by the danger of unfair prejudice to Dow from admission of such evidence and jury confusion. In particular, it would unduly prejudice Dow if the jury were allowed to infer that the witnesses took the

---

[1] The Court rejects plaintiffs' argument that the asserted negative inferences are sufficiently corroborated by other evidence to make the inferences trustworthy. As Dow points out, plaintiffs have not supported all of the hundreds of questions that these witnesses refused to answer. Moreover, the Court is not persuaded that the admissible evidence cited by plaintiffs is of sufficient nature and substance to overcome the other circumstances (including the Court's weighing of the *LiButti* factors) that undermine the trustworthiness of the proffered inferences, as discussed herein.

7

Fifth to avoid admitting to the existence of a conspiracy, and that a conspiracy therefore existed, when such an inference would not be proper or trustworthy under all of the circumstances.  A lay person sitting on a jury is likely to read far more into such an invocation than is justified under the complicated set of circumstances that led to it.  Moreover, as the Second Circuit noted above, once the witness's intent to invoke the privilege is known, counsel has the opportunity to craft his questions—and in essence, testify for the deponent—in the most damaging and even unfair way, without fear that false assumptions or unfair characterizations will be corrected by the witness.  *See id.*  A review of the questions posed to these witnesses suggests that such artful crafting of questions occurred here.  Thus, in light of the witnesses' broad invocation of the privilege in this case, Dow would suffer unfair prejudice from plaintiffs' ability to offer, in essence, their own testimony in the guise of deposition questions.  In addition, if such evidence were admitted, Dow would be entitled to attempt to explain to the jury, including through additional evidence, why the invocation of the privilege does not necessarily lead to the negative inference asserted by plaintiffs, and such efforts would undoubtedly cause at least some confusion in the jury and unnecessarily delay the proceedings.

For all these reasons, the Court concludes that the evidence proffered by plaintiffs that these witnesses invoked the Fifth Amendment privilege against self-incrimination

should be excluded, pursuant to Fed. R. Civ. P. 402 and 403.[2]

For the same reasons, the Court excludes evidence of the invocation by some of the these witnesses of a privilege against self-incrimination under German law. The negative inference sought by plaintiffs is the same, and there is no basis for a result different from that reached with respect to the Fifth Amendment privilege.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motions to exclude invocations of the Fifth Amendment and other privileges by certain witnesses (Doc. ## 2384, 2386) are **granted**, and any such evidence shall not be admitted at trial.

IT IS SO ORDERED.

Dated this 8th day of January, 2013, in Kansas City, Kansas.

                                              s/ John W. Lungstrum
                                              John W. Lungstrum
                                              United States District Judge

---

[2]In light of this ruling, the Court need not address the parties' arguments concerning whether the proffered evidence constitutes hearsay or meets certain hearsay exceptions, or their arguments concerning the form of the witnesses' invocations of the privilege.

9