# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| _____ ) | |
| **IN RE: URETHANE ANTITRUST** ) | **No. 04-MD-1616-JWL** |
| **LITIGATION** ) | |
| _____) | |
| ) | |
| **This Document Relates To:** ) | |
| **The Polyether Polyols Cases** ) | |
| _____) | |

## CLASS PLAINTIFFS' BRIEF IN SUPPORT OF THEIR
## PROPOSED JURY INSTRUCTIONS

## <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ................................................................ iv

I.     INTRODUCTION .............................................................1

II.    THE COURT SHOULD ADOPT CLASS PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS ................................................................3

    A.    Class Plaintiffs' Proposed Instruction No. 1 - Duty of the Jury .............................3

    B.    Class Plaintiffs' Proposed Instruction No. 2 - Evidence Defined...........................4

    C.    Class Plaintiffs' Proposed Instruction No. 3 - Juror Notes ...................................4

    D.    Class Plaintiffs' Proposed Instruction No. 4 - Types of Evidence ........................4

        1.    Class Plaintiffs' Response to Dow's Proposed "Types of Evidence"
Instruction ........................................................6

    E.    Class Plaintiffs' Proposed Instruction No. 5 – Inferences ......................................7

    F.    Class Plaintiffs' Proposed Instruction No. 10 - Corporation Liability for
Conspiracy ........................................................7

    G.    Class Plaintiffs' Proposed Instruction No. 11 - Burden of Proof ..........................8

    H.    Class Plaintiffs' Proposed Instruction No. 14 - Class Actions ..............................9

        1.    Class Plaintiffs' Response to Dow's Proposed "Class Actions" Instruction11

    I.    Class Plaintiffs' Proposed Instruction No. 15 - Purpose of the Sherman Act .......13

        1.    Class Plaintiffs' Response to Dow's Proposed Instruction on the "Purpose
of the Sherman Act"..................................................14

    J.    Class Plaintiffs' Proposed Instruction No. 16 - Parties' Contentions...................14

        1.    Class Plaintiffs' Response to Dow's Proposed Instruction on Parties'
Contentions ........................................................15

    K.    Class Plaintiffs' Proposed Instruction No. 17 - Sherman Act Elements................15

1.     Class Plaintiffs' Response to Dow's Proposed Instruction on Sherman Act Elements.................................................................................................18

L.    Class Plaintiffs' Proposed Instruction No. 18 - Sherman Act Conspiracy ...........21

1.     Class Plaintiffs' Response to Dow's Proposed Instruction - Sherman Act - Definition of Conspiracy..........................................................................23

M.    Class Plaintiffs' Proposed Instruction No. 19 - Evidence of Similarity ...............27

1.     Class Plaintiffs' Response to Dow's Proposed Instruction – Oligopoly ...29

N.    Class Plaintiffs' Proposed Instruction No. 20 - Exchange of Pricing Information30

1.     Class Plaintiffs' Response to Dow's Proposed Instruction - Evidence of Conspiracy ................................................................................................31

O.    Class Plaintiffs' Proposed Instruction No. 21 - Plus Factors................................34

P.    Class Plaintiffs' Proposed Instruction No. 23 - Evidence of Competition ...........35

Q.    Class Plaintiffs' Proposed Instruction No. 25 - Absent Witnesses.......................36

R.    Class Plaintiffs' Proposed Instruction No. 26 - Antitrust Impact .........................38

1.     Dow attempts to create the misleading impression that the mere possibility that the existence of a sole, uninjured class member will defeat a finding of impact ................................................................................................38

2.     In its description of material causation, Dow's proposed Antitrust Impact instruction misstates the law and likely will confuse and mislead jurors. .39

3.     Dow's description of Class Plaintiffs' statistical model as the "sole evidence of causation" is incorrect. ..........................................................42

S.    Class Plaintiffs' Proposed Instruction No. 27 – Damages ...................................43

T.    Class Plaintiffs' Proposed Instruction No. 28 - Joint and Several Liability .........44

1.     Class Plaintiffs' Response to Dow's Proposed Instruction - Joint and Several Liability.........................................................................................46

U.    Class Plaintiffs' Proposed Instruction Nos. 29-30 - Fraudulent Concealment Introduction and Fraudulent Concealment Elements..............................................48

V.    Class Plaintiffs' Proposed Instruction No. 31 - Fraudulent Concealment Factors 49

1.      Class Plaintiffs' Response to Dow's Fraudulent Concealment Instructions50

W.    Class Plaintiffs' Proposed Instruction No. 32 - Witness Impeachment.................52

X.    Class Plaintiffs' Proposed Instruction No. 33 – Experts........................................52

III.    THE COURT SHOULD REJECT DOW'S ADDITIONAL PROPOSED
INSTRUCTIONS...........................................................................................................54

A.    Plaintiffs' Objections to Dow's Proposed Instruction on Withdrawal .................54

B.    Plaintiffs' Objections to Dow's Proposed Instruction on Nominal Damages .......58

IV.    CONCLUSION..............................................................................................................59

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249 (10th Cir. 2006)............................25

*Affiliated Capital Corp. v. City of Houston*, 735 F.2d 1555 (5th Cir. 1984) (en banc) ............40, 41

*Am. Bearing Co., Inc. v. Litton Indus., Inc.*, 729 F.2d 943 (3d Cir. 1984) ....................................16

*Baker v. Board of Regents of Kan.*, 991 F.2d 628 (10th Cir. 1993)................................................50

*BanxCorp v. Bankrate, Inc.*, 2011 WL 6934836 (D.N.J. Dec. 30, 2011)......................................25

*Behrend v. Comcast Corp.*, 655 F.3d 182 (3d Cir. 2011), *cert. granted in part,*
 133 S. Ct. 24, 183 L. Ed. 2d 673 (U.S. 2012) ..............................................................................18

*Bentley v. Cleveland County Bd. Of County Comm's*, 41 F.3d 600 (10th Cir. 1994)....................54

*Bigelow v. RKO Radio Pictures*, 327 U.S. 251 (1946) ........................................................19, 20, 59

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227 (10th Cir. 2004)..........................................................54

*Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) ..................................................................16

*Blossom v. CSX Transp., Inc.*, 13 F.3d 1477 (11th Cir. 1994)..........................................................8

*In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599 (7th Cir. 1997)..................57

*Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643 (1980)..............................................................13

*In re Catfish Antitrust Litig.*, 908 F. Supp. 400 (N.D. Miss. 1995) ................................................56

*Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357 (10th Cir. 1989)...............16

*Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073 (10th Cir. 2006)............................25

*Chicago Bd. of Trade v. United States*, 246 U.S. 231 (1918)........................................................13

*Chrysler Credit Corp. v. J. Truett Payne Co., Inc.*, 670 F.2d 575 (5th Cir. 1982).......................16

*City of Long Beach v. Std. Oil Co.*, 46 F.3d 929 (9th Cir. 1995)......................................................5

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548 (11th Cir. 1998) ................................25

*Continental Ore v. Union Carbine & Carbon Corp.*, 370 U.S. 690 (1962) ...................................33

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984)...........................................21

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ........................................................53

*Deiter v. Microsoft Corp.,* 436 F.3d 461 (4th Cir. 2006)..............................................................16

*Digital Ally, Inc. v. Z3 Tech., LLC*, 09-2292-KGS,
  2012 WL 4061419 (D. Kan. Sept. 14, 2012) ..............................................................................55

*Elliott Industries Ltd. Partnership v. BP America Production Co.*,
  407 F.3d 1091 (10th Cir. 2005) ..................................................................................................17

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681 F. Supp. 2d 141, (D.
Conn. 2009)..............................................................................................................................17, 31

*Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911(HB), 2004 WL 594396 (S.D.N.Y.
Mar. 23, 2004).........................................................................................................................17, 33

*Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171 (3d Cir. 1992) .....................................26

*Frederick v. Swift Transp. Co., Inc.,* 591 F. Supp. 2d 1149 (D. Kan. 2008) ...............................53

*In re Flat Glass Antitrust Litig.*, 385 F.3d 350 (3d Cir. 2004)..........................................11, 25, 32

*Global Bankcard Servs. v. Global Merch. Servs., Inc.,* 2011 WL 2268057 (E.D. Va. June 7,
2011) ...............................................................................................................................................8

*Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251 (1972)............................................................46

*In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002) ....................11, 25

*In re Home-Stake Prod. Co. Sec. Litig.,* 76 F.R.D. 351 (N.D. Okla. 1977)...................................45

*Indus. Constructors Corp. v. United States Bureau of Reclamation*,
  15 F.3d 963 (10th Cir. 1994) ......................................................................................................50

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010)...............................................25

*J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557 (1981) ............................................20

*Johnson v. United States*, 291 F.2d 150 (8th Cir. 1961)................................................................37

*In re K-Dur Antitrust Litig.,* 338 F. Supp. 2d 517 (D.N.J. 2004) ..................................................45

*Kay-Cee Enterprises, Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840 (D. Kan. 1999)........................55

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)...........................................................53

*Law v. Nat'l Collegiate Athletic Ass'n*, 185 F.R.D. 324 (D. Kan. 1999)...................................18, 33

*Law v. Nat' Collegiate Athletic Ass'n*, 5 F. Supp. 2d 921 (D. Kan. 1998) ....................................20

*Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918 (3d Cir. 1986)............................................34

*In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144 (3d Cir. 1993) ..........................58

*In re Lower Lake Erie Iron Ore Antitrust Litig.*, 710 F. Supp. 152 (E.D. Pa. 1989)....................45

*Margolies v. McCleary*, 447 F.3d 1115 (8th Cir. 2006) ..................................................................17

*Marian Bank v. Electronic Payment Servs., Inc.*,
  1997 U.S. Dist. LEXIS 11560 (D. Del. 1997) ..............................................................................45

*Marino v. Otis Eng'g Corp.*, 839 F.2d 1404 (10th Cir. 1988) ........................................................55

*In re Master Key Antitrust Litig.*, 528 F.2d 5 (2d Cir. 1975)..........................................................19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574  (1986).....................5, 7, 30, 34

*McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737 (8th Cir. 2010) .................................33

*In re Medical X-Ray Film Antitrust Litig.*, 946 F. Supp. 209 (E.D.N.Y. 1996) ......................17, 33

*Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 79 L. Ed. 2d 775, 104 S. Ct. 1464
(1982)................................................................................................................................................5

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996)......................19

*In re Nat'l Ass'n of Music Merchants, Musical Instruments & Equip. Antitrust Litig.*, 2012 WL
3637291 (S.D. Cal. Aug. 20, 2012) ...............................................................................................26

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2008)................16

*Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171 (2d Cir. 1992) ........................................................8

*Paper Systems, Inc. v. Nippon Paper Indus. Co., Inc.*, 281 F.3d 629 (7th Cir. 2002)...................44

*In re Publication Paper Antitrust Litig.*, 690 F.3d 51 (2d Cir. 2012)......................................31, 42

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869, Misc. No. 07-489 (PLF),
2012 WL 2870207 (D.D.C. June 21, 2012)...................................................................................19

*Reazin v. Blue Cross and Blue Shield of Kansas, Inc.*, 663 F. Supp. 1360 (D. Kan. 1987) ..........27

*Rostello v. United States*, 36 F.2d 899 (7th Cir. 1929) ..................................................................37

*Scholes v. Moore*, 150 F.R.D. 133 (N.D. Ill. 1993) ........................................................45

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008).........................16, 18, 19, 50, 51

*Shreve Equip., Inc. v. Clay Equip. Corp.*, 650 F.2d 101 (6th Cir. 1981)..........................................42

*Standard Indus., Inc. v. Mobil Oil Corp.*, 475 F.2d 220 (10th Cir. 1973) ......................................44

*Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555 (1931).....................58, 59

*Sunny Hill Farms Dairy Co. v. Kraftco Corp.*, 381 F. Supp. 845 (E.D. Mo. 1974)......................24

*Tex. Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630 (1981)...................................................44

*The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148 (9th Cir. 1988)..........................................26

*In re TFT-LCD (Flat Panel) Antitrust Litig.,* 820 F. Supp. 2d 1055 (N.D. Cal. 2011) ................45

*Twentieth Century Fox Film Corp. v. Goldwyn,* 328 F.2d 190 (9th Cir. 1964)..............................44

*United States v. Antar*, 53 F.3d 568 (3d Cir. 1995) .......................................................................57

*United States v. Ashland-Warren, Inc.,* 537 F. Supp. 433 (M.D. Tenn. 1982)...................................26

*United States v. Benabe*, 654 F.3d 753 (7th Cir. 2011) ..........................................................17, 28

*United States v. Busic*, 587 F.2d 577 (3d Cir. 1978), rev'd *and remanded on other grounds*, 446 U.S. 398 (1980)...........................................................................................................................37

*United States v. Chapman*, 435 F.2d 1245 (5th Cir. 1970).............................................................37

*United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199 (1968).............................24

*United States v. Container Corp.,* 393 U.S. 333 (1969) ..................................................................17

*United States v. Currier*, 454 F.2d 835 (1st Cir. 1972) ..................................................................37

*United States v. Dicesare*, 765 F.2d 890 (9th Cir. 1985) ...............................................................45

*United States v. Dickey*, 736 F.2d 571 (10th Cir. 1984) .................................................................45

*United States v. Finestone*, 816 F.2d 583 (11th Cir. 1987) ...........................................................57

*United States v. Fisher*, 484 F.2d 868 (4th Cir. 1973)....................................................................37

*United States v. Fontenot*, 483 F.2d 315 (5th Cir. 1973)...............................................................45

*United States v. Greenfield*, 44 F.3d 1141 (2d Cir. 1995) ............................................................57

*United States v. Henson*, 123 F.3d 1226 (9th Cir. 1997) ..........................................................45

*United States v. Kelley Technical Coatings, Inc.*, 157 F.3d 432 (6th Cir. 1998).........................29

*United States v. Lothian*, 976 F.2d 1257 (9th Cir. 1992)...............................................44, 45, 58

*United States v. Maxwell*, 579 F.3d 1282 (11th Cir. 2009) ........................................................29

*United States v. Metropolitan Enterprises, Inc.*, 728 F.2d 444 (10th Cir. 1984).........................26

*United States v. Silverman*, 745 F.2d 1386 (11th Cir. 1984) .....................................................29

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940).................................13, 17, 26, 35

*United States v. Suntar Roofing*, 897 F.2d 469 (10th Cir. 1990)...........................................21, 26

*United States v. Thornburgh*, 645 F.3d 1197 (10th Cir. 2011),
 *cert. denied*, 132 S. Ct. 214 (2011) ........................................................................................57

*United States v. U.S. Gypsum Co.*, 438 U.S. 422 (1978)..............................................................56

*United States v. Westry*, 524 F.3d 1198 (11th Cir. 2008) ....................................................54, 55

*In re Univ. Serv. Fund Tel. Billing Practices Litig.*,
 2008 US Dist. LEXIS 107727 (D. Kan. June 30, 2008).......................................................2, 3, 34

*In re Univ. Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661  (D. Kan. 2004).................19

*In re Uranium Antitrust Litig.*, 552 F. Supp. 518 (N.D. Ill. 1982) ..............................................44

*In re Urethane Antitrust Litig.*, MDL No. 1616, 2012 WL 6610878 (D. Kan. Dec. 18, 2012)passim

*In re Urethane Antitrust Litig.*, 235 F.R.D. 507 (D. Kan. 2006) ..................................................49

*In re Urethane Antitrust Litig.*, 251 F.R.D. 629 (D. Kan. 2008) ......................................12, 18, 19

*In re Urethane Antitrust Litig.*, 683 F. Supp. 2d 1214 (D. Kan. 2010)........................................49

*Wagner v. United States*, 264 F.2d 524 (9th Cir. 1959)..............................................................37

*Walder v. Paramount Publix Corp.*, 132 F. supp. 912 (S.D.N.Y. 1955)......................................45

*World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467 (10th Cir. 1985) .....................16, 59

*Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287 (11th Cir. 2003) ........................25

*Youren v. Tintic Sch. Dist.,* 343 F.3d 1296 (10th Cir. 2003) ..........................................................55

*Zenith Radio Corp. v. Hazeltine Research Inc.*, 395 U.S. 100 (1969)...........................................41

**FEDERAL STATUTES AND RULES**

D. Kansas Local Rule 51.1 ...........................................................1, 2, 15, 29, 31, 32

Federal Rules of Civil Procedure 8 ...................................................................................54

Federal Rules of Evidence 608(a)....................................................................................52

Federal Rules of Evidence 702 .........................................................................................53

Section 1 of the Sherman Act, 15 U.S.C. § 1...................................................................15

Section 4 of the Clayton Act, 15 U.S.C. § 15(a)..........................................................15

**OTHER AUTHORITIES**

2A James W. Moore, et al, *Moore's Federal Practice*, ¶ 8.27(3) (2d ed. 1994) .........................54

6 NEWBERG ON CLASS ACTIONS § 18.53 (4th ed. 2002) ..............................................18

ABA Model Instructions in Civil Antitrust Cases (2005 ed.)............................... 14, 22, 23, 28, 35

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 307 (Supp. 2012) ...........................24

Phillip E. Areeda & Herbert Hovenkamp, VII ANTITRUST LAW ¶ 1509 (3d ed. 2010) ..............13

Sand, Modern Federal Jury Instructions ¶ 73.01 (1992)...........................................................7, 9

Third Circuit Model Preliminary Instruction 1.10 .......................................................................9

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

_____
                                              )
**IN RE: URETHANE ANTITRUST**      )        No. 04-MD-1616-JWL
**LITIGATION**                          )
_____)
                                              )
**This Document Relates To:**          )
**The Polyether Polyols Cases**        )
_____)

**CLASS PLAINTIFFS' BRIEF IN SUPPORT OF THEIR
PROPOSED JURY INSTRUCTIONS**

## I.      INTRODUCTION

Pursuant to paragraph 18(d) of the Court's Pretrial Order (Dkt. 2374) and Local Rule

51.1(a)(2), Class Plaintiffs respectfully request that the Court adopt the Proposed Jury

Instructions attached here to as Exhibit 1.A.

