IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE:                                              )
URETHANE ANTITRUST LITIGATION        )        MDL No. 1616
                                                    )        Case No. 04-1616-JWL
This document relates to:                     )
The Polyether Polyol Cases                  )
_____)

## JURY INSTRUCTIONS

INSTRUCTION NO. 1

The time has now come for me to explain to you the law that will govern your jury deliberations.

You are duty bound to follow the law as I explain it to you in the instructions that I am about to give you.  You as jurors are the sole judges of the facts.  This means that you must take the law as I explain it to you and apply the law to the facts revealed by the evidence.

Do not single out any one instruction alone as stating the law.  Rather, consider my instructions in their entirety.

My instructions to you are the only source of the law you should consider.  Witness testimony stating a legal conclusion does not define the law that you will apply to this case; nor do comments from counsel for either side.

Also, do not concern yourselves with the wisdom of the law.  Despite any opinion you may have about what the law should be, you would violate your sworn duty if you were to base your verdict upon any view of the law other than that given to you in these instructions.

INSTRUCTION NO. 2

Counsel's statements and arguments are not evidence unless they are admissions or stipulations.  When the attorneys for the parties agree that a particular fact exists, that is referred to as a "stipulation" and the jury must accept that stipulation as true.

You may consider as evidence everything that was admitted during trial such as witness testimony (in person or by deposition), an article or document marked as an exhibit, or any other matter admitted into evidence such as an admission, agreement, or stipulation.  You must entirely disregard any evidence with respect to which I sustained an objection or which I ordered stricken.

You are to consider only the evidence, but you are not limited to considering only the bald statements of witnesses.  In other words, you are not limited solely to what you see and hear.  You are permitted to draw reasonable inferences based on your experience if reason and common sense lead you to draw particular conclusions from the evidence.

INSTRUCTION NO. 3

You may use the notes taken by you during the trial.  Remember, however, that notes are not evidence.  If your memory should differ from your notes or the notes of other jurors, then you should rely on your memory.

INSTRUCTION NO. 4

At times during trial I ruled on the attorneys' objections to admitting certain items into evidence.  Questions relating to the admissibility of evidence are solely questions of law for me.  You must not concern yourselves with the reasons for my rulings, and do not draw any inferences from my rulings.  Consider only the evidence admitted.

INSTRUCTION NO. 5

Some evidence is admitted for a limited purpose only.  When I have instructed you that particular evidence is admitted for a limited purpose, you must consider that evidence only for that purpose and for no other.

INSTRUCTION NO. 6

Counsel's statements, arguments, and remarks are intended to help you understand the evidence and apply the law, but they are not evidence.  You should disregard any such comment that has no basis in the evidence.

## INSTRUCTION NO. 7

You must weigh and consider the evidence without favoritism for or prejudice against either party.  Do not be influenced by anything not within the issues stated in my instructions.  Sympathy should not affect your deliberations.

INSTRUCTION NO. 8

In this case, defendant Dow is a corporation and many of the members of the Plaintiff Class are corporations.  This should make no difference to you.  You must decide this case as if it were between individuals.  All persons, including corporations, stand equal before the law, and are to be dealt with as equals in a court of justice.

A corporation may act only through people such as its agents or employees.  In general, any agents or employees of a corporation may bind the corporation by their acts and statements made while acting within the scope of their duties as employees of the corporation.

INSTRUCTION NO. 9

I have not intended in anything that I have said or done – not in these instructions, in any ruling, or in any action or remark I may have made during trial – to suggest how I would resolve any of the questions entrusted to you, the jury, in this case.

INSTRUCTION NO. 10

During this trial, evidence was presented to you in the form of video depositions.

A deposition is the sworn testimony of a witness taken before trial.  Deposition testimony

is entitled to the same consideration and is to be judged, insofar as possible, in the same

way as if the witness testified in court.

INSTRUCTION NO. 11

As I mentioned to you at the outset, this case is proceeding as a class action.  A class action procedure allows the filing of one lawsuit by a representative or a small number of representatives on behalf of a whole group of plaintiffs who have similar claims.  You should not hold the physical absence of any class member against Class Plaintiffs.  Your verdict here will be binding on all class members.

The Plaintiff Class is comprised of all persons and entities who purchased urethane chemicals directly from Dow, BASF, Bayer, Huntsman, or Lyondell in the United States and its territories from January 1, 1999, through December 31, 2003.  The urethane chemicals at issue in this case are:   polyether polyols; MDI; TDI; and systems made up of an isocyanate and a polyether polyol.  In this trial urethane chemicals sometimes have been referred to as Polyether Polyol Products.

