# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IN RE:                                                )
URETHANE ANTITRUST LITIGATION    )        MDL No. 1616
                                                          )        Case No. 04-1616-JWL
This document relates to:                      )
The Polyether Polyol Cases                   )
_____)

## MEMORANDUM AND ORDER

In this multi-district class action, the claim by plaintiff class that defendant Dow Chemical Company ("Dow") conspired with other manufacturers to fix prices for certain urethane chemical products, in violation of the Sherman Act, 15 U.S.C. § 1, was tried to a jury over a period of four weeks. On February 20, 2013, the jury returned a verdict in plaintiffs' favor. Specifically, the jury found that Dow participated in a price-fixing conspiracy; that the conspiracy caused plaintiff to pay more for chemicals than they would have absent the conspiracy; that such overpayments did not include any overpayments prior to November 24, 2000 (the date four years prior to the filing of this suit); and that plaintiffs suffered damages in the amount of $400,049,039.00.

This matter now comes before the Court on Dow's motion to decertify the class (Doc. # 2706) and its post-trial motion for judgment as a matter of law or for a new trial (Doc. # 2808). For the reasons set forth below, the Court **denies** both motions. The Court also modifies the class certified in this case to exclude purchases in 2004.

## I.    Motion to Decertify the Class

### A.    Untimely Motion

On July 28, 2008, the Court issued its order certifying a class in this case.  On January 22, 2013—one day before the start of trial—Dow filed a motion to decertify the class.  The Court took the motion under advisement and granted leave to the parties to supplement the motion and plaintiffs' opposition in connection with the briefing on Dow's post-trial motion.[1]

Dow purports to base its motion to decertify on events that have occurred since the Court's 2008 certification order.  Dow's arguments are based primarily on the opinions of Dr. James McClave, plaintiffs' damages expert, who created a model purporting to show that prices paid during the alleged conspiracy period exceeded those prices that would have been paid absent a price-fixing conspiracy.  Dow has had Dr. McClave's expert report, however, since April 2011.  All of the issues raised in Dow's original brief in support of its motion to decertify could have been raised at least a year before trial.  Dow has not offered any reason why it could not have filed its motion much earlier and why it instead filed its motion literally on the eve of trial.  Reconsideration of the Court's certification order at that time or even post trial would cause severe prejudice to plaintiffs, who prepared for a long and complex trial at great expense and

---

[1]The Court has deferred issuing a judgment in this case until after the Court's resolution of this motion to decertify the class.  *See* Fed. R. Civ. P. 23(c)(1)(C) (allowing for modification of a class certification order before final judgment).

who might find it much more difficult to assert individual claims at this time. Accordingly, except with respect to issues based on events occurring at trial or based on the Supreme Court's recent *Comcast* opinion, the Court denies this motion as untimely. *See, e.g.*, *Gortat v. Capala Bros., Inc.*, 2012 WL 1116495, at *4 (E.D.N.Y. Apr. 3, 2012) (late stage of litigation weighs against decertification; granting the eleventh-hour motion to decertify, where facts were known for well over a year, would prejudice class members who have not taken independent steps to protect their rights); *In re Sulfuric Acid Antitrust Litig.*, 847 F. Supp. 2d 1079, 1083 (N.D. Ill. 2011) (reconsideration of four-year-old certification order two months before trial after reassignment of the case to a new judge was inappropriate where issues could have been raised at the time of the original order; rescinding order would cause undue harm to plaintiffs); *Easterling v. Connecticut Dept. of Corr.*, 278 F.R.D. 41, 44 (D. Conn. 2011) ("A court should be wary of revoking a certification order at a late stage in the litigation process.") (citing *Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984)); *In re Scrap Metal Antitrust Litig.*, 2006 WL 2850453, at *20 (N.D. Ohio Sept. 30, 2006) ("request to decertify the Plaintiff Class literally on the eve of trial was inappropriate and untimely").[2]

The Court further notes that, even if these issues had been raised in a timely

---

[2]Dow notes that Fed. R. Civ. P. 23(c)(1)(C) allows for alteration or amendment of a certification order before final judgment, and it argues that the Court's certification order in this case was therefore inherently tentative. That rule, however, does not sanction untimely motions for decertification based on issues known to the movant for a long time.

fashion, they would have failed on their merits. First, Dow notes that under Dr. McClave's model, a few class members did not suffer any damages, and Dow argues that each class member must suffer harm from the alleged conspiracy. The Court agrees with plaintiffs, however, that all members of the class may be shown to have been impacted by a conspiracy that elevates prices above the competitive level, even if some members may have mitigated their damages or otherwise did not suffer damages that may be quantified. Moreover, Dow has not cited any authority supporting the argument that the presence of a few "zero-damages" class members necessarily defeats certification. In fact, caselaw is to the contrary. For instance, the Seventh Circuit has noted that a class will almost inevitably include persons who have not been injured by the defendant's conduct, and that fact (or even inevitability) does not preclude certification. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 823 (7th Cir. 2012) (quoting *Kohen v. Pacific Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009)). The Seventh Circuit further noted that a class is too broad to permit certification only if it includes a great number of members who *could* not have been harmed by the defendant's conduct (as opposed to a great number who *ultimately* are shown to have suffered no harm). *See id.* at 824. Indeed, a "fail-safe" class consisting only of members who suffered damages may be improper because whether the person qualifies as a member then might depend on whether he has a valid claim. *See id.* at 825. In this case, plaintiffs have shown persuasively that only a very small percentage of class members suffered no damages (particularly considering the class as re-defined, below). Thus, the presence of those few

members does not compel decertification.[3]

