IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| IN RE: URETHANE ANTITRUST LITIGATION | ) ) ) ) ) ) ) ) ) | MDL 1616<br>No. 04-md-01616-JWL |
| This Document Relates To:<br>Polyether Polyols Cases |  |  |

**CLASS PLAINTIFFS' MOTION TO AMEND THE JUDGMENT**

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Plaintiffs Seegott Holdings, Inc., Industrial Polymers, Inc. and Quabaug Corporation, on behalf of themselves and the class herein ("Class Plaintiffs") respectfully move the Court to amend the judgment in favor of Class Plaintiffs and against Defendant The Dow Chemical Company ("Dow") as follows: (a) to account for a set off of prior settlements; (b) to confirm Class Plaintiffs' right to an award of the costs of suit, including a reasonable attorneys' fee, pursuant to 15 U.S.C. § 15(a); and, (c) to approve a Proposed Plan of Allocation. A proposed form of amended judgment is submitted herewith as Exhibit A. The grounds for this Motion are stated as follows:

1. In this action, Class Plaintiffs alleged that "Dow and its co-conspirators engaged in a conspiracy in restraint of trade in violation of § 1 of the Sherman Act and § 4 of the Clayton Act, by engaging in a conspiracy to charge their customers artificially inflated and non-competitive prices for Polyether Polyol Products." Pretrial Order ¶ 6.a (Dkt. No. 2374).

2. Class Plaintiffs sought an award of treble damages resulting from the unlawful conduct of Dow and its co-conspirators, to be set off by the total monetary settlements payable to the Class in the amount of $139,300,000. *See* Pretrial Order ¶ 10.a (Dkt. No. 2374). Class

Plaintiffs also sought an award of reasonable attorneys' fees and costs as provided under the Clayton Act, 15 U.S.C. § 15(a).  *See id.*

3. Class Plaintiffs tried their antitrust claims against Dow to a jury, The Honorable John W. Lungstrum presiding, between January 23, 2013 and February 19, 2013.  *See* Minute Entry, Dkt. No. 2796.

4. On February 20, 2013, the jury rendered a verdict in favor of Class Plaintiffs and found damages in the amount of $400,049,039.  *See* Verdict Form, Dkt. No. 2799.

5. Under Section 4 of the Clayton Act, the jury's damages award must be trebled. *See* 15 U.S.C. § 15(a) ("any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws … *shall recover threefold the damages* by him sustained, and the cost of suit, including a reasonable attorney's fee") (emphasis added).  *See also, e.g., Kristian v. Comcast Corp.*, 446 F.3d 25, 47 (1st Cir. 2006) ("Congress's use of the word 'shall' makes the treble damages remedy a mandatory result if a plaintiff successfully sues an antitrust violator.").

6. On May 15, 2013, the Court entered its Memorandum and Order denying Dow's post-trial motions.  Dkt. No. 2879.  Accordingly on May 15, 2013, the Court entered Judgment against Dow and in favor of the plaintiff class in the amount of $1,200,147,117.  Dkt. No. 2880.

7. The trebled damages amount of $1,200,147,117 should be reduced by the total monetary settlements payable to the Class in the amount of $139,300,000.  *See, e.g.*, *William Inglis & Sons Baking Co. v. Continental Baking Co., Inc.*, 981 F.2d 1023, 1024 (9th Cir. 1992) (holding that in antitrust actions, "settlement payments should be deducted from the damages after they have been trebled"); *Auwood v. Harry Brandt Booking Office, Inc.,* 850 F.2d 884, 894 (2d Cir. 1988) ("It is, however, established that an amount recovered by a plaintiff from a coconspirator in settlement of the former's antitrust claims may be deducted from the plaintiff's

2

damage award after it has been trebled."); *Sciambra v. Graham News Co.*, 841 F.2d 651, 657 (5th Cir. 1988) ("[T]he court should treble the amount of the damage award against [the antitrust defendant] before deducting the amount of the [alleged co-conspirator's] settlement."); *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1380 (9th Cir. 1986) ("It is by now well-established that if an antitrust plaintiff settles with one defendant, the amount of the settlement is to be set off *after* damages against the remaining defendants have been trebled, and *not before*.") (citations omitted, emphases in original); *Semke v. Enid Auto. Dealers Ass'n*, 456 F.2d 1361, 1371 (10th Cir. 1972) ("We see no error in the allowance of the offset resulting from the earlier settlement.").

8.  The above calculations result in a net award for purposes of this judgment of $1,060,847,117.

9.  Section 4 of the Clayton Act mandates that Class Plaintiffs, as the prevailing party, "shall recover…the cost of suit, including a reasonable attorney's fee."  15 U.S.C. § 15(a). As the text of the statute provides, such an award is mandatory.  *See, e.g., Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1527 (10th Cir. 1984) ("Section 4 of the Clayton Act provides that 'any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws . . . shall recover . . . the cost of suit, including a reasonable attorney's fee.'"); *Reazin v. Blue Cross and Blue Shield of Kansas*, 663 F. Supp. 1360, 1449 (D. Kan. 1987) ("Section 4 of the Clayton Act, 15 U.S.C. § 15, in addition to trebling the damages awarded in this case, permits plaintiffs to recover 'the cost of suit, including a reasonable attorney's fee.'"); *Funeral Consumers Alliance, Inc. v. Service Corp. Intern.*, 695 F.3d 330, 338 (5th Cir. 2012) ("Defendants should not be spared liability for [attorney's] fees if the antitrust charges against them are sustained."); *Sciambra v. Graham News*, 892 F.2d 411, 415

(5th Cir. 1990) ("We conclude that if a plaintiff can prove an antitrust violation and the fact of damage, the plaintiff is entitled to recover attorneys' fees pursuant to section 4.").

10. Accordingly, the Court's judgment should confirm Class Plaintiffs' right to an award of the costs of suit, including a statutory attorneys' fee, under Section 4 of the Clayton Act. By separate motion, Class Plaintiffs are moving the Court to defer decision on the amount of costs and statutory attorneys' fees to be awarded to Class Plaintiffs until after any and all appeals are resolved.

11. In conjunction with this Motion to Amend the Judgment, Class Plaintiffs request that the Court approve the Proposed Plan of Allocation of Judgment Funds ("Proposed Plan of Allocation") attached as Exhibit A to the proposed Amended Judgment submitted herewith. Court approval of the Proposed Plan of Allocation will ensure that the Court's judgment is sufficiently final and thus appealable. *See Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1137 (10th Cir. 2010) (holding judgment was final and appealable where proposed plan of allocation was attached to the judgment providing a framework for determining each individual class member's damages); *Strey v. Hunt Int'l Res. Corp.*, 696 F.2d 87, 88 (10th Cir. 1982).

12. The Proposed Plan of Allocation: outlines the procedures and calculations that will govern the allocation among eligible Class members, which is to be based on the customer-specific damages calculations performed by Dr. James T. McClave (Section A); describes the procedure for payment of claims to eligible Class members (Section B); defines the duties of the Claims Administrator, Rust Consulting, LLC, which has served as the claims administrator in connection with allocation and distribution of the Bayer, BASF and Huntsman settlement funds (Section C); and provides for the disposition of any unclaimed funds (Section D). The Proposed Plan of Allocation is not to be implemented until such time as the case is remanded to this Court

from any appeal by Dow, or until after the expiration of the time allowed for filing such appeal, if no appeal is filed within that time.  *See* Ex. A, Section C, ¶ 1.

13. The Proposed Plan of Allocation utilizes the calculations already performed by Plaintiffs' damages expert, James T. McClave, Ph.D.  After studying the industry and collecting massive amounts of data, Dr. McClave used standard multiple regression analysis to determine whether and by how much urethane chemical prices were inflated by the cartel.  Dr. McClave conducted his analysis at the customer level, meaning he estimated overcharges on a customer-specific basis.  These customer-specific overcharges then were aggregated and presented to the jury as the estimated class-wide damages.

14. After considering Dr. McClave's testimony and all the other evidence presented at trial, the jury determined that there were no overcharges prior to November 24, 2000, and that overcharges after that date amounted to $400,049,039.  After considering the extensive briefing on Dow's post-trial motions, the Court denied those motions and confirmed that the jury's verdict was supported by the evidence.  Dkt. No. 2879.

15. As a result, the Proposed Plan of Allocation will be based on each Class Member's estimated overcharges for the period from November 24, 2000 through December 31, 2003, as determined by Dr. McClave.

16. Like the plan of allocation attached to the district court judgment and approved by the Tenth Circuit in *Cook*, the guidelines provided by the Class Plaintiffs' Proposed Plan of Allocation here are "straightforward and mechanical."  *Cook*, 618 F.3d at 1138.  As in *Cook*, Class Plaintiffs' Proposed Plan of Allocation "provides for the appointment of a claims administrator, who is directed to determine the proper allocation of damages based on specific data."  *Id*.  Here, Rust is the proposed claims administrator, who is charged with presenting an

allocation based on "specific data" (*id*.), namely, the customer-specific overcharges calculated by Dr. McClave. These are the same customer-specific overcharges that were aggregated and presented to the jury at trial as the estimated Class-wide damages. *See* Ex. A, Sections A & C. As in *Cook*, Rust will "make recommendations to the district court based on" Dr. McClave's calculations, 618 F.3d at 1138, and as in *Cook* the Proposed Plan of Allocation contemplates procedures, to be established by the Court, whereby Class members will have an opportunity to seek adjustment of their proposed awards. *See* Ex. A, Section B. As in *Cook*, any such allowed adjustments "would not affect the total damages owed by [Dow]." 618 F.3d at 1138. Finally, Class Plaintiffs' Proposed Plan of Allocation also "provides for the distribution of any unclaimed funds." *Id*. *See* Ex. A, Section D.

17. Class Plaintiffs have conferred with Dow about this Motion. Dow advised Class Plaintiffs that: (a) Dow agrees with Class Plaintiffs' request to offset the damages awarded by the jury by the amount of the prior settlements; (b) Dow agrees with Class Plaintiffs' request to defer the determination of costs and attorneys' fees until after all appeals have been exhausted, but reserves all arguments and rights to oppose any such request; and, (c) Dow otherwise opposes Class Plaintiffs' motion and proposed Plan of Allocation and intends to file a response explaining the grounds for its opposition within the time provided under the local rules.

Dated:  May 23, 2013                                          Respectfully submitted,

                                           /s/  Gerard A. Dever
                                           Allen D. Black
                                           Roberta D. Liebenberg
                                           Donald L. Perelman
                                           Gerard A. Dever
                                           Matthew Duncan
                                           **Fine, Kaplan and Black, RPC**
                                           One South Broad Street, 23rd Floor
                                           Philadelphia, PA 19107

Tel: 215-567-6565
Fax: 215-568-5872

Richard A. Koffman
Kit A. Pierson
Christopher J. Cormier
Sharon K. Robertson
Laura A. Alexander
**Cohen Milstein Sellers & Toll, PLLC**
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Tel: 202-408-4600
Fax: 202-408-4699

**Class Plaintiffs' Co-Lead Counsel**


Robert W. Coykendall, #10137
Roger N. Walter, #08620
**Morris, Laing, Evans, Brock & Kennedy, Chartered**
Old Town Square
300 North Mead – Suite 200
Wichita, KS 67202
Tel: 316-262-2671
Fax: 316-262-5991

**Class Plaintiffs' Liaison Counsel**


Joseph Goldberg
**Freedman Boyd Hollander
  Goldberg Urias & Ward, P.A.**
20 First Plaza, Suite 700
Albuquerque, NM 87102
Tel: (505) 842-9960
Fax: (505) 842-0761

Michael J. Guzman
Rebecca A. Beynon
Michael N. Nemelka
**Kellogg, Huber, Hansen, Todd, Evans &
  Figel, PLLC**
1615 M Street, N.W., Suite 400
Sumner Square
Washington, DC 20036

7

Tel:  (202) 326-7900
Fax:  (202) 326-7999

Paul D. Clement
Zachary D. Tripp
**Bancroft PLLC**
1919 M Street, N.W., Suite 470
Washington, DC 20036
Tel:   202-234-0090
Fax:   202-234-2806

# EXHIBIT A

# TO

# CLASS PLAINTIFFS' MOTION TO AMEND THE JUDGMENT

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

|  |  |  |
|---|---|---|
| IN RE: URETHANE ANTITRUST LITIGATION | ) ) ) ) ) | MDL 1616 No. 04-md-01616-JWL |
| This Judgment Relates to: The Polyether Polyols Cases | ) ) ) | |

### AMENDED JUDGMENT IN A CIVIL CASE

(x)     JURY VERDICT.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

IT IS ORDERED AND ADJUDGED pursuant to the Jury Verdict returned on February 20, 2013, and the Memorandum and Order filed on May 15, 2013, that judgment is entered against defendant The Dow Chemical Company and in favor of the plaintiff class, after trebling pursuant to 15 U.S.C. § 15 and set off of prior settlements, in the amount of One Billion, Sixty Million, Eight Hundred Forty-Seven Thousand, One Hundred and Seventeen dollars ($1,060,847,117), with interest thereon at a rate of 0.11 percent as provided by law, plus the costs of suit, including reasonable attorneys' fees, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15(a), in amounts to be determined through submissions relating thereto after any and all merits appeals are resolved (or if no appeal is taken, after the expiration of time allowed for appeal of the final judgment), at a time to be determined by future Court Order.

IT IS FURTHER ORDERED that the Proposed Plan of Allocation attached hereto as Exhibit A is hereby APPROVED.  Implementation of the Proposed Plan of Allocation shall be

stayed until such time as the case is remanded to this Court from any appeal, or until after the expiration of time allowed for filing such appeal, if no appeal is filed within that time.

IT IS SO ORDERED.

Dated this ____ day of _____ 2013, in Kansas City, Kansas.

 

John W. Lungstrum
United States District Judge

# EXHIBIT A

# TO

# AMENDED JUDGMENT IN A CIVIL CASE

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| **IN RE:  URETHANE ANTITRUST LITIGATION** | ) ) ) ) ) ) ) ) ) | **MDL 1616** <br> **No. 04-MD-1616-JWL** |
| **This Document Relates To: The Polyether Polyols Cases** | | |

### PROPOSED PLAN OF ALLOCATION OF JUDGMENT FUNDS

And Now, this ___ day of _____, 2013, the Court having entered final judgment against defendant The Dow Chemical Company ("Dow") in accordance with the verdict returned by the jury in this matter on February 20, 2013, the Court hereby Orders as follows:

**A.     Procedures and Principles for the Proposed Allocation**

1.     The "Claims Administrator" will be Rust Consulting LLC.  The Claims Administrator and Class Counsel will utilize the calculations already performed by Plaintiffs' damages expert, James T. McClave, Ph.D., to determine a Proposed Allocation of the judgment funds available for distribution, as determined by the Court.

2.     To determine the Proposed Allocation, the Claims Administrator and Class Counsel will identify each Class Member's estimated overcharges for the period from November 24, 2000 through December 31, 2003, as determined by Dr. McClave.  Based on these customer-specific overcharge calculations, each Class member then will be allocated a *pro rata* share of the funds available for distribution, such that its share will be in proportion to the total of all Class members' overcharges.  These calculated *pro rata* shares may be subject to further adjustment during the proceedings described in Section B below.

### B.  Procedures for Payment of Claims

1. Prior to any disbursement to Class members, the Court will establish appropriate procedures for approval of the Proposed Allocation, for notifying Class members of their proposed awards under the Proposed Allocation, and for procedures through which Class members will have an opportunity to seek adjustment of their individual awards as proposed by the Claims Administrator and Class Counsel.

2. The Court anticipates that these procedures will be similar to those procedures approved by the Court in connection with the distribution of the Settlement Funds in this matter by the Claims Administrator. *See* Docket Nos. 994 (Order Approving Class Plaintiffs' Plan of Allocation of the Bayer Settlement Fund) & 2209 (Order Approving Class Plaintiffs' Plan of Allocation and Distribution for the Huntsman and BASF Settlement Funds).

3. At the conclusion of these proceedings, the Court will enter a Final Allocation Order establishing the allocation for purposes of disbursements to Class members.

### C.  Duties of the Claims Administrator

1. The Claims Administrator shall not commence the performance of its duties under this Order until such time as the case is remanded to this Court from any appeal by Dow (or until after the expiration of the time allowed for filing such appeal, if no appeal is filed within that time).

2. The Claims Administrator and Class Counsel shall be responsible for developing a recommended allocation ("Proposed Allocation"). The Proposed Allocation shall be developed under the guidelines set forth in this Order, subject to ultimate approval by the Court.

        3.      The Claims Administrator and Class Counsel shall report to the Court from time to time to advise the Court of its progress in discharging its responsibilities under this Order, on such occasions and at such intervals as the Claims Administrator and Class Counsel may deem appropriate or as the Court may direct.

        4.      The Claims Administrator is authorized to make reasonable expenditures to secure the resources and assistance reasonably necessary to the performance of its duties. Such expenses, and the compensation of the Claims Administrator at its usual and customary hourly rates, will be paid and reimbursed out of judgment funds periodically, as incurred.

**D.**     **Disposition of Unclaimed Funds**

        1.      Subject to further Order of the Court, any funds allocable to Class members that remain unclaimed, after due allowance of a period for late claims, shall be distributed to members of the Class based on the Final Allocation Order.

Dated  _____, 2013, at Kansas City, Kansas.

_____
John W. Lungstrum
United States District Court

**CERTIFICATE OF SERVICE**

      I, the undersigned, do hereby certify that on this 23rd day of May, 2013, I caused the foregoing Class Plaintiffs' Motion to Amend the Judgment to be electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel who have registered for receipt of documents filed in this matter.

      /s/ *Gerard A. Dever*
      Gerard A. Dever