IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: URETHANE ANTITRUST LITIGATION, | MDL No. 1616 |
| | Case No. 04-1616-JWL |
| This Document Relates to the following Polyether Polyol Cases: | |
| *Carpenter Co., et al. v. BASF SE, et al.*, | Case No. 08-2617-JWL |
| and | |
| *Woodbridge Foam Corporation, et al. v. BASF SE, et al.*, | Case No. 09-2026-JWL |
| and | |
| *Dash Multi-Corp, Inc., et al. v. BASF SE, et al.*, | Case No. 10-2077-JWL |

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiffs' motion to substitute an expert witness (Doc. # 2930). For the reasons set forth below, the motion is **granted**.

### I. Background

In this multi-district litigation, plaintiffs in these three cases opted out of the class action that was recently tried in this Court. With respect to these so-called direct action plaintiffs, the discovery and dispositive motion deadlines have long since passed. The

cases await resolution of a few additional matters before they are transferred back to the District of New Jersey, in which they were filed. The Court has stated its intention to leave for the remand court the pending *Daubert* motion by which defendant Dow Chemical Company ("Dow") seeks to exclude testimony by plaintiffs' damages expert, Dr. Matthew Raiff.

By their present motion, plaintiffs seek to substitute another expert witness, Dr. Leslie Marx, for Dr. Raiff. Plaintiffs have submitted affidavits from Dr. Raiff and a treating professional stating that Dr. Raiff is presently disabled; that he will remain so for at least a period of six to 12 months; that continued participation in this case would be detrimental to his health; that it is uncertain whether he will ever recover; and that he is withdrawing from the case.

## II. Analysis

The Tenth Circuit has analyzed this issue of the substitution of an expert witness in the context of a request for amendment of the scheduling order to allow for the substitution. *See Rimbert v. Eli Lilly & Co.*, 637 F.3d 1247, 1253-56 (10th Cir. 2011). In *Rimbert*, the Tenth Circuit considered the following four factors in determining whether the district court had abused its discretion in refusing to allow the amendment:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in court, and (4) bad faith or willfulness in failing to

2

comply with the court's order.

*Id.* at 1254 (quoting *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997). The court noted that previously, in *Summers*, it had reversed a district court's refusal to grant a continuance for plaintiffs to secure a new expert after the original expert's testimony was ruled inadmissible under *Daubert*. *See id.* (citing *Summers*, 132 F.3d at 604). In *Summers*, the four factors weighed in favor of allowing the continuance because the defendant could not have been surprised by the motion after the *Daubert* ruling; the defendant could cure any prejudice by reviewing the new expert's reports and depositions; the plaintiffs had acted diligently and filed the motion 80 days prior to trial; and there was no bad faith on the part of the plaintiffs. *See id.* (citing *Summers*, 132 F.3d at 604).

In *Rimbert*, the Tenth Circuit again reversed a district court's refusal to amend the scheduling order to allow for a new expert after a *Daubert* ruling. *See id.* at 1256. The court stated that "the single most important factor about the posture of Rimbert's motion for a new scheduling order is that, at the time it was made, there was no longer any impending trial date or pretrial schedule remaining." *See id.* at 1255. The court noted that, as in *Summers*, the available time meant that the defendant would not be prejudiced in the sense of being unable to defend against the new expert's testimony. *See id.* The court also noted that, although a district court has discretion in managing the pretrial schedule, a scheduling order can be outcome-determinative; thus, "total inflexibility is undesirable," and enforcing a scheduling order to the extent that evidence is excluded

3

is a "drastic sanction." *See id.* at 1254 (quoting *Summers*, 132 F.2d at 604).

Similarly, in the present case these factors weigh in favor of amending the scheduling order to allow plaintiffs to substitute a new expert witness. As in *Rimbert*, there is presently no trial date in these cases; indeed, the Magistrate Judge recently ruled that Dow may take some additional discovery, no pretrial order has yet been entered, and the cases must still be remanded to the transferor court, which will then set a trial date. Thus, there is ample time for plaintiffs' submission of a new expert disclosure, as well as for any necessary additional reports or depositions. That time cures any prejudice suffered by Dow from the substitution. Dow argues that it would suffer prejudice from a substitution because it views Dr. Raiff as a flawed witness and because it would incur expenses from additional expert discovery. In *Rimbert*, however, the Tenth Circuit made clear that the type of prejudice relevant to this analysis relates to the defendant's ability to mount a defense to the new expert's testimony (and the court specifically noted that incurring additional expenses does not constitute prejudice in this analysis), *see id.* at 1255, and Dow will have sufficient time to address the new expert's opinions in this case. Finally, Dow has not identified any way in which plaintiffs either were not diligent or acted in bad faith, and the Court concludes that the final factor weighs in plaintiffs' favor here. Leaving plaintiffs without an expert would essentially determine these cases in Dow's favor, and, given the lack of a trial date, refusal to allow this substitution would constitute an unduly harsh sanction on plaintiffs merely for hiring an expert that later had to withdraw because of a disability.

4

Dow's primary argument in opposition to plaintiffs' motion is that although plaintiffs provided evidence that Dr. Raiff will be disabled for up to 12 months, they have not established that he will be disabled at the time of trial, which will likely not be set until late 2014 or even 2015. Dow thus argues that the Court should deny plaintiffs' motion without prejudice, which would allow plaintiffs to raise this issue again once a trial date has been set by the court after remand. The Court is not persuaded to delay this ruling, however. As plaintiffs note, Dr. Raiff has withdrawn from the case, and plaintiffs thus have no expert presently; accordingly, plaintiffs should be allowed to act now to replace Dr. Raiff. Moreover, the trial date set by the remand court might not leave sufficient time for the discovery and motion practice that may result from the substitution. Dow has not cited any authority supporting the argument that plaintiffs must wait until closer to trial to see whether their disabled expert recovers.

In the alternative to a delayed ruling, Dow seeks leave to conduct certain discovery prior to the Court's ruling, including discovery relating to Dr. Raiff's medical records, employment records, insurance claims, and his employer's knowledge about his recent performance, as well as additional depositions as needed. Dow argues that it should be allowed to explore Dr. Raiff's condition through primary sources. The Court denies this request by Dow. Plaintiffs have provided evidence establishing both Dr. Raiff's disability and his intent to withdraw, and Dow has not provided any evidence or other basis for questioning either plaintiffs' evidence or their good faith. The Court concludes that plaintiffs have established the necessary good cause for amendment of the

scheduling order, and thus no discovery on this question is warranted.

Finally, Dow appears to take issue with the proposed scope of the substitute witness's opinions, arguing that the new witness should be required to "step into" Dr. Raiff's opinions. In their request, however, plaintiffs have proposed just such a restriction. Accordingly, the Court grants plaintiffs' request and orders that Dr. Marx, the new expert, will not be permitted to develop her own models or methodologies, but must endorse and defend Dr. Raiff's opinions. If Dow later believes that Dr. Marx has improperly injected her own separate opinions, it may challenge those opinions by a timely *Daubert* motion.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs' motion to substitute an expert witness (Doc. # 2930) is hereby **granted**, as set forth herein. The Magistrate Judge shall amend the scheduling order to set deadlines relating to the substitution of the expert witness, including deadlines for Rule 26(a)(2) disclosures, depositions, and *Daubert* motions as necessary.

IT IS SO ORDERED.

Dated this 13th day of August, 2013, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge