IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION | MDL No. 1616 |
| THIS DOCUMENT RELATES TO: DIRECT ACTION CASES | Case Nos. 08-2617-JWL, 09-2016-JWL, 10-2077-JWL |

## DIRECT ACTION PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND RESPONSE TO DOW'S MOTION FOR AN ORDER DIRECTING DISCOVERY

Dated:  August 30, 2013

Respectfully submitted,

/s/ Elaine Metlin

ADAMS HOLCOMB LLP
R. Bruce Holcomb
Christopher Leonardo
1875 Eye Street, NW, Suite 810
Washington, DC  20006
(202) 580-8820

DICKSTEIN SHAPIRO LLP
Richard J. Leveridge
James R. Martin
Jodi Trulove
1825 Eye Street, NW
Washington, DC   20006
(202) 420-2200

*Counsel for Direct Action Plaintiffs*

DSMDB-3191655v1

Direct Action Plaintiffs ("DAPs") hereby move this Court for an order requiring Dow to produce the 2010 memorandum that Dow's outside counsel, Hamilton Loeb, provided to John Ella, Stephanie Barbour's former counsel (the "Ella Memo"), and denying Dow's requests to reopen Barbour's deposition and for relief concerning DAPs' post-litigation cover-up theory.

I.  THE ELLA MEMO MUST BE PRODUCED

Dow has gone to extraordinary lengths to avoid production of the Ella Memo. Despite litigating for more than three months for the right to depose Mr. Loeb about the assembly and contents of the Barbour Binder, Dow has now withdrawn its request to depose Mr. Loeb. During that time, Dow rejected DAPs' offer not to introduce Ms. Barbour's testimony that her notes were not in the binder and Dow made clear it was prepared to waive privilege and work product so that Mr. Loeb could testify.[1]

After the July 25 Order was issued, Dow expanded its focus from the Barbour notes to encompass the Ella Memo, and asked DAPs to agree not to introduce Barbour's testimony about what she had read in the Ella Memo.[2] Specifically, Dow said that it would not depose Mr. Loeb if, in addition to the stipulating about Barbour's notes, DAPs would agree not to introduce the following testimony:

> Q: Did anyone other than Mr. Cook ever say that to you?
> A: That I was making it up to get more money?
> Q: Yes.
> A: No. That I was only reporting it at the 2004 severance, yes.
> Q: Who, who said that?
> A: Dow counsel.
> ……
> Q: Before we talk about 5059, you said that Dow's counsel, who you didn't name, had said that you were making up allegations to get a higher severance; is that

---

[1] Dow concedes that the Court's July 25 Memorandum Opinion ("July 25 Order") held that Dow would waive privilege and work product if Mr. Loeb testified about the binder.

[2] *See* Letter from R. Leveridge to B. Markley, Aug. 8, 2013 (Ex. 1); Email from B. Markley to J. Trulove, et al., Aug. 13, 2013 (Ex. 2); Letter from J. Martin to B. Markley, Aug. 14, 2013 (Ex. 3).

> right?
> A: No, I did not.
> Q: No? Okay. What did you say about Dow's -- what Dow's counsel said to you?
> A: That I had not reported these incidences until my termination.
> Q: Oh, I'm sorry. Thank you. And when did they say that to you?
> A: In 2009/10 time frame.
> Q: And how did they communicate that?
> A: It was in the notebook that was given to me to review for this case.
> ……
> Q: So outside of the memo that you looked at in the binder, did anyone else ever make an accusation that you had failed to report instances of misconduct until after you were engaged in the severance discussions?
> A: No.

Trial Tr. 776:4-11, 776:19-777:8, 777:10-15 (Ex. 4). After DAPs made clear they would not stipulate to testimony about the Ella Memo and wanted Dow to produce it, Dow dropped its request to depose Mr. Loeb and accepted DAPs' months-old offer not to introduce Barbour's testimony that her notes were not in the binder.[3]

Despite Dow's sudden reversal on seeking Mr. Loeb's testimony, the Ella Memo must be produced. It clearly relates to the 2004 Investigation, and Dow has waived any protections that might otherwise have shielded its production, including the fact that Barbour testified about the Ella Memo during her deposition and her testimony was introduced at the class trial. Trial Tr. 776:4-776:11, 776:24-777:8 (Ex. 4); *see, e.g.*, *Audiotext Communications Network, Inc. v. US Telecom, Inc.*, 164 F.R.D. 250, 254-55 (D. Kan. 1996). To preclude production of the Ella Memo, Dow argues that it has preserved privilege protections for information related to the 2004 Investigation that post-dates the onset of litigation. Dow cannot selectively waive privilege in this manner. Dow has put the 2004 Investigation affirmatively at issue in this case and has made clear that it intends to rely on this investigation as part of its defense. One of the central ways in which it intends to use the investigation information is to try to impeach Ms. Barbour's testimony regarding the information related to anticompetitive

---

[3] Aug. 14 J. Martin Letter (Ex.3); Letter from B. Markley to J. Martin, Aug. 18, 2013 (Ex. 5).

activities that she says she provided to Dow in 2004. Dow Mot. to Modify Scheduling Order, June 5, 2013, at 7-10 (Dkt. 2894). Dow intends to question McCormick, Washington, and Schefsky regarding the information Barbour reported in 2004. The Ella Memo clearly addresses that issue and was intended to influence Ms. Barbour's deposition testimony. Dow cannot impeach Barbour with testimony from its in-house counsel about the conduct that Barbour reported in 2004, on the one hand, and at the same time, withhold an unfavorable document, on privilege grounds, bearing directly on that issue. DAPs should be allowed full access to information on this issue and should be allowed to question testifying witnesses about it if necessary. Pursuant to Fed. R. Evid. 502, Dow has waived any otherwise applicable privileges for that document, including attorney-client, work product, and joint defense privilege. *See* Order, at 10, Jan. 31, 2011 (Dkt. 1947). Dow cannot use the results of its investigation as a defense, and at the same time, assert privilege to deny DAPs critical information relating to the investigation. Dow has waived as to the entire subject matter of the 2004 Investigation, including the central issue of what Barbour reported to Dow in 2004. *See United States v. Koerber*, No. 2:09–cr–00302l, 2013 WL 2407662, at *3 (D. Utah May 31, 2013) ("selective reference to privileged communications. . . constitutes waiver of these privileges with respect to the same subject under the so-called "sword and shield" doctrine"; fairness demands opposing party be allowed to examine whole picture); *Kovacs v. The Hershey Company*, Civil Action No. 04-cv-01881, 2006 WL 2781591, at *6-7 (D. Colo. Sept. 26, 2006) (party must be able to examine whole picture when other party injects part of communication as evidence).[4]

---

[4] Barbour's testimony about the Ella Memo shows that it contains non-privileged factual information about what she reported. Even if such information is fact or opinion work product, Dow has waived its privileges. Given the extraordinary circumstances surrounding the Ella Memo, DAPs are entitled to its discovery under any test for fact or opinion work product. *Simmons Foods, Inc. v. Willis*, 196 F.R.D. 610, 612 (D. Kan. 2000).

Dow also waived any privilege protections when it provided the Ella Memo to Barbour's counsel, who provided it to Barbour directly in 2010. Dow claims this third party disclosure was protected by the joint defense privilege, but Dow cannot substantiate its privilege assertion. Dow's interests were not aligned with those of Ms. Barbour. Dow was trying to influence her testimony in 2010, and now Dow is attacking her. The "allied lawyer" privilege requires that the persons share an *identical* legal interest with respect to the subject matter of a communication. *Perkins v. Federal Fruit & Produce Co., Inc.*, Civil Action No. 11-cv-005422011, WL 6937195 *5 (D. Col. Dec. 30, 2011); *NL Indus. Inc. v. Commercial Union Ins. Co.*, 144 F.R.D. 225, 230-31 (D.N.J. 1992). From the outset, it was clear that Ms. Barbour did not share the same interests as Dow. She has been adverse to Dow at least from the time she claimed that it fired her in retaliation for reporting, among other things, antitrust violations at issue in this case. Trial Tr. 713:21-716:19 (Ex.4).[5] Barbour testified that she had no interest in the outcome of the case,[6] and that the memorandum contained a version of events she did not believe. Trial Tr. 776:19-777:8, 777:10-15 (Ex. 4); *Strong v. State of Texas*, 773 S.W.2d 543, 552 (1989) (party wrote letter instructing counsel for co-defendant how to handle defense and to discourage co-defendant from testifying). Dow claims that it asked Mr. Ella not to show the memorandum to Ms. Barbour, but Mr. Ella owed a fiduciary duty to her. Moreover, Barbour's

---

[5] Barbour retained her own counsel to negotiate her termination and severance agreements, and later rejected lawyers suggested by Dow to represent her in this case and instead chose her own counsel. Barbour met with Dow's counsel once in 2009 but, despite their request, refused to meet with Dow again prior to her deposition. Hamilton Loeb Proffer ¶5 (Ex. 6 to The Dow Chemical Company's Motion for Corrective Jury Instructions Or, in the Alternative, For Leave to Add to its Witness List, Feb. 6, 2013)) (Dkt. 2760-4).

[6] *See SR Intern. Business Ins. Co. Ltd. v. World Trade Center Properties LLC*, No. 01 Civ. 9291, 2002 WL 1334821 (S.D.N.Y. June 19, 2002), at *4 (no common interest where broker was not party to case and therefore legal position would be unaffected by case).

4

detailed testimony about Dow's price-fixing discussions with competitors fundamentally undermined Dow's defense.

II.     DOW SHOULD NOT BE PERMITTED TO RE-DEPOSE BARBOUR

Over two days, Ms. Barbour, an unrepresented third-party witness, testified in full about the allegations she made in 2004, Tr. 711:20- 713:16, 736:24-737:19, 924:15-925:24 (Ex. 4), and that she did not know what Dow did to investigate her allegations. *Id.* at 765:9-11. These are the only two "limited topics" on which this Court authorized additional discovery. July 25 Order, at 21. Indeed, Dow sought additional discovery to address Ms. Barbour's testimony, not to seek more. The requested re-deposition is unreasonably duplicative and harassing.[7]

III.    POST-LITIGATION COVER-UP THEORY

Dow has already lost the issue whether DAPs can raise a post-litigation cover-up theory[8] and that Dow should be allowed discovery into this theory. July 25 Order, at 19 &n.61. Dow raises nothing new here. If Dow disagreed with the Court's ruling, pursuant to Fed. R. Civ. P. 72(a), Dow had 14 days to object. Dow's failure to do so constitutes a waiver of its right to raise these issues. Dow's request should be rejected outright. *Nicks v. Brewer*, No. 10–CV–1220–JAR–JPO, 2010 WL 4873647, at *1 (D. Kan. Nov. 23, 2010) (failure to timely object under Rule 72(a) constitutes waiver).

---

[7] Dow contends that the Court's July 25 Order gives it the right to re-depose Ms. Barbour. To the contrary, we understand the Court's opinion to grant DAPs the right to re-depose Ms. Barbour based on the fairness concerns raised by DAPs as to their ability to conduct follow-up discovery on newly released information and documents. Those same fairness concerns do not apply to Dow. Having reviewed the materials produced, DAPs have concluded that they do not need further testimony from Ms. Barbour regarding the 2004 Investigation (provided, of course, that Dow is not allowed further questioning), and Dow cannot justify its request to re-open the deposition. Should the Court, however, allow Dow to depose Ms. Barbour, DAPs unquestionably should be allowed discovery of the Ella Memo so that Ms. Barbour can respond to Dow's allegations.

[8] To be clear, DAPs never raised a post-litigation cover-up theory. It was Dow that raised the issue while the parties were conferring over DAPs' offer to stipulate they would not introduce testimony about Barbour's notes. DAPs would not agree to stipulate about what arguments they will not make at trial. Not only has Dow waived its right to seek to foreclose this theory (an issue for the trial court, in any event) or to take discovery, but Dow fails to justify its too late requests here.

5

## CONCLUSION

For the reasons set forth above, DAPs request an order requiring Dow to produce the Ella Memo and denying Dow's requests to reopen Barbour's deposition and for relief concerning DAPs' post-litigation cover-up theory.

Dated:  August 30, 2013                          Respectfully submitted,

 /s/ Elaine Metlin

| | |
|---|---|
| ADAMS HOLCOMB LLP | DICKSTEIN SHAPIRO LLP |
| R. Bruce Holcomb | Richard J. Leveridge |
| Christopher Leonardo | James R. Martin |
| 1875 Eye Street, NW, Suite 810 | Jodi Trulove |
| Washington, DC  20006 | 1825 Eye Street, NW |
| (202) 580-8820 | Washington, DC   20006 |
| | (202) 420-2200 |

*Counsel for Direct Action Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to the Court's Order Regarding Service (Doc. 35), I, Elaine Metlin, hereby certify that on August 30, 2013 a copy of the foregoing Direct Action Plaintiffs' Motion to Compel Discovery and Response to Dow's Motion for an Order Directing Discovery was filed electronically with the Clerk of the Court through the ECF system, and that the ECF system will send electronic service of the filing to all counsel of record who have registered for ECF notification and receipt of the documents filed in this matter.

/s/ Elaine Metlin
Elaine Metlin
*Counsel for Direct Action Plaintiffs*