IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: URETHANE ANTITRUST LITIGATION | ) ) ) | MDL No. 1616 |
| | ) | Case No. 04-MD-1616-JWL |
| | ) | |
| This Order Relates to the following Polyether Polyol Cases: | ) ) ) | |
| | ) | |
| *Carpenter Co., et al. v. BASF SE, et al.,* | ) ) | Case No. 08-2617-JWL |
| and | ) ) | |
| *Woodbridge Foam Corp., et al. v. BASF SE, et al.,* | ) ) ) | Case No. 09-2026-JWL |
| and | ) ) | |
| *Dash Multi-Corp, Inc., et al. v. BASF SE, et al.* | ) ) | Case No. 10-2077-JWL |

## <u>ORDER</u>

On July 25, 2013, the undersigned U.S. Magistrate Judge, James P. O'Hara, entered an order granting a motion by the defendant, The Dow Chemical Company, to modify the scheduling order to permit very limited additional discovery in the direct actions that are part of this multidistrict litigation (doc. 2960).  In pursuing the additional discovery, the parties have come to a number of disagreements that they have been unable to resolve. Dow has filed a motion asking the court to enter an order directing the course of the remaining merits discovery **(doc. 2988)**, and the direct-action plaintiffs ("DAPs") have filed a parallel motion to compel discovery **(doc. 2994)**.  The parties briefed the discovery issues under an expedited

schedule, and the undersigned heard additional argument on the issues during a telephone conference held on September 4, 2013.

## I.     The Ella Memorandum

The first issue raised by the parties is whether Dow must produce the 2010 memorandum that Dow's counsel, Hamilton Loeb, wrote and provided to John Ella, then-counsel for Stephanie Barbour (a former Dow employee and key witness in this case), ostensibly to aid Ella's preparation for defending Barbour's deposition. There is no real dispute that the memorandum, when created, was entitled to work-product protection under Fed. R. Civ. P. 26(b)(3)(B). But the parties disagree about whether Dow waived any protection that would otherwise shield its production.

First DAPs assert that Dow waived any privilege protections when it provided the memorandum to Ella, who provided it to Barbour before her deposition.[1] Dow responds that Loeb shared the memorandum with Ella in furtherance of the common interests that Dow and Barbour shared, and that the document is protected by the joint-defense privilege because Dow and Barbour had entered a joint-defense agreement. Dow cites *Heartland Surgical*

---

[1] *See United States v. Ary,* 518 F.3d 775, 783 (10th Cir. 2008) ("Courts will imply waiver when a party claiming the protection has voluntarily disclosed work product to a party not covered by the work-product doctrine."); *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006) (holding that production of work-product to third-party waives the privilege); *In re Quest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) (same); *Smith v. Boeing Co.*, Nos. 05-1073, 04-1294, 2008 WL 2475750, at *3 (D. Kan. June 17, 2008) (same).

*Speciality Hosp., LLC v. Midwest Division, Inc.* in support of the joint-defense privilege.[2]

In *Heartland*, U.S. Magistrate Judge Donald Bostwick ruled, "To establish a joint-defense privilege, the proponent of the privilege must first establish either the attorney-client or work-product privileges, and then must also demonstrate: (1) the document [was] made in the course of a joint-defense effort; and (2) the document [was] designed to further that effort."[3] Judge Bostwick noted that the non-movant did not dispute that the joint-defense agreement entered into between co-defendants in that case was protected by the joint-defense privilege.[4]

The undersigned finds *Heartland* inapplicable to this case. Here, Dow and Barbour were not co-defendants—Barbour is not, and never was, a party to this case—and Dow has failed to explain how the two might have been engaging in a joint-defense effort or how the Ella memorandum was written to further that effort. Dow notes that Barbour and Dow had entered into a "confidentiality and joint defense agreement,"[5] but simply pointing to such an agreement in no way satisfies Dow's burden of demonstrating the two required elements for

---

[2]No. 05-2164, 2007 WL 950282, at *9 (D. Kan. March 26, 2007).

[3]*Id.* (citing *In re Grand Jury Proceedings*, 156 F.3d 1038, 1043 (10th Cir. 1998)).

[4]*Id.*

[5]*See* 3001. Although the copy of the agreement filed on the record has only been signed by Ella, the undersigned is assuming for purposes of this discussion that the agreement was fully executed by both Ella on behalf of Barbour and Loeb on behalf of Dow. As a practical matter, the transcript of Barbour's deposition makes clear that both Ella and Loeb were operating under the agreement as if it had been executed and that Ella was acting on behalf of Barbour in signing the agreement.

establishing the privilege are met. The court has reviewed the joint-defense agreement, which largely contains boilerplate language. Although the agreement recites that counsel "believe they have a mutual interest in common and joint defense issues,"[6] Dow has not explained what that interest is or was. There is nothing in the agreement itself—or in anything provided to the court—that establishes that Barbour was or could have been a likely defendant in this litigation such that there was an actual joint-defense interest at stake.

More applicable to the situation here are cases discussing the so-called "common-interest doctrine," which is akin to the joint-defense doctrine. "The common interest doctrine . . . acts as an exception to the general waiver rule by facilitating cooperative efforts among parties who share common interests."[7] It "operates as a shield to preclude waiver" when confidential information is disclosed to a third party who shares a community of interest with the represented party.[8] The parties sharing the common interest need not both be parties to the lawsuit,[9] but must "share an identical common interest" and the communication must be

---

[6]*Id.* at 1.

[7]*Sawyer v. Sw. Airlines*, Nos. 01-2385 & 01-2386, 2002 WL 31928442, at *3 (D. Kan. Dec. 23, 2002).

[8]*Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 705 (10th Cir. 1998).

[9]*See Sawyer,* 2002 WL 31928442, at *3 (holding that a party and its non-party insurer who had a duty to defend the party had an identical legal interest subject to the shared-interest doctrine).

made to advance a shared legal interest.[10] "The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial."[11]

Dow asserts that it and Barbour "shared a common interest in Mr. Ella having sufficient knowledge of issues that potentially could arise in Ms. Barbour's deposition" and "a common interest in Mr. Ella being able to provide informed and appropriate legal advice to Ms. Barbour as he prepared to defend her deposition–including without limitation on the issue of privilege."[12] While it might be true that Dow and Barbour had an identical (albeit, general) interest in ensuring that Ella was prepared to defend Barbour's deposition, can this be said to be a "legal interest" of the type protected by the common-interest doctrine? Dow has failed to cite a case (or even make any argument to the court) that would answer this question in the affirmative. When it comes to concrete legal interests in this case, such as Dow's interest in demonstrating that it did not participate in a conspiracy to coverup anti-competitive behavior, Dow does not dispute that its interests and Barbour's interests do not align. Thus, the undersigned finds that Dow has failed to establish the applicability of a doctrine that would nullify its waiver of work-product protection.

Next, as a wholly separate ground for production of the Ella memorandum, DAPs

---

[10]*Servicemaster of Salina, Inc. v. United States*, No. 11-1168, 2012 WL 1327812, at *3 (D. Kan. April 17, 2012).

[11]*Sawyer,* 2002 WL 31928442, at *3 (quoting *Johnson Matthey, Inc. v. Research Corp.*, No. 01CIV.8115MBMFM, 2002 WL 1728566, at *6 (S.D.N.Y. July 24, 2002)).

[12]Doc. 2997 at 3.

argue that Dow has waived any otherwise applicable privilege by voluntarily disclosing other information about Dow's 2004 investigation into Barbour's reports of misconduct. DAPs note that Dow has put the 2004 investigation affirmatively at issue in this case and has made clear that it intends to use information about the investigation in an attempt to prove what allegations Barbour made (and did not make) in 2004. Indeed, this was the subject of Dow's motion to allow additional discovery, which the undersigned granted in the order of July 25, 2013.[13] Dow has voluntarily produced all of the 2004 investigation documents,[14] but refuses to produce the Ella memorandum discussing the results of the 2004 investigation because it post-dates the November 2004 start of litigation.[15] DAPs argue that, under Fed. R. Evid. 502, Dow may not selectively waive privilege in this manner.

Rule 502 applies when "information covered by the attorney-client privilege or work-product protection" is disclosed. Under Rule 502(a), the waiver of protection generally applies only to the information disclosed and not to the broader subject matter of the information.[16] However, the disclosing party will be deemed to have waived the privilege over information concerning the same subject matter when the intentionally disclosed

---

[13]*See* doc. 2960, Order of July 25, 2013, at 21.

[14]*See* doc. 2894 at 9; doc. 2988 at 2–3.

[15]Doc. 2988 at 3.

[16]*See* Rule 502 Advisory Committee Note.

information and the undisclosed information "ought in fairness to be considered together."[17]
The Explanatory Note to the Rule further expounds that "a subject matter waiver . . . is
reserved for those unusual situations in which fairness requires a further disclosure of related,
protected information, in order to prevent a selective and misleading presentation of evidence
to the disadvantage of the adversary."

The undersigned finds that fairness demands that DAPs be allowed to examine the
whole picture showing what allegations Barbour reported to Dow in 2004. At Dow's explicit
request, the court ruled that the parties could take discovery into whether Barbour reported
antitrust concerns to Dow in 2004, as opposed to for the first time during her deposition in
2010. Dow voluntarily disclosed information regarding the 2004 investigation which it
previously had withheld as privileged.[18] Dow does not deny that it intends to question Dow
managers about the information Barbour reported in 2004. The undersigned has reviewed
the Ella memorandum *in camera* and finds that it contains information specifically
addressing this topic which is favorable to DAPs' theory of events—information that must
be revealed to avoid a misleading presentation of the evidence to the disadvantage of DAPs.
Thus, the undersigned finds that the Ella memorandum must be produced to DAPs under
Rule 502, despite any privilege protection (including work-product protection or a joint-
defense/common-interest privilege) which might otherwise attach to it.

---

[17]Fed. R. Evid. 502(a).

[18]*See* doc. 2960 at 4–5 for a discussion of Dow's previous privilege assertions.

DAPs make the additional argument that Fed. R. Evid. 612 requires disclosure of the Ella memorandum. Rule 612 provides that if a witness uses a writing to refresh her memory for the purpose of testifying, the adverse party is entitled to production of the writing if the court deems it necessary in the interest of justice.[19] In addition to demonstrating that the witness used the writing to refresh her memory, the party seeking the document must show that the document actually influenced the witness' testimony.[20]

The undersigned need not decide the applicability of Rule 612, of course, because he has found that Rule 502 mandates disclosure of the Ella memorandum. For the parties' benefit, however, the undersigned notes that were he required to address the matter, he would conclude that Rule 612 does not apply here. The undersigned has reviewed the transcript of Barbour's deposition. At no time during the deposition did Barbour testify that she used the Ella memorandum to refresh her memory. During oral argument, counsel for DAPs asserted that Dow's counsel prevented DAPs from laying this foundation by making privilege objections. The undersigned's review of the transcript does not confirm this version of what took place, but in any event, DAPs did not object to this alleged discovery behavior within the thirty-day deadline for so doing.[21] While it is undisputed that Barbour read the Ella

---

[19]Fed. R. Evid. 612; *see also Audiotext Communications Network, Inc. v. US Telecom, Inc.*, 164 F.R.D. 250, 253 (D. Kan. 1996).

[20]*Audiotext*, 164 F.R.D. at 254.

[21]*See* D. Kan. Rule 37.1(b) (setting thirty-day deadline for discovery motions).

memorandum prior to her deposition, DAPs have presented nothing to show that she did so to refresh her recollection.[22]   Thus, if Rule 612 was DAPs only basis for production of the Ella memorandum, the undersigned likely would have denied the request.

## II.      Deposition of Stephanie Barbour

The second discovery issue that the parties have been unable to reach agreement about is whether Dow may re-depose Barbour pursuant to the undersigned's July 25, 2013 order permitting limited additional discovery.  The undersigned granted Dow's request to allow additional discovery about the 2004 investigation, and specifically permitted "the parties to conduct discovery into the allegations that Ms. Barbour made about competition matters in 2004 (as compared to her statements in her 2010 deposition)."[23]  The undersigned noted that while "Dow's motion does not specifically state the type or extent of discovery it seeks on this topic," it appeared that Dow expected depositions to be taken.[24]   The undersigned concluded, "without any clear guidance on the particular discovery the parties wish to seek on this topic, the court will not set stringent limits on the means and manner—as opposed to the content—of discovery."[25]

---

[22]If anything, it appears that Barbour took the position that information contained in the Ella memorandum was contrary to her recollection of events.  *See* doc. 3003-2 at 127–29.

[23]Doc. 2960 at 21.

[24]*Id.* at 21–22.

[25]*Id.* at 22.

Because the undersigned explicitly declined to set limits on the means and manner upon which Dow could conduct discovery into the 2004 investigation (including Barbour's allegations at the time), and because the undersigned further explicitly noted the potential for depositions to be taken on this topic, the undersigned now has no trouble holding that Dow may depose Barbour. It should go without saying that the topics of the deposition must not stray from those limited topics permitted by the July order.

## III.    DAPs' Post-Litigation Cover-Up Theory

Finally, Dow has requested that the court permit it to take discovery regarding DAPs' theory that Dow engaged in a post-litigation conspiracy cover-up, *if* DAPs are permitted to pursue that theory. Indeed, Dow first asks the court to "rule that the DAP cannot assert a post-litigation cover-up theory because they raised it too late."[26] According to Dow, DAPs "raised their post-litigation cover-up theory for the first time just prior to Dow filing its reply brief in support of its motion to modify the Scheduling Order."[27] DAPs respond that they have never raised or asserted such a theory. Rather, while the parties were conferring about an issue raised in the motion to modify the scheduling order, Dow asked DAPs to stipulate not to pursue such a theory at trial, and DAPs declined.

The undersigned ruled in the July 25, 2013 order that Dow may not seek additional discovery on topics not raised in Dow's motion to modify the scheduling order, including

---

[26]Doc. 2988 at 5.

[27]*Id.* at 4.

topics which Dow asserts "only became relevant when DAPs' post-conspiracy cover-up theory expanded to a post-litigation cover-up theory."[28] Dow did not file a timely motion to reconsider or review that ruling, and its request now is nothing more than an attempt to take a second bite at an apple that has fallen.[29] To the extent that Dow again seeks discovery on this potential theory, its request is denied. To the extent that Dow's request seeks the preclusion of a theory in the case, Dow should make that request in a motion in limine or other motion for judgment, not as part of a discovery dispute.[30]

IT IS THEREFORE ORDERED:

1. Dow's motion for order directing the course of discovery (doc. 2988) is granted, but the specific outcomes requested by Dow in the motion are granted in part and denied in part.

2. DAPs' motion to compel the production of the Ella memorandum (doc. 2994) is granted. Dow shall produce the Ella memorandum to DAPs by **September 26, 2013**. Because the memorandum contains confidential and personal

---

[28]Doc. 2960 at 19 n.61.

[29]*See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order [of a magistrate judge] with 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to.").

[30]Dow stated at oral argument that as soon as DAPs raised this theory, Dow filed a motion asking that it be precluded from this case. The undersigned knows of no such motion. Should Dow be referring to its instant "motion for an order directing discovery," the court notes that it was filed more than seven weeks after Dow allegedly learned of DAPs' potential theory.

information, it shall be subject to the protective order entered in this case.

Dated September 5, 2013, at Kansas City, Kansas.


            s/James P. O'Hara
            James P. O'Hara
            U.S. Magistrate Judge