IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: URETHANE ANTITRUST LITIGATION | ) ) ) ) ) ) ) ) ) | MDL No. 1616<br>Case No. 04-MD-1616-JWL |
| This Order Relates to the following Polyether Polyol Case: | | |
| *Carpenter Co., et al. v. BASF SE, et al.* | | Case No. 08-2617-JWL |

# **ORDER**

The plaintiffs in this multidistrict litigation allege that the defendant, The Dow Chemical Company, conspired with other chemical manufacturers to fix prices for polyether polyol products sold throughout the world.[1] Merits discovery in this litigation closed, for the most part, on February 17, 2012.[2] Direct-action plaintiffs Carpenter Co. and E.R. Carpenter, L.P. (collectively, "Carpenter") have filed a motion to reopen discovery for the limited purpose of allowing current and former Carpenter employees who previously invoked the Fifth Amendment privilege[3] to withdraw the invocation and testify **(doc. 3027)**. Dow has

---

[1] Plaintiffs also sued a number of other chemical companies, but have reached settlements with those defendants.

[2] Doc. 2282. On July 25, 2013, the undersigned U.S. Magistrate Judge, James P. O'Hara, modified the scheduling order to permit limited additional discovery on or before September 30, 2013 (doc. 2960). On September 23, 2013, the undersigned granted the joint request of the parties to extend that deadline to October 18, 2013 (doc. 3038).

[3] "The Fifth Amendment allows an individual to not 'answer official questions put to him in any . . . proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *S.E.C. v. Smart*, 678 F.3d 850, 854 (10th Cir. 2012) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)).

filed a motion to strike Carpenter's motion to reopen discovery, arguing that it is in essence a surreply to a currently pending motion to dismiss filed by Dow **(doc. 3033)**. Alternately, Dow asserts that Carpenter's motion should be denied as untimely and/or because Carpenter has not demonstrated good cause to allow the discovery. Because the court believes Carpenter's motion to reopen discovery is a valid motion and is based on good cause, that motion is granted and Dow's motion to strike is denied.

## I. Background

**A.      The Witnesses' Invocation of the Fifth Amendment**

In July 2010, it was publicly reported for the first time that the United States Department of Justice was conducting a grand-jury investigation into a possible price-fixing conspiracy by manufacturers of foam products, including Carpenter and four other direct-action plaintiffs ("DAPs"). It also became known that the Canadian Competition Bureau was conducting a parallel investigation into possible violations of Canadian antitrust laws. Related to those investigations, the United States and Canada subpoenaed documents and seized evidence from foam manufacturers. Upon learning of the criminal investigations, Dow and its co-defendants served discovery requests seeking information relating to the investigations, and noticed the depositions of twenty-six individuals allegedly implicated in the foam conspiracy. Citing, in part, Fifth Amendment concerns, DAPs moved for a protective order prohibiting defendants from conducting discovery into whether DAPs

engaged in a conspiracy to fix prices for foam products. The court denied that motion.[4] In January 2012, six current or former Carpenter employees ("the Carpenter witnesses") were deposed. Each answered certain background questions, but declined to answer all other questions on Fifth Amendment grounds.

B.  **Dow's Motion to Dismiss and the Parties' Discussions Regarding Withdrawal of the Fifth Amendment Invocations**

After the conclusion of the class-action trial in this litigation, the court invited the parties in the direct-action cases to submit statements of issues that they believed remained in the direct-action cases.[5] Dow stated its intention to seek dismissal of DAPs' claims based on DAPs' refusal to provide discoverable information due to their employees' invocations of the Fifth Amendment.[6] Following a status hearing on May 21, 2013, the court entered an order setting forth the procedure for Dow to file a dispositive motion relating to the witnesses' invocation of the Fifth Amendment.[7]

On June 14, 2013, Dow's counsel sent a letter to DAPs' counsel asking whether persons who previously refused to provide testimony on Fifth Amendment grounds might now agree to provide testimony which would allow Dow to defend itself and thereby

---

[4]*See* docs. 1703 & 1970.

[5]*See* doc. 2820.

[6]Doc. 2835 at 11.

[7]Doc. 2884 at 2.

alleviate the need for Dow to file a motion to dismiss.[8]  Specifically, the letter read,

> Dow intends to file a motion seeking to dismiss the claims of several plaintiffs on the grounds this widespread use of the Fifth Amendment to refuse to provide discovery has left Dow unable to obtain information relevant and important to its defenses in these case. . . . Of course, Dow understands that dismissal should be avoided if there is a way to obtain this discoverable information now, even if it was not available at the time it was sought. Therefore, Dow asks that plaintiffs agree to supplementary discovery for the limited purpose of updating the testimony from those persons who previously refused to provide it on Fifth Amendment grounds.[9]

Dow asked DAPs to respond to the letter by July 18, 2013.  Counsel for DAPs timely responded that DAPs were willing to "work with you . . . to see if there can be an accommodation," but noted that each of the witnesses whom invoked the Fifth Amendment was represented by separate counsel who would have to be contacted.[10]  DAPs' counsel made inquires to their various clients, who in turn contacted counsel for the witnesses.  But because the timing of responses from the witnesses was uncertain, DAPs' counsel suggested that Dow file its motion to dismiss by its approaching deadline for so doing.[11]  On July 23, 2013, Dow filed a motion to dismiss the DAPs' claims, asserting that "Dow has been denied information critical to its ability to defend itself at trial" because DAP employees "have invoked their

---

[8]Doc. 3027-1.

[9]*Id.*

[10]Doc. 3027-2.

[11]*Id.* & doc. 3028-8.

Fifth Amendment rights and refuse to testify about what they know."[12]

On August 14, 2013, counsel for DAPs informed Dow that it learned the day before that "Stan Pauley of Carpenter, who previously asserted his rights under the Fifth Amendment, is willing to sit for deposition in our case."[13] DAPs asked Dow whether it would consent to a motion by DAPs to open discovery for the purpose of permitting Dow to depose Pauley.[14] Over the next few days, DAPs informed Dow that Frank Hurst and Stan Yukevich of Carpenter also were now willing to give substantive testimony in this case.[15] On August 19, 2013, Dow responded by letter that "[i]f the DAP agree to a six-month period of general discovery into and related to the claims asserted by Carpenter and Dow's defenses, then Dow will not oppose a motion seeking leave to permit Dow to depose Messrs. Pauley, Hurst, Yukevich and Malechek."[16]

DAPs filed their response to Dow's motion to dismiss on August 21, 2013.[17] Thereafter, the parties continued to negotiate the reopening of the Carpenter witnesses' depositions. DAPs informed Dow that, while they did not agree to the unlimited reopening

---

[12]Doc. 2955.

[13]Doc. 3028-8.

[14]*Id.*

[15]Doc. 3028-9.

[16]Doc. 3028-11. Notably, however, Dow took the position that it would *not* agree to hold in abeyance the portion of its motion to dismiss applicable to Carpenter.

[17]Doc. 2982.

of discovery on Carpenter's claims, they did "acknowledge that it is possible that after the depositions there might be limited reasonable follow up concerning matters that Dow could not have raised earlier and we would agree to address those as they occur."[18] On August 26, 2013, Dow responded that, while it was willing to discuss the duration of a general period of discovery, it was "not willing to agree to any other restrictions on its ability to conduct this discovery."[19] Because the parties could not reach agreement on the discovery that would be permitted if the Carpenter witnesses were re-deposed, Carpenter filed the instant motion.

## II. Analysis

Before reaching the merits of Carpenter's motion to allow the Carpenter witness to withdraw their Fifth Amendment invocations and testify, the court will address Dow's arguments that the motion should be stricken or denied on procedural grounds.

### A.   Carpenter's Motion is not a Surreply to Dow's Motion to Dismiss

First, Dow asks the court to strike Carpenter's motion to reopen the depositions of the Carpenter witnesses, arguing that "[t]he Motion is in essence a sur-reply in opposition to Dow's motion to dismiss."[20] Dow asserts that the memorandum in support of the motion to reopen discovery makes some of the same arguments made by DAPs in response to Dow's motion to dismiss and addresses arguments made in Dow's reply in support of its motion to

---

[18]Doc. 3028-12 at 2.

[19]Doc. 3024-7.

[20]Doc. 3033 at 2.

dismiss. Accordingly, Dow contends, the discovery motion must be stricken as a surreply filed without leave of court.

The court strongly disagrees. As the parties acknowledged in their meet-and-confer discussions, the filing of this motion was the proper procedural mechanism for bringing the question before the court of whether the Carpenter witnesses could withdraw their invocation of Fifth Amendment rights and testify. It would not have been appropriate for Carpenter to make this request for affirmative relief in response to Dow's motion to dismiss. Even if the motion to dismiss were denied, this discovery motion would not become moot. Carpenter states that it seeks to use the to-be-given testimony of the Carpenter witnesses throughout this case, including at trial.

Moreover, the fact that some of the arguments on the two motions overlap is unsurprising and inconsequential. Dow specifically complains that the discovery motion addresses two questions at issue in the motion to dismiss—whether Dow will suffer prejudice as a result of the invocations of the Fifth Amendment, and whether Carpenter was attempting to gain an unfair strategic advantage via the witnesses' invocations. But as the court will discuss below, these two questions also are directly relevant to the court's analysis of whether it should permit the Carpenter witnesses to withdraw their Fifth Amendment invocation.[21] It is therefore reasonable that Carpenter would make similar arguments in their briefing of the two motions. Dow's motion to strike Carpenter's motion to reopen discovery

---

[21] *See Smart*, 678 F.3d at 850, 855.

is denied.

B.   **Carpenter's Motion is not Untimely**

Dow next asks the court to deny Carpenter's motion as untimely. Dow notes that in its April 15, 2013 statement of issues remaining in the direct-action cases[22] (and orally before then), it made clear that it would seek dismissal of DAPs' claims on the basis of the Fifth Amendment invocations made by DAP witnesses. Dow repeated this intention during the May 21, 2013 status conference. Despite this notice, Carpenter did not raise the potential that its witnesses would withdraw their Fifth Amendment assertions and sit for additional depositions, either in their response to Dow's statement of issues or during the status conference. And this court has repeatedly warned the parties that the time for them to raise new issues in the direct-action cases has ended; the time has arrived for "the moving target to stop moving."[23]

Dow makes an appealing argument here, but one that the court ultimately rejects. With the benefit of 20-20 hindsight, upon being specifically told that Dow intended to seek dismissal based on DAP employees' invocation of the Fifth Amendment during depositions, Carpenter (or counsel for DAPs) should have been prompted to go back and inquire of their witnesses about whether they would be willing to withdraw their invocations. But all indications are that DAP counsel did not consider making such inquiries until Dow's June

---

[22]Doc. 2835.

[23]Doc. 2947-1 at 13, *see also* doc. 2960 at 19.

14, 2013 letter raised the possibility of obtaining additional testimony from these witnesses.

Nevertheless, the fact remains that after the May 21, 2013 status conference, *Dow* directly asked DAPs to "agree to supplementary discovery for the limited purpose of updating the testimony from those persons who previously refused to provide it on Fifth Amendment grounds."[24] Dow stated that if DAPs agreed "to this reasonable request," it would "expeditiously proceed with presenting it to the Court."[25] Thus, it's obvious that Dow did not consider a motion to reopen the depositions of the DAP witnesses to be untimely—at least if made by Dow—even if filed after the parties' discussions with the court about remaining issues ended. It is a bit disingenuous for Dow first to request that the depositions be reopened, but then to challenge Carpenter's motion seeking that exact relief (in response to Dow's inquiry) on the ground that the relief was sought after the May 21, 2013 status conference with the court. The record demonstrates that after receiving Dow's letter, DAPs' counsel promptly got the ball rolling in an attempt to accommodate Dow's request for additional discovery. DAPs' counsel made inquires to their various clients, who in turn contacted counsel for the witnesses to see if changed circumstances would lead the witnesses to withdraw their invocation of the Fifth Amendment. Negotiations about the scope of additional discovery on this matter continued between the parties until at least August 26,

---

[24]Doc. 3027-1.

[25]*Id.*

2013.[26] Thus, the conduct of the parties indicates that Carpenter's motion has naturally flowed from events that occurred after the court's request that all remaining issues be put on the table.[27] For that reason, Carpenter's motion cannot fairly be faulted as untimely.

## C. Good Cause Exists for Permitting the Requested Discovery

Motions to modify a scheduling order are governed by Fed. R. Civ. P. 16(b)(4), which provides that "[a] schedule may be modified only for good cause and with the judge's consent." The party seeking to extend a scheduling-order deadline must establish good cause by proving the deadline could not have been met with diligence.[28] This normally requires the moving party to show good faith on its part and some reasonable basis for not meeting the deadline.[29] Whether to modify the scheduling order lies within the court's sound discretion.[30]

In exercising its discretion under the particular circumstances present here, the court

---

[26] *See* doc. 3024-7.

[27] The presiding U.S. District Judge, John W. Lungstrum, indicated at the May 21, 2013 status conference that "no new issues will be raised by the parties . . . except those which naturally arise out of the Dr. Raiff situation and/or ones which were unable to have been contemplated by the parties." Doc. 3033-1 at 7.

[28] *Manuel v. Wichita Hotel Partners, LLC*, No. 09-1244, 2010 WL 3861278, at *1–2 (D. Kan. Sept. 20, 2010) (quoting *Grieg v. Botros,* No. 08-1181, 2010 WL 3270102, at *3 (D. Kan. Aug. 12, 2010)); *Miller v. Union Pacific R.R.*, No. 06-2399, 2008 WL 4271906, at *2 (D. Kan. Sept. 12, 2008); *Denmon v. Runyon*, 151 F.R.D. 404, 407 (D. Kan. 1993).

[29] *Womble v. Salt Lake City Corp.,* 84 F. App'x 18, 20 (10th Cir. 2003) (citing *Putnam v. Morris*, 833 F.2d 903, 905 (10th Cir. 1987)).

[30] *Paris v. Sw. Bell Tel. Co.*, 94 F. App'x 810, 816 (10th Cir. 2004).

also considers caselaw providing guidance on when the court should permit a witness to withdraw a prior invocation of the Fifth Amendment privilege in a civil case. The Tenth Circuit addressed this question—at least as it applies to party witnesses—last year for the first time in *S.E.C. v. Smart*.[31] Adopting the approach taken by the Fifth Circuit in *Davis–Lynch, Inc. v. Moreno*,[32] the Tenth Circuit ruled, "Withdrawal 'is dependent on the particular facts and circumstances of each case.'"[33] The court directed,

> Generally, '[t]he court should be especially inclined to permit withdrawal of the privilege if there are no grounds for believing that opposing parties suffered undue prejudice from the litigant's later-regretted decision to invoke the Fifth Amendment.' Conversely, withdrawal is not permitted if the litigant is trying to 'abuse, manipulate or gain an unfair strategic advantage over opposing parties.'[34]

Generally, the court should "take a liberal view towards [requests to withdraw the Fifth Amendment privilege], for withdrawal of the privilege allows adjudication based on considerations of all material facts to occur."[35] A district court's order granting or denying a party's request to withdraw a previously asserted Fifth Amendment privilege in a civil case

---

[31]678 F.3d 850 (10th Cir. 2012).

[32]667 F.3d 539, 546–48 (5th Cir. 2012).

[33]*Smart*, 678 F.3d at 855 (quoting *Davis-Lynch*, 667 F.3d at 546).

[34]*Id.* (quoting *Davis-Lynch*, 667 F.3d at 547, which in turn quoted *United States v. Certain Real Prop.*, 55 F.3d 78, 84 (2d Cir. 1995)).

[35]*Certain Real Prop.*, 55 F.3d at 84.

is reviewed for abuse of discretion.[36]

Under the circumstances presented here, the court finds good cause to permit withdrawal of the Carpenter witnesses' privilege assertion and reopen their depositions. First, there is no indication that Carpenter was attempting to "manipulate the litigation process"[37] by somehow convincing its employees to assert the Fifth Amendment privilege during their depositions. At the time of the January 2012 depositions, active criminal investigations appeared to be ongoing into possible anticompetitive acts by Carpenter and its employees. Search warrant applications (inadvertently made public) contained specific allegations of criminal wrongdoing.[38] But now, twenty months later, circumstances have evolved to the point where at least three of the Carpenter witnesses have stated that their "concerns underlying their original invocation of the Fifth Amendment privilege have abated and as a result they are willing to provide substantive testimony."[39] They represent that communications with the U.S. Department of Justice, the passage of time, and discovery provided in this case and in the civil case in which Carpenter and other foam manufacturers are defendants have led to their changed position:

---

[36]*Smart*, 678 F.3d at 855 (quoting *Davis–Lynch, Inc.*, 667 F.3d at 546).

[37]*Id.*

[38]Dow has not disputed that the Carpenter witnesses had a valid basis for invoking the Fifth Amendment privilege at their depositions. *See* doc. 2959 at 27 ("Dow assumes all Fifth Amendment invocations in this case have been made in good faith . . . .").

[39]Doc. 3028 at 2.

> Now more than three years have passed since the investigations began. Neither Carpenter nor the Carpenter witnesses have been the subject of any criminal charges. In the twenty months since the Carpenter witnesses invoked their Fifth Amendment privilege, counsel representing Carpenter in the criminal investigations has been in contact with the Department of Justice, and has advised counsel for the witnesses about the status of the investigation. In addition, careful analysis of discovery provided in this case and in the foam litigation has allowed counsel to assess the strength of and support for the allegations originally made against Carpenter. Based on all of these considerations and the advice of their individual counsel, Messrs. Pauley, Hurst and Yukevich have determined that they are willing to withdraw their Fifth Amendment assertions and testify in this case.[40]

Because these changed circumstances are recent, Carpenter notes that it could not have met the February 17, 2012 discovery deadline despite its good faith and due diligence.

Dow argues that the fact that Carpenter filed this motion only after Dow filed a motion to dismiss based on the Fifth Amendment invocations demonstrates that strategic motivations are driving the witnesses' decisions to now offer substantive testimony. But this argument fails to account for the significant fact that Carpenter only contacted the witnesses about withdrawing their invocations *after Dow requested that it do so*. As Carpenter notes, "Dow *asked* whether any of the witnesses would testify, and the response it got as to the three Carpenter witnesses was yes."[41] The record simply does not support Dow's allegation that Carpenter was "gaming the system" by seeking to offer the testimony of its employees based on the current stage of the litigation.

---

[40]*Id.* at 3–4.

[41]Doc. 3042 at 7.

Second, any possible prejudice that might befall Dow by allowing the Carpenter witnesses to withdraw their Fifth Amendment invocations can be cured by allowing Dow to conduct follow-up discovery. In *Smart*, the Tenth Circuit echoed the Fifth Circuit's concern that when a party is allowed to withdraw the privilege at a late stage, such as after discovery closes or in response to a dispositive motion, "the opposing party is often placed 'at a significant disadvantage because of increased costs, delays, and the need for a new investigation.'"[42] Nevertheless, "a party may withdraw its invocation of the Fifth Amendment privilege, even at a late stage in the process, when circumstances indicate that there is no intent to abuse the process or gain an unfair advantage, and there is no unnecessary prejudice to the other side."[43]

In this case, limited discovery has been reopened and a trial date has not been set. In other words, there is time before this case will be remanded for additional limited discovery without prejudice to any party. As mentioned earlier, currently fact discovery is scheduled to close on October 18, 2013, and expert discovery is scheduled to close on December 31, 2013. In addition, DAPs have filed a motion for summary judgment and Dow has filed a motion to dismiss, each of which will be decided by Judge Lungstrum prior to remand. Allowing the discovery requested by Carpenter will not significantly delay this case.

In addition, the court will honor Dow's request to permit limited follow-up discovery

---

[42]*Smart*, 678 F.3d at 855 (quoting *Davis-Lynch*, 667 F.3d at 548).

[43]*Davis-Lynch*, 678 F.3d at 548.

after the depositions, should Dow deem it necessary.[44] To be clear, though, the court is unpersuaded that Dow would suffer prejudice if the court only permitted the re-opening of the depositions—indeed, Dow itself specifically asked DAPs if they would "agree to supplementary discovery for the limited purpose of updating the testimony from those persons who previously refused to provide it on Fifth Amendment grounds."[45] In any event, Carpenter has indicated that it is prepared to amend its discovery responses if such an amendment becomes necessary based on testimony from the Carpenter witnesses.[46] Carpenter also has acknowledged that "reasonable follow up discovery may be necessary."[47] At this point, without knowing what the Carptenter witnesses' testimony will be, as a practical matter it's impossible to determine whether Dow will need to pursue other follow-up discovery or how long it would take to conduct. Taking the cautious approach, however, the court sets the following deadlines: The Carpenter witnesses may be re-deposed before **October 18, 2013**. Dow may pursue follow-up discovery until **November 8, 2013**. The time for responding to any such follow-up "written" discovery shall be expedited to **fourteen days**.

Finally, to further alleviate Dow's concern that this new discovery not hinder its

---

[44]*See* doc. 3033 at 7.

[45]Doc. 3027-1.

[46]*See* doc. 3028 at 16 n.9.

[47]Doc. 3042 at 8.

chances on its motion to dismiss, the court will permit the parties to revise their briefs on the motion to dismiss (should they find it necessary to so do) after the Carpenter witnesses are deposed and follow-up discovery is closed. The parties are directed to confer and file a suggested rebriefing schedule by **November 13, 2013.** In this way, Dow will not be deprived of an opportunity to conduct discovery on this matter prior to trial or to a decision on its motion to dismiss.

The court believes it important that this case be adjudicated based on all available material facts. To the extent that the Carpenter witnesses have relevant information that they now feel able to give, they should be heard. The circumstances in this case demonstrate that Carpenter does not make the instant motion in bad faith and that any undue prejudice to Dow that might arise from the relief requested can be alleviated. Carpenter's motion to allow its witnesses to withdraw their Fifth Amendment assertions and testify is granted.

IT IS THEREFORE ORDERED:

1. Carpenter's motion to reopen discovery for the limited purpose of allowing current and former Carpenter employees who previously invoked the Fifth Amendment privilege to withdraw the invocation and be deposed (doc. 3027) is granted.

2. Dow's motion to strike Carpenter's motion to reopen discovery (doc. 3033) is denied.

Dated September 30, 2013, at Kansas City, Kansas.

s/James P. O'Hara

James P. O'Hara
U.S. Magistrate Judge