IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: URETHANE ANTITRUST LITIGATION, _____ This Document Relates to the following Polyether Polyol Cases: *Carpenter Co., et al. v. BASF SE, et al.*, and *Woodbridge Foam Corporation, et al. v. BASF SE, et al.*, and *Dash Multi-Corp, Inc., et al. v. BASF SE, et al.*, _____ | MDL No. 1616 Case No. 04-1616-JWL Case No. 08-2617-JWL Case No. 09-2026-JWL Case No. 10-2077-JWL |

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiffs' motion for partial summary judgment (Doc. # 2951). For the reasons set for below, the motion is **denied**.

In this multi-district litigation, the "direct action" plaintiffs in these three cases opted out of the class action that was tried earlier this year in this Court. In the class action, the jury found that defendant Dow Chemical Company ("Dow") participated in a conspiracy in violation of federal antitrust law. Plaintiffs now seek a summary judgment that would preclude Dow from relitigating the issue of the existence of a

conspiracy involving Dow, and would thus establish that fact for purposes of these direct actions. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."); Fed. R. Civ. P. 56(g) (the court "may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case").

As a preliminary matter, the Court rejects Dow's argument that this issue should be decided by the transferor court upon remand. Plaintiffs have raised the issue in the context of a motion for summary judgment, and the issue may be decided as a pretrial matter. Moreover, an earlier ruling on this issue allows the parties more time to plan for trial. Accordingly, the Court concludes that the issue may be and is better addressed by this Court, and it therefore will resolve the issue raised by plaintiffs.

Pursuant to the doctrine of issue preclusion or collateral estoppel, plaintiffs seek to preclude Dow from denying that it participated in a conspiracy with one or more competitors (Bayer, BASF, Huntsman, and/or Lyondell) to fix prices for one or more products (MDI, TDI, polyols, and/or systems) at some point in the class period (1999 through 2003), as found by the jury in the class action. Plaintiffs argue that the general requirements for application of collateral estoppel are met here: the issue of the existence of a conspiracy involving Dow was presented to and decided by the jury in the first action, the first action was finally adjudicated on the merits, and Dow had a full and fair opportunity to litigate the issue in the first action. *See B-S Steel of Kan., Inc. v.*

*Texas Indus., Inc.*, 439 F.3d 653, 662 (10th Cir. 2006) (listing requirements for collateral estoppel).

Because these plaintiffs were not parties in the class action, however, they seek to apply nonmutual offensive collateral estoppel, a doctrine first recognized by the Supreme Court in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979). In that case, the Court noted that, although the possibility of defensive collateral estoppel gives a plaintiff a strong incentive to join all potential defendants in the first action if possible, the offensive use of collateral estoppel creates the opposite incentive—"[s]ince a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by the judgment if the defendant wins, the plaintiff has every incentive to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment." *See id.* at 329-30 (citations omitted). Thus, the Court noted that "offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does," as the total amount of litigation may be increased. *See id.* at 329. The Court also noted that offensive use of collateral estoppel may be unfair to a defendant, giving the following examples: the defendant may have had little incentive to defend the first action vigorously, perhaps because the first suit involved only a small amount of damages; the judgment relied on may be inconsistent with previous judgments; and the second action may afford "procedural opportunities unavailable in the first action that could readily cause a different result" (for instance, if the first action was in an inconvenient forum and the defendant was unable to engage in full-scale

3

discovery or call witnesses). *See id.* at 330-31 & n. 15 (citations and footnotes omitted). The Court then summarized its holding as follows:

> We have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of [nonmutual] offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.

*See id.* at 331 (footnote omitted).

Plaintiffs argue that the Court should apply nonmutual offensive collateral estoppel in these cases. They argue that preclusion here would further the purpose of finality and the minimization of the possibility of inconsistent decisions, as well as the purpose of judicial economy. *See Montana v. United States*, 440 U.S. 147, 153-54 (1979) (footnote omitted) (noting benefits of collateral estoppel). With respect to the latter purpose, plaintiffs suggest that preclusion would have the effect of streamlining the evidence in their cases, as Dow would not be permitted to introduce evidence solely to deny the existence of and its participation in a conspiracy. Plaintiffs further argue that preclusion would not be unfair to Dow for any of the reasons discussed in *Parklane Hosiery*. Specifically, plaintiffs argue that they could not have easily joined the class action because are alleging a longer conspiracy period (1994 through 2003).

In response, Dow relies on *Premier Electrical Construction Co. v. National Electrical Contractors Association, Inc.*, 814 F.2d 358 (7th Cir. 1987), in which the

4

Seventh Circuit declined to apply *Parklane Hosiery* and instead adopted a "categorical rule" prohibiting the application of nonmutual offensive collateral estoppel in favor of class members who have opted out of the class action to which they seek to give preclusive effect. *See id.* at 367. The *Premier* court concluded that the common-law rule of issue preclusion cannot overcome Fed. R. Civ. P. 23, which was amended in 1966 to do away with one-way intervention in class actions in favor of the present opt-out procedure. *See id.* at 364. The court reasoned:

> Whether class members should get the benefit of a favorable judgment, despite not being bound by an unfavorable judgment, was considered and decided in 1966. That decision binds us still.

*See id.* Moreover, the court stated that it lacked "a sound reason to deviate from the plan of 1966." *See id.* at 365. The Seventh Circuit noted that fewer issues might be present in a second action if preclusion were permitted, but that the possibility of preclusion could actually increase the number of lawsuits, thereby undermining any potential judicial economy, as class members would have an incentive to opt out of a class action. *See id.* at 365-66. The court also rejected the argument that preclusion would allow for equality among class members, for the reason that opt-outs have specifically chosen to be treated differently from other class members. *See id.* at 367.

The Seventh Circuit's holding in *Premier* is consistent with the reasoning of the Fourth Circuit from an earlier case. *See id.* at 365 (citing *Polk v. Montgomery County, Md.*, 782 F.2d 1196 (4th Cir. 1986)). In *Polk*, the court reversed the district court's decision to allow nonmutual offensive collateral estoppel, concluding in part that there

5

had not been a final adjudication in the first action and that it could not be ascertained that the issues were sufficiently identical in the two cases. *See Polk*, 782 F.2d at 1201-02. The Fourth Circuit further held, however, that collateral estoppel should also have been denied for the separate reason that the first action was a class action that the plaintiff in the second action had declined to join. *See id.* at 1202.

Other court have followed or recognized the categorical rule adopted in *Premier*. *See, e.g.*, *Tardiff v. Knox County*, 567 F. Supp. 2d 201, 212 (D. Me. 2008); *In re Vitamins Antitrust Litig.*, 2000 WL 34230081, at *4 (D.D.C. July 28, 2000); *Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.*, 162 F.R.D. 482, 488 (E.D. Pa. 1995). Plaintiffs have not been able to cite any case in which the court rejected the Seventh Circuit's rule from *Premier*. The Tenth Circuit[1] has not addressed *Premier*, but the *Premier* court relied in part on *Sarasota Oil Co. v. Greyhound Leasing & Financial Corp.*, 483 F.2d 450 (10th Cir. 1973), *see Premier*, 814 F.2d at 365 (citing *Sarasota Oil*), in which the Tenth Circuit noted that, after the 1966 amendment to Rule 23, parties that elect to be excluded cannot participate in the benefits of a successful class action. *See Sarasota Oil*, 483 F.2d at 452.

Plaintiffs argue that this Court should not apply the categorical rule from *Premier* in this case. Plaintiffs cite to a recent law review article in arguing that amended Rule

---

[1]The Court has previously ruled that, as the transferee court in this multi-district litigation, it will apply the law of the Tenth Circuit, in which it sits. *See In re Urethane Antitrust Litig.*, 2013 WL 65988, at *1 (D. Kan. Jan. 4, 2013).

6

23, in doing away with one-way intervention, does not actually prohibit an opt-out from benefitting from collateral estoppel. *See* Antonio Gidi, *Loneliness in the Crowd: Why Nobody Wants Opt-Out Class Members to Assert Offensive Issue Preclusion Against Class Defendants*, 66 S.M.U. L. Rev. 1 (2013). Plaintiffs also suggest that the policies favoring issue preclusion generally—judicial economy, finality, and fairness—would be furthered by application of the doctrine here. Plaintiffs also argue that the *Premier* court overstated the fear that class members may choose to opt out and adopt a wait-and-see attitude, as evidenced by studies showing that few class actions actually result in a judgment for the class. Finally, plaintiffs argue that any categorical rule should not apply to them because they are not "pure opt-outs", as they have alleged a longer conspiracy period than that alleged in the class action.

The Court is persuaded by the reasoning of *Premier*, however, as the Court agrees with the Seventh Circuit that Rule 23's procedure effectively prohibits class members who opt out from benefitting from a factual finding in the class's favor. Even if few class actions proceed to a favorable judgment, and even though class members may have other reasons for opting out, allowing opt-outs to benefit from a favorable class action decision without also carrying the risk of an adverse decision would provide at least some incentive for class member to "wait and see," as discussed in *Premier*. Moreover, a rule against opt-outs' use of offensive collateral estoppel is consistent with the Supreme Court's general rule from *Parklane Hosiery* that offensive collateral estoppel should not be available to parties who could have joined in the earlier action. *See*

7

*Parklane Hosiery*, 439 U.S. at 331. As noted above, no courts have explicitly rejected the categorical rule since *Premier*. The author of the aptly-named article cited by plaintiffs stated that no other commentator had disagreed with *Premier* in the last 30 years. *See* Gidi, *supra*, at 15; *see also* Restatement (Second) of Judgments § 42 cmt. d, illus. 6 (opt-out may not invoke preclusion as to issues decided in favor of the class); 7AA Charles A. Wright, et al., *Federal Practice and Procedure* §1789, at 562 (3d ed. 2005) ("The better view is that one who opts out of a class action cannot claim collateral-estoppel benefits from the judgment."). In light of the statement in *Sarasota Oil* that an opt-out may not benefit from a successful class action, *see* 483 F.2d at 452, the Court believes that the Tenth Circuit would follow *Premier* and adopt the categorical rule against allowing an opt-out to assert offensive collateral estoppel.

Moreover, the Court concludes that the rule should be applied to plaintiffs in this case. Plaintiffs did affirmatively request exclusion from the class certified in this litigation, and they have referred to themselves as "opt-outs". Indeed, if they had remained in the class, they would have been bound by a jury decision either way with respect to the conspiracy period alleged by the class. Plaintiffs have not explained why they could not have attempted to obtain certification of a longer class period (with or without a subclass encompassing a shorter period) from the Court. Nor have they explained why they could not have remained in the class after certification of the shorter class period and limited their own separate lawsuits to the pre-class period. Plaintiffs chose to opt out of the class, and they would otherwise have been bound by any decision

8

on the class claims for the period from 1999 through 2003; accordingly, plaintiffs may not benefit from a finding in the class action of a conspiracy existing sometime during the class period.

In addition, even if the Court did not apply the categorical rule from *Premier*, it would nonetheless exercise its "broad discretion" under *Parklane Hosiery* to reject application of offensive nonmutual collateral estoppel in this case. First, the Court notes again the Supreme Court's general rule that application of the doctrine is not warranted if the plaintiffs could have easily joined in the first action. *See Parklane Hosiery*, 439 U.S. at 331. As discussed above, plaintiffs were members of the class and chose not remain in the class action, and the Court believes that it would be unfair to Dow to allow such opt-outs to benefit from a factual finding in the class action.

Second, the Court concludes that there will be at least one procedural opportunity available to Dow in these direct actions that it did not have in the class action, which opportunity could result in a different outcome on the question of the existence of a conspiracy involving Dow. *See id.* at 330-31. Dow has stated that it intends to seek an adverse inference from the invocation of the Fifth Amendment privilege against self-incrimination by some plaintiffs and their executives. Plaintiffs argue that Dow could have attempted to introduce evidence relating to them in the class action. Nevertheless, whether the person invoking the Fifth Amendment privilege is a party (or under the control of a party) or a non-party is a significant and perhaps dispositive factor in the determination of whether the adverse inference may be argued to the jury—indeed, in

9

the class action, the Court excluded evidence of the invocation of the privilege by certain non-parties. *See In re Urethane Antitrust Litig.*, 2013 WL 100250 (D. Kan. Jan. 8, 2013). Accordingly, the Court concludes that this additional evidence that Dow may be able to use in these direct actions weigh against application of collateral estoppel in this case. *See United States v. U.S. Currency in Amt. of $119,984.00, More or Less*, 304 F.3d 15, 176-77 (2d Cir. 2002) (in rejecting offensive nonmutual collateral estoppel, noting procedural difference of adverse inference from invocation of the Fifth Amendment privilege).

Finally, the Court concludes that application of collateral estoppel in these cases would also be unfair to Dow because of the imprecise nature of the finding that plaintiffs seek to use. In the class action, the jury found that a conspiracy existed, but it did not identify the duration of that conspiracy, the members, or the products to which it related. The Court has held, at trial and in response to post-trial motions, that such a verdict was sufficient for purposes of the class action. In crafting the verdict form, the Court was not required to consider the effect on the cases brought by opt-outs, however, and the imprecise nature of the finding does not lend itself to preclusion in these direct actions. For instance, the jury might have found a conspiracy limited in scope in such a way that it would not fall within the particular claim alleged by any particular direct-action plaintiff. Moreover, the Court does not agree with plaintiffs that preclusion would result in any judicial efficiency here. As plaintiffs concede, even with preclusion they would be required to prove the contours or scope of the conspiracy. Plaintiffs argue that any

10

evidence relating solely to the existence of a conspiracy could be excluded, but any such evidence relating to the alleged conspiracy would also naturally relate to the conspiracy's scope, and would thus likely be relevant. The Court cannot envision that the presentation of evidence would be significantly affected by allowing preclusion here. At the same time, there would be some danger of confusion and unfair prejudice to Dow if the jury were told that some sort of conspiracy existed, at some time, involving some members and some products, but that the plaintiffs were still required to prove the details of that conspiracy.

For these reasons, the Court concludes that collateral estoppel, as requested by plaintiffs, is not warranted in this case. The Court therefore denies plaintiffs' request for summary judgment on the issue.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs' motion for partial summary judgment (Doc. # 2951) is hereby **denied**.

IT IS SO ORDERED.

Dated this 16th day of December, 2013, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge