IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: URETHANE ANTITRUST LITIGATION | ) ) ) ) ) ) ) ) | MDL No. 1616<br><br>Case No. 04-MD-1616-JWL |
| This Order Relates to the Direct Action Polyether Polyol Cases (Nos. 08-2617-JWL, 09-2026-JWL, 10-2077-JWL) | | |

## **ORDER**

The plaintiffs in this multidistrict litigation ("MDL") allege that the defendant, The Dow Chemical Company, conspired with other chemical manufacturers to fix prices for polyether polyol products ("PPPs") sold throughout the world.[1] The MDL includes both a class-action lawsuit, which was tried to a jury in 2013, and three direct-action lawsuits, which are in the final pretrial stages in this court before they are remanded to the MDL transferor court. Dow has filed a motion asking the court to compel the direct-action plaintiffs ("DAPs") to supplement prior discovery responses pursuant to Fed. R. Civ. P. 26(e) **(ECF doc. 3085)**. Because the court finds that the documents sought fall outside of Dow's document requests, the motion is denied.

**I. Background**

DAPs are manufacturers and sellers of polyurethane foam who purchased PPPs from

---

[1]Plaintiffs also sued a number of other chemical companies, but have reached settlements with those defendants.

Dow. After DAPs converted the PPPs to foam, they sold the foam to manufacturers of goods such as furniture, mattresses, packaging, automobile seats, and appliances. In July 2010, it was publicly reported for the first time that the United States Department of Justice was investigating a possible price-fixing conspiracy by manufacturers of foam, including five DAPs. It also became known that the Canadian Competition Bureau was conducting a parallel investigation into possible violations of Canadian antitrust laws. The investigations led to a series of class-action lawsuits being filed against DAPs, which ultimately were consolidated for pretrial purposes as *In re Polyurethane Foam Antitrust Litigation*, No. 10-MD-2196 (N.D. Ohio) ("the Foam Litigation").

Around the same time, Dow served deposition notices, interrogatories, and document requests on DAPs that sought information relating to DAPs' communications with competitors and competitors' prices. DAPs objected to the document requests on relevancy grounds, and defendants filed a motion to compel.[2] The undersigned U.S. Magistrate Judge, James P. O'Hara, granted the motion to compel, in pertinent part, finding "information related to [DAPs'] communications with competitors that may indicate anticompetitive conduct by [DAPs] in setting the price of foam and other products manufactured with PPPs" relevant.[3] After the presiding U.S. District Judge, John W. Lungstum, affirmed the decision,[4]

---

[2]ECF doc. 1743.

[3]ECF doc. 1877 at 11.

[4]ECF doc. 1970.

the parties submitted a joint status report on April 8, 2011, setting out agreements that they had reached limiting the scope of the foam-related document discovery DAPs would produce.[5] Dow concedes that DAPs "then produced a limited number of documents responsive to Dow's requests."[6]

Merit discovery closed, for the most part, on February 17, 2012.[7] But on September 17, 2013, direct-action plaintiffs Carpenter Co. and E.R. Carpenter filed a motion to reopen discovery for the limited purpose of allowing Carpenter employees who had previously invoked the Fifth Amendment privilege in response to Dow's deposition notices to withdraw the invocations and testify.[8] Over Dow's objection, the court granted the motion.[9] In deposing the Carpenter witnesses, Dow learned that the witnesses had been deposed in the Foam Litigation in May 2013. Dow informally requested that DAPs produce a copy of the transcripts from those earlier depositions, which DAPs did (with one exception). Dow asserts that those deposition transcripts contain information responsive to Dow's discovery requests, such as information about Carpenter's efforts to collect information about its competitors' prices.

---

[5] ECF doc. 1971.

[6] ECF doc. 3086 at 4.

[7] ECF doc. 2282. On July 25, 2013, the undersigned modified the scheduling order to permit limited additional discovery. ECF doc. 2960.

[8] ECF doc. 3027.

[9] ECF doc. 3045.

Following completion of the depositions of the Carpenter witnesses, the parties filed a joint status report in which Dow requested that the court permit it to conduct "follow-up discovery" arising from the depositions.[10] Specifically, Dow requested: "Copies of depositions, interrogatory answers, responses to requests for admission and expert reports that have been given in [the Foam Litigation]."[11] On November 5, 2013, the undersigned denied Dow's request for such discovery, holding that, while the information sought was likely relevant, the request went beyond "follow-up discovery" arising from the Carpenter depositions.[12] The undersigned also held that the time to make new discovery requests related to the Foam Litigation had long passed, and that Dow had previously represented to the court that it would not seek new discovery from that litigation.[13]

Two days later, Dow sent a letter to DAPs requesting that DAPs provide "discovery materials in the Foam Litigation," under the theory that such materials were responsive to Dow's discovery requests served in the summer of 2010, and therefore should be produced under the supplementation requirement of Rule 26(e).[14] DAPs responded that they had fully complied with their discovery obligations and would not produce the requested Foam

---

[10]ECF doc. 3071 at 2.

[11]*Id.*

[12]ECF doc. 3073 at 3 (affirmed at ECF doc. 3124).

[13]*Id.* (citing ECF doc. 2882).

[14]ECF doc. 3101-2.

Litigation material.[15] On November 18, 2013, Dow filed the instant motion to compel DAPs to produce "any deposition transcripts, interrogatory responses, answers to requests for admission or expert reports" from the Foam Litigation.[16]

## II. Analysis

Rule 26(e)(1)(A) requires a party to supplement a discovery disclosure or response "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties." This duty to supplement continues even after the discovery period closes.[17]

Dow asserts that discovery material produced in the Foam Litigation is responsive to two of its discovery requests seeking "downstream discovery" of DAPs' business practices.[18] Request No. 3 to defendants' second set of requests for production of documents directed DAPs to produce documents relating to their competitors' prices:

> [A]ll documents relating to [DAPs'] Competitors' prices, capacity and/or price

---

[15]ECF doc. 3101-3.

[16]ECF docs. 3085 at 1, and 3086 at 1.

[17]*See Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1229–30 (10th Cir. 2001).

[18]Although Dow seems to imply that the Foam Litigation discovery is responsive to other discovery requests as well, Dow does not identify or attach to its motion the portions of such requests. Accordingly, the court limits its analysis to the two discovery requests identified. *See* D. Kan. Rule 37.1(a) (requiring motions to compel "be accompanied by copies of the . . . requests or responses in dispute").

increase announcements, including but not limited to: competitive intelligence files; Competitor invoices, price lists, and/or price announcements; emails and handwritten notes regarding competitors' prices, capacity and/or price increase announcements; communications with customers regarding Competitors' prices, capacity, and/or price increase announcements; information gathered from public sources regarding competitors' prices, capacity, and/or price increase announcements; internal communications regarding competitors' prices, capacity, and/or price increase announcements; communications with Competitors (including but not limited to communications with competitors regarding prices, capacity, and/or price increase announcements); communications with suppliers regarding competitors' prices, capacity and/or price increase announcements."[19]

Request No. 7 to defendants' third set of requests for production of documents similarly sought documents relating to DAPs' communications with competitors regarding prices of foam products:

All documents reflecting or relating to any communication between you and any other manufacturer of polyurethane foam or other products made with Polyether Polyol Products regarding prices or increases in the prices to customers of polyurethane foam or other products made with Polyether Polyol Products.[20]

DAPs disagree that these two requests for production of documents encompass the discovery material produced in the Foam Litigation. Of course, a party has no duty to supplement its response to a discovery request with information that was never the subject of that discovery request.[21]

---

[19]ECF doc. 1748-3.

[20]ECF doc. 1748-2.

[21]*Haggard v. Standard Register Co.*, No. 01-2513, 2003 WL 365955, at *4 (D. Kan. Jan. 21, 2003) ("The court finds that defendant had no duty to supplement an interrogatory

DAPs assert that Dow's document requests do not extend to documents from the Foam Litigation because such requests were temporally limited. DAPs note that the requests initially sought documents "created, generated, and/or transmitted during the time period of January 1, 1994, through the present"[22] (which DAPs contend means through the dates in 2010 when the requests were served), but that after the court granted Dow's motion to compel and ordered DAPs to respond to the document requests, the parties reached an agreement to limit the scope of downstream discovery to the time period 1994–2008. Accordingly, the parties' joint status report filed on April 8, 2011, informed the court that the parties had agreed that DAPs would produce downstream-discovery documents "covering the time period between January 1, 1994 and December 31, 2008."[23] DAPs argue that because the Foam Litigation did not commence until 2010, any deposition transcripts, interrogatory responses, answers to requests for admission, or expert reports generated in that litigation could not possibly be covered by Dow's requests.

Dow recognizes the temporal limits agreed to by the parties, but argues that DAPs nonetheless have a duty to supplement their responses with later-created documents that

---

with the requested information, where no interrogatory propounded covered the subject of the information.").

[22]ECF docs. 1748-2 at 4, 1748-3 at 4.

[23]ECF doc. 1971 at 3.

"relate" to the period 1994–2008.[24] Dow argues that materials from the Foam Litigation that are "directly responsive to Dow's prior requests for materials about downstream discovery from 1994 through 2008" must be produced under Rule 26(e).[25]

After careful consideration, the court concludes that under the facts in this case, DAPs have no obligation to supplement their prior discovery responses with discovery from the Foam Litigation. First, the court has difficulty conceiving of any way in which the two discovery requests could be construed to seek the litigation documents. The requests, by their own terms, sought documents "*created, generated, and/or transmitted* during the time period of January 1, 1994, through the present."[26] Although the parties negotiated and eventually changed the relevant "end date" to December 31, 2008, they did not modify the portion of the requests requiring that the documents have been "created, generated, and/or transmitted" during the covered time period. The Foam Litigation did not begin until 2010, making it impossible that any discovery responses in that litigation were created, generated, or transmitted prior to December 31, 2008.

Even if Dow could overcome the "created, generated, and/or transmitted" limiting

---

[24]ECF doc. 3086 at 11. Dow's reply brief also includes an argument that the duty to supplement extends to document requests seeking documents "to the present," but the court finds this argument inapplicable given the parties' agreement to limit the requests to a specific time period.

[25]ECF doc. 3112 at 7.

[26]ECF docs. 1748-2 at 4, 1748-3 at 4 (emphasis added).

language of its requests, the court would reject Dow's argument that all otherwise-responsive documents related to the designated time period are subject to supplementation, regardless of when they were created. Although the limited caselaw addressing this subject goes both ways, the court is persuaded by the reasoning of the Sixth Circuit in *Taylor v. Union Institute*.[27] The document request in *Taylor* sought documents regarding racial discrimination "for the last ten (10) years."[28] The court held that because the request "referred to documents in a finite period of time," documents created after that finite period were not subject to supplementation under Rule 26(e).[29] The court reasoned that if the moving party "wants the benefits of a self-executing duty to supplement, she ought not disable it with temporally limiting language in her request."[30]

When presented with a similar temporal limit in a document request, the Northern District of California also concluded that Rule 26(e) did not impose a duty to supplement documents generated after the delineated time period.[31] In *Dong AH Tire & Rubber Co. v. Glasforms, Inc.*, the court reasoned,

---

[27] 30 F. App'x 443, 451–52 (6th Cir. 2002).

[28] *Id.* at 451.

[29] *Id.*

[30] *Id.* at 452.

[31] *Dong AH Tire & Rubber Co. v. Glasforms, Inc.*, No. C 06-3359, 2008 WL 4786671, at *2 (N.D. Cal. Oct. 29, 2008).

> The duty to supplement under Rule 26(e)(1) is directed to documents generated during the relevant time frame previously not produced but subsequently discovered. To say that the duty to supplement covers documents generated after that date would render meaningless any delineated time period for production. Consequently, despite defendants' reference to Rule 26(e)(1), nothing in that rule imposes a never ending obligation to produce documents continuously as they are created. . . ."[32]

The court agrees with the reasoning in *Taylor* and *Dong*. In Dow's negotiations with DAPs over the downstream documents DAPs would produce, Dow agreed to limit the documents to the time frame 1994 through 2008. Those negotiations occurred in early 2011, well after Dow was aware that the Foam Litigation had commenced and would generate discovery documents. Dow nonetheless agreed to set a temporal limit on its document requests. The fifteen-year window set is sufficient for Dow to discover the nature of DAPs' business practices. The court will not render it meaningless by holding that later-created documents are subject to supplementation ad infinitum.

For these reasons, the court denies Dow's motion to compel supplementation of DAPs' discovery responses. Because the court is not ordering the production of documents from the Foam Litigation, the court need not address DAPs' additional argument that production of such documents would be hindered by the protective order in that litigation.

IT IS SO ORDERED.

Dated January 24, 2014, at Kansas City, Kansas.

---

[32] *Id.*

s/James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge