IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: URETHANE ANTITRUST LITIGATION, | MDL No. 1616 |
| _____ | Case No. 04-1616-JWL |
| This Document Relates to the following Polyether Polyol Cases: | |
| *Carpenter Co., et al. v. BASF SE, et al.*, | Case No. 08-2617-JWL |
| and | |
| *Woodbridge Foam Corporation, et al. v. BASF SE, et al.*, | Case No. 09-2026-JWL |
| and | |
| *Dash Multi-Corp, Inc., et al. v. BASF SE, et al.*, | Case No. 10-2077-JWL |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Dow's Motion to Exclude the Expert Testimony of Plaintiffs' Damages Expert Dr. Leslie Marx (Doc. # 3152) and Direct Action Plaintiffs' Motion to Strike the Supplemental Expert Report of Dr. Keith R. Ugone (Doc. # 3133). For the reasons set forth below, Dow's motion to exclude is **denied in part and remains pending in part**, and plaintiffs' motion to strike is **granted**.

## I. Dow's Motion to Exclude

After expert disclosures and discovery had been completed in this case, plaintiffs notified the Court that their damages expert, Dr. Matthew Raiff, was disabled, and they filed a motion seeking to substitute another expert, Dr. Leslie Marx, for Dr. Raiff. By Memorandum and Order of August 13, 2013, the Court granted the motion while ordering that "Dr. Marx, the new expert, will not be permitted to develop her own models or methodologies, but must endorse and defend Dr. Raiff's opinions." The parties then agreed to a schedule, which the Magistrate Judge adopted by order, providing for a disclosure by Dr. Marx, her deposition, additional reports and depositions of defendant Dow's experts, Dr. Kenneth Elzinga and Dr. Keith Ugone, and *Daubert* motions and briefing. Dr. Marx subsequently issued her expert report.

In its order, the Court stated that if Dow later believed that Dr. Marx had exceeded the scope of the substitution permitted by the Court, Dow could file a motion challenging those opinions. Dow has now filed a motion seeking to exclude the testimony of Dr. Marx. The bulk of Dow's motion is devoted to reasserting its previous challenge to Dr. Raiff's models and methodologies under *Daubert* and Fed. R. Evid. 702. The Court has previously indicated its intention (which intention it repeated in its substitution order) to leave such a motion to be resolved by the transferor court upon remand. Accordingly, the Court does not rule on that portion of Dow's motion, which thus remains pending.

In its initial brief in support of its motion, Dow also argued that Dr. Marx had

2

violated the Court's restriction on the substitution for Dr. Raiff and had interjected her own separate opinions. Dow did not merely seek to strike any such new opinions by Dr. Marx, but instead sought the exclusion of all testimony by Dr. Marx on the basis of the alleged violation of the substitution order. In its reply brief, however, Dow—perhaps realizing that the Court was not apt to strike Dr. Marx entirely for that reason—limited its motion to strike on this basis to one specific portion of Dr. Marx's report (paragraphs 80-89 and figures 1-3) in which Dr. Marx defended opinions by Dr. Raiff (including by undertaking new analyses) concerning confidence intervals and statistical significance for his models. Plaintiffs do not dispute that those opinions are new (that is, Dr. Raiff did not conduct those analyses or offer those resulting opinions), but they argue that Dr. Marx should nonetheless be permitted to offer those opinions in defense of Dr. Raiff's models.

The Court denies Dow's motion to strike this portion of Dr. Marx's report. In its substitution order, the Court made clear that Dr. Marx could not develop her own damage models or methodologies, but instead had to "step into" Dr. Raiff's opinions; however, the Court also expressly permitted Dr. Marx to "endorse and defend" Dr. Raiff's opinions. Thus, the Court did not preclude Dr. Marx from offering new opinions or bases to defend Dr. Raiff's models and conclusions. The Court did state that Dow could raise a challenge if it believed that Dr. Marx "*improperly* injected her own separate opinions" (emphasis added), but the Court does not deem Dr. Marx's "own separate opinions" offered in defense of specific opinions by Dr. Raiff to be improper under its

3

prior order. Moreover, Dow has not suffered any prejudice, as its own experts have had the opportunity to address and rebut these new opinions by Dr. Marx in their own additional reports.

Accordingly, Dow's motion to exclude expert testimony by Dr. Marx is denied to the extent that it is based on an alleged violation of the Court's substitution order. Dow's motion remains pending for the transferor court in all other respects.

**II.     Plaintiffs' Motion to Strike**

After Dr. Marx issued her expert report, Dr. Ugone, Dow's expert, issued a "supplemental" report. Plaintiffs seek to strike certain paragraphs in that report (as shown in a highlighted version of the report attached to plaintiffs' motion). Plaintiffs argue that those portions contain new opinions and bases that were not included in Dr. Ugone's previous reports. Plaintiffs further argue that those new opinions do not rebut any new opinions offered by Dr. Marx, and that because Dow has not sought leave to offer any such supplemental opinions, they should be stricken. Specifically, plaintiffs argue that Dr. Ugone should not be permitted to offer new criticisms of (a) the specific variables that Dr. Raiff included in or excluded from his models; (b) Dr. Raiff's decision to develop two-stage models; or (c) Dr. Raiff's use of a blended benchmark period encompassing two distinct time periods. Plaintiffs also argue that Dr. Ugone should not be permitted to adopt certain opinions by Dr. Elzinga for the first time.

Dow does not dispute that the opinions and bases contained in the particular

4

paragraphs identified by plaintiffs are in fact new and have not been offered by Dr. Ugone previously in this case. Nor has Dow addressed plaintiffs' specific arguments regarding Dr. Ugone's new criticisms and his adoption of opinions by Dr. Elzinga. Instead, Dow has made more general arguments in favor of the Dr. Ugone's new opinions. The Court addresses those arguments in turn.

At the most general level, Dow argues that because Dr. Marx has not simply parroted Dr. Raiff's reports but has instead related and defended Dr. Raiff's opinions in her own words, Dr. Ugone must also be allowed a fresh opportunity to address all subjects addressed in Dr. Marx's report, whether or not Dr. Marx's opinions are new. The fact that plaintiffs have a substitute expert, however, does not open the door to an entirely new set of opinions by Dow's expert. In allowing plaintiffs to substitute Dr. Marx as expert, the Court did not allow Dr. Marx to start from scratch, but required that she endorse and defend Dr. Raiff's models and methodologies. Similarly, the Court did not intend that Dow's experts be permitted to start over and offer new criticisms of the same models and decisions made by Dr. Raiff. Indeed, the parties appear to have understood that limitation to some degree, as they proposed a schedule to the Magistrate Judge that did not provide for a rebuttal report by Dr. Marx; if the parties had anticipated that Dow's experts would offer wholly new opinions that Dr. Marx could not have anticipated from Dow's prior expert disclosures, they could be expected to have provided for Dr. Marx to have an opportunity to address such new opinions (just as

plaintiffs' experts had the last word in the first round of expert reports).[1] Thus, Dr. Ugone may offer new opinions only if they constitute true rebuttal to new opinions by Dr. Marx.

Similarly, events occurring since the time of Dr. Ugone's original expert disclosures do not justify new opinions by Dr. Ugone in this substitution phase of expert discovery. Dow argues generally that Dr. Ugone should be permitted to offer new opinions because things have changed since the original exchange of expert disclosures involving Dr. Raiff. Specifically, Dow points to the facts that various witnesses have now testified in the class action trial against Dow; that various witnesses from the Carpenter plaintiffs have withdrawn the previous invocation of their Fifth Amendment privilege and have given depositions; and that the Supreme Court has issued its opinion in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), which Dow argues affects the admissibility and weight of the opinions by Dr. Raiff and Dr. Marx. Any supplemental opinions necessitated by new events, however, could only be offered with the Court's leave. Dow has not filed any such motion for leave addressing the specific need for truly supplemental opinions based on particular changed circumstances. Instead, Dow has simply provided a supplemental report by Dr. Ugone containing new opinions, in response to the substitute expert's limited disclosure permitted by the Court.

---

[1] The Magistrate Judge's reference in his schedule to "supplemental/rebuttal" reports by Dr. Ugone and Dr. Elzinga does not open the door to wholly new (supplemental) opinions by Dow's experts in contradiction to the Court's intended scope of expert witness discovery upon substitution of Dr. Marx.

Accordingly, the Court rejects Dow's arguments for permitting truly supplemental opinions based on changed circumstances.[2]

Dow also argues that by introducing Dr. Marx as a new expert, plaintiffs opened the door to new attacks based on Dr. Marx's writings. The Court agrees that Dow's experts may properly attempt to impeach Dr. Marx and attack her endorsement of Dr. Raiff's opinions by referring to her own writings. Such criticism represents the very type of new rebuttal occasioned by the substitution that the Court envisioned in permitting the substitution. Thus, any such opinions by Dr. Ugone based on Dr. Marx's writing would not be stricken. It appears, however, that plaintiffs have not sought to strike any such specific opinions by Dr. Ugone. Moreover, the fact that Dr. Marx has published work that may or may not be consistent with her opinions in this case does not open the door to new opinions by Dr. Ugone that are not based specifically on writings by Dr. Marx.[3]

---

[2]The Court notes that plaintiffs have not moved to strike all references in Dr. Ugone's reports to new testimony, but rather only those references that support new opinions by Dr. Ugone.

[3]Plaintiffs concede in their reply brief that Dow would be entitled to explore Dr. Marx's writings in its cross-examination of her at trial. Plaintiffs request the opportunity, however, for Dr. Marx to respond in another report to Dr. Ugone's specific opinions based on her writings. The Court denies that request. Plaintiffs did not seek to exclude those portions of Dr. Ugone's report (paragraphs 56 and 57), and plaintiffs did not make any such request in their motion. Dr. Marx could have anticipated in offering her opinions initially that she would be subject to impeachment based on her published work—in fact, she referenced her own work in the body of her report—and plaintiffs agreed to a procedure and schedule that did not provide for a rebuttal report by
(continued...)

Dow also notes that Dr. Marx offered new opinions and conducted new analyses relating to confidence intervals and statistical significance for Dr. Raiff's models (paragraphs 80-89 and figures 1-3 of Dr. Marx's report). The Court has denied Dow's motion to strike those opinions from Dr. Marx's report, *see supra* Part I, and the Court agrees that Dr. Ugone properly offered his own opinions addressing that portion of Dr. Marx's report. Plaintiffs have not moved to strike that portion of Dr. Ugone's report, and the fact that Dr. Marx offered new opinions on a discrete topic does not open the door to wholly new opinions by Dr. Ugone that do not directly address Dr. Marx's new opinions. Accordingly, the fact that Dr. Marx offered these new opinions is not relevant to plaintiffs' motion.

Dow also argues that Dr. Marx has offered new opinions relating to capacity and capacity manipulation. Dow first points to footnote 32 in Dr. Marx's report, which plaintiffs concede contains new material. Plaintiffs have not moved to strike the portions of Dr. Ugone's report, however, in which he responded to that footnote by Dr. Marx (paragraphs 145-46). Dow also cites particular deposition testimony by Dr. Marx regarding capacity and capacity manipulation, but the Court does not agree that Dr. Marx thereby offered new opinions that would permit new criticisms by Dr. Ugone.

In his models, Dr. Raiff excluded capacity as a variable on the basis that capacity may have been manipulated by the alleged conspiracy. Dr. Raiff later testified that

---

[3](...continued)
Dr. Marx.

8

although he had cited particular examples of evidence that capacity may have been manipulated, he was not offering an expert opinion that such manipulation did occur. Dow now points to the statement in Dr. Marx's report that certain evidence shows that the alleged conspirators attempted to or did reduce quantity; and to Dr. Marx's deposition testimony that manipulation did take place. Dow thus argues that Dr. Marx has offered a new opinion that Dr. Raiff specifically foreswore. Dow also points to other deposition testimony in which Dr. Marx discussed Dr. Raiff's use of a dummy variable in the benchmark period. The Court does not agree, however, that Dr. Marx opened the door to new opinions by Dr. Ugone concerning capacity and other variables. Dr. Raiff excluded capacity as a variable for a specific reason, and Dr. Marx has endorsed that decision by Dr. Raiff. Dr. Raiff's models and methodology squarely placed at issue his treatment of capacity as a specific variable and his choice of variables generally. Dr. Ugone was obliged to offer any criticisms concerning those choices of variables in his initial response to Dr. Raiff's opinions. The Court concludes that the cited testimony by Dr. Marx does not justify any new opinions by Dr. Ugone concerning capacity or variables generally.

The Court also rejects Dow's argument that Dr. Marx opened the door to a broad array of new opinions by Dr. Ugone by her deposition testimony concerning a "process of elimination." Dr. Raiff testified that he attributed the overcharges revealed by his models—the differential between the actual prices and the expected competitive prices—to collusive behavior by Dow and its alleged co-conspirators. He testified that

9

that differential provided evidence of collusion, in addition to the other evidence of collusion that he had reviewed. Similarly, Dr. Marx testified that such a differential provides evidence and allows an inference of collusion. Dow, however, focuses on Dr. Raiff's testimony that the models themselves attribute the differential to collusion, based on his controlling for other factors in constructing the models. Dr. Marx later testified that although the differential provides evidence of collusion, the models themselves do not attribute the differential to a particular cause; rather, the differential may be attributed to collusion by "process of elimination," if there is evidence of collusion without evidence supporting another cause. Dow argues that Dr. Ugone should be permitted to rebut this new opinion by Dr. Marx concerning a process of elimination by offering new opinions concerning possible causes of higher prices revealed by the models.

The Court does not agree, however, that this testimony by Dr. Marx explaining the attribution of the price differential opens the door to new opinions by Dr. Ugone concerning the general subject of possible causes of higher prices shown by the models. Dr. Raiff attributed the differential to collusion, and Dr. Ugone was obliged to offer any opinions concerning other possible causes in his initial response to Dr. Raiff's report. Dr. Marx's testimony did not change the fact that plaintiffs' expert would opine that the differential shown by the models provides evidence of and is best attributed to collusion. Dr. Marx's essential point, gleaned from the entirety of her testimony—that the models control for certain factors, and that the differential provides evidence of collusion in the

10

absence of some other cause not addressed by the models—is essentially consistent with Dr. Raiff's testimony that, if other possible factors are accounted for, the differential provides evidence of collusion. The Court rejects this argument by Dow.

For the same reason, the Court rejects Dow's argument that new opinions by Dr. Ugone are justified because Dr. Marx's "process of elimination" calls into question her fundamental decision to rely on forecasting models. Dr. Raiff used forecasting models; thus, the propriety of using such models should have been addressed initially by Dr. Ugone. Dr. Marx's endorsement of Dr. Raiff's models does not create a new issue or opinion that would justify new criticisms from Dr. Ugone.

Finally, the Court rejects Dow's arguments based on other testimony by Dr. Marx relating to the effect of a buyers' or sellers' market in the benchmark or conspiracy period and to the models' ability to account for actual prices charged by the alleged conspirators. In that testimony, Dr. Marx was responding to specific questions from Dow's counsel, and the Court does not agree that she offered new opinions in that testimony. Accordingly, that testimony does not justify new opinions offered by Dr. Ugone. The models' ability or inability to account for specific prices and price announcements was not altered by Dr. Marx and presents an issue that Dr. Ugone was obliged to address in his original report.

In summary, Dow does not dispute that the portions of Dr. Ugone's report at issue in plaintiffs' motion contain new opinions by Dr. Ugone. Any such opinions should have been offered in Dr. Ugone's initial disclosures in response to Dr. Raiff's report and

11

deposition. Dr. Marx's opinions did not open the door generally to new criticisms by Dr. Ugone. The Court agrees that Dr. Ugone may not offer new opinions by which he endorses opinions by Dr. Elzinga or offers new criticisms of Dr. Raiff's choice of variables, his use of a two-stage model, or his choice of the benchmark period. Dow has not shown that any particular paragraphs of Dr. Ugone's report that are issue are in fact responsive to new opinions by Dr. Marx. The Court also concludes that plaintiffs would suffer unfair prejudice if Dr. Ugone were now permitted to offer new criticisms of Dr. Raiff's opinions; Dr. Raiff was able to address in his rebuttal reports criticisms previously made by Dr. Ugone, but plaintiffs would now be unable to have Dr. Raiff rebut any new criticisms that could and should have been made earlier. Moreover, as noted above, the Court allowed the substitution of Dr. Marx on the condition that she endorse Dr. Raiff's models, and it did not intend for Dow to have another opportunity to offer criticisms of those models that its expert failed to offer previously.

Accordingly, the Court grants plaintiffs' motion to strike the portions of Dr. Ugone's supplemental report that are indicated in the attachment to plaintiffs' motion, and Dr. Ugone will be precluded from testifying at trial to opinions or bases contained in those portions.

IT IS THEREFORE ORDERED BY THE COURT THAT Dow's Motion to Exclude the Expert Testimony of Plaintiffs' Damages Expert Dr. Leslie Marx (Doc. # 3152) is **denied in part and remains pending in part**, as set forth herein.

IT IS FURTHER ORDERED BY THE COURT THAT Direct Action Plaintiffs' Motion to Strike the Supplemental Expert Report of Dr. Keith R. Ugone (Doc. # 3133) is **granted**.

IT IS SO ORDERED.

Dated this 16th day of May, 2014, in Kansas City, Kansas.

> s/ John W. Lungstrum
> John W. Lungstrum
> United States District Judge