On December 14, 2012, Class Plaintiffs served their initial proposed jury instructions.

Dow provided its Response to those instructions on January 7, 2013, which is attached hereto as

Ex. 2 (cited herein as "Dow's Resp.").  When responding to certain of Class Plaintiffs' Proposed

Jury Instructions, Dow also included a competing Proposed Jury Instruction in its Response.

_See, e.g_., Dow Resp. at 58-61 (proposing an alternative "Sherman Act Conspiracy" instruction).

The parties met and conferred telephonically and via e-mail, and through this process the parties

agreed upon some instructions that are being submitted separately.  Class Plaintiffs also modified

some of their instructions as a result of those discussions.  The instructions that remain disputed

are addressed herein.

In Part II below, Class Plaintiffs explain why their Proposed Instructions should be

adopted and respond to Dow's criticisms and proposed alternative instructions as set forth in

Dow's Response.

Many of Class Plaintiffs' Proposed Jury Instructions are based on this Court's instructions in *In re Universal Service Fund Telephone Billing Practices Litigation*, No. 02-MD-1468-JWL (hereafter, "*USF* Instructions"), which are attached as Exhibit 3.[1]  Where appropriate, Class Plaintiffs propose certain modifications to the *USF* Instructions that account for distinct facts and key legal differences between that case and this litigation.  *Compare In re Univ. Serv. Fund Tel. Billing Practices Litig.*, No. 02-MD-1468-JWL, 2008 U.S. Dist. LEXIS 107727, at *77-78 & *82-83 (D. Kan. June 30, 2008) (noting the absence of direct evidence, and denying summary judgment based solely on circumstantial evidence) *with In re Urethane Antitrust Litig.*, MDL 1616, 2012 WL 6610878, at *5-8 (D. Kan. Dec. 18, 2012) (identifying both direct and circumstantial evidence of the conspiracy).  While both this case and *USF* – like many price-fixing trials – raise factual issues relating to the existence and scope of the conspiracy (the extent to which agreements were reached), the nature of the issues and the proof in this case are materially different from the issues and proof in *USF*.  In *USF*, other than plaintiffs' experts'

_____

[1] Several other of Class Plaintiffs' proposed instructions are based on the charges given in these additional trials:

- *In re Vitamins Antitrust Litig.*, MDL Docket No. 1985, Doc. 4450 (D.D.C. June 11, 2003, afternoon session) (Hogan, C.J.) (hereafter, "*Vitamins* Instructions"), attached as Exhibit 4.

- *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, Doc. # 6036  (N.D. Cal. June 28, 2012) (hereafter, "*LCD* Instructions"), attached as Exhibit 5.

- *In re High Pressure Laminates Antitrust Litig.*, No. 00 MD 1368 (CLB) (S.D.N.Y. June 23, 2006) (hereafter, "*Laminates* Instructions"), attached as Exhibit 6.

- *Layne Christensen Co. et al. v. Bro-Tech Corp.*, No. 09-2381-JWL, Doc. 677  (D. Kan. Jan. 30, 2012) (hereafter, "*Bro-Tech* Instructions"), attached as Exhibit 7.

As required by Local Rule 51.1(b)(4), attached as Exhibit 1.B is an "Annotated" version of those of Class Plaintiffs' Proposed Jury Instructions that are based on instructions given in these other cases.  The Annotations show how Class Plaintiffs propose to modify the prior instructions.

opinions, there was virtually no other direct or circumstantial evidence of collusion.  In this case, then, more than in *USF*, the jury will benefit from more specific guidance from the Court on how to deal with this evidence and what types of communications and conduct satisfy a Sherman Act Section One claim.  This is why Class Plaintiffs have modified to some extent the instructions from the *USF* case.

In Part III, Class Plaintiffs address Dow's additional proposed instructions that are not offered as an alternative to an instruction offered by Class Plaintiffs.

Class Plaintiffs specifically reserve their rights in two important respects:

*First*, Class Plaintiffs have limited their proposed instructions to "live" issues in the case. For example, Class Plaintiffs have not requested a fraudulent concealment instruction stating that the jury may find that the conspiracy is self-concealing, or an instruction addressing Fifth Amendment invocations.  Such instructions would be inconsistent with the Court's recent rulings and this would not be helpful to the Court.  *See* Dkt. 2637 (declining to adopt the self-concealing standard) and Dkt. 2682 (granting Dow's motion to exclude the Bayer witness Fifth Amendment invocations).  Class Plaintiffs reserve all of their rights with respect to these issues.

*Second*, Class Plaintiffs reserve the right to amend their Proposed Jury Instructions to account for any subsequent Court rulings or other significant developments in the litigation.

## II.   THE COURT SHOULD ADOPT CLASS PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

### A.   Class Plaintiffs' Proposed Instruction No. 1 – Duty of the Jury[2]

Class Plaintiffs' Proposed Instruction No. 1 is taken nearly verbatim from *USF* Instruction No. 1 (Ex. 3).  *See* Ex. 1.B at 1.  Dow seeks to delete two sentences that ask the jury

---

[2] In light of the Court's comments concerning jury instructions during the limine conference, Class Plaintiffs unsuccessfully sought Dow's agreement not to submit "stock instructions" such as this one.

to consider the instructions in their entirety.  Dow Resp. at 23.  The disputed language is necessary to ensure that the jury does not favor some instructions over others.  Dow provides no justification for its proposed deletion.  The Court should adopt Class Plaintiffs' Proposed Instruction No. 1 and reject Dow's deletion.

**B.      Class Plaintiffs' Proposed Instruction No. 2 – Evidence Defined**

Class Plaintiffs' Proposed Instruction No. 2 is a verbatim adoption of *USF* Instruction No. 2 (Ex. 3).  *See* Ex. 1.B at 2.  Dow proposes to delete two sentences instructing that the jury is not limited to what it sees and hears, but provides no rationale for its proposed deletion.  Dow Resp. at 24.  The disputed language is necessary to explain that the jury is permitted to make inferences, an important issue in this case.

**C.      Class Plaintiffs' Proposed Instruction No. 3 – Juror Notes**

Class Plaintiffs' Proposed Instruction No. 3 is taken verbatim from *USF* Instruction No. 3.  *See* Ex. 1.B at 3.  *See also LCD* Instructions at 29 (adopting similar language regarding juror notes) (Ex. 5).  Without explanation, Dow proposes to delete a sentence stating that juror notes should not be substituted for memory and make other stylistic adjustments.  Dow Resp. at 25.  Dow's proposed changes should be rejected.

**D.      Class Plaintiffs' Proposed Instruction No. 4 – Types of Evidence**

Class Plaintiffs' Proposed Instruction No. 4 quotes *USF* Instruction No. 2 and supplements it with the same clear, understandable explanation of circumstantial evidence that was provided in the *Vitamins* antitrust trial.  *See* Ex. 1.B at 4. As noted above, circumstantial evidence of collusion is important in this trial.  The example contained in Class Plaintiffs' proposed addition will assist the jury in understanding what circumstantial evidence is.  The same explanation of circumstantial evidence that Plaintiffs propose to include in this Instruction is a classic analogy commonly used in jury instructions in price-fixing cases.  *See, e.g., Vitamins*

4

Instructions at Tr. 1335 (Ex. 4); *Scrap Metal* Instructions at 6 (Ex. 8) ("If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.").

Dow's vague and unsupported objections to Class Plaintiffs' Proposed "Types of Evidence" Instruction should be rejected. Dow provides no authority supporting its assertion that it is prejudicial for the jury to be instructed that "[c]ircumstantial evidence is the proof of a chain of circumstances pointing to the existence or nonexistence of certain facts" (*see* Dow Resp. at 26), and this exact language was used in the *Vitamins* trial. *See* Ex. 4, at Tr. 1335:10-16. Likewise, Dow's claim that the proposed instruction fails to affirmatively state that the jury may conclude that other facts are untrue (in addition to concluding that facts are true) is meritless; adding this clarification would be redundant.

Dow argues that "the range of permissible inferences that may be drawn from ambiguous (*i.e.,* conduct that is equally consistent with collusion and competition) circumstantial evidence is limited." Dow Resp. at 27. But Dow's reliance on *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588 (1986) and its progeny for this proposition in a price-fixing *trial* such as this one is squarely contrary to this Court's decision denying Dow's motion for summary judgment. *Urethane*, 2012 WL 6610878. The Court specifically found that Class Plaintiffs had adduced "direct evidence of a conspiracy," and that such evidence "is *not* ambiguous." *Id.* at *8 (emphasis added).

Moreover, it is well established that decision standards articulated in summary judgment decisions are not relevant to formulation of jury instructions. *See City of Long Beach v. Std. Oil Co.*, 46 F.3d 929, 933 (9th Cir. 1995) ("For instance, the ABA Sample Jury Instructions in Civil Antitrust Cases (1990) cautions against the use of language from *Matsushita* and *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 79 L. Ed. 2d 775, 104 S. Ct. 1464 (1982), in

formulating instructions.") (footnote omitted).  Antitrust summary judgment standards serve a particular purpose:  to ensure that meritless cases do not reach the jury in the first place.  At trial, however, the *Matsushita* standard (which provides a framework for *the Court's* analysis of summary judgment in economically implausible cases) is not the issue.  Rather, it is for the jury itself to draw reasonable inferences based on the evidence presented and the jurors' common experience, without having artificial restraints (or confusion) imposed by the complexities of the *Matsushita* standard summary judgment doctrine.  Indeed, Dow itself argues in its Response to Class Plaintiffs' Proposed Jury Instructions that summary judgment standards have "no function at trial" and should not be included in jury instructions.  Dow Resp. at 66-67.

       **1.**       **Class Plaintiffs' Response to Dow's Proposed "Types of Evidence" Instruction**

Dow's proposed instruction about circumstantial evidence should be rejected.  While Dow purports to rely on *USF* Instruction No. 31, it has proposed a shorter version of this instruction without explanation for its truncation.  Dow Resp. at 29.  In its revision to *USF* Instruction No. 31, Dow has omitted key language explaining that "[t]he law does not distinguish between direct and circumstantial evidence, but rather simply requires the jury to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.  You should consider both direct and circumstantial evidence to reach your conclusions."  Dow Resp. at 26; *see USF* Instruction No. 31 (Ex. 3).  This language is commonly used in price-fixing cases and should be included here.  *See, e.g., Scrap Metal* Instructions at 6 (Ex. 8) ("It is your job to decide how much weight to give the direct and circumstantial evidence you have seen and heard. The law makes no distinction between the weight that you should give to either one.  Nor does the law say that one is any better evidence than the other."); *LCD* Instructions at 4-5 (Ex. 5) ("The law makes no distinction between the weight to be given to either direct or circumstantial

evidence. It is for you to decide how much weight to give to any evidence."); *Bro-Tech* Instruction No. 25 (Ex. 7) ("The law does not distinguish between direct and circumstantial evidence, but rather simply requires the jury to find the facts, to a particular standard of proof, considering all the evidence in the case, both direct and circumstantial."); *Laminates* Instructions at 2304:16-18 (Ex. 6) ("Members of the Jury, there is no difference between circumstantial and direct evidence. There is nothing inferior about circumstantial evidence.").

### E.      Class Plaintiffs' Proposed Instruction No. 5 – Inferences

Class Plaintiffs' Proposed Instruction No. 5 explaining "inferences," which was taken verbatim from the *LCD* Jury Instructions (*see* Ex. 5 at 8), has been used in many other price-fixing cases.  *See, e.g.*, *Laminates* Instructions at 2304:1-14 (Ex. 6) (explaining "inferences"); *Scrap Metal* Instructions at 14 (Ex. 8) (same).  *See also* Leonard B. Sand, *Modern Federal Jury Instructions*, Instr. 75-1 (2011) (Ex. 9).

As explained above at Part II.D, Dow's arguments, which rely on *Matsushita,* 475 U.S. at 588 and its progeny, is misplaced and contrary to this Court's summary judgment opinion. *Urethane*, 2012 WL 6610878, at *6-8.

### F.      Class Plaintiffs' Proposed Instruction No. 10 – Corporation Liability for Conspiracy

Class Plaintiffs' Proposed Instruction No. 10 is based on *USF* Instruction No. 8.  *See* Ex. 1.B at 10.  Dow's proposed addition should be rejected because it puts legally unsupported and onerous burdens on Class Plaintiffs, including that "Class Plaintiffs must prove which individual employees of a corporation (if any) were part of the alleged conspiracy, and that each of those employees understood and agreed to the illegal object and scope of the alleged conspiracy." Dow Resp. at 36.  Dow has not provided any legal basis for the imposition of these proposed burdensome requirements on Class Plaintiffs; neither the Sherman Act nor applicable case law

set forth any requirements regarding the acts and intentions of individual employees. Unsurprisingly, the lone case relied upon by Dow does not involve a price-fixing conspiracy under the Sherman Act.  Rather, *Global Bankcard Servs. v. Global Merch. Servs., Inc.* dismisses a claim of "combination to injure" under a Virginia state law, which specifically requires showing "any two or more *people* who combine…together for the purpose of willfully and maliciously injuring another in his reputation, trade, business or profession…"  2011 WL 2268057, at *8 (E.D. Va. June 7, 2011) (emphasis added).  Accordingly, Dow's proposed additions to Class Plaintiffs' Proposed Instruction No. 10 would add legally unprecedented and unsupported burdens to Class Plaintiffs' Sherman Act claims and should be rejected.

### G.    Class Plaintiffs' Proposed Instruction No. 11 – Burden of Proof

Class Plaintiffs base their "burden of proof" instructions on *USF* Instruction No. 30 and have added some simple, neutral language designed to explain the unfamiliar concept of "the preponderance of the evidence" to a lay jury.

First, to take this abstract concept and make it more concrete for the jury, Class Plaintiffs propose that the Court analogize the jury's consideration of the "preponderance of the evidence" burden to weighing the evidence on scales.  Numerous courts have approved the "scales" analogy as a proper and helpful way of explaining "preponderance of the evidence," and the Third Circuit even includes it in its model instructions.[3]  The language used to explain this

---

[3] *See* 3d Circuit Model Preliminary Instruction 1.10 (Ex. 10 at p.22) ("To say it differently:  if you were to put the evidence favorable to [plaintiff] and the evidence favorable to [defendant] on opposite sides of the scales, [plaintiff] would have to make the scales tip somewhat on [his/her/its] side."); *see also Blossom v. CSX Transp., Inc.*, 13 F.3d 1477, 1479 (11th Cir. 1994) ("We agree with Blossom that his counsel's 'tipping the scales' language was a proper illustration of Blossom's burden of proof. Courts have specifically endorsed this language for use in civil jury instructions."); *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 187 (2d Cir. 1992) (directing on remand that "the court should instruct the jury that it is to conclude that a fact has been proven by a preponderance of the evidence if it 'find[s] that the scales tip, however

8

concept is taken nearly verbatim from jury instructions used in the *Laminates* antitrust price-fixing trial.  *See Laminates* Instructions at 2310:4-15 (Ex. 6); *see also* Ex. 1.B at 11.

Second, Class Plaintiffs propose that the Court distinguish the burden in this civil case from the much more rigorous burden in a *criminal* case – proof beyond a reasonable doubt – which will be far more familiar to lay jurors.  Class Plaintiffs would be greatly prejudiced were lay jurors to apply the more stringent criminal standard of proof here.  Courts have sought to mitigate this risk of confusion by explicitly instructing that the "beyond a reasonable doubt" standard does not apply.  *See also* 3d Circuit Model Preliminary Instruction 1.10 (Ex. 10 at p.23) ("You may have heard of the term 'proof beyond a reasonable doubt.'  That is a stricter standard of proof and it applies only to criminal cases.  It does not apply in civil cases such as this.  So you should put it out of your mind."); *Tableware* Instruction at 3 (Ex. 11) ("You may have heard of a burden of proof that is used in criminal cases called 'beyond a reasonable doubt.'  That requirement is the highest burden of proof and does not apply to an antitrust case; hence, you should completely ignore it.").  Paragraph three of Class Plaintiffs' proposed instruction is taken verbatim from *Laminates* Instructions at 2310:16-25 (Ex. 6).  *See* Ex. 1.B at 11.

### H.    Class Plaintiffs' Proposed Instruction No. 14 – Class Actions

Class Plaintiffs' Proposed Instruction No. 14 is taken directly from *USF* Instruction No. 11 and is necessary to provide the jury with background and context concerning the class action device.  Dow provides no good reason to deviate from the format used in *USF*, and once again, it fails to cite a single authority in support of its objections to Class Plaintiffs' Proposed Instruction No. 14.

---

slightly, in favor of the party with th[e] burden of proof' as to that fact.") (citing Sand, *Modern Federal Jury Instructions* ¶ 73.01, at 73-4 (1992)).

Dow claims that Class Plaintiffs' proposed instruction should be rejected because it "suggests" that "the prosecution of Class Plaintiffs' claims on a classwide basis serves important policy objectives or goals." Dow Resp. at 42. No such suggestion is made in this instruction, either expressly or implicitly.

Second, Dow complains that Proposed Instruction No. 14 "implies" that, absent this class action, "there would be other 'separate identical lawsuits' filed against Dow." Dow Resp. at 42-43. In fact, the Instruction merely explains that the class action "procedure is intended to avoid having multiple plaintiffs filing separate identical lawsuits." This is a clear, concise and appropriate way to explain the rationale of class actions to a jury of laypeople. Courts have repeated a similar refrain regarding the efficiency gains of a class action.

Without any authority to support its position, Dow next claims that Proposed Instruction No. 14 is "objectionable because it informs the jury that they should 'not construe the physical absence of any class member in any way as a lack of concern or interest on his or her part as to the outcome of the litigation." Dow Resp. at 43. This language is necessary to address an obvious question that the jury will likely have regarding the presence or absence of class members at the trial. Again, this language comes directly from the jury instructions provided in *USF*.

Finally, Dow contends that "[i]f one or more class representatives elect not to participate in the trial, the jury should not be precluded from drawing inferences from that class representative's absence." Dow Resp. at 43. However, this Court has granted Class Plaintiffs' Motion In Limine No. 2562 "to preclude reference to class representatives' or class members' attendance or nonattendance at trial." Ex. 12, at 47:17-19 (Transcript of Jan. 9, 2013 in limine conference). By contrast, Class Plaintiffs' proposed instruction is consistent with that ruling.

10

      1.        **Class Plaintiffs' Response to Dow's Proposed "Class Actions" Instruction**

Dow's proposed instruction regarding class actions should be rejected. *See* Dow Resp. at 44. First, unlike Class Plaintiffs' Proposed Instruction No. 14 and *USF* Instruction No. 11, Dow's proposed instruction does not provide the necessary explanation of the class action device, which is important to provide for lay jurors unfamiliar with this procedural device.

Second, it mischaracterizes Class Plaintiffs' claims as a "single conspiracy to fix *actual prices*." *Id*. (emphasis supplied). In so doing, Dow rewrites Class Plaintiffs' allegations and invents a new requirement that the evidence must show a conspiracy to directly fix the "actual" final price paid by each customer on each transaction. Dow cites no case in support of this novel proposition. Among other evidence of the conspiracy, Class Plaintiffs will present significant evidence that Dow and the other urethane suppliers issued near simultaneous price increase announcements following a pattern of communications before or shortly after the announcements to ensure compliance with the conspiracy. Dow's proposed instruction and its reference to fixing "actual" prices may confuse the jury as to whether such evidence is relevant to their deliberations. Confusion of this sort would be highly prejudicial to Class Plaintiffs, as it is well settled that a conspiracy targeting price-increase announcements or list prices, which in turn impacts the "actual prices" paid by the purchaser, is an unlawful price-fixing conspiracy. *See, e.g., In re Flat Glass Antitrust Litig*., 385 F.3d 350, 362-63 (3d Cir. 2004) (rejecting a similar argument as "simply wrong": "PPG does not – it cannot – seriously contend that the flat glass producers increased their list prices with no intention of affecting transaction prices. '[S]ellers would not bother to fix list prices if they thought there would be no effect on transaction prices.'") (citation omitted); *In re High Fructose Corn Syrup Antitrust Litig*., 295 F.3d 651, 656 (7th Cir. 2002) (rejecting as "wrong" the argument that transaction prices matter and "list prices

are irrelevant" when determining the existence of a conspiracy).  Judge Posner aptly noted the

fatal flaw in Dow's argument when he observed that "even a bald-faced agreement to fix list

prices would not be illegal" (*id*.) if only a conspiracy to fix "actual prices" violated the Sherman

Act.

Third, Dow's proposed instruction distorts Class Plaintiffs' burden at trial.  It sets forth

an all-or-nothing and legally unfounded standard that Class Plaintiffs' conspiracy claim "must be

proven for *all* products, *all* class members and for the *entire* period of the alleged conspiracy."

Dow Resp. at 44 (emphasis supplied).  This is simply wrong.  The jury has the flexibility to

determine that Class Plaintiffs have proved all of their allegations, or only some, and for any

portion of the Class Period, and for any of the products at issue, and render a verdict accordingly.

Moreover, Dow's proposed language regarding "all class members" may lead the jury to

conclude that Class Plaintiffs must put forward individualized proof of injury with respect to

every class member in this case.  Yet, it is axiomatic that Class Plaintiffs may demonstrate

antitrust injury on a class-wide basis.  *See, e.g.*, *In re Urethane Antitrust Litig.*, 251 F.R.D. 629,

638 (D. Kan. 2008).  As explained in greater detail below in Part II.K.1, *infra*, there is no

requirement that Class Plaintiffs prove injury to "each and every" or "all" class members.

Fourth, Dow has not cited any jury instructions used previously or any model jury

instructions to supports its proposal here.  Dow's only supporting citations are Rule 23, The

Rules Enabling Act, and this Court's opinion granting class certification.  Dow Resp. at 45.  This

lack of relevant authority highlights the unprecedented nature of the all-or-nothing standards set

forth in Dow's proposed instruction.

Finally, Dow's proposed footnote concerning the Class Period is highly prejudicial,

confusing and serves no legitimate purpose.  *Id*. at 44 n.1.  The procedural history of this case is

irrelevant to the jury's deliberations.  Dow includes the footnote solely to prejudice Class Plaintiffs and to improperly insert into the jury instructions its argument that the period for which Class Plaintiffs are seeking damages is for a shorter period of time than the original class period certified by the Court.

**I.      Class Plaintiffs' Proposed Instruction No. 15 – Purpose of the Sherman Act**

This Court should adopt Class Plaintiffs' Proposed Instruction No. 15, which is a faithful adaptation of *USF* Instruction No. 13.  The jury will benefit from background concerning the purpose and importance of the Sherman Act.

Dow's criticism of Class Plaintiffs' Proposed Instruction is based on a misapplication of *Chicago Bd. of Trade v. United States*, 246 U.S. 231 (1918).  Dow improperly attempts to blur the distinction between agreements that are analyzed under the rule of reason, where the "purpose and effect" of the alleged restraint are analyzed, as in *Chicago Board of Trade,* and those that are *per se* illegal, where those concepts are not part of the analysis.  *See* Dow Resp. at 46-47.

The Supreme Court has consistently held that price-fixing conspiracies such as the one alleged here are unlawful *per se*.  *See, e.g.*, *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 647 (1980) ("It has long been settled that an agreement to fix prices is unlawful *per se*.").  In the context of this price-fixing case, Dow's references to the "purpose and effect" of the conspiracy are irrelevant.  Dow Resp. at 46-47.  As the leading antitrust commentator notes, "a per se rule condemns conduct *without proof of power, effect, or purpose.*"  Phillip E. Areeda & Herbert Hovenkamp, VII ANTITRUST LAW ¶ 1509, at 441 (3d ed. 2010) (emphasis added).  All price-fixing conspiracies are unlawful *per se* "because of their actual or potential threat to the central nervous system of the economy."  *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940).  Thus, in this price-fixing case, Class Plaintiffs' Proposed Instruction that "[a]ny

13

contract, combination, or conspiracy that has the effect of fixing, raising, maintaining, or stabilizing prices violates the Sherman Antitrust Act" is an accurate recitation of the law.

### 1.   Class Plaintiffs' Response to Dow's Proposed Instruction on the "Purpose of the Sherman Act"

Dow's proposed competing instruction purports to be based on ABA Model Antitrust Instruction A-2.  *See* Dow Resp. at 48.  Significantly, however, that model instruction does *not* contain the last sentence set forth in Dow's Proposed Instruction:  "Liability under the Sherman Act must be determined carefully because mistaken inferences of conspiracies chill the very conduct the antitrust laws are designed to protect."  Dow Resp. at 48.

In sum, Class Plaintiffs' proposed instruction will better acquaint jurors with the purpose and importance of the Sherman Act in language drawn from Supreme Court cases and accepted instructions.  Accordingly, this Court should adopt Class Plaintiffs' Proposed Instruction No. 15.

### J.   Class Plaintiffs' Proposed Instruction No. 16 – Parties' Contentions

Class Plaintiffs propose an instruction setting forth the parties' basic contentions, to be followed by the substantive antitrust instructions governing Class Plaintiffs' claims.  A concise statement of the parties' contentions is an appropriate way to introduce and provide context for the substantive instructions that follow.  The Court utilized this approach with *USF* Instruction No. 12, and Class Plaintiffs' proposed instruction closely tracks the *USF* format.  It describes the claims in a neutral fashion, without reference to any specific facts or arguments.  Class Plaintiffs' proposed description of Dow's position is taken nearly *verbatim* from *USF* Instruction No. 12. *See* Ex. 1.B at 18.

### 1.     Class Plaintiffs' Response to Dow's Proposed Instruction on "Parties' Contentions"

Dow's Proposed Instructions grossly and tendentiously mischaracterizes Class Plaintiffs' claims.  It states that "Class Plaintiffs allege" an overarching conspiracy between the *other four* urethane chemical manufacturers (BASF, Bayer, Huntsman and Lyondell) and downplays Dow's role as merely "participating in this conspiracy."  Dow Resp. at 50.  This never has been Class Plaintiffs' theory of the case.

Dow's proposed summary of its contentions is equally objectionable.  Unlike *USF* Instruction No. 12, upon which Class Plaintiffs' Proposed Instruction is based, Dow's proposed instruction is unduly argumentative and, indeed, resembles a closing argument.  *See* D. Kan. L. R. 51.1(b)(2) ("Argumentative instructions are improper, will not be given, and should not be submitted.").  The straightforward and succinct language proposed by Class Plaintiffs accurately reflects Dow's position:  "Dow denies that a conspiracy existed, and it disputes the fact and amount of any damages."

### K.     Class Plaintiffs' Proposed Instruction No. 17 – Sherman Act Elements

Class Plaintiffs propose an instruction setting forth the three essential elements required for a plaintiff to recover under Section 4 of the Clayton Act, 15 U.S.C. § 15(a), for a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  The proposed instruction is based on this Court's articulation of the elements in its *Urethanes* class-certification opinion:  The language of the first two elements is taken directly from *USF* Instruction No. 14 (with appropriate modification of the conspiracy description), and the third element is taken directly from the Court's *Urethanes* class-

certification opinion.  This classic three-element articulation is echoed by precedent from the

Tenth Circuit and numerous other Circuits.[4]

Dow's argument that "Class Plaintiffs must advance a definitive allegation – that is, they

must decide if they are alleging a conspiracy to fix, or to raise, or to stabilize prices" (Dow Resp.

at 51) is contrary to law.  Indeed, in its summary judgment opinion, this Court expressly

recognized that, under long-standing Supreme Court precedent, a horizontal price-fixing

conspiracy may have "the purpose or effect of raising, depressing, fixing, pegging, or stabilizing

---

[4] *See World of Sleep, Inc. v. La-Z-Boy Chair Co*., 756 F.2d 1467, 1478 (10th Cir. 1985) (to recover under Section 4 of the Clayton Act, a plaintiff "must prove an antitrust violation, the fact of damage or injury, and measurable damages"); *see also In re Scrap Metal Antitrust Litig*., 527 F.3d 517, 532 (6th Cir. 2008) ("An antitrust plaintiff seeking treble damages under section 4 of the Clayton Act must prove an antitrust violation, fact of damage or injury, and measurable damages."); *In re New Motor Vehicles Canadian Exp. Antitrust Litig*., 522 F.3d 6, 19 n.18 (1st Cir. 2008) ("To establish an antitrust claim, plaintiffs typically must prove (1) a violation of the antitrust laws, (2) an injury they suffered as a result of that violation, and (3) an estimated measure of damages."); *Deiter v. Microsoft Corp.,* 436 F.3d 461, 467 (4th Cir. 2006) ("To establish an antitrust violation, a plaintiff would have to prove '(1) a violation of the antitrust law, (2) direct injury to the plaintiff from such violations, and (3) damages sustained by the plaintiff.'") (citation omitted); *Blades v. Monsanto Co*., 400 F.3d 562, 566 (8th Cir. 2005) ("To recover damages under section four of the Clayton Act, plaintiffs must prove defendants violated the antitrust laws and that plaintiffs suffered some resulting injury, and plaintiffs must estimate the measure of damages."); *Am. Bearing Co., Inc. v. Litton Indus., Inc*., 729 F.2d 943, 948 (3d Cir. 1984) ("As an antitrust plaintiff seeking treble damages under section 4 of the Clayton Act, 15 U.S.C. § 15 (1976), American must prove three elements: (1) an antitrust violation, in this case a violation of section 2 of the Sherman Act; (2) fact of damage or injury; and (3) measurable damages."); *Chrysler Credit Corp. v. J. Truett Payne Co., Inc.*, 670 F.2d 575, 579 (5th Cir. 1982) ("It is well established that, in order to recover treble damages under Section 4 of the Clayton Act, a plaintiff must prove (1) a violation of the antitrust laws, (2) cognizable injury attributable to the violation, and (3) at least the approximate amount of the damage.").

Class Plaintiffs' "elements" instruction is consistent with the language in the Court's summary judgment decision (*Urethane*, 2012 WL 6610878, at *2) and in the only case cited by Dow.  *See Cayman Exploration Corp. v. United Gas Pipe Line Co*., 873 F.2d 1357, 1361 (10th Cir. 1989) ("To state a claim of horizontal price-fixing, plaintiff must allege: (1) the existence of an agreement, combination or conspiracy, (2) among actual competitors (i.e., at the same level of distribution), (3) with the purpose or effect of 'raising, depressing, fixing, pegging, or stabilizing the price of a commodity' (4) in interstate or foreign commerce.").

the price of a commodity." *Urethane*, 2012 WL 6610878, at *2.[5]  There is no requirement that

the conspiracy's effect on prices be described using a single verb.  As a case cited by Dow

recognizes, Dow is not entitled to dictate to Class Plaintiffs a particular theory of the case; rather,

Class Plaintiffs are "entitled to have the jury instructed consistent with [their] theory of the

case…" *Margolies v. McCleary*, 447 F.3d 1115, 1122 (8th Cir. 2006).  The evidence will show,

as Class Plaintiffs' instruction provides, "a conspiracy among Dow and the other urethane

manufacturers to fix, raise, or stabilize the prices for urethane chemicals sold in the United

States."  Dow's insistence that the jury be instructed that Class Plaintiffs have alleged only a

conspiracy to "fix" the "actual prices" is inconsistent with decades of precedent adopting a

variety of terms to describe the manner in which prices may be manipulated in violation of

Section 1 of the Sherman Act.  As the Seventh Circuit has stated, "[a] district court has

considerable discretion in phrasing, organizing, and adapting jury instructions to the specific

needs of the case, as long as the instructions fairly and accurately summarize the law and have

support in the record."  *United States v. Benabe*, 654 F.3d 753, 775 (7th Cir. 2011).  Class

Plaintiffs' proposed formulation – that Dow conspired to "fix, raise or stabilize prices" is

appropriate here.

---

[5] *Accord, Socony-Vacuum*, 310 U.S. at 223 (1940) ("Under the Sherman Act a
combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or
stabilizing the price of a commodity in interstate or foreign commerce is illegal per se."); *United
States v. Container Corp.*, 393 U.S. 333, 337 (1969) ("Stabilizing prices as well as raising them
is within the ban of § 1 of the Sherman Act."); *Elliott Industries Ltd. Partnership v. BP America
Production Co.*, 407 F.3d 1091, 1123 n.29 (10th Cir. 2005) (horizontal price-fixing must have
"the purpose or effect of raising, depressing, fixing, pegging, or stabilizing the price of a
commodity") (citation omitted); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust
Litig.*, 681 F. Supp. 2d 141, 165-66 (D. Conn. 2009) (same); *Fears v. Wilhelmina Model Agency*,
Inc., No. 02 Civ. 4911(HB), 2004 WL 594396, at *6 (S.D.N.Y. Mar. 23, 2004) (same); *In re
Medical X-Ray Film Antitrust Litig.*, 946 F. Supp. 209, 215-16 (E.D.N.Y. 1996) (same).

17

1.      **Class Plaintiffs' Response to Dow's Proposed
        Instruction on Sherman Act Elements**

Dow's Sherman Act Elements instruction is highly problematic for several reasons.

*First*, Dow does not even follow the model ABA instruction on which its instruction purports to

be based.  Rather, Dow adds a new element that provides an incorrect statement of the law:  that

Class Plaintiffs must prove "the amount of damages *each and every* class member sustained."

Dow Resp. at 54 (emphasis added).  Dow's cited source – the ABA model instructions – omits

the "each and every" language inserted by Dow.  Nor does Dow's "each and every" terminology

have any support in the law.

It is well settled that a class of antitrust plaintiffs may prove the measure of damages on

a class-wide basis.[6]  Dow is well aware of this black-letter law; indeed, it opposed class

certification by arguing that Class Plaintiffs would be *unable* to prove damages on a class-wide

basis at trial.  *See Urethane Antitrust Litig.,* 251 F.R.D. at 631 ("BASF, Dow, Huntsman, and

Lyondell oppose class certification primarily on the ground that plaintiffs have failed to show

that antitrust injury and damages are susceptible to common proof on a class-wide basis, and

therefore they contend that predominance and superiority are lacking.").

Moreover, as this Court instructed the jury in *Law v. NCAA*, there is no requirement that

"each and every" class member suffer injury:

> [Y]ou may conclude as a matter of just and reasonable inference from the proof of
> defendant's antitrust violation and its tendency to injure plaintiffs in their business
> or property, and from any evidence of a decline in the compensation of restricted

---

[6] *See, e.g.*, 6 Newberg on Class Actions § 18.53 (4th ed. 2002) ("Class proof of
damages, either by an aggregate lump sum award to the class as a whole or by application of
mechanical formulae or statistical methods to individual class members' claims, has received
approval in several antitrust cases.") (citations omitted); *see also Scrap Metal*, 527 F.3d at 533-
35 (approving jury verdict based on aggregate class-wide proof of antitrust injury and damages);
*Behrend v. Comcast Corp.,* 655 F.3d 182, 205-06 (3d Cir. 2011), *cert. granted in part*, 133 S. Ct.
24, 183 L. Ed. 2d 673 (U.S. 2012) (accepting generalized expert proof of classwide impact).

earnings coaches which is not shown to be attributable to other causes, that the NCAA's wrongful act caused injury to members of the class. Under this test, *so long as injury to the class was widespread, the fact that certain class members may have escaped injury altogether would not defeat a finding that members of the class suffered injury.*

*Law v. NCAA*, 185 F.R.D. 324, 332 n.10 (D. Kan. 1999) (emphasis added).  Contrary to Dow's suggestion, the law is settled that antitrust injury-in-fact (i.e., causation) can be established on a class-wide basis using generalized proof at trial; indeed, the Court recognized as much in its opinion granting class certification.[7]  The instructions should reflect this longstanding rule rather than introducing the new and unprecedented burdens proposed by Dow.

Likewise, there is no requirement that Class Plaintiffs prove the amount of damages for "each and every" Class member.  Rather, "damages in an antitrust class action may be determined on a classwide, or aggregate, basis, . . . where the computerized records of the particular industry, supplemented by claims forms, provide a means to distribute damages to injured class members in the amount of their respective damages."  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 526 (S.D.N.Y. 1996); *see also Scrap Metal*, 527 F.3d at

---

[7] *See Urethane*, 251 F.R.D. at 638 ("evidence of a standardized pricing structure, which (in light of the alleged conspiracy) presumably establishes an artificially inflated baseline from which any individualized negotiations would proceed, provides generalized proof of class-wide impact"); *see also In re Univ. Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 675 (D. Kan. 2004) ("if a plaintiff proves that the alleged conspiracy resulted in artificially inflated list prices, a jury could reasonably conclude that purchaser who negotiated an individual price suffered some injury"); *Scrap Metal*, 527 F.3d at 533-35 (approving generalized expert proof of class-wide injury); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869, Misc. No 07-489 (PLF), 2012 WL 2870207, at 41 (D.D.C. June 21 2012) (surveying categories of generalized proof that can be used to establish class-wide injury, including regression analysis, lockstep price announcements, and expert market structure analysis); *In re Master Key Antitrust Litig.*, 528 F.2d 5, 12 n.11 (2d Cir. 1975) ("[I]f the appellees establish . . . . that the defendants engaged in an unlawful national conspiracy which had the effect of stabilizing prices above competitive levels, and further establish that the appellees were consumers of that product, we would think that the jury could reasonably conclude that appellants' conduct caused injury to each appellee"); *see generally Bigelow v. RKO Pictures, Inc.*, 327 U.S. 251, 264 (1946) (antitrust injury can be established through "just and reasonable inference" including evidence of price changes "not shown to be attributable to other causes").

534 (6th Cir. 2008) (same).  This is precisely what Class Plaintiffs intend to do – prove damages

on a classwide basis and "distribute damages to injured class members in the amount of their

respective damages" as determined using claim forms.[8]

Dow's "each and every" formulation also runs afoul of the settled legal principle that a

plaintiff's burden in presenting evidence of damages is relaxed.  *J. Truett Payne Co. v. Chrysler

Motors Corp.*, 451 U.S. 557, 567 (1981).  An antitrust plaintiff need only introduce evidence

sufficient for a jury to estimate reasonably (as opposed to precisely) the amount of damages.

*Bigelow*, 327 U.S. at 264-65.  As this Court has recognized:

> [The courts'] willingness to accept a degree of uncertainty in fixing the amount of
> damages rests in part on the difficulty of ascertaining business damages, in that
> the vagaries of the marketplace usually deny us sure knowledge of what plaintiff's
> situation would have been in the absence of the defendant's antitrust violation.
> [This] willingness also rests on the principle that it does not come with very good
> grace for the wrongdoer to insist upon specific and certain proof of the injury
> which it has itself inflicted.

*Law v. NCAA*, 5 F. Supp. 2d 921, 929 (D. Kan. 1998) (quotations and citations omitted).  In sum,

Dow's "each and every" language should be rejected.

*Second*, Dow seeks to instruct the jury that there must be an agreement "to *fix* the *actual*

prices" of urethane products.  As set forth above, Class Plaintiffs have long alleged that Dow and

the other urethane chemical manufacturers did more than simply "fix" prices and therefore

Dow's proposed limitation of Class Plaintiffs' claims to the "fixing" of prices is unwarranted.

Moreover, the novel term "actual prices" is vague, undefined, misleading and only will confuse

the jury.  *See* discussion above at Part II.H.1, concerning Dow's proposed instruction on Class

Actions.

---

[8] As the Court is aware, Class Plaintiffs have used claim forms to successfully administer
two separate allocations and distributions of settlement proceeds to Class members.

Third, there is no support for Dow's instruction that "Dow personnel" – as opposed to "the defendant" or "Dow" – was the party to the conspiracy.  *See* discussion above at Part II.F, concerning "Corporations" instruction No. 10.

Finally, Dow's specific reference to each of the four separate products rather than "urethane chemicals" – the shorthand used throughout the instructions – serves no purpose other than to attempt to improperly distract the jury.  After a lengthy trial and after hearing several pages of instructions, the jury will be familiar with the products at issue and will not need them repeated in every instruction.

**L.     Class Plaintiffs' Proposed Instruction No. 18 – Sherman Act Conspiracy**

Class Plaintiffs' Instruction No. 18 – Sherman Act Conspiracy – is a modified version of *USF* Instruction No. 15 (Ex. 3).  In addition to shortening the instruction, Class Plaintiffs sought to make clear that an antitrust conspiracy could be "an agreement or a unity of purposes or common design and understanding."  This modified language conforms to the language used by the Supreme Court for decades to define illegal conspiracy under the Sherman Act.  *See, e.g., Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984) ("A §1 agreement may be found when the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement"); *see also United States v. Suntar Roofing*, 897 F.2d 469, 474 (10th Cir. 1990) (an unlawful antitrust conspiracy is "an agreement or understanding between competitors").  Given Dow's argumentative insistence throughout these proceedings that Class Plaintiffs must show some type of "formal" agreement, Class Plaintiffs believe that it is important that this Court include within the instructions the settled law that Sherman Act collusion goes beyond formal agreement; and the language we propose from *Copperweld* provides that point.

21

The language is also appropriate because witnesses have testified about the urethanes conspiracy using both the term "agreement" and "understanding."  *Compare Urethane*, 2012 WL 6610878, at *5 ("Ms. Barbour testified that on more than ten occasions, Mr. Levi stated that he had met with competitors Bayer and BASF and reached agreements to set prices and make price increases stick") *with id.* at *6 (""Gerard Phelan, a Bayer business manager responsible for MDI, testified that Mr. Friedrich had told him of an understanding Bayer had with competitors regarding MDI prices.").  Indeed, the ABA Model Instructions (on which the original *USF* instruction was based) state that "[t]he language of the instructions in this section should be tailored to the terminology used by the parties at trial, *i.e.*, the terminology of conspiracy, or of agreement or mutual understanding."  ABA Model Jury Instructions in Civil Antitrust Cases, at B-25 (2005) (Ex. 13).

Dow did not specifically object to these particular modifications, but instead raised other objections to Class Plaintiffs' Proposed Instruction No. 18 and proposed an alternative conspiracy instruction of its own.

First, Dow takes issue with the first sentence which states that Class Plaintiffs allege a conspiracy to "fix, raise or stabilize the prices of urethanes chemicals."  As stated above with respect to the Class Plaintiffs' proposed Instruction No. 17 on Sherman Act elements, Dow is simply wrong when it claims the instructions must refer only to a conspiracy to "fix" prices, and omit references to "rais[ing]" or "stabiliz[ing]" prices.  *See* Part II.K, *supra*.

 Second, Dow argues that the instruction is misleading because it fails to set forth the four chemical products and the time period at issue.  By this point in the case and instructions, both things will be clear to the jury and there is no reason why the product categories and time period need to be repeated every time.

Third, without identifying anything specific, Dow claims that "many statements" in the proposed Instruction are repetitive or unnecessary.  Class Plaintiffs' Proposed Instruction is a shortened version of *USF* Instruction No. 15 and, thus, Dow's objection is unfounded.

Fourth and finally, Dow identifies two statements that it claims are unhelpful and may confuse the jury.  Dow Resp. at 57.  But both statements are used not only in the *USF* instruction, but in other antitrust cases as well as the ABA Model Rules. *See, e.g., LCD* Instructions at 10-11 (Ex. 5); ABA Model Jury Instructions in Civil Antitrust Cases, Instruction at B-2 to B-4 (2005) (Ex. 13).

In short, Dow provides no good reason why Class Plaintiffs' proposed instruction on "Sherman Act Conspiracy" should not be given to the jury.

### 1.     Class Plaintiffs' Response to Dow's Proposed Instruction – Sherman Act – Definition of Conspiracy

Dow's proposed instruction is far from the "more accurate and balanced statement of the law" that it claims. Dow's Resp. at 57.  Instead, Dow selectively uses portions of *USF* Instruction No. 15 and then adds language of its own in an attempt to mislead the jury into believing that the same type of evidence that Dow considers to be needed in a contract case also is needed here.  The underlined language below is particularly pernicious in this regard:

> To do this, you must determine not only whether there was an agreement, but also what the agreement entailed.  Such an agreement must be proven to have actually existed, and been manifested and specific.
>
> Agreement is the essence of conspiracy.  An agreement is a meeting of the minds in which each party makes a conscious commitment to a common scheme.  It is not enough that each party expected or anticipated how others might or would act.  Each party must understand that the other parties represented they will in fact live up to their commitments.  These commitments must be made in exchange for one another.  One party's decision to do something that another party wants is not sufficient.  Each party's decision must be made by reason of the other party's decision to make a commitment in exchange.

> For there to be a conspiracy, the agreement must have a common object or common purpose.  That object or purpose must be unlawful itself, or it must be to achieve something lawful by unlawful means.  For you to find that an agreement existed, <u>you must find that it was sufficiently clear and manifest for there to be a meeting of the minds on all essential terms.</u>

Dow Resp. at 58-59.  Dow's proposed instruction is nothing more than a rehashing of its misguided oral argument on summary judgment where it attempted to insert commercial contract law wholesale into this case.  *Compare* Dow's Proposed Instruction *with* Summary Judgment Argument Transcript at 12-16 (Ex. 14).  Notably, Dow's commercial contract law argument cannot be found in the hundreds of pages of summary judgment briefs submitted by Dow, and thus apparently did not occur even to Dow until the oral argument.

Dow's proposed language is not found in the jury instructions that it cites and for good reason:  it is contrary to well-settled antitrust principles.  As Areeda explains, "[t]he question is not so much whether a 'meeting of the minds' in the common law contract sense existed as whether these are the types of behavior that the law should suppress."   Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 307, at 99 (Supp.  2012).  *See also United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 208 (1968) (reversing dismissal of price-fixing complaint; "In interpreting the antitrust laws, we are not bound by formal conceptions of contract law.  We must look at the economic reality of the relevant transactions."); *Sunny Hill Farms Dairy Co. v. Kraftco Corp.*, 381 F. Supp. 845, 852-53 (E.D. Mo. 1974) (rendering judgment for plaintiffs following bench trial; "Section 1 of the Sherman Act refers to a 'contract, combination . . . or conspiracy in restraint of trade . . .'  To ascertain the meaning of these terms resort must be made to the common law.  The traditional definition of the term 'contract' is an agreement, express or implied, based upon a certain consideration, to perform a particular act.  However, these formal requirements do not delimit the concept of contract in its statutory

context.  Rather, case law teaches that such requisites should not be literally applied so as to determine if the particular conduct is within the framework of Section 1…. [T]he quintessential yardstick for conduct deemed violative of Section 1 is whether or not there is a collaborative element present.").

If Dow's proposed instruction were given, the jury would be left with the erroneous impression that there needs to be evidence of the parties' communications of offer, acceptance, and consideration on precise terms relating to specific prices to specific customers in order for it to return a verdict for the Plaintiffs.  Some of the very cases cited by Dow in support of this instruction make clear that it is wrong.  For example, in *Flat Glass*, the Court stated that evidence of an agreement not to compete "may involve customary indications of traditional conspiracy, or proof that the defendants got together and exchanged assurances of common action or otherwise adopted a common plan even though no meetings, conversations, or exchanged documents are shown."  *Flat Glass Antitrust Litig.,* 385 F.3d at 361 (internal quotes and citations omitted).  Similarly, in *Fructose*, the Court recognized that "most cases are constructed out of a tissue of [ambiguous] statements and other circumstantial evidence . . . ."  *Fructose*, 295 F.3d at 662.[9]

---

[9]  Additional cases and jury instructions cited by Dow similarly recognize that evidence of an explicit and specific agreement is not required to show an antitrust conspiracy.  *See Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1299-1300 (11th Cir. 2003) ("'It is only in rare cases that a plaintiff can establish the existence of a conspiracy by showing an explicit agreement; most conspiracies are inferred from the behavior of the alleged conspirators' and from other circumstantial evidence (economic and otherwise), such as the barriers to entry and other market conditions." (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 569 (11th Cir. 1998)); *BanxCorp v. Bankrate, Inc.*, 2011 WL 6934836, at *8 (D.N.J. Dec. 30, 2011) ("Certainly, 'an actionable horizontal conspiracy does not require direct communication among the competitors.'") (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 331 (3d Cir. 2010)); *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1082 (10th Cir. 2006) (acknowledging that an antitrust conspiracy can be shown by direct or by circumstantial evidence); *Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1257

Dow's proposed instruction conflicts with Tenth Circuit authority.  For example, in

*Suntar Roofing*, the Tenth Circuit held that "[w]hile a conspiracy involves an agreement to

violate the law, it is not necessary that the persons charged meet each other and enter into an

express or formal agreement, *or that they stated in words or writing what the scheme was or how

it was to be effected*." *Suntar Roofing*, 897 F.2d at 474-75 (emphasis added).  Indeed, "[t]o be a

member of the conspiracy a defendant need not know all of the other members, *nor all of the

details of the conspiracy*, nor the means by which the objects were to be accomplished." *Id.*

(emphasis added).  *See also United States v. Metropolitan Enter., Inc.*, 728 F.2d 444, 450-51

(10th Cir. 1984) (affirming convictions of defendants in criminal antitrust case; "A co-

---

(10th Cir. 2006) (same); *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir.
1992) (in a vertical conspiracy action, recognizing that a conspiracy can be established through
direct or circumstantial evidence); *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1163-
64 (9th Cir. 1988) (same); *In re Nat'l Ass'n of Music Merchants, Musical Instruments & Equip.
Antitrust Litig.*, 2012 WL 3637291, at *1-2 (S.D. Cal. Aug. 20, 2012) (explaining that "an
agreement, conspiracy, or combination would involve Defendants communicating with one
another *in some fashion* and agreeing on a course of action.") (emphasis added); *United States v.
Ashland-Warren, Inc.*, 537 F. Supp. 433, 442 (M.D. Tenn. 1982) (*criminal* case recognizing that
"in the antitrust context, a tacit understanding created by a long course of conduct may constitute
an unlawful agreement without any personal communications among the parties") (citations
omitted); *Socony*, 310 U.S. at 177 (affirming the defendants' *criminal* convictions and noting
that "[t]he alleged conspiracy is not to be found in any formal contract or agreement"); *In re
Univ. Serv. Fund Tel. Billing Practices Litig.*, No. 02-MD01468-JWL, Doc. 1048 (instructions)
[pp. 17-18] ("To establish the existence of a conspiracy, the evidence need not show that its
members entered into any formal or written agreement; that they met together; or that they
directly stated what their object or purpose was, or the details of it, or the means by which they
would accomplish their purpose. The agreement itself may have been entirely unspoken. . . .
Direct proof of an agreement may not be available. A conspiracy may be disclosed by the
circumstances or by the acts of the members."); *United States v. Stora Enso N.A.*, 3:06CR323-
CFD (D. Conn. July 19, 2007), Jury Charge at 629 (Ex. 15) (recognizing in *criminal* jury
instructions that "[i]t is possible to become a member of a conspiracy without full knowledge of
all the details of the conspiracy. It is not necessary that a defendant be fully informed as to all the
details of the conspiracy or its scope in order to be a member.").

conspirator need not know of the existence or identity of the other members of the conspiracy or the full extent of the conspiracy.  The agreement need not be shown to have been explicit.") (citations omitted); *Reazin v. Blue Cross and Blue Shield of Kansas, Inc.*, 663 F. Supp. 1360, 1425 (D. Kan. 1987) (denying defendants' motion for judgment notwithstanding the verdict in case alleging Sherman Act violations; "It is not essential that each conspirator have knowledge of the exact details of the conspiracy or the means to be used.  Nor is it required that each conspirator participate in or have knowledge of all the operations of the conspiracy.") (citations omitted).

Finally, in the last paragraph of Dow's proposed instruction, it suggests instructing the jury on certain ways parties may fix prices:  "establish the same price"; establish "range or levels" or agree upon a "formula."  Dow Resp. at 59-60.  The proposed paragraph is inappropriate because it may leave the jury with the impression that it can only find price fixing if one of these specific methods is present.  By contrast, this Court already has held that a reasonable jury could find a price-fixing conspiracy based on evidence presented by Class Plaintiffs, including, *inter alia*, Ms. Barbour's testimony of an agreement to raise prices and stick with the price increases; Mr. Stern's testimony of future pricing conversations with his competitors; documents suggestive of a price-fixing conspiracy and communications near in time to price increases.  *See Urethane*, 2012 WL 6610878, at *5-8.

Simply put, Dow's proposed instruction finds no support in the law, constitutes a marked and unwarranted departure from *USF* Instruction No. 15 and similar "conspiracy" instructions routinely given in price-fixing cases, and therefore should be rejected.

### M.    Class Plaintiffs' Proposed Instruction No. 19 – Evidence of Similarity

Class Plaintiffs' Proposed Instruction No. 19 relates to parallel pricing and is based on the instruction that was given in the recent *LCD* trial, which in turn was based on the Model

ABA instruction.  *See LCD* Instructions at 11-12 (Ex. 5); ABA Model Jury Instructions in Civil Antitrust Cases, at B-30 (2005) (Ex. 13).  Plaintiffs made two minor modifications.

First, Plaintiffs added the first paragraph to explain that the similarity of conduct in this case relates to price increase announcements.  *See Benabe*, 654 F.3d at 755 ("A district court has considerable discretion in phrasing, organizing, and adapting jury instructions to the specific needs of the case, as long as the instructions fairly and accurately summarize the law and have support in the record.").   This is appropriate where, as here, "the plaintiffs have provided evidence that throughout the alleged conspiracy period, the alleged conspirators announced identical price increases."  *Urethane*, 2012 WL 6610878, at *7.  The paragraph does not imply that the Court has adopted a certain interpretation of the evidence as Dow contends, but rather puts the instruction into context.

Second, Plaintiffs struck two sentences from the third paragraph because those sentences are redundant of statements already made in that paragraph stating that parallel pricing alone does not establish a Sherman Act violation.  Dow erroneously claims that the removal of those sentences leads to an unbalanced instruction.  To the contrary, the Instruction as proposed by Class Plaintiffs would provide the jury with a succinct, understandable and balanced synopsis of the antitrust law relating to parallel pricing and conscious parallelism.  In some antitrust cases, parallel pricing and conscious parallelism are the centerpiece of the dispute between the parties. Not so here.  As this Court found in its summary judgment opinion, Class Plaintiffs have put forth both direct evidence of a conspiracy, and parallel pricing is one of only eight types of circumstantial evidence that will be presented.  *Urethane*, 2012 WL 6610878, at *5-8.

### 1. Class Plaintiffs' Response to Dow's Proposed Instruction on "Oligopoly"

Instead of proposing revisions to Class Plaintiffs' Proposed Instruction on "Evidence of Similarity," Dow proposes its own instruction on "Oligopoly."  *See* Dow Resp. at 63 & 116.  Dow's proposed instruction is both unnecessary and unbalanced.  It is unnecessary because both sides' economic experts will explain to the jury what an oligopoly means and there is no reason for the Court to re-plow that ground.  Dow's instruction is unbalanced and inappropriate because it presents only Dow's theory of the significance of the urethanes industry being an oligopoly.  *See* D. Kan. L. R. 51.1(b)(2) ("Argumentative instructions are improper, will not be given, and should not be submitted").[10] As even Dow must acknowledge, an oligopolistic market is conducive to collusion and provides a motive for a conspiracy.  *See Urethane*, 2012 WL 6610878, at *5 ("[T]he parties do not dispute that the structure of the industry . . . was conducive to a price-fixing conspiracy. Thus, defendants here had a motive to enter into a price-fixing conspiracy.").  Yet, this point is nowhere to be found in Dow's proposed instruction.  Moreover, as Dow's economic expert Dr. Elzinga has testified, the theory of oligopolistic interdependence that Dow advances in its proposed instruction is undermined

---

[10] *See also United States v. Maxwell*, 579 F.3d 1282, 1304-05 (11th Cir. 2009) (affirming defendant's conviction of mail fraud, wire fraud, and conspiracy; holding that defendant's "proposed jury instructions contain partisan and argumentative statements of law and fact, and the district court was not obliged to present them to the jury in that form"); *United States v. Kelley Tech. Coatings, Inc.*, 157 F.3d 432, 441 (6th Cir. 1998) ("A district court may properly refuse to give a requested theory of defense when the requested jury charge is partisan and aspires to place the defendants' desired factual findings into the mouth of the court.  The district court correctly observed that the proposed defense theory instructions offered by Defendant Sumner and Kelley were 'virtually a closing argument for the defense in which you were laden with facts most favorable to the defendants.'"); *United States v. Silverman*, 745 F.2d 1386, 1400 (11th Cir. 1984) (affirming obstruction of justice conviction; "The court may disregard a requested instruction that merely emphasizes a certain phase of the evidence.  The court, here, committed no error because the requested instruction only commented on evidence favorable to the defendant without presenting a true legal defense.") (citations omitted).

where, as here, the evidence demonstrates that the executives were meeting and discussing prices. Ex. 16, Elzinga Dep. at 290-91 (testifying that under the theory of oligopolistic interdependence: "you don't meet with your rival to talk about it.  You don't meet with your rival to agree upon it . . .  but the whole idea of the theory is that you don't have meetings . . .  Once you have the meetings you come – that takes it out of the realm of that particular theoretical apparatus").  Again, this important point is not mentioned in Dow's one-side instruction.  *See* Dow Resp. at 116.

Dow's "Oligopoly" instruction represents an unbalanced presentation of issues that, at bottom, are economic rather than legal.  The parties' respective experts will address these matters at trial, and the jury's evaluation of that evidence should not be skewed by a one-sided and unnecessary instruction adopting Dow's (but not Class Plaintiffs') position on oligopoly theory.

Finally, Dow once again proposes to include the *Matsushita* "tends to exclude" language (*see* Dow Resp. at 116), just as it did in its proposed Instructions on "Evidence of Conspiracy" (*id*. at 114), and in its arguments against Class Plaintiffs' Proposed Instruction No. 4 (*id*. at 27), Instruction No. 5 (*id*. at 31) and Instruction No. 21 (*id*. at 67).  As described more fully above, the *Matsushita* standard is inappropriate in the context of this case, where the Court has determined that summary judgment should be denied on the basis of both direct and circumstantial evidence.  *See* Part II.D, *supra*.

### N.     Class Plaintiffs' Proposed Instruction No. 20 – Exchange of Pricing Information

Class Plaintiffs' Instruction No. 20 – Exchange of Pricing Information – is taken nearly verbatim from an instruction given in the *Vitamins* trial.  *See Vitamins* Instructions, Tr. at 1354:14 to 1355:2 (Ex. 4); *see also* Ex. 1.B at 27.  Although Dow is correct that the Foreign Trade Antitrust Improvements Act ("FTAIA") was an issue in *Vitamins*, the instruction did not

relate to the FTAIA issue of the effect of a foreign conspiracy on the U.S. market.  Moreover, a similar instruction was given in the recent *LCD* case and also appears in the ABA model instructions.  *See LCD* Instructions at 14 (Ex. 5); ABA Model Jury Instructions in Civil Antitrust Cases, Instruction at B-32 to B-33 (2005) (Ex. 13).

Class Plaintiffs' Proposed Instruction does not improperly imply that an exchange of price information is illegal in and of itself, as Dow contends.  To the contrary, the instruction explains to the jury that it may (although it does not have to) find that price information exchanges demonstrate a conspiracy.  Indeed, in its summary judgment opinion, the Court held that the jury could rely on, among other things, Larry Stern's testimony about his future pricing communications with competitors.  *Urethane*, 2012 WL 6610878, at *6.  Such communications represent classic evidence of price-fixing and Class Plaintiffs' instruction reflects that established legal rule.  *Id.*[11]

### 1.     Class Plaintiffs' Response to Dow's Proposed Instruction – Evidence of Conspiracy

Dow's proposed instruction on "Evidence of Conspiracy" is unbalanced, inconsistent with governing legal standards, and will cause jury confusion.

As a threshold matter, the proposed instruction violates Kansas Local Rule 51.1(b)(3) calling for each instruction to "embrace a single legal proposition."  Instead of setting forth a single legal proposition in a neutral fashion, the proposed instruction describes to the jury only certain selected types of evidence and then describes how that evidence could be interpreted in Dow's favor.  This is not an appropriate use of jury instructions, but rather should be left for closing arguments.  *See* D. Kan. L. R. 51.1(b)(2) ("Argumentative instructions are improper, will

---

[11] *See also, e.g., In re Publication Paper Antitrust Litig.*, 690 F.3d 51, 64-65 (2d Cir. 2012) (characterizing similar evidence as "strong, if not irrefutable, evidence of a conspiracy"); *EPDM*, 681 F. Supp. 2d at 174-76.

not be given, and should not be submitted"); *see also* cases cited in footnote 10, *supra*, at Part II.M.1.

      If an instruction on "evidence of conspiracy" were appropriate, it would need to include all of the types of evidence presented by Class Plaintiffs, both direct and circumstantial.  The Court's summary judgment opinion sets forth the direct evidence and eight different types of circumstantial evidence that Class Plaintiffs will offer.  *See Urethane*, 2012 WL 6610878, at *5-8.  In addition, the instruction would need to explain how the jury could view the evidence in Class Plaintiffs' favor, not just Dow's favor.  Put differently, an instruction of this nature would effectively swallow many other carefully tailored instructions, while trampling on the jury's role in applying the law to particular facts, which is precisely why "closing argument" instructions of this sort are prohibited under the rules.  *See* D. Kan. L. R. 51.1(b)(2) ("Argumentative instructions are improper, will not be given, and should not be submitted.").

      Given these fundamental flaws in the instruction, the Court need not proceed further to address the additional major problems outlined below.

      The first two paragraphs of the instruction are taken from selected portions of *USF* Instructions No. 15 and 16, but they are misleading, as Dow takes them out of context.

      In the third paragraph, Dow seeks to instruct the jury that communications concerning future pricing can take place for competitive reasons and that the jurors may only rely on such future pricing communications as evidence of a conspiracy if they find that the communication did not take place for lawful reasons.  This is a one-sided and erroneous statement of the law relating to future pricing communications.[12]  Dow's paragraph on future pricing communications

---

[12] *See, e.g., Urethane*, 2012 WL 6610878, at *6 (denying Dow's motion for summary judgment because, *inter alia*, the competitors "discussed future pricing, their companies' intent to raise prices, and the need for competitors to support their price increases"); *Flat* Glass, 385

also is inappropriate because Dow has not presented any evidence that there was some legitimate or procompetitive justification for the future pricing communications at issue here. *See, e.g., McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 744 (8th Cir. 2010) ("The jury should receive instructions on issues supported by competent evidence in the record; the trial court is not required to instruct on issues that do not find support in the record.'). For example, any suggestion that the types of future customer pricing communications described by Larry Stern were remotely legitimate, procompetitive or acceptable under the Sherman Act would be incorrect as a matter of law. Dow has not, and cannot, offer any plausible evidence or argument to the contrary. Yet Dow's proposed language would instruct the jury that coordinating future customer prices with competitors in this fashion can somehow represent legitimate behavior. Decades of Section 1 authority (indeed the very premise of the *per se* rule against price-fixing) holds otherwise.

Dow's proposed paragraph on telephone and other communications is likewise unbalanced as it would only instruct the jury on how such evidence could be viewed in Dow's favor.

The final two paragraphs of Dow's instruction would only confuse the jury. Dow is wrong when it states the evidence must be considered both separately and as a whole: "the character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *Continental Ore v. Union Carbine & Carbon Corp.*, 370 U.S. 690, 699 (1962). Indeed, in its opinion denying Dow's motion for

---

F.3d at 366 (reversing summary judgment, court cited memo discussing meeting with competitor's executive at a trade fair "who assured me that they were fully supportive of the price increase proposition."); *Fears*, 2004 WL 594396, at *4 (denying summary judgment where defendants discussed current and future pricing at trade association meetings); *Medical X-Ray Film*, 946 F. Supp. at 213-14, 218 (denying summary judgment, where executive met and "exchanged pricing information" with a competitor at trade association meetings).

summary judgment, the Court rejected Dow's argument that "every piece of evidence" should be considered separately, and instead emphasized that the evidence "as a whole" must be considered.  *Urethane*, 2012 WL 6610878, at *4.

Finally, and once again, as described above, the "tends to exclude" language from *Matsushita* proposed by Dow (Dow Resp. at 114) has no place in jury instructions in this case. *See* Part II.D, *supra.*

### O.      Class Plaintiffs' Proposed Instruction No. 21 – Plus Factors

Plaintiffs' proposed instruction explains to the jury some of the types of circumstantial evidence that are present here and explains to the jury that it may or may not infer from this circumstantial evidence that parallel pricing was the result of a price-fixing conspiracy.  During the meet and confer process, Class Plaintiffs added Dow's proposed instruction on Opportunities to Conspire (*see* Dow Resp. at 110), which is based on *USF* Instruction No. 17, as the second paragraph of the instruction.

Class Plaintiffs believe its proposed instruction is more appropriate than the one proposed by Dow.  It is misleading to ask the jury to focus unduly on mere "opportunities to conspire." When it comes to conspiracy evidence, the facts here are materially different from *USF*, where there was no direct evidence of conspiracy.  *See Univ. Serv. Fund Tel. Billing Practices*, 2008 U.S. Dist. LEXIS 107727, at *77-78.  Moreover, "opportunity to conspire" was one of three categories of circumstantial evidence identified by the Court in its *USF* summary judgment opinion.  *Id.* at *77-78, *83.  By contrast, "opportunity to conspire" was one of the *eight* types of circumstantial evidence identified by this Court in its summary judgment opinion here (*Urethane*, 2012 WL 6610878, at *6-8), and the jury instructions should reflect that.  *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 924 n.2 (3d Cir. 1986) ("The sole question for the

trial judge and a reviewing court is whether the instructions properly set forth the applicable law in light of *all* the evidence introduced at trial.") (emphasis in original).[13]

### P.     Class Plaintiffs' Proposed Instruction No. 23 – Evidence of Competition

Class Plaintiffs' proposed "Evidence of Competition" instruction is based on *USF* Instruction No. 19, which in turn is based on an ABA Model Instruction (Ex. 13 at B-28).  The instruction has abundant support in the law.  *E.g.*, *Socony,* 310 U.S. at 220 ("the fact that sales on the spot markets were still governed by some competition is of no consequence").

Aside from substituting case-specific descriptions, Class Plaintiffs modified *USF* Instruction No. 19 only to clarify that "a price fixing agreement is unlawful even if it did not extend to all products sold by the urethane chemical manufacturers or did not affect all of their customers *or every transaction*."  This additional "every transaction" language was used in similar jury instructions in the *Vitamins* and *Scrap Metal* antitrust trials.  *See Scrap Metal* Instructions at 36 (Ex. 8); *Vitamins* Instructions at 1359:15 (Ex. 4).  Significantly, Dow raised no objection to the addition of the "every transaction" language.  *See* Dow Resp. at 69-70.

Dow's objections are limited to points it previously raised with respect to other instructions.  *First*, Dow once again argues that Class Plaintiffs "must decide if they are alleging a conspiracy to fix, or to raise, or to stabilize prices."  *Id*. at 69.  As Class Plaintiffs demonstrated *supra* at Part II.K, this argument has no merit.  Indeed, in its summary judgment opinion, this Court expressly recognized that, under long-standing Supreme Court precedent, a horizontal price-fixing conspiracy may have "the purpose or effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity."  *Urethane*, 2012 WL 6610878, at *2.

---

[13] An alternative to adopting either side's instructions on opportunities to conspire and other types of circumstantial evidence would be to omit an instruction on this topic altogether. Class Plaintiffs respectfully suggest that no instruction at all would be more appropriate than an instruction focused solely on opportunities to conspire.

*Second*, Dow argues that the instruction must "set forth the full scope of the conspiracy Class Plaintiffs have alleged. . . ."  Dow Resp. at 69.  But after a lengthy trial and after hearing several pages of instructions, the jury will be familiar with the details of the alleged conspiracy and will not need them repeated yet again.

*Finally*, Dow speculates that the instruction "may mislead the jury as to Class Plaintiffs' burden of proof with respect to causation and damages. . . ."  Dow Resp. at 70.  No such confusion will occur because the Court will deliver specific instructions on causation (impact) and damages.

### Q.    Class Plaintiffs' Proposed Instruction No. 25 – Absent Witnesses

Class Plaintiffs will present evidence that the conspiracy involved several different executives employed by Dow and the settling defendants, but the jury will not hear testimony by two Bayer conspirators:  Christian Buhse and Hans Kogelnik.  For example, the jury will learn that Mr. Stern believed that both of these Bayer executives had future pricing discussions with competitors.  They also will learn that Mr. Kogelnik was present when Mr. Stern (Bayer) and Mr. Fischer (Dow) had a future pricing discussion outside the Baywood facility; and that Mr. Buhse met with competitors such as Mr. Levi (Dow) and Mr. Hartwig (BASF) suspiciously close in time to pricing actions.  Yet, unlike other key participants in the conspiracy – *e.g.*, Mr. Fischer, Mr. Levi, Mr. Bernstein, Mr. Hartwig, Mr. Stern, and Mr. Hankins – the jury will not hear testimony from Messrs. Buhse and Kogelnik because they invoked the Fifth Amendment and other testimonial privileges.

The jury likely will speculate why they heard from some who were accused of wrongdoing but not others.  To avoid jury confusion and prejudice to Class Plaintiffs, the Court should provide a neutral explanation for their absence from the trial: "Class Plaintiffs sought to have [them] testify by deposition.  Each of these individuals declined to provide testimony."  A

similar instruction was provided recently in *LCD.*  *See* Ex. 5 at 21 ("Toshiba sought to bring the

following individuals to trial . . . Each of these individuals declined to provide testimony.")

There is no merit to Dow's suggestion that the instruction should state that the witnesses

were "unavailable to both parties."  Only Class Plaintiffs – not Dow – attempted to obtain

testimony from these witnesses through the Hague Evidence Convention and the German courts.

There is no basis for the Court to suggest otherwise to the jury.

Nor do the cases cited by Dow support its unfounded contention that merely telling the

jury that "these individuals declined to provide testimony" somehow gives rise to an improper

inference that the absent Bayer witnesses would have testified favorably to Class Plaintiffs.  In

*all* of Dow's cited cases, a party specifically asked for an instruction or presented argument

stating that the failure of the one party in a criminal case (usually the Government)  to present

certain witnesses at trial gives rise to a presumption that the witness's testimony would have

been unfavorable to that party.[14]  Those cases are inapplicable here.  Class Plaintiffs seek no such

"missing witness presumption"; rather, Class Plaintiffs' requested instruction merely explains the

absence of testimony by certain key conspirators the jury would expect to hear testify.  Class

Plaintiffs' proposed instruction reduces that risk of jury confusion.  Moreover, without an

explanation for the absence of testimony from key conspirators, there is a risk that the jury will

draw an inference against Class Plaintiffs, the party with the burden of proof.

---

[14] *See United States v. Currier*, 454 F.2d 835, 839 & n.8 (1st Cir. 1972); *United States v. Busic*, 587 F.2d 577, 586 (3d Cir. 1978), *rev'd and remanded on other grounds*, 446 U.S. 398 (1980); *United States v. Fisher*, 484 F.2d 868, 870 (4th Cir. 1973); *United States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir. 1970); *Rostello v. United States*, 36 F.2d 899, 902 (7th Cir. 1929); *Johnson v. United States*, 291 F.2d 150, 155 (8th Cir. 1961); *Wagner v. United States*, 264 F.2d 524, 531 (9th Cir. 1959).

**R.      Class Plaintiffs' Proposed Instruction No. 26 – Antitrust Impact**

Class Plaintiffs' Proposed Instruction No. 26 on antitrust impact, which is a streamlined version of *USF* Instruction No. 22, should be adopted by the Court.

Dow's proposed alternative jury instruction does much more than "restore" the language that Class Plaintiffs removed.  Dow Resp. at 79; *see id*. at 80-81.  Instead, Dow's proposed instruction contains three serious errors that misstate the law and/or the facts, as well as containing language that is misleading and confusing.

**1.      Dow attempts to create the misleading impression that
         the mere possibility that the existence of a sole,
         uninjured class member will defeat a finding of impact.**

In its proposed instruction, Dow uses the word "each" or the phrase "each and every" to modify the term "class member."  But as described above, this is contrary to the law, as demonstrated by the very cases cited by Dow on this point, including *Law*, 185 F.R.D. at 332 n.10.  *See* Part II.K.1, *supra*.  Dow quotes from *Law*'s jury instruction number 20, which stated: "Plaintiffs must prove . . . that but for the [antitrust violation], they would not have sustained injury in their business or property."  Dow Resp. at 81.  But in the same footnote quoted by Dow, the *Law* court also discussed jury instruction number 18, which provided:

> [Y]ou may conclude as a matter of just and reasonable inference from the proof of defendant's antitrust violation and its tendency to injure plaintiffs in their business or property, and from any evidence of a decline in the compensation of restricted earnings coaches which is not shown to be attributable to other causes, that the NCAA's wrongful act caused injury to members of the class. *Under this test, so long as injury to the class was widespread, the fact that certain class members may have escaped injury altogether would not defeat a finding that members of the class suffered injury.*

*Law*, 185 F.R.D. at 332 n.10 (emphasis added).  As the above quoted language shows, Dow's attempt to add "each and every" to the language of the instruction is contrary to *Law*, the very authority cited by Dow to support its position.  *See* page 18, and note 7, *supra* (collecting

additional authority on the settled rule that Plaintiffs are entitled to establish antitrust injury on a class-wide basis using generalized evidence at trial, as opposed to having to show individual injury for every class member as Dow incorrectly suggests).

Moreover, while Dow states that it is simply applying this Court's instruction from *USF* with a few changes, the very change Dow attempts here was attempted but not allowed in *USF*, where the Court rejected the defendant's attempt to add the word "all" before "class members." *See USF* Jury Instructions Conference Tr. at 3318:6-18 to 3318:18 & 3333:8-21, Case No. 02-1468, Dkt. 1091 (D. Kan. Nov. 14, 2008) (Ex. 17).

> **2.      In its description of material causation, Dow's proposed Antitrust Impact instruction misstates the law and likely will confuse and mislead jurors.**

In their proposed jury instructions, Class Plaintiffs and Dow describe material causation differently.  Class Plaintiffs' instruction states:  "Class Plaintiffs must prove by a preponderance of the evidence that the alleged conspiracy played a substantial part in causing prices to be higher than they otherwise would have been under free and open competition."  Class Plaintiffs' instruction also describes what is meant by "causing prices to be higher," clarifying that the law does not require that prices rise, as oppose to simply being higher than they would have been in the absence of the conspiracy.  *Id.*  Dow's instruction eliminates that clarification and adds a second statement regarding material causation:  "Plaintiffs must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that Dow's alleged illegal conduct was a material cause of each and every class members' [sic] injuries."  Dow Resp. at 80 (third paragraph).  Dow then proposes to further instruct the jury that "[t]his means that Plaintiffs have proved that some injury occurred to them as a result of Dow's alleged antitrust violation, and not some other cause."  *Id.*

By adding the ABA model instruction's articulation on material causation to what is already there, Dow's modified jury instruction repeats the standard for material causation in two different ways.  This will cause confusion because the jury will be left with the impression that there are two separate material causation findings. In addition, the ABA model instruction on impact uses the words "must also," to distinguish material causation in the model instruction from the discussion of injury – *i.e.*, plaintiff must show injury and "must also" show material causation.  Dow keeps the "must also" language from the model instruction, but because Dow's proposed jury instruction already contains Class Plaintiffs' proposed language on material causation, the effect is to state that Class Plaintiffs must prove material causation and "must also" prove something else. Jurors will assume that the Court would not say the same thing twice and thus will believe that Class Plaintiffs must show not only that the injury played a substantial part in causing higher prices, but that Class Plaintiffs "must also" show something more.

Moreover, the "matter of fact and with a fair degree of certainty" language proposed by Dow is misleading because, taken out of context, it appears to require more than a preponderance of the evidence.  Dow Resp. at 80 (third paragraph).  On its face, "a fair degree of certainty" seems more demanding that the "more likely than not" threshold for preponderance.  Examining the case law from which the model instruction takes that language shows that it was intended to have the exact opposite connotation.  The phrase "a fair degree of certainty" was used to mean a "modest," or "less than stringent" degree of certainty.  *See Affiliated Capital Corp. v. City of Houston*, 735 F.2d 1555, 1564 (5th Cir. 1984) (en banc).  The ABA model instruction cites *Affiliated Capital* and takes the language on material causation almost verbatim from that case. When that language was imported into the model instruction, the context was lost and its meaning became unclear.  The ABA model instruction also made a small, but significant, change

to the language.  In *Affiliated Capital*, the court stated that the plaintiff  "need only" prove material causation with a fair degree of certainty, but the model instruction states that plaintiff "must" offer evidence with a fair degree of certainty.  Thus, although the ABA model instruction lifted the language from the *Affiliated Capital* case, it did so in a way that removed important context and hence may mislead the jury.

Similarly misleading is the sentence proposed by Dow that states "[t]his means that Plaintiffs have proved that some injury occurred to them as a result of Dow's alleged antitrust violation, and not some other cause."  Dow's Resp. at 80 (third paragraph).  This language also is taken from the ABA model instruction, but it contains an ambiguity that is more likely to confuse and mislead than to clarify.  The words, "and not some other cause," are superfluous.  If the sentence did not contain those words, it would be clear.  Dow cites the ABA model instruction as authority for this language, but the case cited by the model instruction does not contain the ambiguous ending proposed by Dow.  *See Zenith Radio Corp. v. Hazeltine Research Inc.*, 395 U.S. 100, 114 n.9 (1969).   The point of *Zenith Radio* was that the injury must be attributable in part to the antitrust violation.  *Id.*[15]  In attempting to clarify this point by adding "and not some other cause," the ABA model instruction suggests an additional standard exists. By including the words, "and not some other cause," the sentence suggests that if there is any

---

[15] The exact language cited by the model instruction provides:

> Zenith's burden of proving the fact of damage under § 4 of the Clayton Act is satisfied by its proof of some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage.  It is enough that the illegality is shown to be a material cause of the injury; a plaintiff need not exhaust all possible alternative sources of injury in fulfilling his burden of proving compensable injury under § 4.

*Zenith Radio*, 395 U.S. at 114 n. 9 (citations omitted).

other cause of the injury, Class Plaintiffs lose.  This is not the standard for material causation.  *See Publication Paper*, 690 F.3d at 66 ("an antitrust defendant's unlawful conduct need not be the *sole* cause of the plaintiffs' alleged injuries") (emphasis in original).  Moreover, both Class Plaintiffs and Dow address in their proposed instructions how the jury should apply the standard where there are multiple causes of an injury.

There is no requirement to use the language from the model instruction on this point and, in fact, the authority cited by the model instruction expressly recognizes a variety of formulations for the standard on material causation.  *See, e.g., Shreve Equip., Inc. v. Clay Equip. Corp.*, 650 F.2d 101, 105 (6th Cir. 1981).  In *Shreve*, cited by the model instruction, the court noted that "[v]arious descriptions of this burden of proof require that the violation be a material cause of the injury, … or that the violation be a substantial factor in the occurrence of damage, …or that the violation be the proximate cause of the damage…" *Id.*  In sum, the Class Plaintiffs' formulation of the standard for material causation is consistent with this case law and less likely to mislead or confuse the jury than the language proposed by Dow.[16]

### 3.    Dow's description of Class Plaintiffs' statistical model as the "sole evidence of causation" is incorrect.

Dow also proposes instructing the jury that "Class Plaintiffs' sole evidence of causation is a statistical model proposed by their expert."  Dow Resp. at 80 (fourth paragraph).  This is simply not accurate.  Class Plaintiffs' expert's statistical model is an important piece of evidence

---

[16] Another reason why Dow's proposed statement on material causation is incorrect and misleading is that it has included the "each and every" terminology that is legally unwarranted for the reasons discussed above.  *See* Part II.K.1, *supra*.

in its proof on causation, but it is not the only evidence, and it would be wrong to direct the jury not to consider all of the evidence.[17]

Dow's proposed instruction confuses the function of the Court in deciding whether to admit expert testimony under *Daubert* with the role of the jury in assessing the weight to be given to such expert testimony. The Court already has ruled that the expert testimony is admissible because it is the product of reliable scientific principles and the model fits the facts of the case. *See* Dkt. 2649 (denying Dow's *Daubert* motion). The jury now must decide to accept or reject the expert's testimony in whole or part. Dow is permitted and expected to revisit its attack on the testimony as not scientifically reliable or not fitting the facts of the case. However, the jury is not required to make any specific findings on those issues. Including Dow's proposed language will have the effect of creating in the jury's mind undefined standards for "reliability" and "fit," leaving the jury to ponder what is meant by those terms.

### S.    Class Plaintiffs' Proposed Instruction No. 27 – Damages

Plaintiffs' proposed jury instruction on damages is a nearly verbatim copy of *USF* Instruction No. 23 (Ex. 3). *See* Ex. 1.B at 35-36. Dow's proposed revisions should be rejected.

First, Dow again inserts the word "actual" in front of the reference to prices and "each and every" before "Class member." Both of these insertions are inappropriate for the reasons described above. *See* Part II.K.1, *supra*.

Second, Dow takes language regarding the jury's right to make a reasonable estimate of damages – language that already appears in the proposed instruction – and inserts it a second

---

[17]   For example, contemporaneous documents of Dow and other urethane chemical producers will be used to show that certain collusive increases had widespread impact on the marketplace. Likewise, in addition to the statistical model of Dr. McClave, Class Plaintiffs' expert economist, Dr. Solow, will testify that his "structure-conduct-performance" analysis of the industry shows that all or nearly all class members were injured.

time, adding a reference to scientific reliability and "fit."  These references relate to a *Daubert* inquiry, not damages, and as discussed earlier, the jury instructions should not contain *Daubert* standards.

Third, Dow strikes from the proposed instruction the language describing a "proper method of calculating those damages," which certainly applies to this case.

The Court should reject Dow's proposed changes and adopt Class Plaintiffs' Proposed "Damages" Instruction.

### T.       Class Plaintiffs' Proposed Instruction No. 28 – Joint and Several Liability

In a civil antitrust conspiracy case, "joint and several liability simply ensures that the plaintiffs will be able to recover the full amount of damages from some, if not all, participants." *Tex. Indus. Inc. v. Radcliff Materials Inc.*, 451 U.S. 630, 646 (1981).[18]  Joint and several liability is a "vital instrument for maximizing deterrence" in price-fixing cases.  *Nippon Paper*, 281 F.3d at 633.

Dow's objections to Plaintiffs' Proposed Instruction No. 28 seek to circumvent this well-settled law.  Citing a Ninth Circuit criminal case, *United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir. 1992), Dow argues that it is not liable "for offenses committed prior to joining a conspiracy."  *Lothian*, however, did not involve a Sherman Act offense; the defendant "was not

---

[18] *See also Standard Indus., Inc. v. Mobil Oil Corp.,* 475 F.2d 220, 232 (10th Cir. 1973) (remanding with direction that the trial court enter in favor of the plaintiffs a joint and several judgment); *Paper Sys. Inc. v. Nippon Paper Indus. Co. Ltd.*, 281 F.3d 629, 634 (7th Cir. 2002) ("Every participant in the conspiracy remains liable for damages on every sale to every direct purchaser from any of the manufacturers."); *Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 212 (9th Cir. 1964) (defendant "was a participant in, and a beneficiary of, the combinations, contracts and conspiracies found to exist. It must therefore share responsibility for the resulting damage, including that occasioned by activities in which it did not directly participate, or from which it did not directly benefit."); *In re Uranium Antitrust Litig*., 552 F. Supp. 518, 522 (N.D. Ill. 1982) ("[I]t has long been the law that an antitrust defendant is jointly and severally liable for the acts of its co-conspirators") (collecting cases).

charged with conspiracy*,*" *id*. at 1262; and at issue was withdrawal from a fraudulent scheme. *See id*. at 1261-62. *Lothian* is irrelevant here.[19]

In short, Dow's argument rests on inapposite case law and ignores the many cases – including civil cases brought under the Sherman Act – that consistently hold that "a co-conspirator is liable for all acts committed in furtherance of a conspiracy, regardless of when it entered the conspiracy." *In re K-Dur Antitrust Litig*., 338 F. Supp. 2d 517, 538-539 (D.N.J. 2004).[20]

Dow's other objections are equally off-base. The language in the second paragraph regarding the "strong public policy of free competition" and the imposition of joint and several

---

[19] Similarly, the *TFT/LCD* opinion, which Dow also cites, concerns the scope of liability of a defendant that has withdrawn from a conspiracy. *See In re TFT-LCD (Flat Panel) Antitrust Litig*., 820 F. Supp. 2d 1055, 1059 (N.D. Cal. 2011).

[20] *See also In re Lower Lake Erie Iron Ore Antitrust Litig.*, 710 F. Supp. 152, 153-54 (E.D. Pa. 1989) (accepting the "general rule that one who joins an existing conspiracy is equally liable with the other conspirators for all damages occasioned by the conspiracy, *including damages caused before joinder*") (emphasis added); *Marian Bank v. Electronic Payment Servs., Inc*., 1997 U.S. Dist. LEXIS 11560, *12 (D. Del. 1997) (concluding in a civil antitrust action that "[o]ne who joins an existing conspiracy *is responsible for all prior acts committed in furtherance of the conspiracy*") (emphasis added); *Scholes v. Moore*, 150 F.R.D. 133, 135-136 (N.D. Ill. 1993) (defendant is "liable for all damages caused by any acts in furtherance of the conspiracy, *even those committed before he joined*") (emphasis added); *cf. United States v. Dickey*, 736 F.2d 571, 585 (10th Cir. 1984) ("It is fundamental that a party may join an ongoing conspiracy during its progress and become criminally liable for all acts done in furtherance of the scheme.") (internal quotation marks and citation omitted); *United States v. Henson*, 123 F.3d 1226, 1236 (9th Cir. 1997) ("A conspirator who joins a pre-existing conspiracy is bound by all that has gone on before in the conspiracy."), *overruled on other grounds by United States v. Foster*, 165 F.3d 689 (9th Cir. 1999); *United States v. Dicesare*, 765 F.2d 890, 900 (9th Cir. 1985) (conspirator who joins a pre-existing conspiracy is bound by all that has gone on before in the conspiracy); *United States v. Fontenot*, 483 F.2d 315, 324 (5th Cir. 1973) (affirming jury instruction that "one who knowingly and willfully joins an existing conspiracy is charged with the same responsibility as if he had been one of the original instigators of the plan."); *In re Home-Stake Prod. Co. Sec. Litig*., 76 F.R.D. 351, 375 (N.D. Okla. 1977) ("The law is also clear that [defendants] may be jointly and severally liable for all damages accruing prior to the time that these defendants allegedly assisted or participated in the conspiracy or fraudulent course of conduct…. 'Under well established principles of conspiracy law, they may be held as fully liable as the original or earlier participants in the conspiracy.'") (quoting *Walder v. Paramount Publix Corp*., 132 F. Supp. 912, 920 (S.D.N.Y.1955)).

liability to "deter antitrust violations" is taken nearly verbatim from the jury instructions in the *Vitamins* case (*see* Ex. 4, at 1362:8 to 1363:9). *See* Ex. 1.B at 37. Significantly, it comports with Supreme Court precedent. *See, e.g., Hawaii v. Standard Oil Co. of California,* 405 U.S. 251, 262 (1972) ("Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress. This system depends on strong competition for its health and vigor, and strong competition depends, in turn, on compliance with antitrust legislation.") (internal citation omitted).

Further, Dow's contention that the issue of joint and several liability is adequately covered by the proposed jury instruction on damages is without merit, as that proposed instruction does not refer to – let alone explain – joint and several liability.

In addition, Dow "notes" that joint and several liability may result in an award that is "excessive and unconstitutional." Dow cites no authority for this proposition, nor does it even advance an argument for disregarding the numerous decisions that have imposed joint and several liability in price-fixing cases.

### 1. Class Plaintiffs' Response to Dow's Proposed Instruction - Joint and Several Liability.

Dow's proposed alternative instruction misleadingly suggests that the imposition of joint and several liability is optional or discretionary. *See* Dow Resp. at 86 ("you *may* consider whether Dow is liable for all the damages") (emphasis added). This language misstates the law. Indeed, the second paragraph of Dow's proposed instruction is entirely unsupported – it bears no resemblance to the instructions given in *LCD*, which is the sole authority cited by Dow. *See also LCD* Instructions at 26 (Ex. 5).

The third paragraph of Dow's proposed instruction is likewise unsupported. It too bears no resemblance to the *LCD* instruction that Dow cites. In the first sentence of the paragraph,

Dows proposes the one sided statement that: "If you find that there is a conspiracy, but find that one or more of the other urethane manufacturers (Bayer, BASF, Huntsman, or Lyondell) was not a member of the conspiracy, then you may not include sales from that manufacturer in damages." Dow Revised Prop. Instruction No. 28, dated 1/14/13 (Ex. 18).  Yet, Dow's proposed instruction never instructs the jury what to do if they find that all of the manufacturers were members of the conspiracy.  Instead of Dow's lopsided instruction, the Court should use the language that Class Plaintiffs derived from the Vitamins instruction: "Each participant in an illegal conspiracy that violates the antitrust laws is jointly and severally liabile for all the damages resulting from the illegal conspiracy.  This means that each conspirator is fully liable for all of the damages caused by acts of any other members of the conspiracy done pursuant to, or in furtherance of, the illegal conspiracy."  Class Plaintiffs' proposed language is a more balanced articulation of the law on joint and several liability and is more closely aligned with instructions given in other antitrust cases.  *See, e.g., USF* Instruction No. 21 (Ex. 3) ("Plaintiffs injured by  an alleged conspiracy may recover against one or all of those participating in the conspiracy, at those plaintiffs' election."); *LCD* Instructions at 26 (Ex. 5) ("If you find that Toshiba participated in the conspiracy alleged by Plaintiffs and that Plaintiffs are entitled to damages based on the other instructions in this case, then Toshiba is liable for all damages caused by the conspiracy during the time it was a member, including all overcharges on purchases of TFT-LCD panels and TFT-LCD finished products that are part of the claims here made by plaintiff classes from all conspirators, not just overcharges on purchased from Toshiba"); *Scrap Metal* Instructions at 48 (Ex. 8) ("Each conspirator is fully liable for all of the damages caused by acts of any other member of the conspiracy done pursuant to, or in furtherance of, the illegal understanding.  This

is true as to all damages caused by all acts of all co-conspirators, both before they joined the conspiracy and during the time they were members.").

The second and final sentence of Dow's last paragraph addresses the issue of what happens if one of the conspirators withdraws from the conspiracy. Yet, neither Dow nor any other defendant in this case has ever asserted withdraw as an affirmative defense. Withdraw is simply not an issue in this case for the reasons that will be explained more fully in Part III. A. Thus, Dow's proposed instruction would only serve to confuse the jury.

### U.    Class Plaintiffs' Proposed Instruction Nos. 29-30 – Fraudulent Concealment Introduction and Fraudulent Concealment Elements

Class Plaintiffs' Proposed Instructions Nos. 29 and 30—Fraudulent Concealment Introduction and Fraudulent Concealment Elements – and Dow's proposed Instruction "Fraudulent Concealment Elements and Burden of Proof," overlap in many respects.[21]

However, Dow includes language in its proposed instruction that is confusing and prejudicial. In particular, Dow would have this Court instruct the jury that Class Plaintiffs may only recover for purchases prior to November 24, 2000, if, "for *each* purchase, they prove that Dow fraudulently concealed the facts giving rise to their claim, and thereby prevented *each* class member from discovering its claim within the limitations period." Dow Resp. at 90 (emphasis added). However, Dow cites no cases that hold (or jury instructions in other cases that have stated) that Plaintiffs must make a transaction-by-transaction or class-member-by-class-member demonstration of concealment. *See also* Part II.K.1, *supra*.

---

[21] Dow objects to both instructions on the ground that actions of, or statements by, the settled Defendants are "attributable to Dow only if that entity was a member of the conspiracy," such that Class Plaintiffs' instructions should not refer to "BASF, Bayer, Huntsman or Lyondell." Substituting the words "Dow or a co-conspirator" for "Dow, BASF, Bayer, Huntsman or Lyondell" in Class Plaintiffs' proposed Instructions Nos. 29 to 30 would render Dow's objection moot.

Lastly, Dow's proposed instructions would fail to inform the jury (until the reading of the belated and flawed "Attribution" instruction, discussed below) that Plaintiffs may prove fraudulent concealment by acts or statements made by Dow **or** BASF, Bayer, Huntsman or Lyondell, and as such inaccurately state the law in this crucial respect.

### V.   Class Plaintiffs' Proposed Instruction No. 31—Fraudulent Concealment Factors

Class Plaintiffs' Proposed Instruction No. 31 neutrally describes the fraudulent concealment factors.  Dow's objections to the instruction are unfounded.

Dow again mischaracterizes Class Plaintiffs' argument regarding price announcements, incorrectly stating the Class Plaintiffs are using the announcements to prove a "failure to confess the conspiracy," which it alleges does not constitute fraudulent concealment.  This argument is without merit, as the Court explained in its summary judgment ruling:

> As the Court has stated twice previously, however, *see Urethane,* 235 F.R.D. at 519–20; *In re Urethane Antitrust Litig.,* 683 F.Supp.2d 1214, 1235–36 (D. Kan. 2010), the price announcements do not constitute mere silence as to the existence of a conspiracy, but represent affirmative acts of concealment.  Contrary to Dow's position, there is a misrepresentation alleged here—plaintiffs do not argue that the conspirators falsely stated that costs were rising or that other market conditions existed, but rather they allege that the conspirators falsely stated that prices were being raised because of those conditions, when in fact they were raising prices in furtherance of a price-fixing conspiracy. Such conduct goes beyond mere silence or nondisclosure.

*Urethane*, 2012 WL 6610878, at *15.

Dow's other objections are also unfounded.  For example, Dow objects to the use of language that "suggests that there were acts giving rise to the conspiracy."  In the context of fraudulent concealment, such language is appropriate: without the existence of a conspiracy, it would be unnecessary for the jury to consider whether the conspiracy had been concealed.

Dow's objection that Plaintiffs' proposed instruction merely repeats their contentions should be overruled.  The fourth through eighth paragraphs describe, in concrete terms, types of

acts that may constitute acts of fraudulent concealment, in order to better enable the jury to determine the facts in light of the applicable law.[22]

### 1.    Class Plaintiffs' Response to Dow's Fraudulent Concealment Instructions

Dow proposes two instructions as an alternative to Class Plaintiffs' Instruction on Fraudulent Concealment Facts.  *See* Dow Resp. at 95-96.  Dow entitles its alternative instructions "Use of Fraudulent Means" and "Attribution of Co-conspirators' Fraudulent Acts or Statements to Dow."  Both instructions are inaccurate and should be rejected.

Dow's proposed instruction, "Use of Fraudulent Means," would require Plaintiffs to prove that Dow "engaged in active deception" through the use of a "trick or contrivance." Dow's language is inconsistent with the Tenth Circuit's articulation of the "affirmative acts" standard. *See Indus. Constructors Corp. v. United States Bureau of Reclamation,* 15 F.3d 963, 969 (10th Cir. 1994) ("a plaintiff must show that his ignorance of his cause of action was not the result of his lack of diligence, but was *due to affirmative acts or active deception* by the Defendant to conceal the facts giving rise to the claim") (emphasis added); *Baker v. Board of Regents of Kan.,* 991 F.2d 628, 633 n.4 (10th Cir. 1993) (plaintiff must show "ignorance was not the result of his lack of diligence, but was *due to affirmative acts or active deception* by the appellant to conceal the facts giving rise to the claim.") (emphasis added).

---

[22] Dow's suggestion that Plaintiffs' proposed instruction implies that the jury should "presume" fraudulent concealment is unwarranted.  Class Plaintiffs' instruction, in the eighth paragraph, simply explains that fraudulent concealment does not need to be established on a victim-by-victim basis, but instead can be determined on a classwide (or industry-wide) basis. *See Scrap Metal Antitrust Litig.*, 527 F.3d at 538 (similar instruction given and approved by Sixth Circuit).

Dow's proposed instruction on attribution of co-conspirators' acts to Dow never actually explains that acts of Bayer, BASF, Huntsman or Lyondell may be *attributed* to Dow for purposes of proving fraudulent concealment:

> In determining whether Class Plaintiffs have proven fraudulent concealment, you may consider also the fraudulent acts and statements of others if (1) you determine that they were a co-conspirator of Dow; (2) the act or statement was made during the conspiracy; and (3) the act or statement was in furtherance of the conspiracy. Acts or statements occurring after a conspiracy has achieved its objects or has terminated are not in furtherance of the conspiracy.

Dow Resp. at 96.  Thus, Dow's proposed instruction – which only uses the vague language "may consider … acts and statements of others" – is certain to confuse or mislead the jury.  Dow also misstates the law, so it is unsurprising that Dow cites no jury instructions in support of its proposed instruction.  *See Scrap Metal*, 527 F.3d at 538 (6th Cir. 2008) ("Columbia argues that some of the evidence of fraudulent concealment should not apply to it because it was based on acts taken by other Defendants.  Fraudulent concealment, however, may be established through the acts of co-conspirators.") (citations omitted).

The sequence of Dow's proposed instructions also would create confusion.  Dow's first two instructions concerning fraudulent concealment – "Fraudulent Concealment Elements and Burden of Proof" and "Use of Fraudulent Means" – state that Class Plaintiffs must prove that "Dow" engaged in the concealment, without explaining that Class Plaintiffs can establish fraudulent concealment if BASF, Bayer, Huntsman or Lyondell prevented Class Plaintiffs from discovering the conspiracy.  In the later "Attribution" instruction, Dow would have the Court explain that the acts of co-conspirators may be considered by the jury, but only after the jury has heard repeatedly that "Dow" must have done the concealing.  *See* Dow Resp. at 90, 95-96.

The Court should adopt Plaintiffs' Proposed Instruction No. 31—Fraudulent Concealment Factors.

### W.        Class Plaintiffs' Proposed Instruction No. 32 – Witness Impeachment

Class Plaintiffs' Proposed Jury Instruction No. 32 is a verbatim copy of *USF* Instruction No. 28.  *See* Ex. 1.B at 43.  Dow's sole objection to Class Plaintiffs' Proposed Jury Instruction No. 32 is that it is allegedly redundant of Class Plaintiffs' Proposed Jury Instruction No. 35 regarding witness credibility.  Dow Resp. at 97.  Dow is mistaken.

Impeachment and credibility are two separate (though related) concepts.  Credibility is broader than impeachment; it refers to the weight particular testimony should be given.  As noted in Fed. R. Evid. 608(a), credibility "may be attacked or supported."  Impeachment is a specific kind of attack on credibility.  Indeed, in price-fixing cases like this one, jury instructions often include, as Class Plaintiffs' Proposed Jury Instructions do here, an instruction about witness credibility *and* a separate instruction related to impeachment of a witness's testimony.  *See, e.g., Vitamins* Instructions at 1339:3-1340:14, 1343:16-1345:11 (Ex. 4) (separate jury instructions on the credibility of witnesses and the impeachment of witnesses); *Scrap Metal* Instructions at 10-12 (Ex. 8) (same).

### X.        Class Plaintiffs' Proposed Instruction No. 33 – Experts

Class Plaintiffs request that the Court adopt their Proposed Instruction No. 33 – Experts, which was derived from *USF* Instruction No. 33 and an instruction given in *LCD*.[23]  Dow's proposed instruction on Experts would advise the jury that it "must be able to determine from the evidence that the model [used by Plaintiffs' statistics expert] is properly specified, and that his

---

[23] The first paragraph of Class Plaintiffs' Proposed Instruction No. 33 follows *USF* Instruction No. 29.  The subsequent paragraphs follow instructions given in *LCD* (Ex. 5 at 7-8), and concern conflicting expert testimony.  *See* Ex. 1.B at 44-45.  Dow's objection to the length of Class Plaintiffs' proposed instruction rings hollow, as Dow's proposed instruction is a mere *four words* shorter.  *See* Dow Resp. at 99.

opinion is a proper application of statistical methods and supported by proper tests and sufficient data." Dow Resp. at 99. This language is unnecessarily confusing to a layperson, is unsupported by precedent, and confuses the function of the Court in deciding whether to admit expert opinion evidence in the first instance with the role of the jury in deciding what weight to afford expert opinion evidence that is properly admitted. Dow's proposed instruction also unfairly implies ("Class Plaintiffs' expert has used a statistical model," *id.*) that Dr. McClave's testimony should be treated differently from that of the other experts. Neither the Tenth Circuit Pattern Criminal Instruction nor this Court's prior *USF* Instruction No. 29, both of which are cited by Dow as ostensible authority for its proposed instruction, include any similarly confusing language.

In *Daubert* and *Kumho Tire*, the Supreme Court made clear that the Federal Rules of Evidence impose a gatekeeping obligation upon the trial court to determine whether expert opinion evidence is relevant and reliable in the first instance. *See Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) ("Federal Rule of Evidence 702 *imposes a special obligation upon a trial judge* to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'") (citations omitted; emphasis added); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) ("[T]he Rules of Evidence – especially Rule 702 – do *assign to the trial judge* the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.") (emphasis added). Of course, "weaknesses in an expert's reasoning" and "credibility of an expert witness," as it is with any other witness, remain issues for the jury in determining how to weigh that testimony once properly admitted. *Frederick v. Swift Transp. Co. Inc.*, 591 F. Supp. 2d 1149, 1154 (D. Kan. 2008). Here, however, Dow confuses the gatekeeping function assigned to the trial court by *Daubert* in assessing whether the expert testimony "involves a reliable method that would aid the jury in resolving a factual

dispute" with "the jury question of which theory, plaintiffs' or defendant's, best captures the truth of the matter at issue." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1238 (10th Cir. 2004). By contrast, Class Plaintiffs' proposal correctly instructs the jury as to its role in deciding how to weigh the parties' conflicting expert testimony.

## III.   THE COURT SHOULD REJECT DOW'S ADDITIONAL PROPOSED INSTRUCTIONS

### A.   Plaintiffs' Objections to Dow's Proposed Instruction on "Withdrawal"

Plaintiffs have two objections to Dow's proposed instruction on withdrawal. *See* Dow Resp. at 111. *First*, no instruction on withdrawal should be given at all because Dow has waived this affirmative defense and it is not at issue in this case. *Second*, even were the Court to allow Dow to pursue this heretofore unmentioned affirmative defense, Dow's proposed instruction misstates the law of withdrawal and, as a result, is highly misleading.

In more than eight years of litigation, Dow has never before now raised (or even suggested) that it intended to prove at trial the affirmative defense of withdrawal. Allowing Dow to raise such a defense now would clearly prejudice the Plaintiffs. Dow should have identified this defense (but did not) when it answered Plaintiffs' complaint more than six years ago. *See* Dkt. 325 at 13-18 (Dow's Answer) (identifying 29 affirmative defenses but not the defense of withdrawal). *See also United States v. Westry*, 524 F.3d 1198, 1216 (11th Cir. 2008) ("withdrawal [from a conspiracy] is an affirmative defense that the defendant has the burden to prove"); *Bentley v. Cleveland County Bd. of County Comm's*, 41 F.3d 600, 604 (10th Cir.1994) ("[f]ailure to plead an affirmative defense results in a waiver of that defense") (citing Fed R. Civ. P. 8(c) and 2A James W. Moore, et al., Moore's Fed. Prac. ¶ 8.27(3) (2d ed.1994)). This would have allowed Plaintiffs to pursue discovery aimed at defeating such a defense. Instead, Dow has waited until the very eve of trial to assert this defense. While the Tenth Circuit in some instances

54

has relaxed the strict requirement that affirmative defenses be included in responsive pleadings, it nonetheless requires that a plaintiff be put "on notice well in advance of trial that defendant intends to present a defense[.]"  *Marino v. Otis Eng'g Corp.,* 839 F.2d 1404, 1408 (10th Cir. 1988) (citation omitted) (allowing affirmative defense to be raised for the first time three months before trial but where it had been "repeatedly raised in the depositions before trial in some detail").  That has not happened here.

Not only did Dow fail to raise the affirmative defense of withdrawal in its Answer, it also failed to raise that defense in the Pretrial Order (*see* Doc. 2374, at 16-17, identifying 5 defenses but not withdrawal).  Accordingly, Dow is foreclosed from asserting it now.  *See Urethane*, 2012 WL 6610878, at *13 ("the pretrial order… now controls the scope of the parties' claims and defenses") (citing *Youren v. Tintic Sch. Dist.,* 343 F.3d 1296, 1304 (10th Cir. 2003)); *see also Westry*, 524 F.3d at 1216 ("withdrawal [from a conspiracy] is an affirmative defense that the defendant has the burden to prove").  Accordingly, Dow's untimely and newly asserted "withdrawal" defense should be deemed waived and no instruction on withdrawal should be given to the jury.  *See, e.g., Digital Ally, Inc. v. Z3 Tech., LLC*, 09-2292-KGS, 2012 WL 4061419, at *2 (D. Kan. Sept. 14, 2012) (Magistrate, J.) ("The Court entered a final Pretrial Order in this case on May 9, 2011.  A pretrial order supersedes the pleadings and controls the subsequent course of litigation.  Failure to preserve an affirmative defense in the final pretrial order is considered a waiver of the defense."); *Kay-Cee Enterprises, Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840, 846-47 (D. Kan. 1999) (Lungstrum, J.) ("With respect to defendant's affirmative defense . . . defendant's failure to preserve that issue in the pretrial order is considered a waiver of the defense. . . .  Defendant has not timely sought to amend the pretrial order to include the . . . defense, but has instead apparently abandoned the defense altogether.").

With respect to the substance of Dow's proposed instruction on withdrawal, there are a number of problems.   The first sentence of the instruction (purporting to limit the liability of a conspirator) is at best incomplete and misleading.  The scope of Dow's liability is addressed in other jury instructions and should not be confused or compromised with an incomplete and unnecessary statement here.

Next, Dow has no evidence of withdrawal of which Class Plaintiffs are aware, so the instruction would be misleading.  Dow inaccurately suggests that merely pointing to some conduct that "was inconsistent with the object of the conspiracy" is sufficient to establish withdrawal because "[w]ithdrawal from a conspiracy is not difficult."  Dow Resp. at 111.  This is a gross misstatement of the law.  First, there is no support in the case law for the proposition that establishing withdrawal is easy.  The contrary is true.  *See e.g., In re Catfish Antitrust Litig.*, 908 F. Supp. 400, 414 (N.D. Miss. 1995) ("The burden of showing withdrawal is heavy").

Second, it does not follow (as implied by Dow) that the presence of actions inconsistent with the object of conspiracy means that the jury must conclude that Dow withdrew from the conspiracy.   In *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464-65 (1978) the Supreme Court merely recognized that a jury should be free to consider actions inconsistent with conspiracy as evidence of withdrawal, not that such evidence mandates a finding of withdrawal.

Third, as recognized in *Gypsum*, actions inconsistent with conspiracy are not, standing alone, sufficient to establish withdrawal; a conspirator must *also* either put its co-conspirators on notice that it is withdrawing, or notify legal authorities of the conspiracy.  *Gypsum*, 438 U.S. at 464 (holding that "[a]ffirmative acts inconsistent with the object of the conspiracy *and*

communicated in a manner reasonably calculated to reach co-conspirators" is sufficient to establish withdrawal from a conspiracy) (emphasis added).[24]

Thus, the question is not, simply, whether Dow can point to "competitive activity" that its co-conspirators might reasonably have been expected to discover.  Rather, the question is whether, based on such evidence of "competitive activity," the jury concludes that Dow was no longer participating in the conspiracy and communicated this to its co-conspirators.  The primary case relied upon by Dow—*United States v. Thornburgh* (mislabeled "*Lynn*" by Dow, *see* Dow Resp. at 111) —is a good example of this.  645 F.3d 1197, 1207 (10th Cir. 2011), *cert. denied*, 132 S. Ct. 214 (2011) (affirming jury's rejection of withdrawal defense notwithstanding evidence of actions inconsistent with the conspiracy and crediting jury's finding that defendant "remained active in the . . . conspiracy").

Finally, a proper jury instruction on withdrawal must further recognize that a withdrawal may be nullified by subsequent participation in or benefits obtained from conspiratorial activities—a notion wholly absent from Dow's proposed instruction.  *See, e.g., United States v. Antar*, 53 F.3d 568, 583 (3d Cir. 1995) ("defendant still may remain a part of the conspiracy if he or she continues to do acts in furtherance of the conspiracy" and finding withdrawal is void if the

---

[24] *See also In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 616 (7th Cir. 1997) ("To terminate one's liability for the continuing illegal acts of a conspiracy that one had joined, a withdrawing member must either report the conspiracy to the authorities or announce his withdrawal to his coconspirators."); *United States v. Greenfield*, 44 F.3d 1141, 1149–50 (2d Cir. 1995) ("[T]hough the cessation of conspiratorial activity is generally considered insufficient to demonstrate a withdrawal from a conspiracy, either the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators is sufficient to establish withdrawal." (internal quotation marks omitted)); *United States v. Finestone*, 816 F.2d 583, 589 (11th Cir. 1987) ("To establish that he withdrew from a conspiracy, the defendant must prove that he undertook affirmative steps, inconsistent with the objects of the conspiracy, to disavow or to defeat the conspiratorial objectives, and either communicated those acts in a manner reasonably calculated to reach his co-conspirators or disclosed the illegal scheme to law enforcement authorities.").

defendant "continues to receive benefits from the conspiracy's operations"); *Lothian*, 976 F.2d at 1264-65 (finding that "subsequent acts" in furtherance of conspiracy "neutralized [] withdrawal" and finding no withdrawal if defendant "continues to enjoy the illicit proceeds of the conspiracy").

### B.    Plaintiffs' Objections to Dow's Proposed Instruction on "Nominal Damages"

A separate instruction on nominal damages, as proposed by Dow, is misleading and would improperly suggest to the jury that it should award only nominal damages.  *See* Dow Resp. at 112.  This is not correct.  If Class Plaintiffs establish conspiracy and class-wide injury, the jury is charged with assessing damages except in the extremely unlikely circumstance that Class Plaintiffs are unable to prove any damages whatsoever.  *See, e.g., In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1184 (3d Cir. 1993) (vacating jury award of nominal damages and holding that "[n]ominal damages are appropriate only when plaintiffs are unable to prove any amount of damages").

Dow's proposed instruction serves as an invitation to the jury to decide on its own— notwithstanding its conclusion that Plaintiffs suffered damages as a result of Dow's participation in a conspiracy—to award nominal damages because they are "authorized" to do so in cases like this.   But the jury is not free to decide whether Plaintiffs "deserve" an award of damages; rather, if it determines the class suffered damages as a result of Dow's misconduct, the jury is tasked with awarding a reasonable estimate of those damages.  Only where the jury is unable reasonably to approximate damages would an award of nominal damages be appropriate.  This should be a highly unlikely scenario if the jury is instructed appropriately that the *fact* of damage must be certain; but the *quantification* of damage need only be approximate and reasonable.  *See Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931) ("The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the

wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount."); *Bigelow*, 327 U.S. at 265-66 (1946) ("Difficulty of ascertainment is no longer confused with right of recovery' for a proven invasion of the plaintiff's rights."); *World of Sleep*, 756 F.2d at 1478 (10th Cir. 1985) (invoking *Story Parchment*).

Plaintiffs oppose any jury charge on nominal damages.  To the extent that the Court is inclined to instruct the jury on nominal damages, Plaintiffs respectfully suggest that it should be done in the context of the Court's other instructions on damages and should include a clarification that it is not within the jury's discretion to award nominal damages if Plaintiffs prove the existence of any actual damages to the class.[25]

**IV.    CONCLUSION**

For the reasons set forth above, Class Plaintiffs respectfully request that the Court adopt the Proposed Jury Instructions attached here to as Exhibit 1.A.

---

[25] The only price-fixing case Dow cites where a nominal damages instruction was given is *LCD*.  *See* Dow Resp. at 112.  However, when the defendant in *LCD* proposed its nominal damages instruction, the plaintiffs offered only a two-sentence opposition and left the Court without any case law or substantial argument to consider.   *See* Revised Joint Proposed Final Jury Instructions at 224-225 (excerpt at Ex. 19) ("The evidence would not warrant an award so limited. Moreover, Plaintiffs have not made a request for nominal damages nor are they seeking an instruction on this point.")

Dated: January 14, 2013                    Respectfully submitted,


                                           */s/ Robert W. Coykendall*_____
                                           Robert W. Coykendall, #10137
                                           Roger N. Walter, #08620
                                           Morris, Laing, Evans, Brock & Kennedy, Chartered
                                           Old Town Square
                                           300 North Mead - Suite 200
                                           Wichita, KS  67202
                                           Tel:  (316) 262-2671
                                           Fax:  (316) 262-5991

                                           **Class Plaintiffs' Liaison Counsel**



Allen D. Black                             Richard A. Koffman
Roberta D. Liebenberg                      Christopher J. Cormier
Donald L. Perelman                         Sharon K. Robertson
Gerard A. Dever                            Laura A. Alexander
Paul Costa                                 Cohen Milstein Sellers & Toll PLLC
Fine, Kaplan and Black, R.P.C.             1100 New York Avenue, N.W.
One South Broad Street, 23rd Floor         Suite 500, West Tower
Philadelphia, PA  19107                    Washington, DC  20005
Tel:  (215) 567-6565                       Tel:  (202) 408-4600
Fax:  (215) 568-5872                       Fax:  (202) 408-4699

**Class Plaintiffs' Co-Lead Counsel**

## <u>CERTIFICATE OF SERVICE</u>

  I, the undersigned, do hereby certify that on this 14th day of January, 2013, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel who have registered for receipt of documents filed in this matter.

s/Robert W. Coykendall

Robert W. Coykendall, #10137