INSTRUCTION NO. 12

Class Plaintiffs allege that Dow violated Section 1 of the federal Sherman Antitrust Act by entering into a price-fixing antitrust conspiracy with other major urethane chemical manufacturers – BASF, Bayer, Huntsman, and Lyondell – to fix, raise, or stabilize the prices for MDI, TDI, polyols, and systems sold in the United States.  Class Plaintiffs allege that that conspiracy existed at least as early as January 1999 and existed through December 31, 2003.  Class Plaintiffs further allege that, as a result of that conspiracy, they suffered injury in the form of damages, in that they paid more for urethane chemicals than they would have paid if there had been no conspiracy.  Dow denies that such a conspiracy existed or that it participated in any such conspiracy, and it disputes the fact and amount of any damages.

INSTRUCTION NO. 13

Section 1 of the Sherman Antitrust Act prohibits contracts, combinations, or conspiracies that unreasonably restrain trade.  Any agreement to fix, raise, or stabilize prices constitutes an unreasonable restraint of trade in violation of the Sherman Antitrust Act.

To prevail on their antitrust claim, Class Plaintiffs must prove the following two elements by a preponderance of the evidence:

First, the existence of a conspiracy among Dow and one or more of the other urethane manufacturers to fix, raise, or stabilize the prices for urethane chemicals sold in the United States; and

Second, that the conspiracy caused Class Plaintiffs to suffer injury to their business or property.

INSTRUCTION NO. 14

The Class Plaintiffs allege that Dow and the other urethane manufacturers participated in a conspiracy to fix, raise, or stabilize the prices of urethane chemicals sold in the United States. A conspiracy is an agreement by two or more persons to accomplish some unlawful purpose or to accomplish a lawful purpose by unlawful means. For purposes of these instructions, "persons" may include corporations.

The Class Plaintiffs must prove both of the following elements by a preponderance of the evidence:

First, that the alleged conspiracy existed, and

Second, that Dow knowingly became a member of that conspiracy; knowingly means voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

A conspiracy is a kind of "partnership" in which each person found to be a member of the conspiracy is liable for all acts and statements of the other members made during the existence of and in furtherance of the conspiracy. To create such a relationship, two or more persons must enter into an agreement that they will act together for some unlawful purpose or to achieve a lawful purpose by unlawful means.

To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which

15

they would accomplish their purpose.  The agreement itself may have been entirely unspoken.  What the evidence must show to prove that the conspiracy existed is that the alleged members of the conspiracy in some way came to an agreement to accomplish a common purpose.  It is the agreement to act together that constitutes the conspiracy. Whether the agreement succeeds or fails does not matter.

A conspiracy may be formed without all parties coming to an agreement at the same time, such as where competitors, without previous agreement, separately accept invitations to participate in a plan to restrain trade.  The agreement may be shown if the proof establishes that the parties knowingly worked together to accomplish a common purpose.  It is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement.

Direct proof of an agreement may not be available.  A conspiracy may be disclosed by the circumstances or by the acts of the members.  Therefore, you may infer the existence of an agreement from what you find the alleged members actually did, as well as from the words they used.  Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not, by itself, establish the existence of a conspiracy.  If those persons acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

16

It is not necessary that the evidence show that all of the means or methods claimed by the Class Plaintiffs were agreed upon to carry out the alleged conspiracy; nor that all of the means or methods that were agreed upon were actually used or put into operation; nor that all the persons alleged to be members of the conspiracy actually were members. What the evidence must show is that the alleged conspiracy of two or more persons existed, that one or more of the means or methods alleged was used to carry out its purpose, and that Dow knowingly became a member of the conspiracy.

In determining whether an agreement has been proved, you must view the evidence as a whole and not piecemeal. In considering the evidence, you first should determine whether or not the alleged conspiracy existed. If you conclude that the conspiracy did exist, you should next determine whether Dow knowingly became a member of that conspiracy with the intent to further its purposes.

INSTRUCTION NO. 15

In support of their allegation of a conspiracy, Class Plaintiffs have alleged that Dow and the other urethane chemical manufacturers engaged in similar acts or parallel conduct, such as the announcement of identical or similar price increases at or near the same time. Such evidence that the manufacturers may have engaged in identical or similar business practices does not alone establish an agreement to fix prices because such practices may be consistent with lawful, ordinary, and proper competitive behavior in a free and open market.

The Sherman Antitrust Act prohibits agreements between two or more competitors to fix, raise, or stabilize prices. It does not prohibit independent behavior even if such behavior is similar or identical to that of competitors; such behavior may be no more than the result of the exercise of independent judgment in response to identical or similar market conditions. Thus, a business may lawfully charge prices identical to those charged by its competitors and not violate the Sherman Act. A business may even copy the prices of a competitor or follow and conform exactly to the price policies and price changes of its competitors. Likewise, a business does not violate the Sherman Act by taking some action in the hope or belief that its competitors will follow, so long as it has not reached an agreement with its competitors. Parallel conduct, without more, does not violate the law.

18

You should consider all of the evidence as a whole in determining whether any similarity or identity of prices or conduct resulted from the independent business judgment of the individual manufacturers freely competing in the open market, or whether it resulted from an agreement between two or more of them.

INSTRUCTION NO. 16

Class Plaintiffs contend that the common participation by Dow and other urethane manufacturers in trade associations provided opportunities for the urethane manufacturers to communicate regarding the alleged price-fixing conspiracy involving urethane chemicals.  Evidence of opportunities to conspire is not sufficient, by itself, to demonstrate that a conspiracy existed.  Opportunity evidence may be considered with other evidence, however, in determining whether a conspiracy existed.

INSTRUCTION NO. 17

Evidence that Dow and other urethane chemical manufacturers actually engaged in price competition in some manner has been admitted to assist you in deciding whether they entered into the alleged conspiracy.  If you find that the alleged conspiracy existed, however, it is no defense that the manufacturers actually competed in some respects with each other or that they did not eliminate all competition between them.  Similarly, a price-fixing conspiracy is unlawful even if it did not extend to all products sold by the manufacturers or did not affect all of their customers or transactions.

INSTRUCTION NO. 18

The fact that BASF, Bayer, Huntsman, and Lyondell are not here as defendants has nothing to do with the merits of the claim against Dow, and must not play any part in your consideration of this case.  You should not hold the absence of these urethane manufacturers from this trial against either Class Plaintiffs or Dow.

INSTRUCTION NO. 19

If you find that Dow has violated Section 1 of the Sherman Antitrust Act as alleged by Class Plaintiffs, then you must decide if Class Plaintiffs are entitled to recover damages from Dow.  Class Plaintiffs are entitled to recover damages for an injury to their business or property if they can establish (1) that they were in fact injured as a result of Dow's alleged violation of the antitrust laws, and (2) that Dow's alleged illegal conduct was a material cause of injury to Class Plaintiffs.

With respect to the first element, proving the fact of injury does not require Class Plaintiffs to prove the dollar value of their injuries.  It requires only that they were in fact injured by Dow's alleged antitrust violation.  If you find that Class Plaintiffs have established that they were in fact injured, you may then consider the amount of their damages.  It is important to understand, however, that injury and amount of damages are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Class Plaintiffs have established that they were in fact injured.

With respect to the second element, Class Plaintiffs must establish that Dow's alleged illegal conduct was a material cause of plaintiffs' injuries.  This means that Class Plaintiffs must prove that some damage occurred to them as a result of Dow's alleged antitrust violation.  Class Plaintiffs are not required to prove that Dow's alleged antitrust violation was the sole cause of their injuries; nor must they eliminate all other possible causes of injury.  It is enough if Class Plaintiffs have proved that the alleged antitrust

violation was a material cause of their injuries.  However, if you find that Class Plaintiffs' injuries were caused primarily by something other than the alleged antitrust violation, then you must find that they have failed to prove that they are entitled to recover damages from Dow.

Thus, if Class Plaintiffs can establish that they were in fact injured by Dow's conduct and that Dow's conduct was a material cause of their injuries, then Class Plaintiffs are entitled to recover damages for the injuries to their business or property.

INSTRUCTION NO. 20

If you find that Dow violated the antitrust laws and that this violation caused injury to Class Plaintiffs, then you must determine the amount of damages, if any, Class Plaintiffs are entitled to recover.  The law provides that Class Plaintiffs should be fairly compensated for all damages to their business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

The purpose of awarding damages in an antitrust action is to put an injured plaintiff as nearly as possible in the position in which it would have been if the alleged antitrust violation had not occurred.  The law does not permit you to award damages to punish a wrongdoer – what we sometimes refer to as punitive damages – or to deter the defendant from particular conduct in the future, or to provide a windfall to someone who has been the victim of an antitrust violation.  You are also not permitted to award to Class Plaintiffs an amount for attorney fees or the costs of maintaining this lawsuit.  Antitrust damages are compensatory only.  In other words, they are designed to compensate a plaintiff for the particular injuries it suffered as a result of the alleged violation of the law.

Class Plaintiffs claim that they were harmed because they paid higher prices for urethane chemicals than they would have paid if there had been no conspiracy.  If you have determined that there was a conspiracy among Dow and the urethane chemical manufacturers to fix, raise, or stabilize the prices of urethane chemicals, and that this conspiracy caused some injury to Class Plaintiffs, you must now consider the extent of

25

Class Plaintiffs' damages.  A proper method of calculating those damages is to award Class Plaintiffs the difference between the prices they actually paid and the prices they would have paid in the absence of the alleged price-fixing conspiracy.

Damages may not be based on guesswork or speculation.  If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages.

You are permitted to make reasonable estimates in calculating damages.  It may be difficult for you to determine the precise amount of damage suffered by Class Plaintiffs. If Class Plaintiffs establish with reasonable probability the existence of an injury materially caused by the conspiracy, you are permitted to make a just and reasonable estimate of the damages.  There must be a reasonable basis in the evidence for a damages award, but damages need not be determined with absolute mathematical certainty.  The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates.  Class Plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

INSTRUCTION NO. 21

Each participant in a conspiracy that violates the antitrust laws is "jointly and severally" liable for all of the damages resulting from the conspiracy.  This means that each conspirator is fully liable for all of the damages caused by acts of any other member of the conspiracy done pursuant to, or in furtherance of, the conspiracy.  Moreover, one who knowingly joins an ongoing conspiracy is liable for the previous acts of the other conspirators in furtherance of the conspiracy.

Accordingly, if you find that Class Plaintiffs have proven the existence of the alleged conspiracy involving urethane chemical manufacturers and are otherwise entitled to recover damages from Dow, then Dow would be liable for all damages caused by the conspiracy.  Thus, in that event, Dow would be liable for overcharges on all purchases of urethane chemicals by Class Plaintiffs from all members of the conspiracy, and not merely on purchases from Dow.  If, however, you find that any of the other urethane manufacturers (namely, Bayer, BASF, Huntsman, or Lyondell) was not a member of the conspiracy, then Dow would not be liable for damages based on purchases from that manufacturer.

27

INSTRUCTION NO. 22

You should not consider the fact that I have instructed you about the proper measure of damages as an indication of my views regarding which party is entitled to your verdict in this case.  I am giving you instructions about damages solely to provide you with guidance if you should find in favor of Class Plaintiffs.

INSTRUCTION NO. 23

In the event that you find that Dow is liable to Class Plaintiffs for damages, you must consider the issue of fraudulent concealment.

The statue of limitations bars any recovery by Class Plaintiffs based on sales before November 24, 2000, which is four years prior to the date the Class Plaintiffs brought suit. There is an exception to this rule, however, based on the theory of fraudulent concealment. Class Plaintiffs may recover for a purchase made earlier than November 24, 2000, only if they prove that Dow fraudulently concealed the conspiracy within four years of that purchase.

To establish fraudulent concealment, Class Plaintiffs must show each of the following three elements by a preponderance of the evidence:

First, the use of fraudulent means to conceal the conspiracy;

Second, successful concealment from Class Plaintiffs; and

Third, that Class Plaintiffs did not know, or by the exercise of due diligence could not have known, that they might have a price-fixing claim.

With respect to this claim of fraudulent concealment, Dow not only is responsible for its own acts of concealment, but also is deemed responsible for any acts of concealment committed by any urethane manufacturer that you find to have been a member of the conspiracy, as long as that act of concealment occurred during the course

29

and in furtherance of the conspiracy (based on the duration of the conspiracy as found by you).

INSTRUCTION NO. 24

To establish the first element of fraudulent concealment – the use of fraudulent means to conceal the conspiracy – Class Plaintiffs must show affirmative acts of concealment.  Mere silence does not constitute fraudulent concealment.  The affirmative acts of concealment need not be acts entirely separate from the antitrust conspiracy, but may include acts giving rise to the conspiracy.

Class Plaintiffs allege the following types of affirmative acts to conceal the alleged conspiracy:  meeting and communicating in secret; and issuing false and pretextual price increase announcements.

INSTRUCTION NO. 25

You are to determine the weight and credit to give each witness's testimony.  You have a right to use common knowledge and experience in evaluating witnesses' testimony.

INSTRUCTION NO. 26

A witness's credibility may be attacked by evidence that on some former occasion he or she made a statement, acted in a manner, or gave deposition testimony that was inconsistent with his or her testimony in this case.

You may consider such evidence only insofar as it may impact the witness's credibility – that is, only in deciding the weight and credit to be given to that witness's testimony.

INSTRUCTION NO. 27

Certain testimony has been given in this case by experts – that is, by persons who are specially qualified by experience or training and possess knowledge on matters not common to mankind in general. The law permits such persons to give their opinions regarding such matters. The testimony of experts is to be considered like any other testimony and is to be tried by the same tests, and should receive such weight and credit as you deem it entitled to, when viewed in connection with all the other facts and circumstances, and its weight and value are questions for you.

INSTRUCTION NO. 28

Burden of proof means burden of persuasion.

Class Plaintiffs have the burden of proof with respect to their claims.  Class Plaintiffs  must prove their claims by a preponderance of the evidence.  This means that, in order to prevail on a particular claim, Class Plaintiffs must persuade you that the claim is more probably true than not true.

In determining whether Class Plaintiffs have met their burden of proof, consider all the evidence, whether produced by Class Plaintiffs or Dow.  The weight of the evidence on any issue is not determined by the number of witnesses, but rather by how reasonable, persuasive, and satisfying the evidence is to you.

INSTRUCTION NO. 29

There are two types of evidence.  One is direct evidence, such as the testimony of someone who claims to have seen or heard an event.  The other is circumstantial evidence, such as evidence from which you can reasonably draw inferences about whether an event did or did not occur.

The law does not distinguish between direct and circumstantial evidence, but rather simply requires the jury to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

INSTRUCTION NO. 30

You are the exclusive judges of the facts proved, the weight of the evidence, and the credibility of the witnesses.  In determining the issues in this case you will, of course, rely upon the evidence you heard in the courtroom and will not be swayed by sympathy, passion, or prejudice.  You may and should, however, rely on the general information you possess as to matters of common knowledge, observation, and life experience.  In weighing the testimony of witnesses, you may consider their appearance, demeanor, means of knowledge, apparent intelligence or ignorance, whether or not they have an interest in the outcome of the case, and all other facts and circumstances evident at trial that will help you determine the truth.

If you believe that any witness testified falsely about any material fact, you may disregard all or any part of his or her testimony, but you are not required to believe or disbelieve the testimony of any witness.  You should reconcile any conflicting testimony as truthful if reasonably possible, but if doing so is not possible then use your best judgment in determining what testimony to believe.

When weighing conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail.  You should keep in mind that making an innocent mistake in memory – like being unable to remember – is not uncommon.

37

INSTRUCTION NO. 31

Your verdict must represent the considered judgment of each juror.  In order to return a verdict, each juror must agree upon the verdict and your verdict must be unanimous.

If you do not reach a verdict, the parties may be put to the expense of another trial and will once again have to endure the mental and emotional strain of a trial.  If the case is retried, a future jury must be selected in the same manner and from the same source as you have been chosen, and there is no reason to believe that the case would ever be submitted to a more competent jury.  There is no reason to believe that there will be more or clearer evidence produced at a future trial.

As jurors you have a duty to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but do so only after considering the evidence impartially with your fellow jurors.  In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if you become convinced that it is wrong.  But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans.  You are judges – judges of the facts.  Your sole interest is to ascertain the truth from the evidence in the case.

INSTRUCTION NO. 32

In considering the evidence in this case, you should use your good sense, consider the evidence only for those purposes for which it was admitted, and give the evidence a reasonable and fair construction in light of your common knowledge of the natural tendencies and inclinations of human beings.

You are to perform your duty without bias as to any party or person.  The law does not permit jurors to be governed by sympathy, prejudice, or public opinion.

INSTRUCTION NO. 33

When you retire to the jury room, you should first select one of you as the foreperson to preside over your deliberations, speak for the jury when in court, and sign the verdict.

Your verdict must be founded entirely upon the evidence admitted and the law that I have given to you in these instructions.

Your verdict must be unanimous.  Once you reach a unanimous verdict, the foreperson should fill in, date, and sign the verdict form.  The foreperson will carry the completed verdict into the courtroom and, after we have returned to the courtroom, hand it to the clerk when instructed to do so.

INSTRUCTION NO. 34

If it becomes necessary during your deliberations to communicate with me, please do so by giving a note to the bailiff who, in turn, will pass the note along to me. The note must be signed by your foreperson or by one or more of you. None of you should ever attempt to communicate with me about the merits of the case in any way other than by a signed writing. I will not communicate with any of you on any subject involving the merits of the case other than in writing, or orally here in open court.

You will note from the oath about to be taken by the bailiffs that they and all other persons are forbidden from communicating with any of you about any subject involving the merits of the case.

Bear in mind also that you are never to reveal to any person how the jury stands numerically or otherwise on the questions before you until after you have reached a unanimous verdict.


19 February 2013
Date

John W. Lungstrum
United States District Judge

41