Second, Dow points to the fact that Dr. McClave's model provided for the extrapolation of damages for some class members. Dow argues that Dr. McClave therefore did not show that such members suffered an adverse impact from the alleged conspiracy. Dow did not seek to exclude Dr. McClave's testimony on this basis before trial, however, and Dr. McClave was thus permitted to testify that such members did suffer impact and damages. Nor has Dow provided any expert opinion at this time to show that Dr. McClave's method was unreliable. Again, Dow has failed to support this argument with any relevant precedent, and the Court is not persuaded that Dr. McClave's model was not capable of showing impact and the amount of damages in a class-wide manner.[4]

Third, Dow complains that 2004 purchases were included in the class definition even after plaintiffs abandoned any claim of a conspiracy during that year. As plaintiffs note, however, any problems from the inclusion of such members within the class are obviated by modification of the class to exclude those members. Dow opposes such a

---

[3]For the same reason, the Court rejects Dow's argument that decertification is warranted by the fact that some class members' claims (those prior to November 24, 2000) failed at trial. The claims were capable of class-wide proof, and Dow has not provided any authority suggesting that the failure of some claims provides a basis for decertification post trial.

[4]The Court also rejects Dow's argument that decertification is appropriate because plaintiffs failed to prove classwide impact or a basis for aggregate damages at trial. The Court previously held that these elements were capable of class-wide proof, and Dow has not provided any basis for reconsideration of that ruling.

modification, but at this stage, such modification is far superior to decertification. *See Woe*, 729 F.2d at 107 ("Indeed, it is an extreme step to dismiss a suit simply by decertifying a class, where a 'potentially proper class' exists and can easily be created."). As Dow has stressed in seeking decertification, Rule 23 permits alteration of the class certification order before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C). Dow has not pointed to any significant prejudice from plaintiffs' failure to seek a modification of the class definition before trial.[3] Dow had clear notice of the temporal scope of plaintiffs' claim well before trial, and the Court actually instructed the jury as if the class included only purchasers through 2003. Thus, the Court now modifies the definition of the plaintiff class to exclude the year 2004. *See, e.g.*, *Garcia v. Tyson Foods, Inc.*, 890 F. Supp. 2d 1273, 1297 (D. Kan. 2012) (modifying class definition post trial) (citing authority).

Fourth, Dow argues that plaintiffs' claim of fraudulent concealment presents individual issues too substantial to allow for class certification. The Court notes that, because of the jury's verdict, no such individual issues were considered, and Dow has not cited any authority suggesting that such issues could nonetheless provide the basis for post-trial decertification. Moreover, Dow's argument on this issue has not changed since the Court's certification order, and the Court declines to reconsider that order as

---

[3]The Court does not agree with Dow that prejudice arises from the possibility that 2004-only purchasers might now bring individual suits that will escape the MDL process.

it relates to this issue.

## B. *The Supreme Court's* Comcast *Opinion*

In its reply brief, Dow raised a new argument based on the Supreme Court's opinion in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), issued on March 27, 2013. Specifically, Dow argues that Dr. McClave's model and opinions do not provide a proper causal link between plaintiff's theory of liability and the impact on the class members, and that impact is therefore incapable of class-wide proof as required for certification of a class action. This argument, based on Dr. McClave's expert report, is arguably untimely, as it could have been raised well before trial. Moreover, Dow failed to raise this specific argument in either its original brief in support of its motion for decertification or its supplemental post-trial brief, and the Court would ordinarily refuse to entertain an argument raised for the first time in a reply brief. Nevertheless, in light of the intervening Supreme Court decision and the fact that plaintiffs were given an opportunity to file a sur-reply addressing the *Comcast* opinion, the Court will consider the merits of this argument.

In *Comcast*, which related to the provision of cable-television services, plaintiffs alleged illegal swap agreements in violation of Section 1 of the Sherman Antitrust Act and monopolization in violation of Section 2 of that Act. *See id.* at 1430. Plaintiffs alleged four different theories of antitrust impact, but the district court accepted only one of those theories as capable of classwide proof. *See id.* at 1431. The Supreme Court reversed the district court's class action certification on the basis that plaintiffs'

regression model (created by the same Dr. McClave who testified in this case) did not isolate damages resulting from the sole accepted theory of antitrust impact, but instead was based on a determination of hypothetical prices in the absence of all of the anticompetitive activities alleged by the plaintiffs. *See id.* at 1431-35. Thus, the Court held that the model failed to establish that damages were capable of measurement on a classwide basis, and in the absence of another methodology, questions of individual damage calculations would overwhelm common questions, and plaintiffs could therefore not establish predominance under Fed. R. Civ. P. 23(b)(3). *See id.* at 1433.

Dow argues that Dr. McClave's model in the present case is similarly flawed. Specifically, Dow notes that in his expert report, Dr. McClave stated that plaintiffs had alleged an illegal conspiracy to fix prices and to allocate customers, that he had assumed that those allegations are true, and that he had determined impact to the class from such activities by determining what prices would have been in the absence of those activities. Because plaintiffs later abandoned their theory relating to the allocation of customers, Dow thus argues that, as in *Comcast*, Dr. McClave's model cannot provide a proper causal link between the sole remaining theory (price-fixing) and impact to the class in the form of supracompetitive prices, because Dr. McClave's model cannot exclude the possibility that other prohibited conduct (the allocation of customers) actually caused prices to exceed competitive levels.

The Court rejects this argument. The key distinction between this case and *Comcast* is the stage of litigation involved. In *Comcast*, the district court certified a class

8

action based on particular testimony by Dr. McClave, and the Supreme Court found that testimony insufficient on interlocutory appeal. In the present case, Dow did not raise this issue at the pretrial class certification stage. Nor did Dow raise this issue in attacking the reliability of Dr. McClave's methodology in its pretrial *Daubert* motion, and the Court concluded that Dr. McClave's methodology was sufficiently reliable to allow his expert testimony. Nor did Dow object to Dr. McClave's testimony at trial on this basis. Thus, on the present state of the record, Dr. McClave's methodology is defined by his trial testimony.

At trial, Dr. McClave gave his opinion that the conspiracy alleged by plaintiffs—a horizontal price-fixing conspiracy—impacted nearly every class member because prices during the alleged conspiracy period exceeded those that would have prevailed absent that conspiracy, which competitive prices were determined from an analysis of prices during a post-conspiracy benchmark period. Thus, in his testimony, Dr. McClave did provide a causal link between the single price-fixing conspiracy alleged by plaintiffs at trial and the impact to plaintiffs. Although Dow points to Dr. McClave's initial report, that report was not in evidence at trial. Dow did not object to his testimony on this basis, and Dow had every opportunity to cross-examine him about whether the impact on plaintiffs could have resulted from some other wrongdoing, such as customer allocation. Neither side presented any evidence at trial of any illegal customer allocation. Accordingly, there is no basis to strike Dr. McClave's testimony or to conclude that his methodology could not provide a proper causal link between plaintiff's theory of liability

and the classwide impact. Dow's motion for decertification is therefore denied.

## II.    Motion for Judgment Based on the Verdict

Dow argues that it is entitled to judgment as a matter of law on plaintiff's antitrust claim based on the jury's verdict. Specifically, Dow argues that plaintiffs alleged a single five-year price-fixing conspiracy lasting from 1999 through 2003; that the jury's award of damages only beginning in November 2000 shows that it did not find a conspiracy of the five-year duration alleged by plaintiffs; and that plaintiffs' sole claim therefore fails. The Court rejects this argument for judgment in Dow's favor.

Dow essentially argues, without any supporting authority, that plaintiffs were required to predict, with temporal exactness, the precise conspiracy that the jury would find. In other words, according to Dow, if the jury decided that the conspiracy did not exist for even a single day within the alleged conspiracy period, or that plaintiffs otherwise failed to meet their burden of proof to show a conspiracy and impact and damages with respect to that single day, then plaintiffs' entire claim of conspiracy would fail as a matter of law. Dow has not shown that that position represents the law of antitrust conspiracy, however, and the absurdity of its premise—that Dow could escape liability for an illegal antitrust conspiracy because plaintiffs alleged a longer conspiracy than that found by the jury—convinces the Court that it should not create new law by adopting Dow's position. As the Court instructed, the jury was not required to find that all of the means and methods alleged by plaintiffs were actually used to carry out the

conspiracy; nor was it required to find that each of the alleged co-conspirators actually participated in the conspiracy. *See ABA Model Jury Instructions in Civil Antitrust Cases* at B-4 (2005); *see also, e.g.*, *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 476 (10th Cir. 1990) (in criminal antitrust case, jury was not required to find conspiracy involving all of the alleged co-conspirators).

In this case, the jury found that plaintiffs were harmed by an illegal conspiracy involving Dow for at least a portion of the period alleged by plaintiffs. The fact that plaintiffs failed to prevail with respect to the entire period does not provide a basis to award Dow judgment on the entire claim. Accordingly, Dow's motion is denied with respect to this issue.

### III.     Motion for Judgment as a Matter of Law

Dow seeks judgment as a matter of law based on its argument that the evidence was not legally sufficient to establish its liability. Judgment as a matter of law under Fed. R. Civ. P. 50(b) is improper "unless the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion." *See Crumpacker v. Kansas Dept. of Human Resources*, 474 F.3d 747, 751 (10th Cir. 2007). In determining whether judgment as a matter of law is proper, a court may not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *See Sims v. Great American Life Ins. Co.,* 469 F.3d 870, 891 (10th Cir. 2006). In essence, the court must affirm the jury verdict if, viewing the record in the light most

favorable to the nonmoving party, it contains evidence upon which the jury could properly return a verdict for the nonmoving party. *See Bartee v. Michelin North America, Inc.*, 374 F.3d 906, 914 (10th Cir. 2004). Conversely, a court may enter judgment as a matter of law in favor of the moving party only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for the issue against that party." *See Sims*, 469 F.3d at 891 (citing Fed. R. Civ. P. 50(a)(1)).

### A.    *Classwide Impact and Damages*

Dow argues that plaintiffs' evidence of classwide impact and damages was insufficient. The Supreme Court has traditionally followed a rule "excusing antitrust plaintiffs from an unduly rigorous standard of proving antitrust injury." *See J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 565 (1981). The Supreme Court has noted that damages issues in such cases "are rarely susceptible to the kind of concrete, detailed proof of injury which is available in other contexts," and that a factfinder may reasonably infer injury from proof of the defendant's wrongful acts and their tendency to injury plaintiffs' businesses. *See id.* at 565-66 (quoting *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946)). The Court has also noted that a wrongdoer should not be able insist upon a stricter standard of proof of the injury that it has itself inflicted. *See id.* at 566-67. Similarly, in *Law v. National Collegiate Athletic Association*, 5 F. Supp. 2d 921 (D. Kan. 1998), the court noted that antitrust plaintiffs' "burden in proving fact of injury may be discharged by reasonable inferences from circumstantial evidence," and that "[a]ny evidence which is logically probative of a loss

attributable to the violation will advance plaintiffs' case." *See id.* at 927 (citing cases). The court in *Law* further noted that "[a]s a practical matter, in a class action context, proof of an effective conspiracy to fix prices will include facts which tend to establish—perhaps circumstantially—that each class member was injured." *See id.*

Moreover, as noted above with respect to Dow's motion for decertification, the law does not support Dow's argument that plaintiffs' claim fails if they do not show injuries and damages suffered by each and every class member. *See id.* ("[T]he fact that defendant may be able to defeat a showing of causation as to a few individual class members would not defeat the inference of antitrust injury; the exact amount of injury to each class member should be treated as an issue at the damage phase of the trial.").

In this case, the Court concludes that the evidence, taken in the light most favorable to plaintiffs, was sufficient to establish injury to the class from the alleged price-fixing conspiracy. As plaintiffs have noted, they introduced evidence at trial that Dow participated in a conspiracy with other manufacturers to fix prices; that the conspiracy involved high-ranking executives at the companies who exercised control over pricing decisions across a variety of products; that the alleged conspirators engaged in lockstep pricing and price announcements; that such pricing decisions were effective; that the structure of the industry was conducive to an effective price-fixing conspiracy; and that prices were supracompetitive during the conspiracy period. This evidence, which was not limited merely to experts' opinions, is sufficient to show injury to the class from the alleged conspiracy.

Dow's specific arguments to the contrary are unavailing. Dow argues that the jury's failure to award damages for the period before November 2000 shows that the jury rejected Dr. McClave's model and thus rejected his opinion that the variance between actual prices and his but-for model could be attributed to the alleged price-fixing. Dow therefore argues that no reasonable jury could have concluded that the variance post-November 2000 was attributable only to the wrongful conspiracy. Dow points to its evidence that the variance could be explained by other factors. The Court rejects this argument. There was sufficient evidence, including Dr. McClave's model and testimony, that the post-2000 variance shown by the model was linked to the alleged price-fixing. The fact that the jury found that plaintiffs failed to sustain their burden of proof with respect to one period of time does not necessarily mean that the evidence was not sufficient to support the jury's finding of liability with respect to another period. It cannot be said as a matter of law that the jury rejected Dr. McClave's entire model; indeed, the verdict suggests that the jury accepted that model in finding liability and awarding damages for the later period. The jury may simply have accepted Dow's criticisms or alternative explanations with respect to the earlier period without rejecting Dr. McClave's model entirely. At any rate, there was sufficient evidence supporting the jury's finding of injury for the post-November 2000 period, and the jury was free to reject Dow's arguments with respect to that period.

Dow again cites the Supreme Court's *Comcast* decision in its reply brief, but that opinion is inapposite for the reasons stated above. Dow again points to the two theories

of liability noted in Dr. McClave's report, but as previously discussed, Dr. McClave's trial testimony was premised on only a single theory of price-fixing. Dow did not raise this issue in its *Daubert* motion or otherwise before trial, nor did it object to Dr. McClave's testimony on this basis at trial; thus, the evidence came in, and the jury was entitled to consider it in determining whether the class suffered injury.

Dow also argues that plaintiffs have failed to show classwide injury because Dr. McClave's model included damages that had been estimated or extrapolated for certain class members. The Court rejects this argument. Dow did not challenge the reliability of this aspect of Dr. McClave's method of determining injury and damages to the class, either in its *Daubert* motion or at trial, and the jury thus heard and could rely on evidence that the class suffered injury. The fact that plaintiffs did not offer into evidence Dr. McClave's underlying data and information relating to every single class member is not material; Dow has not cited any authority supporting such a requirement, and Dr. McClave testified that his model showed that nearly all class members suffered overcharges. Moreover, as noted above, plaintiffs' evidence of injury to the class was not limited to Dr. McClave's testimony.

Finally, the Court rejects Dow's argument that the amount of damages was not sufficiently supported by evidence because the jury did not pick a damages figure specifically mentioned by Dr. McClave. Dow has offered no authority supporting that argument. As the Court instructed, the jury was entitled to estimate damages, and the amount of the jury's award is supported by the evidence. Dr. McClave opined that the

class suffered damages for the post-November 2000 period in the amount of $496,680,486. The jury's reduction of that figure to $400,049,039 could reasonably have been reached in a number of ways, as the jury could have accepted one or more of Dow's arguments attacking that damage figure. For instance, the jury might have accepted Dow's arguments with respect to systems and thus decided to exclude Dr. McClave's figure for post-November 2000 damages for those products ($68,079,341). The jury might have accepted Dow's argument that plaintiffs did not prove that Lyondell was a member of the conspiracy and thus reduced damages to account for Lyondell's approximate 20 percent share of TDI damages. The jury might have decided that the conspiracy did not exist for the entirety of the post-November 2000 period. The fact that Dr. McClave did not do the precise mathematical calculations for the jury does not mean that the verdict was not reasonably supported by evidence.

### B. *Conspiracy*

Dow also argues that the evidence at trial was insufficient to support a finding that Dow participated in a price-fixing conspiracy. In so arguing, Dow disputes that there was any direct evidence of a conspiracy; notes that parallel conduct may be expected in an oligopoly; argues that alleged pricing discussions were not extensive; notes the contrary evidence by its own expert; and generally argues that the circumstantial evidence was not enough to tip the scales to allow a reasonable inference that the alleged wrongful conduct occurred because of collusion.

The Court rejects this arguments and concludes that the evidence was sufficient

to support a finding of a price-fixing conspiracy involving Dow. The Court addressed these same arguments at the summary judgment stage, *see In re Urethane Antitrust Litig.*, 2012 WL 6610878, at *2-8 (D. Kan. Dec. 18, 2012), and that analysis applies again here. At trial, plaintiffs presented the following types of evidence: direct evidence of agreements regarding pricing from Stephanie Barbour, Michele Blumberg, and Gerard Phelan; testimony regarding pricing discussions involving various executives; parallel conduct regarding price announcements and price increases; communications, including those involving prices, at or near the time of that parallel conduct; evidence of efforts to maintain the secrecy of communications, particularly those involving pricing; evidence that the alleged conspirators acted in a manner contrary to their interests; expert evidence that the structure of the industry was particularly conducive to collusion; and expert evidence that prices were at a supracompetitive level. Thus, plaintiffs' evidence was not merely limited to evidence of parallel conduct or to evidence of pricing discussions, and the totality of the evidence was sufficient to tip the scales beyond evidence that could reasonably be consistent with competitive behavior and to allow a reasonable inference of collusion. That same kind of evidence was sufficient to escape summary judgment, and plaintiffs presented even more evidence at trial that they did at that stage. Moreover, at trial, the jury was free to judge the credibility of the witnesses, and the jury's rejection of the conspirators' denials was reasonable.

Dow also argues that plaintiffs' conspiracy theory, as stated by their liability expert, Dr. John Solow, included an agreement to penalize cheaters within the

17

conspiracy, and that plaintiffs failed to provide sufficient evidence of such efforts to penalize. The jury was not required specifically to find an agreement to penalize, however, and the Court instructed that the jury did not need to find that all alleged methods were in fact utilized. Moreover, Dr. Solow testified that he did see evidence of efforts to penalize, in support of the conspiracy that he testified about, and such testimony provides any necessary evidentiary support—Dow's own arguments that such evidence was weak notwithstanding.

The Court also rejects the new arguments raised by Dow for the first time in its reply brief. As noted above, such arguments are untimely. Moreover, even if the Court considered them, it would conclude that they lack merit. Dow suggests that the circumstantial evidence was insufficient as it related to specific products; as noted in the Court's summary judgment order, however, there was evidence to include each of the four products at issue within the conspiracy. *See id.* at *9-10. Dow also argues that the evidence of Lyondell's involvement in the conspiracy during the post-November 2000 period was insufficient. Such a failure of proof, however, would not require judgment in Dow's favor, as the jury could reasonably have found a conspiracy involving Dow and at least one of the other manufacturers. Finally, Dow argues that there was no evidence supporting a finding that the conspiracy began on November 24, 2000. The jury made no such finding, however; it merely indicated that none of its damages included overcharges from before that date.

Accordingly, the Court denies Dow's motion for judgment as a matter of law.[4]

## IV.    Motion for a New Trial

### A.    *Verdict Form*

Dow also moves for a new trial based on error by the Court.[5] First, Dow argues that the Court erred in failing to craft the verdict form to require the jury, in the event that it found in plaintiffs' favor, to specify the time period of the conspiracy found, the conspirators, and the products to which the conspiracy related.[6] As it did at trial, the Court rejects this argument. As the Court explained above, the jury was not required to find that a conspiracy existed for the entire period alleged by plaintiffs. Nor was it required to find that the conspiracy involved all of the alleged conspirators or products. A conspiracy to fix prices for any product involving Dow and any other manufacturer for any period within the alleged conspiracy period would give rise to liability. Dow has not identified any authority requiring such specific jury interrogatories. Accordingly,

---

[4]The jury's verdict rendered the issue of fraudulent concealment moot; thus, the Court need not rule on whether plaintiffs' evidence of fraudulent concealment was sufficient.

[5]In a footnote, Dow states, without analysis, that it is entitled to a new trial because the Court should not have denied its *Daubert* motions to exclue testimony by Dr. Solow and Dr. McClave. Because Dow has not supported that basis for a new trial with any argument, the Court will not reconsider its *Daubert* rulings.

[6]Dow also argues that the verdict form should have asked the jury to identify the particular transactions by class members for which damages were awarded. Dow did not propose a verdict form with that inquiry or object to the Court's verdict form on that basis, however, and it has therefore waived that argument.

the Court rejects this basis for a new trial.[4]

> B.  *Instructions*

1.  Dow argues that the Court erred in instructing the jury. First, Dow argues that the Court should have instructed that in order to find for plaintiffs, the jury had to find a conspiracy existing for the entire five-year period alleged by plaintiffs. The Court has already rejected this argument that the jury could not find a shorter conspiracy than alleged. Accordingly, the Court concludes that it did not err in refusing to instruct as urged by Dow. For the same reason, the Court concludes that it did not err in failing to give such an instruction in response to the question asked by the jury.

2.  Dow also argues that the Court erred in the wording of Instruction 14, which defined the concept of a conspiracy for the jury. Dow argues that the Court should have given Dow's proposed instruction, which defined "agreement" as "a meeting of the minds in which each party makes a conscious commitment to a common scheme." The Court does not agree, however, that its instruction misstated the law or was insufficient. Instruction 14 required that the jury find an agreement to act together

---

[4]Dow argues that the absence of information about which class members were injured in what amount would lead to an impermissible "fluid recovery," which Dow defines as "the distribution of unclaimed or unclaimable funds to persons not found to be injured." The case from which Dow takes that definition, however, makes clear that the prospect of a fluid recovery is not implicated in an antitrust class action where damages may be determined on a classwide or aggregate basis and there is no danger that damages cannot be returned to a meaningful number of class members on some individual basis. *See In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 525-26 (S.D.N.Y. 1996).

and that Dow knowingly entered into that agreement. Dow has not explained how such language did not make clear to the jury that a conspiracy requires two parties to consciously commit to a common scheme. Dow has not provided any authority suggesting that the Court's instruction improperly stated the law or that Dow's proposed language was required. Moreover, the Court does not agree that the instruction's statement that a "formal or written agreement" was not required obscures the requirement of an agreement, as the instruction was rife with references to the required agreement. The Court denies this basis for a new trial.

3.     The Court next rejects Dow's challenge to Instruction 17, which related to evidence of competition. Dow argues that competition is a direct defense to a claim of conspiracy, in the sense that actions taken for competitive, non-collusive reasons are not illegal, and it further argues that Instruction 17 did not make that sufficiently clear and in fact suggested that competition might not be a defense. The instruction stated as follows:

> Evidence that Dow and other urethane chemical manufacturers actually engaged in price competition in some manner has been admitted to assist you in deciding whether they entered into the alleged conspiracy. If you find that the alleged conspiracy existed, however, it is no defense that the manufacturers actually competed in some respects with each other or that they did not eliminate all competition between them. Similarly, a price-fixing conspiracy is unlawful even if it did not extend to all products sold by the manufacturers or did not affect all of their customers or transactions.

The Court concludes that this instruction adequately states the applicable law. Evidence of competition may bear on whether a conspiracy existed, and the first sentence so

instructed the jury. The jury was further instructed, however, that an illegal conspiracy could still exist even if the participants did compete in some manner. Dow has not shown why that statement of the law is erroneous. Accordingly, the Court denies this basis for a new trial.

4.      Dow argues that the Court should have instructed the jury that plaintiffs were required to produce evidence that tended to exclude the possibility that Dow acted independently. Dow draws that "tends to exclude" language from *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The Court addressed that standard in its summary judgment order, as follows:

> Dow urges the Court to apply this standard from *Matsushita* by examining every piece of evidence to determine whether it "tends to exclude the possibility" that the alleged conspirators acted independently. The Supreme Court was making clear, however, that the evidence, as a whole, must tip the scales, such that a reasonable jury could find in favor of the plaintiff, before a triable issue is created. That is because, as the Supreme Court made clear in its footnote, conduct that is equally consistent with collusion and competition—ambiguous evidence—does not, *by itself*, support an inference of conspiracy sufficient to defeat summary judgment. *See also Gibson v. Greater Park City Co.*, 818 F.2d 722, 724 (10th Cir. 1987) (noting, in applying *Matsushita*, that evidence is "ambiguous" if it is "as consistent with the defendants' permissible independent interests as with an illegal conspiracy"). Thus, the Court, in examining class plaintiffs' evidence of a conspiracy, must determine whether that evidence is ambiguous, in the sense that it is equally consistent with collusion and competition, or whether a reasonable jury could find that a conspiracy existed, either from direct evidence or from circumstantial evidence that creates a reasonable inference of a conspiracy (or from a combination of the two).

*In re Urethane Antitrust Litig.*, 2012 WL 6610878, at *3. The Court has already concluded that the jury could reasonably have found a conspiracy here. The law then

required the jury to find, by a preponderance of the evidence, that a conspiracy existed, and the Court so instructed the jury. The Court does not believe that its instructions improperly stated the law, or improperly relaxed plaintiffs' burden, by failing to include the "tends to exclude" language from *Matsushita*, and Dow has not provided any authority suggesting that such language was required in the jury instructions. Accordingly, the Court rejects this basis for a new trial.

5.    Dow next argues that the Court erred in refusing to give Dow's proposed instruction relating to document retention and destruction. Dow notes that at trial, plaintiffs stated in their opening that Dow destroyed certain documents despite complaints raised by Stephanie Barbour, and Dow argued at trial that plaintiffs were improperly alleging spoliation. Plaintiffs responded at trial that they were not making a spoliation argument or seeking any sort of instruction providing for an inference that destroyed documents contained information favorable to their case; rather, they argued that evidence of document destruction related to efforts by Dow to cover up the conspiracy. Dow argued at trial that an instruction was required to combat an unfounded suggestion that Dow acted improperly by destroying documents, when there had been no evidence that any destruction was improper. Accordingly, Dow proposed the following instruction:

> You have heard testimony that the files of David Fischer and Bob Wood were subject to the standard and routine application of Dow's record retention process after their employment with Dow ended. I am instructing you that this evidence cannot support a finding or inference of conspiratorial or other improper conduct.

You also heard testimony that computer files of Stephanie Barbour were subject to Dow's record retention process after her employment at Dow ended. Under the process, certain files were preserved and others were not. Those files that were preserved became part of the legal process in this case. I am instructing you that this evidence regarding Ms. Barbour's files cannot support a finding or inference of conspiratorial or any other improper conduct.

The Court concludes that it did not err in refusing to give Dow's proposed instruction. First, plaintiffs' evidence concerning the destruction of documents was admitted by the Court. Dow appears to take issue with the Court's admission of deposition testimony by Arthur Eberhart concerning the destruction of documents, arguing that such evidence was irrelevant and unfairly prejudicial. As the Court ruled at trial, however, evidence that could show an attempt by Dow to cover up its illegal activities would be relevant. *See, e.g.*, *United States v. Curtis*, 635 F.3d 704, 717 (5th Cir. 2011) (acts of concealment are circumstantial evidence of a conspiracy's existence); *United States v. Fields*, 871 F.2d 188, 197 (1st Cir. 1989) (post-conspiracy activity may be admissible if probative of the evidence of a conspiracy). Moreover, Dow has not addressed the Court's ruling that Dow waived any such argument by failing to object to Mr. Eberhart's deposition testimony in a timely manner.

Moreover, the admission of this evidence did not require the Court to give Dow's proposed instruction, as there was no legal component to this evidence requiring explanation for the jury. Dow was entitled to rebut this evidence with its own evidence (to the extent that it had properly designated such witnesses or testimony for trial) and argument that any document destruction was routine and not for nefarious purposes.

Dow's instruction essentially would have invaded the province of the jurors by instructing them that they should agree with Dow and should not draw the inferences properly urged by plaintiffs. Such an instruction was clearly improper, and the Court did not err in refusing to give it.

6. Finally, Dow argues that the Court erred in refusing to give the following instruction:

> During the case you have heard references to an investigation carried out within Dow during 2004 concerning complaints made by Stephanie Barbour in connection with the termination of her employment. You should not speculate about the nature or results or any such investigation, and the references to that investigation should not play any part in your consideration of this case.

Dow also complains about the Court's refusal to give such an instruction during the presentation of evidence in connection with particular testimony.

Before trial, Dow refused to produce documents relating to a 2004 investigation on the grounds that such documents were privileged, and the Magistrate Judge allowed Dow to rely on that privilege on the basis that Dow would not attempt to use evidence about the 2004 investigation at trial. Then, mere days before trial, Dow attempted to produce some of those documents and add them to their exhibit list. The Court did not rule on that request by Dow before trial, other than to prohibit the parties from referring to that investigation before the Court could make a final determination. At trial, Dow did not seek to admit the documents in question, and thus the Court was not called upon to issue a ruling concerning the documents. Instead, Dow repeatedly asked the Court for

an instruction as noted above.

The Court concludes that it did not err in refusing to give this instruction. In its supporting brief, Dow argued that plaintiffs introduced evidence concerning the 2004 investigation, but Dow did not identify any such particular testimony. In its reply, Dow cites to references in Stephanie Barbour's testimony to an investigation that would be conducted of her claims of misconduct, but Dow itself designated such deposition testimony for use at trial. Dow also cites to deposition testimony by David Fischer about an investigation, but Dow failed to object to that testimony in a timely fashion. Thus, Dow waived any argument at trial that objectionable testimony was admitted and that a curative instruction was therefore necessary. Moreover, when the issue was raised in a timely manner at trial, the Court refused to allow either side to present evidence concerning the 2004 investigation.

In summary, the jury heard only a couple of passing references to the 2004 investigation, and that testimony came in without objection. Those references were not significant enough to create any inference within the jury that the results of a 2004 investigation were adverse to Dow, such that Dow was penalized for its invocation of its privilege. Thus, no instruction was required as urged by Dow, and the Court rejects this basis for a new trial.

C.     *Evidence of Larry Stern's Immunity Agreement*

Dow argues that the Court erred in granting plaintiffs' motion in limine to exclude evidence concerning Larry Stern's agreement with the Department of Justice that granted

him immunity from a criminal antitrust prosecution. Dow argues, as it did in connection with the motion in limine, that Mr. Stern was able to stay in a lucrative job by avoiding a criminal investigation; that Mr. Stern therefore had a motive to "embellish" his story to secure an immunity agreement from the DOJ; and that the evidence of the agreement therefore bore on the credibility of his testimony that he engaged in improper pricing discussions with competitors.

The Court concludes that it did not err in excluding this evidence pursuant to Fed. R. Evid. 402 and 403. Both before trial and in this briefing, Dow was unable to explain how there was a link between Mr. Stern's agreement and his credibility at trial. Dow's suggestion that Mr. Stern had a motive to "embellish" his story to the DOJ is pure speculation, as Dow has no information concerning the terms or conditions of Mr. Stern's immunity agreement and his provision of information to the DOJ. In support of the present motion, Dow cites a general DOJ requirement that a person must admit participation in a criminal antitrust violation in order to secure an immunity agreement, but Dow failed to present any such information in connection with the motion in limine or at trial. Moreover, Dow cannot say whether that general requirement was followed in Mr. Stern's case.

In addition, as plaintiffs noted in connection with the motion in limine, Mr. Stern's agreement required him to tell the truth. Thus, the Court concludes that Mr. Stern's incentive to be truthful in talking to the DOJ was just as strong, if not stronger, than any incentive to "embellish" or lie at that time. For that reason, the evidence was

not relevant under Rule 402.

Finally, as the Court ruled at the limine conference, any minimal probative value of this evidence was substantially outweighed by a danger of unfair prejudice, confusion, and undue delay. *See* Fed. R. Evid. 403. Specifically, plaintiffs would have suffered unfair prejudice from a suggestion (clearly intended by Dow) that Mr. Stern somehow acted improperly in seeking an immunity agreement or that he lied to gain an immunity deal, in the absence of evidence to that effect. In addition, the admission of such evidence would unnecessarily have prolonged the trial and possibly confused the jury, as parties would then have been forced to litigate and argue about the reasons why a person might enter into an immunity agreement and the DOJ's practice in offering such agreements. In light of Dow's inability to demonstrate more than speculative relevance, such a diversion into motive and procedures would have created confusion and delay, which would have substantially outweighed any minimal probative value.

Accordingly, the Court denies Dow's motion for a new trial on this basis.

### D.  *Joint and Several Liability*

As its final basis for a new trial, Dow argues that the imposition of joint and several liability in this case, by which Dow is responsible for damages caused by other members of the conspiracy, violates the Due Process Clause of the Fifth Amendment because such damages (especially after the statutory trebling) are vastly disproportionate

to the effects of Dow's own conduct.[5]

First, the Court concludes that Dow has waived this defense to joint and several liability by failing to preserve it in the pretrial order. *See Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1304 (10th Cir. 2003) (defense may be waived if not included in the pretrial order). Because plaintiffs did not raise this issue of waiver, however, the Court will also address the merits of this argument.

The Court rejects this argument on the merits. As plaintiffs note and as the jury was instructed, one member of a conspiracy is responsible for the acts of its co-conspirators in furtherance of the conspiracy. Thus, *all* of the damages awarded by the jury effectively related to Dow's own conduct. Courts have consistently imposed joint and several liability in civil antitrust actions. *See, e.g.*, *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981) (joint and several liability in civil antitrust cases ensures that the plaintiffs will be able to recover the full amount of damages from some, if not all, participants). Dow has not cited any authority suggesting that the imposition of joint and several liability in the conspiracy context may violate the Due Process Clause. Accordingly, the Court rejects this basis for a new trial.

---

[5]The Court rejects Dow's argument that plaintiffs should not be entitled to joint and several liability because they failed to request such relief in their complaint. Plaintiff's request for joint and several liability was included in the pretrial order in this case, which superseded the pleadings, *see Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1304 (10th Cir. 2003), and Dow has not identified any possible prejudice from the failure to include that relief in the complaint. Nor has Dow shown that plaintiffs were required to plead their request for such relief.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant Dow Chemical Company's motion to decertify the class (Doc. # 2706) is **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT the definition of the class certified in this case is hereby modified to exclude purchases in 2004.  Plaintiffs are ordered to submit, on or before **June 14, 2013**, for the Court's approval, a notice of this modification to be sent to the class members as originally defined.  Dow should file any comments concerning such proposed notice by **June 28, 2013**.

IT IS FURTHER ORDERED BY THE COURT THAT defendant Dow Chemical Company's motion for judgment as a matter of law or for a new trial (Doc. # 2808) is **denied**.

IT IS SO ORDERED.

Dated this 15th day of May, 2013, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge